06/30/2010  12:02  6073246188          PAUL ARGENTIERI                    PAGE  07

ENDORSED

ALLEGANY COUNTY CLERK
**FILED**
JUN 3 0 2010
ROBERT L. CHRISTMAN
CLERK

SUPREME COURT
ALLEGANY COUNTY          STATE OF NEW YORK

PAUL D. CEGLIA
      Plaintiff

vs

VERIFIED COMPLAINT

Index # 38798

MARK ELLIOT ZUCKERBERG, Individually,
and Facebook, Inc.
      Defendants

2010 JUN 30 AM 9:17
ROBERT L. CHRISTMAN
CLERK
ALLEGANY COUNTY

ENDORSED

    The Plaintiff, as and for his verified complaint against the Defendants, alleges as follows:

1. Plaintiff, Paul D. Ceglia, residing at 2558 Hanover Hill Road, Wellsville, Allegany County, New York, 14895 at all times hereinafter mentioned as either the Purchaser and/or the Buyer.

2. Defendant Mark Elliot Zuckerberg, upon information and belief, resides at 2 Russell Place, Dobbs Ferry, Westchester County, New York 10522, hereinafter referred to as either the Seller and/or Contractor.

3. Upon information and belief, Facebook, Inc. is a domestic corporation having its principal office located in the State of New York having been incorporated in New York on August 6, 2009, hereinafter referred to as Facebook, see exhibit A attached hereto and made a part hereof of this complaint.

4. On April 28, 2003, the Seller and the Purchaser entered into a written contract, including but not limited to, the Purchaser acquiring Fifty Percent (50%) interest in the business of the Seller and Facebook, see exhibit B attached hereto and made a part hereof of this complaint.

5. Upon information and belief, Mark Elliot Zuckerberg is the principal owner of "The Face Book" aka "The Page Book" that are the predecessors in interest to Facebook, Inc.

06/30/2010  12:02  6073246188           PAUL ARGENTIERI                    PAGE  08

6. Under Paragraph 3 of the contract, the Seller and Purchaser agreed that for each day after January 1, 2004, the Purchaser would acquire an additional 1% interest in the business, per day, until the website was completed.

7. Upon information and belief, the website, thefacebook.com, was completed and operational on February 4th, 2004.

8. According to the terms of the contract, as of February 4th 2004, the Purchaser had acquired an additional 34% interest in the business for a total of eighty four percent (84%).

9. Purchaser paid consideration to the Seller for the contract, upon information and belief, by a check in the amount of One Thousand Dollars ($1,000.00) to Mark Zuckerberg, on or about November 24th 2003 among other consideration tendered, see exhibit C attached hereto and made a part hereof of this complaint.

10. Upon information and belief, the Seller simply transferred the originating website business from TheFacebook.com into Facebook.com, and ultimately into Facebook, Inc. which is a continuum of the Purchaser's acquisition from the date of the contract until the present time, and also a continuum of the business from pre-incorporation to incorporation of Facebook.

11 Since April 28th, 2003, the Purchaser has complied with the terms and conditions of the contract and the Seller has failed to similarly comply with the terms of the contract to the detriment of the Purchaser.

12. Upon information and belief, Facebook is a closely held corporation of which the Seller is presently the majority stockholder, see exhibit D attached hereto and made a part hereof of this complaint.

PAUL A. ARGENTIERI - ATTORNEY AT LAW
188 MAIN STREET - HORNELL, N Y 14843 - TELEPHONE (607) 324-3232

WHEREFORE, the Plaintiff, Paul D. Ceglia, hereby demands by Declaratory Judgement against the Defendants, Mark Elliot Zuckerberg, Individually, and Facebook, Inc. for an enforcement of the terms and conditions of the April 23rd 2003 contract wherein Plaintiff would acquire 84% interest of Facebook, Inc. and for a Judgment for an Accounting wherein Plaintiff would obtain a further Judgment against the Defendants in the amount of 84% of any and all monies realized by the Defendants from April 28th 2003 to the present time, along with the costs, disbursements, and attorney fees for this action.

June 29, 2010

Paul A. Argentieri, Esq.
Attorney for Plaintiff
188 Main Street
Hornell, New York 14843
607-324-3232

*[signature: Paul D. Ceglia]*

STATE OF NEW YORK       }
COUNTY OF ALLEGANY      } ss.

    Paul D. Ceglia, being duly sworn, says that the deponent is the Plaintiff in the within action; that deponent has read the foregoing Verified Complaint, and knows the contents thereof; that the same is true to his own knowledge, except as to matters therein stated to be alleged on information and belief and that as to those matters deponent believes it to be true.

*[signature: Paul D. Ceglia]*

Sworn to before me this
29th Day of June, 2010

*[signature]*
Notary Public

PAUL A. ARGENTIERI, ESQ.
NOTARY PUBLIC-STATE OF NEW YORK
No. 02AR4672870
Qualified in Steuben County
My Commission Expires June 30, 20__

EXHIBIT A

Entity Information

Page 1 of 2

# NYS Department of State

## Division of Corporations

Entity Information

The information contained in this database is current through June 25, 2010.

Selected Entity Name: FACEBOOK, INC.
Selected Entity Status Information

Current Entity Name: FACEBOOK, INC.
Initial DOS Filing Date: AUGUST 06, 2009
County: NEW YORK
Jurisdiction: DELAWARE
Entity Type: FOREIGN BUSINESS CORPORATION
Current Entity Status: ACTIVE

Selected Entity Address Information

DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)
CORPORATION SERVICE COMPANY
80 STATE STREET
ALBANY, NEW YORK, 12207

Registered Agent
NONE

This office does not record information regarding the names and addresses of officers, shareholders or directors of nonprofessional corporations except the chief executive officer, if provided, which would be listed above. Professional corporations must include the name(s) and address(es) of the initial officers, directors, and shareholders in the initial certificate of incorporation, however this information is not recorded and only available by viewing the certificate.

*Stock Information

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| No Information Available | | |

*Stock information is applicable to domestic business corporations

Entity Information

Page 2 of 2

## Name History

**Filing Date**  **Name Type**  **Entity Name**
AUG 06, 2009    Actual          FACEBOOK, INC.

A Fictitious name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results                  New Search

Services/Programs | Privacy Policy | Accessibility Policy | Disclaimer | Return to DOS Homepage | Contact Us | Web Feedback

EXHIBIT A

# "WORK FOR HIRE" CONTRACT

## SECTION 1- GENERAL PROVISIONS

### 1. Definitions

The following terms have the meaning specified when used herein:

PURCHASER - Paul Ceglia

CONTRACTOR/SELLER – Mark Zuckerberg, his agents, employees, suppliers, or sub-contractors, furnishing materials equipment, or services.

CUSTOMER – StreetFax LLC the entity contracting the construction or other services form the Purchaser or which the goods and/or services provided hereunder are for incorporation into the work, or are required to facilitate completion of Purchaser's contract with such entity.

PRIME CONTRACT – This contract between Purchaser and Seller.

### 2. Entire Agreement

The contract between the Purchaser and Seller as a Purchase agreement and "work made for hire" reflects two separate business ventures, the first being for the work to be performed directly for the StreetFax Database and the Programming language to be provided by Seller.
Second it is for the continued development of the software, program and for the purchase and design of a suitable website for the project Seller has already initiated that is designed to offer the students of Harvard university access to a website similar to a live functioning yearbook with the working title of "The Face Book"

It is agreed that Purchaser will own a half interest (50%) in the software, programming language and business interests derived from the expansion of that service to a larger audience.

### 3. Payment Terms

No insurance or premium charges or price increases will be allowed unless authorized by Purchaser in writing. No increase in price from that stated on the face hereof will be considered throughout the duration of the order.

The Agreed upon Cost that the Seller and the Buyer have agreed upon are as follows: Buyer agrees to pay the seller the Sum of $1000 a piece for the work to be performed for Streetfax and $1,000 for the work to be performed for "The Face Book".

Late fees are agreed to be a 5% deduction for the seller if the project is not completed by the due date and an additional 1% deduction for each day the project is delayed beyond that point.

The agreed upon project due date [for the StreetFax software is] May 31, 2003. [Providing website design is paid by May 31, 2003]
The agreed upon completion for the expanded project with working title "The Face Book" shall be January 1 2004 and an additional 1% interest in the business will be due the buyer for each day the website is delayed from that date.

Additional funds may be provided for either project on an as needed basis at the sole discretion of the Buyer.

### 4. Changes

a) BY PURCHASER – Purchaser agrees that no further revision shall be implemented until or unless approved by the seller. Those revisions shall be transmitted for written approval to seller.

b) BY SELLER – The Seller agrees that no further revision shall be implemented until or unless approved by Buyer. Those revisions shall be transmitted for written approval to the Street Fax Purchasing Department.

### 5. Purchaser's Property/Seller's Responsibility

For the StreetFax database Buyer agree to pay for and maintain the cost of upkeep for the servers needed for it's operation.

For "The Face Book" Seller agrees to maintain and act as the sites webmaster and to pay for all domain and hosting expenses from the funds received under this contract, and Seller agrees that he will maintain control of these services at all times.

Data, drawings, tooling, patterns, materials, specifications, and any other items or information supplied to Seller under this order are the property of the Purchaser and must be returned upon completion of this order. Such items or information are to be used solely in the performance of the work by the seller and shall not be used or disclosed for any other purpose whatsoever without Purchaser's prior express written consent.

### 6. Settlement of Controversies

In the event that this purchase order is for materials or equipment which is excluded from this Prime Contract, and in the case of disputes between the Purchaser and the Customer or between the Purchaser and the Seller regarding materials or equipment to be furnished by the Seller, the Seller agrees to be bound to the same extent that the Purchaser is bound by the terms of the Prime Contract, and by any judicial decisions and determinations made thereunder, provided that the Seller shall have the right to participate in the settlement of any dispute to the extent that the Seller will be affected thereby.

No interest shall accrue on any payment(s) otherwise due the Seller, which is withheld or delayed as a result of any such dispute, except to the extent that the Purchaser is ultimately paid interest on monies due the Seller. The Seller shall not be held liable if the Seller follows instructions of the Purchaser and it is later determined that the Purchaser's instructions were not in compliance with the terms and specifications of the Prime Contract. Pending final disposition of a dispute hereunder, the Seller shall carry on the work unless otherwise agreed I writing by the purchaser.

In all instances the final authority should rest with the final Specifications.

### 7. Patent Indemnity

Purchaser hold seller harmless for an infringement sellers work may constitute on patents held by and third party that result from the direct request for the work made by purchaser in this "work made for hire" agreement.

The Seller hereby agrees to be responsible for all claims against the Purchaser of the Customer for alleged infringement of patents by reason of the Purchaser's or Customer's possession, use, or sake of any materials or equipment furnished hereunder by the Seller or by reason of the performance of any work hereunder by the Seller. The Seller agrees to defend at it's sole expense all suits against the Purchaser and/or the Customer and to save and hold harmless the Purchaser and the Customer from and against all costs, expenses, judgements, and damages of any kind which the Purchaser or the Customer may be obliged to pay or incur by reason of any such alleged or actual infringement of a patent or patents. The Purchaser and the Customer agree to render whatever assistance it reasonably can I the way of information and access to records for the defense of any such suit. This indemnity shall not extend to alleged or actual infringements resulting from the Seller's compliance with the Purchaser's or Customer's design, instructions, processes, or formulas provided, however, that the Seller agrees to be responsible if it is reasonable to assume the the Seller should have been aware of a possible alleged or actual infringement resulting from the Purchaser's or Customer's design, instructions, processes, or formulas and fails to notify the Purchasers of such possibility.

8. Assignment of Subcontracting

Neither this order nor any rights, obligations, or monies due hereunder are assignable or transferable (as security for advances or otherwise) without the Purchaser's prior written consent, and except as to purchases of raw materials or standard commercial articles or parts, the Seller shall not subcontract any major portion of the work encompassed by this order without the Purchaser's prior written approval. The Purchaser shall not be required to recognize any assignment or subcontract made without its prior written consent.

The buyer accepts that there will be two other subcontractors working on this project their work will be accepted provided a noncompete and "work made for hire agreement" are in place.

9. Proprietary Rights

It is acknowledged that this is a work made for hire agreement and that all Intellectual property rights or patent rights are that of Streetfax Inc. All code in portion or in its complete form remain the property of StreetFax Inc. If the items to be supplied hereunder have been designed in accordance with specifications or data furnished or originated by the Purchaser or its Customer, such items shall not be reproduced except with the approval of the Purchaser and, as applicable, its Customer and all drawings, photographs, data, software, and other written material or information supplied in connection therewith shall at all times remain the property of the Purchaser or its Customer and be returned promptly upon request at the completion, termination or cancellation of this order. In the event that StreetFax defaults on its payment terms rights would be granted to seller.

10. Termination

A. DEFAULT – The Purchaser may terminate this order or any part thereof by written notice if the Seller:
a) fails to make deliveries or to complete performance of its obligations hereunder within the time specified or in accordance with the agreed schedules unless such failure is due to acts of God, strike or other causes which are beyond the control of the Seller.
b) Fails to comply with the terms and conditions of the purchase order and does not cure such failure within a period of ten (10) calendar days after written notice thereof.
c) Makes an assignment for the benefit of creditors without prior written consent of the Purchaser, becomes insolvent or subject to proceedings under any law relating to bankruptcy, insolvency, or the relief of debtors.

Should the Purchaser elect to terminate for default, the Purchaser may take possession of all or any of the items to be supplied hereunder which are in the Seller's possession without regard to stage of completion and may complete or cause the work to be completed on such items or may manufacture or procure similar items. Any additional costs or expense incurred by the Purchaser over and above the original purchase price from the Seller plus freight costs shall be for the account of the Seller.

In all events, the Purchaser shall not be or become liable to the Seller or any third party claiming through or under the Seller for any portion of the price of any items that Purchaser elects not to accept following notice of termination for default.

11. Liens

The Seller agrees to deliver the items to be supplied hereunder free and clear of all liens, encumbrances, and claims of laborers or material men and the Purchaser may withhold payment pending receipt of evidence in form and substance satisfactory to it of the absence of such items, claims and circumstances.

12. Governing Law

This Purchase Order and any material relating thereto shall be governed by the laws of the state in which the Purchaser's office that issues the order is located.

13. Recovery of Damages

If the Seller should recover any damages as a result of antitrust violations in any manner due to price fixing on the part of another manufacturer or Seller, the Seller shall pay over to the Purchaser any sum Purchaser has suffered as a result of the same price fixing within a reasonable time after the damages are recovered by the Seller.

14. Notice of Labor Disputes

a) Whenever the Seller has knowledge that any actual or potential labor dispute is delaying or threatens to delay the timely performance of this order, the Seller shall immediately give notice thereof, including all relevant information with respect thereto, to the Purchaser.

b) The Seller shall insert the substance of this clause including this paragraph (b) in any subtier supply agreement hereunder as to which a labor dispute may delay the timely performance of this order except that each such subtier supply agreement shall provide that in the event its timely performance is delayed or threatened by delay by an actual or potential labor dispute, the subtier Seller shall immediately notify its next higher tier Seller or Sellers, as the case may be, of all relevant information with respect to such dispute.

15. Indemnity Requirements for Contractors/Seller

Contractor/Vendor shall defend, indemnity and save Street Fax from any and all claims, suits, losses, damages, or expenses, whether caused or contributed to by the negligence of Street Fax, its agents, or employees, or otherwise, on account of injuries to or death of any and all persons whomsoever, including the Contractor/Vendor, subcontractors, employees of Contractor/Vendor, the subcontractor, and of Street Fax and any and all damage to property to whomsoever belonging, including property owned by, rented to, or in the care, custody, or control of the parties hereto arising or growing out of, or in any manner connected with the work performed under this contract, or caused or occasioned, in whole or in party by reason of or arising during the presence of the person or of the property of Contractor/Vendor, subcontractors, their employees, or agents upon or in proximity to the property of Street Fax Notwithstanding the foregoing, nothing herein contained is to be construed as an indemnification against the sole negligence of Street Fax.

16. Publicity

Seller shall not publish photographs or articles, give press releases or make speeches about or otherwise publicize the existence or scope of this Purchase Order, or any generalities or details about this Purchase Order without first obtaining the written consent of Buyer.

17. Seller's Disclosure

Any information relating to the Seller's designs, manufacturing processes or manufactured products which the Seller may disclose to the Buyer in connection with the performance of the contract may be used by the Buyer for any purpose relating to the contract and to its performance without liability therefor to the Seller.

18. General Notes

Seller shall reference this purchase order number on all documents and/or correspondence related to this order.

The signatures below will execute this contract.

Buyer – Paul Ceglia, StreetFax

_[signature]_ 4/28/03

Seller – Mark Zuckerberg

_[signature]_ 09.28.03

EXHIBIT G

| | | | FOR REORDERING | 1548 |
|---|---|---|---|---|
| ☐ Gas / Electric | ☐ Credit Card | ☐ Medical / Dental | | |
| ☐ Telephone | ☐ Taxes | ☐ Dependant Care | | |
| ☐ Food | ☐ Insurance (Life, Home, Auto) | ☐ Savings & Investment | BAL. FOR'D | |
| ☐ Clothing | ☐ Home Improvement (Maintenance, Repairs) | ☐ Other | THIS PAYMENT | 1,000 |

Mark Zuckerberg
one thousand

- Memo's Home:
- Carry balance forward
- Check type of expense
- Also details on memo line
- Retain duplicates in Deluxe Check box

Memo _____

NOT NEGOTIABLE

EXHIBIT D

Division of Corporations - Online Services                              Page 1 of 2

Delaware.gov | Text Only                          Governor | General Assembly | Courts | Elected Officials | State Agencies

Department of State: Division of Corporations

Contact Us

## 2009 Amended Annual Franchise Tax Report

Your Session ID is 38365150480589 for file number 3835815. Once a Session ID is saved, both Session ID and file number are needed to sign on to this session again. The Session ID will be valid for two weeks. When a Session ID is saved, the Annual Report is not considered filed. The Annual Report is filed when completed, submitted and payment received. Penalty and interest will be charged if completed after March 1st.

* Required Fields

Please note that your Annual Report has already been filed for the Tax Year 2009.
All information provided on this most current annual report on file will be replaced by filing this amended report.
You must enter all data again when filing this amended report, in its corrected form.

File Number: 3835815
Corporation Name: FACEBOOK, INC.
Federal Employer ID: [    ]
Incorporation Date: 07/29/2004

Agent Number: 8000014
Agent Name: CORPORATION SERVICE COMPANY
Street Address: 2711 CENTERVILLE ROAD SUITE 400
City: WILMINGTON
State: DE
Zip Code: 19808

Franchise Tax: $ 180,000.00
$ 100.00 Penalty: $ 0.00
1.5% Monthly Interest: $ 3,420.46
Annual Filing Fee: $ 50.00
Previous Credit/Balance: $ 183,470.46 CR
Prepaid Quarterly Payments: $ 0.00
Amount Due: $ 0.00

| Begin Date | End Date | Designation/ Stock Class | No. of Shares | Par Value/ Share | No. of Shares Issued | Total Gross Assets | Asset Date (MM/DD/YYYY) |
|---|---|---|---|---|---|---|---|
| 11/20/2009 | | COMMON | 1,856,400,000 | .000009 | | | |
| | | PREFERRED | 115,800,280 | .000006 | | | |
| | | | | Total | | | |
| 05/26/2009 | 11/20/2009 | COMMON | 828,200,000 | .000006 | | | |
| | | PREFERRED | 115,800,280 | .000006 | | | |
| | | | | Total | | | |
| 02/14/2008 | 05/26/2009 | COMMON | 826,845,408 | .000025 | | | |
| | | PREFERRED | 11,545,686 | .000025 | | | |
| | | | | Total | | | |

End Date of Fiscal Year: 12/31/2009  *(MM/DD/YYYY)

Dates of Inactivity
From Date: [    ] (MM/DD/YYYY)   To Date: [    ] (MM/DD/YYYY)

[Recalculate Tax]  [Cancel Recalculation]

## Principal Place of Business

| | Street Address* (Do not use P.O. Box) | City* | State* or Province* | Zip* or Postal Code | Country* | Phone number Extension | |
|---|---|---|---|---|---|---|---|
| | | | DE | | UNITED STATES | | |