UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

PAUL D. CEGLIA,

Plaintiff,

-vs-

MARK ELLIOT ZUCKERBERG
and FACEBOOK, INC.

Defendants.

-------------------------------------------------------------

<u>PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS'
MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER</u>
Docket No. 10-CV-569-RJA

CONNORS & VILARDO, LLP
Attorneys for Plaintiff
1000 Liberty Building
424 Main Street
Buffalo, New York 14202
716-852-5533

Terrence M. Connors, Esq.
Lawrence J. Vilardo, Esq.
        Of Counsel

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................... 1

ARGUMENT: PLAINTIFF IS ENTITLED TO PRESERVATION
OF THE STATUS QUO ........................................................................... 3

    1.    SUCCESS ON THE MERITS ................................................. 4

    2.    IRREPARABLE HARM ......................................................... 7

    3.    BALANCING OF THE HARDSHIPS .................................... 10

    4.    DEFENDANTS HAVE FAILED TO DEMONSTRATE
        THAT A BOND IS NECESSARY ......................................... 11

CONCLUSION ....................................................................................... 13

## TABLE OF AUTHORITIES

Page
----------

AIM Int'l Trading, L.L.C. v. Valcucine S.P.A., I.B.I., L.L.C.,
   2002 WL 1285557 (S.D.N.Y. 2002) .................................................... 9

American Cash Card Corp. v. AT&T Corp., 1995 WL 758883
   (S.D.N.Y. 1995) ............................................................................... 9

Burke v. Bowen, 40 N.Y.2d 264, 386 N.Y.S.2d 654 (1976) ......................... 7

Cho v. 401-403 57th Street Realty Corp., 300 A.D.2d 174, 752 N.Y.S.2d 55
   (1st Dep't 2002) ............................................................................... 8

Corning Inc. v. Picvue Electronics, 365 F.3d 156 (2d Cir. 2004) .............. 11

Doctor's Assocs. v. Distajo, 107 F.3d 126 (2d Cir. 1997) ........................... 11

Eng v. Smith, 849 F.2d 80 (2d Cir. 1988) .................................................... 5

Franke v. Wiltschek, 209 F.2d 493 (2d Cir. 1953) ...................................... 7

Gerard v. Almouli, 746 F.2d 936 (2d Cir. 1984) ......................................... 9

Guinness-Harp Corp. v. Jos. Schlitz Brewing Co., 613 F.2d 468 (2d Cir. 1980) ... 7, 9

Gulf & Western Indus., Inc. v. Great Atlantic & Pacific Tea Company, Inc.,
   476 F.2d 687 (2d Cir. 1973) ............................................................. 4

In re Galewitz, 3 A.D.2d 280, 286, 160 N.Y.S.2d 564 (1st Dep't),
   affirmed, 5 N.Y.2d 721, 177 N.Y.S.2d 708 (1958) ............................ 8

Jacobson & Co., Inc. v. Armstrong Cork Co., 548 F.2d 438
   (2d Cir. 1977) .................................................................................. 9

Jolly v. Coughlin, 76 F.3d 468 (2d Cir. 1996) ............................................. 3

Kaplan v. Lippman, 75 N.Y.2d 320, 552 N.Y.S.2d 903 (1990) ................... 8

Matter of Fontana D'Oro Foods, Inc., 65 N.Y.2d 886, 493 N.Y.S.2d 300 (1985) ....... 8

TABLE OF AUTHORITIES - Continued

Page

Merkos L'inyonei Cinuch, Inc. v. Otsar Sifrei Lubavitch, Inc., 312 F.3d 94
    (2d Cir. 2002) ................................................................. 3, 10

Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp., 992 F.2d 430
    (2d Cir. 1993) .................................................................... 7

Niagara Mohawk Power Corp. v. Graver Tank & Manufacturing Co.,
    470 F. Supp. 1308 (N.D.N.Y. 1979) ................................. 7

Norcom Electronics Corp. v. CIM USA, Inc., 104 F. Supp.2d 198
    (S.D.N.Y. 2000) ................................................................ 9

Payroll Express Corp. v. Aetna Casualty and Surety Co., 659 F.2d 285
    (2d Cir. 1981) .................................................................... 8

Reuters Ltd. v. United Press Int'l., Inc., 903 F.2d 904 (2d Cir. 1990) .............. 3, 7, 9

Rodas Drilling Co. v. Siegal, 552 F.3d 1203 (10th Cir. 2009) .................................. 11

Shapiro v. Cadman Towers, Inc., 51 F.3d 328 (2d Cir. 1995) .................................... 7

Tom Doherty Associate, Inc. v. Saban Entertainment, Inc., 60 F.3d 27
    (2d Cir. 1995) ................................................................ 8, 9

Travellers Intern. AG v. Trans World Airlines, Inc., 722 F. Supp. 1087
    (S.D.N.Y. 1989) ................................................................ 8

Triggs v. Triggs, 61 A.D.2d 911, 402 N.Y.S.2d 820 (1st Dep't),
    affirmed, 46 N.Y.2d 305, 413 N.Y.S.2d 325 (1978) ......................................... 8

Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969
    (2d Cir. 1989)
.................................................................................................... 4, 7, 10

Varsames v. Palazzolo, 96 F.2d 361 (S.D.N.Y. 2000) ................................................. 11

Plaintiff, Paul D. Ceglia, submits this memorandum of law in opposition to the motion of defendants, Mark Elliott Zuckerberg ("Zuckerberg") and Facebook, Inc. ("Facebook"), to dissolve the temporary restraining order entered by the New York State Supreme Court, Allegany County (Hon. Thomas P. Brown).

## PRELIMINARY STATEMENT

Faced with a contract that bears Zuckerberg's signature and gives plaintiff at least a 50% ownership interest in Facebook, Zuckerberg and Facebook's motion is most striking for what it does <u>not</u> do:

- Zuckerberg and Facebook do <u>not</u> deny that the contract bears Zuckerberg's signature; and

- Zuckerberg and Facebook do <u>not</u> deny that Zuckerberg entered into the contract at a time when Zuckerberg had the authority to sell more than a 50% interest in Facebook.

Moreover, faced with a TRO that seeks simply to preserve the status quo by preventing the transfer of the ownership interest in Facebook, Zuckerberg and Facebook do <u>not</u> inform the Court that Zuckerberg has already transferred at least 76% of the original ownership of Facebook and that he currently retains only 24% or less ownership interest in Facebook.

The contract is real -- as is plaintiff's entitlement to at least a 50% ownership interest in Facebook (and other related property rights and business interests) pursuant to the clear terms of that contract. Moreover, there is no question that Zuckerberg has transferred what was not his to give away. Therefore,

if no form of restraint remains in place and Zuckerberg or Facebook take additional steps to transfer what belongs to plaintiff, there is no question that plaintiff will suffer irreparable harm.

But there also is no question that plaintiff wants what he owns to remain as profitable and valuable an asset as possible. Therefore, to the extent that the TRO can be read to restrain Facebook "from conducting its daily business or utilizing its assets," plaintiff agrees with defendants that it should be modified. Stated another way, plaintiff seeks to prevent dissipation of the value of Facebook or Zuckerberg's ownership interest in Facebook, but not in a way that would inadvertently prevent Facebook from operating and thereby reduce the value of the very asset in which the plaintiff owns a significant interest.

The remedy, then, is not vacating the restraint as the defendants' motion demands, but rather clarifying the restraint so that it protects the interests of both sides in the litigation while this matter is pending.

The state court had before it the contract and competent evidence that plaintiff had already suffered irreparable harm and will suffer more if additional dissipation of the asset in dispute is not enjoined. As a result, its issuance of a TRO was understandable. And the need to preserve the status quo remains. Accordingly, Facebook and Zuckerberg are not entitled to the relief their application asks this Court to grant them.

## ARGUMENT:  PLAINTIFF IS ENTITLED TO
## PRESERVATION OF THE STATUS QUO

Plaintiff must show (1) that it is likely to suffer irreparable injury if the injunction is not granted and (2) either (a) a likelihood of success on the merits of the case or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor. See Merkos L'inyonei Cinuch, Inc. v. Otsar Sifrei Lubavitch, Inc., 312 F.3d 94, 97 (2d Cir. 2002); Jolly v. Coughlin, 76 F.3d 468, 473 (2d Cir. 1996); Reuters Ltd. v. United Press Int'l., Inc., 903 F.2d 904, 907 (2d Cir. 1990).

Zuckerberg and Facebook's motion to dissolve the TRO presents three arguments.

Their first argument criticizes plaintiff for not following the Federal Rules of Civil Procedure when plaintiff filed a state court action and sought a temporary restraining order in state court.  The short answer, of course, is that plaintiff followed state court procedure and state court rules when he filed an action in state court and sought a TRO in state court.[1]

Second, Zuckerberg and Facebook mischaracterize the nature of the TRO and the basis for it.  Plaintiff does not seek to stop Facebook from operating as a business entity, generating profit, or maximizing the value of the company.  To

---

[1]    Plaintiff notes that his time in which to move to remand has not yet expired, and plaintiff is filing this opposition to Zuckerberg and Facebook's motion to dissolve without waiver of his right to file such a motion.  This opposition should not be construed as consent to subject matter jurisdiction or as consent to removal.

-3-

the contrary, plaintiff is entitled to 84% ownership of Facebook, and he has every incentive to ensure that it continues to operate profitably. Plaintiff seeks only to preserve the status quo by preventing Zuckerberg and Facebook from further transferring or diluting ownership interests in Facebook. That is a very real fear given that Zuckerberg already has transferred at least 76% ownership of Facebook.

Third, Zuckerberg and Facebook contend that plaintiff has not demonstrated irreparable harm or a likelihood of success on the merits. This argument ignores the contract itself and Zuckerberg's efforts to alienate an ownership interest in Facebook that was not his to sell or give away.

Zuckerberg and Facebook have asked this Court to vacate a restraining order designed to preserve the status quo while the parties litigate this matter. But they have failed to demonstrate that they are entitled to that relief or to provide sufficient assurance that, without some restraint, Zuckerberg will not further alienate, dissipate, or dilute what belongs to Paul Ceglia.

1.    SUCCESS ON THE MERITS

This prong of the standard involves an evaluation of plaintiff's substantive claim. See Gulf & Western Indus., Inc. v. Great Atlantic & Pacific Tea Company, Inc., 476 F.2d 687, 692-97 (2d Cir. 1973); see also Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 972-74 (2d Cir. 1989). To satisfy the "likelihood of success on the merits" standard, a movant "'need not show that success is an absolute certainty. [The movant] need only make a showing that the probability of

[its] prevailing is better than fifty percent. There may remain considerable room for doubt.'" Eng v. Smith, 849 F.2d 80, 82 (2d Cir. 1988) (quotation omitted).

      The verified complaint certainly sets forth a prima facie case that plaintiff has a significant ownership interest in Facebook. The verified complaint, together with the exhibits, allege that on April 28, 2003, plaintiff and Zuckerberg entered into a written agreement that included but was not limited to plaintiff's acquiring a 50% interest in the business of Zuckerberg and Facebook. (Verified Complaint, ¶ 4 and Exh. B).[2] The verified complaint alleges, and the contract provides, that plaintiff and Zuckerberg agreed that for each day after January 1, 2004, plaintiff would acquire an additional one percent (1%) in the business until the website was completed. (Verified Complaint, ¶ 6, Exh. B, ¶ 3). The verified complaint alleges that the website, The Facebook.com, was completed and operational on February 4, 2004. (Verified Complaint, ¶ 7). Thus, as the verified complaint alleges, and pursuant to the contract on its face, plaintiff had acquired an additional 34% interest in the business, for a total of 84%, as of February 4, 2004. (Verified Complaint, ¶ 8). The verified complaint alleges that plaintiff paid Zuckerberg for the contract, including a check in the amount of $1,000 on or about November 24, 2003, as well as providing other consideration. (Verified Complaint, ¶ 9, Exh. C). The verified complaint also alleges that plaintiff has complied with

---

[2]    More specifically, the contract provides that plaintiff "will own a half interest (50%) in the software, programming language and business interests derived from the expansion of that service to a larger audience." (Contract, ¶ 2).

the terms and conditions of the contract. (Verified Complaint, ¶ 11). Therefore, the verified complaint concludes that plaintiff is entitled to his 84% interest in Facebook. (Verified Complaint, "Wherefore" paragraph).

Zuckerberg and Facebook's motion contains only three-sentences asserting that plaintiff cannot demonstrate a likelihood of success on the merits. In fact, Zuckerberg's and Facebook's argument boils down to a single sentence: Because plaintiff did not file suit sooner, "plaintiff's claims are . . . almost certainly barred by the applicable statute of limitations, and the doctrines of laches, estoppel and waiver." That's it. That is the totality of defendants' argument on the merits. Zuckerberg and Facebook do not deny that the contract bears Zuckerberg's signature. They do not deny that Zuckerberg entered into the contract at a time when he had the authority to sell 84% of Facebook. They do not deny that plaintiff provided good and valuable consideration. Instead, they make the oxymoronic argument that the claims are "almost certainly" barred by the statute of limitations -- but they do not even cite the statute of limitations to which they refer or explain how the claim is time barred. They also make the completely conclusory assertion that plaintiff's claims are barred by the "doctrines of laches, estoppel and waiver," but again they do not explain why that is so.

Zuckerberg and Facebook's opposition is facially insufficient to overcome plaintiff's demonstration of an enforceable contract. Indeed, if Zuckerberg and Facebook's conclusory opposition is sufficient, then it is difficult to think of any

facially valid contract that could give rise to a finding of a likelihood success on the merits.

2.    IRREPARABLE HARM.

To establish irreparable harm, a plaintiff must demonstrate "an injury that is neither remote nor speculative, but actual and imminent." Tucker Anthony, 888 F.2d at 975 (quotation omitted). Irreparable injury is one "incapable of being fully remedied by monetary damages." Reuters Ltd., 903 F.2d at 907; see also Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 332 (2d Cir. 1995).

The same standard applies to claims for specific performance of a contract:  Under New York law, the absence of an adequate monetary remedy is an element of a claim for specific performance.[3] See Guinness-Harp Corp. v. Jos. Schlitz Brewing Co., 613 F.2d 468, 473 (2d Cir. 1980) ("New York follows the general rule that specific performance is available where there is no adequate monetary remedy"); accord Burke v. Bowen, 40 N.Y.2d 264, 386 N.Y.S.2d 654 (1976). As a result, while there are differences between the requirements for a preliminary injunction and the ultimate remedy of specific performance, irreparable harm is "a common element under both tests." Nemer Jeep-Eagle, Inc. v. Jeep-

---

[3]    While the issue of the preliminary injunction is controlled by federal law, state law determines whether there is an underlying basis for granting the ultimate relief of specific performance. See Franke v. Wiltschek, 209 F.2d 493, 496-97 (2d Cir. 1953); Niagara Mohawk Power Corp. v. Graver Tank & Manufacturing Co., 470 F. Supp. 1308 (N.D.N.Y. 1979).

Eagle Sales Corp., 992 F.2d 430, 433 (2d Cir. 1993). The cases granting specific

performance are therefore instructive as to the irreparable harm element of the

preliminary injunction test.

Most importantly, agreements to transfer shares of stock in a closely

held corporation may be enforced by specific performance. See, e.g., Matter of

Fontana D'Oro Foods, Inc., 65 N.Y.2d 886, 493 N.Y.S.2d 300 (1985); Triggs v.

Triggs, 61 A.D.2d 911, 402 N.Y.S.2d 820 (1st Dep't), affirmed, 46 N.Y.2d 305, 413

N.Y.S.2d 325 (1978); In re Galewitz, 3 A.D.2d 280, 286, 160 N.Y.S.2d 564 (1st

Dep't), affirmed, 5 N.Y.2d 721, 177 N.Y.S.2d 708 (1958). See also Kaplan v.

Lippman, 75 N.Y.2d 320, 552 N.Y.S.2d 903 (1990) (because a contract to transfer

corporate stock may be specifically enforced, so a contract to own stock in a

corporation that will own real estate is subject to specific performance); Cho v. 401-

403 57th Street Realty Corp., 300 A.D.2d 174, 752 N.Y.S.2d 55 (1st Dep't 2002).

Moreover, ownership in Facebook is a unique business opportunity, the loss of

which also constitutes irreparable harm. See, e.g., Tom Doherty Associate, Inc. v.

Saban Entertainment, Inc., 60 F.3d 27 (2d Cir. 1995).

Likewise, the courts have ordered specific performance of contracts

that require ongoing business relationships. See, e.g. Payroll Express Corp. v.

Aetna Casualty and Surety Co., 659 F.2d 285, 292-93 (2d Cir. 1981) (insured

entitled to permanent injunction requiring specific performance of insurance policy,

subject to insurer's power to fix premiums); Travellers Intern. AG v. Trans World

Airlines, Inc., 722 F. Supp. 1087, 1105-06 (S.D.N.Y. 1989) (tour operator entitled to permanent injunction requiring specific performance of contract with airline).

And the courts have not been reluctant to grant relief requiring the performance of ongoing business relationships. For example, in Tom Doherty, the Second Circuit affirmed a preliminary injunction requiring the parties not only to continue their book publishing contract but also to negotiate in good faith toward additional agreements to publish books in the future. 60 F.3d at 40-41 & n.1. Similarly, in Reuters Ltd., the Second Circuit reversed the District Court and entered a preliminary injunction requiring the defendant to continue to provide news photo service to the plaintiff. 903 F.2d at 909-10.[4]

In this case, plaintiff does not seek such invasive injunctive relief, and the TRO issued by the state court was designed to do -- and can be modified to clarify that it does -- nothing more than preserve the status quo. Contrary to the defendants' opposition, plaintiff does not ask "that Facebook stop 'transacting business'" or that Facebook should be "restrained from conducting its daily

_____

[4]     See also Gerard v. Almouli, 746 F.2d 936 (2d Cir. 1984) (upholding preliminary injunction requiring manufacturer to maintain exclusive distributorship); Guinness-Harp Corp., 613 F.2d 468 (upholding preliminary injunction requiring brewer to continue beer distributorship); Jacobson & Co., Inc. v. Armstrong Cork Co., 548 F.2d 438 (2d Cir. 1977) (upholding preliminary injunction requiring continuation of distributorship agreement); AIM Int'l Trading, L.L.C. v. Valcucine S.P.A., I.B.I., L.L.C., 2002 WL 1285557 (S.D.N.Y. 2002) (preliminary injunction to continue distributorship agreement); Norcom Electronics Corp. v. CIM USA, Inc., 104 F. Supp. 2d 198 (S.D.N.Y. 2000) (preliminary injunction compelling specific performance of spare parts provision of distributorship agreement); American Cash Card Corp. v. AT&T Corp., 1995 WL 758883 (S.D.N.Y. 1995) (preliminary injunction requiring continuation of commercial phone service).

business." Rather, plaintiff simply seeks to preserve the status quo by preventing

Zuckerberg and Facebook from continuing to dissipate portions of Zuckerberg's

ownership of Facebook.

Moreover, the threat of imminent harm is indeed real: As noted above,

the contract gives plaintiff at least 50%, and as much as 84%, of Facebook, but

Zuckerberg already has transferred at least 76% of his ownership interest. In other

words, plaintiff has already been harmed by the improper transfer of portions of his

ownership interest in Facebook. In view of that past history, the threat of future

transfers of ownership, absent relief maintaining the status quo, is indeed

imminent.


3.    **BALANCING OF THE HARDSHIPS**.

Because plaintiff has demonstrated the likelihood of success on the

merits, this Court need not consider balancing of the hardships; irreparable injury

and likelihood of success on the merits are sufficient. See Tucker Anthony, 888

F.2d at 969-75. If, however, the evidence submitted does not demonstrate plaintiff's

"likelihood" of success, it certainly demonstrates "sufficiently serious questions

going to the merits to make them a fair ground for litigation." See Merkos, 312 F.3d

at 96-97. Under those circumstances, an injunctive relief still may be issued if

there is a "balance of hardships tipping decidedly in the movant's favor." Id.

Here, the equities clearly weigh in favor of plaintiff. On the one hand,

plaintiff signed a contract, provided valuable consideration, and therefore is entitled

to a significant interest in Facebook.  On the other hand, Zuckerberg and Facebook have already transferred at least 76% of the ownership interest in Facebook. Without injunctive relief, plaintiff faces the very real possibility of losing his irreplaceable ownership interest in Facebook.  Under those circumstances, the balance clearly weighs in favor of preserving the status quo.  See, e.g., Varsames v. Palazzolo, 96 F. Supp. 2d 361, 368-69 (S.D.N.Y. 2000) (balance of hardships tipped in favor of party who would lose interest in real property without injunction).


4.    **DEFENDANTS HAVE FAILED TO DEMONSTRATE THAT A BOND IS NECESSARY.**

Facebook and Zuckerberg complain that the state court did not require plaintiff to post a bond in this matter.  But they have failed to demonstrate that they will suffer irreparable harm if a bond is not posted.

In the Second Circuit, whether to require the posting of a bond pursuant to Rule 65(c) is left to the "wide discretion" of the district court.  Doctor's Assocs. v. Distajo, 107 F.3d 126, 136 (2d Cir. 1997); see also Corning Inc. v. Picvue Electronics, 365 F.3d 156, 158-59 (2d Cir. 2004); Rodas Drilling Co. v. Siegal, 552 F.3d 1203, 1215 (10th Cir. 2009) (noting that district courts have wide latitude in determining whether a bond is required).  The party opposing the injunctive relief must make some showing that it will suffer irreparable harm to be entitled to the posting of a bond.  See, e.g., Doctor's Assocs. v. Stuart, 87 F.3d 975, 985 (2d Cir. 1996).

-11-

Facebook and Zuckerberg have made no showing that they will suffer harm if the status quo is maintained while this litigation proceeds. Accordingly, this Court need not vacate the state court's order based on that court's failure to require the posting of a bond, and this Court need not compel plaintiff to post any bond. Maintaining the status quo in a manner that guarantees non-dissipation of additional ownership in Facebook while allowing for the continuing profitability of the company will not harm Facebook or Zuckerberg, which helps explain why they have failed to demonstrate that they are entitled to the posting of some surety while the status quo is maintained.

## CONCLUSION

Plaintiff has made the necessary showing under Rule 65 that transfer of additional ownership interest in Facebook would cause him irreparable harm and that he is likely to succeed on the merits.  Maintaining the status quo will not harm the defendants while plaintiff's contract rights are enforced.  Accordingly, this Court should modify the TRO as appropriate but should otherwise deny the defendant's motion and should continue to restrain the defendants from dissipating or diluting the ownership of Facebook while this action proceeds.

DATED:    Buffalo, New York
           July 16, 2010

*Terr M. Connors*
Terrence M. Connors, Esq.
Lawrence J. Vilardo, Esq.
James W. Grable, Jr., Esq.
CONNORS & VILARDO, LLP
Attorneys for Plaintiff
1000 Liberty Building
424 Main Street
Buffalo, New York 14202
716-852-5533
tmc@connors-vilardo.com
ljv@connors-vilardo.com
jwg@connors-vilardo.com

Paul A. Argentieri, Esq.
188 Main Street
Hornell, New York    14843
607-324-3232