UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PAUL D. CEGLIA,

                      Plaintiff,

      -against-                      1:10-cv-00569-RJA

MARK ELLIOT ZUCKERBERG, Individually, and
FACEBOOK, INC.,

                     Defendants.

## REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISSOLVE THE TEMPORARY RESTRAINING ORDER

Lisa T. Simpson
Daniel W. Robertson, Jr.
ORRICK, HERRINGTON &
SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019
(212) 506-5000

Michael B. Powers
Sean C. McPhee
PHILLIPS LYTLE LLP
3400 HSBC Center
Buffalo, New York  14203-2887
(716) 847-8400
Attorneys for Defendant Mark Elliot
Zuckerberg and Facebook, Inc.

**TABLE OF CONTENTS**

**Page**

I.    THE TRO HAS EXPIRED AND WAS NEVER EFFECTIVE AGAINST MARK ZUCKERBERG ................................................................................................................2

II.   PLAINTIFF CONCEDES THAT THE TRO IS DEFECTIVE .........................................3

III.  PLAINTIFF HAS NOT ESTABLISHED ANY OF THE REQUIREMENTS FOR A TEMPORARY RESTRAINING ORDER ....................................................................4

    A.    Plaintiff Fails to Show Any Urgency or Immediacy or Why He Has No Adequate Remedy at Law................................................................................4

    B.    Plaintiff Has Not and Cannot Show Likely Success on the Merits........................5

    C.    The Balance of Equities Favors Defendants ............................................................8

IV.   IN THE EVENT OF A TRO, PLAINTIFF MUST POST BOND.....................................9

# **TABLE OF AUTHORITIES**

**Page**

### **CASES**

*Alexander v. Phillips Pet. Co.*,
   130 F.2d 593 (10th Cir. 1942)..................................................................................................6

*Amhad v. Long Island University*,
   18 F. Supp. 2d 245 (E.D.N.Y. 1998)........................................................................................4

*Davis v. Cornerstone Telegraph Co., LLC*,
   878 N.Y.S.2d 800 (3d Dept. 2009)..........................................................................................5

*Doctor's Associate, Inc. v. Stuart*,
   85 F.3d 975 (2d Cir. 2004)........................................................................................................9

*Feldman v. Teitelbaum*,
   554 N.Y.S.2d 265 (2d Dept. 1990)..........................................................................................6

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Automobile Truck Drivers,*
   *Local No. 70 of Alameda County*,
   415 U.S. 423 (1974)..................................................................................................................3

*In re First Repub. Group Realty LLC*,
   421 B.R. 659 (Bankr. S.D.N.Y. 1999).....................................................................................4

*Kalipharma Inc. v. Bristol Myers Co.*,
   707 F. Supp. 741 (S.D.N.Y. 1989)...........................................................................................4

*Leadsinger, Inc. v. Cole*,
   2006 WL 2266312 (S.D.N.Y. Aug. 4, 2006) ..........................................................................2

*New Era Public Intn'l., ApS v. Henry Holt and Co., Inc.*,
   873 F.2d 576 (2d Cir. 1989) .....................................................................................................6

*Rabbi Jacob Joseph School v. Province of Mendoza*,
   342 F. Supp. 2d 124 (E.D.N.Y. 2004).....................................................................................3

*Schulz v. State*,
   81 N.Y.2d 336 (N.Y. 1993)..................................................................................................6, 8

*State v. Fenton*,
   414 N.Y.S.2d 58 (3d Dept. 1979)............................................................................................5

## **TABLE OF AUTHORITIES**

**Page**

*Swain v. Brookdale Sr. Living,*
  2009 WL 3162143 (W.D.N.Y. Sept. 27, 2009) ............................................................... 3

*Tabbaa v. Chertoff,*
  2005 WL 3531828 (W.D.N.Y. Dec. 22, 2005) ............................................................... 5

*Tough Traveler Ltd. v. Outbound Products,*
  60 F.3d 964 (2d Cir. 1995) ............................................................................................ 4

*Zegers v. Zegers, Inc.,*
  348 N.E.2d 210 (Ill. App. 1976) .................................................................................... 6

## **STATUTES**

Fed R. Civ. P. 65 ................................................................................................................. 9

N.Y. CPLR § 213 ................................................................................................................. 5

Defendants Mark Zuckerberg ("Zuckerberg") and Facebook, Inc. ("Facebook") respectfully submit this reply memorandum in further support of their motion to dissolve the temporary restraining order (the "TRO") entered by the New York Supreme Court in this action on June 30, 2010. Defendants have proven that the TRO has expired, that it is improper under any and all applicable state and federal laws and that, as a result, if not already expired, it must be dissolved.

Plaintiff, in his Opposition, acknowledges that the TRO is defective. Notably, he fails to defend, or even address, any of the numerous deficiencies in Plaintiff's application or the state court's Order, as set forth in Defendants' initial moving papers. Instead, Plaintiff seeks new affirmative relief, in the form of a "modified" TRO that was not before the state court, and introduces new arguments and facts not raised in his initial motion. Plaintiff's arguments are procedurally improper. If Plaintiff wishes to bring a motion seeking preliminary injunctive relief or otherwise seeking relief other than the TRO issued by the state court, he is free to do so.

In any case, Plaintiffs' arguments fail. First, Plaintiff insists that this TRO would maintain the status quo. But maintaining the status quo in this action would be to allow Facebook to operate its company as it always has – with freedom to retain and hire employees, to acquire other business and assets, and to procure investments in the company, activities that have helped to fuel Facebook's extraordinary growth and success over the past six plus years. While Plaintiff claims that he does not want to restrain Facebook from operating its business, this is precisely what the TRO would do.

Regardless, Plaintiff has not and cannot make the showing required for the extraordinary sort of relief requested here. He makes no attempt to satisfy the requirement of immediacy, giving no explanation at all as to why he needs immediate relief now after waiting seven years to do so. He fails to explain why his alleged harm is irreparable such that monetary relief would

not be adequate.  And, he fails to address the numerous obstacles with respect to his claim on the merits.  Equity further does not favor Plaintiff here – there is no reason why an individual who sat on his alleged rights for over six years should be heard to say that now, all of a sudden, he requires immediate relief.

**I.      THE TRO HAS EXPIRED AND WAS NEVER
        EFFECTIVE AGAINST MARK ZUCKERBERG**

As set forth in Defendants' Application for Expedited Hearing on Defendants' Motion to Dissolve the Temporary Restraining Order, the TRO expired on July 9, 2010, in accordance with the state court's Order to Show Cause.  Plaintiff makes no attempt to address this point at all.  This implicit concession perhaps explains Plaintiff's quick abandonment of the original TRO and his efforts to instead obtain some sort of modified injunctive relief.  But Plaintiff cannot modify something that does not exist.

In addition, Plaintiff writes his Opposition as though Defendant Mark Zuckerberg is bound by the TRO – he is not and never was, as he was not properly served.[1]  See Leadsinger, Inc. v. Cole, 2006 WL 2266312, at *11 (S.D.N.Y. Aug. 4, 2006) ("[T]he failure to serve [a state court] order to show cause in the manner directed is fatal to the enforcement of that order.") (citing Sorli v. Coveney, 51 N.Y.2d 713, 714 (N.Y. 1980) ("Inasmuch as petitioner failed to follow the provisions for service specified in the order to show cause, the petition must be dismissed.")).  Plaintiff ignores this critical fact.

As neither Defendant is bound by the TRO at this time, Plaintiff's efforts to enforce or modify it are futile.  The Court need go no further to decide the instant motion.

---

[1] As noted in Defendants' prior submissions, Mark Zuckerberg again reserves all rights and defenses to this action and joins this motion only to the extent that the Court somehow deems him bound by the TRO.

II.   **PLAINTIFF CONCEDES THAT THE TRO IS DEFECTIVE**

Plaintiff fails to address any of the procedural deficiencies under the Federal Rules cited by Defendants in their moving papers, thus conceding that the TRO meets none of them. Instead, Plaintiff argues that the TRO "followed **state** court rules and **state** court procedure." (Pl. Opp. at 3). That is irrelevant. Controlling Supreme Court precedent states that the Federal Rules of Civil Procedure control state court orders after removal and that those state court orders must be dissolved if they do not comply with the Federal Rules. Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, Local No. 70 of Alameda County, 415 U.S. 423, 437 (1974); see also Swain v. Brookdale Sr. Living, 2009 WL 3162143, at *4 (W.D.N.Y. Sept. 27, 2009); Rabbi Jacob Joseph School v. Province of Mendoza, 342 F. Supp. 2d 124, 127 (E.D.N.Y. 2004).

Although Plaintiff himself drafted the specific terms of the order the state court signed, he now refuses to defend it and instead asks this Court to put in place a different order – one that he claims would not restrain Facebook from "operating a business entity, generating a profit, or maximizing the value of the company." (Pl. Opp. at 3). But, Plaintiff cannot seek affirmative relief by opposing this motion. Indeed, Plaintiff even suggests in his Opposition that he is seeking to "restrain the defendants . . . while this action proceeds." (Pl. Opp. at 13) (emphasis added). That smacks of a request for a preliminary injunction – relief that Plaintiff has neither properly sought by his own motion on notice nor have Defendants been permitted to address (and would strenuously oppose). If Plaintiff wishes to make a proper motion for the affirmative relief he seemingly seeks, Defendants will oppose in due course – any such intention, however, has no ability to rescue the defective TRO before the Court on this motion.

3

### III. PLAINTIFF HAS NOT ESTABLISHED ANY OF THE REQUIREMENTS FOR A TEMPORARY RESTRAINING ORDER

Even if somehow the TRO has not expired, or the procedural deficiencies or issues of over-breadth were not present, Plaintiff still cannot establish entitlement to TRO relief, as he has failed to show any irreparable harm or remotely demonstrated a likelihood of success. Moreover, the equities here counsel strongly against injunctive relief.

#### A. Plaintiff Fails to Show Any Urgency or Immediacy or Why He Has No Adequate Remedy at Law

Plaintiff cannot establish irreparable harm. Plaintiff does not even address the issue of urgency and immediacy, a required element, particularly when seeking a TRO. The alleged contract at issue was dated April 2003 and concluded, according to Plaintiff, in February 2004. Plaintiff provides no explanation as to why he waited over six years to bring this suit nor does he explain why his claim is now urgent when it was not for the past six and a half years. This interminable delay undercuts and vitiates any claim to irreparable harm, which requires a showing of urgency requiring immediate intervention. See Kalipharma Inc. v. Bristol Myers Co., 707 F. Supp. 741, 756 (S.D.N.Y. 1989) (seven month delay barred TRO, as "[s]ignificant delay rebuts an inference of irreparable harm"); Amhad v. Long Island Univ., 18 F. Supp. 2d 245, 249 (E.D.N.Y. 1998) ("The Second Circuit [has] further held that '[l]ack of diligence, standing alone, may ... 'preclude the granting of preliminary injunctive relief, because it goes primarily to the issue of irreparable harm ....'") (citing Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, 934 F.2d 30, 33-34 (2d Cir.1991)); In re First Repub. Group Realty LLC, 421 B.R. 659, 679 (Bankr. S.D.N.Y. 1999) ("A party's delay in seeking relief, in the face of potential harm caused by such a delay, vitiates a party's claim that such harm is irreparable."); Tough Traveler Ltd. v. Outbound Prods., 60 F.3d 964, 968 (2d Cir. 1995) ("Nonetheless, any such

4

presumption of irreparable harm is inoperative if the plaintiff has delayed either in bringing suit or in moving for preliminary injunctive relief."). This alone is fatal to his claim.

Additionally though, Plaintiff has an adequate remedy at law in monetary damages. Plaintiff fails to provide any explanation as to why monetary damages would not be sufficient. Without irreparable harm, no TRO is warranted. Tabbaa v. Chertoff, 2005 WL 3531828, at *5 (W.D.N.Y. Dec. 22, 2005).

### B.     Plaintiff Has Not and Cannot Show Likely Success on the Merits

The significant obstacles to Plaintiff's claim precludes any finding that he is likely to succeed. As an initial matter, Plaintiff fails to establish jurisdiction over either Defendant to this action for these claims. With respect to Facebook, Plaintiff seeks to assert specific performance of a contract to which Facebook is not, and has never been, a party. As to Mark Zuckerberg, he is a citizen of California and has no domicile in New York. Further, Zuckerberg was a freshman at Harvard in Massachusetts at the time of the alleged contract. Plaintiff's Verified Complaint is entirely void of any allegations sufficient to tie Zuckerberg to New York for purposes of enforcing this alleged contract in this Court.

Plaintiff's claim is also plainly barred by the statute of limitations, six years under N.Y. CPLR § 213. Plaintiff alleges that according to the contract dated April 2003, "as of February 2004," "Plaintiff had acquired . . . a total of 84%" of Facebook. (Pl. Opp. at 5) (emphasis added). Plaintiff's claim therefore accrued in February 2004 when that ownership interest was not transferred to Plaintiff. This is true whether Plaintiff characterizes his claim as one for breach of contract, or as in his Opposition, one for specific performance. State v. Fenton, 414 N.Y.S.2d 58, 59 (3d Dept. 1979) (breach of contract claim accrues when a contract is breached or when one omits the performance of an obligation); Davis v. Cornerstone Tel. Co., LLC, 878 N.Y.S.2d 800, 802 (3d Dept. 2009) (plaintiff's claims to ownership share in business were

5

"untimely because plaintiff did not assert them until more than six years after the money was paid and defendants breached their obligations by failing to grant him part ownership or otherwise compensate him"); Feldman v. Teitelbaum, 554 N.Y.S.2d 265, 266 (2d Dept. 1990) (holding claim for specific performance of contract for ownership interest of corporation time-barred when plaintiff brought suit more than six years after time specified for performance under contract).

Laches also prevents Plaintiff's equitable claims for specific performance and injunctive relief. "Laches is defined as such neglect or omission to assert a right as, taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity….The essential element of this equitable defense is delay prejudicial to the opposing party." Schulz v. State, 81 N.Y.2d 336, 348 (N.Y. 1993) (quotations and citation omitted). See also New Era Pub. Intn'l., ApS v. Henry Holt and Co., Inc., 873 F.2d 576, 584 (2d Cir. 1989) ("Nevertheless, equitable considerations dictate denial of injunctive relief in this action. The prejudice suffered by [defendant] as the result of [plaintiff's] unreasonable and inexcusable [two year] delay in bringing the action invokes the bar of laches."); Alexander v. Phillips Pet. Co., 130 F.2d 593, 605 (10th Cir. 1942) ("A person may not withhold his claim awaiting the outcome of a doubtful enterprise and, after the enterprise has resulted in financial success favorable to the claimant, assert his interest, especially where he has thus avoided the risks of the enterprise….A substantial increase in the value of the property involved, where the right could have been asserted before such increase and the granting of relief would work inequity, is a circumstance which may be considered in applying the doctrine of laches."); Zegers v. Zegers, Inc., 348 N.E.2d 210, 217 (Ill. App. 1976) (laches and equity bars claims where defendant "labored, took risks and incurred obligations to insure the financial success of their company while plaintiff sat by and risked nothing. The defendant corporation

6

and the individual defendants have clearly changed their positions in reliance upon their belief that plaintiff was not a shareholder.").

Here, Plaintiff stood by while Facebook grew into a household name, with hundreds of millions of users worldwide and over 1000 employees.  He also sat back while Facebook engaged in the various equity investments that he cites in his papers, including a $240 million investment by Microsoft that has been reported upon by numerous media outlets.  Allowing Plaintiff to assert his stale claims after this interminable and inexcusable delay is plainly prejudicial to Facebook, as well as the other investors.

Even if Plaintiff could overcome these dispositive threshold obstacles – and he has made no effort to do so here – he still would fall far short of the showing of likelihood of success on the merits that would be necessary to warrant injunctive relief.  Plaintiff's claim hinges on the assertion that, in the spring of his freshman year at Harvard, Mark Zuckerberg used a "work for hire" contract to attract investment in and assign ownership of a project that he did not in fact contemplate or create until his sophomore year.  Particularly when coupled with the inexplicable six-and-one-half year delay in bringing this action – as well as public sources raising substantial questions about the credibility of Plaintiff[2] – the implausibility of Plaintiff's claim on its face means that Plaintiff has not and cannot establish a likelihood of success on the merits.

As for the purported contract itself, it is wrought with irregularities, inconsistencies and undefined terms, all of which further demonstrate Plaintiff's inability to show likely success on the merits.  For example, the purported contract provides for consideration to be paid by Plaintiff to Mr. Zuckerberg in the amount of $1,000.00 for work to be done on a "StreetFax Database"

---

[2] Public reports reveal that Plaintiff has been investigated and prosecuted by the New York State Attorney General for fraud.  See "Attorney General Cuomo Obtains Temporary Restraining Order Against WNY Wood Pellet Company Sued for Defrauding Customers," available at http://www.ag.ny.gov/media_center/2009/dec/dec29a_09.html.

7

and $1,000.00 for "the work to be performed for 'The Page Book.'"  Accordingly, by its own terms, the purported contract proffered as the sole basis for Plaintiff's claim – even assuming it is authentic – does not even provide for consideration for work done on what is inconsistently and contradictorily referred to elsewhere in the document as "The Facebook."  In addition, the only evidence of consideration that Plaintiff provides is unsubstantiated.  The item attached as Exhibit C to Plaintiff's Complaint, which he refers to as a check, is not a check at all.  It is a receipt from a checkbook created by plaintiff and dated six months after the contract – perhaps this explains Plaintiff's "upon information and belief" pleading as to this element.  Moreover, because the contract's terms require the payment of $2000 total, Plaintiff's alleged "proof" that he paid $1000 does not even show complete performance on his part.  Paragraph 9 of the alleged contract defines what occurs if payment terms are not satisfied by Plaintiff – i.e., "in the event that StreetFax defaults on payment terms, [all proprietary] rights would be granted to seller."  Thus, even setting aside the many substantial questions surrounding the authenticity of this document, all proprietary rights to anything covered by it (including, on Plaintiff's theory, Facebook) have reverted to Mr. Zuckerberg.

    **C.**    **The Balance of Equities Favors Defendants**

Plaintiff deserves no equitable relief.  After resting on his alleged rights for over six years, Plaintiff appeared in state court with no notice to Defendants, seeking a TRO specifically designed to severely hamper Facebook's ability to do business.  His lack of urgency, followed by his highly objectionable, ex parte use of legal process to attempt to gain leverage in this litigation, shift the equities in Defendants' favor.  Since 2004, Facebook and its employees have worked extremely hard to successfully operate and grow the company.  Numerous people now rely on this thriving business – Facebook employs over 1,000 people and provides services to hundreds of millions of people around the world.  Its operations and services would be

substantially hampered by the TRO proposed by Plaintiff, severely compromising the interests of its employees and users.

Plaintiff attempts to soften his drastic and undeserved request for relief by arguing that he is just seeking to preserve the status quo. He is not. The status quo consists of Facebook operating the company as it has been operated for the past six plus years, allowing it to use all the tools that it needs to grow and build the business. As an example, like many technology companies, Facebook uses stock and other equity instruments to procure investments, acquire assets, and hire and compensate employees. The TRO that Plaintiff proposes would restrain such activities. Equity cannot work a disproportionate harm to Defendants for so little – if any – benefit to Plaintiff. See Schulz, 81 N.Y.2d at 348-49.

### IV.   IN THE EVENT OF A TRO, PLAINTIFF MUST POST BOND

Plaintiff's brief fundamentally misstates the law governing bonds in injunctive actions, claiming that the party opposing the injunction must show "irreparable" harm to be entitled to security. (Pl. Opp. at 11). This is false. The Second Circuit case Plaintiff cites actually states that a party must only show "proof of likelihood of harm." Doctor's Assoc., Inc. v. Stuart, 85 F.3d 975, 985 (2d Cir. 2004). Per FRCP 65, the Court is required to make a finding on security, even though it retains discretion in doing so. Here, likely harm is plain.

The TRO plaintiff proposes would prevent the company from using stock to raise money to grow the business and fund new ideas and projects as it has in the past or to acquire other businesses and assets – all the things that has made the company successful to date. It also, as noted above, would impair Facebook's ability to recruit and compensate new employees. Plaintiff admits that interrupting operations in this fashion could substantially damage Facebook. It would be difficult to value the potential harm to Facebook by such an improvidently granted TRO, but it is certain that this fundamental change in the status quo would require a bond

consisting of many hundreds of millions of dollars.  Should the Court determine that the TRO is warranted, Defendants are prepared to submit information under seal or *in camera*, with respect to quantifying its potential harm; as a privately held company, Facebook's valuation and stock ownership is extremely sensitive information.

## **CONCLUSION**

For the reasons set forth above, and in Defendants' Motion to Dissolve and Application for Expedited Hearing on Defendants' Motion to Dissolve the Temporary Restraining Order, the state court TRO should be declared expired and/or the TRO should be dissolved.

Dated: July 19, 2010
New York, New York

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: /s/ Lisa T. Simpson
Lisa T. Simpson
Daniel W. Robertson, Jr.

51 West 52nd Street
New York, New York  10019
(212) 506-5000

PHILLIPS LYTLE LLP
Michael B. Powers
Sean C. McPhee
3400 HSBC Center
Buffalo, New York  14203-2887
(716) 847-8400

Attorneys for Defendants Mark Elliot Zuckerberg and Facebook, Inc.