UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  |  |  |
|---|---|---|
| PAUL D. CEGLIA, | x<br>:<br>: |  |
| Plaintiff, | :<br>: |  |
| v. | :<br>:<br>: | Civil Action No. 1:10-cv-00569-RJA |
| MARK ELLIOT ZUCKERBERG, Individually, and FACEBOOK, INC., | :<br>:<br>:<br>: |  |
| Defendants. | :<br>x |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## DEFENDANTS' OPPOSITION TO CEGLIA'S MOTION TO REMAND

Thomas H. Dupree, Jr.
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
(202) 955-8500
*(Pro hac vice admission pending)*

Terrance P. Flynn
HARRIS BEACH PLLC
726 Exchange Street
Suite 1000
Buffalo, NY 14210
(716) 200-5120

Orin Snyder
Alexander H. Southwell
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193
(212) 351-4000
*(Admission pending)*

Lisa T. Simpson
ORRICK, HERRINGTON
 & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
(212) 506-3767

August 30, 2010

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS ................................................................................... 3

ARGUMENT ...................................................................................................... 8

I.      Diversity Jurisdiction Exists Because Zuckerberg Is A California Domiciliary ............... 8

      A.      Zuckerberg Is A California Resident And Has Made California His Permanent, Fixed Home. ................................................................ 9

      B.      Zuckerberg's Domicile In 2004 Has Little Bearing On His Domicile in 2010, Particularly Given The Dramatic Changes In His Life And His Company Over The Past Six Years ................................................. 12

II.     Jurisdictional Discovery Is Unnecessary. ......................................................... 15

CONCLUSION ................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apace Commc'ns v. Burke*, 2009 WL 1748711 (W.D.N.Y. June 19, 2009) ......................... 13, 14

*ConnectU LLC v. Zuckerberg*, 482 F. Supp. 2d 3 (D. Mass. 2007), *rev'd on other grounds*, 522 F.3d 82 (1st Cir. 2008).............................................................................. *passim*

*Fein v. Chrysler Corp.*, 1998 WL 34032284 (S.D.N.Y. Sept. 29, 1998) .............................. 15, 16

*Francke v. Martin*, 1994 WL 132293 (S.D.N.Y. Apr. 14, 1994) .................................... 13, 14, 15

*Galu v. Attias*, 923 F. Supp. 590 (S.D.N.Y. 1996) ....................................................... 9

*Gudavadze v. Kay*, 556 F. Supp. 2d 299 (S.D.N.Y. 2008) ............................................ 16

*Hodge v. Sun Qu Hong*, 2006 WL 2669467 (W.D.N.Y. Sept. 15, 2006).................................... 10

*Linardos v. Fortuna*, 157 F.3d 945 (2d Cir. 1998) .................................................... 8, 9

*Mollan v. Torrance*, 22 U.S. 537 (1824)................................................................ 8

*Morrison v. Blitz*, 1996 WL 403034 (S.D.N.Y. July 18, 1996)........................................ 8, 9, 10

*Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224 (S.D.N.Y. 1991) .................................... 9

*New York Life Ins. Co. v. Hassan*, 2010 WL 3070091 (W.D.N.Y. Aug. 4, 2010) ........... 11, 12, 15

*Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38 (2d Cir. 2000) ................................. 8, 9

*Reynolds v. Wohl*, 332 F. Supp. 2d 653 (S.D.N.Y. 2004)........................................... 13

*Scheidemann v. Qatar Football Ass'n*, 2008 WL 144846 (S.D.N.Y. Jan 15, 2008) ................... 16

**Other Authorities**

California Voter Registration Application,
https://www.sos.ca.gov/nvrc/fedform/App_PDF/english_blank.pdf...................................... 11

2010 California Driver Handbook, http://www.dmv.ca.gov/pubs/dl600.pdf .............................. 11

**INTRODUCTION**

Plaintiff Paul Ceglia does not want the federal court to hear his lawsuit.  Ceglia's claim is preposterous on its face—he alleges that he recently "discovered" a purported contract from 2003 that now entitles him to ownership of 84 percent of Facebook, a company with more than 500 million active users that has attracted massive media attention during the past half decade as Ceglia remained silent about this alleged contract.  In urging this Court to remand this case to state court, Ceglia misrepresents the facts and distorts the law.  The arguments in his brief, like the allegations in his complaint, are not credible.  His motion should be summarily denied.

There is no basis for remand because there is complete diversity of citizenship between the parties.  When Ceglia's lawyers suggested otherwise before filing this motion, Defendants immediately made clear that they were wrong.  Defendants shared documentary evidence establishing that Mark Zuckerberg lives year-round in California and has made California his permanent home, as would be expected of the CEO of a major California-based company.  Ceglia's lawyers, however, refused to consider this evidence in any meaningful way, turning a blind eye to their obligation to conduct a good-faith investigation.  Instead, they filed this remand motion to harass Defendants under the pretext of obtaining "jurisdictional discovery" into Zuckerberg's private life.

Ceglia rests his remand argument on the fact that a Massachusetts court, in an unrelated lawsuit, determined that as of <u>September 2, 2004</u>—nearly <u>six years</u> before this lawsuit was filed—Zuckerberg was a domiciliary of New York.  *See ConnectU LLC v. Zuckerberg*, 482 F. Supp. 2d 3, 31 (D. Mass. 2007), *rev'd on other grounds*, 522 F.3d 82 (1st Cir. 2008).  But the finding of the Massachusetts court about Zuckerberg's domicile in 2004 says nothing about

Zuckerberg's domicile in 2010, particularly when this Court examines the facts that Ceglia refused to consider:

- In 2004, Zuckerberg was a 20-year-old sophomore at Harvard University. He started what was then called "Thefacebook.com" from his college dorm, and decided to spend the summer of 2004 with friends in a group house in California to work on the website, which he ran out of the living room. Zuckerberg did not plan to remain in California and intended to return to Harvard to resume his studies. He considered New York—where he grew up and where his parents lived—his domicile, much as would any transient college student.

- As of 2010, more than half a decade later, Zuckerberg's life has changed dramatically. Thefacebook.com has grown into Facebook, Inc., one of the most well-known companies in the world. Zuckerberg is Facebook's Chairman and CEO and he resides year-round in California, where he lives within walking distance from the headquarters of the company he founded and continues to run today in Palo Alto. As Facebook grew into a major company, Zuckerberg decided to remain in California and make it his home. He never moved back east and never resumed his studies at Harvard. Since 2004, Zuckerberg has obtained a California driver's license, registered to vote (and voted) in California, paid California taxes, and taken numerous other steps that overwhelmingly establish that California is now his permanent home.

These incontrovertible facts and others are set forth more fully in Zuckerberg's accompanying declaration (attached as Exhibit A) and are dispositive. The Massachusetts court's determination about Zuckerberg's domicile in 2004 does not create a legitimate

jurisdictional dispute in 2010:  the Second Circuit has repeatedly held that individuals may change their domicile, and they may do so without erasing all connections to their prior home.

There is no need for "jurisdictional discovery."  In contrast to Ceglia's unfounded assertions, Defendants have submitted voluminous evidence, including driver's licenses, tax returns, utility and credit card bills, pay stubs, and much more—all accompanied by Zuckerberg's sworn declaration verifying these documents and attesting to his residence in California and his intent to remain permanently in California.  There are no facts that await disclosure, and Ceglia's motion fails to identify any evidence that has not already been produced and that would be relevant to Zuckerberg's domicile.  This Court has all the facts it needs to conclude that Zuckerberg and Facebook are citizens of California, that Ceglia is a citizen of New York, and that diversity jurisdiction therefore exists.

## STATEMENT OF FACTS

Zuckerberg is the founder, Chairman, and CEO of Facebook, Inc. ("Facebook"), a Delaware corporation with its principal place of business in Palo Alto, California.  Declaration of Mark Elliot Zuckerberg ("Decl."), ¶ 1.  Today, Facebook is one of the most widely recognized companies in the world.  *Id*., ¶¶ 30–31 (Facebook now has more than 500 million monthly active users, who spend more than 700 billion minutes per month on the site).[1]

---

1    In light of privacy and security concerns, we have redacted from some of the supporting documents to Zuckerberg's Declaration certain personal and sensitive information, including account numbers, social security numbers and the like.  None of this information is necessary for the domicile analysis and these types of redactions are specifically authorized, and in some cases mandated, by Federal Rule of Civil Procedure 5.2.

1.      **Zuckerberg's 2004 Domicile.**

Zuckerberg launched Thefacebook.com in February 2004 as an online directory for Harvard students.  Decl., ¶ 25.  Shortly after its launch, Zuckerberg and others were involved in litigation relating to "ConnectU"—a different site developed by Harvard students.

That case was filed in Massachusetts federal district court, and in the course of determining whether it had diversity jurisdiction over certain claims, the court found that as of September 2, 2004—the date that complaint was filed—Zuckerberg was domiciled in New York, the state where he grew up and where his parents lived.  This determination was based largely on the fact that Zuckerberg, who had arrived in California a few months earlier, had few ties to California and did not intend to remain indefinitely.  *See* 482 F. Supp. 2d at 28–29.

In the spring of 2004, Zuckerberg had decided to spend the summer months in California trying to grow his nascent business.  Decl., ¶ 26; 482 F. Supp. 2d at 28–29.  Thefacebook.com's servers were initially housed in New York, and Zuckerberg chose to spend the summer in Palo Alto because "it was a 'cool place' to spend the summer with his friends" and a hotbed of startups.  482 F. Supp. 2d at 29.  When he left for California at the end of the school year, he "moved his personal belongings into storage in Kirkland House, his dormitory, because he intended to go back to Harvard in the fall."  *Id.* at 28.

At the time, the company had no offices, employees, servers, or other infrastructure in California.  482 F. Supp. 2d at 28–29.  Zuckerberg and some friends subleased a furnished house in Palo Alto for the summer and worked out of the living room.  Decl., ¶ 27.  As the court explained in *ConnectU*:

> When he went to California in 2004, Zuckerberg was a twenty year old college student off to spend a summer hanging out with his friends in the mecca of the start-up world.  He moved into a summer sublet shared by a group of his college friends with one bag of possessions; his personal

> property was left either in storage at his dorm at Harvard or at his parents'
> house in New York.  Even in mid-September when Zuckerberg moved
> into an unfurnished house with his friends after the sublet ran out, they
> only purchased the bare essentials for furniture.

482 F. Supp. 2d at 31.

As the summer wound down, Zuckerberg decided that he would not return to Harvard for the fall 2004 semester.  Decl., ¶ 28.  He did not intend to remain permanently in California.  *Id*. Rather, his "plan was to stay in California for a term or two, see how Facebook was doing and then return to Harvard.  It was not Zuckerberg's intention to drop out of Harvard."  482 F. Supp. 2d at 28–29.  Indeed, his summer sublease was set to expire in mid-September 2004, and "he had not lined up another place to live in California."  *Id.* at 30.  Although Zuckerberg was hopeful that investors would support Facebook, the company had yet to receive a dime of venture capital funding.  *Id.* at 29.

That was the state of affairs as of September 2, 2004.  Zuckerberg was an itinerant college student planning on spending a few more months in California before resuming his studies at Harvard.  *See* Decl., ¶ 28 ("I thought it would be difficult to balance my work with my academic studies at that particular juncture, but also believed that the website's growth would stabilize and I would be able to run it from Harvard. . . .  I did not intend to remain in California indefinitely.").

### 2.  <u>Zuckerberg's 2010 Domicile</u>.

By 2010, things had changed dramatically.  During the intervening years, Facebook became one of the greatest success stories in American business, and Zuckerberg's life has fundamentally changed.  For present purposes, the key change is that while in September 2004 Zuckerberg did not intend to remain in California, today California is Zuckerberg's permanent, year-round residence and the state where he has put down his roots.  Indeed, it is the story of

Facebook's astounding growth and success that explains Zuckerberg's decision to forego a return to Harvard and to remain permanently in California where he continues to build and manage his company.

Beginning in the fall of 2004—<u>after</u> the date of the jurisdictional determination in *ConnectU*—Facebook began receiving multimillion-dollar infusions of venture capital funds that helped enable its exponential growth. What started as a small company managed by Zuckerberg and a handful of friends from a room in a summer sublet has now transformed into a business with approximately 1,600 employees and more than 500 million monthly users worldwide. The difference between 2004 and 2010 is the difference between a fledgling internet start-up and a company that now spans the globe and has revolutionized the ways in which people connect and share with one another.

It is therefore not at all surprising that, in the months and years after September 2, 2004, Zuckerberg decided to devote himself full-time to Facebook and to live in California. In fact, the *ConnectU* court expressly recognized the dramatic changes that occurred subsequent to September 2, 2004, explaining that:

> [I]n September of 2004, [Zuckerberg's] intent was to stay in California for a semester or maybe two to work on Facebook and see how it would go, but then he planned to return to school at Harvard. <u>It was only after the infusion of capital and the [full transition of its servers to California] in mid to late September, 2004, that Facebook began to take off exponentially and the landscape changed</u>.

482 F. Supp. 2d at 31–32 (emphasis added). Indeed, the court specifically found that at least as early as June 2006, Zuckerberg "had no . . . plans to return to Harvard." *Id.* at 30. Thus, the *ConnectU* court expressly recognized that as of June 2006, the underlying basis for its determination that Zuckerberg was a New York domiciliary in 2004—namely, that he intended to leave California and return to Harvard—no longer existed.

Zuckerberg never did return to Harvard.  He has lived continuously in California since 2004 and made it his permanent home.  Facebook is headquartered in Palo Alto, and Zuckerberg lives a short distance from his office—a common-sense decision given the immense demands of his job.  Decl., ¶ 4.  Zuckerberg owns no residences or other real property outside of California, and leaves California only for infrequent business travel and vacations.  *Id.*, ¶¶ 10–11.  During the past year, he was absent from California for no more than six weeks.  *Id.*, ¶ 11.

Zuckerberg "intend[s] to continue living and working [in California] for the indefinite future."  Decl., ¶ 32.  He resides in California—and <u>only</u> in California—and has manifested his intent to remain in numerous ways:

- He is registered to vote in California, and voted there in the 2008 presidential election.  Decl., ¶ 15.

- He filed a California state tax return in 2008, and filed an extension in California for his 2009 return.  Decl., ¶ 12.  His 2008 federal tax return lists a California home address.  *Id.*, ¶ 13.

- He does not pay income taxes in any other state.  The last time he filed a tax return in a state other than California was 2004.  Decl., ¶ 14.

- He has possessed a valid California driver's license since May 2006.  Decl., ¶ 16.

- He owns a car that is insured in California and has been registered in California since March 2008.  Decl., ¶ 9.  He owns no vehicles registered outside of California.  *Id.*

- He receives his mail, including his credit card and utility bills, at his home, business, and post office box addresses in California.  Decl., ¶¶ 7–8, 18, 23.

- He employs a California financial advisor and a California accountant, and his bank account and brokerage statements are sent to California addresses.  Decl., ¶¶ 19, 21.

As all of this evidence demonstrates, Zuckerberg considers California his "permanent home," and intends to "continue living and working [in California] for the indefinite future." Decl., ¶ 32.

## ARGUMENT

### I.   Diversity Jurisdiction Exists Because Zuckerberg Is A California Domiciliary.

Federal diversity jurisdiction requires complete diversity between all plaintiffs and defendants.  For purposes of the diversity statute, 28 U.S.C. § 1332, an individual's citizenship is determined by his domicile.  Domicile is "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (quotation omitted); *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998) (same).  A person can have but one domicile at any given time, and domicile is determined as of the date the complaint is filed.  *See Mollan v. Torrance*, 22 U.S. 537, 539 (1824) ("the jurisdiction of the Court depends upon the state of things at the time of the action brought").[2]

---

2    Where, as here, a case has been removed to federal court, a court must also assess whether diversity existed as of the date of removal.  *See Morrison v. Blitz*, 1996 WL 403034, at *1 (S.D.N.Y. July 18, 1996).  In this case, the lawsuit was removed nine days after it was filed, and the evidence and analysis are the same regardless of whether Zuckerberg's domicile is evaluated as of June 30, 2010 (the date Ceglia filed his complaint) or July 9, 2010 (the date of removal).

In determining a person's domicile, courts look to whether the person is physically present in the state, and to whether he has manifested an intent to remain indefinitely. Likewise, a party alleging a change in domicile must demonstrate, by clear and convincing evidence, residence in the new domicile and the intent to remain there. *Palazzo*, 232 F.3d at 42; *Linardos*, 157 F.3d at 948. As shown below, the evidence is overwhelming that Zuckerberg is domiciled in California and this Court may therefore exercise diversity jurisdiction.[3]

### A.    Zuckerberg Is A California Resident And Has Made California His Permanent, Fixed Home.

Zuckerberg's residence in California is strong evidence that he is a California domiciliary. Residence is *prima facie* evidence of domicile, *Galu v. Attias*, 923 F. Supp. 590, 595 (S.D.N.Y. 1996), and while domicile "is more than an individual's residence, . . . the two typically coincide." *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1227 (S.D.N.Y. 1991). Zuckerberg has lived continuously in California—and only in California—since 2004, with infrequent absences from the state (and only then for business travel or vacations). Decl., ¶¶ 4, 11. He owns no homes or other real property in any other state. *Id.*, ¶¶ 4, 10. Even Ceglia acknowledges that Zuckerberg "apparently resides" in California. Mem. of Law in Supp. of Mot. to Remand, at 1 (Docket Entry 24) ("Mot. to Remand"). Where, as here, a party resides in only one state, courts have treated the state of residence as the state of domicile. For example, in *Morrison v. Blitz*, 1996 WL 403034, at *1 (S.D.N.Y. July 18, 1996), the court explained that "[d]etermining the domicile and citizenship of a person who resides only in one state is a

---

3    Diversity jurisdiction also requires an amount in controversy that exceeds $75,000. Ceglia's absurd claim that he owns 84 percent of Facebook satisfies this requirement, and Ceglia does not claim otherwise.

relatively simple task—that person is domiciled in the state in which he lives."  The same is true here.

Moreover, Zuckerberg has manifested a clear intent to remain in California indefinitely and to make it his permanent home.  "A person 'intends to remain' in a place so long as he has no present intent to move elsewhere."  *Morrison*, 1996 WL 403034, at *1.  In assessing a party's intent, "[t]he court should look to all evidence shedding light on the litigant's intention to establish domicile.  The factors may include the places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family."  *Hodge v. Sun Qu Hong*, 2006 WL 2669467, at *2 (W.D.N.Y. Sept. 15, 2006) (Arcara, J.).  Consideration of these factors leaves no doubt that Zuckerberg is domiciled in California.

First, Zuckerberg works full-time in California.  Decl., ¶¶ 1, 5–6.  Like the vast majority of CEOs who run major corporations, Zuckerberg lives where his company is headquartered.  In fact, Zuckerberg's Palo Alto home is a short, ten-minute walk from his office at Facebook's headquarters.  *Id.*, ¶ 4.  This makes perfect sense.  After all, Facebook is one of the fastest-growing companies in the world and Zuckerberg is in charge of running the company from its Palo Alto corporate headquarters.

Second, Zuckerberg is registered to vote in California and voted there in the 2008 presidential election.  Decl., ¶ 15.  Although Ceglia contends that Zuckerberg registered to vote years ago in New York in the town where his parents live, his more recent California registration supersedes his prior New York registration.  The California Voter Registration Application

provides that one "cannot be registered to vote in more than one place at a time." *See* https://www.sos.ca.gov/nvrc/fedform/App_PDF/english_blank.pdf.

Third, Zuckerberg pays California taxes, and does not pay income taxes in any other state. Decl., ¶ 12, 14. The last time he filed a tax return in a state other than California was 2004. *Id.*, ¶ 14.

Fourth, Zuckerberg has possessed a valid California driver's license since May 2006. Decl., ¶ 16. Ceglia notes that Zuckerberg had obtained a New York driver's license many years ago, but that license is no longer valid. California law provides that "[n]o person shall have in his or her possession or otherwise under his or her control more than one driver's license." Cal. Vehicle Code § 12511; *see also* 2010 California Driver Handbook at 5, available at http://www.dmv.ca.gov/pubs/dl600.pdf (stating that when an applicant for a California license possesses an "out-of-state driver license," the applicant must "[b]ring [the] valid out-of-state driver license," and the out-of-state license "will be invalidated and returned" to the applicant).

Fifth, Zuckerberg owns a car that is registered and insured in California, and owns no vehicles registered outside of California. Decl., ¶ 9. He receives his mail at his home, business, and post office box addresses in California. *Id.*, ¶¶ 7–8, 18, 23. And he uses the services of a California investment advisor and a California tax preparer. *Id.*, ¶¶ 21–22.

In *New York Life Insurance Co. v. Hassan*, 2010 WL 3070091, at *2 (W.D.N.Y. Aug. 4, 2010) (Arcara, J.), this Court held that the defendants were New York domiciliaries based on "affirmations setting forth multiple indicia of [the defendants'] New York citizenship." The Court noted that the defendants had "resided continuously" in New York for years and were currently enrolled in school there; they had New York driver's licenses and paid New York taxes; and they "consider[ed] New York to be their full-time place of residence and ha[d] no

intention of moving anytime soon." *Id.* These affirmations "confirmed to the Court's satisfaction that [the] defendants are New York citizens." *Id.* The same indicia of citizenship are present here. Zuckerberg's declaration and documentary evidence clearly and convincingly establish that he is a California domiciliary.

> **B.    Zuckerberg's Domicile In 2004 Has Little Bearing On His Domicile in 2010, Particularly Given The Dramatic Changes In His Life And His Company Over The Past Six Years.**

Ceglia bases his remand motion on the determination in *ConnectU LLC v. Zuckerberg*, 482 F. Supp. 2d 3 (D. Mass. 2007), *rev'd on other grounds*, 522 F.3d 82 (1st Cir. 2008), that as of the date the complaint in that case was filed—September 2, 2004—Zuckerberg was a New York domiciliary. But at that time, Zuckerberg was a 20-year-old college student and Thefacebook.com was a nascent website. The court reasonably concluded that because Zuckerberg in September 2004 was an itinerant college student who did not intend to remain in California, his domicile at that time was New York—the state where he was born and raised, and where his parents lived. 482 F. Supp. 2d at 31. As explained above, much has changed in the past six years, and the evidence is clear and convincing that Zuckerberg is now domiciled in California rather than New York.

In relying on the *ConnectU* determination, Ceglia mischaracterizes the facts and the record from that case. To take just one example, Ceglia contends that Zuckerberg testified that "he had *no intention* to remain in California at the time of his testimony." Mot. to Remand at 4 (emphasis added by Ceglia, citing Ex. B at 66). But the transcript itself reveals that what Zuckerberg actually said was that he had no intention to remain <u>in the apartment he was then renting on Ramona Street</u>—not that he had no intention of remaining <u>in California</u>:

> Q.    Now in the fall of 2005 you moved into an unfurnished apartment
>
>        on Ramona Street in Palo Alto, correct?

A.      Yes.

Q.      And you still live there today, correct?

A.      Yes.

Q.      And you plan to stay there, correct?

A.      I, I guess.  I don't know, I mean, there's a lease on that too so I'm

        not sure what's going to happen.

Q.      Well, during your deposition I asked you, "Is it your plan to stay at

        Ramona?"  And you said, "I mean at this point I have no issue

        until I need to move or it makes sense to move, sure."

Mot. to Remand Ex. B at 65–66.  Contrary to Ceglia's representation, Zuckerberg <u>never</u> testified

that he had no intention of remaining in California.

Ceglia places great weight on the presumption that a party's domicile remains the same

until it is superseded by a new domicile.  Mot. to Remand at 6–8.  But that is all it is—a mere

<u>presumption</u>—and courts have routinely found that a party's domicile has changed, even when

the evidence is nowhere near as overwhelming as it is in this case, and even when the party has

not erased all connections to his or her prior domicile.  For example, in *Apace Communications*

*Ltd. v. Burke*, 2009 WL 1748711, at *5 (W.D.N.Y. June 19, 2009), the court held that the

defendant had changed domicile from New York, even though he maintained his New York

voter registration, driver's license, and bank account.  Similarly, in *Reynolds v. Wohl*, 332

F. Supp. 2d 653, 659 (S.D.N.Y. 2004), the court found that the plaintiff had changed his domicile

from New York to Connecticut, even though he maintained a residence in New York and owned

no property in Connecticut.  And in *Francke v. Martin*, 1994 WL 132293, at *3 (S.D.N.Y. Apr.

14, 1994), the court held that the defendants had changed their domicile from California, even

though they still had children attending school in California, maintained California driver's licenses, owned residential property in California, used a California accountant, and stored furniture and an automobile in California.  These cases, and many others, demonstrate that a change in domicile does not require eliminating all of one's ties to the prior home.

Ceglia argues that the Court should find Zuckerberg remains a New York domiciliary because "some of the hallmarks of [his New York domicile] remain in place."  Mot. to Remand at 2.  But as the cases discussed above establish, Zuckerberg need not eradicate all his old New York connections to establish domicile in California.  Moreover, Ceglia identifies only three such "hallmarks," *see id.* at 5, and he is wrong about all of them.  Ceglia asserts that Zuckerberg's "New York driver's license is still valid"—which it is not, as explained above.  Ceglia claims that Zuckerberg remains eligible to vote in New York—which he does not, also as explained above.  And Ceglia notes that Zuckerberg has not purchased a residence in California—a fact that has little bearing on the analysis given that Zuckerberg (who does not own a residence or real property in any state) has lived continuously in California since 2004, and "living in rented quarters is not in itself indicative of an intent to remain in a place only temporarily" in any event.  *Apace Commc'ns*, 2009 WL 1748711, at *6.[4]

These three false "hallmarks" are the entirety of Ceglia's "evidence" that Zuckerberg supposedly remains domiciled in New York.  Ceglia's motion should be summarily rejected.

---

   4    On page 8 of his brief, Ceglia asserts that "Mr. Zuckerberg's trips to New York state" "compel the [ ] conclusion" that Zuckerberg is a New York domiciliary.  Ceglia's argument, however, is directly contradicted by the statement that appears on page 5 of his brief, where he admits that "[i]t is unclear the extent to which [Zuckerberg] continues to travel to New York."  In any event, this question is answered by Zuckerberg's declaration, which makes clear that he travels to New York infrequently.  *See* Decl., ¶ 11.

## II.      Jurisdictional Discovery Is Unnecessary.

Ceglia's request for jurisdictional discovery is intended solely to burden and harass Defendants.  Ceglia lacks a good faith basis for making this request:  not only is it abundantly clear that Zuckerberg is a California domiciliary, but Defendants have already produced voluminous documentary evidence on this issue.  Critically, Ceglia does not identify what additional information discovery might uncover.  This omission is strong evidence that Ceglia's request is made for an improper purpose rather than as a legitimate attempt to obtain relevant evidence.  This Court has all the facts it needs to determine that Zuckerberg is a California domiciliary and that diversity jurisdiction exists.

This Court has held that affirmations provide a sufficient evidentiary basis to make domicile determinations.  *See, e.g.*, *New York Life*, 2010 WL 3070091, at *2.  And even in cases involving a change in domicile, courts routinely resolve the issue without jurisdictional discovery where, as here, the declarations and other documentary evidence are sufficient.  As the court explained in *Francke*, "[t]he determination of domicile is one made by the court" and "can be based on affidavits and other supporting materials."  1994 WL 132293, at *2 n.2.  Here, Zuckerberg's declaration and the supporting documents thoroughly address the factors that courts routinely consider in determining domicile.

Ceglia misrepresents the law when he quotes *Fein v. Chrysler Corp.*, 1998 WL 34032284, at *9–10 (S.D.N.Y. Sept. 29, 1998), to support the proposition that the cases "'indicate a preference, even a requirement, for jurisdictional discovery' in connection with a motion to remand."  Mot. to Remand at 10.  Ceglia has carefully deleted the final two words of the court's sentence, which reads, in full:  "Contrary to plaintiffs' assertion, the cases cited by defendant indicate a preference, even a requirement, for jurisdictional discovery, if necessary."

*Fein*, 1998 WL 34032284, at *10 (emphasis added).  Here, Ceglia has failed to demonstrate that jurisdictional discovery is necessary.

Courts deny requests for jurisdictional discovery where, as here, the party fails to identify the specific information that, if obtained, could change the outcome.  For example, in *Gudavadze v. Kay*, 556 F. Supp. 2d 299 (S.D.N.Y. 2008), the court denied jurisdictional discovery where the requesting party failed "to adequately explain how the proposed deponents' testimony would be relevant to resolving any jurisdictional facts that are in dispute."  *Id.* at 309 (quotation marks omitted).  Likewise, in *Scheidemann v. Qatar Football Ass'n*, 2008 WL 144846, at *6 (S.D.N.Y. Jan 15, 2008), the court denied jurisdictional discovery where "the only discovery that Plaintiff has sought would have no bearing on the Court's decision."

Finally, while Ceglia emphasizes that the *ConnectU* court permitted jurisdictional discovery, the court did so because based on the pleadings "it was impossible to determine the citizenship of [one of the other named parties] or Zuckerberg," and "the parties had proffered no admissible evidence for the Court to consider."  482 F. Supp. 2d at 9–10.  Here, in contrast, Zuckerberg has proffered more than sufficient evidence for the Court to reach the conclusion that he is domiciled in California.  No discovery is necessary.

# CONCLUSION

For the foregoing reasons, this Court should deny Ceglia's motion to remand.

Respectfully submitted,

Thomas H. Dupree, Jr.
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
(202) 955-8500
*(Pro hac vice admission pending)*

/s/ Terrance P. Flynn
Terrance P. Flynn
HARRIS BEACH PLLC
726 Exchange Street
Suite 1000
Buffalo, NY 14210
(716) 200-5120

Orin Snyder
Alexander H. Southwell
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193
(212) 351-4000
*(Admission pending)*

Lisa T. Simpson
ORRICK, HERRINGTON
 & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
(212) 506-3767

*Attorneys for Defendants Mark Zuckerberg and Facebook, Inc.*

17