UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
PAUL D. CEGLIA, :
:
               Plaintiff, : Civil Action No. 1:10-cv-00569-RJA
:
v. : **DECLARATION OF DONALD R.**
: **HENNE IN SUPPORT OF**
MARK ELLIOT ZUCKERBERG and : **DEFENDANTS' MOTION FOR**
FACEBOOK, INC., : **EXPEDITED DISCOVERY**
:
               Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

    I, DONALD R. HENNE, declare and state as follows:

    1.    I respectfully submit this declaration in support of Defendants' Motion for Expedited Discovery.

    2.    I am currently employed by Kroll Associates, Inc. ("Kroll") as an Associate Managing Director. Kroll offers premier business intelligence and investigation services. I have been employed by Kroll since July 2005. Prior to being employed by Kroll, I was a Lieutenant Commander and officer in the New York City Police Department for 20 years.

    3.    In September 2010, Kroll was engaged to conduct a background investigation of the plaintiff in this litigation, Paul D. Ceglia ("Ceglia"). The objective of the investigation was to identify material legal proceedings, significant business or personal controversies, and other issues that might reflect on Ceglia's reputation, character and credibility. I have been a member of the team conducting the investigation since its inception and have personal knowledge of the matters stated in this Declaration.

    4.    As is standard practice, we first reviewed a variety of public records in relevant jurisdictions. Kroll conducted on-site research of public-record sources in various locations. In

addition, Kroll conducted nationwide online searches of public records using commercial databases.

**Consumer Fraud Related to Allegany Pellets, LLC**

5.      I have reviewed public records, which were identified by another Kroll investigator, pertaining to the New York State Attorney General's lawsuit against Ceglia, his wife Iasia, and their business Allegany Pellets, LLC.  True and correct copies of those records are attached hereto as Exhibit A.

6.      According to the records attached as Exhibit A, on December 29, 2009, the Attorney General obtained a temporary restraining order against the Ceglias and Allegany Pellets, LLC, for defrauding dozens of consumers out of approximately $200,000.  The parties resolved this matter pursuant to a Consent Order and Judgment, dated October 22, 2010, pursuant to which the Ceglias and Allegany Pellets, LLC, agreed to make restitution of $106,421.14 and to pay costs, fees, and penalties of $25,000.00.

7.      In a press release announcing that his office had obtained a temporary restraining order, then-Attorney General Andrew Cuomo stated that "[t]his company and its owners repeatedly lied to consumers and continued to solicit new orders despite an inability to deliver wood pellets that were bought and paid for months before the winter heating season began."  A true and correct copy of this press release is attached hereto as Exhibit B.

8.      Given this information, at my direction, another Kroll investigator determined that Ceglia had been arrested and charged criminally in connection with this matter.  Ceglia was arrested on October 30, 2009, and  subsequently charged by the Allegany County District Attorney's Office with one count of first-degree scheme to defraud and 12 counts of fourth-

degree grand larceny. Ceglia received an adjournment in contemplation of dismissal on one count of grand larceny, which was reduced to petit larceny, a Class A misdemeanor.

**Felony Drug Conviction in Texas**

9. I have also reviewed public records, which were identified by another Kroll investigator, pertaining to Ceglia's arrest and conviction in Panola County, Texas. True and correct certified copies of those records are attached hereto as Exhibit C.

10. According to the records attached as Exhibit C, Ceglia was arrested on March 26, 1997, and subsequently pled guilty to aggravated possession of a controlled substance, a first-degree felony. Ceglia was in possession of more than 400 grams of psilocybin, including dilutents. Psilocybin is a hallucinogenic compound found in certain mushrooms. Ceglia was sentenced to ten years of probation and paid $15,000 of a $25,000 fine, $10,000 of which was suspended.

**Misdemeanor Trespass Conviction in Florida**

11. I have reviewed public records, which were identified by another Kroll investigator, pertaining to Ceglia's arrest and conviction in Polk County, Florida. True and correct certified, partially redacted copies of those records are attached hereto as Exhibit D.

12. According to the records attached as Exhibit D, Ceglia was arrested on May 1, 2005, and subsequently pled nolo contendere to Trespassing on Cultivated Land, a first-degree misdemeanor. Ceglia was stopped in a private orange grove by a deputy sheriff who had been advised of a trespassing problem in the area. Ceglia misinformed the officer that he had an easement along the grove and was showing the property to two potential buyers from Miami. The deputy sheriff's field investigation confirmed that Ceglia did not have any easement, and the property owner elected to press charges. Ceglia was ordered to pay a fine.

**Ceglia's Land Sales**

13.     As a result of this finding, Kroll investigators conducted a detailed search of property records connected to Ceglia.  I and other Kroll investigators learned that between 2005 and 2008, Ceglia sold a significant number of properties in New York and Florida.

14.     Kroll investigators then identified and interviewed several of the individuals who contracted to purchase land from Ceglia.  Many interviewees provided documentation regarding their interactions with Ceglia, including sales agreements, property deeds, eBay advertisements, and e-mail with Ceglia and his associates.

15.     Through my review of this information, I learned that Ceglia's sale of land in New York and Florida appears to have been a wide-ranging land scam involving misrepresentation, "shill bidding" on eBay, falsification of government documents, and, in some cases, outright theft.

**Misrepresentation**

16.     In October 2010, I was informed by another Kroll investigator who spoke to a victim who lives in Margate, Florida ("Victim-1"), that Victim-1 provided the following information:

a.      In March and April 2005, Victim-1 purchased two tracts of land located in Polk County, Florida from Ceglia via an internet auction on eBay.  The first property—which was purchased in March 2005 with a winning bid of $10,300—was listed as "zoned as residential" and "cleared and ready to build."  The second property—which was purchased in April 2005 with a winning bid of $17,600—was advertised as "zoned as residential," "close to Disney," and "roads not developed as of yet."  Ceglia also informed Victim-1 that he and his attorneys were obtaining an easement and road access for the properties.  True and correct copies

of these eBay advertisements are attached hereto as Exhibit E, which are partially redacted to protect the privacy of Victim-1.

   b. In or around 2006, Victim-1 received the tax bills for these properties and realized he had been defrauded. In late 2006, Victim-1 contacted Polk County officials and learned that each parcel was, in fact, unbuildable land not zoned for residential use. Although Ceglia had told Victim-1 that his attorneys were working on obtaining an easement and road access for the Florida properties, Polk County officials informed Victim-1 that the land was essentially worthless, and the County was not considering providing an easement or road access in the future.

  17. In October 2010, I was informed by another Kroll investigator who spoke to a victim who lives in Orlando, Florida ("Victim-2"), that Victim-2 provided the following information:

   a. In December 2005, Victim-2 purchased a tract of land located in Polk County, Florida, advertised as "buildable" through an internet auction on eBay. The winning bid for the tract was $17,100. Victim-2 paid Ceglia the purchase price in full. True and correct copies of these eBay advertisements are attached hereto as Exhibit F, which are partially redacted to protect the privacy of Victim-2.

   b. After receiving the tax bill for the property, Victim-2 was alerted that the value of the land was significantly less than the purchase price. As a result, Victim-2 contacted Polk County officials and learned that the property was not zoned for residential use and therefore was not buildable.

   c. After learning of the property's zoning restrictions, Victim-2 attempted to dispute the sale with Ceglia; however, Ceglia once again represented that the property was buildable, so long as Victim-2 obtained a "right of way."

   d. Victim-2 received subsequent documentation from County officials reconfirming that this property could not be used for residential purposes.

**Apparent "Shill Bidding" on eBay**

18. In October 2010, I was informed by another Kroll investigator who spoke to a victim who lives in Naples, Florida ("Victim-3"), that Victim-3 provided the following information:

   a. Victim-3 became aware of a tract of land located in Polk County, Florida when she attempted to place a bid for it on eBay, but was not the high bidder in the auction. The property was listed on eBay as "buildable"; the description even stated that "one could drive an RV onto it." In addition, the property was described as having an entranceway, and the listing included a picture of the purported property and its supposed entranceway.

   b. In or around May 2006, Victim-3 purchased the property from Ceglia for $6,000 through a private sale. Victim-3 first attempted—and failed—to win the property on eBay. Ceglia contacted Victim-3 to inform her that the high bidder backed out, and offered her the opportunity to purchase the property in the amount of Victim-3's last bid of $6,000, which she accepted. Indeed, the winning bid was approximately $2,000 higher than Victim-3's final bid of $6,000.

   c. After closing, Victim-3 learned from Polk County representatives that the property was inaccessible because it had no public easement. Nor was the property buildable.

19. In October 2010, I was informed by another Kroll investigator who spoke to a victim who lives in Spring Hill, Florida ("Victim-4"), that Victim-4 provided the following information:

    a. Victim-4 became aware of a tract of land located in Polk County, Florida when he attempted to place a bid for it on eBay, but was not the high bidder in the auction. Victim-4 was contacted by Ceglia after the auction closed. Ceglia informed Victim-4 that the winning bidder had decided to back out of the transaction and offered Victim-4 the opportunity to purchase the property according to his last bid price.

    b. Victim-4, who was still interested in the property, decided to accept Ceglia's offer and purchased the land for his final bidding price of $12,500, in or around August 2006.

    c. Prior to the sale's closing, Victim-4 specifically asked Ceglia whether the tract of land was buildable, to which Ceglia responded that if it was not, he would fully refund the purchase price. Ceglia also advertised the property as measuring one full acre.

    d. Subsequent to the sale, Victim-4 learned from Polk County officials that he was not permitted to build on the land. He also was informed that the tract of land only measures 0.75 acres, contrary to Ceglia's representation.

**Falsification of Government Documents**

20. In October 2010, I was informed by another Kroll investigator who spoke to a victim who lives in Miami, Florida ("Victim-5"), that Victim-5 provided the following information:

    a. In December 2005, Victim-5 purchased a parcel of land located in Polk County, Florida from Ceglia via an internet auction on eBay. Ceglia advertised the land by

stating that an RV could be driven on it, a house could be built on it, electric could be installed either by overhead or underground wiring, and a water well could also be installed on the land.

        b.      Victim-5 purchased the land with a winning auction bid of $47,000, and in December 2005 made a $5,000 down payment via PayPal, with the remaining balance paid at closing.

        c.      After the sale, Victim-5 met with Ceglia for dinner, where Ceglia informed him that the property he purchased would increase in value once additional roads were built and more houses were constructed in the area. Ceglia also stated that he would be moving to the area himself.

        d.      In December 2006, Ceglia sent Victim-5 a Polk County document representing that a building permit for the land could be obtained. The County document, however, did not identify the tract at issue. A true and correct copy of the purported County document obtained from Victim-5 is attached hereto as Exhibit G.

        e.      Approximately one year later, Victim-5 contacted Polk County representatives, and learned that the property sold to him by Ceglia was virtually uninhabitable due to zoning restrictions.

    21.    In October 2010, I was informed by another Kroll investigator who spoke to a victim who lives in Miami, Florida ("Victim-6"), that Victim-6 provided the following information:

        a.      In February 2005, Victim-6 purchased property from Ceglia via an online internet auction on eBay, with a winning bid of $7,000. According to Victim-6, the property—located in Polk County, Florida—was advertised by Ceglia as "buildable."

       b.      Victim-6 met personally with Ceglia to transact the deal. At the time of the closing in February 2005, Ceglia provided Victim-6 a Polk County document representing that a building permit for a home could be obtained. The County document, however, did not identify the tract at issue. This document was identical to the document that Ceglia provided to Victim-5. A true and correct copy of the purported County document obtained from Victim-6 is attached hereto as Exhibit H.

       c.      Subsequent to the sale and closing, Polk County officials informed Victim-6 that his property was not buildable.

22. In October 2010, I was informed by another Kroll investigator who spoke to the Director of the Polk County Land Development Division in Bartow, Florida ("Director"), who provided the following information after inspecting a copy of the Polk County document that Ceglia provided to Victim-5 and Victim-6:

       a.      The Director stated that the form is used for land verification purposes, and can be obtained by calling the County Land Development Division. In fact, the Director stated that people "call by the hundreds" to request this form, particularly to confirm the zoning requirements for a specific parcel of land prior to buying the property.

       b.      In order to obtain the County document that Ceglia provided to Victim-5 and Victim-6, an individual would need to provide the parcel ID number along with the section, township and range relating to the parcel.

       c.      Upon inspection of the document, the Director confirmed that the parcel ID number was not reflected on the form. The Director stated that under no circumstances could the form be issued without the parcel ID number, as the County official would not be able to look up the requested parcel information without it.

        d.      The Director stated that without the parcel ID number, these designations could apply to any parcel of land among hundreds of parcels in the area. Moreover, the Director stated that the missing parcel number had to have been "whited out."

        e.      Finally, the Director noted that the line at the bottom of Exhibits G and H, which reads "A building permit for a home can be obtained" with no period, was likely doctored: typically, that sentence reads "A building permit for a home can be obtained if," followed by a list of the requirements that would have to be met in order for a building permit to be obtained.

**<u>Outright Theft</u>**

23.      I learned from another Kroll investigator that Victim-1 also provided the following information about his purchase of land located in Allegany County, New York:

        a.      In October 2005, Ceglia purported to sell Victim-1 two tracts of land in Allegany County, New York for $16,300 each. After making a $5,000 down payment for each tract, Victim-1 agreed to pay the remaining balance on each tract through monthly payments that were personally financed by Ceglia. Victim-1 made routine monthly mortgage payments to Ceglia through August 2006.

        b.      At the time of the sale, Ceglia provided Victim-1 with an Agreement for Deed for one of the lots. The Agreement, dated October 5, 2005, identified Victim-1 as the buyer and Ceglia as the seller. Victim-1 also submitted to Ceglia signed documentation relating to the second parcel, but Ceglia never returned it.

        c.      Victim-1 made monthly mortgage payments totaling $1,754.46 to Ceglia on the two New York properties through August 2006.

        d.      Sometime in late 2006 or early 2007, Victim-1 still had not received a tax bill for either Allegany County parcel. He contacted Allegany County officials, who informed

him that he was not listed as the owner of either parcel. Indeed, Victim-1 was not listed as the owner of any land in the State of New York

  e. In fact, on March 10, 2006, five months after Ceglia purported to sell these tracts to Victim-1, Ceglia split one of the tracts purportedly already sold—the one in which Victim-1 believed he held a valid Agreement for Deed—in two. As a result, that tract became two separate parcels. Furthermore, Ceglia sold one of these two newly-created subdivided parcels to another purchaser for approximately $30,000. Ceglia remains the documented owner of the second subdivided parcel.

  24. In October 2010, I was informed by another Kroll investigator who spoke to victims who live in Hunt, New York ("Victims-7 and 8"), that Victims-7 and 8 provided the following information:

  a. In January 2007, Victims-7 and 8 identified land in Livingston County, New York, offered for sale by Ceglia. The land was advertised publicly as "For Sale."

  b. Victims-7 and 8 purchased the land for $21,251.00, financing the purchase price with Ceglia. The parties entered into a written Agreement for Deed for the property.

  c. Victims-7 and 8 paid monthly installments of $257.82 to Ceglia for over a year, totaling approximately $4,125.00.

  d. In late 2007, Victims-7 and 8 were advised by the Livingston Country Treasurer that taxes had not been paid on the parcel, which led Victims-7 and 8 to learn that Ceglia had never been listed with the County as the owner.

  e. Victim-7 reported the fraud to the Allegany County District Attorney's Office and the Allegany County Sheriff's Office, but criminal charges were not brought. Victim-

7 then filed a civil complaint against Ceglia and ultimately resolved the matter in an out-of-court settlement for less than Victims-7 and 8 had paid in monthly financing payments.

**StreetFax**

25.   I have reviewed organizational documents for a company called StreetFax. A true and correct copy of the Articles of Organization for StreetFax LLC, dated August 26, 2003 and filed in the State of Nevada, are attached as Exhibit I.

26.   I was informed by another Kroll investigator who conducted a nationwide search that the documents attached as Exhibit I are the only organizational documents filed in any state for StreetFax.

I declare under penalty of perjury that the foregoing is true and correct. Executed in New York, New York on June 1, 2011.

_____
Donald R. Henne