UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

-------------------------------------------------------- X
                           :

PAUL D. CEGLIA,                 :
                           :

          Plaintiff,        :
                           :

     -against-         :   CIVIL ACTION NO. 10-CV-00569(RJA)
                           :

MARK ELLIOT ZUCKERBERG and   :
FACEBOOK, INC.,            :
                           :

         Defendants.     :
                           :
                           :
-------------------------------------------------------- X


**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION
FOR ONE-SIDED EXPEDITED DISCOVERY AND IN SUPPORT OF
PLAINTIFF'S CROSS-MOTION FOR MUTUAL EXPEDITED DISCOVERY**

DLA PIPER LLP (US)
Christopher P. (Kip) Hall
Carrie S. Parikh
Michael P. McMahan
1251 Avenue of the Americas
New York, New York 10020
(212) 355-4500
kip.hall@dlapiper.com
carrie.parikh@dlapiper.com
mike.mcmahan@dlapiper.com

DLA PIPER LLP (US)
Robert W. Brownlie
Gerard A. Trippitelli
401 B Street
Suite 1700
San Diego, CA 92101-4297
(619) 699-2700
robert.brownlie@dlapiper.com
jerry.trippitelli@dlapiper.com

LIPPES MATHIAS WEXLER FRIEDMAN LLP
Dennis C. Vacco
Kevin J. Cross
Richard M. Scherer, Jr.
665 Main Street, Suite 300
Buffalo, NY 14203
(716) 853- 5100
dvacco@lippes.com
kcross@lippes.com
rscherer@lippes.com

Paul Argentieri
188 Main St.
Hornell, NY 14843
(607) 324- 3232
paul.argentieri@gmail.com


*Attorneys for Plaintiff*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................1

STATEMENT OF FACTS ..................................................................................................2

    A.    Plaintiff's Evidence is Authentic ....................................................................2

    B.    Plaintiff Denies Zuckerberg's Allegations ..............................................9

PROCEDURAL HISTORY ...............................................................................................10

ARGUMENT ...................................................................................................................11

    I.    DISCOVERY SHOULD COMMENCE IMMEDIATELY ...............................11

        A.    Plaintiff is Eager to Prove the Validity of the Agreement.......................11

        B.    There is No Reason to Delay Discovery ..................................................11

    II.    PLAINTIFF SEEKS LIMITED DISCOVERY TO PROVE THE
        AUTHENTICITY OF THE AGREEMENT .......................................................12

        A.    Additional Evidence Demonstrating the Authenticity of the Work
            for Hire Agreement is Likely to be Within Defendants' Possession........12

        B.    Defendants Refuse To Participate in Mutual Expedited Discovery .........13

        C.    Simultaneous Discovery is Appropriate Here ..........................................14

        D.    Defendants' Own Submissions Demonstrate Document
            Destruction ...............................................................................................15

    III.    ONE-SIDED EXPEDITED DISCOVERY OF PLAINTIFF  SHOULD
        NOT BE GRANTED..........................................................................................16

        A.    Defendants Have Not Met the Burden for One-Sided Expedited
            Discovery..................................................................................................16

        B.    One-Sided Expedited Discovery Is Neither Necessary Nor
            Appropriate ...............................................................................................17

            1.    One-sided expedited discovery is typically granted to a
                plaintiff seeking a temporary restraining order or a
                preliminary injunction ................................................................17

            2.    Defendants have admitted document destruction, but
                cannot demonstrate immediate harm to their case by
                Plaintiff......................................................................................18

            3.    Authenticity is a low burden in the Second Circuit;
                remaining questions of credibility are left for the finder of
                fact ..............................................................................................19

CONCLUSION ................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Amari v. Spillan*,
    No. 2:08-cv-829, 2008 WL 5378339 (S.D. Ohio Dec. 19, 2008) .......................................... 18

*Ayyash v. Bank al-Madina*,
    233 F.R.D. 325 (S.D.N.Y. 2005) ........................................................................................... 17

*Brown v. Junction Pool Commons, Inc.*,
    301 Fed. Appx. 24 (2d Cir. 2008) ........................................................................................ 19

*ConnectU, Inc. v. Facebook, Inc.*,
    Case No. 1:07-cv-10593 (DPW) (D. Mass. Sept. 13, 2007) .................................................. 17

*Delphine Software Intern. v. Elec. Arts, Inc.*,
    No. 99 Civ. 4454 AGAS, 1999 WL 627413 (S.D.N.Y. Aug. 18, 1999) ................................ 16

*Essenter v. Cumberland Farms, Inc.*,
    No. 1:09-CV-0539, 2011 WL 124505 (N.D.N.Y. Jan. 14, 2011) .......................................... 15

*Hemans v. Long Island Jewish Med. Ctr.*,
    No. 10-CV-1158, 2010 WL 4386692 (E.D.N.Y. Oct. 28, 2010) .......................................... 14

*Hickman v. Taylor*,
    329 U.S. 495 (1947) .............................................................................................................. 15

*Humphrey v. Landers*,
    344 Fed. Appx. 686 (2d Cir. 2009) ...................................................................................... 19

*Jacobson v. Empire Elec. Agreementors, Inc.*,
    339 Fed. Appx. 51 (2d Cir. 2009) ........................................................................................ 19

*McKenzie v. Nicholson*,
    No. 08-CV-0773, 2009 WL 179253 (E.D.N.Y. Jan. 26, 2009) ............................................ 14

*N.Y. State Elec. & Gas Corp. v. U.S. Gas & Elec., Inc.*,
    697 F. Supp. 2d 415 (W.D.N.Y. 2010) ................................................................................ 11

*Notaro v. Koch*,
    95 F.R.D. 403 (S.D.N.Y. 1982) ........................................................................................... 16

*OMG Fidelity, Inc v. Sirius Technologies, Inc.*,
    239 F.R.D. 300 (N.D.N.Y. 2006) .................................................................................. 12, 18

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of America Sec., LLC*,
    685 F. Supp. 2d 456 (S.D.N.Y. 2010) ................................................................................. 15

*Physicians Interactive v. Lathian Sys. Inc.*,
    No. CA 03-1193-A, 2003 WL 23018270 (E.D. Va. Dec. 5, 2003) .................................. 16, 17

*S.E.C. v. Rajaratnam*,
    622 F.3d 159 (2d Cir. 2010) ................................................................................................ 15

*Semitool, Inc. v. Tokyo Electron Am., Inc.*,
    208 F.R.D. 273 (N.D. Cal. 2002) ....................................................................................... 18

*Special Situations Cayman Fund, L.P. v. Dot Com Entm't Group, Inc.*,
    No. 03-CV-0811, 2003 WL 23350128 (W.D.N.Y. Dec. 5, 2003) ........................................ 16

*Stern v. Crosby*,
    246 F.R.D. 453 (S.D.N.Y. 2007) ........................................................................................ 17

*U.S. Commodity Futures Trading Comm'n v. Atwood & James, Ltd.*,
    No. 09 CV 6032, 2009 WL 66970 (W.D.N.Y. Jan. 23, 2009) ........................................ 12, 18

*United States v. Gagliardi*,
    506 F.3d 140 (2d Cir. 2007) ................................................................................................ 19

*United States v. Tin Yat Chin*,
    371 F.3d 31 (2d Cir. 2004) .................................................................................................. 19


**RULES**

Fed. R. Evid. 404(a) ..................................................................................................................... 9

Fed. R. Evid. 901 ....................................................................................................................... 19


**OTHER AUTHORITIES**

*College Inches Toward Campus-Wide Facebook*, THE HARVARD CRIMSON, Dec. 09, 2003 ......... 3

*Who Founded Facebook? A New Claim Emerges*, N.Y. TIMES, Sept. 1, 2007 .............................. 3

Plaintiff Paul D. Ceglia, by his undersigned attorneys, respectfully submits this memorandum of law in support of his cross-motion for mutual expedited discovery, and in opposition to the motion for one-sided expedited discovery filed by Defendant Mark Elliot Zuckerberg ("Zuckerberg") and Defendant Facebook, Inc. ("Facebook") (collectively "Defendants").

## PRELIMINARY STATEMENT

Defendants' motion to expedite discovery—filed without seeking expedited briefing—was unnecessary. Defendants' ad hominem attacks against Plaintiff should be ignored. Defendants chose to provide their motion to the media before filing it with the Court or serving Plaintiff. Plaintiff will not engage in such conduct. Plaintiff will stick to the facts.

Plaintiff has already preserved and secured all of the electronic evidence in his possession that Defendants have requested. Plaintiff wants mutual expedited production of the relevant documents—that is, the relevant documents that BOTH sides possess which are needed to resolve this dispute. Plaintiff has already prepared and provided a list of those documents to Defendants' counsel following Plaintiff's initiation of the dialog required by the Court's "meet and confer" requirement. However, Defendants have responded that the only discovery which should occur—whether expedited or not—is their discovery, and Defendants refuse to produce any documents Plaintiff requests. Further, Plaintiff's experts believe that destructive testing of the original version of the Agreement in Plaintiff's possession would be helpful to further determine its authenticity because all of their non-destructive testing has shown the document is genuine. Plaintiff has offered Defendants the opportunity to participate in the destructive testing on an expedited basis with an appropriate protocol. Defendants have refused that offer as well.

Plaintiff objects to Defendants' motion to expedite only insofar as it is one-sided.

Plaintiff wants to get to the truth as quickly as possible.  Accordingly, Plaintiff has been required to cross-move for expedited discovery and requests that the Court: a) order BOTH sides to produce the documents specified below and in the accompanying proposed order on an expedited basis; b) direct that the original Agreement in Plaintiff's possession be examined by either a court-appointed expert or experts upon which BOTH sides agree on an expedited basis; and c) in accordance with the Local Rules, direct both sides to mediate the dispute as fast as possible.

## STATEMENT OF FACTS

For a complete recitation of the facts, Plaintiff refers the Court to Plaintiff's First Amended Complaint and exhibit attached thereto (the "Work for Hire Agreement"), filed on April 4, 2011.  *Ceglia v. Zuckerberg*, et al., Civ. Action No. 569 (RJA) (W.D.N.Y.) (Docket Nos. 39 and 39-1).

### A.    Plaintiff's Evidence is Authentic

Zuckerberg admits that, in April 2003, he entered into a written contract with Plaintiff. (Declaration of Carrie S. Parikh In Opposition to Defendants' Motion and in Support of Plaintiff's Motion ("Parikh Decl."), ¶ 3, Ex. A (Transcript of Oral Argument,[1] July 20, 2010); Declaration of Mark Elliot Zuckerberg ("Zuckerberg Decl.") ¶ 7.)[2]  Zuckerberg now also admits

---

[1]    Before this Court, Ms. Simpson, counsel for Zuckerberg stated: "Mr. Zuckerberg did indeed have a contract with Plaintiff." (Tr. 10:11-12).  "Our client entered a contract with Ceglia." (Tr. 13:10-11) (Parikh Decl. ¶ 3, Ex.A.)

[2]    Defendants maintain that the Work for Hire Agreement is necessarily a forgery because it is inconsistent with the timing of Zuckerberg's conception of the idea for Facebook, as "confirmed by numerous public sources."  (Mov. at 7 & n.1.)  With one exception, the independent sources are based on Zuckerberg's version of events as stated by him after significant litigation had arisen in 2004 about ownership of the code underlying Facebook, which went directly to the issue of when Zuckerberg conceived of and wrote the code for Facebook. (*Id.*)  By numerous public accounts, Zuckerberg already knew that the Winkelvoss brothers were claiming that Zuckerberg stole their idea and code to create Facebook, which again went to the issue of when Zuckerberg created the code for Facebook.  *See* DAVID KIRKPATRICK, THE FACEBOOK EFFECT: THE INSIDE STORY OF THE COMPANY THAT IS CONNECTING THE WORLD

that page 2 of the Work for Hire Agreement, as attached to the First Amended Complaint, is authentic, at least as it respects the contract Zuckerberg did enter into with Plaintiff. (Defendants' Memorandum of Law In Support of Their Motion for Expedite Discovery ("Mov.") at 8-9.) Therefore, the authenticity of page 1 of the Work for Hire Agreement is the only factual issue here. (Zuckerberg Decl. ¶ 10.)

Defendants, without examining the original Work for Hire Agreement, made bold allegations that the Work for Hire Agreement is an "amateurish forgery"[3] (Declaration of Frank Romano ("Romano Decl."), ¶ 16; *see* Mov. at 10).[4]   Romano jumped to this conclusion by

---

(Simon & Schuster 2010).  The issue of who first thought of a universal facebook and when is well disputed.  *See College Inches Toward Campus-Wide Facebook*, THE HARVARD CRIMSON, Dec. 09, 2003 ("This is something students have been talking about for years") (Parikh Decl. Ex. B); *Who Founded Facebook? A New Claim Emerges*, N.Y. TIMES, Sept. 1, 2007 ("An e-mail message, circulated widely by Mr. Greenspan to Harvard students on Sept. 19, 2003, describes the newest feature of the houseSYSTEM, as "the Face Book," an online system for locating other students") (Parikh Decl. Ex. C.).

[3]    Defendants' expert Frank J. Romano concludes that the Work For Hire Agreement is an "amateurish forgery" based on the following differences between the first and second pages of the Work for Hire Agreement: (1) the width of the columns, margins, and gutters; (2) the size and density of the type face; (3) the spacing between paragraphs; and (4) the indents. (Declaration of Frank J. Romano ("Romano Decl.") ¶¶ 14, 16.)  Plaintiff, however, created the Work for Hire Agreement by copying and pasting provisions from two different forms of agreement, thus resulting in the discrepancies which Defendants' expert bases his conclusion. (Declaration of Paul D. Ceglia ("Cegila Decl.") ¶ 8.) Romano purportedly bolsters his conclusion by the mere observation that the references to "The Face Book" or "The Page Book" only appear on page 1 of the Agreement and not on page 2 of the Agreement.  (Romano Decl. ¶ 15.)  Not only is it a stretch to say that the absence of these terms on page 2 of the Work for Hire Agreement is indicative of anything, let alone a forgery, but Defendants' expert fails to mention that StreetFax appears in only two of 11 sections on the second page.  (First Amended Complaint, Ex. A.)

[4]    Defendants make much of the fact that page 1 of the Work for Hire Agreement refers to "StreetFax LLC," whereas page 2 of the Agreement refers to "StreetFax, Inc."  (Mov. at 8-9.) Defendants go so far as to refer to this discrepancy as a "critical distinction" and even "strong evidence that page 1 is a recent forgery."   (*Id.* at 9.)  Defendants' only support for this contention is that StreetFax LLC was not formed until August 2003.  (*Id.*) However, Plaintiff is not a lawyer and was not focused on the difference between a limited liability corporation and a corporation when he drafted the Agreement in 2003.  Defendants' leap of logic that this

examining a scanned version of the Work for Hire Agreement, which was uploaded to PACER (the Court's electronic filing system), and likely reprinted.  This version—far removed from the original Work for Hire Agreement—cannot be expertly examined, however, because it does not allow an expert the opportunity to examine the actual ink, toner, or paper.  Indeed, Defense Expert Gus R. Lesnevich explained that:

> [T]he poor reproduction quality and distortion of the questioned
> written entry . . . makes the scanned copy unsuitable for
> examination and comparison of the handwriting that appears on the
> document.

(Declaration of Gus R. Lesnevich ("Lesnevich Decl.") ¶ 15.)  Unlike Defendants' experts, Plaintiff's experts have examined the original Work for Hire Agreement.  One can conclude from these experts' opinions that the Work for Hire Agreement is genuine.  Plaintiff's experts' opinions are so divergent from those of the Defense experts as to preclude summary judgment, let alone provide for the unspecified "end" to this case demanded by Defendants.  Therefore, no good cause exists to support one-sided expedited discovery.

### 1.   Expert Opinion of John P. Osborn (Document Indentations)

John P. Osborn is certified by the American Board of Forensic Document Examiners and has over 28 years of experience with forensic examination of documents.  (Declaration of John Paul Osborn ("Osborn Decl."), Ex. A.)  Mr. Osborn examined the original Work for Hire Agreement in person.  (*Id*. ¶ 4.)  Specifically, Mr. Osborn performed non-destructive testing to determine whether the second page of the Work for Hire Agreement bears indentations or impressions and to determine the source of any indentations and impressions.  (*Id*. ¶ 6.)  If the second page of the Agreement bears indentations caused by interlineations and handwritten

---

discrepancy "necessarily means that Plaintiff forged the first page and forgot that StreetFax LLC was not formed until August of 2003" ignores that StreetFax, Inc. was never formed and is yet another example of the thin support Defendants have for their motion.  (Mov. at 9.)

initials on the first page of the Agreement, then the second page of the Agreement necessarily was underneath the first page of the Agreement when the interlineations and initials were written.  (*Id.*)

   After performing two different types of tests, Mr. Osborn concluded as follows:

- The only indentations on the second page of the Work for Hire Agreement are those that matched the interlineations and handwritten initials on page one of the Work for Hire Agreement; and

- The second page of the Work for Hire Agreement was underneath the first page of the Work for Hire Agreement when the interlineations and handwritten initials were made on the first page of the Work for Hire Agreement.

(*Id.* ¶¶ 7-10.)  These results substantiate the authenticity of the Work for Hire Agreement, and demonstrate that the first page of the Work for Hire Agreement attached to the Amended Complaint was in front of the second page, admitted by Defendants to be authentic.  (*See* Mov. 8-9.)  Mr. Osborn also determined that all of the handwriting and hand printing on the two pages of the Work for Hire Agreement are original ink on paper entries.  (Osborn Decl. ¶ 5.)

   While these initial results help authenticate the Work for Hire Agreement, Mr. Osborn states that partial destructive testing is necessary to determine the age of the ink used.  (*Id.* ¶ 11.) Destruction would be limited to portions of the interlineations and initials on the first page of the Work for Hire Agreement and the signatures on the second page of the Work for Hire Agreement.  (*Id.*)  Accordingly, a protocol for mutual destructive testing of original documents must be established so that both Plaintiff and Defendants are given the opportunity to conduct such testing.

   2.   Expert Opinion of Valery N. Aginsky, Ph.D. (Document Analysis)

   Valery N. Aginsky, Ph.D. is one of the world's leading experts in document analysis. Having received his Ph.D. in the field of analytical chemistry from the Military Academy of

Chemical Defense in Moscow, USSR, Dr. Aginsky has authored a number of publications and presented at scientific conferences regarding his findings on various subjects pertaining to document and ink analysis.  (*See* Declaration of Valery N. Aginsky, Ph.D. ("Aginsky Decl.") ¶ 3, Ex. A.)

Dr. Aginsky examined the original Work for Hire Agreement and analyzed the ink, paper, toner, and interlineations of the Work for Hire Agreement.  (*Id*. ¶ 4.)  For each aspect analyzed, Dr. Aginsky's findings support a determination that the Work for Hire Agreement is authentic.   Dr. Aginsky found as follows:

- The sequence in which the Work for Hire Agreement was printed, interlineated and signed is in the logical and proper order (i.e., the ball point ink is physically on top of the corresponding printed portion of the document);

- Pages 1 and 2 of the Work for Hire Agreement were printed on the same type of 8 1/2" x 11" paper with matching characteristics such as color, thickness, short and long ultraviolet fluorescence, infrared luminescence, opacity, and surface texture;

- There is no discernable difference in the ink used to write the interlineation and initials on page 1 of the Work for Hire Agreement and to sign and date the Work for Hire Agreement on page 2; and

- There is no discernable difference in the toner on page 1 and 2 of the Work for Hire Agreement.

(*Id*. ¶¶ 5-10.)

Dr. Aginsky has explained that more conclusive aging can be accomplished by dating the ink.  (*Id*. ¶ 14.)  This again, however, requires partial destructive testing (*id*.), which cannot be accomplished without a protocol being agreed upon by the parties or set by this Court.  A discovery protocol must be developed so that both parties can move forward with mutual expedited analysis of all original agreements.

      3.     John H. Evans (Email Analysis)

John H. Evans of Project Leadership Associates was asked to perform a forensic analysis

of emails between Plaintiff and Mark Zuckerberg contained on Plaintiff's electronic data storage devices. (*See* Declaration of John H. Evans ("Evans Decl.") ¶ 5.)[5] Mr. Evans is a Managing Consultant in Project Leadership Associates' ("PLA") Legal Solutions practice group. (*Id.* ¶ 3.) PLA provides a broad range of business and technology solutions that address enterprise wide strategy, operations, applications and infrastructure challenges. (*Id.*) PLA's Legal Solutions practice group provides digital forensic and electronic discovery services to a broad range of clients. (*Id.*) Mr. Evans has worked for PLA since June of 2007. (*Id.*) As a Managing Consultant for PLA, Mr. Evans' duties include working on client engagements which include, among other things, data collection, evidence preservation, ensuring evidence chain-of-custody, and forensic analysis of collected data. (*Id.*)

Mr. Evans has extensive knowledge of the inner workings of computer hardware, operating systems, file systems, software, and internet technologies. (*Id.* ¶ 4.) Mr. Evans is well versed in the identification, collection, preservation, processing, analysis, and presentation of computer-related evidence as well as the design, administration, and support of information systems. (*Id.*) He has conducted over 100 investigations concerning trade secrets, intellectual

---

[5]     Defendants assert that they have control of Zuckerberg's Harvard email account, and based upon a search of the account, they are sure that the emails Plaintiff quoted in his Amended Complaint are forgeries. (Mov. 10-13; Declaration of Bryan J. Rose ("Rose Decl.").) Defendants base this allegation largely on the opinion of an expert who was only able to examine Zuckerberg's Harvard Email account as it existed as of October 2010. (Rose Decl. ¶¶ 4-6.) First, Rose does not take into account email clients, such as Microsoft Outlook, which may have been used to interface with, manage, and alter the contents of the Harvard email server. Further, Rose was unable to review the Harvard Email account as it existed in 2002-2004 – and no one will be able to. The contents of email accounts are fluid: emails can be manually deleted, they can be moved, saved, or forwarded to another account or location, and sometimes they are automatically deleted after a certain amount of time as a method of saving space on the email server. Indeed, Rose admitted that emails were deleted on the Harvard Account. (Rose Decl. ¶ 5.) Since no party will have the opportunity to review all of Zuckerberg's emails on the Harvard servers as they appeared in the 2002-2004 time-frame, forensic review of all remaining emails, email accounts, email clients, account histories, and other backups — to the extent they exist — will be critical to this litigation.

property, fraud, employment, and misuse involving digital evidence. (*Id.*) Mr. Evans received a B.A. in Computer Science from Wittenberg University and also has received over 140 hours of instructor-led training regarding computer forensics. (*Id.*)

PLA was asked to take custody of electronic data storage devices Plaintiff identified as being in his possession, and store such devices in PLA's evidence lockup in Illinois. (*Id.* ¶ 5.) Mr. Evans was asked to perform a forensic analysis of electronic versions of three documents containing emails between Plaintiff and Zuckerberg contained on Plaintiff's electronic data storage devices. (*Id.*)

As Mr. Evans explains, unlike email clients such as Microsoft Outlook, most webmail services, including MSN Hotmail, do not provide for the saving of individual messages. (*Id.* ¶ 7.) A common means to save the contents of an MSN Hotmail webmail message, is to copy the message text into a text editing software program, such as Microsoft Word. (*Id.*) Plaintiff saved his emails during the 2002-2004 time period in this fashion. (Ceglia Decl. ¶ 11.)

Mr. Evans collected and imaged a floppy disk which contains three Microsoft Word documents with email communications between Plaintiff and Zuckerberg. (Evans Decl. ¶ 8.) The embedded metadata of these three Microsoft Word documents, which each contained the text of the relevant emails in the Amended Complaint, was analyzed to determine the date that the document was created and last revised. (*Id.* ¶¶ 8-11.) After analyzing these three documents, Mr. Evans made the following findings:

- The embedded metadata contained in a document named "Mark harvard emails up to dec.doc" reflects that the "Create Date" of this document is December 30, 2003 and "Last Revision Date" is December 30, 2003;

- The embedded metadata contained in a document named "mark feb emails.doc" reflects that the "Create Date" of this document is February 14, 2004 and "Last Revision Date" is February 14, 2004; and

- The embedded metadata contained in a document named "mark emails july04.doc" reflects that the "Create Date" of this document is July 23, 2004 and "Last Revision Date" is July 23, 2004.

(*Id.*)  According to Mr. Evans, the Microsoft Word documents include the text of the relevant emails and contain metadata which reflect that the documents were created and last revised during the relevant time periods.[6]  (*Id.*)

### B.   Plaintiff Denies Zuckerberg's Allegations

1.   Declaration of Paul D. Ceglia[7]

Plaintiff has now declared, under penalty of perjury, that:

- He has read the statements in Zuckerberg's Declaration and they

---

[6]   Defendants also support their motion with the opinion of their expert Gerald McMenamin who performed a stylistic analysis of the emails quoted in the Amended Complaint as compared to "a sample of emails genuinely authored by Zuckerberg to Plaintiff and other persons associated with StreetFax during the relevant time period."  (Mov. at 13; Declaration of Gerald McMenamin ("McMenamin Decl.") ¶¶ 8-10.)  According to Defendants, based on this stylistic analysis, "Professor McMenamin concluded that 'it is probable that Mr. Zuckerberg is not the author' of the purported emails in the Amended Complaint.  (Mov. at 13; McMenamin Decl. ¶ 14)  Defendants, however, fail to mention in their brief that this "sample" constitutes only 35 of the purported 175 "genuinely" authored emails by Zuckerberg to Plaintiff and other persons associated with StreetFax.  (Rose Decl. ¶ 8; McMenamin Decl. ¶ 3.)  Further, Defendants and Professor McMenamin fail to state who selected the 35 emails to included in the sample, how those 35 emails were selected and how many of them were actually between Zuckerberg and Plaintiff as opposed to between Zuckerberg and "other persons associated with StreetFax during the relevant time period."  Defendants fail to even mention who those "other persons" are.  Professor McMenamin's methodology is similarly questionable; for example, he bases one of the points of divergence between the "questioned" and "known" documents upon an analysis of "..." (no spaces) vs. "…" (spaces between).  (McMenamin Decl. Ex. B.)  The stylistic difference can be easily explained by Microsoft Word's autocorrect feature, which may automatically swap "..." for "…"

[7]   Defendants submit a lengthy declaration from a private investigator regarding Plaintiff's background.  (Declaration of Donald R. Henne ("Henne Decl."))  While Plaintiff does not dispute the matters of public record that Henne includes in his declaration, a review of the declaration reveals that at least 8 pages of the 12 page declaration attack Plaintiff's background based on the declarant's third hand information.  (*See, e.g.*, Henne Decl. ¶ 16 ("In October 2010, I was informed by another Kroll investigator who spoke to a victim who lives in Margate Florida ("Victim 1"), that Victim 1 provided the following information . . ."); *see also id.* ¶¶ 17-24.)  All of this, of course, is inadmissible character evidence.  *See* Fed. R. Evid. 404(a).

are false (Ceglia Decl. ¶ 4);

- He met Zuckerberg in the lobby of the Radisson Hotel in Boston on April 28, 2003 where and when they both signed the Work for Hire Agreement (*Id.* ¶ 6);

- He has copies of numerous emails that he exchanged with Mark Zuckerberg in 2003 and 2004, and many of these emails are quoted in the Amended Complaint.  Plaintiff's practice has been to copy emails related to his business dealings from his msn.com email account into Microsoft Word documents, which were then saved on to floppy disks.  Plaintiff saved emails in Word   documents because he knew of no other way to save emails from online email accounts to his computer (*Id.* ¶ 11);

- The emails quoted in the First Amended Complaint were retrieved from Mircrosoft Word documents saved on Plaintiff's floppy disks (*Id.*); and

- Plaintiff has given the forensic, electronic document consultants unfettered access to his home and office. (*Id.* ¶ 13.)

    2.    <u>Expert Opinion of Michael Pliszka (Polygraph Examination)</u>

Plaintiff voluntarily offered to submit to a polygraph examination.  (Ceglia Decl. ¶ 18.) Michael Pliszka, a highly experienced law enforcement polygraph examiner with over a decade of experience, and a member of both the American Polygraph Association and American Association of Police Polygraphists, conducted the polygraph examination. (Declaration of Michael Pliszka ("Pliszka Decl." ¶ 3.))  As set forth in Mr. Pliszka's Declaration, Plaintiff was asked a series of questions during the examination in order to determine the authenticity of the Work for Hire Agreement.  (*Id.* ¶ 8.)  After conducting the examination and reviewing the examination results, Mr. Pliszka concluded that there was "No Deception Indicated," which is indicative of an individual telling the truth.  (*Id.* ¶¶ 9-10.)  Therefore, Plaintiff is telling the truth about authenticity of the Work For Hire Agreement attached to the Amended Complaint.

**<u>PROCEDURAL HISTORY</u>**

On June 6, after receiving Defendants' Motion to Expedite Discovery, Plaintiff's counsel

reached out to Defendants' counsel to propose that the parties agree to a protocol for **mutual** expedited discovery, and avoid needless motion practice.  (*See* Hall Decl. ¶ 3.)  At Defendants' request, Plaintiff's counsel wrote a letter setting forth a proposed list of documents Plaintiff would seek in mutual expedited discovery.  (*See* Hall Decl. ¶ 5, Ex. A.)  Defendants' counsel, Orin Snyder, refused to agree on any protocol, and reasserted the baseless claims from Defendants' motion.  (*See* Hall Decl. ¶ 7, Ex. B.)  Accordingly, Plaintiff brought this cross-motion.

## ARGUMENT

### I.   DISCOVERY SHOULD COMMENCE IMMEDIATELY

#### A.   Plaintiff is Eager to Prove the Validity of the Agreement

Plaintiff has provided a sworn declaration that substantiates his claim that the Work For Hire Agreement and the related emails are authentic.  (*See* Ceglia Decl. ¶ 3.)   He has even submitted to a polygraph examination that focused on the core issue in this case—the authenticity of the Work for Hire Agreement—and the test showed "no deception" was indicated.  (*See* Ceglia Decl. ¶ 18; Pliszka Decl. ¶¶ 8-10.)  Nonetheless, Defendants have labeled Plaintiff as a cheat and a fraud.  Faced with these serious allegations, Plaintiff welcomes the opportunity to move forward with expedited discovery so that he may finally be given the opportunity to prove his case to those that have misjudged him.  (Ceglia Decl. ¶ 19.)

#### B.   There is No Reason to Delay Discovery

Defendants have requested that discovery commence immediately (*see* Mov. at 1, 22), and Plaintiff agrees.  In instances such as these, where both parties are eager to proceed with discovery, the commencement of pre-trial discovery should not be delayed.  *See N.Y. State Elec. & Gas Corp. v. U.S. Gas & Elec., Inc.*, 697 F. Supp. 2d 415, 440-41 (W.D.N.Y. 2010) (recognizing that "it is in the interests of both sides to resolve the issues in this case;" ordering

both parties to commence expedited discovery); *OMG Fidelity, Inc v. Sirius Technologies, Inc.*, 239 F.R.D. 300, 306 (N.D.N.Y. 2006) (commencing pre-trial discovery immediately, finding that "the interjection of delay into litigation for the mere sake of delay serves no useful purpose"); *U.S. Commodity Futures Trading Comm'n v. Atwood & James, Ltd.*, No. 09 CV 6032, 2009 WL 66970 at *5 (W.D.N.Y. Jan. 23, 2009) (granting permission to both sides to proceed with expedited discovery).   Here, both parties wish to proceed with discovery immediately. Accordingly, mutual expedited discovery is appropriate and a protocol should be established to move forward with discovery as soon as possible.

## II.   PLAINTIFF SEEKS LIMITED DISCOVERY TO PROVE THE AUTHENTICITY OF THE AGREEMENT

Plaintiff seeks to partake in mutual expedited discovery limited to the issue of the authenticity of the questioned documents.   Despite a good faith effort to resolve this issue without needless motion practice, Defendants have obstinately refused to discuss an agreement, insisting that discovery should be allowed only for their side, and so Plaintiff has pursued this cross-motion.

### A.   Additional Evidence Demonstrating the Authenticity of the Work for Hire Agreement is Likely to be Within Defendants' Possession

Plaintiff has provided the declarations of numerous experts demonstrating the authenticity of the questioned documents.   However, based upon the representations in Defendants' moving papers, Defendants also likely possess evidence that either supports the authenticity of the documents or discredits Defendants' alleged defenses.   Plaintiff is entitled to examine the following categories of relevant documents that presumably exist, based upon Defendants' representations:

- All documents constituting, reflecting or referring to agreements between Plaintiff and Zuckerberg;

- All documents constituting, reflecting or referring to communications between Plaintiff and Zuckerberg, which communications, include, but are not limited to, email messages, text messages, instant messages, letters, memoranda, telephone conversations and in person meetings;

- All documents, including communications as defined above, created, dated or received before July 30, 2004 referring, reflecting or related to The FaceBook, thefacebook.com, FaceBook, facebook.com, The PageBook, thepagebook.com, or any other online service or website that is similar to a live functioning yearbook, including the funding for or of any such projects;

- All documents constituting, reflecting or referring to payments made to Zuckerberg by or on behalf of Plaintiff, including, but not limited to, cancelled checks, deposit receipts or account statements; and

- No less than 30 handwriting samples from Zuckerberg, written between January 1, 2003 and July 31, 2004.

These documents—to the extent they have not been deleted or destroyed—should be in Defendants' possession, custody or control, Parmat and Associates' custody (a forensic document consulting firm involved with litigation against Zuckerberg in the District of Massachusetts), or in the Harvard University email account controlled by Zuckerberg.

These categories are limited in scope and designed to locate material responsive to Plaintiff's allegations and Defendants' defenses.

### B.   Defendants Refuse To Participate in Mutual Expedited Discovery

On June 6, 2011, Plaintiff, through his counsel, requested that both sides proceed with mutual expedited discovery.  (*See* Hall Decl. ¶ 3, Ex. A.)  Counsel for Defendants declined to decide whether Defendants would agree to mutual expedited discovery, and requested that Plaintiff submit a list of discovery items that Plaintiff would be seeking.  (*See id.* ¶ 4.)  On June 7, 2011, counsel for Plaintiff sent Defendants a letter with an itemized list of documents and evidence in Defendants' possession that would go to the issue of authenticity.  (*See id.* Ex. A.) Plaintiff agreed to cooperate with Defendants' discovery demands, as outlined in their motion papers, if Defendants would agree to provide documents responsive to the listed categories.  (*See*

*id.* ¶ 3, Ex. A.)

On June 10, 2011, Defendants sent Plaintiff a response, declining to participate in mutual discovery in any form, insisting that discovery be one-way. (*See id.* ¶ 7, Ex. B.) Defendants offered no legal basis for resisting Plaintiff's request. (*See id.*)

**C.    Simultaneous Discovery is Appropriate Here**

Defendants have requested that expedited discovery be limited to the issue of the authenticity of the original contract and supporting emails (*see* Mov. at 1, 22). Plaintiff also wishes to establish the authenticity of these documents right away. However, Plaintiff is not the only party with possession of documents that go to this issue; Defendants also possess evidence that would tend to establish the validity of the questioned documents or otherwise disprove Defendants' allegations. (*See* Hall Decl., Ex. A.)

Defendants' claim—that they searched one depository of evidence and did not find the questioned documents—should not be deemed conclusive to the issue. *See Hemans v. Long Island Jewish Med. Ctr.*, No. 10-CV-1158, 2010 WL 4386692 at *13 (E.D.N.Y. Oct. 28, 2010) (finding that "although the defendant may believe that there is a lack of evidence to support plaintiff's claims," lack of evidence cannot be established until the close of discovery); *McKenzie v. Nicholson*, No. 08-CV-0773, 2009 WL 179253 at *5 (E.D.N.Y. Jan. 26, 2009) (same). This is especially true here, where Defendants only searched the emails remaining on Harvard's email server as of October 2010. (*See* Rose Decl. at ¶¶ 6-8.) This does not take into account any email clients, such as Microsoft Outlook, potentially used to interface with, manage, and alter the contents of the Harvard email server, nor does it account for any changes to the contents of Zuckerberg's email data before October 2010.

Therefore, mutual discovery as outlined above is appropriate. When both parties are in possession of documents that go to a hotly disputed issue, both parties must share equal access to

responsive, non-privileged documents.  *See S.E.C. v. Rajaratnam*, 622 F.3d 159, 180-81 (2d Cir.

2010) (holding that it is a "fundamental maxim of discovery" that both parties have equal access

to information, creating a "presumptive right" to disclosure); *see also Hickman v. Taylor*, 329

U.S. 495, 508 n. 8 (1947) (quoting Pike and Willis, *Federal Discovery in Operation*, 7 UNIV. OF

CHICAGO L. REV. 297, 303 (1940) ("discovery is mutual – that while a party may have to

disclose his case, he can at the same time tie his opponent down to a definite position")).

### D.      Defendants' Own Submissions Demonstrate Document Destruction

Defendants have admitted that document destruction has already taken place, while

simultaneously refusing to allow discovery into their remaining records.  Defendants' expert,

Rose, admits that, upon comparison of Zuckerberg's Harvard Email Data from April 2011 and

October 2010, an unspecified number of emails were deleted from Zuckerberg's Harvard

Account.  (*See* Rose Decl. ¶ 5.)  The acknowledged deletion of emails is even more troubling

considering that Zuckerberg's email account should have been the subject of a litigation hold in

connection with this litigation since at least June 30, 2010, when this action was filed.  *See*

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of America Sec., LLC*, 685 F. Supp.

2d 456, 465 (S.D.N.Y. 2010) ("the failure to issue a *written* litigation hold constitutes gross

negligence because that failure is likely to result in the destruction of relevant information");

*Essenter v. Cumberland Farms, Inc.*, No. 1:09-CV-0539, 2011 WL 124505 at *6 (N.D.N.Y. Jan.

14, 2011) (finding negligence where party failed to take "widely-recognized steps" to preserve

evidence).

While Defendants have been unable to identify any imminent or immediate harm that

would provide the impetus for one-sided expedited discovery of Plaintiff (as discussed below),

Defendants have admitted that evidence has been deleted within the last eight months.  Plaintiff

should be allowed to commence discovery of Defendants before any additional evidence within

Defendants possession is destroyed.  *See Physicians Interactive v. Lathian Sys. Inc.*, No. CA 03-1193-A, 2003 WL 23018270 at *10 (E.D. Va. Dec. 5, 2003) (granting <u>plaintiff's</u> request for expedited discovery because "[e]lectronic evidence can easily be erased"); *Delphine Software Intern. v. Elec. Arts, Inc.*, No. 99 Civ. 4454 AGAS, 1999 WL 627413 at *3 (S.D.N.Y. Aug. 18, 1999) (granting <u>plaintiff's</u> request for expedited discovery because of "legitimate concerns" regarding the destruction of documents).

## III.  ONE-SIDED EXPEDITED DISCOVERY OF PLAINTIFF SHOULD NOT BE GRANTED

Providing no adequate legal basis for their demands of immediate discovery, Defendants instead fill a twenty-three page brief with outrageous, irrelevant, and inadmissible accusations designed to shock the interested media and defame Plaintiff.  Defendants' theatrics aside, they have not met their burden to demonstrate the need for one-sided expedited discovery of Plaintiff, or the appropriateness of a stay of discovery of Defendants.

### A.  Defendants Have Not Met the Burden for One-Sided Expedited Discovery

Whichever standard is applied here, whether it is the more stringent standard articulated in *Notaro v. Koch*,[8] or the more flexible "good cause" standard advocated by the Defendants, the result is the same.  *See Special Situations Cayman Fund, L.P. v. Dot Com Entm't Group, Inc.*, No. 03-CV-0811, 2003 WL 23350128 at *1 (W.D.N.Y. Dec. 5, 2003) (assuming *arguendo* that "good cause" applied, finding motion for expedited discovery failed both standards).  Defendants cannot demonstrate that any irreparable injury will occur if they are not allowed to immediately examine documents that are safely in the possession of a forensic expert.  *See Notaro*, 95 F.R.D.

---

[8] *See Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982) (party seeking expedited discovery must demonstrate "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the relief is granted.")

at 405; *ConnectU, Inc. v. Facebook, Inc.*, Case No. 1:07-cv-10593 (DPW) (Docket No. 103) (D.
Mass. Sept. 13, 2007).

Even if a "good cause" standard is utilized here, Defendants have provided no legal basis
under which a defendant is entitled to receive all of its defensive discovery prior to a plaintiff is
allowed to begin his discovery.  As eager as Defendants are to skip to a verdict in their favor,
they can cite to no situation where a <u>defendant</u>, who does not bear the burden of persuasion, was
granted one-sided, expedited, defensive discovery.

### B.    One-Sided Expedited Discovery Is Neither Necessary Nor Appropriate

1.    <u>One-sided expedited discovery is typically granted to a plaintiff seeking a
temporary restraining order or a preliminary injunction</u>

In a majority of cases cited by Defendants where targeted, one-sided expedited discovery
was granted, the request for expedited discovery was made by the <u>plaintiff</u>, who was
simultaneously seeking a temporary restraining order, preliminary injunction, or immediate *ex
parte* relief because of time-sensitive factors.  *See Stern v. Crosby*, 246 F.R.D. 453, 457
(S.D.N.Y. 2007) (court granted one-sided expedited discovery because there was a tape
recording of the defendant talking about bribing witnesses after the case was brought, evidence
that witness tampering was on-going); *Physicians Interactive*, 2003 WL 23018270 at *11 (court
granted one-sided expedited discovery because defendants had allegedly hacked into plaintiff's
databases to steal trade secrets, and plaintiff was afraid that defendants would erase the
evidence); *Ayyash v. Bank al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005) (court granted one-
sided expedited discovery on plaintiff's *ex parte* motion because the defendants were foreign
individuals and corporations "who have both incentive and capacity to hide their assets,"
justifying considerable urgency in determining location of assets within the U.S.)

In the cases cited by Defendants where time pressure was not a factor, the court either: (a) granted very limited discovery to enable the <u>plaintiff</u> to amend the pleadings, *see Amari v. Spillan*, No. 2:08-cv-829, 2008 WL 5378339 at \*4 (S.D. Ohio Dec. 19, 2008) (court granted limited discovery because plaintiff sought an accounting from Defendants to determine involvement of parties in action); *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 278 (N.D. Cal. 2002) (court granted plaintiff limited discovery to enable it to determine if other patents it held were being violated by defendant, so that it could amend its complaint sooner than later); or (b) let <u>both parties</u> proceed immediately with discovery, *see OMG Fidelity, Inc. v. Sirius Technologies, Inc*, 239 F.R.D. 300, 306 (N.D.N.Y. 2006) (granting mutual expedited discovery upon plaintiff's request, declining, however, to grant plaintiff's request to shorten defendant's response time); *U.S. Commodity Futures Trading Comm'n v. Atwood & James, Ltd.*, No. 09CV6032 at \*5, 2009 WL 666970 (W.D.N.Y. Jan. 23, 2009) (granting mutual expedited discovery, allowing both parties to commence regular discovery and begin immediately noticing depositions).

In no case cited by Defendants is a <u>defendant's</u> motion for expedited discovery granted, nor is the discovery requested ever focused on a question of authenticity. Defendants' demand for Plaintiff's immediate disclosure, and simultaneous refusal to participate in mutual discovery, has no basis in law and, thus, should be rejected in its entirety.

2.   <u>Defendants have admitted document destruction, but cannot demonstrate<br>immediate harm to their case by Plaintiff</u>

As shown above, the Rose Declaration demonstrates recent destruction of evidence in Defendants' possession while this litigation has been pending. (Rose Decl. ¶ 5.) Defendants can point to no similar concerns regarding documents in Plaintiff's possession. All of Plaintiff's electronic documents are in a forensic consultant's custody (*see* Evans Decl. ¶ 5), and the

original contract is in a safety-deposit box at Steuben Trust Company in Hornell, New York. (*See* Declaration of Paul A. Argentieri ¶ 3.) There is no concern of spoliation of Plaintiff's documents, and Defendants cannot point to any other event, likely to occur in the future, that would result in spoliation of evidence. Nor can they justify their newfound sense of urgency, as this case has already been pending for a year.

 3.   Authenticity is a low burden in the Second Circuit; remaining questions of credibility are left for the finder of fact

Defendants are in a rush to receive one-sided discovery on an issue that is typically left to the finder of fact. "The bar for authentication of evidence is not particular high;" the standard is "described as 'minimal.'" *Jacobson v. Empire Elec. Agreementors, Inc.*, 339 Fed. Appx. 51, 54 (2d Cir. 2009). "The proponent need not rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007). Federal Rule of Evidence 901 "does not erect a particularly high hurdle, and that hurdle may be cleared by circumstantial evidence." *United States v. Tin Yat Chin*, 371 F.3d 31, 38 (2d Cir. 2004) (quoting *United States v. Dhinsa*, 243 F.3d 635, 658-59 (2d Cir. 2001)).

"Once Rule 901's requirements are satisfied, the evidence's persuasive force is left to the jury." *Id*. "[T]he other party then remains free to challenge the reliability of the evidence, to minimize its importance, or to argue alternative interpretations of its meaning, but these and similar other challenges go to the *weight* of the evidence—not to its *admissibility*." *Id*. (emphasis original); *see also Humphrey v. Landers*, 344 Fed. Appx. 686, 688 (2d Cir. 2009) (holding the court cannot substitute its judgment for that of the jury); *Brown v. Junction Pool Commons, Inc*., 301 Fed. Appx. 24, 26 (2d Cir. 2008) (same).

Defendants have not made clear what they hope to accomplish with the expedited, one-

sided discovery of an issue of authenticity—a "low hurdle" to meet—when lingering questions

of authenticity are ultimately left to the jury. They have not outlined the procedure by which

"this case will end" should they get the discovery they seek.

Defendants' request for one-sided expedited discovery should be denied.

## <u>CONCLUSION</u>

Plaintiff respectfully requests that the Court: grant his cross-motion for mutual expedited

discovery; or, in the alternative, deny Defendants' motion for one-sided expedited discovery and

deny Defendants' request for a stay of all other discovery; and grant such other and further relief

as the Court may deem just and proper.

Dated:  New York, New York.
         June 17, 2011

         Respectfully submitted,

         DLA PIPER LLP (US)
         John Allcock
         Robert W. Brownlie
         Gerard A. Trippitelli


By: */s/ Christopher P. (Kip) Hall*__
    Christopher P. (Kip) Hall
    kip.hall@dlapiper.com
    Carrie S. Parikh
    carrie.parikh@dlapiper.com
    1251 Avenue of the Americas 27th
    Floor
    New York, NY 10020-1104
    212.335.4500
    *Attorneys for Plaintiff Paul D.*
    *Ceglia*

LIPPES MATHIAS WEXLER
FRIEDMAN LLP
Dennis C. Vacco (co-counsel)
dvacco@lippes.com
Kevin J. Cross (co-counsel)
kcross@lippes.com
Richard M. Scherer, Jr. (co-
counsel)
rscherer@lippes.com
665 Main Street, Suite 300
Buffalo, NY 14203
716.853.5100

Paul Argentieri (co-counsel)
paul.argentieri@gmail.com
188 Main St.
Hornell, NY 14843
607.324.3232