UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PAUL D. CEGLIA,

    Plaintiff,

  v.

MARK ELLIOT ZUCKERBERG and
FACEBOOK, INC.,

    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No. 1:10-cv-00569-RJA


**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR EXPEDITED
DISCOVERY AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR
"MUTUAL" EXPEDITED DISCOVERY**


Thomas H. Dupree, Jr.
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
(202) 955-8500


Terrance P. Flynn
HARRIS BEACH PLLC
726 Exchange Street
Suite 1000
Buffalo, NY 14210
(716) 200-5120


June 24, 2011

Orin Snyder
Alexander H. Southwell
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193
(212) 351-4000

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 4

ARGUMENT ...................................................................................................................... 8

    I.     THIS COURT SHOULD GRANT DEFENDANTS' MOTION AND
        ORDER EXPEDITED DISCOVERY. ................................................................. 8

    II.    THIS IS NOT THE "EXCEPTIONAL" CASE WARRANTING  COURT-
        APPOINTED INDEPENDENT EXAMINERS. ................................................. 10

    III.   CEGLIA'S REMAINING DEMANDS ARE MERITLESS. ............................... 13

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ayyash v. Bank Al-Madina*, 233 F.R.D. 325 (S.D.N.Y. 2005) ................................................ 8, 14

*Collins v. Bennett*, No. 01-CV-6392, 2004 WL 951362 (W.D.N.Y. Apr. 13, 2004) ................... 2

*Hiern v. Sarpy*, 161 F.R.D. 332 (E.D. La. 1995) ......................................................... 11

*In re Joint E. & S. Dist. Asbestos Litig.*, 830 F. Supp. 686 (E.D.N.Y. 1993) ............................. 10

*Mallard Bay Drilling, Inc. v. Bessard*, 145 F.R.D. 405 (W.D. La. 1993) .................................. 11

*Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982) ........................................................... 8

*Stern v. Cosby*, 246 F.R.D. 453 (S.D.N.Y. 2007) .......................................................... 8

*Tangwall v. Robb*, No. 01-100008-BC, 2003 WL 23142190 (W.D. Mich. Dec. 23, 2003) ......... 10

*United States v. Messina*, 131 F.3d 36 (2d Cir. 1997) ..................................................... 2

*United States v. Rea*, 958 F.2d 1206 (2d Cir. 1992) ....................................................... 2

**Other Authorities**

29 Charles Alan Wright, et al., *Federal Practice & Procedure* § 6304 (2011) ........................... 11

Geoffrey A. Fowler and Scott Morrison, *Fight over Facebook Origins Escalates*, Wall St. J., Apr. 13, 2011 ....................................................................................... 7

http://answers.yahoo.com/question/index?qid=20080306125519AAaWvxG .................................. 6

http://www.pcreview.co.uk/forums/do-change-created-date-word-document-t897994.html ............. 6

John Anderson, *Ceglia Saved e-mails to Facebook CEO Zuckerberg from Fassett House*, Wellsville Daily (Apr. 13, 2011) .................................................................. 1

William W. Schwarzer & Joe S. Cecil, *Management of Expert Evidence*, in Fed. Judicial Ctr., Reference Manual on Scientific Evidence 61 (2d ed. 2000) ............................. 11

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR EXPEDITED DISCOVERY AND IN PARTIAL OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR "MUTUAL" EXPEDITED DISCOVERY**

Defendants Mark Zuckerberg and Facebook, Inc. respectfully submit this memorandum of law in further support of their motion for expedited discovery, and in partial opposition to Plaintiff Paul Ceglia's Cross-Motion for "mutual" expedited discovery.

## INTRODUCTION

Defendants' motion for expedited discovery demonstrated that the alleged "contract" and "emails" at the heart of this case are outright frauds. In response, Ceglia now acknowledges that the threshold issue is whether his case is built upon fraudulent documents. He further admits that expedited and targeted discovery is necessary to get to the bottom of this very serious matter. But far from establishing the legitimacy of his case, Ceglia's latest submissions raise even more troubling questions and confirm that Defendants are entitled to immediate relief.

From the start, Ceglia's case has been a moving target — and his story has changed yet again. When he filed his first complaint, he made no mention of any emails and relied solely on the alleged contract. After Defendants made clear that the contract is an obvious forgery, Ceglia — represented by a new set of lawyers — declared that he had discovered numerous emails with Zuckerberg stored on computers at his parents' house, and purported to quote (but did not attach copies of) those supposed emails in his Amended Complaint. *See* John Anderson, *Ceglia Saved e-mails to Facebook CEO Zuckerberg from Fassett House*, Wellsville Daily, Apr. 13, 2011. In his latest filing, Ceglia has now recanted *this* version of events and appears to admit that he has no emails at all. He *now* claims that although he does not have the emails themselves, he has a floppy disk with word processing documents containing text that he cut-and-pasted from his purported emails with Zuckerberg.

As his fraud is exposed with each successive filing in this case, Ceglia's claims become increasingly preposterous, and he is forced to concoct even more outlandish tales to prop up what is an obvious fraud on the court. The evidence of fraud is so overwhelming that Ceglia's own lawyers, in an apparent act of self-protection, have been reduced to making their client take a polygraph examination, even though "the 'traditional rule' in the Second Circuit is that polygraph results are inadmissible" because they are notoriously unreliable and subject to manipulation. *Collins v. Bennett*, No. 01-CV-6392, 2004 WL 951362, at *5 (W.D.N.Y. Apr. 13, 2004) (quoting *United States v. Messina*, 131 F.3d 36, 42 (2d Cir. 1997), and citing *United States v. Rea*, 958 F.2d 1206, 1224 (2d Cir. 1992)).

But even the inadmissible polygraph test sounds alarm bells and underscores how little confidence Ceglia's lawyers have in his story: the examiner says that he asked Ceglia whether the purported contract is a forgery, ***but he does not say that he asked him whether the purported emails were forgeries***. *See* Pliszka Decl., ¶ 8. This is a telling omission: either Ceglia's lawyers instructed the examiner not to ask about the so-called emails because they knew or suspected their client was lying — or the polygraph examiner ***did*** ask Ceglia and the lawyers have chosen to conceal the incriminating results.

One thing is clear. Ceglia does not dispute Defendants' overwhelming evidence showing that he has spent decades running scams and ripping people off, saying only that he has "made some mistakes" in his life. Ceglia Decl., ¶ 17. He now acknowledges that the central question in this case is whether he is committing a massive fraud on the court by fabricating the alleged contract and the so-called emails. He concedes that targeted, expedited discovery — including forensic examination of these documents — is necessary before this lawsuit may proceed any further. And he does not oppose the relief Defendants have requested, provided that he is

permitted expedited discovery of his own. *See* Cross-Motion at 1 ("Plaintiff objects to Defendants' motion to expedite only insofar as it is one-sided.").

As explained below, this Court should grant Defendants' motion in full, and issue an order compelling immediate production of the original signed version of the purported contract, as well as the native electronic version and all copies of the document; compelling immediate production of the so-called emails (including the floppy disk that allegedly contains the word processing documents into which Ceglia says he cut-and-pasted the text of emails); and immediately seizing, and permitting Defendants to inspect and image, every computer in Ceglia's possession, custody, or control, including the computers at his parents' house.

Ceglia has requested "mutual" discovery. Defendants have no objection to producing all the emails between Zuckerberg and Ceglia (and/or other persons associated with StreetFax) that were captured from Zuckerberg's Harvard email account. These indisputably genuine emails directly contradict Ceglia's make-believe narrative and demonstrate that Ceglia's story is a lie. Defendants are willing to produce these emails under a protective order after Ceglia has produced the documents and items identified above. Ceglia's overbroad and burdensome discovery requests, however, should be denied. The only proper subject for expedited discovery is the authenticity of the alleged contract and so-called emails, which can be determined exclusively by forensic analysis. There is no need for the far-reaching discovery into collateral issues Ceglia now demands.

While producing Zuckerberg and Ceglia's genuine emails will expedite the resolution of this case, the same cannot be said for Ceglia's request that the Court appoint an "independent examiner" to assess the authenticity of the alleged contract and purported emails. Courts have consistently held that appointment of an independent examiner is an "extraordinary" remedy

reserved for "exceptional" cases. This is plainly not such a case. The obvious purpose of this request is to prevent Defendants' own forensic experts from examining the "contract" and "emails" — denying them access to Ceglia's instruments of fraud — and to entangle the parties and the Court in endless negotiations and motion practice over discovery protocols. Moreover, at the same time Ceglia objects to "one-sided discovery," he is attempting to deny Defendants' experts the same unfettered access to these documents that *his* experts have had for months. The law does not permit one party to have its experts examine challenged documents for authenticity and then bar the other side from conducting a similar examination while the documents are turned over to a court-appointed expert. Particularly when viewed alongside Ceglia's request for "mediation" — a request based on the mistaken premise that there could be any acceptable resolution to this fraudulent lawsuit short of an immediate dismissal with prejudice — it is evident that Ceglia's strategy is to obstruct the full and complete investigation of his fraud for as long as possible in hopes of delaying judgment day or extracting a settlement.

## BACKGROUND

On June 2, 2011, Defendants moved for expedited discovery. The motion was supported by declarations from some of the country's leading experts in document authentication. It was further supported by a declaration from an investigator setting forth Ceglia's extensive criminal history, including a land scam operation that had never been previously disclosed, in which Ceglia forged government documents to facilitate his fraudulent sales of land to unsuspecting consumers. Mark Zuckerberg also submitted a declaration stating that he did not sign the alleged contract and did not write or receive the purported emails. Zuckerberg Decl., ¶¶ 5, 14.

On June 17, 2011, Ceglia filed his opposition and cross-motion. Ceglia's papers are evasive and hedging. They are also remarkable for what they do *not* say. Although Ceglia

argues that Defendants "fill[ed] a twenty-three page brief with outrageous, irrelevant, and inadmissible accusations," Cross-Motion at 16, he does ***not*** say that Defendants' claims are inaccurate. Indeed, Ceglia makes little effort to contest the vast majority of facts set forth in Defendants' motion and supporting declarations:

- Defendants demonstrated that Ceglia is a career scam artist with a proven track record of falsifying documents and ripping off innocent people. Henne Decl., ¶¶ 5-24. One of Ceglia's scams involved a forged government document. *Id*., ¶¶ 20-22. In response, Ceglia admits to "the matters of public record" and ***does not deny*** his other crimes, including the land scam and his forgery of a government document. *See* Cross-Motion at 9 n.7; Ceglia Decl., ¶ 17.

- Defendants pointed out that Ceglia purported to quote from the fake emails, but did not attach them to his Amended Complaint. *See* Motion at 7. In response, Ceglia ***still*** refuses to produce the purported emails.

- Defendants demonstrated that the genuine emails captured from Zuckerberg's Harvard email account contradict the fictional tale that appears in Ceglia's Amended Complaint. Motion at 11-12; Rose Decl., ¶ 8. In response, Ceglia does not dispute that Zuckerberg's emails are genuine, and he offers no explanation for the many direct contradictions between the genuine emails and his purported emails.

This is not a case of dueling sets of emails. The emails from Zuckerberg's Harvard email account exist in their original, native form and can be conclusively established as genuine, just as a fingerprint provides conclusive proof of identity. Ceglia's "emails," in contrast, do not exist in their original, native form, and Ceglia has no way of proving that they are genuine. All he can

say is "Trust me" — a dubious proposal coming from a convicted felon and professional con artist who has previously fabricated documents in furtherance of his fraudulent schemes.

Ceglia attaches to his cross-motion declarations from various "experts." But their equivocal opinions and carefully-crafted language raise more questions and hurt his case far more than they help it. Contrary to Ceglia's claim that he "has provided the declarations of numerous experts demonstrating the authenticity of the questioned documents," Cross-Motion at 12, ***none*** of his purported experts reach this conclusion. None is willing to say that the purported contract and emails are genuine. To the contrary, each declarant is very careful to ***avoid*** reaching this conclusion, and to make clear the many qualifications surrounding his conditional determination that he has not yet uncovered evidence of fraud.

For example, John Evans, the "Email analysis expert," states that the word processing documents "contain[ ] ***what I understand*** to be email communications between Mr. Ceglia and Mr. Zuckerberg relating to the issues in this case." Evans Decl., ¶ 8 (emphasis added). Neither Evans nor any of Ceglia's declarants concludes that the emails are authentic. Indeed, Evans's "expert analysis" apparently consisted only of his looking at the "Create Date" and "Last Revision Date" in the documents on Ceglia's floppy disk — two properties that can be falsified with ease. In fact, there are websites that provide specific step-by-step instructions on how to accomplish this trick. *See, e.g.*, Yahoo! Answers, http://answers.yahoo.com/question/index?qid=20080306125519AAaWvxG (last visited June 23, 2011); *see also* PC Review,

http://www.pcreview.co.uk/forums/do-change-created-date-word-document-t897994.html (last visited June 23, 2011).[1]

Likewise, none of the declarants is willing to say that the purported contract is authentic. John Osborn, the "indentations expert," says only that he thinks "the second page of the Agreement was underneath the first page of the Agreement when the interlineations and handwritten initials were made on the first page of the agreement" — an opinion that is completely consistent with Ceglia's having forged the document. Osborn Decl., ¶ 10. Valery Aginsky, the "document analysis expert," states that he was asked to examine the purported contract "for purposes of analyzing its authenticity" — but then declines to reach any conclusion as to authenticity and states that more testing is needed. Aginsky Decl., ¶¶ 4, 14. Notably, although Ceglia's lawyer told the *Wall Street Journal* that he "brought in an outside expert to examine the computer file used to create the contract and to verify when it was first created," *see* Geoffrey A. Fowler and Scott Morrison, *Fight over Facebook Origins Escalates*, Wall St. J., Apr. 13, 2011, at B1, there is no declaration supporting this bald claim.[2]

Tellingly, even Ceglia himself declines to expressly state under oath that the purported contract and so-called emails are genuine. In his declaration, Zuckerberg stated, under oath and

---

[1] Although Ceglia does not contest Defendants' need for expedited discovery, Evans's declaration underscores the need for an order seizing Ceglia's computers. Ceglia attests that he understands that Evans has "collected and forensically preserved . . . *a couple of* computers." Ceglia Decl., ¶ 13 (emphasis added). But Evans attests that he has taken custody of only "*one* laptop computer." Evans Decl., ¶ 6 (emphasis added). Thus, it appears that Evans has not, in fact, preserved all sources of electronic evidence. Nor does it appear that Evans or anyone else has preserved Ceglia's msn.com email account.

[2] Ceglia falsely suggests, Cross-Motion at 2-3, that Defendants have "admit[ted]" that page 2 of the purported contract is authentic. Defendants have simply pointed out the many indicators of fraud on page 1 of the contract, and surmised that Ceglia may have doctored page 1 of the StreetFax contract, then attached it to the actual version of page 2.

without qualification or equivocation, that "I did not sign the document attached as Exhibit A to the Amended Complaint" and "I did not write or receive any of the alleged emails quoted in the Amended Complaint." Zuckerberg Decl., ¶¶ 5, 14. In contrast, Ceglia speaks only in general language and never specifically denies that he doctored the alleged contract or fabricated the purported emails.

## ARGUMENT

### I. THIS COURT SHOULD GRANT DEFENDANTS' MOTION AND ORDER EXPEDITED DISCOVERY.

Ceglia agrees that expedited discovery is warranted to determine whether the contract and emails are fraudulent. He further agrees that forensic analysis is necessary for this determination. Aside from his request for "mutual" discovery, Ceglia does not object to this Court granting all the relief Defendants have requested, including an order seizing Ceglia's computers (and those at his parents' house) and compelling him to produce all versions of the alleged contract and so-called emails. Accordingly, this Court should grant Defendants' motion in full.[3]

Once the Court grants Defendants' motion, Ceglia must produce all of his hard-copy and electronic records supporting his claims. Defendants' forensic experts will then conduct an investigation that includes the following steps:

---

[3] Although Ceglia agrees that Defendants are entitled to expedited discovery, he suggests that a showing more stringent than "good cause" may apply. *See* Cross-Motion at 16 (noting that *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982) applied a heightened standard). But "many recent cases reject *Notaro* and apply a more flexible 'good cause' test. These latter cases seem to have the better of the argument." *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326 (S.D.N.Y. 2005) (internal citations omitted); *see also Stern v. Cosby*, 246 F.R.D. 453, 457 (S.D.N.Y. 2007) ("More recently, courts have applied a more flexible standard of 'reasonableness' and 'good cause.' I agree that the more flexible approach is the better approach." (internal citation omitted)).

- A forensic examination of the original, signed version of the purported contract, by analyzing ink, paper and printing attributes in a non-destructive manner.

- A forensic examination of the original electronic version of the purported contract by analyzing the metadata.

- A forensic examination of the floppy disks and the word processing documents containing what Ceglia claims is the text of emails with Zuckerberg by analyzing the metadata.

- A forensic examination of all computers and other electronic media in Ceglia's (or his parents') possession to identify documents or other electronic evidence relevant to the authenticity of the alleged contract and purported emails.[4]

Ceglia asks that he be permitted to take expedited discovery as well. Although Ceglia has conspicuously failed to establish the "good cause" necessary under Second Circuit law, Defendants have no objection to producing all the emails between Zuckerberg and Ceglia (and/or other persons associated with StreetFax) that were captured from Zuckerberg's Harvard email account. Contrary to Ceglia's assertion, Cross-Motion at 15, none of the emails in that account have been "destr[oyed]." Any differences in the emails collected in October 2010 and April 2011 are technical and non-substantive. *See* Rose Supp. Decl., ¶ 5.

Defendants are willing to produce the emails from the Harvard email account once Ceglia has produced the documents and items discussed above. Absent a sequencing of discovery, there

---

[4] Defendants' examination of the electronic evidence will be conducted by their experts at Stroz Friedberg — one of the most highly-regarded forensic consulting firms in the country. Stroz Friedberg has extensive experience in these types of forensic investigations, and routinely performs similar work for the U.S. Department of Justice and other clients.

is a significant risk that Ceglia will take the indisputably genuine emails from Zuckerberg's account and use them to create new, fabricated email "exchanges" that he will then "discover" in a Word document contained on a floppy disk. Requiring Ceglia to produce all of the "emails" he claims to possess first will reduce the risk that Ceglia will create new forgeries in an attempt to change his story yet again.

## II. THIS IS NOT THE "EXCEPTIONAL" CASE WARRANTING COURT-APPOINTED INDEPENDENT EXAMINERS.

Ceglia proposes (in a single sentence in his brief) that the Court appoint an independent examiner to assess the authenticity of the alleged contract. Cross-Motion at 2. His "email expert" Evans — who generally agrees with Defendants' proposed discovery protocol — suggests appointing an independent examiner to assess the authenticity of the purported emails. Evans Decl., ¶¶ 14-15. These proposals should be summarily rejected.

Appointment of an independent expert is "reserved for exceptional cases in which the ordinary adversary process does not suffice," such as cases presenting "complex mass tort problems." *In re Joint E. & S. Dist. Asbestos Litig.*, 830 F. Supp. 686, 693 (E.D.N.Y. 1993). "[M]ost judges view the appointment of an expert as an extraordinary activity that is appropriate only in rare instances." *Tangwall v. Robb*, No. 01-100008-BC, 2003 WL 23142190, at *3 (E.D. Mich. Dec. 23, 2003). Indeed, "[e]ven in complex litigation," appointment of an expert "is the exception and not the rule." *Hiern v. Sarpy*, 161 F.R.D. 332, 336 (E.D. La. 1995) (internal quotation marks omitted). As the Federal Judicial Center manual explains, "the need for such appointments will be infrequent and will be characterized by evidence that is particularly difficult to comprehend, or by a failure of the adversarial system to provide the information necessary to sort through the conflicting claims and interpretations." William W. Schwarzer &

Joe S. Cecil, *Management of Expert Evidence*, in Fed. Judicial Ctr., Reference Manual on Scientific Evidence 61 (2d ed. 2000).

The leading federal practice treatise emphasizes that the appointment of experts "is rare under virtually any circumstances," because "appointing an expert increases the burdens of the judge, increases the costs to the parties, and interferes with adversarial control over the presentation of evidence." 29 Charles Alan Wright, et al., *Federal Practice & Procedure* § 6304 (2011). A court-appointed expert is particularly unnecessary in cases where the parties themselves have already retained experts who are fully capable of analyzing the issues. *See, e.g.*, *Mallard Bay Drilling, Inc. v. Bessard*, 145 F.R.D. 405, 406 (W.D. La. 1993) ("Where as here, the experts retained by the parties are well qualified and capable of presenting sufficient information to permit a just resolution of the pending issue, appointment of yet another expert is not warranted."); 29 Wright et al. § 6304 ("[E]ven where the case involves complex matters, the courts usually decline to appoint an expert if they can rely on the parties' experts to educate the trier of fact.").

Here, there is absolutely no basis for the Court to take this "extraordinary" step. Appointing independent experts would subvert the adversarial process, impose undue expense and delay, and frustrate the fair and prompt administration of justice. The issues surrounding Ceglia's fraud are not unduly complex, and the parties have already retained numerous experts to analyze the alleged contract and purported emails. The experts are ready to conduct their examinations in a manner that does not undermine the other side from performing the same analysis. Ceglia's brief and declarations offer no reason to conclude that the parties' experts are incapable of considering and resolving these issues, or that the adversary process is somehow incapable of uncovering the truth. Moreover, in light of the fact that Ceglia's experts have

already had months of unfettered access to the alleged contract and purported emails, it would be manifestly unjust to deny Defendants' experts the same access. The law does not permit one side to conduct its own expert examinations of a challenged document, and then bar the other side from conducting the same examination by referring all future discovery to a court-appointed examiner.

The "extraordinary" step of appointing independent examiners would also slow this case to a virtual halt. Examining Ceglia's documents will be an iterative process requiring frequent back-and-forth between counsel and the expert. Ceglia's proposal would entangle the parties and this Court in an endless cycle of negotiations and motion practice over the proper "protocol" for examining the document and computers, as the parties would need to reach agreement on countless steps in the discovery process — and seek this Court's intervention for the inevitable disputes that will arise at every turn. Ceglia's proposal would create logjams and stalemates, and significantly delay resolution of this case — directly contrary to Ceglia's professed goal of "get[ting] to the truth as quickly as possible." Cross-Motion at 2. It would also prevent the parties from fully developing their cases, as they would be unable to have privileged conversations with the examiners.

Ceglia's proposal is a transparent effort to obstruct Defendants' full access to Ceglia's instruments of fraud. If Ceglia truly had nothing to hide, he would have no objection to giving Defendants' experts unfettered access to the purported contract and "emails." But Ceglia knows full well what will happen when Defendants' experts are granted access. Even experienced scam artists like Ceglia often leave a trail of forensic fingerprints that can, under certain circumstances, reveal when a paper or electronic document has been tampered with or altered. For all of these reasons, Ceglia's request should be denied.

### III.     CEGLIA'S REMAINING DEMANDS ARE MERITLESS.

Other than permitting Ceglia the limited discovery discussed above, this Court should deny Ceglia's Cross-Motion in full. Ceglia's discovery at this stage of the case should be limited to the relevant emails in Zuckerberg's Harvard email account. There is simply no basis for granting Ceglia expedited discovery into the five broad areas listed in his brief, *see* Cross-Motion at 12-13, which go far beyond what Ceglia acknowledges is the threshold, dispositive issue: whether the contract and so-called emails are authentic.

Ceglia claims that he "seeks to partake in mutual expedited discovery limited to the issue of the authenticity of the questioned documents." *Id.* at 12. But he then admits that his five proposed discovery categories are ***not*** so limited when he states that they are "designed to locate material responsive to ***Plaintiff's allegations and Defendants' defenses.***" *Id.* at 13 (emphasis added). Ceglia's statement is an admission that his discovery requests are in fact requests for plenary discovery that go well beyond what he agrees is the ***only*** proper subject for expedited discovery — the question of authenticity.

For example, Ceglia demands expedited production of "[a]ll documents, including communications as defined above, created, dated or received before July 30, 2004 referring, reflecting or related to The FaceBook, thefacebook.com, FaceBook, facebook.com, The PageBook, thepagebook.com, or any other online service or website that is similar to a live functioning yearbook, including the funding for or of any such projects." *Id.* at 13. This is a plainly overbroad, burdensome and harassing request that has little if anything to do with the question whether Ceglia's documents are forgeries. Ceglia has no grounds for demanding, on an expedited basis, a massive production of documents concerning the origins of Facebook when the threshold question is whether he has doctored a contract and fabricated emails in furtherance of an attempt to defraud the Court.

Ceglia's other document requests (to the extent they exceed the limited production Defendants are willing to make) should be rejected for the same reason: they are overbroad, burdensome and not directly related to the question of authenticity. Indeed, if Ceglia's documents are forgeries, he has *no* right to take *any* discovery from Defendants. For that reason, determining the authenticity of the alleged contract and purported emails is a *prerequisite* to Ceglia obtaining "material responsive to Plaintiff's allegations and Defendants' defenses." *Id.* at 13.

Ceglia's brief makes no effort to justify his sweeping requests. He offers no explanation, makes no showing of prejudice, and simply asserts that he is "entitled" to this discovery on an expedited basis. *Id.* at 12. Unsupported and conclusory assertions of this nature do not come close to satisfying the Second Circuit's "good cause" standard. *See, e.g.*, *Ayyash*, 233 F.R.D. at 326. Particularly where, as here, Defendants have demonstrated a prima facie case of fraud on the court, Ceglia should not be rewarded by having the opportunity to conduct an expedited fishing expedition through Defendants' documents in an attempt to further delay this action, harass Defendants, and advance his fraudulent scheme.

This Court should also reject Ceglia's suggestion that this case be referred to mediation. Cross-Motion at 2. There is nothing to mediate. The *only* acceptable resolution to this fraudulent lawsuit is for Ceglia to immediately dismiss his claims with prejudice under Federal Rule of Civil Procedure 41.[5]

---

[5] Because the parties agree that expedited, targeted discovery on the question of Ceglia's fraud is necessary before plenary discovery may proceed, we respectfully submit that the Court should stay the Rule 16(c) conference.

**CONCLUSION**

For the foregoing reasons, this Court should grant Defendants' Motion for Expedited

Discovery and deny Ceglia's Cross-Motion or, in the alternative, limit Ceglia's discovery to the

emails between Zuckerberg and Ceglia (and/or other persons associated with StreetFax) that

were captured from Zuckerberg's Harvard email account.

Dated:        New York, New York
              June 24, 2011

                                    Respectfully submitted,

                                    /s/ Orin Snyder
Thomas H. Dupree, Jr.                       Orin Snyder
GIBSON, DUNN & CRUTCHER LLP     Alexander H. Southwell
1050 Connecticut Avenue, NW          GIBSON, DUNN & CRUTCHER LLP
Washington, DC 20036                 200 Park Avenue, 47th Floor
(202) 955-8500                       New York, NY 10166-0193
                                    (212) 351-4000

Terrance P. Flynn
HARRIS BEACH PLLC
726 Exchange Street
Suite 1000
Buffalo, NY 14210
(716) 200-5120

        *Attorneys for Defendants Mark Zuckerberg and Facebook, Inc.*