UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PAUL D. CEGLIA,

               Plaintiff,

      v.

MARK ELLIOT ZUCKERBERG and
FACEBOOK, INC.,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No. 1:10-cv-00569-RJA

**DEFENDANTS' REDACTED MEMORANDUM OF LAW IN SUPPORT OF THEIR CROSS-MOTION TO COMPEL AND FOR OTHER RELIEF, AND IN OPPOSITION TO CEGLIA'S MOTION TO COMPEL**

Thomas H. Dupree, Jr.
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
(202) 955-8500

Terrance P. Flynn
HARRIS BEACH PLLC
726 Exchange Street
Suite 1000
Buffalo, NY 14210
(716) 200-5120

Orin Snyder
Alexander H. Southwell
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193
(212) 351-4000

August 4, 2011

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................... 1

BACKGROUND ........................................................................................................ 5

FUTURE PROCEEDINGS ........................................................................................ 8

ARGUMENT ............................................................................................................. 8

I.  THIS COURT SHOULD GRANT DEFENDANTS' CROSS-MOTION .............. 8

    A.  Ceglia Should Be Ordered To Produce The Electronic Documents Required By The Order ............................................................................. 9

    B.  Ceglia Should Be Ordered To Certify His Compliance ........................... 10

    C.  Ceglia's Current Lawyers Should Be Required To Sign Rule 11 Certifications ........................................................................................... 11

    D.  Ceglia Should Be Ordered To Permit Additional Ink Sampling. ............. 12

    E.  This Court Should Review In Camera The Two Documents  As To Which Ceglia Has Asserted Attorney-Client Privilege. .......................... 13

    F.  This Court Should Overrule Ceglia's Blanket "Confidentiality" Designation. ............................................................................................. 14

II.  CEGLIA'S MOTION SHOULD BE SUMMARILY DENIED .......................... 15

    A.  Ceglia's Motion Violates The Local Rules Because He Failed To Meet And Confer, And Failed To File The Required Affidavit. .............. 16

    B.  Ceglia's Claims Are Frivolous And Could Not Have Been Brought In Good Faith. ............................................................................ 17

III.  THE COURT SHOULD AWARD DEFENDANTS THEIR REASONABLE ATTORNEYS' FEES AND OTHER RELIEF. ........................ 18

CONCLUSION ......................................................................................................... 19

# TABLE OF AUTHORITIES

<u>**Page(s)**</u>

## Cases

*Auther v. Oshkosh Corp.*, 2010 WL 1404125 (W.D.N.Y. March 30, 2010) ................................ 13

*Dellefave v. Access Temporaries, Inc.*, 2001 WL 286771 (S.D.N.Y. Mar. 22, 2001) ................. 11

*Fuller v. Summit Treestands, LLC*, 2009 WL 1874058 (W.D.N.Y. May 11, 2009) ................... 13

*Milton Abeles, Inc. v. Creekstone Farms Premium Beef, LLC*, 2009 WL 2495802
    (E.D.N.Y. Aug. 12, 2009) ........................................................................................ 14

*O'Brien v. Alexander*, 101 F.3d 1479 (2d Cir. 1996) ................................................... 10

## Rules

Fed. R. Civ. P. 11 .............................................................................................. 11

Fed. R. Civ. P. 37(a) .......................................................................................... 13

## Other Authorities

Gregory P. Joseph, *Sanctions:  The Federal Law of Litigation Abuse* (3d ed. 2000) ................... 11

## DEFENDANTS' MEMORANDUM OF LAW

Defendants Mark Zuckerberg and Facebook, Inc. respectfully submit this memorandum

of law in support of their cross-motion to compel and for other relief, and in opposition to

Plaintiff Paul Ceglia's motion to compel.

Defendants have filed a redacted version of this motion in the public docket and have

simultaneously filed the full version with the Court.  Defendants have been forced to file the

redacted version in the public docket because of Ceglia's egregious abuse of the confidentiality

provisions in the joint stipulated protective order.  Ceglia has designated all 120 relevant

documents and files that were found on his computers, CDs and floppy disks as containing

"confidential" information that must be shielded from the public.  He does not want the public to

know what was discovered on his computers because it includes smoking-gun documents that

conclusively establish that he fabricated the purported contract and that this entire lawsuit is a

fraud and a lie.  Defendants are asking this Court to overrule Ceglia's improper confidentiality

designations — in particular, his designation of the smoking-gun documents as confidential —

and place on the public docket the full version of this motion filed with the Court.

## INTRODUCTION

Defendants have maintained from the beginning that this lawsuit is based on forged

documents, and sought expedited discovery to find evidence of the fraud that would end this

case.  Now they have.  Defendants have uncovered smoking-gun evidence that the purported

contract at the heart of this case is a fabrication.  Embedded in the electronic data on Ceglia's

computer is [THE REMAINDER OF THIS SENTENCE HAS BEEN REDACTED DUE TO

CEGLIA'S IMPROPER CONFIDENTIALITY DESIGNATIONS].

Defendants have also discovered that Ceglia is perpetrating a massive cover-up of his

crimes by concealing critical evidence he was ordered to produce.  A painstaking forensic

analysis of Ceglia's computers has revealed that Ceglia [REDACTED] that he failed to disclose or produce.  [TWO SENTENCES HAVE BEEN REDACTED DUE TO CEGLIA'S IMPROPER CONFIDENTIALITY DESIGNATIONS].  Ceglia's failure to produce [REDACTED] — or even to reveal their existence — amounts to willful, bad faith, contemptuous defiance of a court order.  Ceglia should be directed to produce [REDACTED] within 24 hours and to show cause as to why he should not be sanctioned.

These discoveries come in the wake of a monthlong campaign by Ceglia and his lawyers to obstruct the expedited discovery ordered by this Court.  Ceglia has refused to comply with the plain language of the Order and turn over the electronic documents he was commanded to produce; he has frustrated the efforts of Defendants and their experts to examine the hard copy documents he *has* produced; and he has submitted false declarations under oath and a frivolous motion to compel.  With the discovery of the [REDACTED], Ceglia's motivation has now become clear.  Ceglia knew that if he complied with the order, and provided the documents and certifications this Court ordered him to produce, his fraud would have been immediately exposed.  Thus, rather than produce the [REDACTED] as required by the Order, Ceglia took a wait-and-see approach by making available a collection of computers, floppy disks and thousands of CDs without identifying any of the files or documents stored on them — either not realizing that the [REDACTED] remained embedded in one of the computers, or simply hoping that Defendants would not find it.

Ceglia has also obstructed the investigation of the hard copy documents.  Although the parties had agreed that Defendants would be permitted to take additional ink samples from the purported contract and "spec sheet" if there were ink left available to sample, Ceglia's counsel reneged on this agreement and abruptly barred further ink collection.  Ceglia's obstructionist

tactics with regard to ink sampling are motivated by the same concern — Ceglia knows full well that if Defendants' experts are able to fully test and date the ink on the purported contract, they will further establish the fraud.

Ceglia's own lawyers have acknowledged that their client has himself made little to no effort to comply with the Order.  His attorney Jeffrey Lake has admitted that Ceglia played no role in identifying or gathering materials for discovery, that it was unlikely Ceglia would assist in future production efforts, and that Ceglia has now moved to Ireland.  *See* Declaration of Alexander H. Southwell ("Southwell Decl."), ¶ 24.

Defendants' experts are continuing to examine Ceglia's electronic and hard copy documents, and will soon provide this Court with even more evidence of Ceglia's fraud.  In the meantime, Defendants respectfully request that this Court compel Ceglia's compliance with the Order and grant immediate relief, including orders:

- Directing Ceglia to comply with the provision of the Order requiring him to produce several specific categories of electronic documents, including copies of the purported contract in the possession of Ceglia's lawyers or experts, and to produce the [REDACTED] whose very existence he has concealed.

- Directing Ceglia to comply with the provision of the Order requiring him to certify that he has produced all the electronic assets called for by the Order.

- Directing Ceglia's current attorneys to file certifications under Rule 11 that they are maintaining this lawsuit in good faith and based upon a reasonable investigation of the underlying facts.

- Directing Ceglia to permit additional ink sampling of the purported contract and "spec sheet."

- Granting *in camera* review of two documents as to which Ceglia has asserted attorney-client privilege to determine whether the privilege has been properly invoked.

- Overruling Ceglia's abusive and improper designation of <u>all 120</u> relevant electronic documents and data items found to date on his computers, CDs and floppy disks — including the [REDACTED] — as "confidential" documents that cannot be disclosed under the joint stipulated protective order.

This Court should also deny Ceglia's motion to compel, which is nothing more than his latest attempt to play fast and loose with the judicial process. The Court's local rules require that discovery motions such as Ceglia's be accompanied by a detailed affidavit setting forth the history of the parties' attempts to resolve the dispute though the meet-and-confer process. Ceglia failed to meet-and-confer before filing his motion; he failed to file the required affidavit; and the "statement of facts" in his motion is riddled with misleading assertions and outright falsehoods. Foremost among these is the claim that Zuckerberg has not "provided a sworn declaration certifying his good-faith efforts to locate the handwriting samples as directed by the Order." Plaintiff's Motion to Compel (Doc. No. 91), ¶ 6. Defendants sent this declaration to Ceglia's lawyers on July 15 — the date specified by the Order — yet even after this fact was called to their attention, they have refused to withdraw their pleading. Ceglia's claim that Defendants have improperly withheld the emails captured from the Harvard server is equally meritless. As Defendants informed Ceglia's counsel before he filed his motion, Defendants had gathered all of the Harvard emails and were poised to produce them — and they remain ready to produce them at a moment's notice. But under the Order's plain language, Ceglia's production of documents is an express precondition to Defendants' production of the Harvard emails. *See* Order at 2.

Because Ceglia has openly defied his own production obligations, Defendants are not yet required to produce the Harvard emails.

Ceglia's continued disobedience of this Court's orders and local rules should not be tolerated.  In addition to directing Ceglia to immediately comply with his discovery obligations, this Court should invoke its authority under Federal Rule of Civil Procedure 37 and its inherent power, and award Defendants their reasonable attorneys' fees and all other relief to which they may be entitled.

## BACKGROUND

On July 1, 2011, this Court granted Defendants' Motion for Expedited Discovery, and granted in part and denied in part Ceglia's Cross-Motion for Mutual Expedited Discovery.  (Doc. No. 83.)

The Order provided that:  "Plaintiff shall produce on or before July 15, 2011, the following electronic assets: (1) the native electronic version of the purported contract attached to the Amended Complaint and all electronic copies of the purported contract including the forms described in paragraph 8 of the Declaration of Paul D. Ceglia, dated June 12, 2011; (2) the original, native electronic files consisting of or containing the purported emails described in the Amended Complaint and all electronic copies of the purported emails; and (3) all computers and electronic media in Plaintiff's possession, custody, or control, including but not limited to the electronic assets listed in paragraph 6 of the Declaration of John H. Evans, dated June 17, 2011, and all assets certified to by Plaintiff pursuant to the Court's June 30, 2011 Order (collectively, the 'Electronic Assets')."  Order at 2.

Rather than produce the electronic documents called for in the Court's Order, Ceglia made available for copying a collection of computers, CDs and floppy disks but did not identify

any of the files or documents they contained.  Defendants immediately advised Ceglia that he had failed to comply with the Order.  Counsel for Defendants explained that Ceglia was obligated to produce:  the native electronic version of the purported contract; all electronic copies of the purported contract, including those in the possession of Ceglia's attorneys or experts; the forms described in Ceglia's June 12th declaration; the native electronic files consisting of or containing the purported emails; and all electronic copies of the purported emails.  *See* Ex. F to Southwell Decl.  In an attempt at accommodation, counsel for Defendants stated that "to the extent these items are on the electronic assets already produced, you may identify where they are.  And if any of these items do not presently exist, you must provide a clear statement of non-existence of the item and explanation of the reasons the item does not presently exist."  *Id*. at 2.  Ceglia did not respond to the letter.  He neither produced the documents nor identified where they might be found on the computers or electronic media he had already produced.  Southwell Decl., ¶ 25.

The Order further provided that "on or before July 15, 2011, in a sworn declaration Plaintiff shall identify all computers and electronic media in his possession, custody, or control, including without limitation the electronic assets listed in paragraph 6 of the Declaration of John H. Evans, dated June 17, 2011, and certify that all such computers and electronic media are being produced for inspection to Defendants and that such computers and electronic media contain all communications Plaintiff claims to have had with Defendants."  Order at 2.

On July 15, Ceglia submitted a sworn declaration purporting to identify a complete list of such computers and electronic media and certifying that they had all been produced for inspection.  *See* Declaration of Paul D. Ceglia (Doc. No. 88).  Three days later, however, Ceglia produced an image of a Seagate hard drive that he had sworn had already been produced.

Southwell Decl., ¶¶ 20-22.  The day after that he produced a computer that he had not mentioned in his declaration.  *Id.*, ¶ 23.

Based on the forensic examination conducted by Stroz Friedberg, the evidence demonstrates that Ceglia [REDACTED].  Southwell Decl., ¶ 42B.  [THIS SENTENCE HAS BEEN REDACTED DUE TO CEGLIA'S IMPROPER CONFIDENTIALITY DESIGNATIONS].  Not a single one of these [REDACTED] was disclosed or produced by Ceglia.  [THIS SENTENCE HAS BEEN REDACTED DUE TO CEGLIA'S IMPROPER CONFIDENTIALITY DESIGNATIONS].

On August 2, Stroz Friedberg produced to Defendants documents they found that were not designated as privileged by Ceglia.  Among these documents was the [THE REMAINDER OF THIS SENTENCE AND TWO THAT FOLLOW HAVE BEEN REDACTED DUE TO CEGLIA'S IMPROPER CONFIDENTIALITY DESIGNATIONS].  The [REDACTED] was recovered from the image of the Seagate hard drive that Ceglia had withheld until July 18 — three days after he swore under oath that it had already been produced.

As Defendants explained in their Memorandum of Law in Support of Their Motion for Expedited Discovery (Doc. No. 45), in early 2003, when Zuckerberg was a freshman at Harvard University, he agreed to provide limited web site development services for StreetFax — a web site that provided a database of photographs of traffic intersections for use by insurance adjustors.  *See* Memorandum of Law at 4; Declaration of Mark Elliot Zuckerberg (Doc. No. 46), ¶¶ 6-7.  He signed a contract memorializing this agreement.  *Id*.  The contract concerned StreetFax and StreetFax alone — it said nothing about Facebook.  The contemporaneous emails between Zuckerberg, Ceglia and other persons affiliated with StreetFax — indisputably authentic

emails captured from Zuckerberg's Harvard email account — confirm this.  None of the more than 175 emails mentions Facebook or any web site created by Zuckerberg.

The [REDACTED] has now been found on Ceglia's own computer, [THE REMAINDER OF THIS SENTENCE AND PARAGRAPH HAVE BEEN REDACTED DUE TO CEGLIA'S IMPROPER CONFIDENTIALITY DESIGNATIONS].

## FUTURE PROCEEDINGS

The Court has scheduled a hearing on the instant motions for August 17.  Defendants will then have until September 9 to report the findings from their forensic examination of Ceglia's documents and computers.  At that time, Defendants will present additional evidence conclusively establishing that Ceglia is perpetrating a massive fraud on this Court.[1]

## ARGUMENT

## I.    THIS COURT SHOULD GRANT DEFENDANTS' CROSS-MOTION.

Ceglia has demonstrated a contemptuous disregard for the orders of this Court.  He has deliberately and willfully disobeyed this Court's Order, in bad faith and for tactical purposes, and is currently concealing evidence from Defendants and this Court.  Pursuant to Local Rule 7(d)(1), Defendants have described their attempts to resolve the issues identified below in the supporting Declaration of Alexander H. Southwell.

---

[1]  Although Defendants presently anticipate adhering to the September 9th deadline established by the Court, they reserve the right to seek additional time or to supplement their filing, if warranted by Ceglia's continued refusal to comply with the discovery obligations and deadlines ordered by the Court.

A.      **Ceglia Should Be Ordered To Produce The Electronic Documents Required By The Order.**

This Court ordered Ceglia to produce several specific categories of electronic documents. *See* Order at 2.  But rather than produce these documents to Defendants, Ceglia simply turned over to Stroz Friedberg a large collection of computers, CDs and floppy disks containing numerous electronic files.  Given Defendants' discovery of the [REDACTED], it is now apparent why Ceglia took this approach:  either he mistakenly thought he had erased [REDACTED] from his computer, or he hoped that Defendants would not find it.

Ceglia should be directed to immediately produce the documents described in the Order. These include the native electronic version of the purported contract attached to the Amended Complaint; *all* electronic copies of the purported contract, including those in the possession of Ceglia's attorneys or his experts John Paul Osborn and Valery Aginsky, or those in any webmail account;[2] the electronic forms described in Ceglia's June 12th declaration; the original, native electronic files consisting of or containing the purported emails; and all electronic copies of the purported emails.

If Ceglia claims that these documents have already been produced because they are stored on the computers or electronic media he has made available for copying, Ceglia should be directed to identify the files containing these documents (or if they no longer exist, to state that fact and explain why).  *See* Electronic Asset Inspection Protocol, ¶ 1 (requiring Ceglia to "identify" the electronic assets in question).  Ceglia's bad faith approach to production has made it impossible for Defendants to determine whether Ceglia has fully complied with his discovery

_____

2   Given the overwhelming evidence of fraud, we respectfully request that the Court order Ceglia to consent to the acquisition and inspection of any of his webmail accounts by Stroz Friedberg pursuant to the Electronic Assets Inspection Protocol.

obligations.  For example, there is no way to tell which electronic file contains the purported

contract Ceglia is seeking to enforce in this case.  Moreover, some documents encompassed by

the Order do not exist on Ceglia's computers.  For example, copies of the purported contract in

the possession of his attorneys or experts should be obtained from the recipient and produced.

Similarly, Ceglia did not produce relevant emails from his web-based Hotmail account — emails

that are encompassed by the Order but may not exist on his computers.

Ceglia should also be ordered to produce within 24 hours the [REDACTED] identified by

Stroz Friedberg and any other undisclosed media.  His failure to disclose or produce the

[REDACTED] is egregious and inexcusable, and this Court should direct Ceglia to show cause

why he should not be sanctioned for his contumacious disregard of this Court's Order.

### B.    Ceglia Should Be Ordered To Certify His Compliance.

The purpose of including the certification requirement in the Order was to nail Ceglia

down and prevent him from subsequently "discovering" new computers containing newly-

manufactured emails.  Thus, the Court directed that before Defendants are obligated to produce

the emails captured from Zuckerberg's Harvard account — emails that Ceglia could use as a

basis for future forgeries — Ceglia must provide a certification attesting that he has produced *all*

potentially relevant computers and electronic assets in his possession or under his control.  Here,

just days after Ceglia swore under oath that he had identified and produced all relevant

computers, his lawyers discovered one he had overlooked.  They also discovered that he had not

produced an image of a hard drive that Ceglia had sworn he had produced — indeed the very

hard drive that contained the [REDACTED].  And, most critically, Stroz Friedberg has now

discovered that Ceglia [REDACTED] in connection with those computers — [REDACTED] that

were neither identified by Ceglia in his sworn declaration nor produced for inspection.

There can be no dispute that Ceglia's sworn declaration of July 15 is untruthful.  It fails to identify the computer his lawyer later disclosed, and it fails to identify the [REDACTED] that Stroz Friedberg found.  Ceglia's counsel has attempted to excuse his client's noncompliance by explaining that Ceglia was not involved in the production process and now lives in Ireland. Southwell Decl., ¶ 24.  But these are obviously not legitimate excuses, and the fact is that Ceglia has signed a sworn declaration that has now been exposed as utterly false.  He should be directed to correct it and immediately file a new declaration consistent with the terms of the Order.

### C.    Ceglia's Current Lawyers Should Be Required To Sign Rule 11 Certifications.

Ceglia's current attorneys — Jeffrey Lake and Paul Argentieri — did not sign the Amended Complaint.  It was signed by Christopher P. Hall of DLA Piper, who has since withdrawn.  It appears that the Second Circuit, for Rule 11 purposes, treats a new attorney's maintenance or pursuit of a lawsuit filed by a different attorney as though the new attorney had filed the lawsuit in his own name.  *See O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996) ("'[A] litigant's obligations with respect to the contents of . . . papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in these pleadings and motions after learning that they cease to have any merit.'" (quoting Fed. R. Civ. P. 11, Advisory Committee Notes)); *Dellefave v. Access Temporaries, Inc.*, 2001 WL 286771, at *5-6 (S.D.N.Y. Mar. 22, 2001) (imposing sanctions on counsel who had not signed challenged pleading where counsel later advocated its claims in motions and at oral argument); Gregory P. Joseph, *Sanctions:  The Federal Law of Litigation Abuse* (3d ed. 2000) ("[W]hile successor counsel assumes no responsibility for papers previously presented, new counsel does have an independent obligation to conduct a reasonable inquiry into

11

law and fact, and may be sanctioned for improper reliance on predecessor counsel's work.  This would extend to 'later advocating' a violative paper previously filed by predecessor counsel.").

Nonetheless, in light of the overwhelming evidence of fraud, including the discovery of the [REDACTED] on Ceglia's computer and the fact that Ceglia has been concealing critical evidence, Mr. Lake and Mr. Argentieri should be required to certify that they are pursuing this lawsuit in good faith and on the basis of a reasonable factual investigation into their client's claims.[3]

### D.      Ceglia Should Be Ordered To Permit Additional Ink Sampling.

The Hard Copy Inspection Protocol, approved and entered by this Court (Doc. No. 84), does not restrict Defendants' ability to take ink samples from the hard copy documents, including the purported contract and spec sheet.  It simply requires that Defendants provide notice of their testing and that any physical sampling must be done in the presence of both parties' representatives.  *See id*. at 3-4.

On July 19, at the conclusion of that day's examination of the hard copy documents, counsel for both parties discussed the possibility of taking additional ink samples from the documents.  Southwell Decl., ¶ 34.  Defendants' experts had advised that additional ink sampling would be helpful in determining whether the documents were recent forgeries.  *See id*.  Ceglia's

---

[3]   The revolving door of plaintiff's counsel continues to spin.  Shortly after the June 30 discovery hearing, the Edelson McGuire firm began representing Ceglia in connection with the document inspections.  Then, on the morning of July 26, the day after the hard copy documents were examined at Edelson McGuire's Chicago offices, the firm abruptly withdrew, advising Defendants' counsel in a short phone call that it would no longer be representing Ceglia and could not comment further.  Edelson McGuire is now the fourth firm to have withdrawn from representing Ceglia in this case.

counsel Jeffrey Lake agreed that if there were sufficient ink available after Ceglia's experts had

taken their samples, then he would permit Defendants' experts to extract additional samples.

On July 25, Defendants sought to extract additional ink samples.  Ceglia's experts had

concluded their initial sampling, and Defendants' expert Dr. Albert Lyter III had advised that

there was enough ink remaining on the documents for both parties' experts to extract additional

samples.  *See* Lyter Decl., ¶ 10.  However, despite Mr. Lake's prior agreement to permit

additional sampling, Ceglia's attorney Paul Argentieri refused to allow Dr. Lyter to take

additional samples and demanded that Defendants seek court intervention if they wished to

pursue the issue further.

Additional sampling of the ink on the purported contract and spec sheet would be helpful

in determining whether Ceglia recently doctored these documents for purposes of this lawsuit.

The Court's Order placed no restrictions on sampling, other than that it be done in the presence

of representatives from each side.  This Court should direct Ceglia to adhere to his original

agreement and permit Defendants' experts to take additional samples.

### E.    This Court Should Review In Camera The Two Documents As To Which Ceglia Has Asserted Attorney-Client Privilege.

Ceglia has asserted that two documents found on his computer are protected from

disclosure by the attorney-client privilege.  *See* Ex. J to Southwell Decl.  [TWO SENTENCES

HAS BEEN REDACTED DUE TO CEGLIA'S IMPROPER CONFIDENTIALITY

DESIGNATIONS.]  Southwell Decl., ¶ 41.  Moreover, in light of the massive evidence of fraud

Defendants have already uncovered, there is simply no ground for concluding, based on the bare

assertion of Ceglia's lawyers, that these [REDACTED] are in fact protected attorney-client

communications.  Nor is there any basis for concluding that the crime-fraud exception does not

vitiate any privilege that might otherwise attach.

Under these circumstances, and given the fact that Defendants are only challenging the privilege designation of two documents, this Court should conduct an *in camera* review of the documents to determine whether, and the extent to which, Ceglia's invocation of the privilege is warranted.

### F.     This Court Should Overrule Ceglia's Blanket "Confidentiality" Designation.

Ceglia has designated <u>every single one</u> of the 120 relevant documents and files found thus far on his computer, CDs or floppy disks as "Confidential" documents that may not be publicly disclosed under the joint stipulated protective order.  Ex. J to Southwell Decl. Defendants objected to Ceglia's blanket confidentiality designation and asked that Ceglia withdraw it.  Southwell Decl, ¶ 43.  Ceglia responded by asserting that "all confidential designations are appropriate" and refused to de-designate a single one.  *Id*., ¶ 49.  Nor did he attempt to explain or justify any of his designations.

The protective order provides that "[t]he designating party may designate documents, materials, or information as 'CONFIDENTIAL — SUBJECT TO PROTECTIVE ORDER' if the party believes in good faith that the documents, materials, or information contain confidential information that is not publicly available (such as proprietary or confidential business, technical, sales, marketing, financial, commercial, private, or sensitive information, or information that is otherwise reasonably designable as confidential)."  Protective Order (Doc. No. 86), ¶ 3.  The order further provides that "[i]f any receiving party objects to the designation of any documents, materials, or information as Confidential Information, the parties shall confer to attempt to resolve the dispute.  If such attempt is unsuccessful, and the dispute remains unresolved, the parties shall submit the dispute to the Court."  *Id*., ¶ 5.

A blanket designation of this nature is clearly improper and abusive.  Ceglia has made no attempt to justify his designation, and it is not remotely plausible that each and every one of the

documents contains sensitive or proprietary information that must be kept from the public.  This Court should overrule Ceglia's blanket confidentiality designation or require Ceglia to justify the designation as to each document.  If Ceglia cannot establish that his designations are warranted and were made in good faith, then they should be overruled.  At a minimum, the Court should overrule his designation of the [REDACTED] as confidential.  Having attached the *fake* contract to his complaint and publicized it to the world, it is the height of cynicism for Ceglia to now demand that the [REDACTED] be shielded from view.

## II.   CEGLIA'S MOTION SHOULD BE SUMMARILY DENIED.

This Court's Order required Zuckerberg to conduct a good faith search for up to 30 samples of his handwriting, and provided "that on July 15, 2011, Defendant Zuckerberg shall provide a sworn declaration certifying his good-faith efforts to locate as many handwriting samples as possible . . . ."  Order at 3.  Ceglia has moved to compel production of this Declaration.  The Order also provided that "five (5) days subsequent to Plaintiff's production of the Electronic Assets and his sworn declaration, Defendants shall produce" the emails captured from the Harvard server.  Order at 2.  Ceglia has moved to compel production of these emails.

Ceglia's motion should be summarily denied because it blatantly violates the local rules' requirement that motions to compel include an affidavit detailing the parties' sincere attempts to resolve the discovery dispute without court intervention.  Even if this Court were to consider the substance of Ceglia's arguments, they are meritless:  Defendants timely produced the Zuckerberg declaration, and their obligation to produce the Harvard emails has not been triggered because Ceglia has failed to comply with the precondition that he produce his electronic documents and a sworn declaration.

15

### A.     Ceglia's Motion Violates The Local Rules Because He Failed To Meet And Confer, And Failed To File The Required Affidavit.

This Court should summarily deny Ceglia's motion because he failed to meet-and-confer and to provide the affidavit required by Local Rule 7(d)(1).  That rule provides:

> **Discovery Motion**.  No motion for discovery and/or production of documents under Federal Rule of Civil Procedure 37 shall be heard unless accompanied by an affidavit showing that sincere attempts to resolve the discovery dispute have been made.  Such affidavit shall detail the times and places of the parties' meetings or discussions concerning the discovery dispute and the names of all parties participating therein, and all related correspondence must be attached.

*See also* Fed. R. Civ. P. 37(a) (motions under Rule 37 "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action").  Ceglia moved to compel "pursuant to Fed. R. Civ. P. Rule 37," *see* Motion at 1, yet failed to meet-and-confer or to attach the required affidavit to his motion.

Under a straightforward application of Local Rule 7(d)(1) and Federal Rule 37, Ceglia's motion must be denied.  *See, e.g.*, *Auther v. Oshkosh Corp.*, 2010 WL 1404125, at *2 (W.D.N.Y. March 30, 2010) (failure to meet-and-confer prior to bringing discovery motion "necessitates denial of the motion"); *Fuller v. Summit Treestands, LLC*, 2009 WL 1874058, at *6 (W.D.N.Y. May 11, 2009) (denying motion to compel for failing to satisfy meet-and-confer requirement); *Milton Abeles, Inc. v. Creekstone Farms Premium Beef, LLC*, 2009 WL 2495802, at *3-4 (E.D.N.Y. Aug. 12, 2009) (imposing sanctions on plaintiff for failing to certify compliance with meet-and-confer obligation in local rules).

**B.     Ceglia's Claims Are Frivolous And Could Not Have Been
Brought In Good Faith.**

Ceglia had no good faith basis for filing this motion.  Defendants emailed the Zuckerberg

declaration to Ceglia's counsel Jeffrey Lake on July 15 — the date specified by the Court.

Southwell Decl., ¶ 10.  When Ceglia inexplicably moved to compel production of the declaration

five days later, Defendants reminded Mr. Lake that he had already received the document.  *Id*., ¶

12.  Mr. Lake stated that he would check his emails and, if it turned out that he did receive the

declaration, he would consider taking remedial action, such as apologizing to the Court or

withdrawing this portion of his motion.  *See id*.  At Mr. Lake's request, Defendants' counsel

even forwarded a copy of the July 15 transmission to Mr. Lake.  *Id*.  When Mr. Lake took no

action, Defendants' counsel asked Mr. Lake what he intended to do to correct his

misrepresentations, but Mr. Lake failed to provide a responsive answer.  *Id*., ¶ 13.  As of August

4, Mr. Lake has failed to notify the Court of his false representations or correct his filing.

To the extent Ceglia may be suggesting that Defendants did not comply with the Order

because they sent Zuckerberg's declaration to Ceglia's lawyers rather than filing it with the

Court, that argument is meritless.   The Order does not require that the declaration be filed with

the Court, only that it be "provide[d]" to opposing counsel.  *See* Order at 3 ("Defendant

Zuckerberg *shall provide* a sworn declaration certifying his good-faith efforts to locate as many

handwriting samples as possible . . . .") (emphasis added).  Indeed, it is the usual practice in this

District that discovery declarations are *not* filed with the Court.  Moreover, Defendants' counsel

specifically told Ceglia's counsel that, consistent with local practice, they did not intend to file

the Zuckerberg declaration with the Court — and Ceglia's counsel did not object.  *See* Southwell

Decl., ¶¶ 8-9; Flynn Decl., ¶ 3.  Nor, for that matter, did Ceglia's contact Defendants' counsel to

say that the declaration should have been filed with the Court.  Southwell Decl., ¶ 11.

17

Ceglia also argues that Defendants have failed to produce the Harvard emails.

Defendants gathered the emails in question and were prepared to produce them.  But in response

to Defendants' concerns that Ceglia could use those emails as a roadmap to deepen the fraud that

pervades this case, the Order sequenced discovery by expressly conditioning Defendants'

obligation to produce the emails on Ceglia's compliance with *his* production obligations.  *See*

Order at 2 (providing that "five (5) days subsequent to Plaintiff's production of the Electronic

Assets and his sworn declaration, Defendants shall produce all emails . . . .").  As shown above,

Ceglia has defied his production obligations in many key respects, missed numerous deadlines,

and stonewalled and obstructed discovery.  Accordingly, Defendants are under no obligation to

produce the Harvard emails unless and until Ceglia complies with the Order.  Defendants have

collected all of the Harvard emails, placed them on a CD, and are ready and willing to produce

the CD to Ceglia once he has complied.  *See* Ex. F to Southwell Decl.


**III.    THE COURT SHOULD AWARD DEFENDANTS THEIR REASONABLE ATTORNEYS' FEES AND OTHER RELIEF.**

In light of Ceglia's outright defiance of this Court's order, his obstruction of discovery,

and his filing of a frivolous motion to compel, this Court should award Defendants their

reasonable attorneys' fees and costs under Rule 37 and the Court's inherent power, and should

consider additional sanctions up to and including dismissal.

As shown above, Ceglia has not complied with the Order, and his attorneys have

repeatedly stonewalled Defendants' attempt to conduct the discovery permitted by this Court.

He filed a groundless motion to compel production of a document that Defendants had already

produced — an abusive and unnecessary filing that could have been avoided had Ceglia

complied with the local rules' meet-and-confer obligation — and then refused to withdraw the

request even after Defendants alerted him to the error.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendants' cross-motion to compel,

deny Ceglia's motion to compel, and award Defendants all other relief, including attorneys' fees,

to which they may be entitled.


Dated:      New York, New York
             August 4, 2011

                                          Respectfully submitted,

                                          /s/ Orin Snyder
Thomas H. Dupree, Jr.                    Orin Snyder
GIBSON, DUNN & CRUTCHER LLP    Alexander H. Southwell
1050 Connecticut Avenue, NW       GIBSON, DUNN & CRUTCHER LLP
Washington, DC 20036              200 Park Avenue, 47th Floor
(202) 955-8500                    New York, NY 10166-0193
                                          (212) 351-4000

Terrance P. Flynn
HARRIS BEACH PLLC
726 Exchange Street
Suite 1000
Buffalo, NY 14210
(716) 200-5120

*Attorneys for Defendants Mark Zuckerberg and Facebook, Inc.*