UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
PAUL D. CEGLIA, :
:
              Plaintiff, :
:
  v. : Civil Action No. 1:10-cv-00569-
: RJA
MARK ELLIOT ZUCKERBERG and :
FACEBOOK, INC., :
:
              Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REDACTED MEMORANDUM OF LAW IN REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION TO COMPEL**

      Plaintiff Paul D. Ceglia respectfully submits this Memorandum of Law in Reply to Defendants' Opposition to Plaintiff's Motion to Compel and in Opposition to Defendants' Cross-motion to Compel.

## **I.**

## **INTRODUCTION**[1]

      Throughout their Cross-motion to Compel, Defendants repeatedly make serious and misplaced accusations concerning Ceglia's conduct and that of his attorneys, impugning their integrity and professionalism without any basis in fact. Furthermore, at a minimum Defendants have misinterpreted the Court's July 1, 2011 Order and more likely, Defendants have shown a complete disregard for this Court and its Orders. This is exacerbated by Defendants disregard throughout their Opposition of the axiomatic rule that argument must be supported by citation to

---

[1] Ceglia concedes that Defendant Zuckerberg timely provided a sworn declaration concerning the handwriting samples and hereby withdraws that portion of his Motion to Compel. (*See* Declaration of Jeffrey A. Lake, dated August 10, 2011, at ¶¶ 2-5.)

legal authority. As is discussed in detail below, Defendants violated the Joint Stipulated Protective Order, violated the July 1, 2011 Order and should be held accountable for their conduct.

## II.

## DEFENDANTS VIOLATED THE PROTECTIVE ORDER

### A. Facts

The Joint Stipulated Protective Order (Doc. No. 86) (Protective Order) states, "[T]he following Protective Order is necessary to protect the documents and information which may be produced and disclosed pursuant to the Court's Order concerning Expedited Discovery in the above-captioned action." (Protective Order at 1.) To further that purpose, the Protective Order provides, "All documents, materials, and information designated as Confidential Information *shall be treated as such pursuant to the terms of this Order until further order of the Court*." (Protective Order at 2, ¶ 5 (emphasis added).) "Any documents, materials, or information designated as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" may only be used to prosecute or defend this action and shall not be disclosed (or the content discussed with) anyone other than the [] authorized persons, except as provided by this Order or as authorized by further Order of this Court." (Protective Order at 2, ¶ 6.)

[REDACTED]

Furthermore, despite their attempts to obfuscate their improper conduct through clever semantics, it is clear that Defendants repeatedly violated the Protective Order in their Redacted Memorandum of Law in Support of Their Cross-motion to Compel (Doc No. 99) (Opposition). Defendants referred to certain confidential information as [REDACTED.] Defendants then stated, [REDACTED.] Finally, they state, [REDACTED.] These references [REDACTED.]

The above-quoted language [REDACTED.]  For instance, [REDACTED.]  This clearly demonstrates that Defendants [REDACTED.]  Defendants go on to say, [REDACTED.][2]

Most egregiously, Defendants go on to describe [REDACTED.]  The next line states, [REDACTED.]

Thus, Defendants have made [REDACTED.]  This was in direct violation of the Protective Order's command, "Any documents, materials, or information designated as [confidential] . . . *shall not be disclosed* . . . ."  (Order at 2.)

**B. Law**

"[A]ttorneys' fees may be awarded to a successful party when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *F.D. Rich Co., Inc. v. U.S. for the Use of Indus. Lumber Co., Inc.*, 417 U.S. 116, 129 (1974) (footnote omitted).  Additionally, L.R. Civ. P. 11(b) provides, "[A] Judge may, in accordance with 28 U.S.C. § 1927, assess reasonable costs directly against counsel whose action has obstructed the effective administration of the Court's business."  Normally, "[t]o impose sanctions under either authority, a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith."  *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (citing *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999); *Agee v. Paramount Commc'ns, Inc.*, 114 F.3d 395, 398 (2d Cir. 1997)).  However, no such findings are necessary when counsel violates a court order.  *See United States v. Seltzer*, 227 F.3d 36, 41 (2d Cir. 2000).

---

[2] [REDACTED.]

Here, [REDACTED.]  Such disclosure clearly goes to the exact nature of the documents in question and constitutes deliberate, intentional disclosure of the content of confidential documents to unauthorized persons, also in violation of the Protective Order.

Based on the foregoing, Defendants clearly violated the Protective Order. Therefore, the Court should exercise its inherent power to issue appropriate sanctions against Defendants and their counsel, including an award of attorneys' fees and costs.

### III.

### THE COURT SHOULD PROHIBIT DEFENDANTS FROM DISCUSSING OR DISCLOSING THE NATURE, CONTENTS, OR EXISTENCE OF THE DOCUMENTS CEGLIA PRODUCED

"Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984).  Thus, a protective order serves to prevent a party from conducting discovery "for purposes unrelated to the lawsuit at hand." *Jennings v. Peters*, 162 F.R.D. 120, 122 (N.D. Ill. 1995).  To this end, a protective order may be issued "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  F.R.C.P. 26(c).  The Protective Order states, "The designating party may designate documents, materials, or information as 'CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER' if the party believes in good faith that the documents, materials, or information contain confidential information that is not publicly available (such as proprietary or confidential business, technical, sales, marketing, financial, commercial, private, or sensitive information, or information that is otherwise reasonably designable as confidential)."  (Protective Order at 2, ¶ 3.)

The Court provided a very broad definition of "confidential," including a catch-all provision that allows a party to designate information "that is otherwise reasonably designable as confidential." (*Id.*) In light of the purposes of Rule 26(c) and supporting case law, the term "confidential" should be construed to apply to any document that might be used to embarrass or harm a person by revealing private information concerning that person's professional dealings. *See Jennings*, 162 F.R.D. at 122-23. Additionally, it would be clearly improper and highly prejudicial to Ceglia to use the discovery process to taint or prejudice the jury pool—to try the case in the court of public opinion.

[REDACTED]

Given the considerations stated above, the Court should order the Defendants to refrain from discussing or disclosing the nature or existence of any of the documents Ceglia has produced pursuant to the Order.

## III.

## THE COURT SHOULD ORDER DEFENDANTS TO TURN OVER THE ZUCKERBERG EMAILS IMMEDIATELY

**A. The Meet and Confer Process**

Contrary to Defendants' assertions in their Opposition, Ceglia attached meet-and-confer affidavits to his Motion to Compel as required by L.R. Civ. P. 7(d)(1) and F.R.C.P. 37(a). (*See* Declaration of Jeffrey A. Lake Pursuant to Local Rule 7(d)(4), dated July 25, 2011 (Doc. No. 91-5); Declaration of Nathan Shaman Pursuant to Local Rule 7(d)(4), dated July 25, 2011 (Doc. No. 91-6).) Furthermore, since the time Ceglia filed his Motion to Compel, his counsel has engaged in additional correspondence in an attempt to resolve this dispute. (*See* Shaman Decl. at ¶¶ 2-7.)

**B. Defendants' Misinterpretation of the Order**

The Order states, "Plaintiff shall produce on or before July 15, 2011, the following electronic assets . . . ." (Order at 2.) The Electronic Asset Inspection Protocol states, "Plaintiff shall identify and provide *to Stroz Friedberg* access to the original electronic assets on or before July 15, 2011." (Electronic Asset Inspection Protocol (Doc. No. 85) at 1, ¶ 1 (emphasis added).) Finally, the Order states, "[F]ive (5) days subsequent to Plaintiff's production of the Electronic Assets and his sworn declaration, Defendant *shall* produce all emails in their original, native and hard-copy form between Defendant Zuckerberg and Plaintiff and/or other persons associated with StreetFax that were captured from Zuckerberg's Harvard email account." (Order at 3.)

Given the above language, it is clear that the only precondition to Defendants' production of the Zuckerberg emails was that Ceglia would provide his sworn declaration to Defendants and *produce the electronic assets to Stroz Friedberg*. It is untenable to argue, as Defendants have, that the Order required Ceglia to produce, through Stroz Friedberg, the Presumed Relevant Materials and privilege log, and in a form Defendants consider suitable, before Defendants must produce the Zuckerberg emails to Ceglia. Such an interpretation simply does not comport with a plain reading of the Order and the Electronic Asset Inspection Protocol.

**C. Attorneys' Fees**

"[T]he court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure [to comply with a court order], unless the failure was substantially justified or other circumstances make an award of expenses unjust." F.R.C.P. 37(b)(2)(C).

Ceglia would not have needed to bring this Motion to Compel, and even would have withdrawn it (*see* Exhibit C to Shaman Decl.) if Defendants had simply complied with the Order and produced the Zuckerberg emails. There can be no justification for Defendants' willful violation. Therefore, Ceglia respectfully requests that the Court award him reasonable attorneys' fees and expenses.

## V.

## THE COURT SHOULD RULE THAT CEGLIA HAS COMPLIED FULLY WITH THE COURT'S JULY 1, 2011 ORDER

### A. Ceglia's Certification

The Order provides, "[O]n or before July 15, 2011, in a sworn declaration Plaintiff shall *identify all computers and electronic media* in his possession, custody, or control, including without limitation the electronic assets listed in paragraph 6 of the Declaration of John H. Evans, dated June 17, 2011, and certify that all such computers and electronic media are being produced for inspection to Defendants and that such computers and electronic media contain all communications Plaintiff claims to have had with Defendants." (Order at 2 (emphasis added).)

L.R. Civ. P. 26(d)(3)(D) states, "When referring to documents, 'to identify' means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s), and recipients(s)." In their Opposition, Defendants seem to be complaining Ceglia should have made this kind of identification on July 15, 2011. However, in the Order the term "identify" refers to "all computers and electronic media," *not to individual documents*. Thus, properly understood, the Order required Ceglia to identify the assets themselves, not each individual file on those assets. Furthermore, Ceglia has identified

7

everything that was produced via a detailed privilege log provided to Defendants. (*See* Shaman Decl. at 2, ¶ 8.) Nonetheless, Defendants continue to refuse to produce to Ceglia the Zuckerberg emails as required by the Court.

Defendants' interpretation is belied by the fact that the Court could have stated such a requirement, but did not; furthermore, this interpretation is not reasonable because it would have required Ceglia to identify the Presumed Relevant Materials before providing them to Stroz Friedberg. Although Ceglia repeatedly offered to do this work, Defendants objected and as such, the Court ordered Stroz Friedberg to identify the Presumed Relevant Materials after they took forensic images of all of the electronic assets Ceglia provided to them. (*See* Electronic Asset Inspection Protocol at 2-3, ¶¶ 2-3.)

## B. Production of the Electronic Assets

Given a proper understanding of the Order, it is clear that Ceglia fulfilled his obligation to produce the Electronic Assets. Although Defendants complain that "Ceglia simply turned over to Stroz Friedberg a large collection of computers, CDs and floppy disks containing numerous electronic files (Opposition at 9)," this was what the Court contemplated when it issued the Order, which required Ceglia to produce the Electronic Assets to Stroz Friedberg. (Order at 2.) The reality is that Ceglia *already has turned over* all electronic assets in his possession, custody, or control. (*See* Declaration of Jeffrey A. Lake, dated August 10, 2011 (Lake Declaration) at 2-4, ¶¶ 6-19.)

Admittedly, the image of the Seagate hard drive was not produced until July 18, 2011. However, this was the result of inadvertence, was remedied pursuant to Defendants' counsel's request, and did not result in prejudice to Defendants. (*Id.* at 3-4, ¶¶ 9-14.) Additionally, the computer produced to Stroz Friedberg on July 19, 2011 was turned over out of an abundance of

caution and as a showing of good faith. (*Id.* at 3-4, ¶¶ 15-16.) This computer had been in Ceglia's parents' possession and Ceglia did not believe it contained any relevant data. (*Id.* at 4, ¶ 16.) [REDACTED.]

In their Opposition, Defendants claim that Ceglia and his attorneys concealed certain documents. (*See* Opposition at 9-10.) However, no good-faith basis has been shown for such an accusation. The Order did not require Ceglia to state specifically which documents or assets he searched for, to state which documents or assets do not exist, or to explain the non-existence of any such documents.

## VI.

## THE COURT SHOULD DENY DEFENDANTS' REQUEST FOR ADDITIONAL TESTING

Although the Hard-Copy Document Inspection Protocol (Doc. No. 85) does not specifically restrict Defendants' access to samples from the hard-copy documents, the court must limit destructive testing so as not to destroy the evidentiary value of the documents. *See Ostrander v. Cone Mills, Inc.*, 119 F.R.D. 417, 419 (D. Minn. 1988). Limitations are particularly appropriate when the court has already allowed some destructive testing. *See Dabney v. Montgomery Ward & Co. Inc.*, 761 F.2d 494, 498-99 (8th Cir. 1985).

As Defendants' counsel stated, "We further agreed . . . that if after both sides took the set number of ink samples there was sufficient additional ink available, we would discuss taking additional samples." (Declaration of Alexander H. Southwell, dated August 4, 2011 (Doc. No. 97) at 10, ¶ 32.) In this case, a crucial piece of evidence is the original, paper version of the Work-for-Hire Contract (WFHC), which has already undergone significant destructive testing. (*See* Exhibit B to Declaration of Larry F. Stewart, dated August 9, 2011.) Another important

piece of evidence is [REDACTED], which has also undergone significant destructive testing. (*See* Exhibit C to Stewart Decl.)  Both pieces of evidence are crucial to Ceglia's ability to prove to a jury that the WFHC is the original, authentic contract—to allow the jury to make its own determination based on what it can see.  However, additional testing will result in the destruction of the evidentiary value of both documents.  (*See* Stewart Decl. at 1-2, ¶¶ 5, 7.)  Thus, Ceglia will face significant difficulty presenting his case to a jury if additional testing is allowed.

Finally, although Defendants' expert opined that more samples are available (*see* Declaration of Dr. Albert Lyter III, dated August 4, 2011 (Doc. No. 98)), Defendants have made no showing based on competent evidence as to why the testing their experts already performed is insufficient nor have they made any showing of good cause as to why they need more ink.  As such, the Court should deny Defendants' request to conduct further sampling.

## VII.

## THE COURT SHOULD STAY THIS ACTION UNTIL THE PARTIES HAVE COMPLETED MEDIATION

In light of the foregoing, Ceglia respectfully requests that the Court stay this action until the parties submit to mediation as previously ordered.  Furthermore, in the event that the Court finds [REDACTED], Ceglia requests that the Court forbid disclosure or discussion of those items until such time as the Court lifts the stay.  Such an order is necessary because if the content of those items is made public, the parties undoubtedly will dig in their heels and be forced to litigate this matter to final judgment.  As a result, any opportunity for an efficient and equitable resolution of this case will be lost.

At this point, Defendants have received the expedited discovery that they requested. Ceglia and his attorneys are serious about resolving this case in order to avoid protracted

discovery and pretrial proceedings. As such, Ceglia requests that the Court order mediation immediately and require the parties to begin good-faith settlement negotiations before any further action is taken in this case.

## VIII.

## CONCLUSION

Based on the foregoing arguments, Plaintiff Paul D. Ceglia respectfully requests that this Court (1) hold Defendants accountable for their numerous violations of the Protective Order; (2) prohibit Defendants from discussing or disclosing the nature, contents, or existence of the documents Ceglia produced; (3) order Defendants to produce the Zuckerberg emails immediately; (4) rule that Ceglia has complied fully with the Court's July 1, 2011 Order; (5) deny Defendants' request to conduct additional testing; and (6) stay this action and order the parties to participate in mediation immediately.

**Dated: August 10, 2011**

                                                Respectfully submitted,

| s/ Jeffrey A. Lake | s/ Paul Argentieri |
|---|---|
| Attorney for Plaintiff | Attorney for Plaintiff |
| 835 Fifth Avenue, Suite 200A | 188 Main Street |
| San Diego, CA 92101 | Hornell, NY 14843 |
| (619) 795-6460 | (323) 919-4513 |
| jlake@lakeapc.com | paul.argentieri@gmail.com |