UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

------------------------------------- x
: 
PAUL D. CEGLIA, :
:
        Plaintiff, : Civil Action No. 1:10-cv-00569-RJA
:
  v. : **DECLARATION OF**
: **DR. ALBERT LYTER III**
MARK ELLIOT ZUCKERBERG and :
FACEBOOK, INC., :
:
        Defendants. :
------------------------------------- x

    I, Albert H. Lyter, Ph.D, am competent to testify to the matters set forth herein and make this declaration of my own personal knowledge and belief.

    1.    I respectfully submit this declaration in support of Defendants' Reply in Support of Defendants' Cross-Motion to Compel Compliance with the July 1 Order, dated August 15, 2011.

    2.    I respectfully refer to Exhibit A of the Declaration I submitted in support of Defendants' Motion for Expedited Discovery, dated June 1, 2011, with respect to my qualifications and résumé.

    3.    Prior to Defendants' sampling of the Hard-Copy Documents authorized by the Order and the Court's Hard-Copy Inspection Protocol, dated July 1, 2011 (the "Hard-Copy Protocol") (Doc. No. 84), both Defendants' experts and Plaintiff's experts had ample opportunity to create high-resolution scanned images of two hard-copy documents produced by Plaintiff— the "Work for Hire" Agreement (the "Purported Contract") and a six-page document ("Hard-Copy Document 2") produced by Plaintiffs.  I understand that both Defendants' experts and Plaintiff's experts created high-resolution scanned images of those documents, exactly as they were produced by Plaintiff and before any ink was extracted from the documents.  A true and correct copy of a high-resolution scanned image of the Purported Contract taken by Defendants' expert Gerald M. LaPorte on Saturday, July 16, 2011 is attached hereto as Exhibit A.  A true and

correct copy of a high-resolution scanned image of Hard-Copy Document 2 taken by Mr. LaPorte on Saturday, July 16, 2011 is attached hereto as Exhibit B.

4. I participated in Defendants' examination and sampling of the Purported Contract and Hard-Copy Document 2 on Tuesday, July 19, 2011.

5. On Monday, July 25, 2011, I accompanied Defendants' counsel to the offices of Edelson McGuire LLC, in Chicago, Illinois, where I observed Plaintiff's experts, Larry Stewart and Erich Speckin, conduct their examination and sampling of the Purported Contract and Hard-Copy Document 2.

6. In my declaration dated August 4, 2011, I described the specific number of samples that remained available to be extracted and analyzed from the various ink portions of the Purported Contract and Hard-Copy Document 2 at the conclusion of Plaintiff's sampling. *See* Declaration of Dr. Albert Lyter III (Doc. No. 98), ¶¶ 10-11. Specifically, based on my observation and professional judgment:

    A. There are currently at least 30 additional samples available from the interlineation on page 1 of the Purported Contract.

    B. There are currently at least 4 additional samples available from the purported "MZ" initials on page 1 of the Purported Contract.

    C. There are currently at least 8 additional samples available from the purported "PC" initials on page 1 of the Purported Contract.

    D. There are currently at least 30 additional samples available from the purported Ceglia signature on page 2 of the Purported Contract.

    E. There are currently at least 25 additional samples available from the purported Zuckerberg signature on page 2 of the Purported Contract.

    F. There are currently at least 40 samples available from the interlineation on page 4 of Hard-Copy Document 2.

    G. There are currently at least 4 samples available from the purported "MZ" initials on page 4 of Hard-Copy Document 2.

        H.     There are currently at least 8 samples available from the purported "PC" initials on page 4 of Hard-Copy Document 2.

        I.     There are currently at least 30 samples available from the purported Ceglia signature on page 6 of Hard-Copy Document 2.

        J.     There are currently at least 30 samples available from the purported Zuckerberg signature on page 6 of Hard-Copy Document 2.

7.     As I explained in my declaration dated August 4, 2011, I understand that counsel for all parties agreed that Defendants' experts could initially take a limited number of samples from the Purported Contract and Hard-Copy Document 2 but would be permitted to take additional samples at the conclusion of Plaintiff's sampling.

8.     Defendants' experts now require additional samples from the ink of the Purported Contract and Hard-Copy Document 2 to conduct further analysis. Specifically, Defendants' experts require:

        A.     At least 8 more samples from the interlineation on page 1 of the Purported Contract.

        B.     At least 2 more samples from the purported "MZ" initials on page 1 of the Purported Contract.

        C.     At least 4 more samples from the purported "PC" initials on page 1 of the Purported Contract.

        D.     At least 8 more samples from the purported Ceglia signature on page 2 of the Purported Contract.

        E.     At least 8 more samples from the purported Zuckerberg signature on page 2 of the Purported Contract.

        F.     At least 8 more samples from the interlineation on page 4 of Hard-Copy Document 2.

        G.     At least 2 more samples from the purported "MZ" initials on page 4 of Hard-Copy Document 2.

       H.      At least 4 more samples from the purported "PC" initials on page 4 of Hard-Copy Document 2.

       I.      At least 8 more samples from the purported Ceglia signature on page 6 of Hard-Copy Document 2.

       J.      At least 8 more samples from the purported Zuckerberg signature on page 6 of Hard-Copy Document 2.

9.      These additional samples are required, in part, to conduct extremely sensitive and precise chemical testing that may be able to determine whether the ink in the Purported Contract and Hard-Copy Document 2 likely dates from 2003.

10.      As described above, there are far more samples available to be extracted from the relevant sections of the Purported Contract and Hard-Copy Document 2 than Defendants' experts require.

11.      I have reviewed the declaration of Plaintiff's expert Larry Stewart, dated August 9, 2011, in which Mr. Stewart attests that additional sampling of the Purported Contract and Hard-Copy Document 2 "will compromise the physical integrity of the contract." Declaration of Larry F. Stewart (Doc. No. 106-14), ¶¶ 5, 7.

12.      Mr. Stewart's concern is unfounded, particularly given the availability of high-resolution scanned images of the Purported Contract and Hard-Copy Document 2 made prior to the parties' sampling of the documents. As Mr. Stewart is well aware, forensic document examiners often extract a greater percentage of the ink available in a document than Defendants' experts propose to extract here.

13.      I have reviewed Exhibit B to Mr. Stewart's Declaration, which Mr. Stewart attests are "true and correct copies" of the Purported Contract "post-sampling." Declaration of Larry F. Stewart (Doc. No. 106-14), ¶ 4.

14.      Exhibit B to Mr. Stewart's Declaration does not accurately reflect the amount of ink available to be sampled from the Purported Contract at the conclusion of Plaintiff's sampling.

15. True and correct copies of Mr. LaPorte's high-resolution scanned images of the Purported Contract, with the locations where samples have been extracted superimposed in red, are attached hereto as Exhibit C. That image accurately reflects the amount of ink available to be sampled from the Purported Contract.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 15th date of August 2011, in Raleigh, NC.

Albert H. Lyter III, Ph.D., D-ABC