UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | x |
|---|---|
| PAUL D. CEGLIA, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 1:10-cv-00569-RJA |
| MARK ELLIOT ZUCKERBERG and FACEBOOK, INC., | : |
| Defendants. | : |
| | x |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

# DEFENDANTS' OPPOSITION TO CEGLIA'S MOTION TO STAY

Thomas H. Dupree, Jr.
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
(202) 955-8500

Orin Snyder
Alexander H. Southwell
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193
(212) 351-4000

Terrance P. Flynn
HARRIS BEACH PLLC
726 Exchange Street
Suite 1000
Buffalo, NY 14210
(716) 200-5120

August 24, 2011

**DEFENDANTS' OPPOSITION TO CEGLIA'S MOTION TO STAY**

Plaintiff Paul Ceglia brought a fraudulent lawsuit that is now crashing down around him. He claimed ownership of a substantial share in Facebook, Inc. based on an alleged "contract" that has now been revealed as a forgery, and purported "emails" with Mark Zuckerberg that Ceglia created out of whole cloth.

Ceglia's fraud has been more fully exposed in large part due to Judge Foschio's July 1 order granting Defendants expedited and targeted discovery into the forged contract and bogus emails — an order Ceglia never challenged in this Court. The discovery Defendants have conducted to date has uncovered the *authentic* contract on Ceglia's computer — a contract that has nothing to do with Facebook, and leaves no doubt that Ceglia manufactured the bogus contract attached to the First Amended Complaint. Discovery has further revealed that Ceglia has attempted to cover up his fraud by apparently destroying critical evidence during the pendency of this lawsuit — six removable USB storage devices that contained documents entitled "Zuckerberg Contract page1.tif" and "page2.tif" and a folder entitled "Facebook Files" — documents that would likely have further incriminated Ceglia in this massive fraud on the court.

Defendants will soon move to dismiss this lawsuit based on the now-overwhelming evidence that Ceglia appears to have destroyed critical electronic documents and is perpetrating a large-scale fraud. For now, however, Defendants are opposing Ceglia's latest attempt to obstruct these proceedings through a baseless motion to stay.

On July 1, following a three-hour hearing, Judge Foschio ordered expedited discovery in light of Defendants' evidentiary showing that Ceglia's lawsuit was based on a doctored "contract" and fake emails. Judge Foschio ordered Ceglia to produce, among other things, all

hard copy and electronic versions of the alleged contract and emails, and to make all computers and electronic media in his possession available for inspection by forensic experts. *See* Doc. No. 83 at 1-2. He also ordered Ceglia to file a sworn certification that all the documents and items encompassed by the order had been identified and produced. *See id.* at 2.

Although Ceglia made a limited production, he failed to comply with key provisions of the order and his attorneys sought to evade and obstruct the court-ordered discovery in many ways. Defendants accordingly filed a motion to compel, which Judge Foschio granted on August 18. *See* Doc. No. 117 at 1. He agreed with Defendants that Ceglia had failed to identify and produce certain hard copy and electronic documents, as well as all computers and electronic media in his possession, and to certify his compliance with the order. Judge Foschio granted Ceglia an additional (and generous) ten days to comply with his discovery obligations, and directed him to explain in a sworn supplemental declaration the disturbing disappearance of the USB devices and other documents that Ceglia claimed could no longer be found. *See id.* ¶¶ 1-4.

Even though he never objected to the July 1 discovery order, Ceglia now belatedly seeks to launch a collateral attack on that ruling by challenging the August 18 order granting the motion to compel. This is impermissible. His request to stay Judge Foschio's order leaves no doubt that Ceglia is desperate to avoid having to comply because he knows full well that it will result in additional evidence of his fraud and criminal misconduct.

Ceglia comes to this Court in bad faith and with unclean hands, and his request for a stay should be denied. Ceglia has not come remotely close to establishing the "good cause" necessary to stay discovery under Rule 26(c), and makes virtually no effort to demonstrate that Judge Foschio's August 18 order is "clearly erroneous or contrary to law" as required under 28

U.S.C. § 636(b)(1)(A).  His motion to stay discovery is a transparent attempt to buy additional time so that he can continue tampering with or disposing of evidence exposing his fraud.

Judge Foschio has devoted enormous amounts of time and effort to resolving these discovery issues, including multiple rounds of briefing, two in-court hearings spanning more than seven hours, and two in-chambers conferences to hammer out the specifics of the discovery orders.  His rulings — including his decision to deny the very stay Ceglia seeks from this Court — are careful and correct.  Ordering a stay of discovery will substantially prejudice Defendants in that it will likely lead to the disappearance of more evidence and enable Ceglia to continue his unlawful campaign of fraud, spoliation and subterfuge.

## BACKGROUND

Defendants sought expedited and targeted discovery to establish that the alleged contract at the heart of this case is a fabrication, as are the so-called "emails" Ceglia purported to reproduce in his First Amended Complaint.  *See* Doc. No. 44.

On July 1, following a three-hour hearing and based on Defendants' evidentiary showing that Ceglia was perpetrating a fraud, Judge Foschio granted Defendants' motion and directed Ceglia to produce, among other things, all copies of the alleged contract and the purported emails, in hard copy as well as electronic form.  *See* Doc. No. 83 at 1-2.  Judge Foschio also ordered Ceglia to produce for inspection and forensic testing all computers and electronic media in his possession or under his control.  *See id*. at 2.

Ceglia did not object to the order.  Instead, he brazenly violated many of its provisions. While he produced several computers and documents, he ignored numerous other production obligations, concealed and apparently destroyed critical evidence, and attempted to frustrate and obstruct discovery at every turn.  Ceglia's counsel seemingly acknowledged his egregious

3

noncompliance with the order and attempted to excuse it by explaining that Ceglia himself had been unable to assist in identifying and producing documents because he had moved to Ireland. *See* Southwell Decl. (Doc. No. 97) ¶ 24.

The forensic testing that Defendants were able to conduct on Ceglia's computers based on his limited production revealed two things. First, Defendants found on Ceglia's computer the authentic contract between Mark Zuckerberg and StreetFax — the now-defunct enterprise on whose behalf Ceglia had hired Zuckerberg as a college freshman to perform limited website development services. That contract, while it bears certain similarities to the bogus contract attached to the First Amended Complaint, mentions only StreetFax and says nothing about Facebook. This discovery conclusively establishes that the "contract" attached to the First Amended Complaint is an outright fabrication. Ceglia had attempted to conceal the authentic contract by failing to identify it as Judge Foschio had ordered, by falsely claiming it contained "confidential" information that could not be disclosed under the protective order governing this litigation, and by baselessly claiming that his emails transmitting it (emails in which Ceglia acknowledged that it was the authentic contract) were protected by the attorney-client privilege.

Second, the forensic analysis revealed that, during the pendency of this lawsuit, Ceglia has been using six USB or other removable storage devices containing highly relevant documents such as "Zuckerberg Contract page1.tif" and a folder entitled "Facebook Files." When confronted with the electronic data demonstrating his use of these removable devices — whose very existence he had willfully concealed from Defendants and the Court — Ceglia claimed that he was now "unable to locate these devices." Plaintiff's Unredacted Reply and Opposition at 11.

In light of the overwhelming evidence that Ceglia has been perpetrating a massive fraud on the court — and has been defying his discovery obligations in hopes of preventing Defendants from obtaining additional evidence of his fraud — Defendants moved to compel Ceglia's compliance with the July 1 order. *See* Doc. No. 95. Defendants demonstrated that Ceglia had violated the order in numerous respects:

- He failed to produce several specific categories of electronic documents, including copies of the purported contract in the possession of his lawyers and experts.

- He failed to certify that he had produced all electronic assets called for by the order.

- His lawyers obstructed the attempts of Defendants' experts to take ink samples from the purported contract.

- He attempted to shield the authentic contract — and his emails from 2004 transmitting that document and acknowledging it is the contract he signed with Zuckerberg — from public disclosure through baseless and improper "privilege" and "confidentiality" designations.

- He concealed or destroyed six removable storage devices that had been connected to his computers and used to save documents highly relevant to this case.

*See* Defendants' Unredacted Cross-Motion and Opposition at 1-5.

On August 17, Judge Foschio conducted a four-hour hearing into these discovery issues. During that hearing, Judge Foschio and Ceglia's counsel engaged in an extraordinary colloquy in which Ceglia's counsel admitted in open court that he literally had no explanation for his client's spoliation of the USB devices. *See* Tr. 77-81 (admitting that the six devices "absolutely did exist" but when he asked Ceglia what happened to them, "[h]is answer was I lost them, I misplaced them").

Judge Foschio granted Defendants' motion to compel in an August 18 order. That order directed Ceglia to comply with the obligations imposed by the July 1 order, and (among other things) directed him to provide a sworn declaration explaining what happened to the USB

5

devices and any other evidence that Ceglia claims to have "lost" since this litigation began. *See* Doc. No. 117 ¶¶ 1-4.

Ceglia asked Judge Foschio to stay the order. Judge Foschio denied the request. *See* Doc. No. 116.

**ARGUMENT**

Ceglia has failed to establish good cause to stay discovery. *See* Fed. R. Civ. P. 26(c); *Ellington Credit Fund, Ltd. v. Select Portfolio Servs., Inc.*, 2009 WL 274483, at *1 (S.D.N.Y. Feb. 3, 2009) (identifying factors relevant to "good cause" determination). None of Ceglia's three arguments has merit.

**1.** Ceglia contends that he will suffer "undue hardship and prejudice" absent a stay of the August 18 order. Motion to Stay at 3-4. Ceglia's argument rests on the false premise that what he calls the "enormous efforts" supposedly required by the August 18 order constitute *new* obligations. They do not: the August 18 order merely compels Ceglia's compliance with the July 1 order, *i.e.*, it requires him to do what he was supposed to have done a month ago. Ceglia has simply been directed to produce the documents that he has been concealing from the Court and certify that he has made a full production. Moreover, Ceglia did not object to the July 1 order and cannot be permitted to launch a belated collateral attack on it by filing objections to the August 18 order.

Ceglia complains that the burden of production may be significant. But he has now had nearly two months to produce the documents and other materials in question, and the fact that he has been concealing what he now admits is "a multitude of responsive electronic documents," Aug. 22 Shaman Decl. ¶ 8, does not constitute good cause for staying discovery.

Ceglia also notes that Judge Foschio granted Defendants' request to complete the ink sampling authorized by the July 1 order, but he does not claim that this ruling was erroneous. Rather, he simply says that "at this point, [he] does not know if his experts will be available to observe the testing on August 29, 2011." Motion at 4. This is not a basis for staying discovery. The parties will either work out a mutually acceptable date for testing, or Ceglia's experts may simply elect not to attend.[1]

The one supposedly "new" obligation Ceglia mentions is the requirement that he provide access to his email accounts. Motion at 3. Defendants made this request because Ceglia claimed not to have any relevant emails — a claim that was revealed to be false when his computers were examined and Defendants found the authentic contract attached to Ceglia's emails. And when Defendants asked Judge Foschio for access to Ceglia's email accounts, Ceglia did not object. *See* Doc. No. 110 at 5 ("Ceglia does not object to Defendants' request that the Court direct him to consent to the acquisition and inspection of his webmail accounts by Stroz Friedberg pursuant to the Electronic Assets Inspection Protocol, so this Court should issue the requested order."). Ceglia's failure to lodge a timely objection constitutes a waiver of his ability to challenge that aspect of Judge Foschio's order.

**2.**     Ceglia argues that a stay is warranted because he has not yet obtained transcripts of the August 17 or August 18 hearings. This argument is moot, as the transcript from the August 17 hearing — during which the vast majority of the substantive rulings were made —

---

[1]    On August 24, 2011, Plaintiff's counsel Mr. Argentieri advised that he is unable to attend testing on August 29, and requested August 27 or August 28 as alternative dates for Defendants' inspection. Defendants have agreed to accommodate Mr. Argentieri and intend to conduct testing on August 27, 2011.

7

was transmitted to Ceglia's counsel on August 22.  With regard to the August 18 hearing (which was limited to finalizing the form of the court's order), Ceglia did not request that a court reporter be present and none was.

   **3.**   Ceglia contends that "there is no reason to believe that Defendants will suffer prejudice if the Court grants a stay." Motion at 5.  This claim is not just false, but cynical in the extreme given Ceglia's spoliation of critical electronic evidence during the pendency of this lawsuit.  It is undisputed that Ceglia used some of the USB devices *after* he filed this complaint, yet failed to disclose them as Judge Foschio ordered him to do.  Then, when his attempt to conceal this crucial evidence was brought to light, he claimed that he could no longer find them.  Defendants have already suffered substantial prejudice, and granting a stay of discovery will only prejudice Defendants further by giving Ceglia the opportunity to conceal or destroy additional evidence.

   As his lawyer made clear during the most recent hearing before Judge Foschio, Ceglia's goal is to string out this lawsuit as long as possible in hopes of extracting a settlement from Defendants.  Ceglia's lawyer asked Judge Foschio to direct the parties to mediate the dispute, *not* because there was any debatable question about whether the document attached to the First Amended Complaint was fabricated by his client, but because a settlement would allow the Defendants to avoid potential discovery and litigation expenses, and avoid Ceglia's release of what his lawyer described as "a lot of information [about Mr. Zuckerberg] that is about to come out."  *See* Aug. 17 Tr. 171.  Indeed, Ceglia himself made his improper, extortionate objective clear when he issued a statement to the press threatening:  "You won't go public Mark, you won't IPO, you won't pass go, I won't let you sell this company out from under me not while I have the power to stop you," and inviting "anyone with some legal or technical expertise that

8

would like to help us nail [Mark Zuckerberg] down for good is welcome to join in at PaulsCase.com." *See* Emil Protalinski, *Exclusive: Paul Ceglia says Facebook is doing the forgery*, ZDNET (Aug. 16, 2011).  At the hearing, Defendants made clear that they had no interest in mediating this fraudulent lawsuit and intended to move to dismiss and for sanctions after Ceglia complies with this Court's orders.

## CONCLUSION

This Court should deny Ceglia's motion to stay discovery and award Defendants all other relief to which they may be entitled.

Dated:        New York, New York
              August 24, 2011

                                                            Respectfully submitted,

                                                            /s/ Orin Snyder
Thomas H. Dupree, Jr.                                       Orin Snyder
GIBSON, DUNN & CRUTCHER LLP                                 Alexander H. Southwell
1050 Connecticut Avenue, NW                                 GIBSON, DUNN & CRUTCHER LLP
Washington, DC 20036                                        200 Park Avenue, 47th Floor
(202) 955-8500                                              New York, NY 10166-0193
                                                            (212) 351-4000

Terrance P. Flynn
HARRIS BEACH PLLC
726 Exchange Street
Suite 1000
Buffalo, NY 14210
(716) 200-5120

*Attorneys for Defendants Mark Zuckerberg and Facebook, Inc.*