UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------- x
PAUL D. CEGLIA,

        Plaintiff,

  v.

MARK ELLIOT ZUCKERBERG and
FACEBOOK, INC.,

        Defendants.
------------------------------------------------- x

Civil Action No. 1:10-cv-00569-RJA

**DECLARATION OF ALEXANDER H. SOUTHWELL**

I, ALEXANDER H. SOUTHWELL, hereby declare under penalty of perjury that the following is true and correct:

1. I am an attorney licensed to practice law in the State of New York and admitted to practice before this Court. I am a partner in the law firm of Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), counsel of record for Mark Elliot Zuckerberg and Facebook, Inc. ("Facebook") in the above-captioned matter. I make this declaration, based on personal knowledge, in support of Defendants' Opposition to Plaintiff's Motion to Set Delayed Briefing Schedule for Defendants' Motion to Compel (Doc. No. 134).

**Plaintiff's Discovery Obligations Pursuant to Judge Foschio's August 18 Order**

2. Plaintiff was required, by August 29, 2011, to comply with the discovery obligations imposed by Judge Foschio's Order, dated August 18, 2011 (Doc. No. 117) (the "Order").

3. Pursuant to paragraph 5 of the Order, Plaintiff was required, by August 29, "to identify all email accounts accessible through web-based interfaces that Plaintiff has used since 2003, including but not limited to his gmail.com, msn.com, tmail.com, and adelphia.net accounts." Plaintiff was also required to "consent to the acquisition and inspection by Stroz

1

Friedberg of the contents of all such account ... on a form or forms to be provided by Stroz Friedberg." Finally, Plaintiff was required to provide to Stroz Friedberg a password for, and facilitate access by Stroz Friedberg to, each identified account. See Order (Doc. No. 117) ¶ 5.

**Plaintiff's Production of Email Account Information and Passwords Directly to Defendants**

4.  On August 29, 2011 at approximately 10:40 p.m. ET, counsel for Plaintiff, Nathan Shaman, produced to Defendants several declarations and supporting exhibits purporting to comply with, in relevant part, paragraph 5 of the Order. Mr. Shaman included a cover letter to that production, in which he explained that Plaintiff had provided a "modified" consent form to Stroz Friedberg, conditioned upon resolution of a motion to stay paragraph 5 of the Order (Doc. No. 126) and "subsequent objections" to the Order. Nowhere in this cover letter did Mr. Shaman designate any information contained in the attached declarations and supporting exhibits as confidential pursuant to the parties' Joint Stipulated Protective Order (Doc. No. 86) (the "Protective Order"). A true and correct copy of this letter is attached hereto as Exhibit A.

5.  Included in Plaintiff's August 29 production to Defendants was the Supplemental Declaration of Plaintiff Paul D. Ceglia, dated August 29, 2011. Pursuant to paragraph 5 of the Order, Plaintiff purported to identify, at paragraphs 174-177 of that declaration, email accounts he had used since 2003, including email account names and passwords to his Gmail and MSN accounts. Nowhere in Plaintiff's August 29 declaration did Plaintiff designate his email account information as confidential pursuant to the Protective Order. Further, and as noted in Mr. Shaman's cover letter, the declaration did not contain Ceglia's actual signature, but only a

purported electronic signature. A true and correct redacted copy of Plaintiff's August 29 declaration is attached hereto as Exhibit B.[1]

6. Thus, on the evening of August 29, 2011, Plaintiff provided directly to Defendants his email account information and the passwords to those accounts, and notified Defendants that he had provided modified consent forms to Stroz Friedberg, which forms were conditioned upon the resolution of his motion to stay and subsequent objections.

7. A short while later on the evening of August 29th, Plaintiff filed a motion to stay paragraph 5 of the Order. See Doc. No. 126. The Court had denied Plaintiff's motion to stay the Order twice previously, on August 18 (Doc. No. 116) and August 26 (Doc. No. 125). The next morning, Judge Arcara denied the motion to stay in a short text order. See Doc. No. 127.

8. Following receipt of Mr. Shaman's letter, the production, and the motion, I contacted Stroz Friedberg to advise them of these events and the pendency of the motion. In addition, in order to evaluate Plaintiff's compliance with the Order, I inquired of Stroz Friedberg whether Plaintiff had in fact provided the consents as represented by Mr. Shaman.

---

[1] Defendants are redacting the email account name and password information in Ceglia's August 29 declaration in an abundance of caution, without conceding it should be redacted or treated confidentiality and reserving all rights. Plaintiff still has not designated the material as confidential under the Protective Order; instead, Plaintiff has made wild accusations of a variety of misconduct, such as "the most troubling issue of all" is that Defendants had "complete access to Ceglia's email accounts" for 12 hours. But Plaintiff provided this information to Defendants as part of his court-ordered disclosure on August 29, 2011. Defendants and their counsel are bound by the Court's orders that permit access to Plaintiff's email accounts only pursuant to the strict protocol outlined in the Electronic Asset Inspection Protocol, which is why Defendants took the steps outlined herein to first raise Plaintiff's improper self-help approach with Plaintiff and then the Court. Defendants and counsel have not accessed Plaintiff's email accounts.

9. In response, Stroz Friedberg confirmed that Plaintiff had provided modified conditional consent forms, represented that they would not access Plaintiff's accounts until the condition had been lifted, and sent me the modified consent forms.

10. As described above, by this time, Plaintiff had already shared directly with Defendants <u>all</u> of the information contained in his improperly modified consent forms.

**<u>Defendants' Good-Faith Efforts to Resolve Plaintiff's Non-Compliance with the Order</u>**

11. On August 30, 2011, I sent counsel for Plaintiff, Jeffrey A. Lake, a letter informing Plaintiff that his modified consent forms were not compliant with the Order and constituted improper self-help. I noted that Defendants reserved the right to seek appropriate sanctions for Plaintiff's ongoing willful non-compliance with the Order. A true and correct copy of that letter is attached hereto as Exhibit C. Plaintiff did not respond to this letter in any way.

12. On September 1, 2011, Defendants moved to compel Plaintiff's compliance with paragraph 5 of the Order. <u>See</u> Doc. No. 128. Defendants sought an immediate order directing Ceglia to comply with Paragraph 5 of the Order by furnishing forthwith his <u>unqualified</u> consent on the form provided by Stroz Friedberg, arguing that Ceglia had no justification for his unlawful and contumacious refusal to comply by providing qualified consents, particularly in the face of three separate denials of his motion to stay. In support of that motion, I submitted a declaration, attached to which were the consent form provided to Plaintiff by Stroz Friedberg—the form which Plaintiff had been ordered to execute—and Plaintiff's improperly modified consent forms.

13. Again, at the time Defendants filed their September 1 motion to compel, Plaintiff had not designated his email account information as confidential in Plaintiff's August 29 declaration provided directly to Defendants; in the improperly modified consent forms provided

4

to Stroz Friedberg; or in response to my August 30 letter, which reserved the right to seek appropriate relief for Plaintiff's non-compliance with paragraph 5 of the Order.

14. On September 1, 2011, soon after filing Defendants' motion to compel, I contacted Plaintiff's counsel, as a courtesy, to advise them that Defendants' motion had included information Plaintiff had provided concerning his email account. After getting no response from Plaintiff's counsel, I contacted co-counsel Terrance Flynn to advise him of the situation and ask him to contact the appropriate party at the Court about the situation. I did not ask Mr. Flynn to request that the document be removed from the docket and I understand that that is not what Mr. Flynn did.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 6th day of September, 2011 at Long Beach Island, New Jersey.

Alexander H. Southwell