# EXHIBIT C

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Alexander H. Southwell
Direct: +1 212.351.3981
Fax: +1 212.351.6281
ASouthwell@gibsondunn.com

Client: 30993-00011

October 7, 2011

VIA ELECTRONIC MAIL

Jeffrey A. Lake, Esq.
Jeffrey A. Lake A.P.C.
11650 Iberia Place, Suite 216
San Diego, CA 92128

Re:   Ceglia v. Zuckerberg and Facebook, Inc., No. 1:10-cv-569 (RJA)

Dear Mr. Lake:

We write to draw your attention to several deficiencies in Plaintiff's August 29, 2011 production, and in the hope that we will be able to resolve these deficiencies without seeking court intervention. Plaintiff remains in non-compliance with the Order entered by Judge Foschio on July 1, 2011, (Doc. No. 83), as well as the Order entered on August 18, 2011 (Doc. No. 117) compelling compliance with the July 1 Order. In order to address the following deficiencies and to provide the required certifications, we hereby demand that Plaintiff provide an updated, second Supplemental Declaration in accordance with 28 U.S.C. § 1746 and with the August 18 Order.

**I. Non-Compliance Regarding Removable Storage Devices**

We have recently learned that Plaintiff failed to identify and produce yet another removable storage device, in violation of the August 18 Order. As you know, the August 18 Order requires Plaintiff to identify and produce several computers and electronic media, including but not limited to all electronic media in Plaintiff's possession (excluding Plaintiff's attorneys' and experts' computers) since June 30, 2010. See Doc No. 117. Our further review of the Presumed Relevant Material revealed a removable media device that Plaintiff appears to have possessed since June 30, 2010, which device Plaintiff failed to identify in his Supplemental Declaration or to produce for inspection.[1] This device is a Seagate FreeAgent GoFlex USB Device, internal identifier NA056T98&0.

---

[1] In his August 29th Supplemental Declaration, Plaintiff represented that the Maxtor 3200 USB Device described in paragraph 6 of the August 15th Southwell Declaration had been produced to Stroz Friedberg. Based on this representation, we investigated and confirmed with Stroz Friedberg that the Maxtor drive had, in fact, been produced for inspection.

GIBSON DUNN

Jeffrey A. Lake, Esq.
October 7, 2011
Page 2

We hereby demand that Plaintiff produce this device for inspection, and address and certify its production in the updated second Supplemental Declaration, in accordance with the August 18 Order.

## II. Non-Compliance Regarding Scans and Images of Plaintiff's Experts

As you know, the August 18 Order requires Plaintiff to identify and produce the electronic copies or images of the purported contract in the possession, custody, or control of Plaintiff's experts. *See* Doc No. 117. Among those experts are John Paul Osborn and Valery Aginsky, who have both provided sworn declarations to the Court. *See* Doc. Nos. 62, 66.

### A. *John Paul Osborn*

Plaintiff has not produced any scans from Mr. Osborn, claiming, without any explanation, that Mr. Osborn is "unavailable." Mr. Osborn is Plaintiff's retained expert who has submitted sworn testimony in support of Plaintiff's previous submissions. Plaintiff's vague, flippant explanation for his failure to produce Mr. Osborn's images does not excuse Plaintiff's non-compliance.

If Mr. Osborn's purported "unavailability" owes to a fee dispute, Defendants have already stated that they would pay for the cost of obtaining any electronic copies. *See* August 17, 2011 Oral Argument Transcript at 108.

We hereby demand that Plaintiff produce all of Mr. Osborn's electronic copies and images of the purported contract in native format, and address and certify their production in the updated second Supplemental Declaration, in accordance with the August 18 Order..

### B. *Valery Aginsky*

Plaintiff produced only two Photoshop (PSD) files that he attributed to Valery Aginsky, consisting of page one and page two of the purported contract. These files are suspicious and of questionable authorship. First, the embedded metadata contains no information relating to the author or the creator of these files; thus, authorship cannot be verified from the files themselves. Second, as you are undoubtedly aware, professional forensic document examiners like Mr. Aginsky typically take high-resolution scans in either TIFF or JPEG format. Plaintiff's production of these images in Photoshop format is thus highly suspicious; Photoshop can be used to change colors, add image layers, and remove image layers. Finally, as you have observed first-hand on multiple occasions, the other experts in this case have taken a vast quantity of scans of the purported contract at very high resolutions. It seems highly unlikely that Mr. Aginsky would have taken a single image of the purported contract, or that the scan produced to Defendants is the highest resolution image that he made (assuming he even made these).

**GIBSON DUNN**

Jeffrey A. Lake, Esq.
October 7, 2011
Page 3

We hereby demand that Plaintiff produce all of Mr. Aginsky's electronic copies and images of the purported contract in native format, and address and certify their production in the updated second Supplemental Declaration, in accordance with the August 18 Order. If Plaintiff continues to represent that these two Photoshop files are the only scans that Mr. Aginsky took of the purported contract, and that these files exist in their native format, then Defendants hereby demand that Plaintiff provide a sworn statement from Mr. Aginsky certifying the same.

### III. Non-Compliance Regarding Native-Format Files

As you are aware, the August 18 Order requires all files to be "produced in their native format." *See* Doc No. 117. A native-file production typically includes all available metadata. *See* Lorraine v. Markel American Ins. Co., 241 F.R.D. 534, 547 (D.Md. 2007) ("[A] request [for] production of electronically stored information in its 'native format'... includes the metadata for the electronic document."); Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, 8B FED. PRAC. & PROC. CIV. § 2219 (3d ed. 2011) ("Altogether, electronically stored information with metadata and embedded data intact may be said to be in 'native format.'"). Yet none of the files that Plaintiff produced on August 29, 2011 were produced in their complete native format with properly preserved metadata. Plaintiff's method of production (as a ZIP file) did not preserve file system metadata, nor did it preserve the embedded metadata for some of the files. A complete native production of the files must include both the file system metadata and all of the original embedded metadata of the produced files.

We hereby demand that Plaintiff produce all files that have already been or that are being produced pursuant to the Orders in their complete native format, in a method which preserves the metadata associated with the original files, as required by the August 18 Order.

### IV. Non-Compliance Regarding Plaintiff's Account of Items He has Lost or Destroyed, or that Otherwise Do Not Exist

As you know, for any item that Plaintiff was required to produce but that was no longer in his possession, custody, or control, Plaintiff must "*describe in detail* his good-faith efforts to conduct a diligent search for that item . . . [and] *provide a detailed account* of the non-existence, loss, or destruction of each such item, including the approximate date on which each item was lost, destroyed, or otherwise disposed of." *See* Doc No. 117. The August 18 Order was intentionally clear on this point. If Plaintiff lost or mislaid or otherwise disposed of items he was required to produce under the July 1 or August 18 Orders, he must provide a detailed explanation of the who, what, when, where and why such items went missing.

Plaintiff did not satisfy this obligation. Instead, he generically declared that he conducted a "diligent search and reasonable inquiry" but could not locate the specified items. *See, e.g.*,

GIBSON DUNN

Jeffrey A. Lake, Esq.
October 7, 2011
Page 4

August 29 Ceglia Decl. at ¶ 130, 137, 144, 146, 149, 151, 183. This is plainly insufficient under the August 18 Order.

We hereby demand that in the updated second Supplemental Declaration, Plaintiff provide the detailed explanation required by the August 18 Order.

**V. Improper Privilege Log**

Plaintiff's so-called "privilege log" purports to withhold documents and categories of documents for various reasons, most of which are not even proper privileges.

First, Plaintiff's assertion of work-product privilege over his experts' scans of the purported contract has already been explicitly rejected by the Court. *See* August 17, 2011 Oral Argument Transcript at 119 ("I am also ruling that the image of the original contract in the possession of Plaintiff's expert is also within the disclosure and the production requirement of the Order . . . I'm overruling any objection that this is expert work product . . .").

Second, Plaintiff withholds several documents on the basis that they are "Irrelevant/Outside Scope of August 18, 2011 Order/Trade Secret." None of these bases constitute a legitimate privilege. Moreover, as you are well aware, a Joint Stipulated Protective Order exists precisely to protect any purportedly sensitive material from the public or the parties.

Third, Plaintiff withholds eight "scan[s] of printed email[s]" between Defendant Zuckerberg and Karin Petersen, one of which includes Paul Ceglia as an addressee, on the basis that those documents are "Cumulative/Equally Available to Defendants." To begin, no such privilege exists. Furthermore, it is not for Plaintiff to determine whether certain documents are "cumulative" or "equally available to Defendants," particularly given Plaintiff's fabrication of emails in this case: the purported emails described in the Amended Complaint, for example, are not "cumulative" or "equally available to Defendants" because they are utter fabrications.

We hereby demand that Plaintiff produce all documents listed in the privilege log, which have been improperly withheld, for inspection, and address and certify their production in the updated second Supplemental Declaration, in accordance with the August 18 Order.

**VI. Continued Webmail Non-Compliance**

As you know, the August 18 Order requires that Plaintiff "identify all email accounts accessible through web-based interfaces *that Plaintiff has used since 2003*, including but not limited to his gmail.com, msn.com, tmail.com, and Adelphia.net accounts," and that he "consent to the acquisition and inspection by Stroz Friedberg of the contents of all such accounts." *See* Doc. No. 117 at ¶5 (emphasis added).

**GIBSON DUNN**

Jeffrey A. Lake, Esq.
October 7, 2011
Page 5

Plaintiff has not provided credentials for the Adelphia account from which he sent two emails to Jim Kole attaching the authentic contract. In his August 29 Declaration, Plaintiff simply states: "I have not used, since 2003, an Adelphia.net email account that belongs to me. The Adelphia.net account I used in the past belonged to my parents." Ceglia Decl. at ¶178-179. But this is not a valid ground on which to withhold the account information: the August 18 Order requires him to provide access to all email accounts that he *has used since 2003*, regardless of whether he claims them as "his." Since 2003, Plaintiff has used the Adelphia.net email account from which he sent the Kole emails; thus, the August 18 Order requires Plaintiff to provide access to that account to Stroz Friedberg.

We hereby demand that Plaintiff consent to the acquisition of and inspection by Stroz Friedberg of the contents of the Adelphia.net email account from which he sent the Kole emails, and provide such consent on the form which has already been provided by Stroz Friedberg, as required under the August 18 Order.

### VII. Time for Compliance

We hereby demand that Plaintiff comply with the Orders, as outlined in this letter, by Tuesday, October 11, 2011 at 5:00 p.m. EST. This letter and any subsequent communication with Plaintiff constitutes Defendants' attempt to meet and confer with Plaintiff on the foregoing issues. We reserve all rights, including the right to seek attorney's fees, costs, and appropriate sanctions for Plaintiff's ongoing non-compliance.

Very truly yours,

Alexander H. Southwell

cc: Paul Argentieri, Esq.
    Nathan Shaman, Esq.