UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

------------------------------------- x
PAUL D. CEGLIA,

        Plaintiff,

v.

MARK ELLIOT ZUCKERBERG and
FACEBOOK, INC.,

        Defendants.

------------------------------------- x

Civil Action No. 1:10-cv-00569-RJA

**DECLARATION OF
MICHAEL F. MCGOWAN**

I, Michael F. McGowan, declare and state as follows:

## Introduction

1. Stroz Friedberg, LLC ("Stroz Friedberg") has been retained in the above-styled case by Gibson, Dunn & Crutcher, LLP ("Gibson Dunn"), on behalf of its clients Mark Zuckerberg and Facebook, Inc. ("Facebook"), to provide consulting and electronic discovery services and to conduct digital forensic examinations of digital media.

2. I previously submitted a declaration in this matter dated June 1, 2011, which sets forth my qualifications and discusses the information generally available from computers and other electronic media.

3. I submit this declaration in support of Defendants' Third Motion to Compel and for Other Relief.

4. Since I submitted my June 1, 2011 declaration, Paul Ceglia has produced computers and electronic media for inspection and preservation (the "Ceglia media"). In addition on August 30, 2011, Stroz Friedberg received a copy of documents produced by Mr. Ceglia to Gibson Dunn on August 29, 2011 (collectively, the "August 29 Production"). I understand that Mr. Ceglia produced these documents in response to an August 18, 2011 Court order.

## Summary

5. This declaration describes the following four deficiencies or limitations in the August 29 Production.

1

a. The August 29 Production was not a complete production of native files. It did not include the production of complete file system metadata for any file. In addition, the production did not include accurate or complete embedded metadata for some files.

b. Two of the documents included in the August 29 Production were allegedly obtained from the Aginsky Forensic Document Dating Laboratory, Inc. ("Aginsky Forensic"). However, there is no information in the files themselves to support the claim that they were created by Aginsky Forensic.

c. During its digital forensic analysis of the Ceglia media, Stroz Friedberg found evidence of another undisclosed removable USB storage device had been used as recently as April 4, 2011. This additional undisclosed removable USB storage device was neither produced by Mr. Ceglia for inspection nor identified by Mr. Ceglia as part of the August 29 Production.

d. Mr. Ceglia has not consented to the acquisition and inspection of the ceglia@adelphia.net email account.

## Metadata

6. Metadata is sometimes referred to as "data about data" and can contain information that, for example, identifies the dates and times a document was created, modified, and last accessed. The exact types of metadata that are recorded depend on the given computer and software application.

7. There are two sources of metadata commonly available for electronic documents: file system metadata and embedded metadata.

8. File systems organize the files on a hard drive or other storage media. A file system can be thought of as a kind of electronic filing cabinet where the names of the manila folders and hanging files describe the documents contained therein, which frequently are related by subject matter. File systems can record a file's location on the media and the date and time when a file was created, last written to, and last accessed. These attributes refer to the file as it exists on the computer or file system and are examples of file system metadata.

9. Computer programs, such as Microsoft Word, also can capture similar information in the native file itself. This is commonly referred to as "embedded metadata" to distinguish it from the metadata recorded by the file system, since it is stored within the document. Embedded metadata

may include information regarding when the document was created, last printed, and last saved and who authored and last saved the document.

10. As discussed in my June 1, 2011 declaration, both file system and embedded metadata can be critical in authenticating a document. Such metadata can contain important information regarding authorship, because it can provide a contemporaneous record, automatically created by the computer, that reflects when and how the document was created and edited. In addition, anomalies in a file's metadata can constitute evidence of backdating or fraudulent editing.

## Productions

11. In digital forensics and electronic discovery, the phrase "native format" generally refers to the format in which electronic files are maintained on a hard drive or other storage media. For example, the native format for a document created by the Microsoft Word program generally would be the Word document format, a file that would typically have a .doc or .docx file extension. An electronic file is comprised of both the content of the file, as well as the metadata maintained about the file. Thus, when files are produced in "native format," the production should include both the native files and the metadata associated with them. In cases where the authenticity of an electronic document is at question, a native format production can be particularly important as it includes the types of metadata described above and allows the files to be examined in their original state.

## The August 29 Production

12. The August 29 Production from Mr. Ceglia was comprised of a single ZIP file named "Files for Gibson Dunn.zip." A ZIP file is a container file which has other files within it. In total, the ZIP file contained 39 individual files, organized in six folders named for what I understand to be the custodian of the files. For example, the first folder was named "Aginsky," and it contained documents that Mr. Ceglia stated in his August 29, 2011 declaration were from Aginsky Forensic.

13. By default, the ZIP file format preserves only a file's file system last modification time. Although the ZIP file format has the capability of preserving a file's file system creation and last accessed date and time, this information was not provided in the ZIP file produced by Mr. Ceglia on August 29, 2011. The missing file system metadata is important evidence to consider in analyzing when the documents were created or last modified.

3

14. There are alternate methods of production that would have preserved the file system metadata. For example, the files could have been produced on a hard drive in a way that maintained the files' original file system metadata. Alternatively, the original metadata of the files could have been produced in a separate index to the files, such as a Concordance load file.

15. Because the relevant file system metadata was not fully produced, Stroz Friedberg does not have access to important information that might help it determine the provenance or origin of certain files in the August 29 production.

16. For example, two of the documents purportedly obtained from Edelson McGuire, LLP ("Edelson McGuire") are copies of the pages of a contract between Paul Ceglia and Mark Zuckerberg. These pages appear to be identical in content to the pages attached to two emails sent to James Kole on March 3, 2004. However, the copy of the contract obtained from Edelson McGuire, provided in the August 29 Production, was not attached to these or any other email message.

17. If these files' metadata had been included in the August 29 Production, Stroz Friedberg might have been able to determine whether these files were attached to the emails to Mr. Kole or came from a different source. However, because that metadata was not produced, Stroz Friedberg cannot determine where these files originated or how they were transmitted.

18. The embedded metadata of some of the files contained in the August 29 Production is also deficient. For example, the embedded metadata of several of the documents within the August 29 Production appears to have been removed or altered from its native format. For instance, the Microsoft Word document "Work for Hire ContractMZ.doc," purportedly obtained from Paul Argentieri, appears to have had its embedded metadata removed; there are no valid entries in the "Title," "Creation Date," "Last Author," "Revision," or "Last Printed" embedded metadata fields, which would typically be populated when using Microsoft Word.

19. In addition, the embedded metadata of the document "work for hire SF template.doc" appears to have been updated by Jeffrey Lake prior to it being produced. The "Last Author" embedded metadata lists the user "Jeffrey A. Lake" as the last user to save the document and has an embedded last written to date of August 27, 2011.[1] Because these embedded metadata fields only record the last author and the last time that the document was saved, the saving of the

---

[1] I note that this document has the text "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" affixed to it as a watermark. As such, it is likely that the metadata of this document was updated by adding this text.

document on August 27, 2011 by the "Jeffrey A. Lake" user had the effect of overwriting the name of the prior author and the date and time the document was last saved.

20. In sum, the August 29 Production is incomplete and deficient because: (a) none of the files' full file system metadata was produced; and (b) some of the files' embedded metadata appears to have been altered or updated. This metadata is an integral part of a production and should have been included intact and without alteration.

### The Files Obtained from Aginsky Forensic Contain No Authorship Metadata

21. I understand that Mr. Ceglia claims that two of the files produced on August 29, 2011 were scans of the contract created by a firm he retained, Aginsky Forensic. I have reviewed the two files and determined that they do not contain any embedded metadata that reflects who created them.

22. Specifically, I understand that Mr. Ceglia claims that the files "WorkForHireContract_page1.psd" and "WorkForHireContract_page2.psd," which were located in a folder named "Aginsky" in the August 29 Production, originated as scans created by Aginsky Forensic during in its inspection of the purported "Work for Hire" contract.

23. PSD files are Photoshop document files that can be created, modified, or viewed using Adobe Photoshop or other image manipulation programs. PSD files contain limited embedded metadata information, such as the date and time they were created, the date and time they were last modified, and the program used to create them.

24. The PSD files produced by Mr. Ceglia on August 29, 2011 do not contain embedded metadata indicating who created the documents. Therefore, there is no information in the PSD files themselves to support the claim that they were created by Aginsky Forensic.

### Undisclosed Media

25. During its analysis of the Ceglia media, Stroz Friedberg identified an additional removable USB storage device that was not produced for inspection.

26. Specifically, Stroz Friedberg identified a Seagate FreeAgent GoFlex USB device with internal identifier "NA056T98&0" that appears to have been connected to the Toshiba Satellite L305-S5968 laptop computer, serial number 69500395Q, and that was used on Mr. Ceglia's computers as recently as April 4, 2011.

27. Mr. Ceglia has not produced the Seagate FreeAgent GoFlex USB storage device and he did not identify this device in his August 29, 2011 declaration.

### Adelphia.net Email Account

28. On September 28, 2011, Nathan Shaman of Jeffrey A. Lake, A.P.C. provided Stroz Friedberg with consent forms, dated September 11, 2011, indicating Paul Ceglia's consent to the preservation of his Gmail and MSN Hotmail accounts. Those were the only two email accounts for which consent forms have been provided to Stroz Friedberg.

29. The contract between Mr. Ceglia and Mr. Zuckerberg, which Stroz Friedberg identified as attachments to the two March 3, 2004 emails from Mr. Ceglia to Mr. Kole, were sent using the following email account: ceglia@adelphia.net.

30. I understand that this Court's order requires Mr. Ceglia to consent to the acquisition and inspection of the adelphia.net email account as well.

31. To my knowledge, Mr. Ceglia has not provided his consent for the acquisition and inspection of the contents of the adelphia.net email account.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 12th day of October, 2011 at New York, New York.

Michael F. McGowan