UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
PAUL D. CEGLIA,

        Plaintiff,

   v.

MARK ELLIOT ZUCKERBERG and
FACEBOOK, INC.,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No. 1:10-cv-00569-RJA

## DEFENDANTS' RESPONSE IN SUPPORT OF SANCTIONS

Thomas H. Dupree, Jr.
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
(202) 955-8500

Orin Snyder
Alexander H. Southwell
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193
(212) 351-4000

Terrance P. Flynn
HARRIS BEACH PLLC
726 Exchange Street
Suite 1000
Buffalo, NY 14210
(716) 200-5120

October 14, 2011

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ....................................................................................................................... 6

    I.      Ceglia's "Privacy" Argument Is Baseless .............................................................. 6

    II.     Ceglia's Attorneys Should Be Sanctioned. ........................................................... 8

CONCLUSION .................................................................................................................. 10

**DEFENDANTS' RESPONSE IN SUPPORT OF SANCTIONS**

On September 28, 2011, this Court ordered Plaintiff Paul Ceglia to show cause why sanctions should not be imposed for his "failure to fully and promptly" comply with the Court's August 18 discovery order. Doc. No. 152. Ceglia responded on October 7, Doc. No. 153, and Defendants Mark Elliot Zuckerberg and Facebook, Inc. respectfully submit this memorandum in response.

**INTRODUCTION**

In a set of extraordinary declarations, Ceglia's lawyers Jeffrey A. Lake and Nathan A. Shaman have accused their client of instructing them to defy the orders of this Court. According to Lake, when he informed Ceglia of this Court's August 18 order directing Ceglia to consent to the webmail search, "<u>Mr. Ceglia instructed me not to comply</u> . . . ." Lake Decl., ¶ 2 (emphasis added). Likewise, when Shaman informed Ceglia that Judge Arcara had denied a stay and that Ceglia was obligated to produce the required consent, "Mr. Ceglia <u>continued to refuse to comply</u> with the August 18 Order." Shaman Decl., ¶ 3 (emphasis added).

These admissions — made publicly and under oath by Ceglia's own lawyers — confirm the need for severe sanctions. Ceglia's case is crumbling around him: the authentic contract has been discovered on his computer, and the purported contract attached to his First Amended Complaint has been exposed as an amateurish forgery. Ceglia himself has fled to Ireland, where from his apparent hideout he is now directing his lawyers to defy orders of a federal court.

Ceglia does not even attempt to argue that his conduct was "substantially justified" for purposes of Rule 37 sanctions. Nor could he: As his lawyers have now admitted, there was no valid legal basis for his refusal to comply with the Court's August 18 order. Ceglia argues that imposing sanctions would nonetheless be "unjust" because Defendants purportedly disclosed

1

"private" information concerning his email accounts and passwords. *See* Ceglia Br. 1-2. But the protective order governing this case expressly gave Ceglia the right to designate as "confidential" any "private" or "sensitive" information he produced in discovery, *see* Doc. No. 86 — and Ceglia chose <u>not</u> to designate the consent forms as "confidential." Nor, for that matter, is there any relation between the alleged "disclosure" and Ceglia's decision to defy the court order. As his attorneys state in their declarations, they did not comply with the August 18 order simply because their client told them not to do so — their admitted violation of this Court's orders had nothing whatsoever to do with the purported "disclosure" of private information.

In light of Ceglia's brazen defiance of court orders — and the serious charges leveled against him by his own attorneys — this Court may wish to order Ceglia to personally appear at the show-cause hearing and provide direct answers to the many remaining questions concerning his conduct in this litigation.

## BACKGROUND

In its July 1 order granting expedited discovery, this Court directed Ceglia to produce certain emails, and to make all computers and electronic media in his possession available for inspection by Stroz Friedberg, the nationally-renowned digital forensic consulting firm. Doc. No. 83. Ceglia never objected to this order and did not file objections or seek further review.

Ceglia produced some items in response. But, among other failings, he claimed he did not have any relevant emails. This claim was promptly exposed as false when his computers were examined and Defendants found the authentic contract between Ceglia and Mark Zuckerberg attached to emails that Ceglia claimed not to have possessed.

Defendants moved to compel Ceglia's full compliance with the July 1 order. In light of Ceglia's attempt to conceal highly relevant (indeed, dispositive) emails that he had been directed

2

to produce, Defendants asked the Court to enforce its order by directing Ceglia to consent to the inspection of his webmail accounts by Stroz Friedberg pursuant to the Electronic Assets Inspection Protocol. Ceglia did not make a timely objection to Defendants' request. *See* Doc. No. 110 at 5.

The Court granted Defendants' request. In its August 18 Order compelling Ceglia's compliance with the July 1 Order, the Court stated as follows:

> Plaintiff shall also identify all email accounts accessible through web-based interfaces that Plaintiff has used since 2003, including but not limited to his gmail.com, msn.com, tmail.com, and adelphia.net accounts. Plaintiff shall consent to the acquisition and inspection by Stroz Friedberg of the contents of all such accounts. On or before August 29, 2011, Plaintiff shall provide such consent on a form or forms to be provided by Stroz Friedberg. Plaintiff shall at the same time provide to Stroz Friedberg a password for, and facilitate access by Stroz Friedberg to, each identified account. The production and inspection of the contents of all such accounts shall be conducted pursuant to the Electronic Asset Inspection Protocol.

Doc. No. 117, ¶ 5. Ceglia moved to stay the order. The Court denied the request. *See* Doc. No. 116.

Ceglia's lawyer, Jeffrey Lake, informed Ceglia of the Court's ruling later that very day. *See* Lake Decl., ¶ 2 ("On August 18, 2011 I informed Mr. Ceglia that the Court had ordered him to produce, among other things, accounts and passwords for all email accounts he had used since 2003."). Ceglia, however, directed Lake to disobey the Court's order. *See id*. ("Mr. Ceglia instructed me not to comply . . . .").

The next day, Ceglia asked Judge Arcara to grant a stay. *See* Doc. No. 118. Judge Arcara issued an order stating:

3

> The desire to file objections to a magistrate judge's order does not, by itself, warrant a stay of that order. *See Am. Rock Salt Co., LLC v. Norfolk S. Corp.*, 371 F. Supp. 2d 358, 360-61 (W.D.N.Y. 2005). Accordingly, plaintiff is directed to file supplemental briefing setting forth the basis for a stay. *See* Fed. R. Civ. 26(c); *Ellington Credit Fund, Ltd. v. Select Portfolio Servs., Inc.*, No. 08 Civ. 2437, 2009 WL 274483 (S.D.N.Y. Feb. 3, 2009). <u>Magistrate Judge Foschio's Order of 8/18/2011 (Dkt. No. 117) remains in full force at this time</u>.

Doc. No. 119 (emphasis added).

Ceglia then moved for a stay, Doc. No. 120, which Judge Arcara promptly denied. Doc. No. 125. Judge Arcara emphasized that this Court had set the response deadline of August 29 "[i]n accordance with plaintiff's wishes," yet "[d]espite the agreement that he reached with Magistrate Judge Foschio about the time for production, plaintiff filed a motion to stay the August 18, 2011 Order just one day after that order issued." *Id*. at 3. Judge Arcara also stated that "the August 18, 2011 Order is merely a reiteration or an enforcement of the July 1, 2011 Order, an order to which plaintiff never objected." *Id*. at 4. Because the August 18 Order resolved a Rule 37 motion seeking to compel compliance with a prior order, "the underlying substance of the production requirement under that order is not at issue." *Id*.

On August 26 — the same day that Judge Arcara denied the stay — Lake "informed Mr. Ceglia of his continuing obligation to comply with the Court's August 18, 2011 Order by producing the information concerning his email accounts by August 29, 2011." Lake Decl., ¶ 3 (citation omitted). Shaman made the identical point to Ceglia the same day, but it did not change his client's lawless approach. *See* Shaman Decl., ¶ 3 ("I informed Mr. Ceglia that the stay was denied and that he was still obligated to provide us the information concerning his email

4

accounts by August 29, 2011.  <u>Mr. Ceglia continued to refuse to comply with the August 18 Order.</u>") (emphasis added).

The next day, Lake "again informed Mr. Ceglia of his continuing duty regarding his email accounts."  Lake Decl., ¶ 4.  But instead of complying, Ceglia directed Lake "to provide his email account information on <u>modified versions</u> of the consent form provided by Stroz Friedberg."  *Id*. (emphasis added).  As Lake admits, "[t]he consent form was rewritten to condition consent on resolution of the forthcoming objections to Magistrate Judge Foschio's August 18 Order."  *Id*. (emphasis added); *see also* Shaman Decl., ¶ 4 (admitting that he "provided . . . the consent forms <u>with modifications</u>" to Stroz Friedberg) (emphasis added).

At the same time he was violating the Court's order by submitting "rewritten" consent forms, Ceglia moved <u>yet again</u> for a stay of the August 18 Order, making the same frivolous arguments the Court had rejected just days before.  Doc. No. 126.  Ceglia asked (again) for a stay "pending resolution of Plaintiff's forthcoming objections to that Order."  *Id*. at 4-5.

Judge Arcara summarily denied Ceglia's third motion for a stay before Defendants even filed a response.  Doc. No. 127.  Defendants then wrote to Ceglia's counsel asking that he withdraw the condition on his consent to the email search — Judge Arcara's resolution of his forthcoming objections — and comply with the Court's Order.  *See* Doc. No. 130 (Southwell Decl.), ¶ 5.  Neither Ceglia nor his attorneys responded to the letter, leaving Defendants no choice but to file a motion to compel.

On September 16, Judge Arcara denied Ceglia's objections to this Court's August 18 order.  Doc. No. 145.  Yet Ceglia <u>still</u> did not comply with the order and did not even respond to his attorneys' efforts to contact him.  *See* Shaman Decl., ¶ 11 (stating that he "receiv[ed] no response from Mr. Ceglia" when he attempted to notify him of Judge Arcara's ruling).  Ten days

5

later, on September 26, Ceglia filed a brief claiming that he had mailed signed versions of the consent forms to his attorneys and they were making their way to the United States. Doc. No. 148.

This Court granted Defendants' motion to compel and directed Ceglia to provide the specified consent forms immediately. Doc. No. 152. But when the consent forms finally arrived — <u>one month</u> after the August 29 deadline had passed — it turned out that Ceglia <u>still</u> had not fully complied with the August 18 Order. To this day, he has refused to provide a consent form for the Adelphia.net email account that he used in 2004 to transmit the authentic contract. The August 18 Order specifically directs him to consent to a search of this account. *See* Defendants' Third Motion to Compel, Doc. No. 155 at 5-6; August 18 Order at ¶ 5.

**ARGUMENT**

Ceglia's attorneys argue that a fee award would be unjust because Defendants purportedly disclosed "private" information. Ceglia Br. 1-2. They further argue that it is their client — not the lawyers — who should be sanctioned, because Ceglia instructed them not to comply with this Court's orders. *Id*. at 2-3. Neither argument has merit.

**I.     Ceglia's "Privacy" Argument Is Baseless.**

Ceglia claims that Defendants acted improperly by attaching his "rewritten" consent forms to their motion to compel, and that this should excuse Ceglia's defiance of court orders and insulate him and his lawyers from sanctions. This bizarre and unfounded argument fails for at least two reasons.

First and foremost, Defendants did nothing wrong. The joint protective order governing this case gave Ceglia the right to designate as "Confidential" any document he produced to Defendants. *See* Doc. No. 86 at ¶ 3 ("The designating party may designate documents, materials,

6

or information as 'CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER' if the party believes in good faith that the documents, materials, or information contain confidential . . . private, or sensitive information . . . ."). Ceglia was obviously well aware of this provision, as he designated all 120 documents he initially produced to Defendants as "Confidential." Many of these confidentiality designations were frivolous and abusive, and were promptly overruled by this Court. Doc. No. 107. But there can be no dispute that Ceglia and his lawyers were all very familiar with his right under the protective order to mark documents containing private information as "Confidential" and shield them from public view.

Yet when Ceglia produced the consent forms to Defendants, he did not designate them as "Confidential." Accordingly, Defendants were under no duty to file them under seal; Ceglia cannot fault Defendants for "disclosing" information that he chose not to identify as private. *See* Joint Stipulated Protective Order, Doc. No. 86 at ¶ 9 (parties "shall have no liability, under this Order or otherwise" for disclosing information as to which the producing party asserts a belated claim of confidentiality). Although Ceglia asserts that Defendants violated "this Court's orders, and applicable state and federal law" by attaching the consent forms as exhibits to their motion to compel, he never actually identifies any court order, or any law, that Defendants purportedly violated. In fact, Defendants even went the extra mile — and demonstrated their good faith — by immediately alerting Ceglia's lawyers to the filing to ensure they were aware of it. *See* Declaration of Terrance P. Flynn (Doc. No. 138); Declaration of Alexander H. Southwell (Doc. No. 139). To the extent Ceglia claims the filing violated his "privacy," he has only himself and his own lawyers to blame for failing to designate the forms as "Confidential" — as he had every right to do. *See Agan v. Katzman & Korr, P.A.*, 328 F. Supp. 2d 1363, 1373 (S.D. Fla. 2004) ("this claimed prejudice" from the public disclosure of allegedly private documents "is self-

7

created" because the lawyers "were not very careful in producing" the documents, which "were not marked confidential [and] not marked as privileged in any way").

Second, there is absolutely no connection between Ceglia's decision to disobey this Court's orders and the alleged privacy violation. His lawyers' declarations make this abundantly clear. According to Lake, Ceglia first instructed him not to comply with this Court's order on August 18. Lake Decl., ¶ 2. Then, on August 26, both Lake and Shaman "informed Mr. Ceglia of his continuing obligation to comply," Lake Decl., ¶ 3, but "Mr. Ceglia continued to refuse to comply." Shaman Decl., ¶ 3. On August 28, Ceglia directed Shaman to file the "rewritten" (*i.e.*, noncompliant) consent forms. *Id.*, ¶ 4.

Thus, by the time Defendants filed their motion to compel on September 1 — the motion to which the consent forms were attached — Ceglia had already embarked on his campaign of obstruction and had repeatedly directed his lawyers to disobey the August 18 order. There is simply no connection between Ceglia's contumacious misconduct and Defendants' subsequent filing of the consent forms. If Ceglia wishes to file a frivolous motion *in limine* in an effort to remedy the purported privacy breach — as he says he intends to do, *see* Ceglia Br. at 2 — that is his right, but there is absolutely no basis for excusing his brazen defiance of the law on this ground.

**II.     Ceglia's Attorneys Should Be Sanctioned.**

In attempting to defend their own conduct, Ceglia's lawyers effectively acknowledge that their client deserves a severe sanction when they accuse him of instructing them to disobey the orders of this Court. But in their haste to pin the blame on their client, Ceglia's lawyers ignore their duties as officers of the court. Attorneys have an ethical duty to resist a client's entreaties to break the law — and if they fail to persuade their client to change direction, their proper

course is to withdraw, not to <u>assist</u> their client's obstruction by stonewalling discovery and filing frivolous and misleading motions.

Numerous courts have rejected the very argument that Ceglia's lawyers advance here — that they were just following orders. *See, e.g.*, *Devaney v. Continental American Ins. Co.*, 989 F.2d 1154, 1162 (11th Cir. 1993) ("[W]hen an attorney advises a client in discovery matters, he assumes a responsibility for the professional disposition of that portion of a lawsuit and may be held accountable for positions taken or responses filed during that process. Sanctions exist, in part, to remind attorneys that service to their clients must coexist with their responsibilities toward the court, toward the law and toward their brethren at the bar."); *Thompson v. Fajerstein*, 2010 WL 4628515, at *5-6 (N.D. Ill. Nov. 8, 2010) (imposing monetary sanctions against counsel under Rule 37, and explaining that "even if [the clients] requested that their attorneys not fully respond to discovery, attorneys have an obligation to the Court and other attorneys" and may be sanctioned for taking "unjustifiable positions in discovery" even when the client has directed them to do so).

Finally, the decision by Ceglia's lawyers to turn on their client and publicly accuse him of wrongdoing by disclosing their confidential communications with him — as part of an effort to protect themselves and shift the blame to their client — raises serious questions as to whether they have violated their professional duties and may continue to represent Ceglia in this matter. *See* N.Y. Rule of Professional Conduct 1.6 ("A lawyer shall not knowingly reveal confidential information, as defined in this Rule, or use such information to the disadvantage of a client or for the advantage of the lawyer or a third person."); N.Y. Rule of Professional Conduct 1.7 ("[A] lawyer shall not represent a client if a reasonable lawyer would conclude that . . . there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely

affected by the lawyer's own financial, business, property or other personal interests."); N.Y. Rule of Professional Conduct 1.8(b), cmt ("A lawyer's use of information relating to the representation to the disadvantage of the client violates the lawyer's duty of loyalty.").

## CONCLUSION

For the foregoing reasons, this Court should grant Defendants' request for sanctions and award Defendants their reasonable attorneys' fees and costs they incurred in litigating the motion to compel. Defendants are prepared to submit an affidavit of fees and expenses within 20 days of the Court's order or by such other time as the Court may direct.

Dated:     New York, New York
           October 14, 2011

                                        Respectfully submitted,

                                        /s/ Orin Snyder
Thomas H. Dupree, Jr.                   Orin Snyder
GIBSON, DUNN & CRUTCHER LLP             Alexander H. Southwell
1050 Connecticut Avenue, NW             Matthew J. Benjamin
Washington, DC 20036                    Amanda M. Aycock
(202) 955-8500                          GIBSON, DUNN & CRUTCHER LLP
                                        200 Park Avenue, 47th Floor
                                        New York, NY 10166-0193
Terrance P. Flynn                       (212) 351-4000
HARRIS BEACH PLLC
726 Exchange Street
Suite 1000
Buffalo, NY 14210
(716) 200-5120

*Attorneys for Defendants Mark Zuckerberg and Facebook, Inc.*