UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PAUL D. CEGLIA,

              Plaintiff,

     v.

MARK ELLIOT ZUCKERBERG and
FACEBOOK, INC.,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No. 1:10-cv-00569-RJA

## DEFENDANTS' OPPOSITION TO CEGLIA'S MEMORANDUM REGARDING AUTHORITY FOR PRIVILEGE CLAIMS AS TO TWO DOCUMENTS

Thomas H. Dupree, Jr.
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
(202) 955-8500

Terrance P. Flynn
HARRIS BEACH PLLC
726 Exchange Street
Suite 1000
Buffalo, NY 14210
(716) 200-5120

Orin Snyder
Alexander H. Southwell
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193
(212) 351-4000

October 27, 2011

**DEFENDANTS' OPPOSITION TO CEGLIA'S MEMORANDUM REGARDING
AUTHORITY FOR PRIVILEGE CLAIMS AS TO TWO DOCUMENTS**

Yesterday, Paul Ceglia filed a memorandum attempting to justify his assertion that two

documents submitted to this Court for *in camera* review are protected by the attorney-client

privilege.  *See* Doc. No. 177.  Ceglia's attempt—unsupported by any competent evidence, let

alone a declaration from Ceglia—falls demonstrably short.  These documents are not privileged.

This Court should order Ceglia to immediately produce both documents to Defendants.[1]

**I.      Legal Framework**

In this case, the Court has already correctly held that the attorney-client privilege

"requires that only confidential communications with an attorney for the purpose of seeking legal

advice or services are within its scope."  Doc. No. 107, at 2 (citing *United States v. Int'l Bhd. of

Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997)).  "The burden of establishing the existence of an

attorney-client privilege, in all of its elements, rests with the party asserting it."  *Teamsters*, 119

F.3d at 214; *see also Priest v. Hennessy*, 409 N.E.2d 983, 986 (N.Y. 1980) ("[T]he burden of

proving each element of the privilege rests upon the party asserting it.").

A client waives the attorney-client privilege by disclosing privileged documents to third

parties.  *See U.S. Postal Service v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 162

(E.D.N.Y. 1994) ("[T]he fact [that] the document is sent to a third party ordinarily removes the

cloak of confidentiality necessary for protection under the attorney-client privilege."); *see also

Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*, 252 F.R.D. 163, 168 (S.D.N.Y. 2008)

---

[1]      As this Court has already explained, New York's attorney-client privilege law applies in
this case, but "federal and New York caselaw construing N.Y.C.P.L.R. 4503 (New York's
statutory formulation of the privilege) are essentially similar," so "the court applies federal
caselaw in this circuit."  Doc. No. 107, at 2.  Defendants therefore cite both federal and New
York case law to support their contentions here.

("[D]isclosure of attorney-client communication to a third party or communications with an attorney in the presence of a third party, not an agent or employee of counsel, vitiates the confidentiality required for asserting the privilege.") (internal quotation marks omitted); *Bowne of N.Y. City, Inc. v. AmBase Corp.*, 161 F.R.D. 258, 264 (S.D.N.Y. 1995) ("The attorney-client privilege is waived if the communication is made in the presence of or later divulged to third parties unless the third parties are the attorney's employees or agents."). It is "the burden of the party asserting a privilege to establish that it has not been waived." *Allied Irish Banks*, 252 F.R.D. at 169. That showing—together with the necessary predicate showing that a document is in fact privileged—"must be based on competent evidence, usually through affidavits, deposition testimony or other admissible evidence." *Id.* "The burden cannot be met by 'mere conclusory or ipse dixit assertions' in unsworn motion papers authored by attorneys." *Id.* (quoting *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 147 (2d Cir. 1987)) (other internal quotation marks omitted).

As the cases cited above discuss, a narrow exception to the rule that disclosure constitutes waiver exists when the third party to whom the communication is disclosed is an agent of the attorney or the client. *See People v. Osorio*, 75 N.Y.2d 80, 84 (N.Y. 1989). But New York law imposes an important condition on such a third party: she must be "an agent of . . . [a] client *to facilitate communication*" with the attorney. *Id.* (emphasis added). Only then should courts look further to "whether the client had a reasonable expectation of confidentiality under the circumstances" in which privileged material was disclosed to the third-party agent. *Id.* Ceglia apparently agrees with this reading of the applicable case law. *See* Doc. No. 177, at 4 ("So, if an agent *is used to facilitate communication*, the parties had every expectation that any

communication between them and their counsel would remain confidential, and the

communications are therefore privileged.") (emphasis added; internal quotation marks omitted).

## II.     Ceglia Has Failed To Carry His Burden Of Establishing Privilege.

A straightforward application of those legal principles establishes that Ceglia has entirely

failed to justify his spurious claim of privilege with respect to either of the two files discussed in

his memorandum.  Both files should be produced to Defendants.

That is particularly so in light of Ceglia's demonstrated history of unsupported privilege

assertions, which are part of his general pattern of concealment and obfuscation.  As the Court

will recall, Ceglia first claimed privilege in an August 2nd privilege log over two emails dated

March 3, 2004, from Ceglia to James Kole, Esq.  Defendants challenged Ceglia's designation in

their First Motion to Compel, *see* Doc. No. 99, at 13–14, and the Court summarily rejected

Ceglia's claims of privilege in those emails, *see* Doc. No. 107.  We now know why Ceglia made

a bogus assertion of privilege over these emails to Mr. Kole: he wanted to conceal from

Defendants and the Court the authentic StreetFax contract attached to those 2004 emails that

exposes his entire case as an outright a fraud.

Ceglia later claimed privilege in various documents listed on two additional logs (dated

August 29th and October 11th); after Defendants challenged those designations in their Third

Motion to Compel, *see* Doc. No. 155, Ceglia abandoned his privilege claims for all documents

listed on those logs *except* for the two documents addressed in his memorandum.  This history of

prior unsupported privilege claims necessarily colors the continued improper privilege claims.

### A.     The File Named "Lawsuit Overview.PDF"

Ceglia has not provided "competent evidence," such as an affidavit "or other admissible

evidence," *Allied Irish Banks*, 252 F.R.D. at 169, to support any contention that pages one

through six and twenty-three through thirty of the file entitled "Lawsuit Overview.PDF" constitute a communication between him and a lawyer made for the purpose of obtaining or dispensing legal advice.  Indeed, Ceglia does not even offer so much as a "mere conclusory or ipse dixit assertion" in the unsworn motion papers submitted by his attorney that such was the purpose of the withheld pages in that file.  *Allied Irish Banks*, 252 F.R.D. at 169.  Nowhere does Ceglia state plainly that "Lawsuit Overview.PDF" was prepared for the purpose of soliciting legal advice, nor does he confirm that it was not shared with any third parties.  Of course, a document that is not otherwise privileged does not become privileged merely because it is shared with a lawyer.  In any event, Ceglia leaves the Court to guess at the purpose for which this document was created, the manner in which it was communicated, and all of the parties with whom it was shared.

Ceglia's utter failure to so establish "all of [the] elements" of the attorney-client privilege with respect to that file doom any claim that it should be deemed protected by the privilege. *Teamsters*, 119 F.3d at 214.

### B.    The File Named "DSC01008.JPG"

Ceglia's privilege claim is even more suspect with respect to the file named "DSC01008.JPG."  As described in Ceglia's revised privilege log, this file is a photo of a March 5, 2004 email sent by Ceglia to Jim Kole[2] that was then transmitted to Ceglia as an email attachment by Jessica Ceglia, whom Defendants understand to be Ceglia's college-age niece. *See* Doc. No. 179, Ex. B.  This file is not be privileged.

---

[2]    As the Court is aware, although Mr. Kole is an attorney, he was also an initial member of StreetFax LLC, and there is no indication that he was acting as an attorney for Ceglia. See Southwell Decl. (Doc. No. 97), ¶ 41.

First, if the file is in fact "an image of an email sent by Paul Ceglia to an attorney seeking legal advice," that necessarily means that an *existing* communication (or an "image" of it) was disclosed *after the fact* to Jessica Ceglia, who is not a lawyer.  Ceglia's memorandum does not state who disclosed the email to Jessica Ceglia, but the only potential disclosers are Ceglia and Kole—and Ceglia does not even attempt to blame the disclosure on the attorney.  Thus, it is almost certain that Ceglia himself disclosed the email to Jessica Ceglia.  That is precisely the type of third-party disclosure that "removes the cloak of confidentiality necessary for protection under the attorney-client privilege." *Phelps Dodge Refining Corp.*, 852 F. Supp. at 162.  That conclusion is indisputable here in light of Ceglia's failure to provide *any* "competent evidence" establishing that, as a result of his disclosing the email to Jessica Ceglia, the privilege "has not been waived." *Allied Irish Banks*, 252 F.R.D. at 169.

But Ceglia's privilege position fails for another fundamental reason.  Ceglia contends that the disclosure of his email to Jessica Ceglia did not waive any privilege over that document based on the line of precedent holding that disclosure to an agent does not waive the attorney-client privilege. *See* Doc. No. 177, at 3–4.  This line of precedent has no application here. Ceglia never once actually *claims* that Jessica was *his* agent.  Carefully worded, his memorandum claims only that "Mr. Ceglia had a reasonable expectation of privacy when requesting that ***an*** agent send to him attachments including those that contain confidential communication between himself and his attorney." *Id.* at 4 (emphasis added; other emphasis omitted).  In addition, Ceglia's memorandum actively *undermines* any plausible claim that Jessica Ceglia was his agent.  It states that "There is no evidence to suggest that Jessica Ceglia was authorized to send this document as an attachment in that email." Doc. No. 177, at 3.  Such unauthorized actions are by definition inconsistent with an agency relationship.  This Court

should refuse to hold that Jessica Ceglia was in fact Ceglia's agent when he has not even asserted that fact and when his actual assertions only disprove it.

Even assuming, however, that Ceglia actually intended to argue that Jessica Ceglia was his agent, the line of authority he invokes still provides no claim of privilege with respect to the Jessica Ceglia communication for a simple reason: Ceglia fails to contend—and cannot truthfully contend—that her agency was intended "to facilitate communication" with his attorney.  *Osorio*, 75 N.Y.2d at 84.  Cases applying the agent-disclosure exception to the waiver rule demonstrate why this critical pre-condition is required before courts will apply this exception.  In *Le Long v. Siebrecht*, 187 N.Y.S. 150 (N.Y. App. Div. 1921), the appellate court held that a letter to an attorney, written by the husband of a wife who was a defendant in a lawsuit, was not covered by the attorney-client privilege because the husband was not "the agent of his wife for the purpose of writing the letter."  *Id.* at 152.  "The mere fact that he was her husband is not sufficient, nor is the fact that he acted as her agent" with respect to another issue in the case.  *Id.*  "It must be shown that this letter was authorized by the then defendant in the action and was practically her communication to the attorney."  *Id.*  Similarly, the district court refused to find the existence of an agency relationship sufficient to sustain an assertion of privilege over documents prepared by a third party and given to a party's attorney in *Petition of Bloomfield Steamship Co.*, 42 F.R.D. 348 (S.D.N.Y. 1967).  The court faulted the party for failing to "attempt to reveal the nature of [the alleged agent's] 'agency.'  The only indication of his status is the [party's] characterization of him as a 'representative of the Underwriters,'" the insurance company assisting with the party's defense.  *Id.* at 350.  "This characterization is an insufficient basis for barring . . . access to [the alleged agent's] statements on the ground of attorney-client privilege."  *Id.*  In contrast, a court found that the daughter of a mother who had been in a traumatic accident was the mother's

agent, such that the daughter's presence during her mother's discussions with the mother's attorneys did not destroy the privilege, where the case required "an aged woman . . . to recall, and perhaps relive, what was probably the most traumatic experience of her life.  Her daughter selected the law firm to represent her, transported her to the law office, and put her sufficiently at ease to communicate effectively with counsel."  *Stroh v. Gen. Motors Corp.*, 623 N.Y.S. 873, 874 (N.Y. App. Div. 1995.

In this case, it is factually impossible for Jessica Ceglia to have "facilitate[d]" the email communication in the file named "DSC01008.JPG" in the way *Le Long*, *Petition of Bloomfield Steamship Co.*, and *Stroh* indicate is necessary to establish an agency relationship.  She transmitted *to Ceglia—not* to a lawyer—a *completed*, *existing* communication written by Ceglia.  Thus, to the extent Jessica Ceglia "facilitate[d]" any "communication," she merely transmitted Ceglia's own words back to him.  That simply cannot constitute "facilitat[ing] communication" between Ceglia and an attorney for purposes of seeking legal advice.  *Osorio*, 75 N.Y.2d at 84.  Ceglia fails to describe any other way in which Jessica Ceglia's actions were "practically" Ceglia's actions in communicating with an attorney, *Le Long*, 187 N.Y.S. at 152, or whether (or to what extent) she helped Ceglia "select[] the law firm to represent [him]" or "put [him] sufficiently at ease to communicate effectively with counsel," *Stroh*, 623 N.Y.S. at 874.  Instead, Ceglia merely "characterize[es]" Jessica Ceglia as his "agent" for transmitting his own *completed* communication to himself—an "insufficient basis" for accepting Ceglia's bald claim of an agency relationship sufficient to preserve any privilege.  *Petition of Bloomfield Steamship Co.*, 42 F.R.D. at 350.

Finally, even if this Court were inclined to accept Ceglia's unsupported characterization of Jessica Ceglia as his agent, his privilege claim remains insufficient and should be rejected

7

because he has not established the existence of such a relationship with any "competent evidence." *Allied Irish Banks*, 252 F.R.D. at 169.  As noted above, Ceglia himself concedes this lack of evidence.  *See* Doc. No. 177, at 3 ("There is no evidence to suggest that Jessica Ceglia was authorized to send this document as an attachment in that email.").  His admission fatally undermines his effort to establish an agency relationship under settled case law, which confirms the necessity of competent evidence in that calculus.  *See, e.g.*, *Le Long*, 187 N.Y.S. at 76–77 (rejecting a claim of privilege where the fact of an agency relationship was "not established by the evidence"); *Petition of Bloomfield Ship Co.*, 42 F.R.D. at 350 (rejecting a claim of privilege where the party asserting the existence of an agency relationship never "attempt[ed] to reveal the nature of [the alleged agent's] 'agency'" in its "affidavit").  Ceglia's failure to introduce any evidence leaves his claims resting on "'mere conclusory or ipse dixit assertions' in unsworn motion papers authored by attorneys," some of which actually *undermine* his claim.  *Allied Irish Banks*, 252 F.R.D. at 169 (quoting *von Bulow*, 811 F.2d at 147).  That is no basis for a finding that Ceglia has carried his burden of establishing an agency relationship with Jessica Ceglia.[3]

---

[3]     In the event the Court holds that the file named "DSC01008.JPG" is privileged as Ceglia contends, it should nevertheless order disclosure of the identity and email addresses of the sender and the recipient, along with the date and time the email was sent.  Such details are foundational information that is not subject to the attorney-client privilege. *See Church of Scientology v. Cooper*, 90 F.R.D. 442, 443 (S.D.N.Y. 1981) (citing *Colton v. United States*, 306 F.2d 633, 637 (2d Cir. 1962)).

**CONCLUSION**

Ceglia has failed to carry his burden of establishing that the files "Lawsuit

Overview.PDF" and "DSC01008.JPG" are covered by the attorney-client privilege.  This Court

should order Ceglia to immediately disclose these files to Defendants.

Dated:        New York, New York
              October 27, 2011

                                        Respectfully submitted,

                                        /s/ Orin Snyder
Thomas H. Dupree, Jr.                   Orin Snyder
GIBSON, DUNN & CRUTCHER LLP             Alexander H. Southwell
1050 Connecticut Avenue, NW             Matthew J. Benjamin
Washington, DC 20036                    Amanda M. Aycock
(202) 955-8500                          GIBSON, DUNN & CRUTCHER LLP
                                        200 Park Avenue, 47th Floor
                                        New York, NY 10166-0193
Terrance P. Flynn                       (212) 351-4000
HARRIS BEACH PLLC
726 Exchange Street
Suite 1000
Buffalo, NY 14210
(716) 200-5120

*Attorneys for Defendants Mark Zuckerberg and Facebook, Inc.*