UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PAUL D. CEGLIA,

                    Plaintiff,

        v.

MARK ELLIOT ZUCKERBERG and
FACEBOOK, INC.,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No. 1:10-cv-00569-RJA

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR THIRD MOTION TO COMPEL AND FOR OTHER RELIEF

Thomas H. Dupree, Jr.
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
(202) 955-8500

Terrance P. Flynn
HARRIS BEACH PLLC
726 Exchange Street
Suite 1000
Buffalo, NY 14210
(716) 200-5120

Orin Snyder
Alexander H. Southwell
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193
(212) 351-4000

October 31, 2011

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

1.   Ceglia Should Be Directed To Personally Appear And Explain What
     Happened To All The Evidence That Has Gone Missing...................................... 3

2.   Ceglia Should Be Directed To Provide Access To The Adelphia Email
     Account He Used To Send The Authentic Contract. .............................................. 6

3.   Because Ceglia Has Failed To Produce Documents In The Possession Of
     His Experts Valery Aginsky And John Paul Osborn, This Court Should
     Permit Defendants To Obtain Limited Discovery From The Experts
     Directly. ................................................................................................................ 7

4.   Ceglia Should Be Directed To Produce All Electronic Files  In Their
     Native Format. ...................................................................................................... 8

5.   This Court Should Overrule Ceglia's Improper Privilege Designations. ............... 9

6.   This Court Should Compel Ceglia To Consent To Inspection Of His
     Webmail Account Information, And Authorize Defendants To Issue
     Subpoenas If Necessary. ....................................................................................... 9

CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Butkus v. City of Chicago*,
  1999 WL 439001  (N.D. Ill. June 21, 1999) ............................................................ 2

*Integrated Control Sys., Inc. v. Ellcon-Nat'l, Inc.*,
  2003 WL 23508132 (D. Conn. Aug. 17, 2003) ...................................................... 2

## Other Authorities

Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, 8B FED. PRAC. & PROC.
  CIV. § 2219 ............................................................................................................... 8

*Facebook Claimant Paul Ceglia Gets New Lawyer*, L.A. Times, Oct. 21, 2011 .......................... 6

## REPLY MEMORANDUM

Defendants Mark Zuckerberg and Facebook, Inc. respectfully submit this reply

memorandum in support of their third motion to compel compliance with this Court's discovery

orders and for other relief.

## INTRODUCTION

Ceglia and his latest lawyer have adopted a new tactic in hopes of deflecting attention

away from their fraudulent lawsuit and avoiding dismissal and sanctions.  After four months of

obstruction, Ceglia now claims that he is finally prepared to cooperate with discovery and

comply with court orders — but only after he destroyed and tampered with critical evidence and

filed false declarations.

This purported change of heart is far too little, too late.  It is too little because Ceglia

continues to frustrate the expedited discovery ordered by this Court and still has not complied

with key aspects of this Court's discovery orders.  Indeed, the flippant and disdainful approach

Ceglia's new lawyer has taken in his communications with Defendants' counsel, *see* Exhibit A,

demonstrates that Ceglia and his attorney are not acting cooperatively and in good faith, and

underscores how little respect they have for these proceedings.

Ceglia's purported change of heart is also too late because it is more apparent now than

ever that Ceglia is perpetrating a massive fraud on the court — and has compounded his

wrongdoing by destroying and tampering with crucial evidence, filing false declarations under

oath, and instructing his lawyers to defy this Court's orders.  Ceglia is offering to cooperate now

— at this late date — only because he has run out of options:  the purported contract and emails

have been exposed as fabrications; he has been caught red-handed violating court orders and

disposing of the crucial USB drives containing the contract at issue in this case; six law firms

have dropped him as a client; and he now faces sanctions.  No amount of belated "cooperation"

1

can change these facts or insulate Ceglia — and the lawyers and others who have assisted him in

his corrupt scheme — from liability for their wrongful conduct.  *See, e.g.*, *Integrated Control*

*Sys., Inc. v. Ellcon-Nat'l, Inc.*, 2003 WL 23508132, at *2 (D. Conn. Aug. 17, 2003) ("Plaintiff's

argument as to subsequent compliance does not cure earlier non-compliance . . . ."); *Butkus v.*

*City of Chicago*, 1999 WL 439001, at *6-7  (N.D. Ill. June 21, 1999) (party's "eleventh-hour

declaration" of intent to cooperate with discovery "does not suffice to cure her prior

misconduct").

        In fact, <u>new</u> evidence of Ceglia's fraud has recently come to light as a result of the

expedited discovery ordered by this Court.  Defendants recently obtained several high-resolution

images of the purported contract taken by Ceglia's experts in January 2011.  These images differ

dramatically from the images taken in July 2011, when Ceglia finally made the purported

contract available for inspection by Defendants under court order.  In the January images, the ink

is fresh and dark.  But in the July images, the ink is faded and the document as a whole has a

strikingly different color and an "aged," or baked, appearance.  The dramatic difference is

definitive proof that sometime between January and July of this year, Ceglia — or those working

in concert with him — tampered with the purported contract by attempting to age it through an

artificial process.

        Once Ceglia has fully complied with this Court's orders, and Defendants have reviewed

the documents produced in expedited discovery, Defendants will ask this Court to bring Ceglia's

charade to an end and dismiss this fraudulent lawsuit in its entirety.

## ARGUMENT

        Defendants' third motion to compel was necessitated by Ceglia's continued stonewalling

and obstruction.  In response, Ceglia has filed a surreal brief that reproduces illustrations from a

*60 Minutes* broadcast, Opp. at 3-4, and at times simply abandons any attempt at reasoned legal argument.  *See, e.g.*, Opp. at 3 ("Diversion is the strategy of triviality perfectly designed to build tigers out of paper.").  Ceglia's brief also advances the fantastical claim that the authentic contact discovered on Ceglia's own computer by Stroz Friedberg is an "unauthenticated digital image" that Defendants conspired to plant on Ceglia's hard drive.  The truth is that Ceglia himself produced, from his own computer, the document that has exposed his case to be an outright fraud.  And when it surfaced, Ceglia did not claim that it was a "planted" document.  Quite the contrary, he asserted that it was a genuine privileged communication between himself and his attorney.  Only when this Court rejected Ceglia's frivolous privilege and confidentiality claims and the contract was made public did Ceglia abruptly switch gears and conjure up his comical conspiracy theory.  To call his claim rank speculation would dignify it.  The server at the international law firm of Sidley Austin also contains a copy of the authentic contract and Ceglia's email from 2004 transmitting it, proving beyond all dispute that Defendants did not "hack" into Ceglia's computer and "plant" the document.  It is nothing short of delusional to suggest that Defendants are fabricating documents and placing them on servers at Sidley Austin.  No reasonable lawyer would have signed Ceglia's brief.

Defendants move this Court to compel Ceglia's compliance with its prior discovery orders in six key respects.

**1.     Ceglia Should Be Directed To Personally Appear And Explain What Happened To All The Evidence That Has Gone Missing.**

This Court ordered Ceglia to explain in detail the circumstances surrounding his loss or destruction of highly relevant evidence.  *See* August 18 Order at ¶ 2 ("For each item identified in categories (A)-(G) that is no longer in Plaintiff's possession, custody, or control, Plaintiff shall describe in detail his good-faith efforts to conduct a diligent search for that item.  For each item

3

identified in categories (A)-(G) that is no longer in Plaintiff's possession, custody, or control,

Plaintiff shall provide a detailed account of the non-existence, loss, or destruction of each such

item, including the approximate date on which each item was lost, destroyed, or otherwise

disposed of.").

The Court initially ordered Ceglia to identify and produce all electronic media in his

possession containing relevant documents.  Doc. No. 83.  Ceglia responded by submitting a false

declaration that mentioned only a single USB electronic storage device.  Doc. No. 88.  When

Stroz Friedberg conducted its forensic examination of Ceglia's computers and uncovered proof

that Ceglia had been using multiple USB electronic storage devices — but was concealing their

existence — Defendants moved to compel their production.  Doc. No. 99.  Caught red-handed,

Ceglia claimed that some of the devices — including one that contained critical files entitled

"Zuckerberg Contract page1.tif" and "page2.tif" and a folder entitled "Facebook Files" — had

mysteriously "disappeared."  *See* Southwell Unredacted August 4 Decl. at ¶ 42(B) (discussing

contents of missing devices).

Given that Ceglia had used some of the devices, including the one containing

"Zuckerberg Contract page1.tif" and "page2.tif" and a folder entitled "Facebook Files," during

the pendency of this lawsuit, his claim that they had inadvertently been lost was a transparent lie.

Ceglia then compounded his misconduct by filing a false supplemental declaration on August 29,

2011 — a document intended to replace his false initial declaration — in which he purported to

identify all the USB devices he had used.  But Stroz Friedberg quickly discovered that Ceglia

was concealing yet another device — a Seagate FreeAgent GoFlex USB — that he had recently

been using.  *See* Michael F. McGowan October 14 Decl. at ¶¶ 25-27.  In his most recent sworn

declaration, Ceglia now claims that this device, like the others, has gone missing.

In light of Ceglia's willful destruction of highly relevant evidence, and his repeated false statements under oath, this Court was properly skeptical of Ceglia's claim that he had inadvertently misplaced critical evidence soon after being ordered to produce it.  *See* August 17, 2011 Oral Argument Transcript at 80-83, 88-91.  Accordingly, the Court directed Ceglia to provide a detailed explanation of his search efforts for each item, and to identify the circumstances surrounding the disappearance of each item, including the date on which each item disappeared.

Ceglia has simply refused to comply with this clear directive of the order. He thumbed his nose at the Court by refusing to provide an individual description of each lost item or a "detailed account" of the circumstances surrounding the disappearance of each item.  Instead, he offered the same lame, one-sentence non-response for each and every item:  "After a diligent search and a reasonable inquiry, I have not been able to locate any responsive items in my possession, custody, or control."  *See* Ceglia August 29 Decl. at ¶¶ 130, 137, 144, 146, 149, 151, 183.  Nor does his latest declaration provide any requisite detail.  *See, e.g.*, Ceglia October 24 Decl. at ¶ 7j ("I have no information to provide about that device.").

Ceglia should be directed to personally appear and explain the absence of the USB devices, the forms he claims to have used to create the alleged contract, and the efforts he purportedly made to locate these items.  Compelling Ceglia's personal appearance would enable this Court to enforce its order and put an immediate end to Ceglia's obstinate refusal to furnish the information this Court specifically directed him to provide months ago.  The evidence that Ceglia destroyed is critical to this case, its absence is extremely and irreparably prejudicial to Defendants, and Defendants and this Court have a right to know what happened to it.

Compelling Ceglia's appearance would also give him an opportunity to respond to the very serious charges leveled at him by his attorneys Jeffrey Lake and Nathan Shaman — that he expressly directed them to violate this Court's order. *See* Jeffrey A. Lake Decl. at ¶ 2 (Doc. No. 153-1) ("Mr. Ceglia instructed me not to comply with" the Court's August 18 Order); Nathan A. Shaman Decl. at ¶ 3 (Doc. No. 153-2) ("Mr. Ceglia continued to refuse to comply with the August 18 Order."). If Ceglia has an answer to these accusations, he would have an opportunity to provide it.

Although Ceglia has fled to Ireland, his new lawyer, Dean Boland, has publicly stated that Ceglia "would much prefer to be here fully engaged in this case." *See Facebook Claimant Paul Ceglia Gets New Lawyer*, L.A. Times, Oct. 21, 2011 (emphasis added). The Court should accept Boland's representation that Ceglia wishes to be present in this courtroom and compel his appearance.[1]

### 2. Ceglia Should Be Directed To Provide Access To The Adelphia Email Account He Used To Send The Authentic Contract.

This Court specifically directed Ceglia to provide access to the Adelphia email account — ceglia@adelphia.net — that he used to transmit the authentic contract to Jim Kole in 2004. *See* August 18 Order at ¶ 5; September 28 Order at ¶ 2. Ceglia does not deny that he used this account to send emails.

Ceglia states that he has "no objection to Defendants submitting a subpoena in an attempt to identify and obtain records about any Adelphia account Defendants believe is owned or was

---

[1]    If the Court declines to order Ceglia to appear, it should nonetheless order him to provide the requisite explanation for the missing evidence in response to limited targeted interrogatories issued by Defendants. But given Ceglia's continued defiance of this Court's orders, there is little reason to believe he would obey such a command.

owned by me."  Ceglia October 24 Decl. at ¶ 8h.  Because it is not clear which member of his

family is the listed owner of the Adelphia account that Ceglia used to transmit the authentic

contract, Defendants request permission to subpoena Adelphia to obtain ownership information

concerning the ceglia@adelphia.net account, and then to issue a subpoena to the named owner

(and to Adelphia if necessary) for records and content from the account.

### 3.    Because Ceglia Has Failed To Produce Documents In The Possession Of His Experts Valery Aginsky And John Paul Osborn, This Court Should Permit Defendants To Obtain Limited Discovery From The Experts Directly.

This Court ordered Ceglia to produce all images of the purported contract attached to his

complaint in the possession of his experts Valery Aginsky and John Paul Osborn.  *See* August 18

Order at ¶ 2(b).  This evidence is critical because it will further establish that Ceglia tampered

with the contract he claims is authentic after he filed this lawsuit, between the time he initially

provided it to his experts and the time he made it available for inspection by Defendants.  Indeed,

as noted above, the images Defendants have already obtained to date demonstrate that sometime

between January and June 2011, Ceglia subjected the purported contract to an artificial "baking"

process intended to create the appearance of an aged document.

Despite the clear language of this Court's order, Ceglia still has not produced all the

images in the possession of his experts.

**Aginsky**.  Ceglia consents to this Court authorizing Defendants issuing a subpoena to

Aginsky to obtain all images in his possession.  *See* Ceglia October 24 Decl. at ¶ 9e.

Accordingly, this Court should permit the subpoena.

**Osborn**.  Ceglia initially asserted under oath that Osborn had become "unavailable" and

could not produce the images.  *See* August 29 Ceglia Decl. at ¶ 37.  When Defendants challenged

that claim, Ceglia did an abrupt about-face and produced a collection of images that he said came

from Osborn's files.  But in an October 25 phone call, Ceglia's new lawyer, Dean Boland, stated

that he could not guarantee that Osborn had in fact produced all images in his possession. Southwell Decl. at ¶¶ 7-8.

In light of the inconsistent responses from Ceglia as to whether his experts have made complete productions — and Boland's statement that Osborn may not have produced all responsive documents — this Court should authorize Defendants to issue limited, targeted interrogatories to both experts.  These interrogatories would ask Aginsky and Osborn to confirm that they have in fact produced all images in their possession, and to provide additional information such as when and under what circumstances the images were taken.

4.       **Ceglia Should Be Directed To Produce All Electronic Files**
         **In Their Native Format.**

In granting Defendants' prior motion to compel, this Court ordered Ceglia to produce all electronic files in native format (August 18 Order at ¶ 3) — a format that is universally understood to include metadata.  *See* Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, 8B FED. PRAC. & PROC. CIV. § 2219 (3d ed. 2011) ("electronically stored information with metadata and embedded data intact may be said to be in 'native format.'").

Ceglia does not dispute that "native format" includes metadata.  Instead, he insists that because the Court's order did not use the word "metadata," he is not required to produce it.  *See* Ceglia October 24 Decl. at ¶ 11.  Ceglia's argument is akin to saying that because a court order directs production of a book, a party may redact every word within the book because the order did not say "produce the book <u>and all the words appearing in it</u>."  It is pure sophistry — fully consistent with the bad faith and gamesmanship that Ceglia and his lawyers have engaged in from the beginning.  Parties litigating in good faith <u>routinely</u> exchange files in native format without engaging in these sorts of semantic games.

8

Ceglia further pretends that the meaning of "metadata" is ambiguous and that the Court did not understand what it was ordering.  *See* Ceglia October 24 Decl. at ¶ 11.  This condescending suggestion should be summarily rejected as both mistaken and an untimely request for reconsideration.  The Court entered its order months ago.  Ceglia did <u>not</u> appeal the portion of the order concerning metadata, and his attempt to resurrect and relitigate the issue at this late date is improper and disrespectful to the judicial process.

### 5.   This Court Should Overrule Ceglia's Improper Privilege Designations.

Ceglia continues to assert frivolous privilege claims as to two documents:  one entitled "Lawsuit Overview.pdf," and the other an attachment to an email he received from nonlawyer Jessica Ceglia.  As Defendants have demonstrated in their memorandum addressing privilege claims, Doc. No. 181, Ceglia has failed to support his privilege claims with competent evidence demonstrating the existence of a privilege — and his legal arguments make little sense in any event.  This Court should overrule Ceglia's designations and direct that these two documents be produced immediately.

### 6.   This Court Should Compel Ceglia To Consent To Inspection Of His Webmail Account Information, And Authorize Defendants To Issue Subpoenas If Necessary.

Defendants moved for an order compelling Ceglia to consent to the inspection of his webmail account information, including account access logs, usage logs and registration records, as well as any preserved copies of the accounts.  To the extent any of the webmail providers require a subpoena before they may disclose this information, Defendants requested permission to issue one.

Ceglia has consented to both of these requests.  *See* Ceglia October 24 Decl. at ¶¶ 13-15.  Accordingly, Defendants respectfully ask the Court to compel Ceglia to consent to inspection of his webmail account information, and to authorize Defendants to issue subpoenas if necessary.

**CONCLUSION**

For the foregoing reasons, this Court should grant Defendants' motion to compel, and

award Defendants all other relief, including attorneys' fees, to which they may be entitled.


Dated:          New York, New York
                October 31, 2011

                                        Respectfully submitted,

                                        /s/ Orin Snyder
Thomas H. Dupree, Jr.                   Orin Snyder
GIBSON, DUNN & CRUTCHER LLP             Alexander H. Southwell
1050 Connecticut Avenue, NW             Matthew J. Benjamin
Washington, DC 20036                    Amanda M. Aycock
(202) 955-8500                          GIBSON, DUNN & CRUTCHER LLP
                                        200 Park Avenue, 47th Floor
                                        New York, NY 10166-0193
Terrance P. Flynn                       (212) 351-4000
HARRIS BEACH PLLC
726 Exchange Street
Suite 1000
Buffalo, NY 14210
(716) 200-5120

          *Attorneys for Defendants Mark Zuckerberg and Facebook, Inc.*