UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PAUL D. CEGLIA,

                        Plaintiff,

v.

MARK ELLIOT ZUCKERBERG, Individually, and
FACEBOOK, INC.

                        Defendants.

Civil Action No. : 1:10-cv-00569-RJA

**DECLARATION
OF PAUL ARGENTIERI IN
SUPPORT OF MOTION FOR
SANCTIONS FOR SPOLIATION
BY DEFENDANTS**

PAUL ARGENTIERI, submits this declaration in support of Plaintiff's Motion for Sanctions for Spoliation by Defendants and hereby declares under penalty of perjury and pursuant to 28 U.S.C. 1746 that the following is true and correct:

1. I make this declaration upon personal knowledge.

2. I am counsel for Paul D. Ceglia in this matter.

3. I drove to Buffalo, New York on July 13, 2011, the day before Facebook's experts' planned evaluation of the Facebook Contract and checked in at the Embassy Suites in Buffalo on Delaware Avenue.

4. I had the Facebook Contract in a cardboard FEDEX envelope and a separate six page document, a software specification document drafted by Defendant Zuckerberg, in a separate FEDEX envelope.

5. Sometime after checking in at the hotel on July 13, 2011, I was introduced to

1

the manager of the hotel and an off-duty police officer present as part of a 24 hour guard duty for the hotel safe.

6. My best recollection is that on the morning of July 14, 2011, counsel for Defendants and I arrived at the area where the hotel safe was located.

7. Both parties' counsel observed the removal of the two documents from the safe still inside their envelopes and those envelopes were within another larger folder that is visible on the video embedded in Plaintiff's Motion for Sanctions for Spoliation of Evidence by Defendants.

8. A courier was hired who went with both counsel transporting the envelope to the conference room of the law offices of Harris Beach in Buffalo, local counsel for Defendants.

9. A videographer was retained by both parties to document the work of Facebook's experts.

10. At 9:11 am on July 14, 2011, in view of the video camera, I then opened the envelope displaying the documents to the camera and laying them on the conference table in full view of everyone. See video clip embedded in Motion for Sanctions for Spoliation of Evidence.

11. I observed the Facebook Contract as two pieces of white paper that otherwise appeared to be some years old, consistent with the age of the document, i.e. eight years.

12. The video of this event shows the Facebook Contract visible as two white pieces of paper just as I observed the Facebook Contract that morning. See

video clip embedded in Motion for Sanctions for Spoliation of Evidence.

13. As the document was placed on the table, no one in the room remarked about the condition of the document in any way.

14. Therefore, at the time the Facebook Contract was delivered to Facebook's experts it was in the typical condition one would expect of a document that was at that time eight years old.  No distinct yellowing was visible on the document.

15. That same routine began each day of the evaluation by Facebook's experts on July 15th, July 16th and July 19th.

16. The sealed, signed envelope stayed in the hotel safe under 24 hour armed each day from July 14th through July 19th.

17. At the end of each day, counsel for both parties witnessed the insertion of the documents back into a new envelope which was signed in permanent marker across the seal.

18. Attorneys for both counsel accompanied a courier returning the sealed, signed envelope to the hotel safe where the armed guard was waiting.

19. At the end of fourth day of testing, on July 19, 2011, the Facebook Contract and six page specification sheet were inserted into a new envelope which is sealed and signed by Defense counsel and myself.  Exhibit A to Motion for Sanctions for Spoliation by Defendants.

20. After July 19, 2011 I had possession and transported the Facebook Contract and six page specification sheet in the sealed, signed envelope to Chicago.

21. The purpose of the envelope being taken to Chicago was so that Plaintiff's experts could obtain ink and paper samples for testing.

22. I produced on July 25, 2011, the same sealed and signed envelope as is shown being opened at the law offices of Edelson and McQuire in Chicago. Exhibit B to Motion for Sanctions for Spoliation by Defendants.

23. The Facebook Contract is visible on that July 25, 2011 video alongside the six page document specification sheet. Exhibit B to Motion for Sanctions for Spoliation by Defendants.

24. The Facebook Contract now shows obvious, distinct yellowing on the front of each of the two pages of the document. Exhibit B to Motion for Sanctions for Spoliation by Defendants.

25. The yellowing evident on the front of both pages of the Facebook Contract on July 25, 2011 is beyond the yellowing apparent in the six page specification sheet.

26. The now evident yellowing on the front of each page of the Facebook Contract was not present on it when it was first provided to Facebook's experts on the morning of July 14, 2011. See video clip embedded in Motion for Sanctions for Spoliation by Defendants.

I hereby and hereby declare under penalty of perjury and pursuant to 28 U.S.C. 1746 that the above declaration is true and correct:

DATED: November 1, 2011.

/s/ Paul Argentieri

Paul Argentieri