UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PAUL D. CEGLIA,

                      Plaintiff,

v.

MARK ELLIOT ZUCKERBERG, Individually, and
FACEBOOK, INC.

                      Defendants.

Civil Action No. : 1:10-cv-00569-RJA

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS AGAINST DEFENDANT MARK ZUCKERBERG FOR SPOLIATION OF EVIDENCE**

## MEMORANDUM

### RELEVANT FACTS AND EVIDENCE

The complaint in this matter was filed on June 30, 2010. Doc. No. 1. A litigation hold letter was sent by Plaintiff's counsel to then Defense counsel for Zuckerberg and Facebook. Exhibit A.

### DEFENSE COUNSEL'S CHARACTERIZATION OF PLAINTIFF'S EMAILS

Defense Counsel Oren Snyder has repeatedly claimed the emails Mr. Ceglia exchanged with Defendant Zuckerberg are not authentic. "[F]abricated emails." Transcript of June 30, 2011 hearing at 5. "The emails are outright fabrications." Id. at 15. "[S]upposed emails." Id. at 16. "[S]o called emails exist." Id. at 17. "[F]ake emails." Id. at 19. "[T]he emails are fake." Id. at 72. [B]ogus emails." Id. at 108. "Fraudulent emails." Id. at 111. "[T]hese emails are bogus." Id. at 115. "[F]raudulent emails." Id. at 127 and 135. "[T]hose emails were concocted." Id. at

135. "[A]lleged emails in the complaint, in addition to be fraudulent…." Id. at 136. "[B]ogus emails." Id. at 138. "[H]is fraud on the court based on these emails…." Id. at 149. "[H]is so-called emails." August 17, 2011 Transcript at 42. "[S]o called emails." Id. at 44, 63. "[M]ade-up emails." Id. at 49. "[P]urported emails." Id at 63. "[T]he so-called emails." Id. at 108, 109.

Plaintiff sought a computer forensics examination of Zuckerberg's Harvard email account from the time of the formation of the Facebook Contract to the current time. Snyder countered with "the plaintiff has not demonstrated good cause to justify his broad discovery requests." June 30, 2011 Transcript at 47. He further resisted allowing access to Zuckerberg's email account by his fear the court characterized as "you think he can lay his hands on software that will enable him to fabricate yet new emails?" Id. "Yes, your Honor," Snyder replied. Id.

### DEFENSE COUNSEL'S CHARACTERIZATION OF THE IMPORTANCE OF EMAILS IN THIS CASE

Defense counsel Snyder has made clear throughout this case that the Facebook Contract and the emails are the central items of evidence.

"[The emails are] central to the extent that they confirm the fraud." Transcript of June 30, 2011 hearing at 21. "[F]undamental to that story was the email part of the story." Id. Snyder stated that "the threshold question in this case, your Honor, is the authenticity of the contract and the emails." Id. at 50.

### EVIDENCE OF SPOLIATION OF EMAILS IS UNDISPUTED

The emails Ceglia exchanged with Defendant Zuckerberg occurred while

Zuckerberg was a Harvard University student. Zuckerberg used his Harvard University email account to exchange those emails with Ceglia.

Defendants' own computer forensic expert offered a sworn declaration in this case that contained the following:

"On April 15, 2011...Stroz Friedberg preserved the contents of a Harvard University email account assigned to and used by Mr. Zuckerberg. This preservation work involved making a complete and accurate copy of the entire contents of Mr. Zuckerberg's Harvard email account as it resided on Harvard's server at the time of collection, including both sent and received email." Doc. No. 47 at ¶4.

"In addition, Harvard University provided Stroz Friedberg with a copy of Mr. Zuckerberg's Harvard email account as it resided on Harvard's server in October 2010." Doc. No. 47 at ¶5.

Stroz Friedberg then compared these two records of the contents of Defendant Zuckerberg's Harvard email account and discovered that emails present in Defendant Zuckerberg's Harvard email account in October 2010 had been deleted between that time and April 2011. Id.

Zuckerberg's deletion of emails after receiving a litigation hold and after the filing of the complaint in this matter is a breach of his discovery obligations.

So, while defense counsel persuaded this court, holding off a full examination of Zuckerberg's emails, Zuckerberg set about destroying relevant evidence in this case. The time the court afforded Zuckerberg he used to spoil evidence.

3

While we now know that Defendant Zuckerberg deleted emails sometime after October 2010 and before April 2011, we do not know what emails he added, edited, manipulated or deleted from the date of the complaint filing until October 2010. We do not know what emails he deleted or attempted to delete from his email account from 2004 to the date of the filing of the complaint. We also do not know how many emails he added, edited, manipulated or deleted from his Harvard email account since April 2011 up to the present day.

The proof of the authenticity of Ceglia's emails is their presence in the inbox of Zuckerberg's Harvard email account. Zuckerberg could well have deleted that authenticating evidence in violation of the litigation hold. Therefore, Defendants can continue with impunity challenging the authenticity of Ceglia's emails while Defendant Zuckerberg deletes emails with no sanction.

Defendant Zuckerberg's admitted history of dishonesty leaves no room for a conclusion that his conduct in this regard is unintentional. He also does not deserve credit for any declaration he may submit assuring the court that he has not deleted other emails from the Harvard email account.

## LEGAL ANALYSIS
## THE SPOLIATION RULE IN THE SECOND CIRCUIT

There is definitive guidance from the Second Circuit on the standard to apply to spoliation claims. That case is *Residential Funding Corporation v. DeGeorge Financial Corp.,* 306 F.3d 99. In *DeGeorge* the court held "[T]he sanction of an adverse inference may be appropriate in some cases involving the negligent

4

destruction of evidence because each party should bear the risk of its own negligence." Id. at 108.

"[The] sanction [of an adverse inference] should be available even for the negligent destruction of documents if that is necessary to further the remedial purpose of the inference. It makes little difference to the party victimized by the destruction of evidence whether that act was done willfully or negligently. The adverse inference provides the necessary mechanism for restoring the evidentiary balance. The inference is adverse to the destroyer not because of any finding of moral culpability, but because the risk that the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss." *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 75 (S.D.N.Y.1991). See generally *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir.1998) (stating that an adverse inference instruction serves the remedial purpose, "insofar as possible, of restoring the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party").

Both the Federal Rules of Civil Procedure and this Court's inherent power allow sanctions to be issued when a party destroys evidence that it could reasonably foresee would be relevant to litigation. *Jones v. Bremen High Sch. Dist. 228*, No. 08-C-3548, 2010 U.S. Dist. LEXIS 51312, at *14 (N.D. Ill. May 25, 2010).  The Defendants cannot sincerely argue that they could not foresee the Facebook Contract would be "relevant to to the litigation."

## **SANCTIONS**

Once spoliation of evidence, especially the key evidence in this case, has been established, appropriate sanctions for spoliation of evidence may include the issuing of a default judgment or an adverse jury instruction against the spoliating party. *Bryant v. Gardner*, 587 F. Supp. 2d 951, 958 (N.D. Ill. 2008); Fed. R. Civ. P. 37(b)(2). Default judgment may be entered against a spoliating party when there is "clear and convincing evidence of willfulness, bad faith or fault by the noncomplying party." *Krumwiede v. Brighton Assocs.*, No. 05-C-3003, 2006 U.S. Dist. LEXIS 31669, at *25 (N.D. Ill. May 8, 2006).

A federal court may impose sanctions upon a party who engages in spoliation in derogation of court order. See Fed.R.Civ.P. 37(b)(2); *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir.1988). However, this court is empowered to impose sanctions absent a specific court order.

### SPECIFIC DISCOVERY ORDER NOT NECESSARY TO IMPOSE SANCTIONS

Even without a discovery order, the court "may impose sanctions for spoliation, exercising its inherent power to control litigation." *Chambers v.. NASCO, Inc.*, 501 U.S. 32, 43–45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Sassower v. Field*, 973 F.2d 75, 80–81 (2d Cir.1992), cert. denied, 507 U.S. 1043, 113 S.Ct. 1879, 123 L.Ed.2d 497 (1993). The court's authority to impose sanctions will only be reversed for abuse of discretion.

### DISTRICT COURT HAS WIDE DISCRETION TO SANCTION PARTIES

Sanctions for spoliation, including dismissal, are reviewed by the Circuit for abuse of discretion.  *Complaint of Consolidation Coal Co.*, 123 F.3d 126, 131 (3d Cir.1997), cert. denied, 523 U.S. 1054, 118 S.Ct. 1380, 140 L.Ed.2d 526 (1998)); *Sieck v. Russo*, 869 F.2d 131, 134 (2d Cir.1989).

The Circuit "will reject the district court's factual findings in support of its imposition of sanctions only if they are clearly erroneous." *Friends of Animals, Inc. v. United States Surgical Corp.*, 131 F.3d 332, 334 (2d Cir.1997) (per curiam)).

The district court possesses "broad discretion in crafting a proper sanction for spoliation" but such sanction is to "serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." Id.

### PURPOSE OF THE SANCTIONS

The spoliation sanction is fashioned to: "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir.1998)).

Here, as another spoliation motion filed simultaneous with this one reveals, Facebook is engaged in a multi-pronged campaign to damage evidence.  It acts with no concern for the authority of this court, flouting the Plaintiff's rights, personally castigating him in the media, all the while seemingly unconcerned with the paucity of its own evidence.  The Facebook Contract, the key evidence in the case, about

which Defendants have repeated questioned as to authenticity, now appears as if someone altered it.

## THE MOST SERIOUS SANCTION IS NOT LIMITED TO A FINDING OF BAD FAITH

Although the facts demonstrate bad faith, purposeful over-exposure to UV by Defendants' experts, convincing the court of bad faith is unnecessary to obtain the most severe sanction.

For Plaintiff's engaging in spoliation on par with Defendants in this case, dismissal is not limited only to matters where the a Plaintiff has acted with bad faith or willful intent, but is permitted where there is any fault of the sanctioned party. See *Bobal v. Rensselaer Polytechnic Institute*, 916 F.2d 759, 764 (2d Cir.1990). A default judgment in favor of Plaintiff is the corollary here to punish the intentional spoliation of the Plaintiff's evidence.

Courts have held that negligent wrongs, like intentional wrongs, are proper subjects for general deterrence. See *Penthouse Int'l, Ltd. v. Playboy Enters., Inc.*, 663 F.2d 371, 387 (2d Cir.1981) (citing G. Calabresi, The Cost of Accidents, 133–173 (1970)). Not only have negligent wrongs been found proper subjects for deterrence, but federal courts have dismissed under Rule 37 as punishment for negligence. See *Thiele v. Oddy's Auto and Marine Inc.*, 906 F.Supp. 158, 162–63 (W.D.N.Y.1995) (evidence negligently lost by plaintiff necessitated dismissal under Fed.R.Civ.P. 37); *Brancaccio v. Mitsubishi Motors Co., Inc.*, 1992 WL 189937, at *2 (S.D.N.Y.1992)

(plaintiff's negligent loss of the defective product, after her expert had examined it, but where defendant had not, made necessary dismissal under Rule 37.

## SPOLIATION BY EXPERTS IS APPLICABLE
## TO PARTIES RETAINING THAT EXPERT

Gross negligence by Defendant's experts is a sufficient act to impose a default judgment against Defendants. "[G]ross professional incompetence no less than deliberate tactical intransigence may be responsible for the interminable delays and costs that plague modern complex law suits." *Penthouse*, 663 F.2d at 387.

While the sanction of a directed verdict is a drastic remedy that should be applied only when the spoliation was willful and there is no other adequate remedy to restore the wronged party to the position it would be in if the evidence had not been destroyed, this is an appropriate case to apply that sanction. *Chambers v. NASCO*, 501 U.S. 32, 42–45, 111 S.Ct. 2123, 2131–2133 (1991); *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir.1999); *Valentine v. Museum of Modern Art*, 29 F.3d 47, 49 (2d Cir.1994); *John B. Hull Inc. v. Waterbury Petrol, Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir.1988).

## WHY DETERRENCE IS RELEVANT
## TO DEFENDANTS' CURRENT AND PAST BEHAVIOR

A severe sanction is warranted for Zuckerberg's spoliation of evidence based, in part, on his history of similar behavior. This court must issue a severe enough sanction to stop if not deter Zuckerberg's dishonest conduct.

Zuckerberg has admitted forgery in backdating corporate documents, i.e. a fraud, in the handling of corporate affairs for Facebook while in litigation.

9

"Q.  So sometime after you moved to [your current address] you signed this document, you filled in [your current address] and you backdated it to July 29th of 2004, correct?

"A.  I would assume so.

"Q.  Why did you do that?

"A.  I don't know."  June 22, 2006 Transcript of proceedings in Civil Action No. 04-11923-DFW, Connectu LLC v. Mark Zuckerberg, et al at p. 82.  Attached as Exhibit B.

"Q.  Well, you filled in the date though, correct?

"A.  Yes….

"Q.  Okay.  So did you say is it right for me, is it okay for me to backdate this document.

"A.  I don't know.  *I probably did.*"  Id. at 83.  Emphasis added.  It is not a stretch to justify the most severe sanction is applicable to a person whose demonstrates they do not believe the typical rules of honesty apply to them.

    Mr. Zuckerberg then went on in that case to admit to knowingly signing documents with false information nine more occasions.  Id. at 88, 89, 90, 91, 93, 94, 95.

    Mr. Zuckerberg admitted signing corporate documents submitted to the IRS attesting to their accuracy knowing they contained false information.  Id. at 97.  He admitted forgery in *backdating* Facebook corporate documents submitted to the IRS.  Id. at 98.

Persons who knew Mr. Zuckerberg during 2003-2004 at Harvard have testified that they knew Mr. Zuckerberg to be dishonest.

"Q. Did you tell Mr. O'Brien words to the effect of 'I know Mark Zuckerberg as dishonest"?

"A. Yes

"Q. And did you tell Mr. O'Brien words to the effect, "I've seen him"; meaning Zuckerberg, "lie"?

"A. Yes."  Exhibit C, November 29, 2007, Deposition of Alan Greenspan as part of Case No. 1:07-CV-10593-DFW, ConnectU, Inc., et al v. Facebook, Inc., Mark Zuckerberg, et al.

More pointedly, Defendant Zuckerberg admitted signing documents he refers to as "Facebook agreements" knowing they contained false information.  Id. at 93-94.  This case, of course, involves a Facebook agreement.

## DEFENDANT FACEBOOK'S CORPORATE PHILOSOPHY MIRRORS DEFENDANT ZUCKERBERG'S

Defendant Zuckerberg is the CEO of Defendant Facebook.  He is the largest single shareholder of Defendant Facebook.  Without question, he has ultimate authority over any aspect of Facebook's operation.  In 2009 at an event for would-be Internet entrepreneurs he told the audience, "We've got this whole ethos that we want to build a hacker culture."  http://www.wired.com/magazine/2010/04/ff_hackers/5/.

Defendant Zuckerberg went on to say, "[o]ne good hacker can be as good as

10 or 20 engineers, and we try to embrace that. We want to be the place where the best hackers want to work, because our culture is set up so they can build stuff quickly and do crazy stuff and be recognized for standout brilliance." Id.

Defendant Facebook recently hired a renowned hacker who illegally hacked into Sony's playstation network causing Sony 25 million dollars in damages. http://abcnews.go.com/Technology/facebook-hires-sonys-hacker/story?id=13948623. The new hire hacker, Hotz, was sued by Sony for hacking their Play Station 3 video game console and accessing 100 million credit card records. Id.

Likewise, Defendant Facebook has been caught on numerous occasions publishing terms of service for their website and blatantly violating them. The Facebook corporate ethos appears to be a descendant of Defendant Zuckerberg's personal hacking no-rules-apply-to-me philosophy.

Defendant Facebook and Defendant Zuckerberg have never denied reports that Defendant Zuckerberg gained unauthorized access to Facebook users' accounts using that information to access emails of reporters at the Harvard Crimson newspaper who had written a story critical of both Defendants in this case. http://articles.businessinsider.com/2010-03-05/tech/29973321_1_tyler-winklevoss-thefacebook-com-cameron-winklevoss.

In May 2010, a complaint was filed before the Federal Trade Commission identifying Defendant Facebook's history of "Unfair and Deceptive Trade Practices", "disclosing users' personal information without their consent", "making user information publicly available without the users' consent", "mislead[ing] users into

believ[ing] that users can still maintain control over their personal information," designating information that users' label as "friends only" to the public including third party advertisers, etc.  The complaint goes on for 38 pages.  Exhibit D.

Just this year, Defendant Facebook claims to have "inadvertently" placed a "cookie" on its users computers that sent computer usage data back to Facebook, including websites that users visited, **even after the user had logged off of Facebook's service**.  http://www.theblaze.com/stories/facebook-caught-inadvertently-tracking-you-once-you-log-off/.  "Earlier this year it stopped gathering browser data from users who had never even been to Facebook.com after it was exposed by a Dutch researcher."  http://www.yesfans.com/archive/index.php/t-69497.html?s=324a2aa5cab2519fd032af3feaf1b1fd.

In 2010 patent infringement suit, a jury found that Facebook had "directly and literally infringed all of the asserted patent claims [of the Plaintiff company] and that the claims were neither anticipated nor obvious in light of the prior art."  See Exhibit D at p. 3-4.  The jury rejected the overall claim by the Plaintiff on unrelated grounds.  Id.

Because of this past dishonest behavior by both Defendants in this case, any declaration by Defendant Zuckerberg justifying, explaining or claiming to have no knowledge of the email deletions from his Harvard email account should be given *no weight*.

The bargain here seems to have been, accept a spoliation sanction in exchange for deleting emails confirming the existence and authenticity of the

Facebook Contract.  That brazen calculation is an insult to the ideals that make justice work.  Once litigants can destroy evidence, falsify corporate and IRS documents and operate a business that misleads its users without consequence, no justice system can contain the damage that causes.  The time has come for a court to attempt to deter Mr. Zuckerberg's behavior and that of Defendant Facebook in this regard.

## THE MOST SERIOUS SANCTION IS NOT LIMITED TO FINDING OF BAD FAITH

Although the facts demonstrate bad faith, intentional deletion of emails after receipt of a litigation hold letter, convincing the court of bad faith is unnecessary to obtain the most severe sanction.

For Plaintiff's engaging in spoliation on par with Defendants in this case, dismissal is not limited only to matters where the a Plaintiff has acted with bad faith or willful intent, but is permitted where there is any fault of the sanctioned party. See *Bobal v. Rensselaer Polytechnic Institute*, 916 F.2d 759, 764 (2d Cir.1990).

## APPROPRIATE REMEDIES UNDER THE LAW FOR ZUCKERBERG'S INTENTIONAL SPOLIATION OF EMAIL EVIDENCE

As a result of Defendant Zuckerberg's intentional spoliation of email evidence, the law entitles Plaintiff to the most severe sanction appropriate.  No hearing is necessary on this issue as a showing of bad faith or intent because bad faith is not required to be shown for Mr. Ceglia to obtain the most severe sanction.  And, in any event, the term bad faith has no definition if it does not fit the conduct Zuckerberg has engaged in here.

1. An order prohibiting Facebook or Zuckerberg from disputing the authenticity of the Ceglia emails excerpted in the complaint; and

2. An order permitting discovery of all emails from Zuckerberg's Harvard email account wherever copies of those emails may reside, including on the record of other lawsuits in which Zuckerberg was involved even if those records are currently sealed in those cases; and

3. An adverse instruction to the jury that the emails deleted by Zuckerberg from his Harvard email account after the date the complaint was filed and he received a litigation hold letter would have been helpful in proving all of Ceglia's claims; and

4. Attorney's Fees, Expert Witness Fees and any other relief the court deems proper that was expended in investigating, preparing this motion and conducting any scheduled hearing on the spoliation conduct of Mark Zuckerberg.

Respectfully submitted,

/s/Dean Boland

Paul A. Argentieri
188 Main Street
Hornell, NY 14843
607-324-3232 phone
607-324-6188
paul.argentieri@gmail.com

Dean Boland
18123 Sloane Avenue
Lakewood, Ohio 44107
216-236-8080 phone
866-455-1267 fax
dean@bolandlegal.com