2011-1366

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

LEADER TECHNOLOGIES, INC.,

*Plaintiff-Appellant,*

v.

FACEBOOK, INC.,

*Defendant-Appellee.*

**Appeal from the United States District Court for the District of Delaware in Case no. 08-CV-0862, Judge Leonard P. Stark**

## OPENING BRIEF OF
## PLAINTIFF-APPELLANT LEADER TECHNOLOGIES, INC.

Paul Andre
Lisa Kobialka
KING & SPALDING LLP
333 Twin Dolphin Drive
Suite 400
Redwood Shores, CA  94065
(650) 590-0700

Daryl Joseffer
Adam Conrad
KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.
Washington, DC 20006
(202) 737-0500

*Attorneys for Plaintiff-Appellant Leader Technologies, Inc.*

## CERTIFICATE OF INTEREST

Counsel for Appellant Leader Technologies, Inc. certifies the following:

1.      The full name of every party or amicus represented by me is Leader Technologies, Inc.

2.      The name of the real party in interest represented by me is Leader Technologies, Inc.

3.      No parent corporations or publicly held companies own 10 percent or more of the stock of Leader Technologies, Inc.

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

Law Firms:  King & Spalding LLP; Potter Anderson & Corroon LLP

Attorneys:   Philip A. Rovner; Jonathan A. Choa; Paul J. Andre; Lisa Kobialka;
             Daryl L. Joseffer; Adam Conrad

July 25, 2011
Date                                          Paul Andre

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF RELATED CASES ................................................. 1

JURISDICTIONAL STATEMENT ...................................................... 2

STATEMENT OF THE ISSUES ......................................................... 3

STATEMENT OF THE CASE ............................................................ 3

STATEMENT OF FACTS .................................................................. 4

    A.    Leader's Patented Technology ........................................... 4

    B.    The Leader2Leader Product Suite ..................................... 7

    C.    Facebook's Infringing Website ......................................... 8

    D.    Procedural Background ...................................................... 9

        1.    Pre-Trial ................................................................. 9

        2.    Trial ..................................................................... 10

        3.    The jury's verdict and the district court's JMOL decision ...... 12

STANDARD OF REVIEW ............................................................. 13

SUMMARY OF ARGUMENT ........................................................ 15

ARGUMENT ................................................................................ 18

I.    THE DISTRICT COURT ERRED IN DENYING JUDGMENT AS A MATTER OF LAW BECAUSE FACEBOOK DID NOT PROVE AN INVALIDATING PUBLIC USE OR OFFER FOR SALE BY CLEAR AND CONVINCING EVIDENCE. ............................... 18

    A.    The Only Evidence Showed That Leader Did Not Offer For Sale Or Publicly Use *The Patented Invention* More Than One Year Before Filing The Patent Application ...................... 18

i

B. The District Court Erred By Treating A Witness's Lack Of Credibility As Evidence That The Opposite Of His Testimony Is True. ................................................................................ 23

C. No Evidence, Let Alone Clear And Convincing Evidence, Supports The Jury Verdict. ................................................. 29

  1. A witness's lack of credibility does not become affirmative evidence for the opposite conclusion merely because a party produces *other* evidence. ............................... 30

  2. Facebook produced no other evidence of *when* Leader incorporated the patented technology into its Leader2Leader product suite. ................................................... 31

D. The Clear-And-Convincing-Evidence Standard Removes Any Doubt That Leader Is Entitled To JMOL. .......................... 37

E. In The Alternative, A New Trial Is Appropriate. ................. 38

CONCLUSION ............................................................................... 40

ADDENDUM

PROOF OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

*Addington v. Texas,*
 441 U.S. 418 (1979) ................................................................. 38

*Allen Eng'g Corp. v. Bartell Indus., Inc.,*
 299 F.3d 1336 (Fed. Cir. 2002) ............................................... 18

*Allied Chem. Corp. v. Daiflon, Inc.,*
 449 U.S. 33 (1980) ................................................................... 15

*Am. Bearing Co. v. Litton Indus., Inc.,*
 729 F.2d 943 (3d Cir. 1984) .................................................... 39

*Amgen Inc. v. Hoechst Marion Roussel, Inc.,*
 314 F.3d 1313 (Fed. Cir. 2003) ............................................... 28

*Anderson v. Liberty Lobby, Inc.,*
 477 U.S. 242 (1986) ........................................................... 14, 26

*Bankers Life & Cas. Co. v. Guarantee Reserve Life Ins. Co. of Hammond,*
 365 F.2d 28 (7th Cir. 1966) ..................................................... 25

*Barnett v. Roper,*
 541 F.3d 804 (8th Cir. 2008) ................................................... 38

*Bose Corp. v. Consumers Union of U.S., Inc.,*
 466 U.S. 485 (1984) ..................................................... 17, 24, 26

*Bunt v. Sierra Butte Gold Mining Co.,*
 138 U.S. 483 (1891) ......................................................... 25, 26

*Colorado v. New Mexico,*
 467 U.S. 310 (1984) ......................................................... 14, 28

*Combined Sys., Inc. v. Def. Tech. Corp. of Am.,*
 230 F. Supp. 2d 544 (S.D.N.Y. 2002) ..................................... 34

*Cooper Distrib. Co. v. Amana Refrigeration, Inc.,*
 63 F.3d 262 (3d Cir. 1995) (Alito, J.) ..................................... 39

*Cortez-Acosta v. INS,*
234 F.3d 476 (9th Cir. 2000) (per curiam)........................................................ 35

*Crowe v. Smith,*
261 F.3d 558 (5th Cir. 2001)............................................................................ 38

*Cummings v. Adidas USA,*
716 F. Supp. 2d 323 (S.D.N.Y. 2010).............................................................. 36

*Dana Corp. v. Am. Axle & Mfg., Inc.,*
279 F.3d 1372 (Fed. Cir. 2002)........................................................................ 18

*Dyer v. MacDougall,*
201 F.2d 265 (2d Cir. 1952) (Hand, J.)............................................... 25, 26, 27

*Eastwood v. Nat'l Enquirer, Inc.,*
123 F.3d 1249 (9th Cir. 1997).......................................................................... 29

*Eckenrode v. Penn. R. Co.,*
164 F.2d 996 (3d Cir. 1947)............................................................................. 24

*EDO Corp. v. Beech Aircraft Corp.,*
911 F.2d 1447 (10th Cir. 1990)........................................................................ 35

*Electromotive Div. of Gen. Motors Corp. v. Trans. Sys. Div. of Gen. Elec.*
*Co.,*
417 F.3d 1203 (Fed. Cir. 2005)........................................................................ 14

*Eli Lilly & Co. v. Aradigm Corp.,*
376 F.3d 1352 (Fed. Cir. 2004)................................................................. 14, 28

*Fineman v. Armstrong World Indus., Inc.,*
980 F.2d 171 (3d Cir. 1992)............................................................................. 39

*Gemmy Indus. Corp. v. Chrisha Creations Ltd.,*
452 F.3d 1353 (Fed. Cir. 2006)........................................................................ 18

*Georgia-Pacific Corp. v. United States,*
264 F.2d 161 (5th Cir. 1959)............................................................................ 40

*Golan v. Pingel Enter., Inc.,*
310 F.3d 1360 (Fed. Cir. 2002)........................................................................ 28

*Goldhirsh Group, Inc. v. Alpert,*
    107 F.3d 105 (2d Cir. 1997) ................................................... 25, 27, 31

*Greenleaf v. Garlock, Inc.,*
    174 F.3d 352 (3d Cir. 1999) ........................................................ 15, 39

*Helifix Ltd. v. Blok-Lok, Ltd.,*
    208 F.3d 1339 (Fed. Cir. 2000) ................................................... 18, 35

*Helvering v. Leonard,*
    310 U.S. 80 (1940) ............................................................................ 28

*Hoffman v. Capital Cities/ABC, Inc.,*
    255 F.3d 1180 (9th Cir. 2001) ......................................................... 35

*Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.,*
    370 F.3d 1131 (Fed. Cir. 2004) ........................................................ 14

*Huerta-Guevara v. Ashcroft,*
    321 F.3d 883 (9th Cir. 2003) ............................................................ 38

*In re Bose Corp.,*
    580 F.3d 1240 (Fed. Cir. 2009) ........................................................ 28

*Innovation Techs., Inc. v. Splash! Med. Devices, LLC,*
    528 F.3d 1348 (Fed. Cir. 2008) ........................................................ 28

*Intel Corp. v. ITC,*
    946 F.2d 821 (Fed. Cir. 1991) .......................................................... 28

*Invitrogen Corp. v. Biocrest Mfg., L.P.,*
    424 F.3d 1374 (Fed. Cir. 2005) ........................................................ 14

*Janigan v. Taylor,*
    344 F.2d 781 (1st Cir. 1965) ............................................................ 25

*Jennings v. Jones,*
    587 F.3d 430 (1st Cir. 2009) ............................................................ 39

*Johnson v. Bell,*
    605 F.3d 333 (6th Cir. 2010) ............................................................ 38

*Lightning Lube, Inc. v. Witco Corp.*,
    4 F.3d 1153 (3d Cir. 1993) ................................................................. 14

*Microsoft Corp. v. i4i Ltd. P'ship*,
    131 S. Ct. 2238 (2011) ...................................................................... 27

*Minn. Mining & Mfg. Co. v. Chemque, Inc.*,
    303 F.3d 1294 (Fed. Cir. 2002) ......................................................... 28

*Moore v. Chesapeake & Ohio Ry. Co.*,
    340 U.S. 573 (1951) ................................................................... 25, 27

*Nishikawa v. Dulles*,
    356 U.S. 129 (1958) ................................................... 26, 27, 29, 31

*Peters v. Active Mfg. Co.*,
    129 U.S. 530 (1889) ......................................................................... 36

*Pfizer, Inc. v. Apotex, Inc.*,
    480 F.3d 1348 (Fed. Cir. 2007) ......................................................... 21

*Pharmastem Therapeutics, Inc. v. Viacell, Inc.*,
    491 F.3d 1342 (Fed. Cir. 2007) ......................................................... 13

*Price v. Symsek*,
    988 F.2d 1187 (Fed. Cir. 1993) ................................... 14, 27-28, 38

*Rajala v. Allied Corp.*,
    919 F.2d 610 (10th Cir. 1990) ........................................................... 38

*RCA Corp. v. Data Gen. Corp.*,
    887 F.2d 1056 (Fed. Cir. 1989) ......................................................... 19

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,
    563 F.3d 1358 (Fed. Cir. 2009) ......................................................... 39

*Roebuck v. Drexel Univ.*,
    852 F.2d 715 (3d Cir. 1988) ....................................................... 15, 39

*Roper Corp. v. NLRB*,
    712 F.2d 306 (7th Cir. 1983) ..................................... 24-25, 26, 27

*Scaltech Inc. v. Retec/Tetra, L.L.C.,*
  178 F.3d 1378 (Fed. Cir. 1999) .................................................... 18

*Seidenstein v. Nat'l Med. Enters., Inc.,*
  769 F.2d 1100 (5th Cir. 1985) ............................................... 24, 26

*Sonoscan, Inc. v. Sonotek, Inc.,*
  936 F.2d 1261 (Fed. Cir. 1991) ............................................. 19, 36

*Tec Air, Inc. v. Denso Mfg. Mich. Inc.,*
  192 F.3d 1353 (Fed. Cir. 1999) .................................................... 34

*Travelhost, Inc. v. Blandford,*
  68 F.3d 958 (5th Cir. 1995) ......................................................... 25

*Tucker v. Fischbein,*
  237 F.3d 275 (3d Cir. 2001) ................................................... 35, 38

*United States v. Pechenik,*
  236 F.2d 844 (3d Cir. 1956) ............................................. 24, 26, 31

*United States v. Silveus,*
  542 F.3d 993 (3d Cir. 2008) ........................................................ 39

*United States v. Tyler,*
  758 F.2d 66 (2d Cir. 1985) ..................................................... 30, 31

*United States v. Weaver,*
  267 F.3d 231 (3d Cir. 2001) ........................................................ 32

*United States v. Zeigler,*
  994 F.2d 845 (D.C. Cir. 1993) ............................................ 25-26, 30

*United States v. Zimmitti,*
  850 F.2d 869 (2d Cir. 1988) ........................................................ 25

*Urti v. Transport Commercial Corp.,*
  479 F.2d 766 (5th Cir. 1973) ....................................................... 39

*Vanderbilt Univ. v. ICOS Corp.,*
  601 F.3d 1297 (Fed. Cir. 2010) .................................................... 35

*Vanmoor v. Wal-Mart Stores, Inc.*,
   201 F.3d 1363 (Fed. Cir. 2000) .......................................................... 36

*Walton v. Halter*,
   243 F.3d 703 (3d Cir. 2001) ............................................................... 32

## STATUTES

35 U.S.C. § 102(b) ................................................................................. 3, 18

35 U.S.C. § 282 ......................................................................................... 14

## OTHER AUTHORITIES

Fed. R. Civ. P. 54 ....................................................................................... 4

Fed. R. Civ. P. 59(a)(1)(A) ......................................................................... 15

9A Wright & Miller, Federal Practice and Procedure Civil 2d § 2527
   (3d ed. 2011) ....................................................................................... 25

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, counsel for Plaintiff-Appellant Leader Technologies, Inc. ("Leader") states that no appeal in this action was previously before this or any other appellate court.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1338.  On July 28, 2010, a jury rendered a verdict that Defendant Facebook, Inc. ("Facebook") infringed the patent-in-suit but that the patent is invalid.  The district court denied Leader's motion for judgment as a matter of law or a new trial on March 14, 2011, and entered a certification of final judgment as to fewer than all claims pursuant to Fed. R. Civ. P. 54(b) on March 28, 2011.  Leader filed a timely notice of appeal on April 21, 2011.  This Court has jurisdiction under 28 U.S.C. § 1295.

## STATEMENT OF THE ISSUES

A patent is invalid under 35 U.S.C. § 102(b) if the patentee publicly used or offered for sale a product that embodied the patented invention more than one year before filing the patent application. Facebook attempted to prove invalidating uses and offers without presenting any evidence that Leader's prior product included all of the limitations of all of the patent claims, and thus embodied the patented invention. Instead, Facebook called Leader's chairman as a witness and hoped the jury would disbelieve him. The jury apparently did just that and found the patent-in-suit invalid. The issues are:

1.      Whether the district court erred as a matter of law by treating a presumed finding that a witness lacks credibility as being affirmative evidence that the opposite of his testimony is true.

2.      Whether the district court erred in concluding that Facebook introduced sufficient clear and convincing evidence of invalidity to sustain the jury verdict.

## STATEMENT OF THE CASE

On November 19, 2008, Leader filed this patent infringement suit against Facebook alleging infringement of United States Patent No. 7,139,761 (the "'761 patent"). JA259-62. The jury rendered a verdict that Facebook directly and literally infringed all of the asserted patent claims and that the claims were neither

3

anticipated nor obvious in light of the prior art. JA72, 75-76. But the jury found the patent invalid on the theory that Leader had publicly used the patented invention and offered it for sale more than one year before filing the patent application. JA74. The jury also rejected Leader's alternative infringement theory, which was that Facebook was liable for joint infringement of the asserted method claims. JA73.

On August 25, 2010, Leader renewed its motion for judgment as a matter of law or a new trial on the prior-use and on-sale bars, as well as on joint infringement. *See* JA20649. Facebook filed four motions for judgment as a matter of law, contending that it did not directly infringe the method claims, that it did not literally infringe any claims, that it did not indirectly infringe any claims, and that certain prior art references anticipated the '761 patent or rendered it obvious. *See* JA21108; JA21111; JA21114; JA21116. The district court denied all of the motions except Facebook's motion on indirect infringement. *See* JA4. On March 28, 2011, pursuant to Fed. R. Civ. P. 54, the district court entered final judgment as to fewer than all claims in favor of Facebook. JA1-2.

## STATEMENT OF FACTS

### A.    Leader's Patented Technology

Plaintiff Leader Technologies is an innovative software company based in Columbus, Ohio. JA24750. Chairman and founder Michael McKibben created

Leader in 1997 with the goal of using "the internet as a platform for doing large-scale communications and collaboration." JA24756-57. At that time, the internet was in its infancy, with the number of users measured in the mere millions. JA24754. Leader recognized the untapped potential of the internet—"an unclaimed market space"—and moved to enter that marketplace. JA24761.

The technology embodied by the '761 patent represents one part of that goal. The patented invention relates to a "data management tool" for online collaboration. JA228 (Abstract). The invention allows, for example, a large number of users to share information—files, pictures, documents, messages, videos, data, or other digital content—with each other.

Prior art systems for digital communications data management had left it to the recipient of communications "to sort, categorize, and organize these items of communication in ways most meaningful to that person." JA247 Col. 1:42-44. The chore of organization placed a tedious burden on the recipient, especially considering that communications frequently apply to more than "one topic of interest," compounding the work for any recipient to "manually store[ items] in multiple locations . . . ." *Id.* Col. 1:44-56, 60-64.

In addition, prior art systems were tailored to "smaller one-to-many and many-to-one relationships," such as "an e-mail message to ten recipients" or "ten customers sending orders to a single vendor." *Id.* Col. 2:35-40. Prior art systems

5

"attempt[ed] to optimize" these paradigms by permitting "multiple users to access the same file for collaboration purposes." *Id.* Col. 2:45-49.

The '761 patent escapes these paradigms altogether.  In 1999, inventors Michael McKibben and Jeff Lamb had an "ah-hah moment" in which they "recognized that [they] could create a software system that would watch what the people are doing" and allow data to be easily available to users in any environment in which they are working.  JA24773-75; *see also* JA24771.  That insight led to the invention embodied in the '761 patent, which includes "a relational database engine that facilitates many-to-many relationships among data elements, in addition to, one-to-many and many-to-many relationships."  JA248 Col. 3:22-24.

The '761 patent "provides a structure for defining relationships between complex collections of data." *Id.* Col. 4:32-33.  As a user creates data in a context and moves from one context to another, the data created by the user is available in the next context. *Id.* Col. 4:1-4.  The invention therefore "take[s] some of the burden of organizing . . . data off of the user" and "put[s] it on the computer and make[s] the computer do that work for the user."  JA24826-27.  That gives the user "flexibility in determining dynamic associations" between individual files and groups of data.  JA248 Col. 4:5-7.

Leader invested 145,000 man-hours and over $10 million to develop the initial concept and build a working embodiment of the technology.  JA24776-77.

Within a day or two of implementing the technology in software code, Leader filed a provisional patent application on December 11, 2002. *See* JA26736; JA24836; JA25745. Leader "wait[ed] to finish the implementation because we thought we had to to file a provisional." JA24836.

Just under a year after filing the provisional, on December 10, 2003, Leader filed the application that eventually resulted in the issuance of the '761 patent on November 21, 2006. *See* JA228. The asserted system and method claims of the '761 patent relate to the technical back-end components of the data management tool. Claim 1 is a representative system claim:

> 1.    A computer-implemented network-based system that facilitates management of data, comprising:
>
> a computer-implemented context component of the network-based system for capturing context information associated with user-defined data created by user interaction of a user in a first context of the network-based system, the context component dynamically storing the context information in metadata associated with the user-defined data, the user-defined data and metadata stored on a storage component of the network-based system; and
>
> a computer-implemented tracking component of the network-based system for tracking a change of the user from the first context to a second context of the network-based system and dynamically updating the stored metadata based on the change, wherein the user accesses the data from the second context.

JA256-57 Col. 20:64-21:12.

## B.   The Leader2Leader Product Suite

Leader developed and marketed a group of software products known as Leader2Leader, which is "a brand name" for "a suite of products." JA25582;

JA25696; *see also* JA25637-38; JA25700-01.  Over time, Leader developed a host of unique applications under the Leader2Leader brand umbrella, including LeaderPhone, Smart Camera, Leader Alert, Leader Meeting, Leader Voicemail, LeaderFile, LeaderNews, LeaderChat, and LeaderContact.   JA24854; JA25638; JA25702-03.  Those different applications include, among other things, "an email tool, a task tool, a project management tool, calendaring, file upload," and "[c]onference calling."  JA24853, JA25707.

As with many software products, the Leader2Leader product suite changed over time.   JA25710-11.   Eventually, Leader incorporated the '761 patent's technology in that suite "as a plug in for any of th[e] technologies" listed above. JA25705.  Mr. McKibben testified repeatedly that Leader2Leader did not embody and could not have embodied the '761 technology at any time before Leader filed the provisional application on December 11, 2002, "because, it didn't exist" before then.   JA25758; *see also* JA25765.   He explained that Leader reduced that technology to practice only a day or two before filing the provisional application on December 11, 2002.  *See* JA25708-09; JA25711.

### C.   Facebook's Infringing Website

Defendant Facebook owns and operates a popular website available at www.facebook.com.   Created in 2004, the website began as a "directory for American college students" with few features.  JA25230; *see also* JA25222-23.

Over time, it has grown to become a medium that "people use to communicate with each other" and "to share their photos," among other things. JA25230; *see also* JA25222-23. Facebook users can now take a number of actions to "connect with their family and friends," including "[j]oining a group, or uploading a photo." JA25231; JA25312. At the time of trial, Facebook boasted 500,000,000 users worldwide. JA25306-08.

### D.   Procedural Background

### 1.   Pre-Trial

Leader filed this suit in November 2008. JA259-62. From March through November 2009, Facebook served multiple interrogatory responses regarding its invalidity contentions; not once did it mention the on-sale or public-use bars. Instead, Facebook filed a false-marking counterclaim in December 2009 alleging that Leader had falsely marked Leader2Leader as embodying the patented invention because, in Facebook's view, "Leader2Leader *does not practice* the invention disclosed by the claims of the '761 patent." JA4355 (emphasis added). Consistent with that position, Facebook's expert report on invalidity, submitted in April 2010 after the close of fact discovery, did not assert invalidity under the public-use and on-sale bars.

Just three months before trial and after the close of discovery, however, Facebook made an about-face. In its third supplement to an interrogatory

9

response, Facebook asserted that Leader2Leader did embody the patented invention after all, that it had done so since some unspecified time before December 11, 2002, and that public demonstrations and offers for sale of Leader2Leader before that date rendered the patent invalid.   The district court denied Leader's motion *in limine* to exclude that eleventh-hour defense.   *See* JA225 (DI 683); *see also* JA13142.

## 2.    Trial

Beginning on July 19, 2010, the parties tried this case to a jury over the course of seven days.  Leader accused Facebook of infringing claims 1, 4, 7, 9, 11, 16, 21, 23, 25, 31, and 32 of the '761 patent.  Leader presented two days of expert testimony that Facebook's website met each and every element of the asserted claims.  *See, e.g.*, JA10; JA25042-51.  Leader's expert supported his testimony with Facebook's website source code, Facebook's internal technical documents, Facebook's own statements, the Facebook help files, a demonstration of the Facebook website, the Facebook developer wiki, and Facebook's internal wiki. *See, e.g.*, JA26759-60; JA26761-64; JA26765; JA26766-67.

Facebook argued that three main prior art references anticipated the '761 patent or, in combination, rendered it obvious.   Facebook presented expert testimony on those references in which it attempted to show, among other things, that the references included all of the elements of the asserted claims.  *See, e.g.*,

JA22-27, JA29-30; JA25787-88. That question ultimately boiled down to a "battle of the experts," covering the better part of two trial days and nearly 500 pages of transcript. JA25.

With respect to the on-sale and public-use bars, however, Facebook did not present such proof. Instead, the only testimony came from the two inventors—Mr. McKibben and Mr. Lamb—who testified, as discussed above, that Leader2Leader did not include the patented technology before the critical date. *See, e.g.*, JA24836; JA24852; JA25758; JA25765. Facebook presented no other witnesses, expert or otherwise.

Instead, Facebook attacked Mr. McKibben's credibility, in part by questioning him about interrogatory responses in which Leader stated, in the present tense in 2009, that "Leader2Leader® powered by the Digital Leaderboard® engine *is* the only product or service provided by Leader which embod*ies*, either literally or under the doctrine of equivalents, any of the asserted claims of the '761 patent." JA34946 (emphases added); *see also* JA34952. Mr. McKibben, who verified the interrogatory responses, testified that Leader's responses were accurate because they referred to the 2009 version of the product, which—unlike the 2002 version—included the patented technology. JA25624-26; JA25715-16.

Facebook's counsel made clear from the outset that it believed the statutory bar defense turned, not on any affirmative evidence, but on Mr. McKibben's credibility.  During opening statements, Facebook's counsel told the jury that "I want you to listen to [Mr. McKibben's] testimony very carefully when you consider his credibility in this case."  JA24654; *see also* JA24656 ("You will decide whether that's credible.").  Counsel repeated these points in closing.  *See, e.g.*, JA26396 ("That touches on a pretty important point of credibility.").  Instead of pointing to any evidence that analyzed the alleged uses and offers on an element-by-element basis, he simply characterized the question as "a classical jury issue because you have to believe somebody on this one."  JA26422.  And he directed the jury to "the instruction you have to look at to assess credibility."  JA26446.

### 3.     The jury's verdict and the district court's JMOL decision

On July 28, 2010, the jury rendered its verdict.  It found that Facebook directly and literally infringed each and every asserted claim of the '761 patent. JA72.  The jury also rejected Facebook's prior art anticipation and obviousness defenses.  JA75-76.  But it found the '761 patent invalid under the on-sale and public-use bars of 35 U.S.C. § 102(b).  JA74.

Leader moved for judgment as a matter of law or for a new trial on that issue.  *See* JA20649.  Facebook responded that "[t]he sole question for the jury"

was when Leader2Leader first embodied the patented technology, and "[t]he answer to that question turned on the credibility of Mr. McKibben's trial testimony." JA23545, JA23552.   Citing extensive portions of the trial record, the district court agreed that Facebook's counsel "plac[ed] the jury's focus in connection with the on sale bar squarely on Mr. McKibben's credibility," and it concluded that the jury had made an "evident finding that Mr. McKibben was not testifying credibly." JA57, 54.

The court treated that credibility finding as "affirmative evidence" that Leader2Leader had embodied the patented technology before the critical date. JA54.   It further held that Leader's interrogatory responses could "reasonably be interpreted as an admission that the invention was ready for patenting prior to the critical date." JA55.   The court then concluded that the "combination" of Mr. McKibben's lack of credibility and the interrogatory responses was sufficient to support the verdict under the clear-and-convincing standard. JA54.

## STANDARD OF REVIEW

This Court reviews the denial of a motion for judgment as a matter of law ("JMOL") *de novo* by reapplying the JMOL standard, which is a question of regional circuit law. *Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342, 1360 (Fed. Cir. 2007). The Third Circuit has held that "[t]he question is not whether there is literally no evidence supporting the party against whom the

13

motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993) (quotation marks and citations omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1363 (Fed. Cir. 2004).

Because patents issued by the Patent and Trademark Office are presumed valid, 35 U.S.C. § 282, the jury could have reasonably found the patent invalid only if Facebook had carried its "heavy burden" of proving invalidity by "clear and convincing evidence." *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1145 (Fed. Cir. 2004); *see also Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1378 (Fed. Cir. 2005). That means that Facebook had to produce sufficient "hard facts," *Colorado v. New Mexico*, 467 U.S. 310, 320-21 (1984), to demonstrate that it is "highly probable" that the patent is invalid. *Price v. Symsek*, 988 F.2d 1187, 1191 (Fed. Cir. 1993) (quotation marks and citation omitted).

"Whether an invention was on sale within the meaning of § 102(b) is a question of law that [this Court] review[s] *de novo* based upon underlying facts, which [this Court] review[s] for clear error." *Electromotive Div. of Gen. Motors Corp. v. Trans. Sys. Div. of Gen. Elec. Co.*, 417 F.3d 1203, 1209 (Fed. Cir. 2005); *see also Invitrogen*, 424 F.3d at 1378 (public use).

Under Third Circuit law, this Court must "review a District Court's decision whether to grant a new trial on the basis that the verdict is against the weight of the evidence for abuse of discretion." *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 365 (3d Cir. 1999) (citations omitted).  For that purpose, this Court need *not* view the evidence in the light most favorable to the verdict.  *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980); Fed. R. Civ. P. 59(a)(1)(A).  A new trial should be granted when "the verdict is contrary to the great weight of the evidence, thus making a new trial necessary to prevent a miscarriage of justice." *Roebuck v. Drexel Univ.*, 852 F.2d 715, 736 (3d Cir. 1988).  District courts have broad discretion in deciding motions for a new trial, but that "discretion, of course, is not unbounded." *Id.* at 735 n.35.

## SUMMARY OF ARGUMENT

Facebook bore the heavy burden of proving a prior use or offer for sale by clear and convincing evidence.  But Facebook presented no affirmative evidence on the crucial question—whether Leader publicly demonstrated, or offered for sale, *the patented invention* before the critical date of December 11, 2002.  Facebook may have shown that Leader used the Leader2Leader brand and sold other products in the suite that used that brand.  But there is no evidence that Leader included the patented technology in that evolving product suite before the critical date.  Instead, the evidence shows that Leader completed the patented

15

technology immediately before filing its provisional patent application on December 11, 2002, and added it to Leader2Leader *after* that date.

Facebook's inability to prove an invalidating use or offer was not for lack of opportunity. Facebook had extensive discovery into Leader2Leader, including every version of the source code. Nonetheless, Facebook presented no expert testimony, no lay testimony, no source code, and no other technical evidence on this point.

Instead, lacking any actual evidence that supports its position, Facebook called Leader's chairman Michael McKibben as a witness, elicited testimony from him that Leader2Leader *did not include* the patented invention before the critical date, and asked the jury to disbelieve that testimony. As the district court recognized, Facebook thereby "plac[ed] the jury's focus in connection with the on-sale bar squarely on Mr. McKibben's credibility." JA57. That may have been effective theater before a jury—obscuring Facebook's lack of an actual case with an attack on the credibility of Leader's chairman—but it could not carry Facebook's burden of proof.

Even assuming the jury found Mr. McKibben not to be credible, his testimony does not constitute evidence that Leader2Leader *did* include the patented invention before the critical date. Under settled law and the jury instruction in this case, the jury was free to disregard Mr. McKibben's testimony. But as the

16

Supreme Court has held, "[n]ormally the discredited testimony is *not* considered a sufficient basis for drawing a contrary conclusion." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 512 (1984) (emphasis added). Instead, Facebook had to discharge its burden of proof with actual, affirmative evidence. If the law were otherwise, a party could always create a jury issue, and defeat judicial review of the jury verdict, simply by calling an adversary to the stand and asking the jury not to believe him. That is clearly insufficient in a typical case, and it is especially insufficient here, where Facebook bears the heightened burden of proving invalidity by clear and convincing evidence and the subject matter is highly technical.

Facebook also relied on two interrogatory responses in which Leader stated, in 2009, that "Leader2Leader® powered by the Digital Leaderboard® . . . embodies" (present tense) the patented technology. But that says nothing about whether Leader2Leader also embodied the technology in 2002. Indeed, the 2002 version of Leader2Leader was not even an issue in the case at the time that Leader responded to the interrogatories because Facebook had not yet asserted its eleventh-hour on-sale and public-use defenses. And even if the interrogatory responses were somehow ambiguous, ambiguous evidence is not clear and convincing as a matter of law. If the clear and convincing standard means anything, it means that Leader is entitled to JMOL on the record of this case.

17

## ARGUMENT

I.   **THE DISTRICT COURT ERRED IN DENYING JUDGMENT AS A MATTER OF LAW BECAUSE FACEBOOK DID NOT PROVE AN INVALIDATING PUBLIC USE OR OFFER FOR SALE BY CLEAR AND CONVINCING EVIDENCE.**

A.   **The Only Evidence Showed That Leader Did Not Offer For Sale Or Publicly Use** *The Patented Invention* **More Than One Year Before Filing The Patent Application.**

Under the Patent Act, "[a] person shall be entitled to a patent unless . . . the invention was . . . in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b). That provision applies only to embodiments of the claimed invention. Using or selling a different product or invention does not affect the patentability of the claimed one. "Hence, the first determination in the § 102(b) analysis must be whether the subject of the barring activity met *each of the limitations of the claim, and thus was an embodiment of the claimed invention.*" *Scaltech Inc. v. Retec/Tetra, L.L.C.*, 178 F.3d 1378, 1383 (Fed. Cir. 1999) (emphasis added); *see also Gemmy Indus. Corp. v. Chrisha Creations Ltd.*, 452 F.3d 1353, 1359-60 (Fed. Cir. 2006); *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1355 (Fed. Cir. 2002); *Dana Corp. v. Am. Axle & Mfg., Inc.*, 279 F.3d 1372, 1375 (Fed. Cir. 2002); *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1350 (Fed. Cir. 2000); JA26323 (jury instruction that Facebook had to prove that Leader publicly used or offered for sale "a product that met all the limitations of the asserted claims").

Because a party must prove invalidity by clear and convincing evidence, an accused infringer must prove that a prior use or offer for sale met each and every claim limitation through clear evidence "'such as memoranda, drawings, correspondence, and testimony of witnesses.'" *Sonoscan, Inc. v. Sonotek, Inc.*, 936 F.2d 1261, 1263 (Fed. Cir. 1991) (quoting *RCA Corp. v. Data Gen. Corp.*, 887 F.2d 1056, 1060 (Fed. Cir. 1989)). But Facebook offered no testimony, expert or otherwise; no source code; no technical documents; and no memoranda or correspondence from the time period in question that supported its position that the Leader2Leader product suite satisfied all of the claim limitations for all of the asserted claims before December 11, 2002.

In sharp contrast, Facebook did at least attempt to prove on an element-by-element basis, through expert testimony, that certain *other* prior art references, consisting of 261 pages of evidence, anticipated the '761 patent. *See, e.g.*, JA25847-75; JA27239-55; JA34698-728; JA34729-38; JA34955-5159. The jury correctly rejected that anticipation defense. Having done so for the other prior art, the jury could not have reasonably found a prior use or offer for sale on even less evidence.

Facebook's inability to prove its case on the statutory bars was not for lack of trying. Facebook had *every* version of the Leader source code in its possession because the district court ordered Leader to produce them. JA7074. If

Leader2Leader had actually embodied the '761 invention in 2002, which it did not, Facebook could and presumably would have paraded that code down Main Street and elicited expert testimony on an element-by-element basis. The only logical inference to draw from Facebook's lack of Leader source code or other technical evidence at trial is that it knew that the source code confirmed that Mr. McKibben's and Mr. Lamb's testimony was correct and Facebook was wrong.

Technical proof was especially important in this case because the asserted claims relate to highly technical back-end components of a software system. *See* p. 7, *supra*. Only source code and related technical documents would reveal the inner workings of Leader2Leader and whether it handled and stored data in the manner claimed using the necessary back-end components, including, for example, claim 1's context and tracking components. *See* JA256-57. Likewise, for claim 9, Facebook was required to prove that the 2002 version of Leader2Leader was capable of dynamically updating metadata. *See* JA257. Without the source code, Facebook could not do so. As a final example, dependent claim 32 requires storage of metadata in a storage component that facilitates many-to-many functionality. *See* JA258. Without reviewing the source code, it would be impossible to know whether the metadata or something else facilitated that functionality. When the subject matter includes structural components of a computer program, the source code is arguably the only way to ascertain these

technical details.   Nonetheless, Facebook did not rely on it, or on any other element-by-element proof.

Instead, Facebook's counsel suggested during closing argument that it was *Leader's* burden to introduce the source code and prove the absence of the '761 technology:  "Mr. McKibben was on the stand twice, and twice he did not put before you the versions of the product. He never showed you the product, did he?" JA26430.   That improper attempt to shift the burden of proof to Leader only confirms Facebook's fundamental failure to carry its own burden.  *Facebook* "bears the burden of proving the factual elements of invalidity by clear and convincing evidence.  That burden of proof never shifts to the patentee to prove validity." *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1359 (Fed. Cir. 2007).

Facebook's effort to fault Leader for Facebook's lack of evidence rings especially hollow in light of Facebook's flip-flop on this issue.  After the close of written discovery, Facebook filed a false-marking counterclaim on the ground that "Leader2Leader *does not practice* the invention disclosed by the claims of the '761 patent."  JA4355 (emphasis added).  Facebook's current position is diametrically opposed to that one because its on-sale and prior-use defenses rest on the assertion that Leader2Leader embodies the patented technology *and* did so before the critical date.  Facebook's decision to change positions *after* the close of discovery and

*after* the parties' exchange of expert reports prejudiced Leader by depriving it of fact and expert discovery on the issue.

Even so, Leader did introduce evidence—the only evidence in the record on this point—and it shows that the 2002 version of Leader2Leader *did not include* the patented invention.  The only witnesses that testified regarding Leader2Leader were the two inventors, Michael McKibben and Jeff Lamb.  According to their testimony, Leader2Leader was a brand name for a suite of products with multiple valuable components, such as LeaderPhone, Smart Camera, and other technologies.  *See* pp. 7-8, *supra*.  The composition of the Leader2Leader suite changed over time as Leader added new technologies, including, eventually, the '761 patented technology.  *See* p. 8, *supra*.  But Mr. McKibben and Mr. Lamb consistently testified that the Leader2Leader suite did not incorporate the patented technology before they filed the provisional patent application on December 11, 2002.  JA24829; JA24852; JA25708-09.

Indeed, the Leader2Leader platform *could not* have embodied the '761 technology before December 11, 2002, because it "did not exist at that time." JA25716; *accord* JA25758; JA25727.   Mr. Lamb confirmed that he and Mr. McKibben waited until December 11, 2002, to file the provisional application precisely because they did not complete "the code that was the embodiment of that invention/concept" until then.  JA24836-37; *see also* pp. 7, 11, *supra*.

**B.    The District Court Erred By Treating A Witness's Lack Of Credibility As Evidence That The Opposite Of His Testimony Is True.**

In the absence of any actual evidence that Leader2Leader embodied the '761 technology in 2002, the district court relied on "the jury's evident finding that Mr. McKibben was not testifying credibly . . . ." JA54.  That was legal error.  Under settled principles of law, a finding that a witness is not credible permits the jury only to disregard the witness's testimony; it is not affirmative evidence of the contrary.

The district court correctly recognized that the legal relevance of a witness's credibility is the key issue in this case.  As the court explained, Facebook "plac[ed] the jury's focus in connection with the on sale bar squarely on Mr. McKibben's credibility."  JA57.  Facebook emphasized Mr. McKibben's credibility from its opening statement through its closing argument, in which Facebook's counsel specifically highlighted the jury instruction regarding credibility.  *See* pp. 11-12, *supra*; JA26446.  But Facebook never pointed to any documentary or other evidence that analyzed the alleged uses and offers on an element-by-element basis.

Attacking Mr. McKibben's credibility may have been effective theater before a jury, but it did not remedy Facebook's failure to present clear and convincing evidence of its own.  The parties stipulated to a jury instruction that the jury could "*disregard* any testimony that [in] your judgment is not believable."

23

JA26293 (emphasis added). That instruction was correct—"[w]hen the testimony of a witness is not believed, the trier of fact may simply disregard it." *Bose*, 466 U.S. at 512.

But the district court erred by holding that, instead of *disregarding* Mr. McKibben's testimony, the jury could treat his testimony as *"affirmative evidence"* of the opposite of what he said. JA54 (emphasis added). The Supreme Court has made clear that "[n]ormally the discredited testimony is *not* considered a sufficient basis for drawing a contrary conclusion." *Bose*, 466 U.S. at 512 (citing *Moore v. Chesapeake & Ohio Ry. Co.*, 340 U.S. 573, 575 (1951)). The district court's JMOL ruling therefore ran afoul of both settled precedent and its own jury instruction in this case.

The district court asserted that "the legal proposition stated in *Bose* is not a hard and fast rule," and it drew factual distinctions between this case and that one. JA54. That was legal error. Because the legal principle does not turn on the facts of the case, the Third Circuit and other courts of appeals have repeatedly and broadly held, without regard to the specific facts of a case, that "a belief that . . . testimony is false will not support an affirmative finding that the reverse of that testimony is true." *Eckenrode v. Penn. R. Co.*, 164 F.2d 996, 999 n.8 (3d Cir. 1947); *accord, e.g.*, *United States v. Pechenik*, 236 F.2d 844, 847 (3d Cir. 1956); *Seidenstein v. Nat'l Med. Enters., Inc.*, 769 F.2d 1100, 1105 (5th Cir. 1985); *Roper*

*Corp. v. NLRB*, 712 F.2d 306, 310 (7th Cir. 1983); *Bankers Life & Cas. Co. v. Guarantee Reserve Life Ins. Co. of Hammond*, 365 F.2d 28, 33-34 (7th Cir. 1966).

Thus, Facebook could not prove its case "by putting [Mr. McKibben] on the stand, allowing him to indicate that [he did not offer the technology for sale], and asking the jury to disbelieve that testimony." *United States v. Zimmitti*, 850 F.2d 869, 876 (2d Cir. 1988). "[E]ven if the jury thoroughly disbelieved [Mr. McKibben], that disbelief is insufficient to support a verdict for [Facebook] in the absence of affirmative evidence." *Goldhirsh Group, Inc. v. Alpert*, 107 F.3d 105, 109 (2d Cir. 1997); *accord, e.g., Moore*, 340 U.S. at 577; *Bunt v. Sierra Butte Gold Mining Co.*, 138 U.S. 483, 485 (1891); *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 965 (5th Cir. 1995); *Dyer v. MacDougall*, 201 F.2d 265, 269 (2d Cir. 1952) (Hand, J.); 9A Wright & Miller, Federal Practice and Procedure Civil 2d § 2527 (3d ed. 2011).

"[W]ere the rule otherwise a case could be made for any proposition in the world by the simple process of calling one's adversary and arguing to the jury that he was not to be believed." *Roper*, 712 F.2d at 310 (quoting *Janigan v. Taylor*, 344 F.2d 781, 784-85 (1st Cir. 1965)). In addition to vitiating the burden of proof, that approach would also render judicial review of jury verdicts meaningless, as an unreviewable credibility determination would be considered sufficient affirmative evidence in and of itself. *United States v. Zeigler*, 994 F.2d 845, 849 (D.C. Cir.

1993); *Roper*, 712 F.2d at 310; *Dyer*, 201 F.2d at 269.   That is clearly not the law. Instead, parties must carry their burdens of proof with actual evidence, especially in cases such as this where the social disutility of a less than robust examination of the facts is very high.

The district court erred as a matter of law in asserting that the facts of this case somehow warrant an exception from those well-settled legal principles.   The court stated that the composition of Leader2Leader was solely within the knowledge of Mr. McKibben.   JA54.   Besides not being true (Mr. Lamb had such knowledge, as did many of Leader's programmers, *see* JA25761), that distinction is irrelevant.   The Supreme Court has squarely held that disbelief cannot support a verdict "even where the evidence is likely to be within the possession of [one party], as long as the [other party] has had a full opportunity to conduct discovery." *Anderson*, 477 U.S. at 257; *accord Bunt*, 138 U.S. at 485.   Thus, the courts have long held that disbelief of a witness is not affirmative evidence of a variety of matters known only to the witness, even the witness's knowledge or subjective intent.   *See, e.g.*, *Bose*, 466 U.S. at 512; *Nishikawa v. Dulles*, 356 U.S. 129, 137 (1958); *Pechenik*, 236 F.2d at 847; *Seidenstein*, 769 F.2d at 1105.   As discussed above, Facebook had full discovery of Leader2Leader, including its source code, technical documents, and engineers, and therefore had every opportunity to try to prove its case.

The district court also noted that there were only two possibilities in this case:  either Leader2Leader embodied the patented technology before December 11, 2002, or it did not. JA54.  But a fact is either true or false in most cases.  Thus, that distinction is no distinction at all.  Indeed, a long line of cases has applied the settled rule that disbelief of a witness is not affirmative evidence to the contrary in cases, like this one, where a fact was either true or false.  *See, e.g., Moore*, 340 U.S. at 575-77 (decedent fell from train either before or after it stopped); *Nishikawa*, 356 U.S. at 136-38 (defendant acted either voluntarily or involuntarily); *Goldhirsh*, 107 F.3d at 109 (defendant either did or did not make certain statements to certain people); *Dyer*, 201 F.2d at 268-69 (same); *Roper*, 712 F.2d at 310 (defendant either did or did not provide notice to another).

The only significant difference between this case and a typical one is that Facebook must prove invalidity by the heightened clear-and-convincing evidence standard.  *See, e.g., Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238 (2011).  That difference, of course, calls for stricter, not relaxed, standards of proof.  If a witness's lack of credibility is insufficient in a typical case, it is all the more insufficient in a case governed by the clear-and-convincing standard.

As the district court instructed the jury, to be clear and convincing, evidence must produce "a firm belief and conviction that it is highly probable that the matter sought to be established is true."  JA26297; *accord Price v. Symsek*, 988 F.2d

1187, 1191 (Fed. Cir. 1993). Because such evidence must be based on "hard facts," *Colorado*, 467 U.S. at 320-21, this Court and the Supreme Court have repeatedly cautioned that "[t]here is no room for speculation, inference or surmise" where, as here, the clear and convincing standard applies. *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) (quotation omitted); *accord Helvering v. Leonard*, 310 U.S. 80, 86 (1940); *Innovation Techs., Inc. v. Splash! Med. Devices, LLC*, 528 F.3d 1348, 1350-51 (Fed. Cir. 2008); *see also Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1372 (Fed. Cir. 2002).

Thus, this Court has overturned jury verdicts where the verdict winner presented evidence at trial, but the evidence did not rise above inference to the level of clear and convincing evidence. *See Eli Lilly*, 376 F.3d at 1364. In particular, this Court has found no clear and convincing evidence of a prior public use where "there is no *direct* evidence of [the invention's] use." *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1307 (Fed. Cir. 2002) (emphasis added). This Court also affirmed a grant of JMOL where the defendant had proved invalidity by a preponderance of the evidence, but not by clear and convincing evidence. *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1331, 1334 (Fed. Cir. 2003); *see also Intel Corp. v. ITC*, 946 F.2d 821, 830 (Fed. Cir. 1991).

At a bare minimum, lack of credibility is not clear and convincing evidence of anything other than the witness's credibility. It is not hard or direct evidence

showing a high probability that the opposite of the witness's testimony is true. Instead, such a conclusion would rest on speculation, inference, or surmise. Just as in all of the other cases cited above, therefore, this Court "must determine whether the *believed* evidence establishes" a fact. *Eastwood v. Nat'l Enquirer, Inc.*, 123 F.3d 1249, 1252 (9th Cir. 1997). Discredited testimony is not clear and convincing. *Id.* at 1255 n.12; *accord, e.g., Nishikawa*, 356 U.S. at 136-38.

### C. No Evidence, Let Alone Clear And Convincing Evidence, Supports The Jury Verdict.

The district court emphasized that it was *not* treating Mr. McKibben's testimony, or any other piece of evidence, as independently providing sufficient evidence to support the verdict. JA54. Instead, the court stated that "the combination of" Mr. McKibben's trial testimony, his deposition testimony, and Leader's interrogatory responses "together" suffice. JA54-55. Because *all* of those bases were necessary to the district court's conclusion that the evidence was sufficient, this Court must reverse if its reliance on *any* of them was erroneous. And the court's reliance on *each and every one* of them was erroneous because none provides any affirmative evidence that Leader2Leader included the patented technology before the critical date.

### 1.    A witness's lack of credibility does not become affirmative evidence for the opposite conclusion merely because a party produces *other* evidence.

As an initial matter, the district court erred by giving any weight to Mr. McKibben's credibility.    Whether or not Facebook presented *other* probative evidence (which it did not, as explained below), a witness's lack of credibility is not itself affirmative evidence for the reasons explained above.

The district court cited a few cases stating that a witness's lack of credibility may be considered along with other evidence.   JA55.   There is a circuit split on that question, with some circuits holding that a witness's lack of credibility is never affirmative proof, *Zeigler*, 994 F.2d at 849-50, and others holding that a jury may consider its disbelief of a witness's testimony to the "limited" extent that such disbelief "may . . . help make the evidence in a borderline case sufficient." *United States v. Tyler*, 758 F.2d 66, 70 & n.3 (2d Cir. 1985).   But even under the latter approach, in cases where "the jury's disbelief was relied on as a factor supporting affirmance, the evidence apart from the incredibility of the [witness's] testimony was sufficient or very close to sufficient." *Id.* at 69; *see also Zeigler*, 994 F.2d at 850 & n.4.

In contrast, where there was some affirmative evidence to support the verdict, but it was not sufficient or almost sufficient by itself, the Supreme Court and the courts of appeals have not allowed lack of credibility to "fill the

evidentiary gap." *Nishikawa*, 356 U.S. at 137; *see, e.g., id.* (evidence that defendant travelled to Japan while subject to conscription during wartime, submitted to conscription without protest, and testified untruthfully was insufficient to support finding, by clear and convincing evidence, that he served in Japanese military voluntarily); *Goldhirsh*, 107 F.3d at 109-10 (other evidence, "while perhaps not wholly irrelevant, . . . cannot support" the verdict); *Pechenik*, 236 F.2d at 847 (other evidence that made defendant's testimony "incredible" not sufficient). Considering credibility in anything other than a close, borderline case would vitiate the general rule discussed above.

In this case, as explained below, Facebook has not proffered other evidence that is "sufficient or very close to sufficient" to satisfy the clear-and-convincing standard. *Tyler*, 758 F.2d at 69.

### 2. Facebook produced no other evidence of *when* Leader incorporated the patented technology into its Leader2Leader product suite.

The district court relied on Mr. McKibben's deposition testimony that he could not, years later, remember the "specific point" at which Leader2Leader incorporated the claimed invention. JA25761. Although Facebook would treat that as an admission that Leader2Leader embodied the patented invention before the critical date, it is clearly not. A *lack* of recollection provides no evidence of whether the Leader2Leader product suite did or did not include the invention at

any particular point in time. *See, e.g., United States v. Weaver*, 267 F.3d 231, 245 (3d Cir. 2001); *Walton v. Halter*, 243 F.3d 703, 709-10 (3d Cir. 2001). At most, the jury might have viewed Mr. McKibben's uncertainty during his deposition as a reason to discredit and disregard his trial testimony. But again, a finding that Mr. McKibben was not credible would leave Facebook with *no* evidence, expert or otherwise, supporting its position. Facebook's attack on Mr. McKibben's credibility cannot mask its lack of actual evidentiary support.

The district court also construed two of Leader's interrogatory responses "as an admission that the invention was ready for patenting prior to the critical date." JA55. But the interrogatory responses say nothing about whether Leader2Leader included the patented technology before December 11, 2002.

Facebook's interrogatories stated: "For each claim of the '761 patent that [Leader] contends *is* practiced by any product(s) and/or service(s) of [Leader], identify all such product(s) and/or service(s) and provide a chart identifying specifically where each limitation of each claim *is* found within such product(s) and/or service(s)." JA34951 (emphases added); *see also* JA34946. Because Facebook used the present tense and did not specify any other timeframe, Leader responded in kind by naming the products that embodied the '761 patent claims *as of the date of the interrogatory (in 2009)*. JA25713-15. In relevant part, Leader answered, in the present tense, that "Leader2Leader® powered by the Digital

Leaderboard® engine *is* the only product or service provided by Leader which *embodies*, either literally or under the doctrine of equivalents, any of the asserted claims of the '761 patent." JA34952 (emphases added); *see also* JA34946.

Those responses say nothing about Leader products available at any point in the past, let alone the products available before December 11, 2002. Nor did Leader have any reason to address earlier versions of Leader2Leader in those responses. Facebook had not yet amended its invalidity contentions to flip-flop by asserting, contrary to its prior position, that Leader2Leader embodied the patented invention and therefore gave rise to the public-use and on-sale bars. *See* pp. 9-10, *supra*. Leader had no duty to anticipate defenses that Facebook had not yet raised.

The district court nonetheless faulted Leader for not including "qualifications in its actual interrogatory responses." JA48. No further qualifications were necessary: Leader's responses stated in plain English that Leader2Leader® powered by the Digital Leaderboard® "embodies" the patented invention, paralleling the present tense in Facebook's interrogatory. *See* JA34952.[1] Moreover, Leader *did* put qualification boundaries on the interrogatory responses

---

[1] When it suited their purposes, Facebook and its witnesses emphasized the importance of verb tense at trial. Indeed, just moments after questioning Mr. McKibben about Leader's interrogatory responses, Facebook's counsel highlighted "present tense" language in another exhibit and asked Mr. McKibben "that means it's happening; right?" JA25634; *see also* JA25403 (testifying that "stored" is "past tense" and not present or future tense); JA25689 ("that means the present tense, as of December 8, 2002?").

33

in the form of registered trademark symbols. *See id.*; *see also* JA25623. The PTO awarded trademarks for Leader2Leader® and Digital Leaderboard® on July 29, *2003*, and Dec. 16, *2003*, respectively. (Ser. Nos. 76267476 & 76271157). The use of "Leader2Leader®" therefore cannot refer to any product prior to July 29, 2003—well after the critical date.

Leader's use of the Leader2Leader brand name in both 2002 and 2009 does not permit an inference that the product suite included identical technological features during that entire span. *See Combined Sys., Inc. v. Def. Tech. Corp. of Am.*, 230 F. Supp. 2d 544, 550 (S.D.N.Y. 2002) (citing *Tec Air, Inc. v. Denso Mfg. Mich. Inc.*, 192 F.3d 1353, 1359 (Fed. Cir. 1999)). Just as a classic Corvette did not contain an iPod dock, and the original version of Microsoft Office did not include every feature in the current version, the undisputed testimony at trial was that Leader2Leader evolved over time and did *not* include the '761 technology before December 11, 2002. *See* pp. 7-8, 11, *supra*. Especially in the ever-changing computer age, there is no basis for assuming that a product like Leader2Leader, which combined a number of technologies into a suite, contained the same features seven years earlier.[2]

---

[2] For example, nobody in their right mind would believe that Windows®, released in 1985, had the same technology as Windows® Vista®, released in 2007. They both share the brand name Windows, but the technology is very different. The same is true for Leader2Leader and the product released years later under the brand name Leader2Leader® powered by the Digital Leaderboard®. They share a

Even if Facebook's interrogatory questions and Leader's responses were ambiguous, an ambiguous concession would hardly be clear and convincing evidence. *See Cortez-Acosta v. INS*, 234 F.3d 476, 481-82 (9th Cir. 2000) (per curiam). "Evidence of vague, indefinite, or ambiguous statements will not suffice." *EDO Corp. v. Beech Aircraft Corp.*, 911 F.2d 1447, 1454 (10th Cir. 1990) (affirming grant of summary judgment of no clear and convincing evidence). Thus, a "single statement, whose meaning is ambiguous in the context of other" evidence, is not clear and convincing. *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1189 (9th Cir. 2001); *see also Tucker v. Fischbein*, 237 F.3d 275, 286 (3d Cir. 2001) (Alito, J.) (affirming summary judgment because "equivocation" is not clear and convincing); *Vanderbilt Univ. v. ICOS Corp.*, 601 F.3d 1297, 1306 (Fed. Cir. 2010) (where two interpretations of the evidence are "equally plausible," it is less than clear and convincing).

Moreover, the only testimony about the interrogatories confirmed that they did not refer to 2002. Mr. McKibben—who verified the responses—testified at trial that he understood the interrogatories to refer only to products and services that "practice the '761 patent today"—that is, at the time of the interrogatories. JA25713-15. This Court has held that even "conflicting testimony as to what [a]

similar brand name, but all evidence at trial was that these products use different technology. *See Helifix*, 208 F.3d at 1350 (mere mention of the "DryFix" brand name in a trade show brochure and other letters failed to show a tool that met all the limitations; "there were many tools that had been called 'DryFix tools'").

quotation actually included" prevents a finding of invalidity by clear and convincing evidence. *Sonoscan*, 936 F.2d at 1263. Here, there is no conflict; the interrogatory responses themselves and all of the testimony about them consistently refute Facebook's position.

The cases cited by the district court regarding admissions are therefore inapposite. Even setting to the side the absence of a relevant admission here, those cases simply hold that a plaintiff may not allege infringement by products sold before the critical date and then turn around and assert, for invalidity purposes, that those very same products did not anticipate the patent by including the patented technology. *See Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1366 (Fed. Cir. 2000); *Cummings v. Adidas USA*, 716 F. Supp. 2d 323, 332 (S.D.N.Y. 2010). That is a straightforward application of the maxim that "[t]hat which infringes, if later, would anticipate, if earlier." *Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889). Their point is that a plaintiff—which bears the burden of proof on infringement— cannot set forth vague, broad infringement allegations and expect to escape the consequences. In this case, however, Leader's infringement theories concern only the '761 patent, and have nothing to do with Leader2Leader. So, Leader is not taking inconsistent positions for purposes of infringement and validity. Instead, the question is whether Facebook can create a jury issue by pointing to interrogatory responses and testimony that do not support its position, especially

under the clear-and-convincing standard.   And the answer to that question is clearly no.

Because the district court rested its judgment on the combination of Mr. McKibben's trial testimony, his deposition testimony, and the interrogatory responses, *see* JA54-55, and none of those factors supports the verdict for the reasons discussed above, Leader is entitled to reversal of the district court's denial of JMOL.[3]

### D.    The Clear-And-Convincing-Evidence Standard Removes Any Doubt That Leader Is Entitled To JMOL.

Even if the Court concluded that Facebook had offered *some* evidence on point, Leader would still be entitled to JMOL.   If requiring clear and convincing evidence of invalidity is to be "more than an empty semantic exercise," it must

---

[3] The district court cited some "additional evidence" in a footnote, most of which simply indicates that the inventors conceived of the invention in 1999 and that some version of Leader2Leader was "operational" before the critical date.   *See* JA58 n.16 (quotation marks omitted).   As the district court appeared to recognize, *see id.*, none of that evidence addresses the dispositive question whether the patented technology was reduced to practice and added to Leader2Leader before the critical date.   The district court's footnote speculates that Leader *may* have "offered to sell the patented technology in the few days preceding December 11, 2002." *Id.*   But Mr. McKibben's testimony that the patented technology "wasn't done until days before" the December 11, 2002, filing, JA25709, provides no evidence that Leader immediately added the technology to Leader2Leader and publicly demonstrated it or offered it for sale within a few days' span before the critical date.   *See also* JA25675; JA25711-12; JA25716; JA25756-58.   That is, at most, unlikely speculation.   And the only actual evidence is to the contrary.

mean that the jury's verdict here cannot stand. *Addington v. Texas*, 441 U.S. 418, 425 (1979) (quotations and citation omitted).

Courts have repeatedly held that *some* evidence is not *clear and convincing* evidence. *See, e.g., Johnson v. Bell*, 605 F.3d 333, 339 (6th Cir. 2010); *Barnett v. Roper*, 541 F.3d 804, 812 (8th Cir. 2008); *Huerta-Guevara v. Ashcroft*, 321 F.3d 883, 886 (9th Cir. 2003); *Crowe v. Smith*, 261 F.3d 558, 566 (5th Cir. 2001); *Tucker*, 237 F.3d at 286; *Rajala v. Allied Corp.*, 919 F.2d 610, 628 (10th Cir. 1990); pp. 27-28, *supra*.  Instead, as discussed above, Facebook had to proffer evidence from which a jury could reasonably conclude that "it is highly probable that" the patent is invalid. JA26297; *accord Price*, 988 F.2d at 1191.

Thus, this Court has overturned jury verdicts where the verdict-winner proffered circumstantial, inferential, or ambiguous evidence that did not rise to the level of clear and convincing evidence. *See* pp. 27-28, *supra*.  That is the most that could be said of Facebook's evidence here.  Moreover, this Court affirmed a grant of JMOL where the defendant proved invalidity by a preponderance of the evidence, but not by clear and convincing evidence. *See* p. 28, *supra*.  Facebook has not even done that.

### E.     In The Alternative, A New Trial Is Appropriate.

At a minimum, this Court should order a new trial.  It is well settled that courts need not view the evidence in the light most favorable to the verdict when

determining whether to grant a new trial. *See, e.g.*, *United States v. Silveus*, 542 F.3d 993, 1004 (3d Cir. 2008); *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1371 (Fed. Cir. 2009); *Jennings v. Jones*, 587 F.3d 430, 439 (1st Cir. 2009). Instead, a new trial is appropriate "where there is insufficient evidence to support the verdict or where the verdict was against the great weight of the evidence." *Greenleaf*, 174 F.3d at 365 (citations omitted).

As discussed above, Facebook has *at most* inference on the key issue. That makes this a classic case for a new trial because the Third Circuit has held that a new trial is especially appropriate when the verdict is based on speculative inferences, as opposed to hard evidence. *Roebuck*, 852 F.2d at 735-36; *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 211-12 (3d Cir. 1992); *Am. Bearing Co. v. Litton Indus., Inc.*, 729 F.2d 943, 952-53 (3d Cir. 1984).

Although the district court has broad discretion in considering whether to grant or deny a motion for new trial, the Third Circuit has reversed denials of new trial motions where the "verdict was against the great weight of the evidence." *See Cooper Distrib. Co. v. Amana Refrigeration, Inc.*, 63 F.3d 262, 277-78 (3d Cir. 1995) (Alito, J.); *see also Greenleaf*, 174 F.3d at 367. In this case, reversal is particularly appropriate because, in the absence of any affirmative evidence, the jury's verdict rests on "mere conjecture and speculation." *Urti v. Transport Commercial Corp.*, 479 F.2d 766, 769-70 (5th Cir. 1973) (reversing denial of

motion for new trial); *see also Georgia-Pacific Corp. v. United States*, 264 F.2d 161, 166 (5th Cir. 1959) (same).  At a bare minimum, therefore, this Court should remand for a new trial on the public-use and on-sale bars.

## CONCLUSION

This Court should reverse and remand for entry of judgment as a matter of law or, at a minimum, a new trial.

Respectfully submitted on this 25th day of July 2011.

Paul Andre
Lisa Kobialka
KING & SPALDING LLP
333 Twin Dolphin Drive
Suite 400
Redwood Shores, CA
(650) 590-0700

Daryl Joseffer
Adam Conrad
KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.
Washington, DC 20006
(202) 737-0500

*Counsel for Plaintiff-Appellant Leader Technologies, Inc.*

# ADDENDUM

# <u>TABLE OF CONTENTS</u>

<span style="color:red; border:1px solid red;">Click on item to download</span>

Order for Entry of Final Judgment,
  *Leader Techs., Inc. v. Facebook, Inc.*, No. 08-862
  (D. Del. Mar. 28, 2011) ............................................................. JA1

Memorandum Opinion (Stark, J.)
  *Leader Techs., Inc. v. Facebook, Inc.*, No. 08-862
  (D. Del. Mar. 14, 2011) ............................................................. JA3

U.S. Patent No. 7,139,761 .......................................................... JA228

## PROOF OF SERVICE

This is to certify that I have this day served the foregoing "Opening Brief of Plaintiff-Appellant Leader Technologies, Inc." upon counsel for Defendant-Appellee, by depositing two copies of the brief with UPS for delivery to the party's counsel as follows:

Thomas G. Hungar
William G. Jenks
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC  20036-5306
(202) 955-8558

Heidi L. Keefe                              Michael Rhodes
Mark R. Weinstein                           COOLEY LLP
COOLEY LLP                                  101 California Street, 5th Floor
3175 Hanover Street                         San Francisco, CA  94111
Palo Alto, CA  94304-1130                   (415) 693-2000
(650) 843-5000

*Counsel for Defendant-Appellee Facebook, Inc.*

This 25th day of July 2011.            _____
                                        Stacy Lima

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned certifies that the foregoing brief, exclusive of the exempted portions as provided in Fed. R. App. P. 32(a)(7)(B)(iii) and Fed. Cir. R. 32(b), contains 8,946 words and therefore complies with the type-volume limitations of Fed. R. App. P. 28.1(e)(2)(A)(i).

_____
Daryl Joseffer

July 25, 2011