UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PAUL D. CEGLIA,

                                    Plaintiff,

v.

MARK ELLIOT ZUCKERBERG, Individually, and
FACEBOOK, INC.

                                    Defendants.

Civil Action No. : 1:10-cv-00569-RJA

**MOTION FOR SANCTIONS FOR
SPOLIATION OF FACEBOOK
CONTRACT BY DEFENDANTS**

## MEMORANDUM

Defendants' experts had possession, custody and control of the Facebook Contract from July 14, 2011, July 15, 2011, July 16, 2011 and July 19, 2011.   An intervening two days, the contract was kept in a hotel safe guarded 24 hours a day by an armed guard.  Declaration of Paul Argentieri, Doc. No. 193 at ¶14-19.

Facebook's experts over-exposed the Facebook Contract to ultra-violet (UV) light.  Declaration of Document Examination Expert Larry Stewart, Doc. No. 209 at ¶14-16,  ¶20,  ¶22,  ¶29,  ¶39-40,  ¶46-48 and see also Declaration of Document Examination Expert James Blanco Doc. No. 210 at ¶9-11, ¶14-15, ¶17-18.

By the time the Facebook Contract had been evaluated and over-tested during those four days, it now had a distinctly yellow tint on the front of both pages of the contract.

As further analysis of the video of the Facebook expert's evaluation and

treatment of the Facebook Contract continues, it is now indisputable that another expert repeatedly handled the Facebook Contract without wearing gloves. This mishandling meant that dirt, skin cells, oils and other debris commonly present on human hands was transferred to the Facebook Contract *while it was in the midst of evaluation* by other Facebook experts.

This treatment of the key evidence in a case involving a claim worth billions of dollars is egregious. It is especially egregious that other experts in the room did not immediately stop that expert from handling the Facebook Contract in a way that undoubtedly contaminated it. See video clip below which has been sped up for the court's benefit to quickly review the evidence.



Watch as Facebook expert repeatedly touches the face of the page of the Facebook Contract with his fingertips of both hands.

Eventually, recognizing this repeated rookie protocol breach, an expert from across the room, to the right of the camera's view, motions quickly with his left hand to the ungloved expert urging him to don gloves. The mishandling expert moves out of view of the camera and obscures his efforts to finally put gloves on.



Notice this Expert Motion with his left hand to the expert on the left of the screen to put his gloves on.

Late in day two of testing Facebook Contract is already appearing discolored.

But, as they often say in hokey late night television commercials, that's not all.

Even after mishandling the Facebook Contract with his hands, the expert picks up the contract, carries it to the end of the conference table and sets it *on top of a desktop computer tower* that has been running and generating heat all day.

Exhibit A to this motion is a time lapse video showing how much time elapses with the Facebook Contract casually sitting on and then eventually hanging from this desktop computer. It rests there for nearly an hour. Eventually, another expert removes the document from its haphazard storage place and immediately

subjects it to another test inside a machine which projects UV light onto it yet again.

This ungloved handling and subsequent casual mishandling of the Facebook Contract has damaged the its evidentiary value.

Despite the Facebook Contract being more than eight years old, that alone does not render it impossible to recover usable fingerprints.  Declaration of Thomas Martin at ¶10-11.  Even unnecessary contact with anything other than the corner of the Facebook Contract with a gloved hand can make otherwise usable and recoverable fingerprints unrecoverable.  Id. at ¶12.

When the Facebook Contract was handled by Defendant Zuckerberg and Mr. Ceglia at the time of its signing in 2003, it is quite possible that usable fingerprints of both parties were left on some surface of the contract.   Id. at ¶13.   When Facebook's expert touched the document with his ungloved hand, fingers, finger tips and heel of his palm, he likely caused new latent fingerprint impressions to be placed on that piece of paper.  Id. at ¶14.  That ungloved handling of the Facebook Contract has resulted in the placement of new latent prints on the document over what would have been usable, recoverable fingerprints from the time of its signing, were they present. Id. at ¶14.

Experts in the field of fingerprint recovery and analysis know that standard protocols when dealing with documents as evidence require no handling of the document without gloves and minimal handling of the document even with gloves. Id. at ¶16-17.

Facebook's experts have engaged in a pattern of either intentionally or recklessly mishandling the key evidentiary document in this case. This expedited discovery has caused Facebook's experts to commit expedited destruction of the key evidence. The excessive UV exposure by Facebook's experts has caused obvious yellowing and now mishandling of the document without gloves has ruined the possibility of recovering usable prints from the wide surface of the document touched by the expert with his bare hands and fingers. Even their expert's casual and one might say sloppy handling of the document, placing it on top of a running computer which has been generating heat all day, speaks volumes about the reliability of the results of testing performed by these experts.

Finally, the ungloved handling of the Facebook Contract as depicted in the video herein is only a small slice of time that the document was actually repeatedly handled by Facebook's expert without gloves. In real time, the expert is seen touching his ungloved hand to the surface of the document over a period of at least twenty minutes.

## **CONCLUSION**

Mr. Ceglia respectfully requests the Defendants be sanctioned for their conduct spoliating the key evidence in this case. The sanctions for the court's consideration should include:

**1.** An order prohibiting Defendants from disputing the authenticity of the Facebook Contract; or

**2.** An order directing the jury to presume that absent Defendants' experts

mishandling of the Facebook Contract, it is likely that usable fingerprints would

have been recovered and that evidence would have been helpful to Mr. Ceglia's

case; or

**3.** An order prohibiting Facebook from mentioning to the jury in any way, or

questioning any witness about the absence of usable fingerprints recovered from

the Facebook Contract.

Respectfully submitted,

/s/Dean Boland

Paul A. Argentieri                    Dean Boland
188 Main Street                       18123 Sloane Avenue
Hornell, NY 14843                     Lakewood, Ohio 44107
607-324-3232 phone                    216-236-8080 phone
607-324-6188                          866-455-1267 fax
paul.argentieri@gmail.com             dean@bolandlegal.com