UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
--------------------------------------- x
PAUL D. CEGLIA,

        Plaintiff,

v.

MARK ELLIOT ZUCKERBERG and
FACEBOOK, INC.,

        Defendants.
--------------------------------------- x

Civil Action No. 1:10-cv-00569-RJA

**DECLARATION OF ALEXANDER H. SOUTHWELL**

I, ALEXANDER H. SOUTHWELL, hereby declare under penalty of perjury that the following is true and correct:

1. I am an attorney licensed to practice law in the State of New York and admitted to practice before this Court. I am a partner in the law firm of Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), counsel of record for Mark Elliot Zuckerberg and Facebook, Inc. in the above-captioned matter. I make this declaration, based on personal knowledge, in support of Defendants' Motion to Strike and for Sanctions.

2. Pursuant to the Court's Hard-Copy Document Inspection Protocol (Doc. 84), the parties agreed to jointly engage a videographer to videotape the hard-copy document inspection. The parties agreed to engage Robert Gianadda of Legal Video Services of Buffalo and to split the cost of documenting the inspection on video. The parties further agreed to the terms of a confidentiality agreement that Mr. Gianadda signed on the first day of the inspection.

3. During the hard-copy inspection, Mr. Gianadda videotaped the proceedings and he has provided copies of the video of the inspection to both parties.

4.      On November 9, 2011, my colleague Matthew Benjamin got a message from Mr. Gianadda, in which Mr. Gianadda relayed that Plaintiff's counsel Dean Boland had called him to ask about "color differentiation" on the video of the inspection.

5.      On November 10, 2011, I spoke to Mr. Gianadda, who informed me that Plaintiff's counsel, Paul Argentieri, had called him a day or so earlier to let him know there was a new Plaintiff's lawyer, Dean Boland, who would be calling with some questions. Mr. Gianadda told me that he had then spoken to Mr. Boland, who asked about his role and procedures as the videographer. Mr. Boland also asked about some color differentiation on the video, which Mr. Gianadda told me he explained to Mr. Boland as being the result of different light sources—that on the day the inspection was in a law office in Chicago, there was abundant natural light, whereas on the days the inspection was at Harris Beach's offices in Buffalo, there was predominantly artificial light. Mr. Gianadda also mentioned to me—and told me he had told Mr. Boland—that he was an independent third-party and did not want to be in "the middle" of any issues in the case.

6.      At around 5:00 p.m. on November 10, 2011, Mr. Gianadda called me and told me that Mr. Boland had called him again, asked him a number of questions about his procedures, and then asked him to execute a declaration. I told Mr. Gianadda that I intended to talk to Mr. Boland about this request. Mr. Gianadda told me that he would not execute the declaration until I had spoken to Mr. Boland because he did not want to get involved in any disputes between the parties.

7.      I was in the process of drafting an email to Mr. Boland when, at approximately 8:46 p.m. on November 10, 2011, I received an email from Mr. Gianadda, in which he sent an executed version of the declaration Mr. Boland had drafted for him (the "November 10th

Declaration"). Later that evening, I spoke to Mr. Gianadda again. He informed me that Mr. Boland had pressured him to execute the declaration that night, although Mr. Boland had not explained why it needed to be executed that night or how the executed declaration would be used. Mr. Gianadda told me that wanted to stay out of the middle of any dispute and had told Mr. Boland that. He said that Mr. Boland's response was that he should simply execute and send the declaration because that would be a "convenient way to start a dialogue" between Mr. Boland and me concerning the content of a declaration from Mr. Gianadda.

8. The next morning, November 11, 2011, Plaintiff filed Mr. Gianadda's November 10th Declaration (Doc. 212) in support of Plaintiff's motion for sanctions (Doc. 188). Soon thereafter, I spoke to Mr. Gianadda, who was upset that Mr. Boland had filed the November 10th Declaration and had not used it as a way to "start a dialogue," as Mr. Boland had said. Mr. Gianadda said that if he had known that Mr. Boland was going to use the November 10th Declaration in court as evidence, he would not have signed it. Mr. Gianadda also noted that most of his conversation with Mr. Boland focused on his procedures and role, and that the discussion of Mr. Gianadda's observations of the documents presented for inspection, which Mr. Boland recited in paragraphs 14 through 17 of the November 10th Declaration, was very quick. Mr. Gianadda clarified to me that he did not mean to comment on the shade or intensity of the white of the documents and only meant that the paper was not some other color like blue or green. Mr. Gianadda commented to me that he felt "played" or misled by Mr. Boland who, he thought, was not candid or forthright with him. I discussed these issues with Mr. Gianadda, along with the circumstances of his interactions with Mr. Boland, while Mr. Gianadda was at the offices of Harris Beach with Defendants' counsel Terrance Flynn; I was on the telephone. We prepared together a draft declaration based on what Mr. Gianadda told us and Mr. Gianadda reviewed that

draft declaration multiple times. In a number of places, he made clarifications to the language in the draft declaration and ultimately confirmed to me that he had reviewed every word and agreed with every word. He also acknowledged that this would be a superseding declaration to replace the November 10th Declaration and that we would file his new declaration with the Court to correct the record. He then executed his November 11th declaration, which is being submitted to the Court today with Defendants' Motion to Strike and for Sanctions.

9. On November 12, 2011, I saw that Mr. Boland had posted on the "blog" portion of his law firm Web site a description of Mr. Gianadda's November 10th Declaration, which he had filed on Plaintiff's behalf. In that post, Mr. Boland touted that a "neutral third party" had confirmed that the documents presented for inspection were "white" at first and therefore this "third party" had confirmed that Facebook had damaged the purported contract. A true and correct copy of that blog post is attached hereto as Exhibit A.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 15th day of November, 2011 at New York, New York.

Alexander H. Southwell