UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PAUL D. CEGLIA,

Civil Action No. : 1:10-cv-00569-RJA

                                    Plaintiff,

**MEMORANDUM OF LAW IN
SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING
ORDER AND FOR SANCTIONS
AGAINST DEFENDANTS AND
DEFENSE COUNSEL**

v.

MARK ELLIOT ZUCKERBERG, Individually, and
FACEBOOK, INC.

                                    Defendants.

## MEMORANDUM

## BRIEF BACKGROUND FACTS

Plaintiff has come across evidence that Defendants and defense counsel have suppressed evidence, made fraudulent arguments related to that suppressed evidence and actively sought, encouraged, urged and solicited destruction of that evidence from those whom have possession of it.  They have engaged in these acts knowingly, intentionally and with the full knowledge of the litigation hold responsibilities they accepted very early on in this case.

## THE SUPPRESSED EVIDENCE

That evidence consists of the forensic copies of at least five computers belonging to and used by Defendant Zuckerberg while a student at Harvard. Exhibit A at 19-21.   Those computers are "electronic media" also known as "electronic assets" containing "electronic evidence" as those terms have been used

throughout this litigation.

These electronic assets contain electronic communications by Zuckerberg from 2003-2004 while a student at Harvard.   Exhibit G.   Those electronic assets potentially include an email server.  Id.  Forensic copies of those five computers, and others listed on Exhibit A at 19-21, were created by Parmet and Associates (Parmet) following an order entered in the ConnectU case.   Id. at 2, just above the start of paragraph 1.

This source of electronic evidence has only been searched in that case for evidence of "Computer Code."  Id. at 7, ¶4.  It has never been searched for any other information, including evidence of electronic communications.   ("Only files, file fragments, or metadata related to the aforementioned computer program code or database definitions shall be collected and considered as possibly relevant.")  Id. at 8.

## IMMINENT IRREPARABLE HARM

That evidence is in danger of imminent destruction per the court order that is Exhibit A entered in the *ConnectU v. Facebook, Zuckerberg, et. al.* Case No. 1:07-cv-10593, United States District Court for the District of Massachusetts.

The evidence is set to be "erased" and "scrubbed" "[u]pon termination of this litigation and all appeals…."  Id. at 15, ¶13.

Defense counsel in this case, namely from the Orrick Law Firm, have been communicating with relevant parties in the ConnectU case demanding the evidence be destroyed and seeking confirmation of its destruction as recently as August of

2011.  See Exhibits E and F, communication from Orrick Law Firm attorney Monte Cooper seeking such evidence destruction confirmation.   Exhibit F is specifically directed at a confirmation from Parmet that all evidence listed in the Exhibit A at 19-21 has been destroyed by Parmet.   Plaintiff's counsel is unaware of whether Parmet or any other parties have complied with Defendants' counsel's demands up to this point, however, they could comply at any moment destroying all the relevant evidence listed in Exhibit A at 19-21.

The docket in the ConnectU case reveals that there are only post-settlement motions pending that could be ruled upon, *and denied,* at any time triggering the destruction of the now preserved computers.  Exhibit B - Docket in ConnectU case.

Defendants in ConnectU, the same Defendants in this case, have filed a sealed motion urging the court deny those post-settlement motions to preserve evidence.  Exhibit B at 15, the description for ConnectU case Docket Number 351. Defense Counsel in this case, namely the Orrick law firm, have solicited the destruction of the evidence in Exhibit A at 19-21.  See Exhibits E and F.

The forensic copies of the five computers owned and used by Defendant Zuckerberg in 2003-2004 while a Harvard student, listed in Exhibit A, are scheduled to be destroyed.   Id. at 15, ¶13.   Defendants in this case are actively petitioning the court in the ConnectU case to hasten destruction of that evidence. Exhibit B at 15, the description for ConnectU case Docket Number 351.  Defendants and defense counsel in this case have actively sought destruction of this relevant and discoverable evidence even after this case was filed!  As of this date, Plaintiff

has no evidence that items in Exhibit A at 19-21 has been destroyed.   If that evidence is destroyed, electronic communications, electronic data, electronic evidence and electronic assets relevant to multiple issues in this case will be permanently unrecoverable.

<div align="center">

### RELEVANCE OF THE EVIDENCE SUPPRESSED
### BY DEFENDANTS AND THEIR COUNSEL

</div>

Since the inception of this case, the parties and the court have discussed the inspection of Ceglia's "electronic assets," "electronic media," "electronic records," "electronic evidence" and "electronic data."   (Doc. No. 97-3 "[T]he Electronic Asset inspection will begin at 9:00 am."; Defendants reminded Ceglia, "Plainitiff has had an ongoing duty to preserve all evidence relevant to this litigation [including] Every computer or other electronic media that Plaintiff has used since the commencement of this litigation and before is relevant….[W]e expect that all of those electronic assets...will be produced to Defendants…."  Id. at 2.; "I write to raise a few issues regarding the Electronic Asset inspection which began today."  Doc. No. 97-4 at 2. "all of the Electronic Assets…."  Doc. No. 97 at 1.  "electronic media."  Id. at 2. "electronic documents."  Id. at 5, 7; "electronic media" Doc. No. 44 at 1, Notice of Motion for Expedited Discovery.  "need to preserve electronic evidence…."  Doc. No. 45 at 4.  "Electronic records."  Id. at 19, 20. "electronic evidence."  Doc. No. 72 at 10; "Ceglia must produce all of his hard-copy and electronic records supporting his claims."  Id. at 11; "A forensic examination of all computers and other electronic media in Ceglia's (or his parents') possession to identify documents or other

electronic evidence [that is] relevant...."  Id. at 12;  "Embedded in the electronic

data on Ceglia's computer...."  Doc. No. 99 at 4;  "Ceglia must provide a certification

attesting that he has produced *all* potentially relevant computers and electronic

assets in his possession or under his control."  Id. at 13;  "Directing Ceglia...to

certify...he has produced all the electronic assets called for by the Order."  Doc. No.

102-1 at 2, Declaration of Defense Counsel Southwell; "electronic communications."

Doc. No. 107 at 6, Decision and Order of the Court; "electronic data" Doc. No. 110 at

4.  "Ceglia...failed to disclose the existence of a...computer or the removable storage

devices."  Id. at 8-9;  "Electronic assets" Doc. No. 111 at ¶2; "Plaintiff shall identify,

by name and location...the following...electronic media."  Doc. No. 117 at ¶2, 3

Order; "electronic assets" Doc. No. 121 at 39-40, 41, 44, 50, 58, 68, 102, 103, 119;

"electronic files, computers, electronic media and the like."  Id. at 40-41, statement

of the Court.  "electronic records" Id. at 64, statement of the Court. "electronic

media in his possession...."  Doc. No. 123 at 2; "electronic media in his

possession...."  Id. at 3;  "electronic media" Doc. No. 129 at 3;  "Electronic Asset

Protection Protocol" Id. at 4-5; "electronic media" Doc. No. 137 at 3; "electronic data"

Doc. No. 155 at 5; "electronic media" Id. at 8; "electronically stored evidence" Id. at

12).  This purposefully exhaustive list demonstrates that the universe of

information relevant to the issues in this case includes, all the terms above used in

both motions by Defendants, but also orders of this court.

　　　The information contained on the five Zuckerberg computers and other

electronic media contained at Exhibit A at 19-21 are "electronic assets" and do

contain "electronic files," "electronic data," "electronic records" and "electronic evidence."  The items on Exhibit A at 19-21 are relevant just as Defendants' argued and this court found Ceglia's "electronic assets" have been relevant in fashioning orders regarding the exhaustive searching of same for relevant and discoverable evidence.

## ELECTRONIC COMMUNICATION EVIDENCE ON SUPPRESSED ELECTRONIC ASSETS

Instant messaging is a form of electronic communication transmitted by computers and in the past few years, via applications on smart phones like Apple's iPhone.  In mid-2010, a selection of allegedly bonafide[1] instant messages (IMs) were published in the Silicon Alley Insider[2] apparently authored by Mark Zuckerberg at the time he was a student at Harvard.  Exhibit C, *The Business Insider* article.  *The New Yorker* reported in September 2010 that Facebook executives and attorneys reviewed these leaked IMs in a January 2006 meeting.  Exhibit D, *The New Yorker* article.  These IMs were located on one or more computers Defendant Zuckerberg used while a Harvard student.

The extent of Defendant Zuckerberg's use of IMs and other electronic communications using the computers in Exhibit A at 19-21 is detailed in filings in

---

[1] As indicated, it is not known to Plaintiff whether these IMs are genuine. The "allegedly bonafide" qualifier applies to each reference to "lMs." Likewise, Plaintiff cannot know if *The New Yorker* article is accurate. Any reference to that article in this brief should be viewed with this understanding in mind.

[2] This publication is now known as the *Business Insider*. See N. Carlson, "At Last - The Full Story Of How Facebook Was Founded," Business Insider, Mar. 5, 2010, <http://www.businessinsideLcom/how-Facebook-was-founded-2010-3> (Last Accessed November 23, 2011).

the ConnectU case, namely Doc. No. 361-4 attached to this motion as Exhibit M.

"Facebook Defendants have recently located additional electronic devices that we believe may have responsive information.  We currently have reason to believe the devices we have located are (a) *Mark Zuckerberg's original computer which was used while Mr. Zuckerberg was at Harvard* and (b) the first server owned and used by Facebook."  Exhibit M at 1.  Emphasis added.

The IMs indicate Defendant Zuckerberg was electronically communicating with multiple people about the founding of Facebook during 2003-2004.  Exhibits C and D.

At no point in this litigation have the Defendants sought or the court ordered that any limitation on the examination of computers used by the parties be imposed.  No such order should be imposed on Ceglia now in the wake of the discovery of suppressed computers by Defendants and Defense Counsel.  Defendant Zuckerberg used the computers listed in Exhibit A at 19-21 for electronic communication during 2003-2004 while a Harvard student.  Exhibit N.  Defendant Zuckerberg used the computers and electronic media listed in Exhibit A at 19-21 to host the programming code for Facebook in its early years.  Id.

The Defendants and defense counsel also acknowledged the relevance of these computers by their act of producing them in the ConnectU case for them to be forensically copied.

## DISCOVERABILITY OF THE EVIDENCE ON THE COMPUTERS SUPPRESSED BY DEFENDANTS AND THEIR COUNSEL

The rules and case law regarding discoverability of relevant evidence easily encompasses the electronic assets in the possession of Parmet in the ConnectU case.

The basic rule governing the permissible scope of discovery, Fed.R.Civ.P. 26(b), provides in pertinent part that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ...."   The computers sought to be preserved in this motion are "relevant to the subject matter involved."

In 4 Moore's Federal Practice, ¶ 26.56[1] (2d ed. 1983), the following view is expressed: "There are many examples of information that do not deal with the merits of the claim that nevertheless have been held to be discoverable.... Matters that affect the credibility of the deponent, or might be used in impeaching or cross-examining a witness at the trial may be inquired into."   Here again, the information sought to be preserved by the order requested in this motion is information that is not only connected to the merits of Ceglia's claims, but also potentially affecting the credibility of Zuckerberg or may be used in impeaching or cross-examining him at a later date.

A similar view is expressed in 8 Wright & Miller, Federal Practice and Procedure: Civil § 2015 (1970): "Discovery is commonly allowed in which the discovering party seeks information with which to impeach witnesses for the opposition. Inquiry is routinely allowed about criminal convictions of a party or witness and similar matters that go to his credibility."   After quoting from *Wharton*

*v. Lybrand, et al*, 41 F.R.D. 177 (E.D.N.Y.1966), the authors state: "It is difficult to believe that there is any such limitation. Information showing that a person having knowledge of discoverable facts may not be worthy of belief is always relevant to the subject matter of the action." See also, *Independent Productions Corp. v. Loew's, Inc.*, 22 F.R.D. 266 (S.D.N. Y.1958); *Broadway & 96th St. Realty Co. v. Loew's Inc.*, 21 F.R.D. 347, 352 (S.D.N.Y. 1958); *Kaiser-Frazer Corp. v. Otis & Co.*, 11 F.R.D. 50, 53 (S.D.N.Y.1951); Advisory Committee Notes to the Rules of Civil Procedure for the United States District Courts reported in 12 Wright & Miller (1973) 429-433.

Even were Defendants to argue that there is no admissible information on the computers listed in Exhibit A at 19-21, in a discovery proceeding, "it is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1) Fed.R.Civ.P.

When deciding if information is discoverable, the test is not whether that information is admissible under the Federal Rules of Evidence. See generally 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure Civil § 2007 (2d Ed. 2006). Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Fed. R. Civ. P. 26(b)(1).

As part of his claims in this case, Mr. Ceglia has presented evidence that computer programming code work done by Defendant Zuckerberg for the Street Fax project he permitted Defendant Zuckerberg to use for Facebook. Mr. Ceglia has

presented evidence he exchanged electronic communications with Defendant

Zuckerberg during the 2003-2004 time period while Defendant Zuckerberg was a

Harvard student.  Doc. No. 223, 224.

## PRESERVATION DUTY AND ACKNOWLEDGED RECEIPT BY DEFENSE COUNSEL OF LITIGATION HOLD LETTER INSUFFICIENT TO PRESERVE EVIDENCE

As a general matter, it is beyond question that a party to civil litigation has

a duty to preserve relevant information, including ESI, when that party "has notice

that the evidence is relevant to litigation or ... should have known that the evidence

may be relevant to future litigation."   See *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.

3d 423, 436 (2d Cir. 2001); see also *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212,

216-18 (S.D.N.Y. 2003); The Sedona Principles: Best Practices, Recommendations &

Principles for Addressing Electronic Document Production, Second Edition 11, 28

(The Sedona Conference Working Group Series, 2007), available at http://

www.thesedona conference.org/content/miscFiles/ TSC_ PRINCP_2nd_ed_607.pdf.

It is the responsibility of the parties to ensure that relevant ESI is preserved,

and when that duty is breached, a district court may exercise its authority to

impose appropriate discovery sanctions. See Fed.R.Civ.P. 37(b), (e)LQ; The Sedona

Principles, supra, at 70 (noting that sanctions should be considered only if the court

finds a clear duty to preserve, a culpable failure to preserve and produce relevant

ESI, and a reasonable probability of material prejudice to the adverse party).

As the indisputable facts of this matter reveal, the Defendants and the Orrick

Law Firm, *at the very least*, completely ignored their duty to "preserve relevant

information, including ESI."  The Defendants and the Orrick Law Firm, *at the very least*, went further than merely ignoring a duty and actively sought to solicit the destruction of relevant information.  Therefore, a restraining order is needed to preserve this evidence as the Defendants and defense counsel have shown their willingness to engage in fraud and evidence destruction in contravention of what all ethical and reasonable lawyers regard as a duty to preserve evidence that needs no explanation, typically, by a court.

## LOCAL RULE REGARDING TEMPORARY RESTRAINING ORDERS

"A party seeking an ex parte TRO must comply with the requirements of Federal Rule of Civil Procedure 65(b)(1) and (2). An application for an ex parte TRO also shall include:

(A) a copy of the complaint, if the case has been recently filed;

(B) the motion for a TRO;

(C) a memorandum of law in support of the TRO, citing legal authority showing that the party is entitled to the relief requested; and

(D) a proposed order granting the TRO, in accordance with Federal Rule of Civil Procedure 65(b)(2) and (d)(1)."  L.R.Civ.P. 65(A)(1).  The application must also include a "motion for expedited hearing pursuant to L.R. Civ.P. 7(d)(1).

This case was filed more than a year ago, therefore, no copy of the complaint is necessary to be filed by rule.  Along with this motion is a copy of a proposed order for the court's consideration in compliance with the rule above.

## FEDERAL RULE OF CIVIL PROCEDURE REGARDING TEMPORARY

## RESTRAINING ORDERS

TROs are "designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction." 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure: Civil § 2951, at 253 (2d. ed. 1995).

## SANCTIONS

Defendants and defense counsel have committed fraud in at least three main ways.  Each of these acts, alone, is sufficient for this court to impose a range of financial and litigation-related sanctions, if not the most severe sanction - default judgment.

As discussed above, these electronic assets are discoverable and relevant to claims in this matter.

## FIRST FRAUD - FAILURE TO DISCLOSE THE EXISTENCE OF RELEVANT ELECTRONIC ASSETS

As noted above, Defendants and at least defense counsel from the Orrick Law Firm were aware of the existence of all the electronic assets in Exhibit A at 19-21. They failed to disclose the existence of these assets to Plaintiff, this court or even, it appears, co-counsel from Gibson Dunn if Mr. Snyder's disclaiming of knowledge of these electronic assets is to be believed.  That failure to disclose relevant and discoverable evidence is a fraud on the court and a fraud on the Plaintiff.

## SECOND FRAUD - DEFENDANTS MISLEADING ARGUMENTS RELIANT ON FALSE ASSERTION OF COMPREHENSIVELY SEARCHING ZUCKERBERG'S ELECTRONIC ASSETS

Defendants' computer forensics experts have outlined in declarations the comprehensive nature of a proper search for electronic evidence:

**[E]vidence relating to authenticity can be extracted from many locations on any computers on which the documents in question were created, saved, viewed or modified.  These locations include the computer system, application and security logs, the unallocated space of the computers from which deleted files or file fragments may be recovered, the portion of the hard drives that stores the dates and times that files were created, last accessed, and modified; and the files that show what documents were recently accessed.**  Declaration of Computer Forensic Expert McGowan, Doc. No. 51 at ¶4.

Defendants have argued in this case on multiple occasions that their computer forensic experts have comprehensively searched Defendant Zuckerberg's email and other electronic communications records.  Doc. No. 47, Declaration of Defendants' Computer Forensics Expert, Bryan Rose.  Doc. No. 45 at ¶2.

Defense counsel Snyder, in filed pleadings in this case, made assurances to the court about the full search of Mr. Zuckerberg's electronic assets for email communications:

**The process through which Zuckerberg's Harvard emails were obtained and reviewed is set forth in the attached declaration of Bryan Rose, a former Assistant United States Attorney. As Mr. Rose explains, the highly-regarded digital forensics firm Stroz Friedberg obtained a *complete and accurate copy* of the entire contents of Zuckerberg's Harvard University email account, including both sent and received mail, as the account existed in October 2010. Rose Decl., ¶ 5. It also obtained a copy of Zuckerberg's account as it existed in April 2011. Id., ¶ 4. *Stroz Friedberg ran searches on all emails* in the account using search terms containing the words and phrases taken from the purported emails excerpted in Ceglia's Amended Complaint. Id., ¶ 7. Based on these searches, Mr. Rose determined that the purported emails were not in Zuckerberg's email account. Id.**  Doc. No. 45 at p. 10, ¶2.  Emphasis added.

Nowhere in these filings or arguments made by defense counsel in court was

it revealed that at least five other computers used by Zuckerberg for electronic communications, and undoubtedly to connect to the Harvard email server and exchange emails, were not being searched.  And, yet, defense counsel's arguments comparing Zuckerberg's email record and Ceglia's persisted with protestations of fraud, perhaps a reaction formation to the *actual* fraud that Defendants and Defense Counsel were actively committing.

## BRYAN ROSE FROM STROZ FRIEDBERG OUTLINES SEARCHES OF ZUCKERBERG'S ELECTRONIC COMMUNICATIONS

Bryan Rose, an expert from Stroz Friedberg, filed a declaration supporting expedited discovery.  Doc. No. 47.  Nowhere in that declaration does Mr. Rose acknowledge the existence of five additional Zuckerberg computers, used for electronic communications and perhaps other activities by Defendant Zuckerberg in the 2003-2004 time frame, that he *has not* searched for electronic communications. Either Mr. Rose was aware of those computers and also engaged in a fraud on the court, or he was not told of the existence of those computers by Defendants or Defense Counsel and he was a pawn in their fraud on the court.  There is no third way.

Mr. Rose's declaration seeks to impress the court that he has comprehensively reviewed Defendant Zuckerberg's email record and cannot locate any of the Ceglia emails in that record.  His declaration is meaningless now given the knowledge that five additional computers, used during the 2003-2004 time frame by Defendant Zuckerberg have not been searched.  Mr. Rose cannot offer a

declaration in this case that no basis exists for him, as a computer forensics expert, to search those five computers before providing a competent opinion regarding the existence of Ceglia's emails somewhere in Defendant Zuckerberg's email record.

## DEFENDANTS CLAIM FRAUD
## WHILE SUPPRESSING COMPUTER EVIDENCE

The Defendants have been driven to dismiss this case on a fraud claim.  That claim has focused, in part, on claims that Ceglia's email evidence is fraudulent.

Defense Counsel Oren Snyder has repeatedly claimed Ceglia's emails are not authentic.  "[F]abricated emails."  Doc. No. 94 at 5.  "The emails are outright fabrications."  Id. at 15.  "[S]upposed emails."  Id. at 16.  "[S]o called emails exist." Id. at 17.  "[F]ake emails."  Id. at 19.  "[T]he emails are fake."  Id. at 72.  [B]ogus emails."  Id. at 108.  "Fraudulent emails."  Id. at 111.  "[T]hese emails are bogus." Id. at 115.  "[F]raudulent emails."  Id. at 127 and 135.  "[T]hose emails were concocted."  Id. at 135.  "[A]lleged emails in the complaint, in addition to be fraudulent…."  Id. at 136.  "[B]ogus emails."  Id. at 138.  "[H]is fraud on the court based on these emails…."  Id. at 149.  "[H]is so-called emails."  August 17, 2011 Transcript at 42.  "[S]o called emails."  Id. at 44, 63.  "[M]ade-up emails."  Id. at 49. "[P]urported emails."  Id at 63.  "[T]he so-called emails."  Id. at 108, 109.

Defendants and defense counsel engaged in fraud by making arguments reliant on the comparison of Ceglia's emails to Zuckerberg's email record while knowing they had not searched the entirety of Zuckberg's electronic assets.

Defendants have no excuse of lack of knowledge for their failure to disclose

these Electronic Assets.  Both Defendants knew these computers in Exhibit A were copied by a forensic expert in ConnectU as they are both also parties to that case. Defense counsel, especially from the Orrick law firm, equally has no basis to deny knowing of the existence of these Electronic Assets.  This undeniable reality omits of any explanation that is easily distinguishable from a fraud on the court.

Defendants clearly represented to this court that its experts at Stroz Friedberg thoroughly searched Zuckerberg's entire email record.    Doc. No. 47. Defendants and their counsel also clearly represented that their search yielded nothing confirming Ceglia's claim. All the while, Defendants and their counsel were aware of five other potential sources of emails, instant messages and other electronic communication sitting in the offices of Parmet and have utterly failed to disclose this relevant evidence while simultaneously urging parties in possession of it to destroy it.

With an immediate restraining order imposed on Parmet, Defendants and Defendants' counsel to *not destroy or otherwise erase* any of the computers identified in Exhibit A, the status quo is maintained and no harm comes to either party in this case.  Defendants and defense counsel have suppressed this information for more than a year.   Plaintiff reasonably fears either a deadline being reached in the ConnectU case triggering destruction of the computer evidence in Exhibit A.

These acts of defiance of Defendants' duty to preserve, and that of Defense Counsel, must have been embarked upon related to the computers in Exhibit A *for a reason*.  It is no leap of logic to conclude that Defendants and defense counsel are

aware that evidence on those computers is unhelpful to their defense in this case.  If that were not the case, Defendants and defense counsel would have disclosed the existence of this evidence to the court and directed Stroz Friedberg to search it when addressing the issues related to Ceglia's email evidence.  Instead, Defendants and their counsel have hidden this evidence, obstructed the very expedited discovery they sought so vigorously and attempted to persuade this court a full examination of Defendant Zuckerberg's complete email record has occurred.

These are grave issues to say the least when discoverable information is withheld in a federal case.  However, the granting of this temporary restraining order lacks any aspect which harms Defendants.  Without an immediate Temporary Restraining Order, this evidence could be erased by someone believing in good faith they are following the court's order in ConnectU or acting in bad faith.  Either way, if the evidence is erased, what's done is done.

The requested order merely insures this now previously suppressed evidence is not destroyed until this court can schedule a full hearing on the matter and entertain whatever explanation Defendants or their counsel have for their failure to disclose this information to Plaintiff or the court before its fortunate discovery.

### THIRD FRAUD - DEFENDANTS AND DEFENSE COUNSEL ACTIVELY SOUGHT DESTRUCTION OF EVIDENCE RELEVANT AND DISCOVERABLE IN THIS CASE

Defendants and defense counsel never disclosed the Electronic Assets in Exhibit A at 19-21 to the Plaintiff or this Court.  They both made fraudulent arguments reliant on that lack of knowledge by Plaintiff and this Court.  Finally,

Defendants and Defense Counsel it actively sought to insure the destruction of this evidence.

Defendants and their counsel, namely the Orrick Law Firm, actively sought, urged, solicited and requested confirmation of the destruction of this relevant and discoverable evidence while this case was pending.

At a phone conference with Magistrate Judge Foschio regarding this matter held on November 23, 2011, Defense counsel Oren Snyder disclaimed any knowledge of the existence of this electronic evidence source or any of the attempts by the Orrick law firm to hasten its destruction pursuant to an order in the ConnectU case. He did not deny his Defendants knowledge of the existence of this relevant and discoverable evidence nor his Defendants efforts to have this evidence destroyed, through counsel.

## STEPS TAKEN TO MEET, CONFER AND AVOID FILING OF TRO MOTION

Less than an hour after the phone conference with the court and Defendants' counsel, Plaintiff's counsel sent to the Orrick Law Firm, Oren Snyder and Alex Southwell an email with attachments providing all necessary information for Defense Counsel to take steps to preserve the evidence regarding this motion. Exhibits H and I. A nearly identical email was sent to Attorney Monte Cooper with the Orrick Law firm. Exhibit I. Mr. Cooper is the lawyer from Orrick actively seeking confirmation and urging individuals to destroy the evidence in Exhibit A at 19-21. I followed up that email with one that asked for any attorney on behalf of Defendants to provide assurance to Plaintiff by noon on Friday, November 25, 2011

of the steps taken to preserve the evidence at issue.  Exhibit J.  An email was then sent to Parmet seeking to inform them of the nature of the evidence in their possession and inquire whether it has yet been "erased" or "scrubbed."  Exhibit K. At 10:13pm on November 23, 2011, another email was sent to all Defense Counsel attempting to resolve the issue and preserve the evidence and clearly indicating that there would be no need for the filing of the TRO motion if Defense Counsel merely took the steps necessary to preserve the evidence.  Exhibit L.  No responses of any kind were received from any Defense Counsel to any of these emails.

Plaintiff is seeking a Temporary Restraining Order prohibiting all parties in possession of all items listed in Exhibit A at 19-21, specifically, Defendants in this case and Parmet and Associates, 9920 Potomac Manors Drive, Potomac Maryland, (Parmet) (See Exhibit A at 5) from destroying or otherwise erasing any of the data on any of the electronic storage devices in Exhibit A, 19-21 and any other unlisted devices in their possession, custody or control until further order of this court.

Plaintiff is also seeking an order directly Defendants and Defense Counsel to provide declarations to this court outlining the specific steps taken to preserve this evidence.

Plaintiff is also seeking an order directing Defendants and Defense Counsel to communicate with Parmet to direct them to refrain from destroying any of the evidence in their possession in the ConnectU case, including that in Exhibit A at 19-21.

As part of this request, because of the stunning evidence of Defendants and

at least the Orrick law firm failing to disclose while simultaneously working to have destroyed this electronic evidence, Plaintiff requests that Defendants and their counsel be compelled to file declarations detailing whether there is any other undisclosed electronic evidence and, if so, any and all details about that evidence.

According to the order from the ConnectU case, Exhibit A, Defendants' counsel, the Orrick Law Firm, also have a copy of the items listed in Exhibit A at 19-21.

## CONCLUSION

For the foregoing reasons, Mr. Ceglia respectfully requests the following order:

1.  Temporarily restraining Defendants and/or their attorneys and agents from destroying any evidence relevant to this matter: to wit: computers currently in the possession of Parmet and Associates of Potomac, Maryland; and

2. Requiring All defense counsel to submit declarations regarding all necessary steps they have taken or will take to preserve this evidence until further order of this court; and

3. Requiring all defense counsel to submit declarations that detail if they were aware of the existence of the forensic copies of these computers created by Parmet and Associates, when they first became aware of that fact and the justification for failing to disclose that fact to the court or Plaintiff in this matter; and

4. For sanctions against Defendants and Defense counsel including all attorneys fees for all work by all attorneys throughout the expedited discovery, all expert

witness fees and costs incurred throughout the expedited discovery, all costs incurred by Plaintiff throughout the expedited discovery; andA modification of the court's prior order granting expedited discovery whereby expedited discovery is terminated and all meetings and other matters initiating regular case discovery are undertaken.

Finally, lead counsel for Plaintiff has a sentencing in Federal District Court for the Southern District of Ohio on Tuesday, November 29, 2011 and a mandatory hearing he must attend in a matter on Friday, December 2, 2011 in Ohio as well and therefore, would be unavailable for a hearing scheduled for either of those days.

<div style="margin-left: 50%;">

Respectfully submitted,

/s/Dean Boland

</div>

Paul A. Argentieri
188 Main Street
Hornell, NY 14843
607-324-3232 phone
607-324-6188
paul.argentieri@gmail.com

Dean Boland
18123 Sloane Avenue
Lakewood, Ohio 44107
216-236-8080 phone
866-455-1267 fax
dean@bolandlegal.com