UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                                                    x
PAUL D. CEGLIA,                                                     :
                                                                    :
               Plaintiff,                                          :
                                                                    :
     v.                                                            :   Civil Action No. 1:10-cv-00569-
                                                                    :   RJA
MARK ELLIOT ZUCKERBERG and                                          :
FACEBOOK, INC.,                                                     :
                                                                    :
               Defendants.                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x


**DEFENDANTS' MEMORANDUM IN OPPOSITION TO CEGLIA'S MOTION FOR SANCTIONS AGAINST DEFENDANTS AND DEFENSE COUNSEL**


Thomas H. Dupree, Jr.
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
(202) 955-8500

Orin Snyder
Alexander H. Southwell
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193
(212) 351-4000

Terrance P. Flynn
HARRIS BEACH PLLC
726 Exchange Street
Suite 1000
Buffalo, NY 14210
(716) 200-5120


December 21, 2011

### DEFENDANTS' MEMORANDUM IN OPPOSITION

Late on Wednesday, November 23, 2011 — the day before Thanksgiving — Plaintiff Paul Ceglia filed an *ex parte* "emergency" application for a temporary restraining order. Ceglia contended that Defendants and their lawyers were seeking the destruction of electronic evidence that had been produced in the *ConnectU* litigation and possessed by Parmet and Associates, a computer forensic consulting firm hired by the *ConnectU* plaintiffs.

This was a fake emergency and Ceglia knew it. The "evidence" in question consisted of <u>copies</u> of electronic assets — and the protective order providing that all such copies would be destroyed at the end of the litigation had been on the public docket for months.

But instead of apologizing to the Court and Defendants' counsel for his frivolous TRO motion, which he promptly withdrew when Defendants brought the actual facts to this Court's attention, Ceglia had the audacity to maintain his demand for sanctions. The sanctions motion is the latest installment in Ceglia's "best defense is a good offense" approach to litigation, and continues his well-established pattern of launching wild and reckless accusations in hopes of deflecting attention from his own fraud and misconduct. His motion should be summarily denied.

### BACKGROUND

The electronic assets at issue are subject to a protective order entered by the federal district court in *ConnectU*. The protective order permitted Parmet and Associates to create forensic copies of the electronic assets, and required those copies to be destroyed when the case ends. *See* Doc. No. 232, Ex. A, ¶¶ 2, 13. Ceglia demanded that this Court issue a TRO to prevent the *ConnectU* parties from complying with the terms of the protective order entered by the Massachusetts federal court.

1

Ceglia's attorney Dean Boland did not serve his TRO papers on Defendants. Instead, he sent them to the Court and chose not even to email Defendants a courtesy copy. This Court convened a late-afternoon telephone conference on November 23. Counsel for Defendants stated that while he obviously did not know what Boland was claiming in his TRO motion (since he had not seen it), he would investigate Boland's claims if Boland would share the papers he had filed *ex parte*. The Court encouraged Boland to share his filing with Defendants, and Boland promised to do so. Decl. of Alexander H. Southwell, ¶ 3 (Dec. 21, 2011).

But Boland continued to hide the ball. He ignored Defendants' repeated requests to keep his promise to the Court, and filed *amended* versions of his papers on Friday, November 25, 2011. *See* Doc. Nos. 231–233. He represented to Defendants that these papers were the same as the ones he had filed *ex parte*. *See* Ex. A to Southwell Decl. But the amended papers differ from his original papers. For example, the amended papers refer to the November 23 telephone conference, *see, e.g.*, Doc. No. 232, at 18 — an event that obviously occurred <u>after</u> Boland had submitted his original *ex parte* papers.

On Monday, November 28, the Court held another telephone conference on Boland's TRO motion. By that time, defense counsel had read the amended papers and had spent significant time over the holiday weekend investigating his contentions. Upon hearing defense counsel's report, the Court declined to enter a scheduling order on the motion, and instead gave defense counsel two more days to further investigate Boland's contentions and provide a written update on the status of the *ConnectU* litigation. *See* Doc. No. 234.

On November 30, Defendants told the Court by letter that shortly after the November 28 telephone conference in this case, the plaintiffs in *ConnectU* withdrew their final post-trial motions, effectively ending that case and triggering the self-executing provisions of the

2

protective order calling for the destruction of the Parmet forensic copies. *See* Doc. No. 244, at 1. Defendants' letter emphasized that the *ConnectU* protective order required the destruction of only the Parmet forensic copies — it did not require the destruction of the original electronic materials, which had been preserved since the beginning of this litigation. *See id.* The letter also stated that notwithstanding the destruction provision in the *ConnectU* protective order, Orrick, counsel for Facebook in *ConnectU,* had asked all parties to agree to return the forensic copies to their original owners, rather than to destroy them. *See id.* at 1–2.[1]

Ceglia withdrew his TRO request the next day. Doc. No. 246, at 2. But he not only refused to withdraw his request for sanctions, he expanded his request. Whereas Ceglia originally sought sanctions against only the Orrick firm, which represented Defendants in *ConnectU*, he now claimed that Orin Snyder and Alexander H. Southwell made false statements during telephone conferences with this court and should be sanctioned as well.

Defendants' counsel promptly responded to correct Ceglia's blatant misstatements. *See* Letter from O. Snyder to Foschio, *J.* (Dec. 2, 2011). They explained that Mr. Snyder's statement during the November 23 call that he "had no idea what [Mr. Boland] was talking about" referred to his lack of knowledge concerning the contents of Mr. Boland's *ex parte* TRO application, which he had not been provided by Mr. Boland as of the time the Court convened the telephonic hearing on the "emergency" motion on Thanksgiving evening. Neither Mr. Snyder nor Mr.

---

[1] Defendants have since learned that attorneys at the law firm of Quinn Emanuel, which represented some of the plaintiffs in *ConnectU,* have informed counsel for Defendants in *ConnectU* that they would prefer to destroy some of their copies rather than return them to their original owners due to concerns about work product privilege. It appears, however, that such items from Defendants Zuckerberg or Facebook in Quinn Emanuel's possession are copies of materials produced by Defendants during the course of regular discovery. We advised the Court of this by letter on December 21, 2011, as an update to our November 30, 2011 report.

3

Southwell ever said or implied that they "had no idea" of the existence of the *ConnectU* forensic copies. *Id*.

## ARGUMENT

Ceglia fails to identify anything that would even remotely support sanctions, and the Court should summarily deny his frivolous and harassing motion.

First, Ceglia argues that Defendants failed to disclose the existence of the Parmet copies from the *ConnectU* litigation. Doc. No. 232, at 12. But Ceglia fails to show that Defendants had a duty to disclose these materials, which are not even in Defendants' possession. This case is in the expedited discovery stage, and Defendants have no duty under the Federal Rules to identify and disclose evidence to Plaintiff (other than the emails from the Harvard server, which Defendants will produce once Ceglia has fully complied with this Court's orders).

Second, Ceglia argues that Defendants and their experts made misleading statements concerning the scope of their search for relevant emails. According to Ceglia, "Defendants have argued in this case on multiple occasions that their computer forensic experts have comprehensively searched Defendant Zuckerberg's email <u>and other electronic communications records</u>," Doc. No. 232, at 13 (citing Doc. No. 47 (Decl. of Defs.' Expert B. Rose)) (emphasis added), and "Defense counsel Snyder, in filed pleadings in this case, made assurances to the court about the <u>full search of Mr. Zuckerberg's electronic assets</u> for email communications," *id.* (citing Doc. No. 45) (emphasis added).

But neither Defendants nor their experts made the representations Ceglia claims — the underscored language was added by Boland; it did not come from Defendants. The declaration of Defendants' expert Bryan Rose (Doc. No. 47) recounts the scope of his searches, and Defendants' motion for expedited discovery (Doc. No. 45) accurately summarizes Mr. Rose's

4

declaration.  Rose quite clearly explained that he searched Zuckerberg's Harvard email account; he simply did not make the broader representations Ceglia claims.  As Ceglia himself states in his motion:

> The process through which Zuckerberg's Harvard emails were obtained and reviewed is set forth in the attached declaration of Bryan Rose, a former Assistant United States Attorney.  As Mr. Rose explains, the highly-regarded digital forensics firm Stroz Friedberg obtained a complete and accurate copy of the entire contents of <u>Zuckerberg's Harvard University email account</u>, including both sent and received mail, as the account existed in October 2010.  Rose Decl., ¶ 5.  It also obtained a copy of <u>Zuckerberg's account</u> as it existed in April 2011.  *Id.*, ¶ 4.  Stroz Friedberg ran searches on all emails <u>in the account</u> using search terms containing the words and phrases taken from the purported emails excerpted in Ceglia's Amended Complaint.  *Id.*, ¶ 7.  Based on these searches, Mr. Rose determined that <u>the purported emails were not in Zuckerberg's email account.</u>  *Id.*

Doc. No. 232, at 13 (quoting Doc. No. 45, at 10) (emphasis altered).  Contrary to Ceglia's claims, Mr. Rose did not represent that he searched both Zuckerberg's Harvard University email account as it existed in October 2010 and April 2011 <u>and</u> "other electronic communications records," Doc. No. 232, at 13, and also conducted a "full search of Mr. Zuckerberg's electronic assets for email communications," *id.*  Rose examined Zuckerberg's Harvard account based on the allegations in the First Amended Complaint that the purported emails were sent while Zuckerberg was a student at Harvard.  In any event, the purported emails do not exist anywhere other than in Ceglia's imagination and on the pages of the First Amended Complaint.

Third, Ceglia falsely claims that Defendants "actively sought" the destruction of the Parmet copies.  Plaintiff bases his contentions on two emails written by Monte Cooper, an attorney at the Menlo Park, California office of the Orrick law firm who represented Facebook and Zuckerberg in the *ConnectU* case, to all counsel of record in *ConnectU*.  *See* Doc. No. 232, Ex. E and Ex. F.  Those emails merely reminded all counsel of their obligations under self-executing provisions of the protective order entered by the federal district court to destroy <u>copies</u>

of confidential information after the case ended, including copies of electronic materials. Neither Mr. Cooper nor Defendants ever sought destruction of <u>original</u> electronic materials. In fact, in response to Ceglia's concerns, Mr. Cooper wrote to all counsel of record in *ConnectU* and requested that they <u>return</u> copies of electronic materials subject to the protective order to their original owners, rather than destroy them. Doc. No. 244, at 1–2.

## CONCLUSION

Plaintiffs' motion for sanctions should be denied.

Dated:      New York, New York
            December 21, 2011

                                                    Respectfully submitted,

                                                    /s/ Orin Snyder
Thomas H. Dupree, Jr.                               Orin Snyder
GIBSON, DUNN & CRUTCHER LLP                         Alexander H. Southwell
1050 Connecticut Avenue, NW                         Matthew J. Benjamin
Washington, DC 20036                                Amanda M. Aycock
(202) 955-8500                                      GIBSON, DUNN & CRUTCHER LLP
                                                    200 Park Avenue, 47th Floor
                                                    New York, NY 10166-0193
Terrance P. Flynn                                   (212) 351-4000
HARRIS BEACH PLLC
726 Exchange Street
Suite 1000
Buffalo, NY 14210
(716) 200-5120

*Attorneys for Defendants Mark Zuckerberg and Facebook, Inc.*