UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PAUL D. CEGLIA,

                        Plaintiff,

           v.

MARK ELLIOT ZUCKERBERG, and
FACEBOOK, INC.,

                      Defendants.
_____

**DECISION
and
ORDER**

**10-CV-00569A(F)**

APPEARANCES:     BOLAND LEGAL, LLC
                       Attorneys for Plaintiff
                       DEAN M. BOLAND, of Counsel
                       18123 Sloane Avenue
                       Lakewood, Ohio 44107

                       JEFFREY ALAN LAKE, ESQ.
                       Attorney for Plaintiff
                       835 5th Avenue
                       Suite 200A
                       San Diego, California 92101

                       PAUL A. ARGENTIERI, ESQ.
                       Attorney for Plaintiff
                       188 Main Street
                       Hornell, New York 14843

                       GIBSON, DUNN & CRUTCHER, LLP
                       Attorneys for Defendants
                       ORIN S.  SNYDER and
                       ALEXANDER H. SOUTHWELL, of Counsel
                       200 Park Avenue
                       47th Floor
                       New York, New York 10166-0193
                             and
                       THOMAS H. DUPREE, JR., of Counsel
                       1050 Connecticut Avenue, N.W.
                       Washington, District of Columbia  20036

ORRICK, HERRINGTON & SUTCLIFFE LLP
Attorneys for Defendants
LISA T. SIMPSON, of Counsel
51 West 52nd Street
New York, New York 10019

HARRIS BEACH LLP
Attorneys for Defendants
TERRANCE P. FLYNN, of Counsel
Larkin at Exchange
726 Exchange Street
Suite 1000
Buffalo, New York 14210

## JURISDICTION

This case was referred to the undersigned by Honorable Richard J. Arcara on May 27, 2011 for pretrial matters.  The action is presently before the court in response to ¶ 3 of the undersigned's Order filed September 28, 2011 (Doc. No. 152) directing Plaintiff to show cause why Defendants' request for sanctions pursuant to Fed.R.Civ.P. 37(a)(5), including costs and attorneys' fees, based on Plaintiff's failure to fully and promptly comply with court-ordered discovery (Doc. No. 128), should not be granted.

## BACKGROUND and FACTS[1]

In this action, Plaintiff Paul D. Ceglia ("Plaintiff"), seeks a declaratory judgment enforcing a contract allegedly executed between Plaintiff and Defendant Mark Elliot Zuckerberg ("Zuckerberg"), on April 28, 2003, pursuant to which Zuckerberg, according to Plaintiff, agreed to give Plaintiff a one-half ownership interest in Defendant Facebook, Inc. ("Facebook"), the social-networking website created and maintained by

---

[1] The Facts are taken from the pleadings and motion papers filed in this action.

Zuckerberg.  Because the parties dispute the authenticity of the document Plaintiff has

proffered as the contract on which Plaintiff sues, and emails allegedly exchanged

between Plaintiff and Zuckerberg regarding the contract, the parties agreed to

expedited discovery designed to establish whether the contract and emails are

forgeries.  Accordingly, by Order filed July 1, 2011 (Doc. No. 83) ("July 1, 2011 Order"),

the undersigned directed that Plaintiff produce, on or before July 15, 2011, certain

emails and to make all computers and electronic media within Plaintiff's possession

available for inspection by Stroz Friedberg LLC ("Stroz Friedberg"), a digital forensic

consulting firm whose services Defendants have retained in connection with this action,

including, as relevant, "the original, native electronic files consisting of or containing the

purported emails described in the Amended Complaint and all electronic copies of the

purported emails . . . ."  July 1, 2011 Order at 1.

       Also filed on July 1, 2011 was the Electronic Asset Inspection Protocol (Doc.

No.85) ("Electronic Asset Protocol"), developed by the parties and so ordered by the

undersigned, directing Plaintiff to produce by July 15, 2011, several categories of

electronic assets for inspection by Defendants' forensic consultants.  A Joint Stipulated

Protective Order (Doc. No. 86) ("Protective Order"), approved and so ordered by the

undersigned on July 13, 2011, provides, *inter alia*, that "[t]he designating party may

designate documents, materials, or information as 'CONFIDENTIAL – SUBJECT TO

PROTECTIVE ORDER' if the party believes in good faith that the documents, materials,

or information contain confidential information that is not publicly available . . . ."

Protective Order ¶ 3.

On July 14, 2011, Plaintiff's then counsel, Jeffrey A. Lake, Esq. ("Lake"),[2] filed a declaration (Doc. No. 87) ("First Lake Declaration"), advising that all computers and electronic media within Plaintiff's control had been identified and were being produced for Defendants' inspection in accordance with the July 1, 2011 Order.  First Lake Declaration ¶¶ 1-2.  Lake further "certif[ied] . . . that such computers and electronic media contain all communications Plaintiff claims to have had with Defendants."  *Id*. ¶ 3.

On July 25, 2011, Plaintiff moved to compel compliance with the July 1, 2011 Order's direction that Zuckerberg provide a sworn declaration certifying Zuckerberg's good faith efforts to locate handwriting samples (Doc. No. 91) ("Plaintiff's Motion to Compel"), maintaining that on July 21, 2011, Zuckerberg's counsel represented to Plaintiff's counsel that Defendant would not be complying with the order.  On August 4, 2011, Defendants cross-moved (Doc. No. 95) ("Defendants' Crossmotion"), to compel Plaintiff's compliance with the July 1, 2011 Order's direction that, *inter alia*, Plaintiff consent to have his webmail accounts inspected by Stroz Friedberg pursuant to the Electronic Assets Protocol.  In papers filed in support of Defendants' Crossmotion, Defendants advised that despite providing some items in response to the July 1, 2011 Order, Plaintiff maintained he was not in possession of any relevant emails, although forensic examination of Plaintiff's computers uncovered email correspondence between Plaintiff and Zuckerberg, and Defendants had not been permitted an opportunity to inspect any email accounts.  Defendants assert that attached to one such email was a

---

[2] Dean M.  Boland, Esq., was substituted as Plaintiff's co-counsel for Lake on October 21, 2011 (Doc. No. 174).

document which Defendants maintain is the authentic contract between Plaintiff and

Zuckerberg, devoid of any mention of Facebook and which Plaintiff maintains

Defendants 'planted' in Plaintiff's computer during the forensic examination.

Defendants' Redacted Memorandum of Law in Support of Their Cross-Motion to

Compel (Doc. No. 99) at 1-7. Defendants further asserted that on July 19, 2011,

Plaintiff's attorney, Lake, had informed Defendants' attorney Alexander H. Southwell

("Southwell"), that Plaintiff's computer forensics consultant, Edelson McGuire LLC

("Edelson McGuire"), and an attorney for Edelson McGuire, were working to identify the

electronic documents that were responsive to the July 1, 2011 Order.  Affidavit of

Southwell (Doc. No. 97) ¶ 24.  When Southwell inquired why Lake did not simply

request Plaintiff identify the locations of the electronic documents to be produced, Lake

responded that Plaintiff was not involved with producing the electronic assets because

Plaintiff was currently living in Ireland.  *Id*.

    Oral argument regarding the two motions to compel was conducted before the

undersigned on August 17, 2011, during which Plaintiff made an oral request to stay the

discovery ordered by the July 1, 2011 Order to permit the parties to pursue mediation

("First Motion to Stay").  The request was denied by the undersigned.  By Order filed

August 18, 2011 Order (Doc. No. 117) ("August 18, 2011 Order), Plaintiff was directed

to

> identify all email accounts accessible through web-based interfaces that Plaintiff
> has used since 2003, including but not limited to his gmail.com, msn.com,
> tmail.com, and adelphia.net accounts.  Plaintiff shall consent to the acquisition
> and inspection by Stroz Friedberg of the contents of all such accounts.  On or
> before August 29, 2011, Plaintiff shall provide such consent on a form or forms
> to be provided by Stroz Friedberg.  Plaintiff shall at the same time provide to
> Stroz Friedberg a password for, and facilitate access by Stroz Friedberg to, each

identified account.  The production and inspection of the contents of all such accounts shall be conducted pursuant to the Electronic Asset Inspection Protocol.

August 18, 2011 Order, ¶ 5.

Later that day, Lake advised Plaintiff that the August 18, 2011 Order directed Plaintiff to produce addresses and passwords for all of the email accounts Plaintiff had used since 2003 ("Plaintiff's email account information"), and that Plaintiff had instructed Lake not to comply with the August 18, 2011, but to seek further review from Judge Arcara. Declaration of Jeffrey A. Lake, Esq.  (Doc. No. 153-1) ("Second Lake Declaration"), ¶ 2. Nathan A. Shaman, Esq.  ("Shaman"), informed Plaintiff that objections to the August 18, 2011 Order would be filed.  Declaration of Nathan A.  Shaman, Esq.  (Doc. No. 153-2) ("Shaman Declaration"), ¶ 2.

On August 19, 2011, Plaintiff moved (Doc. No. 118) to stay the August 18, 2011 Order ("Second Motion to Stay"), asserting that because the August 18, 2011 Order directed Plaintiff's compliance by August 29, 2011, less than the 14 days in which Plaintiff had to file objections to such Order, Plaintiff was "left with a 'Catch 22' where he must either violate the Order to be heard on his objections or comply with the Order thus rendering his objections moot."  Second Motion to Stay at 1.  Plaintiff further argued that the issues pertaining to the court-ordered expedited discovery were complicated, requiring "significant time" to adequately brief.  *Id*.  In a  Text Order entered August 22, 2011 (Doc. 119) ("August 22, 2011 Text Order"), Judge Arcara stated that "[t]he desire to file objections to a magistrate judge's order does not, by itself, warrant a stay of that order. . . . ," and directed Plaintiff "to file supplemental briefing setting forth the basis for a stay."  Judge Arcara further advised that the August

18, 2011 Order "remains in full force at this time."  August 22, 2011 Text Order.   By

Decision and Order filed August 26, 2011 (Doc. No. 125) ("August 26, 2011 D&O"),

Judge Arcara denied Plaintiff's Second Motion to Stay, observing that the August 29,

2011 deadline established by the August 18, 2011 Order was in accordance with the

production schedule Plaintiff had requested just two days before filing the Second

Motion to Stay, and that "the August 18, 2011 Order is merely a reiteration or an

enforcement of the July 1, 2011 Order, an order to which plaintiff never objected."

August 26, 2011 D&O at 4.

   That same day, August 26, 2011, Lake advised Plaintiff of his continuing

obligation to comply with the August 18, 2011 Order by producing the email account

information by August 29, 2011.  Second Lake Declaration ¶ 3.  Lake repeated the

advice on August 27, 2011, at which time Plaintiff authorized his attorneys to provide

his email account information on versions of the consent forms supplied by Stroz

Friedberg, modified to condition his consent on resolution of the objections Plaintiff

intended to file to the August 18, 2011 Order ("the modified consent forms").  *Id.* ¶ 4.

On August 28, 2011, Plaintiff provided his attorney, Shaman, with the completed

modified consent forms containing email addresses and passwords for Plaintiff's Gmail

and MSN email accounts.  Shaman Declaration ¶ 4.

   On August 29, 2011, Plaintiff filed a third motion to stay production of Plaintiff's

email account information as directed by ¶ 5 of the August 18, 2011 Order (Doc. No.

26) ("Third Motion to Stay"), pending resolution of objections Plaintiff intended to file

within a few days.  In support of the Third Motion to Stay, Plaintiff asserted the court-

ordered production of his email account information exceeded the scope of the original

July 1, 2011 Order, with no showing by Defendants that such discovery was reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further argued that the August 18, 2011 Order required Plaintiff "to give Defendants' expert unfettered access to every email [Plaintiff] has written since 2003" thereby providing Defendants with information "far outside the scope of this litigation and far inside [Plaintiff's] private life, a view to which no one is entitled and that is protected from government prying by the most sacred components of the Constitution."  Plaintiff's Memorandum of Points and Authorities in Support of Motion to Stay Discovery (Doc. No. 126-1), at 4-5.

Also on August 29, 2011, Shaman provided the modified consent forms to Bryan Rose ("Rose") of Stroz Friedberg.  Shaman Declaration ¶ 4.  The modified consent forms specifically provide "that such authorization and consent shall not be effective until such time as the Motion to Stay Discovery, filed August 29, 2011, and subsequent Objections to the August 18, 2011 Order, which will be filed on or before September 1, 2011, are resolved."  Declaration of Alexander H. Southwell, Esq.  (Doc. No. 130) ("Southwell Declaration"), Exh.  A  The modified consent forms were not marked as confidential in accordance with the Protective Order.  On August 30, 2011, Judge Arcara entered a Text Order (Doc. No. 127) ("August 30, 2011 Text Order"), denying Plaintiff's Third Motion to Stay.

On September 1, 2011, Defendants filed an Accelerated Motion to Compel (Doc. No. 128) ("Defendants' Accelerated Motion to Compel"), advising that Plaintiff had yet to comply with ¶ 5 of the August 18, 2011 Order, requiring Plaintiff provide addresses and passwords for all email accounts used by Plaintiff since 2003, and seeking a court order directing such compliance, including directing Plaintiff to provide his unqualified

consent on the consent forms provided by Stroz Friedberg, thereby consenting to

Defendants' immediate search of Plaintiff's email accounts.  Defendants argued that by

conditioning his consent to Defendants' search of Plaintiff's email accounts on

resolution of Plaintiff's objections to Judge Foschio's orders, including the August 18,

2011 Order, Plaintiff was attempting to grant himself the stay of discovery of the email

account information, initially ordered by the court on July 1, 2011, and which stay this

court had already denied three times, amd Plaintiff's continued noncompliance had

caused Defendants to repeatedly incur costs in filing motions to compel such discovery.

Defendants' Memorandum of Law in Support of Their Accelerated Motion to Compel

Compliance with Paragraph 5 of the August 18, 2011 Order (Doc. No. 129), at 6-7.

Also filed on September 1, 2011, were Plaintiff's objections (Doc. No. 131), to ¶ 5 of the

August 18, 2011 Order, asserting the email account information Plaintiff was ordered to

produce was beyond the scope of the July 1, 2011 Order.

On September 2, 2011, Plaintiff filed a Motion to Set a Delayed Briefing

Schedule (Doc. No. 134) ("Plaintiff's Motion to Delay"), seeking to delay the filing of

papers in response to Defendants' Accelerated Motion to Compel on the basis that

should Judge Arcara rule in Plaintiff's favor on Plaintiff's then-pending objections to ¶ 5

of the August 18, 2011 Order, Defendant's Accelerated Motion to Compel would be

rendered moot.  In the attached memorandum of law supporting the motion (Doc. No.

134-1) ("Memorandum in Support of Delayed Briefing Schedule"), Plaintiff also accused

Defendants of engaging in an "egregious and massive violation of [Plaintiff's] privacy"

by attaching the modified consent forms Plaintiff had executed as exhibits to an

attorney affidavit that was electronically filed, without taking any steps to ensure

9

Plaintiff's email account information contained on the consent forms, including
addresses and passwords for the various email accounts of Plaintiff, would not be
made public.  Memorandum in Support of Delayed Briefing Schedule at 2.  According to
Plaintiff, upon realizing his email account information had been disclosed by filing it with
the court's electronic filing system, Plaintiff changed his email passwords, although
Defendants, and anyone with access to this court's electronic filing system would have
had access to Plaintiff's email accounts until the passwords were changed.  *Id*. at 2-3.
In papers filed September 6, 2011, in opposition to Plaintiff's motion seeking a delayed
briefing scheduled, Defendants maintain that Plaintiff should have designated as
"confidential" the consent forms containing Plaintiff's email information, and that
Plaintiff's own attorneys provided the email account modified consent forms directly to
Defendants' attorneys, but that Defendants' attorneys had not shared the information
with Defendants.  Defendants' Opposition to Ceglia's Motion to Set Delayed Briefing
Schedule (Doc. No. 137), at 6.  Defendants further explain that Defendants immediately
alerted Plaintiff's attorneys that the modified consent forms had been filed on the public
docket, and that Defendants had advised this court's Clerk's Office of the issue, leaving
the Clerk's Office to determine how best to remedy the situation.  *Id*. at 6-7.

By Order filed September 16, 2011 (Doc. No. 145), Judge Arcara affirmed the
August 18, 2011 Order.  Accordingly, in a Text Order entered September 20, 2011
(Doc. No. 146), the undersigned denied as moot Plaintiff's Motion to Delay.

On September 26, 2011, Plaintiff filed in opposition to Defendants' Accelerated
Motion to Compel a statement (Doc. No. 148) indicating Plaintiff was complying with the
August 18, 2011 Order by executing new consent forms which were "en route" to

10

Plaintiff's attorneys who, upon their receipt, intended to immediately provide the consent forms to Stroz Friedberg to permit Stroz Friedberg to conduct its forensic search pursuant to the Electronic Asset Protocol, and urging that the Accelerated Motion to Compel be denied as moot.  On September 27, 2011, Defendants filed a Reply in Support of Their Accelerated Motion to Compel Compliance with Paragraph 5 of the August 18 Order (Doc. No. 149) ("Defendants' Reply in Support of Accelerated Motion to Compel"), advising the court that, contrary to Plaintiff's representations, the Accelerated Motion to Compel had not been rendered moot because Plaintiff remained out of compliance with the August 18, 2011 Order's direction that the consent forms be provided by August 29, 2011, and that Plaintiff's most recent attempts at compliance were insufficient given that, despite the belated nature of the consent forms, Plaintiff did not avail himself of a more expeditious form of delivery, such as emailing the consent forms in PDF format, or engaging the services of an express courier to deliver the forms.  Defendants' Reply in Support of Accelerated Motion to Compel at 1. Defendants further asserted that deeming the Accelerated Motion to Compel moot would deprive Defendants of their opportunity to be awarded costs, including attorneys' fees incurred in connection with the motion.  *Id*. at 1-2.  Defendants also filed the Affidavit of Amanda M. Aycock, Esq.  (Doc. No. 150) ("Aycock Affidavit"), explaining that an internet search had located within the same geographic area of Ireland in which Plaintiff resided at least two businesses providing scanning services that would have allowed Plaintiff to email the consent forms in PDF format, and two other businesses providing expedited international shipping services.  Aycock Affidavit ¶¶ 5-7.

On September 28, 2011, the undersigned granted Defendants' Accelerated

Motion to Compel (Doc. No. 152) ("September 28, 2011 Order"), observing that despite

being affirmed by Judge Arcara on September 16, 2011, Plaintiff had yet to fully comply

with the August 18, 2011 Order.  September 28, 2011 Order ¶ 1.  Accordingly, Plaintiff's

full compliance with the August 18, 2011 Order was directed by September 30, 2011.

*Id*. ¶ 2.  Plaintiff was further ordered to show cause why Defendants' request for

sanctions pursuant to Fed.R.Civ.P. 37(a)(5), including costs and attorneys' fees, based

on Plaintiff's failure to fully and promptly comply with the August 18, 2011 Order, should

not be granted.  *Id*. ¶ 3.

In response to the September 28, 2011 Order, Plaintiff filed on October 7, 2011,

Plaintiff's Memorandum of Points and Authorities in Opposition to the Issuance of

Sanctions (Doc.  No.  153) ("Plaintiff's Memorandum"), the attached Declarations of

Jeffrey A. Lake, Esq. ("Third Lake Declaration"), and Nathan A. Shaman ("Second

Shaman Declaration"), and exhibits A through C ("Plaintiff's Exh(s). __").  On October

14, 2011, Defendants filed Defendants' Response in Support of Sanctions (Doc.  No.

161) ("Defendants' Response").  Oral argument was deemed unnecessary.

Based on the following, Defendants' request for sanctions is GRANTED; Plaintiff

is ORDERED to pay $ 5,000 to the court, and to pay to Defendants the expenses,

including attorney's fees, Defendants have incurred in connection with this discovery

dispute.

## DISCUSSION

Plaintiff argues in opposition to Defendants' request for attorneys' fees that it

was Defendants' Accelerated Motion to Compel that caused Plaintiff's privacy to be

violated through the public docketing of Plaintiff's email account information, including email addresses and passwords, and that awarding Defendants the costs incurred in connection with their Accelerated Motion to Compel would effectively reward Defendants for the privacy violation.  Plaintiff's Memorandum at 2.  Plaintiff also advises that he intends to seek reparation of "some of the integrity lost to the legal system by preventing Plaintiffs from relying on any of the emails."  *Id*.  According to Plaintiff, although Plaintiff initially complied with the August 18, 2011 Order by providing his email accounts and passwords to Stroz Friedberg on August 29, 2011, "Defendants and Stroz Friedberg rendered that information useless when they violated [Plaintiff's] privacy."  *Id*.  Plaintiff continues that absent the public docketing of Plaintiff's email account addresses and password information, Stroz Friedberg would have had access to Plaintiff's email accounts "immediately upon Judge Arcara's Order overruling [Plaintiff's] objections."  *Id*.  Plaintiff thus maintains that the delay in providing the email account information to Defendants' forensic experts is attributable to the fact that Plaintiff, based on Defendants' "unsavory and inexcusable tactics," was forced to execute and deliver new consent forms reflecting Plaintiff's recently changed email account passwords.  *Id*.  Lake and Shaman, who then represented Plaintiff, further maintain that they repeatedly contacted Plaintiff throughout August and September 2011 to remind Plaintiff of his continuing obligation to comply with the August 18, 2011 Order, with which Plaintiff initially refused to comply, causing Plaintiff's attorneys to move to stay the August 18, 2011 Order.  *Id*. at 3.  Plaintiff eventually agreed to provide the email account information, conditioning its access by Stroz Friedberg on Judge Arcara's ruling on Plaintiff's objections to the August 18, 2011 Order, which

Plaintiff anticipated filing. *Id*. According to Plaintiff, he had, on August 29, 2011,

complied with the August 18, 2011 Order, although on that same day Plaintiff also

again moved to stay the August 18, 2011 Order. *Id*. When Judge Arcara affirmed the

August 18, 2011 Order on September 16, 2011, Plaintiff's attorneys again requested

Plaintiff provide the email account information, including Plaintiff's email passwords, on

the forms provided by Stroz Friedberg. *Id*. Plaintiff then sent the forms by DHL

Express, one of the express mail couriers identified by Aycock as likely to be

conveniently located near Plaintiff's Ireland residence, to Plaintiff's attorneys who, upon

receiving the consent forms on September 28, 2011, immediately emailed copies to

Stroz Friedberg. *Id*.

       In affidavits submitted by Plaintiff's attorneys, Lake states that after informing

Plaintiff that ¶ 5 of the August 18, 2011 Order directed Plaintiff to produce Plaintiff's

addresses and passwords for all email accounts Plaintiff had used since 2003, Plaintiff

"instructed [Lake] not to comply with this provision and to bring the issue before District

Judge Arcara." Third Lake Declaration ¶ 2. Lake further advises that on August 26 and

27, 2011 he reminded Plaintiff of his continuing obligation to comply with the August 18,

2011 Order by producing the email account information by August 29, 2011, and on

August 27, 2011, Plaintiff authorized his attorneys to provide the email account

information on the modified versions of the consent forms provided by Stroz Friedberg,

conditioning Plaintiff's consent on resolution of Plaintiff's then-pending objections to the

August 18, 2011 Order. *Id*. ¶¶ 3-4. Similarly, Shaman maintains that he informed

Plaintiff on August 19, 2011 that Plaintiff's motion to stay made on August 18, 2011 had

been denied by Judge Arcara, and advised Plaintiff he was required to comply with the

August 18, 2011 Order, but Plaintiff refused to comply.  Second Shaman Declaration

¶ 3.  According to Shaman, it was not until August 28, 2011 that Plaintiff provided

Shaman with the email addresses and passwords for Plaintiff's Gmail and MSN email

accounts on the modified consent forms conditioning the use of the information on

Judge Arcara's ruling on Plaintiff's objections to the August 18, 2011 Order.  Second

Shaman Declaration ¶ 4.  Shaman, in turn, provided the information to Bryan Rose of

Stroz Friedberg on August 29, 2011.  *Id*.  Plaintiff then moved to stay ¶ 5 of the August

18, 2011 Order. *Id*. ¶ 5.  Further, on September 1, 2011, Defendants filed their

Accelerated Motion to Compel, publicly docketing Plaintiff's email account information.

*Id*. ¶ 6.  According to Shaman, after Judge Arcara denied Plaintiff's objections on

September 16, 2011, Shaman informed Plaintiff he needed to execute new consent

forms, and, having received no response from Plaintiff, repeated the request to Plaintiff

on September 21, 2011.  *Id*. ¶¶ 9-11.  Shaman further maintains that on September 23,

2011, Plaintiff advised Shaman he would be executing the new consent forms and, in

fact, sent the newly executed forms that same day via DHL Express, an express

courier.  *Id*. ¶ 12.  The new forms were received by Stoz Friedberg on September 28,

2011.  *Id*. ¶ 13.

Defendants respond in support of sanctions that the statements by Lake and

Shaman, then representing Plaintiff, attributing the failure to timely comply with ¶ 5 of

the August 18, 2011, to Plaintiff, establish a lack of any valid legal basis or justification

for the noncompliance, confirming the need for "severe sanctions."  Defendants'

Response at 1.  Defendants maintain that the potential public disclosure of Plaintiff's

email account information could have been avoided had Plaintiff designated the

consent forms as "confidential" in accordance with the Joint Protective Order governing all "private" and "sensitive" information produced in discovery in this action. *Id*. at 6-7. Defendants further maintain that upon filing the modified consent forms by attaching them as exhibits in support of their Accelerated Motion to Compel, Defendants immediately notified Plaintiff's attorneys of the filing to ensure their awareness of it. *Id*. at 7. According to Defendants, the potential public disclosure of Plaintiff's email account information by electronically filing the modified consent forms Plaintiff's attorneys provided to Stroz Friedman on August 29, 2011, which forms had conditioned the use of Plaintiff's email account information on Judge Arcara's ruling on Plaintiff's objections to the August 18, 2011 Order, does not excuse Plaintiff's failure to timely produce by August 29, 2011, the email account information as contemplated by ¶ 5 of the August 18, 2011 Order. *Id*. at 7-8. Defendants assert that because Plaintiff "had already embarked on his campaign of obstruction" prior to Defendants filing the Accelerated Motion to Compel on September 1, 2011, there "is simply no connection between [Plaintiff's] contumacious misconduct and Defendants' subsequent filing of the consent forms." *Id*. at 8. Defendants characterize as "frivolous" any *in limine* motion Plaintiff may eventually file "in an effort to remedy the purported privacy breach." *Id*. Finally, Defendants argue that Plaintiff's attorneys' revelation that they were simply following Plaintiff's orders in failing to timely comply with the court's July 1, 2011 and August 18, 2011 Orders establishes Lake and Shaman ignored their "ethical duty to resist a client's entreaties to break the law," and that if they were unable to persuade Plaintiff to change course, Lake and Shaman should have moved to withdraw rather than "assist[ing Plaintiff's] obstruction by stonewalling discovery and filing frivolous and

16

misleading motions." *Id*. at 8-9.  According to Defendants, the continued

representation of Plaintiff by Lake and Shaman, after publicly accusing Plaintiff of

wrongdoing by disclosing confidential communications with Plaintiff, raises questions as

to whether Lake and Shaman have violated their professional obligations to Plaintiff and

should continue to represent him.  *Id*. at 9.


**1.      Civil Contempt Sanction**

The circumstances under which Plaintiff failed to produce discovery as directed

by ¶ 5 of the August 18, 2011 Order, necessitating Defendants' Accelerated Motion to

Compel, support imposing a civil contempt sanction against Plaintiff.  "It is well settled

that district courts enjoy wide discretion in sanctioning litigants appearing before them."

*Novak v. Wolpoff & Abramson, LLP*, 536 F.3d 175, 177 (2d Cir. 2008) (citing *Design

Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006)).  *See also Southern New

England Telephone Company v.  Global NAPS Inc.*, 624 F.3d 123, 143 (2d Cir. 2010)

(reviewing for abuse of discretion district court's imposition of sanctions for failure to

comply with court-ordered discovery).  Rule 37(b) provides a non-exclusive list of

sanctions that the court may, in its discretion, impose on a party who "fails to obey an

order to provide or permit discovery . . . ."  Fed. R. Civ. P. 37(b)(2).  As relevant to the

instant action, the listed sanctions include "treating as contempt of court the failure to

obey any order . . . ."  Fed.R.Civ.P. 37(b)(2)(A)(vii).

The plain language of Rule 37(b) requires that a court order be in effect before

sanctions are imposed.  *Daval Steel Products v. M/V Fakredine*, 951 F.2d 1357, 1363

(2d Cir. 1991) ("Provided that there is a clearly articulated order of the court requiring

specified discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with that order." (citing *Salahuddin v. Harris*, 782 F.2d 1127, 1131 (2d Cir. 1986))).  *See also Buffalo Carpenters Pension Fund v. CKG Ceiling and Partition Company*, 192 F.R.D. 95, 97-98 (W.D.N.Y. 2000) (observing that "Rule 37(b)(2) only enables the court to sanction a party for failure 'to obey an order to provide or permit discovery . . . .'"  (quoting Fed. R. Civ. P. 37(b)(2))).  Here, it cannot be disputed that Defendants filed the Accelerated Motion to Compel to obtain Plaintiff's compliance with ¶ 5 of the August 18, 2011 Order.

In discerning whether to impose sanctions pursuant to Rule 37(b)(2)(A), district courts consider several factors, including "'(1) the wilfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance.'"  *Southern New England Telephone Co.*, 624 F.3d at 144 (quoting *Agiwal v. Mid Island Mortgage Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (further internal citation omitted)).  "Because the text of the rule requires only that the district judge's orders be 'just,' however, and because the district court has 'wide discretion in imposing sanctions under Rule 37,' these factors are not exclusive, and they need not each be resolved against the party" against whom sanctions are imposed in order to be within the district court's discretion.  *Southern New England Telephone Co.*, 624 F.3d at 144 (quoting *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir.  2007), and citing *Daval Steel Prods.*, 951 F.2d at 1366).  "The district court is free to consider 'the full record in the case in order to select the appropriate sanction.'"  *Southern New England Telephone Co.*, 624 F.3d at 144

(quoting *Nieves v. City of New York*, 208 F.R.D. 531, 535 (S.D.N.Y. 2002)).

"Whether imposed pursuant to Rule 37 or the court's inherent power, a contempt order is . . . a 'potent weapon to which courts should not resort where there is a fair ground of doubt as to the wrongfulness of the [contemnor's] conduct.'" *Southern New England Telephone Co.*, 624 F.3d at 144-45 (quoting *King v. Allied Vision Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)). "A court may, however, hold a party in contempt for violation of a court order when 'the order violated by the contemnor is clear and unambiguous, the proof of non-compliance is clear and convincing, and the contemnor was not reasonably diligent in attempting to comply.'" *Id*. at 145 (quoting *EEOC v. Local 638*, 81 F.3d 1162, 1171 (2d Cir. 1996)).

In this case, the August 18, 2011 Order plainly directed Plaintiff to provide Defendants, by August 29, 2011, with the information necessary for Defendants to access and investigate all email accounts Plaintiff had used since 2003.  August 18, 2011 Order ¶ 5.  Furthermore, Plaintiff was to use the forms provided by Defendants in producing his email account information.  *Id*.  Plaintiff does not assert that ¶ 5 was less than clear, ambiguous, or misconstrued; rather, that Plaintiff was less than diligent in complying with the August 18, 2011 Order is established by Plaintiff's insertion of language on the consent forms he did execute by August 29, 2011, thereby prohibiting Defendants from using the information until after Judge Arcara had ruled on objections then pending before him, and effectively staying the August 18, 2011 Order, despite the fact that Judge Arcara had already denied several requests by Plaintiff to stay the order, and had specifically noted that the August 18, 2011 Order was a further attempt to obtain Plaintiff's full compliance with the prior July 1, 2011 Order (Doc.  No.  83).

August 26, 2011 Decision and Order at 4.  Accordingly, civil contempt sanctions will be imposed against Plaintiff for violating the August 18, 2011 Order.

"The imposition of civil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged." *Paramedics Electromedicina Comercial, Ltda. v. GE Medical Systems Information Technologies, Inc.*, 369 F.3d 654, 657 (2d Cir. 2004) (citing cases).  "Such sanctions may not be imposed as a purely punitive measure." *Id*.  "To the extent that a contempt sanction is coercive, the court has 'broad discretion to design a remedy that will bring about compliance.'" *Id*. (quoting *Perfect Fit Industries, Inc. v. Acme Quilting Co., Inc.*, 673 F.2d 53, 57 (2d Cir. 1982)).  Coercive sanctions should be paid to the court. *New York State National Organization for Women v. Terry*, 886 F.2d 1393,1353-54 (2d Cir. 1989) (modifying district court's award of coercive civil contempt sanctions to plaintiff, absent plaintiff's showing of compensable injury or actual loss, and directing payment of such fine into the court).  In contrast, when the purpose is compensatory, the fine is to be paid directly to the injured party, rather than to the court, and "'the sanction should correspond at least to some degree with the amount of damages.'" *Id*. (quoting *King*, 65 F.3d at 1062).

In the instant case, Defendants have not submitted evidence of any monetary loss resulting from Plaintiff's failure to comply with ¶ 5 of the August 18, 2011 Order such that compensatory damages are not required.  Further, the purpose of the sanction to be imposed is coercive, rather than compensatory, such that the court has broad discretion to establish the proper sanction. *See Southern New England Telephone Co.*, 624 F.3d at 146 (finding district court's imposition of civil contempt

20

sanctions to achieve contemnor's future compliance with court's discovery orders was

not an abuse of discretion).   Accordingly, the court contemplates a monetary sanction

designed to coerce Plaintiff's future compliance with all court orders in this case.

In exercising its broad discretion in setting the amount of a coercive fine, several

factors to be considered include "the 'character and magnitude of the harm threatened

by continued contumacy,' the 'probable effectiveness of any suggested sanction in

bringing about [compliance],' and the contemnor's ability to pay." *Paramedics*

*Electrodedicina Comercial, Ltda.*, 369 F.3d at 658 (quoting *Perfect Fit Industries, Inc.*,

673 F.2d at 56).   Because a civil contempt order is designed to be coercive rather than

punitive, "a party's complete inability, due to poverty or insolvency, to comply with an

order to pay court-imposed monetary sanctions is a defense to a charge of contempt.

*Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995) (citation omitted).   The

burden of establishing an inability to pay is on the contemnor, and he must establish

this inability "clearly, plainly, and unmistakably." *Id*.   Furthermore, "the credibility of his

[the contemnor's] denial is to be weighed in light of his present circumstances.

Conclusory statements are inadequate to carry this burden."  *Id*. (internal quotation

marks and citation omitted).

Here, the arguments made by Plaintiff in opposition to Defendants' Accelerated

Motion to Compel in attempting to explain his abject failure to comply with the August

18, 2011 Order were without merit.   According to Plaintiff, it was Defendants' public

filing of the modified consent forms that caused the belated production of Plaintiff's

email account information because once Plaintiff learned his email account information

could be accessed by the public, Plaintiff had to change his email passwords and then

21

execute new consent forms. *Id*. Plaintiff's argument, however, completely ignores the fact that Plaintiff never provided the information required by ¶ 5 of the August 18, 2011 Order until after the undersigned granted Defendants' Accelerated Motion to Compel. Thus, there is no causal relationship between Defendants' filing of Plaintiff's email account information and Plaintiff's lack of compliance with the court's July 1 and August 18, 2011 Orders.  Plaintiff is reminded that the need for the August 18, 2011 Order arose when Defendants learned of the existence of emails other than those Plaintiff had provided pursuant to the July 1, 2011 Order, thus requiring Defendants to obtain Plaintiff's email account information to ensure that Plaintiff was not withholding any other relevant emails, regardless of whether such withholding was deliberate or mere oversight.  Plaintiff's attempts to excuse his noncompliance by attributing such failure to comply based on Defendants' attaching as exhibits to the Accelerated Motion to Compel the inadequate modified consent forms that Plaintiff failed to designate as confidential, which occurred on September 1, 2011, after the August 29, 2011 deadline for Plaintiff's full compliance with the August 18, 2011 Order had passed, are, at best, feeble.  The circumstances under which Plaintiff attempted to avoid complying with the August 18, 2011 Order's direction that Plaintiff provide his email account information by August 29, 2011, including providing limited information on forms modified so as to negate their use, establishes a plain lack of respect for the court's order which cannot be countenanced.

Moreover, although Plaintiff did produce consent forms for his Gmail and MSN email accounts by August 29, 2011, the information was not on the forms supplied by Stroz Friedberg but, rather, on forms that had been modified by Plaintiff to prohibit

22

Defendants' use of the information until after Judge Arcara ruled on Plaintiff's then

pending objections to the August 18, 2011 Order.  In other words, Plaintiff, by providing

the requested information only on the modified consent forms, effectively granted his

own stay by imposing a temporal limitation on Defendants' use of such information,

despite the fact that Judge Arcara had denied three previous requests by Plaintiff to

stay production of the email account information.  The record thus fails to establish that

Plaintiff was at all justified in failing to timely disclose his email account information in

accordance with ¶ 5 of the August 18, 2011 Order.  For whatever reasons, Plaintiff, fully

advised by his attorneys not to do so, chose to knowingly ignore the unambiguous

orders of the court, thus obstructing the expedited discovery to be accomplished by

compliance with such orders.

     In the absence of the threat of an order, such as the undersigned's Order filed

September 28, 2011 (Doc. No. 152) directing Plaintiff's compliance with ¶ 5 of the

August 18, 2011 Order by September 30, 2011, it is unlikely that Plaintiff would have

produced the email account information on the unmodified consent forms provided by

Stroz Friedberg.  Furthermore, Plaintiff's response to the September 28, 2011 Order

directing Plaintiff to show cause why Defendants' request for sanctions should not be

granted did not include any assertion that Plaintiff was destitute or otherwise unable to

pay a monetary sanction, as was his burden.  *Huber*, 51 F.3d at 10 (the burden of

establishing an inability to pay is on the contemnor, and he must establish this inability

"clearly, plainly, and unmistakably").

     Plaintiff's obstruction warranting sanctions are not trivial.  Plaintiff has been well-

aware of the court's finding at the outset of this proceeding that expedited discovery

directed to the authenticity of the purported contract with Defendant Zuckerberg alleged

in the Amended Complaint was warranted and in fact agreed to such acceleration.

Accordingly, Plaintiff's unjustified refusal to fully comply with explicit court orders that

were intended to promptly carry out such critical and needed discovery consistent with

that threshold determination, one not objected to by Plaintiff, cannot be tolerated

without casting doubt on the correctness of the court's initial determination.

On this record, the undersigned finds $ 5,000 to be a suitable civil contempt fine.

Plaintiff is ORDERED to pay to the court $ 5,000 as a civil contempt sanction to ensure

Plaintiff's further compliance with this court's orders.


## 2.     Attorney's Fees

Defendants' request for attorneys' fees may be granted under either

Fed.R.Civ.P. 37(a)(5)(A) ("Rule 37(a)(5)(A)"), based on the court's having granted

Defendants' Accelerated Motion to Compel, or Fed.R.Civ.P. 37(b)(2)(C) ("Rule

37(b)(2)(C)"), based on the imposition of sanctions.  Pursuant to Rule 37(a)(5)(A), if a

motion to compel compliance with a discovery order is granted, "the court must, after

giving an opportunity to be heard, require the party . . . whose conduct necessitated the

motion, the party or attorney advising that conduct, or both to pay the movant's

reasonable expenses incurred in making the motion, including attorney's fees."

Fed.R.Civ.P. 37(a)(5)(A).  The court, however, must not order this payment if one of

three exceptions applies, including (1) the motion to compel was filed before the

movant attempted in good faith to obtain the discovery without court action, (2) the

nondisclosure was "substantially justified" or (3) "other circumstances make an award of

24

expenses unjust." Fed.R.Civ.P. 37(a)(5)(A)(i), (ii), and (iii).  Similarly, upon granting a

party's motion for sanctions pursuant to Rule 37(b)(2)(C), "the court must order the

disobedient party, the attorney advising that party, or both to pay the reasonable

expenses, including attorney's fees, caused by the failure, unless the failure was

substantially justified or other circumstances make an award of expenses unjust."

Fed.R.Civ.P. 37(b)(2)(C).  In the instant case, Plaintiff's arguments opposing imposition

of sanctions fail to establish any of the above exceptions to an award of attorney's fees

under Rule 37(a)(5)(A) or 37(b)(2) applies.

    With regard to the first exception under Rule 37(a)(5)(A), the record

demonstrates Defendants filed the Accelerated Motion to Compel only after numerous

attempts to obtain the email account information that Plaintiff was directed to produce

by ¶ 5 of the August 18, 2011 Order.  Specifically, Defendants submitted in support of

their Accelerated Motion to Compel the Declaration of Alexander H. Southwell, Esq.

(Doc. No. 130) ("Southwell Declaration"), detailing Defendants' good faith attempts to

obtain Plaintiff's compliance with ¶ 5 of the August 18, 2011 Order before filing the

motion.  Southwell Declaration (Doc. No. 130) ¶ 1.  For example, Southwell explains

that after receiving the modified consent forms from Plaintiff on August 29, 2011,

Southwell sent Plaintiff's counsel, Lake, a letter via electronic mail, informing that the

conditional consents were not in compliance with the August 18, 2011 Order and

"constituted improper self-help."  *Id.* ¶¶ 3-5 and Exh. C.  As of the filing of Defendants'

Accelerated Motion to Compel on September 1, 2011, Plaintiff had yet to provide

consent forms that complied with ¶ 5 of the August 18, 2011.  *Id.* ¶ 6.  Plaintiff does not

challenge the accuracy of any of these statements, nor does Plaintiff otherwise assert

that Defendants have failed to attempt to obtain in good faith Plaintiff's compliance with

¶ 5 of the August 18, 2011 Order.  Accordingly, Plaintiff's noncompliance may not be

excused based on any failure by Defendants to obtain Plaintiff's compliance before

resorting to filing the Accelerated Motion to Compel on September 1, 2011.

The record also fails to establish that Plaintiff's nondisclosure was substantially

justified under Rule 37(a)(5)(A)(ii) or 37(b)(2)(C), so as to avoid an award of attorney's

fees.  Whether a party's conduct was "substantially justified" is determined according to

an objective test of reasonableness and does not require that the party have acted in

good faith.  *Bowne of New York City, Inc. v. AmBase Corp.*, 161 F.R.D. 258, 262

(S.D.N.Y. 1995) (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).  "Substantially

justified" does not mean that the challenged action was "justified to a high degree," but

rather, conduct is substantially justified if there was a "genuine dispute" or if "reasonable

people could differ" as to the appropriateness of the contested conduct.  *Pierce*, 487

U.S. at 565 (internal citations omitted).

The only argument proffered by Plaintiff that could be construed as attempting to

establish Plaintiff's failure to comply with ¶ 5 of the August 18, 2011 Order was justified

is that Defendants attached copies of the modified consent forms as exhibits to the

Southwell Declaration filed on the public docket in support of Defendants' Accelerated

Motion to Compel, thereby creating the possibility that the email account information

Plaintiff had provided for his Gmail and MSN email accounts could be viewed and used

by anyone with access to this court's electronic filing system to access Plaintiff's email

accounts.  Plaintiff's Memorandum at 12-13.  As discussed in connection with the

court's determination to sanction Plaintiff for civil contempt, however, this argument is

without merit because the fact that Defendants' Accelerated Motion to Compel was not filed until September 1, 2011 establishes that the absence of any causal relationship between Defendants' filing of Plaintiff's email account information and Plaintiff's failure to timely provide discovery by August 29, 2011 as directed pursuant to ¶ 5 of the August 18, 2011 Order.  Discussion, *supra*, at 21-23.  Such lack of any causal relationship also establishes the lack of any genuine dispute over which reasonable minds could differ as to whether Plaintiff's conduct in failing to comply was appropriate. *Pierce*, 487 U.S. at 565

Nor do any other circumstances make an award of costs, including reasonable attorney's fees, unjust under Rule 37(a)(5)(A)(iii) or Rule 37(b)(2)(C).  Rather, as discussed above, Discussion, *supra*, at 19-21, Plaintiff's failure to comply with the August 18, 2011 Order, especially ¶ 5's direction that Plaintiff produce his email account information by August 29, 2011, on the forms supplied by Stroz Friedberg, supports sanctioning Plaintiff for contempt pursuant to Fed.R.Civ.P. 37(b)(2)(A)(vii).

Both Rule 37(a)(5)(A) and Rule 37(b)(2)(C) contemplate that an award of attorney's fees may be apportioned between the party whose conduct necessitated the award and attorney advising such conduct.  Here, the court has already imposed the civil contempt sanction against Plaintiff based on a determination that it was Plaintiff who, despite being repeatedly advised by his own legal counsel to the contrary, continually failed to comply with the August 18, 2011 Order.  To date, Plaintiff has not attempted to contradict his attorney's statements.  As such, there is no need to apportion payment of Defendants' attorney's fee between Plaintiff and his attorneys as otherwise contemplated by Rule 37(a)(5)(A) and 37(b)(2)(C).  Rather, the entire amount

of Defendants' attorney's fees incurred in connection with their Accelerated Motion to Compel is to be paid by Plaintiff.[3]

Accordingly, Plaintiff is ORDERED to pay Defendants the costs of making the Accelerated Motion to Compel, including attorneys' fees and reasonable expenses.


**3.      Attorney Disciplinary Rules Violations**

Finally, insofar as Defendants maintain that Plaintiff's attorneys' revelation of their confidential communications with Plaintiff establishes Lake and Shaman ignored their "ethical duty to resist a client's entreaties to break the law," and that if they were unable to persuade Plaintiff to change course, Lake and Shaman should have moved to withdraw rather than "assist[ing Plaintiff's] obstruction by stonewalling discovery and filing frivolous and misleading motions."  Defendants' Response at 8-9.  Defendants maintains Lake and Shaman's continued representation of Plaintiff after publicly accusing Plaintiff of wrongdoing by disclosing confidential communications with Plaintiff raises questions as to whether Lake and Shaman have violated their professional obligations to Plaintiff and should continue to represent him.  *Id*. at 9.  Plaintiff offers no reply to this argument.

Any attorney practicing in this court is required to "faithfully adhere to the New York Rules of Professional Conduct."  Local R. Civ. Proc. W.D.N.Y. Rule  83.3(a). Jurisdiction to conduct attorney disciplinary proceedings based on attorney misconduct

---

[3] Although the court sees no reason to make a further allocation determination, should Plaintiff perceive a need for such allocation, Plaintiff may file an affidavit setting forth the basis for such allocation, within ten (10) days.

in proceedings within this state is exclusively vested in the Appellate Division of New York Supreme Court in each judicial division.  New York Judiciary Law § 90(2) (McKinney's 2001).  Such proceedings are commenced with the filing of a complaint with the appropriate disciplinary or grievance committee.  N.Y.COMP. CODES R. & REGS. tit. 22, § 603.4(c) (2011).

As relevant to this case, an attorney's revelation of confidential information to the disadvantage of a client, without the client's consent, is prohibited.  N.Y. Rules of Prof. Conduct, Rule 1.6(a) ("Rule 1.6(a)"), N.Y.COMP. CODES R. & REGS. tit. 22, § 1200.0. Accordingly, Defendants' assertion that Plaintiff's attorneys' statements made in connection with Plaintiff's opposition to sanctions, revealing that Plaintiff's attorneys' were merely following Plaintiff's orders in failing to comply with the August 18, 2011 Order, would establish a violation of Rule 1.6(a) if such statements were made without Plaintiff's consent.

Defendants, however, provide no evidence that Plaintiff did not approve the disclosure of such information.  To the contrary, Plaintiff's papers suggest that Plaintiff was award of, and did not oppose, such disclosure.  Plaintiff's Memorandum at 2-3 (explaining that Plaintiff was kept advised of his continuing obligations to provide discovery in response to the August 18, 2011 Order, yet sought to avoid compliance by filing motions to stay).  On this record, Defendants' assertion that Lake and Shaman disclosed confidential communications without Plaintiff's consent is, at best, speculative, and the court will decline to file a disciplinary complaint against Lake and Shaman.  Defendants may, however, on their own initiative, file such complaint with the appropriate attorney grievance committee.

## <u>CONCLUSION</u>

Based on the foregoing, Defendants' request for sanctions is GRANTED; Plaintiff

is ORDERED to pay $ 5,000 to this court as a civil contempt sanction, as well as the

expenses, including attorney's fees, Defendants have incurred in attempting to obtain

Plaintiff's email account information as directed by ¶ 5 of the August 18, 2011 Order.

Plaintiff's payment of the $ 5,000 sanction by certified check to the Clerk of Court,

Western District of New York, shall be made <u>within twenty (20) days of this Decision

and Order</u>.  Defendants are directed to file their affidavits of costs and attorneys' fees

incurred, consistent with this Decision and Order, <u>within ten (10) days of this Decision

and Order</u>; Plaintiff's opposition, if any, shall be filed <u>within ten (10) days thereafter</u>.

Oral argument shall be at the discretion of the court.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     January <u>10</u>, 2012
           Buffalo, New York