UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PAUL D. CEGLIA,

                                        Plaintiff,

                    v.

MARK ELLIOT ZUCKERBERG, and
FACEBOOK, INC.,

                                        Defendants.

**DECISION**
**and**
**ORDER**

**10-CV-00569A(F)**

APPEARANCES:         BOLAND LEGAL, LLC
                              Attorneys for Plaintiff
                              DEAN M. BOLAND, of Counsel
                              18123 Sloane Avenue
                              Lakewood, Ohio 44107

                              JEFFREY ALAN LAKE, ESQ.
                              Attorney for Plaintiff
                              835 5th Avenue
                              Suite 200A
                              San Diego, California 92101

                              PAUL A. ARGENTIERI, ESQ.
                              Attorney for Plaintiff
                              188 Main Street
                              Hornell, New York 14843

                              GIBSON, DUNN & CRUTCHER, LLP
                              Attorneys for Defendants
                              ORIN S.  SNYDER and
                              ALEXANDER H. SOUTHWELL, of Counsel
                              200 Park Avenue
                              47th Floor
                              New York, New York 10166-0193
                                            and
                              THOMAS H. DUPREE, JR., of Counsel
                              1050 Connecticut Avenue, N.W.
                              Washington, District of Columbia  20036

ORRICK, HERRINGTON & SUTCLIFFE LLP
Attorneys for Defendants
LISA T. SIMPSON, of Counsel
51 West 52nd Street
New York, New York 10019

HARRIS BEACH LLP
Attorneys for Defendants
TERRANCE P. FLYNN, of Counsel
Larkin at Exchange
726 Exchange Street
Suite 1000
Buffalo, New York 14210

This case was referred to the undersigned by Honorable Richard J. Arcara on

May 27, 2011 for pretrial matters.  The action is presently before the court on Plaintiff's

motion filed November 25, 2011 (Doc. No. 231), requesting sanctions against

Defendants and Defendants' counsel.

The parties to this action dispute the authenticity of a contract ("the contract")[1]

allegedly executed between Plaintiff Paul D. Ceglia ("Plaintiff") and Defendant Mark

Elliot Zuckerberg ("Zuckerberg"), on April 28, 2003, pursuant to which Plaintiff and

Zuckerberg, then a student at Harvard University ("Harvard"), established a partnership

for the development and commercialization of two separate internet business ventures,

including StreetFax.com ("StreetFax"), an on-line database developed by Plaintiff, and

"The Face Book," the social-networking website created and maintained by Zuckerberg,

and now known as Defendant Facebook, Inc. ("Facebook").  The putative contract

provides that Plaintiff would hire Zuckerberg to perform web programming for

StreetFax, and Plaintiff would help fund the development of Facebook in exchange for a

---

[1] A copy of the contract is attached as Exhibit A to the Amended Complaint (Doc. No. 39).

2

one-half interest in Facebook.  In the First Amended Complaint (Doc. No. 39)

("Amended Complaint"), Plaintiff quotes several email exchanges between himself and

Zuckerberg which Plaintiff maintains supports his allegations that the contract

establishes a partnership between Plaintiff and Zuckerberg and gives Plaintiff 50%

ownership in Facebook.  *See*, *e.g.*, Amended Complaint ¶ 32 (quoting from email

Zuckerberg allegedly sent Plaintiff on July 30, 2003 that ". . . I've been tweaking the

search engine today [referring to the StreetFax.com project] and I'm pleased with its

results.  I'd like to use it for the Harvard site [referring to the Face Book], I think it will

really help people find each other, even if the spell names incorrectly.  Would it be

agreeable with you if I adapt the source code?  Thanks!"  (bracketed text in original)).

Nowhere within the papers filed in this action, however, are there any copies of the

actual emails quoted by Plaintiff in the Amended Complaint.

        No scheduling conference pursuant to Fed.R.Civ.P. 16(b) has yet been held or

scheduled, nor have the parties conferred, pursuant to Fed.R.Civ.P. 26(f), to develop a

discovery plan; rather, the parties agreed to expedited discovery designed to establish

whether the putative contract and emails allegedly exchanged between Plaintiff and

Zuckerberg in connection with the contract are  forgeries.  Accordingly, by Order filed

July 1, 2011 (Doc. No. 83) ("July 1, 2011 Order"), the undersigned directed that Plaintiff

produce, on or before July 15, 2011, certain emails and make all computers and

electronic media within Plaintiff's possession available for inspection by Stroz Friedberg

LLC ("Stroz Friedberg", a digital forensic consulting firm whose services Defendants

have retained in connection with this action.  July 1, 2011 Order at 1.  With regard to

Defendants' discovery obligations, the July 1, 2011 Order directed only "that five (5)

days subsequent to Plaintiff's production of the Electronic Assets and his sworn

declaration, Defendant shall produce all emails in their original, native and hard-copy

form between Defendant Zuckerberg and Plaintiff and/or other persons associated with

StreetFax that were captured from Zuckerberg's Harvard email account. . . ."  July 1,

2011 Order at 2-3.

On November 23, 2011, Plaintiff submitted to the court an *ex parte* motion

("Plaintiff's *ex parte* motion") seeking a temporary restraining order ("TRO") prohibiting

the destruction of forensic copies of five computers ("the five computers") belonging to

and used by Defendant Zuckerberg while a student at Harvard.  The five computers

were at issue in an unrelated action filed against Defendants in United States District

Court for the District of Massachusetts, *ConnectU, Inc. v. Facebook, Inc.*, Civil Action

No.  2007-10593-DPW ("the ConnectU action"), in which Zuckerberg and Facebook

were sued for having stolen the idea for Facebook from three Harvard seniors who had

arranged for Zuckerberg to assist in developing a similar website referred to as

"ConnectU."  In a teleconference conducted by the court with the parties on November

23, 2011, after Judge Arcara refused an *ex parte* consideration of Plaintiff's requested

TRO, to discuss the *ex parte* motion with Plaintiff's attorney, Dean M. Boland, Esq.

("Boland"), and Defendants' attorney Orin Snyder ("Snyder"), Boland agreed to

withdraw the request for a TRO, but maintained Defendants should be sanctioned for

failing to disclose the existence of the five computers and failing to take steps to ensure

the forensic copies of the five computers were not destroyed.  Plaintiff then filed on

November 24, 2011 the instant motion (Doc. No. 231) ("Plaintiff's motion"), seeking

largely the same relief as sought in Plaintiff's *ex parte* motion including, *inter alia*, a

4

temporary restraining order prohibiting the destruction of the forensic copies of the five

computers, and requesting Defendants be sanctioned for failing to disclose the

existence of the five computers and their forensic copies.  Plaintiff's motion is supported

by the Memorandum of Law in Support of Motion for Temporary Restraining Order and

for Sanctions Against Defendants and Defense Counsel (Doc. No. 232) ("Plaintiff's

Memorandum"), with attached exhibits A through M ("Plaintiff's Exh(s). __"), and the

Declaration of Dean Boland, Esq. in Support of Motion for TRO and for Sanctions

Against Defendants and Defense Counsel (Doc. No. 233) ("Boland Declaration").

        According to Plaintiff, although the five computers potentially contain electronic

communications and may also include an email server, not only have Defendants

suppressed the existence of the five computers from Plaintiff, but Defendants have also

sought the destruction of forensic copies of the five computers, created by Jeff Parmet

and Associates, LLC ("Parmet"), a computer forensic consulting firm whose services

where retained by Defendant Facebook in connection with the ConnectU action.

Plaintiff's Memorandum at 2-4.  The electronic assets at issue in the ConnectU action,

including the five computers, are subject to a protective order ("the ConnectU protective

order") issued in that action, permitting Parmet to create forensic copies of the

electronic assets, and requiring the copies to be destroyed when the ConnectU litigation

is complete.  *Id*.

        Plaintiff maintains that although the forensic copies of the five computers have,

in connection with the ConnectU action, been searched for evidence of computer code

related to the plaintiffs' claims in that action, the forensic copies have never been

searched for other information, including evidence of electronic communications such

as email.  Plaintiff's Memorandum at 2.  Moreover, Plaintiff argued that because the

parties to the ConnectU action had reached a settlement, with only post-settlement

motions pending before the court that could be ruled upon at any time and, if denied,

would trigger the ConnectU protective order's provision requiring the destruction of the

forensic copies,  the forensic copies of the five computers were "in danger of imminent

destruction. . . ."   *Id.* at 3.  One of the law firms listed as counsel of record and

representing Defendants in this action, Orrick, Herrington & Sutcliffe, LLP ("the Orrick

law firm"), is also counsel of record for the defendants in the ConnectU action.

Attached as exhibits to Plaintiff's Memorandum are copies of emails dated August 5,

2011, from Monte Cooper, Esq. ("Cooper"), of counsel to the Orrick law firm, to other

counsel of record in the ConnectU action seeking confirmation that the forensic copies

of the five computers were destroyed or returned to the original owners by August 12,

2011 in accordance with the ConnectU protective order.  Plaintiff's Exhs. E and F.

By letter to the undersigned filed December 1, 2011 (Doc. No. 246), Plaintiff

withdrew his request for a TRO, but not his request that Defendants be sanctioned for

fraud based on Mr. Snyder's assertion that he was unaware that the Orrick law firm was

actively seeking to have the forensic copies of the five computers destroyed pursuant to

the ConnectU protective order.

On December 21, 2011, Defendants filed Defendants' Memorandum in

Opposition to Ceglia's Motion for Sanctions Against Defendants and Defense Counsel

(Doc. No. 276) (Defendants' Response"), and the Declaration of Alexander H.

Southwell, Esq. (Doc. No. 277) ("Southwell Declaration"), with attached exhibit A

("Defendants' Exh. A").  According to Defendants, although the self-executing provision

of the ConnectU protective order calls for the destruction of Parmet's forensic copies of the five computers upon completion of the ConnectU case, the original electronic materials, including the five computers, are not also required to be destroyed and, in fact, have been preserved since the commencement of the instant action.   Defendants' Response at 2-3.   Defendants have also represented that all copies of the electronic data relating to the five computers have been returned to their respective owners and have not been destroyed.   *Id*. at 3.   Defendants further maintain that in the instant action, Defendants have yet been required to produce only emails Zuckerberg sent from the Harvard server, but have not been required to identify and disclose the five computers to Plaintiff. *Id*. at 4.   According to Defendants, Plaintiff misrepresents the scope of the search conducted by Defendants' forensic expert Bryan Rose ("Rose") of Stroz Friedberg, given that although Rose searched Zuckerberg's Harvard email account, Rose made no representations about having searched "other electronic communications records" or conducting a "full search of Mr. Zuckerberg's electronic assets . . . .," *id*. at 4-5, as Plaintiff claims.   As such, Defendants cannot be faulted for failing to disclose the five computers.   *Id*. at 5.   Finally, Defendants maintain that, contrary to Plaintiff's assertion, Defendants' attorneys from the Orrick law firm did not actively seek the destruction of the forensic copies of the five compuers but, rather, merely reminded all counsel involved in the ConnectU action of their obligation under the self-executing provision of the ConnectU protective order to destroy copies of confidential information within their possession upon the conclusion of the ConnectU litigation and that such copies have not been destroyed pending the instant motion.   *Id*. at 5-6.   As such, Defendants urge the court to deny Plaintiff's request for sanctions. *Id*.

at 6

On December 30, 2011, Plaintiff filed his Reply to Defendants' Response in Opposition to Plaintiff's Motion for Sanctions for Fraud (Doc. No. 279) ("Plaintiff's Reply"), the Declaration of Paul Argentieri, Esq. (Doc. No. 280) ("Argentieri Declaration"), and the Declaration of Dean Boland, Esq. (Doc. No. 281) ("Boland Reply Declaration").  Plaintiff characterizes Defendants' opposition to Plaintiff's motion as a "fraud on the court. . . " upon which Defendants have obtained a court order.  Plaintiff's Reply at 1.  According to Plaintiff, once Defendants made any argument that depended on any undisclosed electronic assets, including the five computers and their forensic copies made by Parmet, Defendants' duty to disclose such electronic assets was triggered.  *Id*.  Plaintiff further asserts that because Defendants' contention that the emails on which Plaintiff relies as establishing the authenticity of the contract are fraudulent is based on a comparison of emails exchanges that are attached to the Amended Complaint with the Harvard emails, Defendants were required to disclose the five computers.  *Id*. at 1-2.  Plaintiff maintains that the five computers should have been disclosed because they may contain email instant messages, unpublished blog posts, or contemporaneous notes by Zuckerberg or any other person involved in the early development stages of Facebook that could defeat Defendants' "fake contract" claim.  *Id*. at 3.  Plaintiff further argues that Defendants' failure to disclose the five computers and their forensic copies was intended to convince the court to issue the expedited discovery order on July 1, 2011 (Doc. No. 83), which did not require Defendants to disclose the five computers and the copies.  *Id*.  at 3-4.  Accordingly, Plaintiff seeks to have Defendants sanctioned for perpetuating a fraud on the court.  *Id*.

8

at 8-9.

"It is well settled that district courts enjoy wide discretion in sanctioning litigants appearing before them." *Novak v. Wolpoff & Abramson, LLP*, 536 F.3d 175, 177 (2d Cir. 2008) (citing *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006)). *See also Southern New England Telephone Company v. Global NAPs Inc.*, 624 F.3d 123, 143 (2d Cir. 2010) (reviewing for abuse of discretion district court's imposition of sanctions for failure to comply with court-ordered discovery). "Whether imposed pursuant to Rule 37 or the court's inherent power, a contempt order is . . . a 'potent weapon to which courts should not resort where there is a fair ground of doubt as to the wrongfulness of the [contemnor's] conduct.'" *Southern New England Telephone Co.*, 624 F.3d at 144-45 (quoting *King v. Allied Vision Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)). A party may be sanctioned for civil contempt (1) for violating Fed.R.Civ.P. 11 ("Rule 11"); (2) for failing to comply with court-ordered discovery in violation of Fed.R.Civ.P. 37 ("Rule 37"); (3) for failing to make initial disclosures as required under Fed.R.Civ.P. 26(a) ("Rule 26(a)"); and (4) pursuant to the court's inherent powers where warranted by the unique circumstances of the case. None of these circumstances are present here.

First, with regard to Rule 11, Plaintiff maintains that Mr. Snyder has repeatedly assured the court that Stroz Friedberg has "comprehensively searched Defendant Zuckerberg's email and other electronic communications records," Plaintiff's Memorandum at 13 (citing Defendants' Memorandum of Law in Support of Their Motion for Expedited Discovery (Doc. No. 45) ("Defendants' Memorandum Supporting Discovery"), and Declaration of Bryan J. Rose in Support of Defendants' Motion for

Expedited Discovery (Doc. No. 47) ("Rose Declaration Supporting Discovery")), and that Snyder, in papers filed in this action, "made assurances to the court about the full search of Mr. Zuckerberg's electronic asserts for email communications," *id*., such that Snyder's failure to reveal the existence of the five computers and their forensic copies establishes either Snyder, the Orrick law firm, Stroz Friedberg, or some combination of the three, has perpetuated a fraud on the court. *Id*. at 12-15.  According to Plaintiff, Defendants engaged in fraud by making arguments in support of expedited discovery that depended on a comparison of Plaintiff's emails with Zuckerberg's emails, despite Defendants' knowledge that the entirety of Zuckerberg's electronic assets, specifically date stored on the five computers, has not been searched. *Id*. at 15-17.  Plaintiff further asserts that Defendants, by actively seeking the destruction of relevant evidence, *i.e.*, the five computers and their forensic copies, have further perpetuated a fraud on the court. *Id*.  at 17-18.  Despite these assertions, Plaintiff fails to point to any paper Defendants have presented to the court, either by signing, filing, submitting, or later advocating, in violation of Rule 11(b), so as to warrant sanctions pursuant to Rule 11(c).

In particular, Plaintiff has misrepresented Snyder's assertions regarding the scope of Defendants' examination for relevant emails.  The record establishes Defendants have only represented to the court that Defendants, through Stroz Friedberg, have searched Zuckerberg's Harvard email account, but have never claimed to have searched, contrary to Plaintiff's assertion, "'other electronic records'" nor "conducted a 'full search of Mr.  Zuckerberg's electronic assets for email communications.'"  Defendants' Response at 4-5 (quoting Plaintiff's Memorandum at 13).  Defendants further explain that the forensic examination of Zuckerberg's Harvard

email account was conducted by Rose and, based on the allegations of the Amended
Complaint, limited to the emails purportedly exchanged between Plaintiff and
Zuckerberg while Zuckerberg was a Harvard student, the purported emails were not
found anywhere on Zuckerberg's Harvard email account, and Defendants have never
made any statements to the court to the contrary. *Id*. at 5.  Defendants argue that
Plaintiff's assertion that Defendants have "actively sought" the destruction of the
forensic copies made by Parmet of the five computers is based on emails written by
Cooper to all counsel of record in the ConnectU action that merely reminds counsel of
their obligations under the self-executing provision of the ConnectU protective order to
destroy, upon conclusion of the ConnectU litigation, all copies of confidential
information, including copies of electronic materials, but that neither Cooper nor
Defendants have ever sought destruction of the original electronic materials. *Id*. at 5-6.
Finally, Defendants point out that although Cooper did email all counsel of record in the
ConnectU action, Cooper also requested that copies of electronic materials subject to
the ConnectU protective order be returned to their original owners, rather than be
destroyed. *Id*. at 6.

   A plain review of the documents on which Plaintiff relies in support of his
argument that Defendants have perpetrated a fraud on the court by filing papers that
falsely state Defendants have reviewed all of Zuckerberg's electronic assets, yet failed
to disclose the existence of the five computers or their forensic copies demonstrates, as
Defendants maintain, that Defendants never made such representations.  Rather,
Defendants merely stated that Zuckerberg's Harvard email account had been examined
by Stroz Friedberg for the emails which Plaintiff maintains he exchanged with

Zuckerberg in connection with the putative contract by which Zuckerberg allegedly gave Plaintiff a one-half ownership interest in Facebook in return for Plaintiff's assistance with the development of Facebook.  *See*, *e.g.*, Defendants' Memorandum Supporting Discovery at 10-13 (explaining that the emails to which Plaintiff refers as establishing the contract's authenticity are forgeries given that Stroz Friedberg's forensic examination of Zuckerberg's Harvard email account recovered more than 175 emails exchanged between Zuckerberg and Plaintiff (or another person affiliated with StreetFax) from 2003 to 2004, but no mention of Facebook); and Rose Declaration Supporting Discovery ¶¶ 4-8 and exhibits D-F (stating that Stroz Friedberg, in connection with the ConnectU action, preserved the contents of a Harvard University email account assigned to and used by Zuckerberg, as the account resided on Harvard's server in April 2011, while Harvard provided Stroz Friedberg with a copy of Zuckerberg's Harvard emial account as it resided on Harvard's server in October 2010 (collectively, "the Harvard email data"), and that the Harvard email data was searched by Stroz Friedberg for any email communications relevant to the instant case, but that the three email exchanges between Plaintiff and Zuckerberg found did not mention Facebook).  Accordingly, Plaintiff's assertion that Defendants' counsel have perpetuated a fraud on the court to obtain discovery orders favorable to Defendants are without merit.

Nor does the record support Plaintiff's assertion that Defendants' attorneys, particularly Mr. Cooper, have actively sought the destruction of relevant and discoverable evidence, including the forensic copies of the five computers.  Rather, as Defendants' explain, Mr. Cooper was only reminding all counsel of record in the

12

ConnectU action of their responsibilities pursuant to the self-executing provision of the
ConnectU protective order to destroy the copies of the five computers after the
ConnectU litigation had concluded.  Defendants' Response at 5-6.  The ConnectU
protective order, however, did not require destruction of the actual, original five
computers, which Defendants maintain are preserved, and Mr. Cooper also proposed
that rather than destroying the forensic copies, the attorneys with such copies in their
possession could choose to return the copies to the original owners of the information.
*Id*. at 6.  As such, the record fails to support Plaintiff's assertion that Cooper directed
the destruction of relevant and discoverable evidence.  There is thus no basis for
sanctioning Defendants under Rule 11, and the court next considers whether the record
supports sanctioning Defendants under Rule 37.

Fed.R.Civ.P. 37(b) provides a non-exclusive list of sanctions that the court may,
in its discretion, impose on a party who "fails to obey an order to provide or permit
discovery . . . ."  Fed. R. Civ. P. 37(b)(2).  As such, the plain language of Rule 37(b)
requires that a court order be in effect before sanctions are imposed.  *Daval Steel
Products v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991) ("Provided that there is
a clearly articulated order of the court requiring specified discovery, the district court
has the authority to impose Rule 37(b) sanctions for noncompliance with that order."
(citing *Salahuddin v. Harris*, 782 F.2d 1127, 1131 (2d Cir. 1986))).  *See also Buffalo
Carpenters Pension Fund v. CKG Ceiling and Partition Company*, 192 F.R.D. 95, 97-98
(W.D.N.Y. 2000) (observing that "Rule 37(b)(2) only enables the court to sanction a
party for failure 'to obey an order to provide or permit discovery . . . .'" (quoting Fed. R.
Civ. P. 37(b)(2))).  Here, Plaintiff does not argue, and a thorough review of the docket

13

fails to establish, that Defendants' failure to produce the forensic copies of the five computers was in violation of any court order.  Rather, the July 1, 2011 Order directs Defendants to produce only emails between Plaintiff, Zuckerberg, and others associated with StreetFax, captured from Zuckerberg's Harvard email account.  July 1, 2011 Order at 2-3.[2]   As such, there is no basis for holding Defendants in contempt of court under Rule 37 for violating a court order.  *Southern New England Telephone Co.*, 624 F.3d at 145.

Nor has Defendants' failure to disclose the five computers run afoul of any initial disclosure required under Rule 26(a).  Rather, Rule 26(a) provides that discovery that would otherwise be required as an initial disclosure may be exempted by court order. Fed.R.Civ.P. 26(a)(1)(A).  Here, the July 1, 2011 Order specifically limited discovery in this action to the categories listed therein, none of which are broad enough to include the five computers.  Moreover, because no scheduling conference pursuant to Rule 16(b) has yet been scheduled, Defendants have also been exempted from participating in any discovery conference under Rule 16(f).  Thus, even assuming Defendants could have been expected to reference the five computers in complying with Rule 26(a)(1)(A)(ii), including disclosure of "electronically stored information, and tangible things" potentially supportive of the disclosing party's defense, such disclosure obligations have not yet attached to Defendants (or Plaintiff) in this case.

Finally, district courts have the inherent authority to find a party in contempt for

---

[2] The court notes that the published articles attached as exhibits to Plaintiff's papers suggest that Zuckerberg did not make the acquaintance of the plaintiffs in the ConnectU case until November 2003. Accordingly, if there was any truth to the ConnectU plaintiffs' allegations that Zuckerberg stole their idea for Facebook, such fact is inconsistent with Plaintiff's assertion in this case that Zuckerberg shared his idea for Facebook with Plaintiff on April 28, 2003, when the putative contract was executed.

bad faith conduct in violating an order of the court.  *Southern New England Telephone Co.*, 624 F.3d at 144.  The court also has inherent power "to impose contempt sanctions upon attorneys while those attorneys are engaged in matters intended to further the interests of their client," upon a finding of bad faith on the part of the attorney.  *In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d Cir. 2003).  Nevertheless, Plaintiff fails to point to, and the court's review of this action does not disclose, any bad faith conduct by Defendants' attorneys, a violation of any court order, or any other circumstances supporting sanctioning Defendants pursuant to this court's inherent powers.

In sum, based on this court's review of the record, Plaintiff has failed to demonstrate Defendants are guilty of any wrongdoing warranting sanctions with regard to the five computers.  Accordingly, Plaintiff's motion for sanctions (Doc. No. 231), is DENIED.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      January 10, 2012
            Buffalo, New York