UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                                    x
PAUL D. CEGLIA,                                     :
                                                    :
            Plaintiff,                              :
                                                    :
                                                    :
      v.                                            :   Civil Action No. 1:10-cv-00569-
                                                    :   RJA
                                                    :
MARK ELLIOT ZUCKERBERG and                          :
FACEBOOK, INC.,                                     :
                                                    :
            Defendants.                             :
                                                    x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
THEIR FEE APPLICATION**


Thomas H. Dupree, Jr.                  Orin Snyder
GIBSON, DUNN & CRUTCHER LLP            Alexander H. Southwell
1050 Connecticut Avenue, NW            GIBSON, DUNN & CRUTCHER LLP
Washington, DC 20036                   200 Park Avenue, 47th Floor
(202) 955-8500                         New York, NY 10166-0193
                                       (212) 351-4000


Terrance P. Flynn
HARRIS BEACH PLLC
726 Exchange Street
Suite 1000
Buffalo, NY 14210
(716) 200-5120


February 1, 2012

**REPLY MEMORANDUM OF LAW**

In submitting their fee application, Defendants' counsel substantially discounted their standard rates and sought reimbursement for an amount far less than what Defendants actually paid.  Plaintiff Paul Ceglia — whose obstructionist misconduct and defiance of court orders necessitated the fee award — nonetheless opposes even this heavily-discounted amount.  He offers several arguments in response.  None has merit.

1. Ceglia challenges Defendants' use of out-of-district counsel, describing his fraudulent lawsuit as nothing more than a "garden-variety" contract dispute.  This is absurd.

Ceglia's original complaint claimed 84 percent ownership of one of the most prominent companies in the world — a claim, in Ceglia's estimation, worth billions of dollars — based on a purported seven-year-old document.  Moreover, Ceglia himself has retained no fewer than <u>four</u> out-of-district law firms, including one of the largest and most expensive in the world, DLA Piper — a firm that has 4,200 lawyers located in 76 offices worldwide and whose billing rates <u>exceed</u> those requested here.  To serve as local counsel to the three San Diego-based DLA Piper partners and two New York City-based DLA Piper attorneys who appeared on his behalf, Ceglia retained the former Attorney General of New York State, Dennis Vacco.

When DLA Piper and Mr. Vacco's firm abruptly withdrew two days before the scheduled hearing on Defendants' Motion for Expedited Discovery, Ceglia publicly announced "discussions with several nationally recognized law firms to lead the litigation efforts in the much-publicized Facebook ownership case involving Mark Zuckerberg."  Ceglia's long-time attorney, Paul Argentieri, explained that "[t]he directive from our client was clear: find a firm with the resources, experience, and legal horsepower to handle a case of this magnitude."  *See* Ceglia v. Zuckerberg, available at http://www.cegliavmz.com/press.html (last visited February 1, 2012).  Those public pronouncements echoed the strategy that Ceglia had set out in his "Lawsuit

1

Overview" pitch materials: to interview "multiple top tier law firms"; to hire a "larger firm," given the "size, complexity and commitment required"; and to engage in "immediate settlement negotiations." Ex. A to Supplemental Southwell Declaration at 3. Ceglia used the "Lawsuit Overview" document to shop his fraudulent lawsuit to several out-of-district firms, including the New York City-based firm Kasowitz Benson Torres & Friedman LLP, whose partner hourly rates <u>exceed</u> those requested here.[1]

The firm that Ceglia hired after DLA Piper's withdrawal, Lake, A.P.C, is based in Southern California. Mr. Lake left the case soon after Ceglia instructed him to defy this Court's expedited discovery orders; he was then replaced by yet another out-of-district lawyer, Dean Boland. Given his own retention of numerous out-of-district firms and statements regarding the "magnitude" of this lawsuit, Ceglia has no basis to challenge Defendants' retention of out-of-district counsel or the applicability of out-of-district market rates. His recitation of cases following the forum rule is unavailing, particularly given Defendants' ample showing of special expertise and extraordinary circumstances. *See* Doc. No. 285 at 19-20.

Furthermore, as Defendants explained in their Fee Application, *see id.* at 14-15, application of out-of-district market rates is warranted as both an appropriate means of compensation and a sanction for Ceglia's egregious discovery misconduct. Indeed, both the Second Circuit and this Court have recently held that an award of attorneys' fees under Rule 37 constitutes a deterrent sanction for discovery misconduct. *See Robbins & Myers, Inc. v. J.M. Huber Corp.*, 2011 U.S. Dist. LEXIS 45386, at *10 (citing *On Time Aviation, Inc. v. Bombardier*

---

[1] *See* Jan. 20, 2012 Southwell Decl. Ex. C (Doc. No. 286-3) at 8 (describing award of attorneys' fees based on hourly rates of $825-1,000 for certain partners in *Lehman Brothers Holdings Inc.*, No. 08-1355-jmp (Bankr. S.D.N.Y.)). The Kasowitz Benson firm did not appear in this case for Ceglia. Yet another out-of-district law firm, Edelson McGuire, LLC based in Chicago, represented Ceglia briefly during the early expedited discovery phase but also did not appear.

*Capital, Inc.*, 354 Fed.Appx. 448, 452 (2d Cir. 2009); *Southern New England Telephone Company v. Global NAPS Inc.*, 624 F.3d 123, 149 (2d Cir. 2010)).  Ceglia attempts to side-step the regular application of out-of district rates in sanctions cases by claiming that the punitive effect of the Court's order has been satisfied by his payment of the $5,000 fine in connection with this matter.  *See* Doc No. 288 at 8.  But this Court ordered a fine <u>and</u> attorney's fees as a discovery sanction.  Both vindicate the Court's interest in sanctioning Ceglia's brazen discovery misconduct and reimbursing Defendants' actual costs in litigating the discovery dispute.  Thus, application of out-of-district market rates is warranted in this case.

    2.    Ceglia asserts that Defendants provided "no evidentiary support" that their rates — either their standard hourly rates or the substantially discounted rates at which they actually seek reimbursement — are reasonable.  *Id.* at 2.  This is false.  Both recent judicial decisions and empirical data, attached as Exhibits C and D to the Southwell Declaration, confirm that Gibson Dunn's claimed rates are reasonable relative to other peer global law firms with attorneys located in New York City.  *See* Doc. No. 285 at 16-17.  For instance, a 2011 *National Law Journal* self-reported survey found that partner billing rates at DLA Piper, Ceglia's own former out-of-district counsel, <u>exceeded</u> the rates claimed here.[2]

    Ceglia also asserts that Defendants' claimed rates are "nearly three times the highest rate that this Court has awarded to out-of-district attorneys."  Doc. No. 288 at 2.  This is also false.  In fact, this Court recently determined that an hourly rate of $530 was reasonable for a partner at a mid-sized national firm located in New Jersey.  *See Robbins & Myers, Inc. v. J.M. Huber*

---

[2]    And, of course, Defendants have actually paid substantially more than the claimed rates.  In an effort to avoid any dispute as to the reasonableness of this fee request, Defendants made an across-the-board 25 percent cut to their standard hourly rates.  Thus, Defendants' claimed rates are significantly lower than Gibson Dunn's standard rates, which are themselves reasonable relative to other leading law firms, and significantly less than what Defendants actually paid.

3

*Corp.*, 2010 U.S. Dist. LEXIS 108562, at *25. That award further supports the reasonableness of Defendants' claimed rates for attorneys located in the New York City and the District of Columbia offices of a global law firm.[3]

3.      Ceglia mischaracterizes the manner in which Defendants' time records were created and the law governing the presentation of those records to the Court. As described in the Southwell Declaration (Doc. No. 286), the billing narratives attached as Exhibit B reflect the time spent on particular tasks related to legal services for which Defendants seek reimbursement. *See* Doc. No. 286, ¶16. Those narratives are based on contemporaneous time entries for each Gibson Dunn attorney in the firm's time management system, which were entered in accordance with firm policy. The time spent on the particular tasks reflect a conservative claim of time worked based on the contemporaneous records and Mr. Southwell's personal involvement with all of the tasks. Ceglia's claim that Defendants' billing narratives were only "'based . . . upon Mr. Southwell's personal experience with the case'" is false and made in bad faith. Doc. No. 288 at 11. In fact, the ellipses employed by Ceglia and quoted above obscure what Mr. Southwell <u>actually said</u>: that the narratives are "based <u>on the time entries themselves</u> and upon my personal experience with the case." Doc. No. 286, ¶16 (emphasis added).

Having misrepresented the nature of Defendants' submission, Ceglia proceeds to misstate the law. Although attorneys must maintain contemporaneous billing records, they are not

---

[3] Neither of the cases cited by Ceglia supports his contention that Defendants' claimed rates are "nearly three times the highest rate that this Court has awarded to out-of-district attorneys." Doc. No. 288 at 2. To begin, *Ghadersohi v. Health Research, Inc.* did not even involve an out-of-district attorney; rather, this Court awarded a <u>Buffalo</u> law firm partner his requested rate based on what it considered appropriate "in this community." 2011 U.S. Dist. LEXIS 107285, at *14 (W.D.N.Y.). And in *Disabled Patriots of America, Inc. v. Niagara Group Hotels, LLC*, the Court applied the forum rule and proceeded to consider the reasonableness of in-district rates. *See* 688 F. Supp. 2d 216, 223-24 (W.D.N.Y. 2010). Elsewhere in his opposition, Ceglia suggests that there are numerous firms in the Western District of New York that "routinely handle large contract dispute cases." Doc. No. 288 at 7-8. But nowhere does Ceglia submit any evidence that those firms' actual in-district rates are lower than Defendants' claimed rates.

4

required to <u>attach</u> those records to a fee application.[4]  Rather, a fee applicant may provide detailed summaries of contemporaneous records accompanied by an affidavit stating that the summaries are accurate.  *See Gavenda v. Orleans*, No: 95-0251E, 1999 U.S. Dist. LEXIS 22703, at *1-*2 (W.D.N.Y. July 27, 1999) (noting that "this circuit has allowed attorneys to submit summaries of contemporaneous records accompanied by affidavits stating that the summaries are accurate and based on contemporaneous records"); *Carrero v. New York City Housing Authority*, 685 F. Supp. 904, 908-09 (S.D.N.Y. 1988), *aff'd* 890 F.2d 569 (2d Cir. 1989) ("Where the attorneys have provided the court with affidavits that have been reconstructed from contemporaneous records and that set forth all charges with specificity, fees have not been denied."); *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994) (holding that billing records based on contemporaneous records accords with Second Circuit precedent).  Fee applications routinely attach narrative summaries based on contemporaneous time entries in order to present the information in a convenient fashion and avoid burdening the court with the underlying entries, which are often bulky and require heavy redaction due to privilege.

Here, Defendants submitted detailed billing narratives based on contemporaneous records.  Those narratives were attached to a sworn declaration in which Mr. Southwell described the process by which the narratives were prepared.  This submission, in a presentation meant to ease the Court's review, conforms to clear Second Circuit precedent.[5]

---

[4]  The two primary cases on which Ceglia relies, *N.Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136 (2d Cir. 1983) and *Scott v. City of New York*, 643 F.3d 56 (2d Cir. 2011), involve fee applicants who maintained no contemporaneous billing records whatsoever, which is not the case here.

[5]  Ceglia also claims that Defendants' purported "block-billing … merits reduction of legal fees."  Doc. No. 288 at 10.  Block-billing is not prohibited in the Second Circuit.  *See Molefi v. Oppenheimer Trust*, No. 03-5631, 2007 WL 538547, at *7 (E.D.N.Y. 2007).  The practice is disfavored to the extent it prevents courts from assessing

[Footnote continued on next page]

4.     Ceglia does not attempt to refute Defendants' requested hours expended in connection with their attempts to compel Ceglia's compliance with this Court's orders. Rather, he tries to trivialize the amount of work for which Defendants seek reimbursement, describing it as "a grand total of 22 pages, rounded up." Doc. No. 288 at 12. This flippant response does not change the fact that Ceglia's months-long campaign of obstruction — intended to deny Defendants additional evidence of his fraud — necessitated the expenditure of considerable attorney time for multiple briefs, correspondence with counsel, legal research, and handling the consent forms. In support of their Fee Application, Defendants provided a detailed sworn description of the legal services they provided under tight timetables. *See* Doc. No. 286, ¶¶5-15. They also excluded from their application multiple categories of legal services and costs that might otherwise have been included. *See id.*, ¶¶19-20. Defendants' requested hours are reasonable.[6]

5.     Ceglia does not object to Defendants' request that the fee award be payable within fourteen days of this Court's Order. *See* Doc. No. 285 at 20. Accordingly, this Court should impose a fourteen-day deadline.

Although Ceglia agrees to a fourteen-day deadline, he objects to the inclusion of an additional provision prohibiting him from filing any additional non-responsive papers or otherwise prosecuting this action until he satisfies the fee award in full. Again, Ceglia resorts to

---

[Footnote continued from previous page]
the reasonableness of the hours billed. But here, the narrative descriptions are clear and Ceglia does not identify a single task or billing narrative as purportedly unreasonable, vague, inconsistent, redundant, or deficient in any respect. Moreover, as even the case law that Ceglia invokes makes clear, it is reasonable to collect multiple tasks related to a single general task that are performed on one day. *See Wise v. Kelly*, 620 F. Supp. 2d 435, 451 (E.D.N.Y. 2008).

[6]    Ceglia does not object to Defendants' application for the time spent preparing the instant Fee Application.

the fact that his payment of the $5,000 fine has supposedly discharged any relevant sanction in this matter.  But as the Second Circuit and this Court have held, an award of attorneys' fees under Rule 37 constitutes a deterrent sanction for discovery misconduct.  And in *Corley v. Rosewood Care Ctr., Inc.*, the Seventh Circuit affirmed the district court's requirement that plaintiff immediately satisfy a mere $200 sanction before he could enjoy "the privilege of continuing to litigate." 142 F.3d 1041, 1057 (7th Cir. 1998).  Given Ceglia's egregious discovery misconduct and recent blizzard of meritless and premature motions, this Court should require no less.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their Fee Application in full.

Dated:      New York, New York
            February 1, 2012

                                                Respectfully submitted,

                                                /s/ Orin Snyder
Thomas H. Dupree, Jr.                           Orin Snyder
GIBSON, DUNN & CRUTCHER LLP                     Alexander H. Southwell
1050 Connecticut Avenue, NW                     Matthew J. Benjamin
Washington, DC 20036                            Amanda M. Aycock
(202) 955-8500                                  GIBSON, DUNN & CRUTCHER LLP
                                                200 Park Avenue, 47th Floor
                                                New York, NY 10166-0193
Terrance P. Flynn                               (212) 351-4000
HARRIS BEACH PLLC
726 Exchange Street
Suite 1000
Buffalo, NY 14210
(716) 200-5120

*Attorneys for Defendants Mark Zuckerberg and Facebook, Inc.*