UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PAUL D. CEGLIA,

                      Plaintiff,

      v.

MARK ELLIOT ZUCKERBERG and
FACEBOOK, INC.,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No. 1:10-cv-00569-RJA


**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR FIFTH MOTION
TO COMPEL AND FOR OTHER RELIEF**


Thomas H. Dupree, Jr.
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
(202) 955-8500

Terrance P. Flynn
HARRIS BEACH PLLC
726 Exchange Street
Suite 1000
Buffalo, NY 14210
(716) 200-5120

Orin Snyder
Alexander H. Southwell
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193
(212) 351-4000


February 21, 2012

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF LAW ................................................................................. 1

ARGUMENT ................................................................................................... 4

    I.       The Court Should Order Ceglia To Submit A Corrected Declaration
            Identifying All Webmail Accounts He Has Used Since 2003, And Should
            Authorize The Issuance of Subpoenas And Orders To Facilitate The
            Acquisition Of Electronic Materials In Such Accounts ......................................... 4

    II.      The Court Should Review *In Camera* The Material As To Which Ceglia
            Has Asserted Attorney-Client Privilege ................................................................. 8

    III.    Ceglia Must Submit An Amended Declaration Identifying Jason
            Holmberg And All Other Custodians Of "Lawsuit Overview," And
            Produce All Copies Of The "Lawsuit Overview" In Their Possession. ............... 10

CONCLUSION ................................................................................................ 16

**MEMORANDUM OF LAW**

Paul Ceglia's non-compliance with this Court's discovery orders has necessitated four prior motions to compel, *see* Doc. Nos. 95, 129, 155, 245, each of which this Court has granted, *see* Doc. Nos. 107, 117, 152, 208, 272.  It has also necessitated this Court's grant of sanctions — the Court recently ordered Ceglia to pay both a $5,000 fine for "obstruction" and Defendants' attorney's fees totaling $76,776.70 and counting.  *See* Doc. Nos. 283, 292.  Since the Court granted Defendants' Fourth Motion to Compel, Defendants have discovered additional egregious failures by Ceglia to comply with explicit Court directives.

First, Ceglia remains in violation of this Court's August 18 and November 3, 2011 Orders directing him to identify all the web-based email accounts he has used since 2003.  As discussed below, a recent production of electronic material by Stroz Friedberg establishes that Ceglia has been concealing from the Court and Defendants at least four such webmail accounts, one of which — an account named getzuck@gmail.com — he appears to have created for use in connection with this lawsuit.  These cannot possibly be inadvertent oversights.  Ceglia has since signed consent forms authorizing Stroz Friedberg to acquire and inspect the contents of those four accounts, but Defendants still need this Court to authorize the issuance of subpoenas on the webmail providers and to order production, to facilitate such acquisitions.  Caught red-handed, Ceglia does not object to those requests, nor could he.  Finally, Ceglia must submit a corrected declaration that identifies all webmail accounts he has used since 2003, including but not limited to the four accounts discussed below, and explains his failure to disclose any accounts in his previous declarations.

Second, when Stroz Friedberg made the recent production disclosing the concealed webmail accounts, it withheld fifty-one (51) documents that Ceglia claimed to be protected by

1

the attorney-client privilege.  But based on the privilege log's descriptions, at least eleven of

Ceglia's assertions of attorney-client privilege are abusive and unfounded.  This Court should

therefore order Ceglia to produce those eleven documents for *in camera* inspection and to satisfy

his burden of justifying his privilege claims with competent evidence.

Third, Ceglia remains in violation of this Court's August 18 Order directing him to

identify all of his agents who possess electronic copies of the purported Work for Hire agreement

and to produce those copies.  *See* Doc. No. 117, ¶¶ 1–2.  As the Court is aware, the "Lawsuit

Overview" document — Ceglia's "pitch" document to help him shop his fraudulent lawsuit and

engage in immediate "settlement negotiations" with Defendants — contains a copy of that

agreement and is responsive to the Court's orders.  Doc. No. 290-1.  As explained below,

Defendants have recently learned that Ceglia and his lawyers have been concealing the role of a

wood pellet salesman in Pennsylvania named Jason Holmberg.  Holmberg is an agent of Ceglia's

who has been in possession of an electronic copy of the "Lawsuit Overview" document for

months, yet Ceglia concealed Holmberg's existence and failed to produce the responsive

documents in Holmberg's possession.  Holmberg is important because he claims *to have*

*prepared* the "Lawsuit Overview" document.

Disturbingly, this claim of authorship conflicts directly with the representation that

Ceglia's lawyer Dean Boland made to this Court during the November 2 hearing, when he told

the Court (after conferring with co-counsel Paul Argentieri) that Argentieri wrote the "Lawsuit

Overview" document, in an unsuccessful attempt to suppress this document based on a spurious

claim of attorney-client privilege.  And recently, the identity of the document's author appears to

have changed yet again: Boland suggested to Defendants that the true author of the "Lawsuit

Overview" document is neither Argentieri nor Holmberg, but a third individual whom Ceglia has

2

not yet identified.  This Court should therefore order Ceglia and his agents to produce all copies of the "Lawsuit Overview" document, including the original document from its author and original custodian, and explain under oath who authored this document.

The Court's expedited discovery orders — the first of which it issued nearly <u>eight months ago</u> — were based on Defendants' overwhelming initial showing that Ceglia is perpetrating a massive litigation fraud.  Defendants have since uncovered substantial evidence confirming that fraud.  Ceglia's ongoing non-compliance, however, is intended to deny Defendants additional corroborating evidence; his earlier concealment and spoliation of electronic storage devices, obstruction of Defendants' inspection of his webmail accounts, and obstruction of Defendants' ink sampling was similarly motivated to deny Defendants access to critical evidence of Ceglia's fraud.  Full compliance is essential to effectuate the explicit purpose of the expedited discovery orders: to uncover all of the evidence of Ceglia's fraud on this Court.

Although Defendants regret the need to return to the Court to seek a fifth order compelling Ceglia's compliance, Ceglia has left them no choice.  Rather than accept the Court's orders and fully comply with them, Ceglia's practice of partial compliance and hide-the-ball continues, forcing Defendants to discover important facts literally months after they were due to be disclosed under the Court's prior orders.  Indeed, many of the examples of Ceglia's non-compliance involve his obstruction of time-sensitive inspections, such as Defendants' live webmail acquisition and ink sampling.

Accordingly, Defendants respectfully request an Order (1) authorizing Defendants to issue subpoenas to the webmail providers listed in Ceglia's signed consent forms and (2) requiring Google, Inc., and any other webmail providers that need a court order, to produce the

contents of the accounts as authorized by the consent forms.  Ceglia <u>consents</u> to the entry of such

an order.

In addition, Defendants respectfully request that the Court enter an order compelling

Ceglia to:

- Comply with this Court's Orders by identifying in a corrected declaration <u>all</u> webmail accounts he has used since 2003 and explaining his failure to disclose any accounts in his previous declarations;

- Produce the eleven documents for *in camera* inspection and justify his privilege claims over them;

- Comply with this Court's Orders by identifying in a corrected declaration <u>all</u> custodians for the "Lawsuit Overview" document, including the original author of that document, and explaining his failure to disclose any custodians in his previous declarations; and

- Produce <u>all</u> electronic copies of the "Lawsuit Overview" document, including the original document from its author.

**ARGUMENT**

**I.    The Court Should Order Ceglia To Submit A Corrected Declaration Identifying All Webmail Accounts He Has Used Since 2003, And Should Authorize The Issuance Of Subpoenas And Orders To Facilitate The Acquisition Of Electronic Materials In Such Accounts.**

This Court's August 18 Order granted Defendants' motion to compel full compliance

with the Court's initial expedited discovery order.  *See* Doc. No. 117.  It directed Ceglia to

"identify <u>all</u> email accounts accessible through web-based interfaces that Plaintiff has used since

2003" and to "consent to the acquisition and inspection by Stroz Friedberg of the contents of all

such accounts."  *Id.* ¶ 5 (emphasis added).  Ceglia provided a sworn declaration on August 29,

2011, purporting to comply with the August 18 order.  In that declaration, Ceglia identified only

two specific web-based email accounts — <u>paulceglia@gmail.com</u> and <u>paulceglia@msn.com</u> —

as well as accounts at Adelphia and T-Mobile without specific addresses.  *See* Doc. No. 176-1.

The Court's August 18 Order also required Ceglia to provide consent forms authorizing Stroz Friedberg to acquire and inspect the contents of his web-based email accounts.  *See* Doc. No. 117, ¶ 5.  Ceglia failed to do so, thus violating the Court's order and necessitating another motion to compel by Defendants; the Court granted that motion on September 28, 2011.[1]  In its November 3 Order, the Court again ordered Ceglia to consent to Stroz Friedberg's inspection of "all email accounts accessible through web-based interfaces that [he] has used since 2003."  Doc. No. 208, ¶ 10 (emphasis added).  Ceglia ultimately provided executed consent forms for three webmail accounts: paulceglia@gmail.com, pauceglia@msn.com, and pceglia@tmail.com.[2]

After Ceglia provided the consent forms, and this Court authorized the issuance of subpoenas to the webmail providers and ordered Google to produce the contents of the Gmail account as authorized by the consent (*see* Doc. No. 273), Stroz Friedberg acquired and inspected the contents of those webmail accounts to identify material relevant to this lawsuit.  On February 1, 2012, Stroz Friedberg produced to Ceglia's attorneys electronic material from Ceglia's webmail accounts that it had identified as relevant.  That production was made in accordance with the Electronic Asset Inspection Protocol (Doc. No. 85), which allows Ceglia's attorneys to conduct a privilege review before electronic materials are produced to Defendants.  Ceglia's attorneys provided a privilege log to Stroz Friedberg designating fifty-one (51) documents as privileged.  *See* Southwell Decl., ¶ 8.  On February 9, 2012, Stroz Friedberg produced to

---

[1]    The Court subsequently granted Defendants' request for sanctions related to this particular discovery violation.  *See* Doc. Nos. 283, 292.

[2]    Carmine Ceglia, plaintiff's father, provided an executed consent for a fourth account, ceglia@adelphia.net, for which he is the registrant.

Defendants the relevant electronic material that Ceglia had not designated as privileged; it did not produce the documents over which Ceglia claimed privilege.

The February 9 production contains evidence that Ceglia has willfully violated the Court's August 18 and November 3 Orders by concealing, for the last six months, the existence of at least four webmail accounts that he used since 2003:

- **landlubber39@yahoo.com**
- **paulc@hush.com**
- **alleganypellets@gmail.com**
- **getzuck@gmail.com**

Ceglia appears to have created at least one of those accounts, getzuck@gmail.com, to use specifically in connection with this lawsuit.

Ceglia's ongoing obstruction — in the face of repeated motions to compel — has prejudiced Defendants by denying them access to time-sensitive electronic material that this Court ordered Ceglia to disclose more than six months ago.  Ceglia's attorney Dean Boland appears to have recognized as much.  After learning that his client had failed to identify webmail accounts in yet another violation of this Court's Orders, he sent an email to Defendants' attorneys offering to provide signed consent forms for two of the four undisclosed accounts: landlubber39@yahoo.com and paulc@hush.com.  *See* Southwell Decl., Ex. B.  He did not, however, mention or offer Ceglia's consent to the inspection of the alleganypellets@gmail.com or getzuck@gmail.com accounts.

Defendants thus sent a letter to Boland on February 16, 2012, demanding that Ceglia provide executed consent forms for all of the webmail accounts he has used since 2003, including but not limited to the four accounts mentioned above.  *See* Southwell Decl., Ex. C. Defendants also sought Ceglia's consent to a Court order and/or authorization to issue additional

subpoenas to the webmail providers for the four concealed webmail accounts, in order to help ensure that Stroz Friedberg could timely acquire their contents.  *See id.*

On February 17, 2012, Boland provided signed consent forms for the four webmail accounts listed above.  *See* Southwell Decl., ¶ 13.  In a separate February 17 email, he stated that Ceglia "consent[s] to a subpoena/court order enabling Defendants to have their electronic discovery firm acquire data related to the" four concealed webmail accounts.  Southwell Decl., Ex. D.

In light of Boland's February 17 emails, Defendants respectfully request an Order from this Court (1) authorizing Defendants to issue subpoenas to the webmail providers of the four concealed accounts and (2) requiring Google, Inc., and any other webmail providers that need a court order, to produce the contents of the two concealed Gmail accounts as authorized by the consent forms.  Ceglia <u>consents</u> to these two forms of relief.

Finally, in order to comply with this Court's August 18 and November 3 Orders, Ceglia must provide a corrected declaration regarding his webmail accounts.  In response to the Court's prior orders to identify all webmail accounts that he had used since 2003, and under penalty of perjury, Ceglia initially identified only four accounts.  *See* Doc. No. 176-1.  Because of discovery Defendants have obtained pursuant to this Court's expedited discovery orders, Ceglia's sworn declaration has now been revealed to be false.  Thus, the Court should order Ceglia to finally do what it ordered him to do more than six months ago: to accurately identify in one declaration <u>all</u> webmail accounts that he has used since 2003 and to explain his failure to previously disclose any accounts in his previous declarations.

II.     **The Court Should Review *In Camera* The Material As To Which Ceglia Has Asserted Attorney-Client Privilege.**

Ceglia's history of improperly designating documents as privileged is well established. *See* Doc. Nos. 208, ¶¶ 14–15 (Order overruling privilege designations), 107.  Ceglia's most recent privilege log suggests that his pattern of improper designations continues.  In the log, Ceglia claims privilege over communications with non-lawyers or with lawyers with whom he had no known contemporaneous attorney-client relationship, or that do not obviously involve the provision of legal advice.  *See* Southwell Decl., Ex. A.

Defendants challenged Ceglia's privilege claims over both categories of documents in their February 16 letter to Boland and demanded that Ceglia either withdraw his designations or provide an evidentiary showing justifying them.  *See* Southwell Decl., Ex. C.  Boland did not provide a substantive response to this challenge by February 20th, the date by which Defendants asked for a response.  In light of Ceglia's failure to justify those privilege claims in response to Defendants' letter, the Court should order Ceglia to produce the documents identified below for *in camera* inspection and to file with the Court evidentiary support justifying his privilege claims.

First, Ceglia asserts privilege over communications with Jessica Ceglia and Jason Holmberg — third-party non-attorneys.  *See* Southwell Decl., Ex. A, Item Nos. 337, 360, 379.  Such communications cannot be protected by the attorney-client privilege; as this Court has already correctly held, the privilege applies only to "*confidential* communications *with an attorney for the purpose of seeking legal advice* or services."  Doc. No. 107, at 2 (citing *United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997)) (emphasis added).  Indeed, the Court has already rejected Ceglia's assertion of privilege over documents sent by Ms. Ceglia. *See* Doc. No. 208, ¶ 15.  Therefore, Ceglia's designation of Item No. 337 (an attachment in a

8

February 24, 2011 email from Ms. Ceglia to the plaintiff) as attorney work product is improper;
the disclosure of that document to a third-party who was not an agent of the attorney waived any
privilege that may have previously attached.  *See, e.g.*, *U.S. Postal Serv. v. Phelps Dodge
Refining Corp.*, 852 F. Supp. 156, 162 (E.D.N.Y. 1994) ("[T]he fact that the document is sent to
a third party ordinarily removes the cloak of confidentiality necessary for protection under the
attorney-client privilege.").

Ceglia's assertion of privilege over emails sent to Holmberg is also improper.  Southwell
Decl., Ex. A, Item Nos. 360, 379.  Holmberg is apparently the President and Owner of PA Pellets
(LLC), a manufacturer of wood fuel pellets in Pennsylvania.  He is not a lawyer.  Furthermore, in
an unrelated production, Argentieri himself provided to Defendants a different email sent from
Holmberg to Ceglia.  *See* Southwell Decl., ¶ 20; *see also infra* at 12.  Thus, even if such
privilege claims for communications with Holmberg were proper — and they are not — Ceglia
has waived the privilege.  Ceglia's assertions of privilege over Item Nos. 360 (March 17, 2011
email from plaintiff to Holmberg) and 379 (email from Argentieri to plaintiff containing emails
with, *inter alia*, Holmberg) should be rejected.

Second, Ceglia asserts privilege over eight communications with attorneys in
circumstances that cannot reasonably give rise to a privileged communication.  *See* Southwell
Decl., Ex. A, Item Nos. 334, 348, 373, 400, 401, 402, 403, and 405.  For example, Ceglia
claimed privilege over an email sent by Jim Kole on February 15, 2007, when Kole was an
Assistant Attorney General at the Illinois Attorney General's Office, Consumer Fraud Bureau
(and thus not a private lawyer advising Ceglia).  *See id.*, Item No. 348.  Ceglia also claimed
privilege over an email sent to Argentieri that concerns "a hushmail account" — a subject that

does not appear to involve the provision of legal advice.[3] *See id.*, Item No. 334.  Finally, Ceglia

claimed privilege over six emails sent to David Grable, an attorney at Quinn Emanuel who is not

known to have provided legal services to Ceglia in connection with this matter.  *See id.*, Item No.

373, 400, 401, 402, 403, and 405.  Rather, Grable appears to be a personal relation of Jim Grable,

Ceglia's former attorney at Connors & Vilardo, who sent three of the six emails, including the

earliest one.

As "the party asserting" the privilege, Ceglia bears the "burden of establishing [its]

existence."  *Teamsters*, 119 F.3d at 214; *see also Priest v. Hennessy*, 409 N.E.2d 983, 986 (N.Y.

1980) ("[T]he burden of proving each element of the privilege rests upon the party asserting it.").

"The burden cannot be met by 'mere conclusory or ipse dixit assertions' in unsworn papers

authored by attorneys."  *Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*, 252 F.R.D. 163, 168

(S.D.N.Y. 2008) (quoting *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 147 (2d Cir.

1987)) (other internal quotation marks omitted).  This Court should hold Ceglia to his burden of

providing competent evidence to justify his privilege claims over those documents.

**III.   Ceglia Must Submit An Amended Declaration Identifying Jason Holmberg And All Other Custodians Of "Lawsuit Overview," And Produce All Copies Of The "Lawsuit Overview" In Their Possession.**

The Court's August 18 Order required Ceglia to submit a supplemental declaration in

which he would

> identify, by name and location, each of the following files . . . : (A) the electronic
> copies or images of the purported contract attached to any complaint in this
> action; [and] (B) all electronic versions or purported versions of any contract by
> and among Defendant Zuckerberg, Plaintiff, and/or other persons associated with

---

3    Hushmail is a "secure web-based free email service" that "looks and feels just like any other web-mail site,
but adds strong encryption to your emails to protect your secrets from prying eyes."  *Hushmail.com: About*,
available at http://www.hushmail.com/about/ (last visited February 21, 2012).

> StreetFax ('Contract'), including the electronic copies or images of any Contract in the possession, custody, or control of Plaintiff's attorneys, experts, or other agents . . . .

Doc. No. 117, ¶ 2. Ceglia submitted a supplemental declaration pursuant to this Order. *See* Doc. No. 176-1. In it, he identified a document entitled "Lawsuit Overview.pdf" as responsive to category 2(A). *See* Doc. No. 176-1, ¶ 12. The "Lawsuit Overview" document was prepared as a "pitch" document to drum up interest within the bar and find a lawyer who might be willing to represent Ceglia. The document includes a copy of the purported Work for Hire agreement, states that other lawsuits against Facebook and Zuckerberg allegedly settled for large sums of money, and identifies as its central objective to retain a law firm that will immediately enter into "settlement negotiations." *See* Doc. No. 290-1.

Ceglia attempted to shield the "Lawsuit Overview" document from discovery. He argued that it was protected by the attorney-client privilege and should not be produced in full to Defendants. *See* Doc. No. 176-3, ¶ 12(a)(ii). Defendants challenged Ceglia's designation of "Lawsuit Overview.pdf" as privileged. *See* Doc. No. 155. In response, the Court ordered Ceglia to produce the document for *in camera* inspection, *see* Doc. No. 167, and further directed him to cite caselaw supporting his designation. The issue was fully briefed. *See* Doc. Nos. 177, 181.

The Court heard argument on the privilege question during the November 2 hearing on Defendants' Third Motion to Compel. During that hearing, in an effort to justify Ceglia's privilege designation, Ceglia's attorney Boland represented to the Court that his co-counsel Argentieri wrote the "Lawsuit Overview" document:

> I can just represent to you as an add[-]on that Mr. Argentier[i] is here today and he would be prepared to [swear], as an officer of the court, that <u>he authored that document</u> and analyzed Mr. Ceglia's case and that analysis is reflected in the document. I'll offer that. If that is insufficient, then we will respect the Court's order.

Southwell Decl., Ex. F (Hr'g Tr. 9:22–10:3 (Nov. 2, 2011)) (emphasis added).  The Court

rejected Ceglia's privilege claim and ordered Ceglia to produce "Lawsuit Overview.pdf" within

five days.  *See id.* at 9:18–21; *id.* at 10:4–11:15.  The Court memorialized its oral ruling in its

November 3 written Order, which authorized Stroz Friedberg to acquire from each of Ceglia's

attorneys, experts, and agents all electronic files previously produced or to be produced pursuant

to the Court's expedited discovery orders, including "Lawsuit Overview.pdf," in native-file

format with metadata intact.  *See* Doc. No. 208, ¶¶ 11, 14.

      Defendants demanded production of the "Lawsuit Overview.pdf" document in a

November 25, 2011 letter to Argentieri, noting that in light of Argentieri's "representation to the

Court that you personally wrote the document, we find it implausible that it no longer remains in

your possession."  Southwell Decl., Ex. G at 1.  The next day, Argentieri offered to have his

information technology contact Ed Flaitz provide a copy of "Lawsuit Overview.pdf" to Stroz.

*See* Southwell Decl., Ex. I at 1–2.  Defendants accepted this offer as an accommodation.  *See id.*

at 2.

      After a number of delays due to Argentieri's not staffing his office, Argentieri finally

produced his native-file copy of "Lawsuit Overview.pdf" on December 16, 2011.  But the native

file produced was not a document written by Argentieri.  Instead, "Lawsuit Overview.pdf" was

an attachment to an email sent by one Jason Holmberg to Ceglia and Argentieri on Sunday,

March 6, 2011, at 11:03 PM.  *See* Southwell Decl., Ex. H.  In his email sending "Lawsuit

Overview.pdf" to Ceglia and Argentieri, Holmberg wrote: "Paul, Attached is the dossier I put

together to present the case to law firms.  Let me know if you'd like to change it at all."  *Id.*

Ceglia had never before revealed the existence of Holmberg and his attorneys did not disclose

Holmberg's role to the Court during the November 2nd argument.

Defendants sent a letter to Boland on January 26, 2012, describing the deficiencies in Ceglia's August 29 Declaration and the inconsistency between Holmberg's and Argentieri's claims of authorship. *See* Southwell Decl., Ex. I. Defendants asked Ceglia to provide immediately a corrected declaration and to produce all copies of the "Lawsuit Overview" document, including those in Holmberg's possession. *See id.* at 3.

Boland responded to Defendants' letter on February 2, 2012. Boland stated that he had "communicated with Holmberg and he has indicated he has one electronic copy of the Lawsuit Overview.pdf document that he [Holmberg] retained after receiving it via email." *See* Southwell Decl., Ex. J. According to Boland, Holmberg also "indicated he has one copy of a contract between my client and your client, the same contract we have provided you on numerous occasions." *Id.* Boland assured Defendants that "Holmberg will burn those two items to a CD with all meta-data intact and send that CD directly to Bryan Rose at Stroz [Friedberg]." *Id.* Stroz Friedberg received a CD from Holmberg on February 7, 2012. Boland, however, did not provide a supplemental declaration that corrected Ceglia's prior failure to identify Holmberg as a custodian of the purported Work for Hire contract.

Defendants wrote to Boland again. On February 8, 2102, they sent a letter pointing out that because Ceglia's August 29 Declaration did not identify Holmberg as a custodian of an electronic copy of the Work for Hire agreement, that declaration was false. *See* Southwell Decl., Ex. K. Ceglia thus remained in non-compliance with the Court's August 18 Order, which requires him "to identify, <u>by name and location</u>, each" electronic copy of the purported the Work for Hire agreement. *See id*.

In that same February 8 letter, Defendants also explained that Boland's February 2 email suggests the existence of yet another unidentified custodian of the purported Work for Hire

13

agreement.  Boland's email claims that Holmberg had one electronic copy of the "Lawsuit

Overview" document "<u>that he retained after receiving it via email</u>."  Southwell Decl., Ex. J.

Boland's description of how Holmberg obtained the document conflicts with Holmberg's email

transmitting it to Ceglia and Argentieri, which states, "Attached is the dossier <u>I [Holmberg] put</u>

<u>together</u> to present the case to law firms."  Southwell Decl., Ex. H (emphasis added).

Defendants pointed out that inconsistency and the resulting suggestion that a third unidentified

person actually wrote the document.  *See* Southwell Decl., Ex. K.  Defendants again requested

that Ceglia immediately comply with his obligations under the August 18 Order to identify in a

declaration all persons in possession of the "Lawsuit Overview" document — including

Holmberg and the original author of "Lawsuit Overview," if that was someone other than

Holmberg — and to produce "Lawsuit Overview" from its original author and all subsequent

custodians.  *See id.*

Boland responded on February 10, 2012, stating that Ceglia had "no personal knowledge

regarding what files Jason Holmberg has retained or is retaining regarding this matter," and thus

"could not produce a declaration 'from personal knowledge.'"  Southwell Decl., Ex. L.  In their

February 16 letter in response, Defendants reiterated their request for a supplemental declaration

that complies with the Court's August 18 Order.  *See* Southwell Decl., Ex. C, at 3–4.  Defendants

specifically described Ceglia's obligation to inform himself of facts sufficient to provide a

supplemental declaration compliant with the Court's orders.  *See id.*  Boland's February 16 email

response again asserted that Ceglia lacked personal knowledge of the files in Holmberg's

possession; he did not acknowledge, however, Defendants' contention that Ceglia must obtain

such knowledge to comply with the order.  *See* Southwell Decl., Ex. M.

As this discussion makes clear, Defendants have asked Ceglia three times to provide a corrected Declaration identifying Holmberg and all other custodians of the "Lawsuit Overview" document as required by the August 18 Order.  Ceglia has refused all three requests.  Thus, nothing short of an order compelling Ceglia to immediately produce a corrected declaration identifying all custodians of "Lawsuit Overview," and to produce all copies of the "Lawsuit Overview" document in their possession, will bring about his compliance with the August 18 Order.  Defendants respectfully request that the Court enter such an order and, in light of these circumstances, order that Ceglia also explain in his corrected declaration who authored the "Lawsuit Overview" document.

In addition, the revelation that Holmberg or another unidentified third party was the true author of the "Lawsuit Overview" document also establishes that Argentieri and Boland made misrepresentations to the Court when they stated that Argentieri was the author of the document. Their motive was clear:  they wanted to conceal the document and therefore made the false claim that it was authored by Argentieri in order to attempt to justify Ceglia's unfounded assertion of attorney-client privilege.  This could not have been a good-faith misunderstanding.  To the contrary, it appears to have been an intentional effort to mislead the Court.  *Compare* Southwell Decl., Ex. H (Holmberg:  "Attached is the dossier I put together to present the case to law firms."), *with* Southwell Decl., Ex. F (Boland:  "Mr. Argentier[i] is here today and he would be prepared to, as an officer of the court, that he authored that document").  Indeed, the fact that the document was prepared by a nonlawyer means that there never was a colorable basis to invoke the attorney-client privilege in the first place.

## CONCLUSION

This Court should enter an order authorizing Defendants to issue subpoenas to the

webmail providers of the four concealed accounts, and order Google, Inc., and any other

webmail providers that need a court order, to produce the contents of those accounts as

authorized by the consent forms.  Ceglia consents to such an order.

The Court also should order Ceglia to comply with the August 18 and November 3

Orders by identifying in a supplemental sworn declaration all webmail accounts he has used

since 2003 and explaining his failure to disclose any accounts in his previous declarations.

Additionally, the Court should inspect *in camera* the eleven cited documents over which

Ceglia claims privilege, and require him to bear his burden of justifying his privilege claims by

competent evidence.

The Court also should compel Ceglia to file an amended declaration (a) identifying

Holmberg as a custodian of the purported Work for Hire agreement in Holmberg's possession, as

required by the August 18 Order, (b) identifying in that amended declaration all other custodians

of the purported Work for Hire agreement, including the original author of "Lawsuit Overview,"

and (c) explaining his failure to disclose any custodians in his previous declarations.  And the

Court should compel Ceglia to produce all copies of the "Lawsuit Overview" document,

including the original document prepared by its true author.

Finally, this Court should award Defendants all other relief to which they may be entitled.

Dated:       New York, New York
              February 21, 2012

Respectfully submitted,

/s/ Orin Snyder

Thomas H. Dupree, Jr.               Orin Snyder
GIBSON, DUNN & CRUTCHER LLP  Alexander H. Southwell
1050 Connecticut Avenue, NW      Matthew J. Benjamin
Washington, DC 20036             Amanda M. Aycock
(202) 955-8500                  GIBSON, DUNN & CRUTCHER LLP
                              200 Park Avenue, 47th Floor
                              New York, NY 10166-0193
Terrance P. Flynn               (212) 351-4000
HARRIS BEACH PLLC
726 Exchange Street
Suite 1000
Buffalo, NY 14210
(716) 200-5120

*Attorneys for Defendants Mark Zuckerberg and Facebook, Inc.*