UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
PAUL D. CEGLIA,

        Plaintiff,

   v.

MARK ELLIOT ZUCKERBERG and
FACEBOOK, INC.,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No. 1:10-cv-00569-RJA

# DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR FIFTH MOTION TO COMPEL AND FOR OTHER RELIEF

Thomas H. Dupree, Jr.
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
(202) 955-8500

Orin Snyder
Alexander H. Southwell
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193
(212) 351-4000

Terrance P. Flynn
HARRIS BEACH PLLC
726 Exchange Street
Suite 1000
Buffalo, NY 14210
(716) 200-5120

March 19, 2012

**REPLY MEMORANDUM OF LAW**

Ceglia's opposition brief to Defendants' Fifth Motion to Compel confirms that Ceglia remains in violation of this Court's expedited discovery orders—and that he will not comply with those orders unless he is compelled to do so.  Defendants' motion should be granted, just as Defendants' four prior motions to compel have been granted.

**I.   Ceglia Must Provide A Corrected Declaration Identifying All Webmail Accounts He Has Used Since 2003.**

Ceglia's February 22 supplemental declaration, *see* Doc. No. 310-6, does not fulfill Ceglia's obligation under the August 18 Order to "identify <u>all</u> email accounts accessible through web-based interfaces that Plaintiff has used since 2003."  Doc. No. 117, ¶ 5 (emphasis added); *see* Doc. No. 295 at 4–7.  The Court's rationale for requiring Ceglia to list all webmail accounts in one declaration is to require him to identify in one place all evidence supporting his claims, so that he cannot later "discover" new, undisclosed evidence.  But Ceglia's February 22 declaration lists only the concealed webmail accounts.  He thus remains in violation of this Court's order to accurately identify—in one declaration—<u>all</u> webmail accounts that he has used since 2003.

In addition, Ceglia has committed new, freestanding violations: he has failed to "facilitate access" to the concealed webmail accounts, as the August 18 Order requires.  Doc. No. 117, ¶ 5.  First, Ceglia provided an incorrect consent form for the account **landlubber39@yahoo.com**.  *See* Ex. A to Decl. of M. Benjamin (Mar. 19, 2012).  Defendants told Ceglia on March 2 that Yahoo! had rejected his consent form, but Ceglia did not correct his error until March 7, after significant wrangling with Defendants' attorneys.  *See* Benjamin Decl., ¶¶ 4, 5, 8.

Second, this Court ordered Ceglia to email consents to Google, Inc. by February 28, 2012, in order to facilitate Stroz Friedberg's access to the two concealed Gmail accounts (**alleganypellets@gmail.com** and **getzuck@gmail.com**).  *See* Doc. No. 302 at 1–2.  On March

1

6, Defendants asked Ceglia to confirm that he had complied with that Order.  *See* Ex. C to Benjamin Decl.  Ceglia's attorney Dean Boland did not respond to their request, and Defendants again sought confirmation on March 7.  *See* Ex. D to Benjamin Decl.  Later that day, Boland emailed two contradictory responses.  He first claimed that "The Google authorization email was sent long ago.  You were made aware of that."  *Id.*  But fewer than three hours later, Boland emailed Defense counsel asking, "To what email address should [Ceglia's] google [sic] consent be emailed?", Ex. E to Benjamin Decl.  That second email establishes that Ceglia had not in fact complied with this Court's February 27 Order as Boland had represented.

Because of Ceglia's non-compliance, Defendants have been unable to assess whether the contents of those accounts undermine the accuracy of Ceglia's testimony that he "did not recall the existence of any of these email accounts" when he "complet[ed] any prior declarations," Doc. No. 310-6, ¶ 3, or to search those contents for more evidence of fraud in the first place.

In short, Ceglia should be compelled to identify in one declaration <u>all</u> webmail accounts he has used since 2003 to prevent Ceglia from later discovering "new" evidence supporting his claims, and to explain his multiple failures to comply with the Court's order.

**II.     Ceglia Has Failed To Justify His Assertions Of Attorney-Client Privilege With Competent Evidence.**

Ceglia "does not oppose this Court's in camera review," Doc. No. 310, at 8, of the documents over which Defendants contend Ceglia has improperly invoked the attorney-client privilege, *see* Doc. No. 295 at 8–10.  (Ceglia has since abandoned his claim over one of those documents (Document 337).)  This Court should therefore review the remaining ten documents *in camera*, specifically, item numbers 360, 379, 334, 348, 373, 400, 401, 402, 403, and 405.

The Court should also reject Ceglia's groundless privilege assertions over those ten documents.  As the Court has already held, *see* Doc. No. 107 at 2, Ceglia (the party invoking the

privilege) has "[t]he burden of establishing the existence of an attorney-client privilege, in all of its elements." *United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997). That showing "must be based on competent evidence, usually through affidavits, deposition testimony or other admissible evidence." *Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*, 252 F.R.D. 163, 169 (S.D.N.Y. 2008). "The burden cannot be met by 'mere conclusory or ipse dixit assertions' in unsworn papers authored by attorneys." *Id.* (quoting *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 147 (2d Cir. 1987)).

The Court should reject each of Ceglia's newest privilege claims for the same reason it rejected his prior privilege claims, *see* Doc. No. 107, at 2–3: With one irrelevant exception discussed below, Ceglia provides <u>no evidence</u> to support a finding of even one element—let alone all elements—of the attorney-client privilege with regard to every challenged document. The universe of support for Ceglia's claims is in essence three-and-one-half pages of "mere conclusory or ipse dixit assertions in unsworn papers authored by" Boland. *See* Doc. No. 310 at 5–8. There is simply <u>no evidence</u> before the Court that could support factual findings in Ceglia's favor on each element for each challenged document.

For instance, with regard to Documents 373, 400, 401, 402, 403, and 405, Ceglia rests on the naked, unsworn assertion that those emails "occurred while Mr. Ceglia was considering whether to formally retain Mr. [David] Grable as counsel." Doc. No. 310 at 5. No evidence establishes that this is so. Ceglia did not submit a declaration regarding his relationship with David Grable, an attorney at Quinn Emanuel who appears to be a personal relation of Jim Grable, Ceglia's former attorney at Connors & Vilardo. Nor did David Grable, Jim Grable, or any of Ceglia's former or current attorneys (including Paul Argentieri) submit a declaration regarding the Grable-Ceglia relationship generally or these communications specifically.

3

Ceglia's showing regarding Document 348, an email between James Kole, Ceglia, and Amanda C. Wornhoff, is similarly deficient. This email dates from February 15, 2007, after Kole left Sidley Austin and joined the Illinois Attorney General's Office. Notably, Ceglia does not even hint that Mr. Kole provided legal advice to Ceglia in Document 348. And of course, this Court has already held that numerous emails between Ceglia and Kole—even those sent while Kole was in private practice at Sidley Austin—are not privileged communications.[1] Similarly, no evidence establishes that Document 334—a communication from Ceglia to Argentieri that concerns "a hushmail account," perhaps the **paulc@hush.com** account that Ceglia concealed from Defendants—was sent for the purpose of obtaining legal advice.

The only challenged documents that are even arguably supported by evidence are Documents 360 and 379, emails "to which Jason Holmberg was a party." Doc. No. 310 at 6. Holmberg is the President and Owner of PA Pellets (LLC), a manufacturer of wood fuel pellets in Pennsylvania whom Argentieri purportedly hired in February 2011 "as a consultant and/or at times, to perform executive secretarial duties." Doc. No. 311, ¶ 17. Argentieri did not submit a consulting agreement in support of this self-serving assertion, absurd on its face given Holmberg's apparent lack of legal training and likely connection to Ceglia through the wood-pellet industry.[2] But even if Argentieri's assertion is accepted as true, Holmberg's status as Argentieri's occasional agent does not justify Ceglia's privilege and work product claims over

---

[1] *See* Doc. No. 107 at 1–3 (rejecting Ceglia's privilege claim over March 3, 2004 emails from Ceglia to Kole); Doc. No. 208, ¶ 15 (rejecting Ceglia's privilege claim over March 5, 2004 email from Kole to Ceglia).

[2] As Defendants have previously described, *see* Doc. No. 49, ¶¶ 5–8, the New York State Attorney General obtained a temporary restraining order against Paul and Iasia Ceglia and their business, Allegany Pellets, LLC, for defrauding dozens of consumers out of approximately $200,000. Ceglia was also arrested and charged criminally in connection with this matter.

Documents 360 and 379 for at least two reasons.

First, Argentieri's declaration describes Holmberg's purported role as his agent only with regard to the Lawsuit Overview document. The declaration is silent regarding Holmberg's role in preparing or creating Documents 360 and 379. Accordingly, the evidentiary vacuum discussed above also exists for these two documents. Second, Ceglia's brief does not actually state that Holmberg wrote Documents 360 and 379 at Argentieri's request, such that the Court could potentially find each element of the attorney-client privilege. Instead, Ceglia's brief very carefully—using the passive voice—implies that connection without actually asserting it: according to the brief, Holmberg "has served as Mr. Argentieri's consultant and agent on matters pertaining to this litigation. Documents 360 and 379 are <u>communications that were prepared in the context of this position, at the behest of an attorney</u>." Doc. 310, at 6–7 (emphasis added). Ceglia does not tell the Court precisely <u>who</u> "prepared" the emails—a critical question, given the elements of an attorney-client privilege claim—or what aspect of Holmberg's role "in the context of this position" would justify the privilege. Nor does Ceglia claim that Argentieri is the "attorney" at whose "behest" the emails were "prepared." Thus, Ceglia's brief does not assert that Holmberg's role with regard to Documents 360 and 379 occurred at the direction of Ceglia's lawyers—the minimum showing needed to support a privilege finding.

Relatedly, Ceglia's brief notes that he has asked Defendants to return or destroy copies of a March 6, 2011 email from Holmberg to Argentieri and Ceglia that Celia produced to Defendants. He argues that the email is privileged (given Holmberg's role as Argentieri's "executive secretar[y]"); that the email was inadvertently produced by Argentieri's technical consultant Edward Flaitz; and that because the production was inadvertent, Ceglia has not waived any privilege that attached to that email. *See id.* at 7 n.1. Ceglia's argument is baseless.

5

Federal Rule of Evidence 502(b) governs whether the attorney-client privilege is waived by an inadvertent disclosure. Under that Rule, a disclosure of privileged material made in a federal proceeding "does not operate as a waiver" of the privilege if "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." Fed. R. Evid. 502(b). "The party claiming that its disclosure was inadvertent bears the burden of proving that each of the three elements of Rule 502(b) has been met." *Williams v. Dist. of Columbia*, 806 F. Supp. 2d 44, 48 (D.D.C. 2011); *see also Allied Irish Banks*, 252 F.R.D. at 162 (stating that it is "the burden of the party asserting a privilege to establish that it has not been waived"). Of course, Rule 502's waiver analysis is necessary only if the party invoking the privilege first establishes that the disclosed material is in fact privileged; if it is not, waiver is irrelevant. *See Peterson v. Bernardi*, 262 F.R.D. 424, 427 (D.N.J. 2009).

Ceglia's attempt to clawback Holmberg's March 6 email fails at that initial step. He has introduced <u>no evidence</u> from which this Court could conclude that Holmberg's March 6 email satisfies every element of the attorney-client privilege. That failure alone should end the matter.

Even assuming Holmberg's March 6 email were privileged, Ceglia's clawback attempt fails because he has not carried his burden under Rule 502(b). In particular, Ceglia's attorneys did not take "reasonable steps to prevent disclosure," R. 502(b)(2), and failed to "promptly [take] reasonable steps to rectify the error," R. 502(b)(3).

First, Argentieri's steps were not reasonable. Flaitz attests that Argentieri instructed him "over the telephone" to produce "only . . . the attachment" to the March 6 email—the Lawsuit Overview document—and that he "inadvertently copied the" March 6 email "with the attachment

6

'Lawsuit Overview.pdf' and had it burned onto a cd and gave it to Mr. Argentieri's secretary." Doc. No. 312, ¶¶ 6–7.  But the email was not produced to Stroz Friedberg on CD.  Rather, as established in the Declaration of Bryan Rose, Flaitz actually forwarded the March 6 email from Argentieri's email account to Mr. Rose on December 16, 2011.  *See* Decl. of B. Rose, ¶ 7 (Mar. 19, 2012).  Those actual facts establish the unreasonableness of Argentieri's steps to prevent disclosure: only <u>one file</u> in <u>one email</u> was at issue, but Argentieri could not be bothered to personally supervise the production or ensure that his instructions were properly carried out.  *See Williams*, 806 F. Supp. 2d at 50 (holding that disclosing party failed to show that its efforts to prevent disclosure were reasonable where it "provided no factual basis for the Court to conclude . . . that the error was 'reasonable given the size of the production' "); *cf. Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*, No. 96-Civ.-2064, 1996 WL 668862, at *5 (S.D.N.Y. Nov. 19, 1996) ("Courts have most often upheld [privilege] protection despite inadvertent disclosure when a small number of privileged documents were inadvertently disclosed as part of a large production of discovery materials, and the disclosure of the privileged documents was careless, not egregious.").

Second, Ceglia did not "promply [take] reasonable steps to rectify the error."  Fed. R. Evid. 502(b)(3).  Federal district courts in New York generally measure delay in claiming the privilege "from the time the producing party learns of the disclosure." *Valentin v. Bank of N.Y. Mellon Corp.*, No. 09-Civ.-9448, 2011 WL 1466122, at *3 (S.D.N.Y. Apr. 14, 2011), *aff'd*, 2011 WL 2437644 (S.D.N.Y. May 31, 2011) (internal quotation marks omitted).  Here, because Flaitz forwarded the March 6 email directly from Argentieri's email account, Argentieri should have had same-day knowledge of the disclosure (on December 16, 2011).  At a minimum, Boland learned of the disclosure of Holmberg's March 6 email on January 4, 2012, when Stroz

7

Friedberg produced the December 16 email simultaneously to all parties in its native-file format. *See* Rose Decl., ¶ 6. Yet Plaintiff did not seek the email's return until March 12, 2012—nearly three months after Argentieri should have learned of the disclosure, or two months and eight days after Boland did. Courts have repeatedly held that similar delays in seeking the return of inadvertently disclosed material waived the privilege. *See Jacob v. Duane Reade, Inc.*, No. 11-Civ.-0160, 2012 WL 651536, at *6 (S.D.N.Y. Feb. 28, 2012) (holding that "Defendants did not act diligently in rectifying the inadvertent disclosure" when they waited two months and eight days to seek the return of privileged material); *LaSalle Nat'l Bank Assn. v. Merrill Lynch Mortgage Lending*, No. 04-Civ.-5452, 2007 WL 2324292, at *2, *5 (S.D.N.Y. Aug. 13, 2007) (holding that a one-month delay to demand the return of a document that was first viewed in a deposition as "possibly" an attorney-client communication constituted a waiver of the privilege); *Liz Claiborne*, 1996 WL 668862, at *5 (waiting one month to request the return of privileged notes supported a finding of waiver).

In sum, the Court should review the ten challenged documents *in camera*. Given Ceglia's failure to provide <u>any evidence</u> to support his specific privilege assertions, the Court should hold that each of those documents is not privileged. Those documents should be produced to Defendants immediately. The Court should also hold that Holmberg's March 6 email is not privileged, or that Ceglia has waived any such privilege because he has failed to establish that its production was inadvertent under Rule 502(b).

### III.     Ceglia Must Submit An Amended Declaration Identifying Jason Holmberg And All Other Custodians of "Lawsuit Overview."

Defendants' motion establishes that Ceglia remains in non-compliance with the August 18 Order because he failed to disclose that Holmberg possessed a copy of the "Lawsuit Overview" document, which contains an electronic copy of the purported contract. Defendants

8

also explained that Boland's February 2 email suggests the existence of yet another unidentified custodian of the purported Work for Hire agreement because it states that Holmberg had one electronic copy of it "that he retained after receiving it via email." *See* Doc. No. 295, at 10–15.

Ceglia's opposition brief mentions those issues twice. Neither is responsive to Defendants' arguments. First, Ceglia claims that "[a]ll copies of [the Lawsuit Overview] document in Ceglia's custody and control were already provided to Defendants in previous productions pursuant to this court's orders long before they filed their Fifth Motion to Compel." Doc. No. 310 at 3. Second, he claims that "Defendants demand all copies of the 'Lawsuit Overview' document and a declaration regarding the authorship of that document. Mr. Argentieri authored the Lawsuit Overview.pdf." *Id.* at 8 (citation omitted).

Ceglia's responses evade the critical point: he still has not submitted an amended declaration that identifies <u>all</u> custodians of electronic copies of the purported Work for Hire agreement, as required by the August 18 Order. *See* Doc. No. 117, ¶ 2. Ceglia's supplemental declaration attached as Exhibit E to his opposition brief does not cure that violation; it fails to identify <u>each</u> custodian (known to Defendants) of the Lawsuit Overview document. *See* Doc. No. 310-5. Ceglia thus should be compelled to submit a corrected declaration that identifies in one place <u>all</u> custodians of electronic copies of the Lawsuit Overview document.

In addition, Argentieri's declaration compounds the confusion regarding the potential existence of yet another undisclosed custodian of "Lawsuit Overview." As discussed in Defendants' motion, Boland stated in a February 2 email that Holmberg had one electronic copy of Lawsuit Overview "<u>that he retained after receiving it via email</u>." Doc. No. 295 at 14. But Argentieri's declaration conflicts with Boland's email: Argentieri attests that he "wrote" the component parts of Lawsuit Overview "<u>primarily by hand and/or faxed documents to Mr.</u>

9

Holmberg as I can't type," Doc. No. 311, ¶ 18 (emphasis added), after which "Holmberg . . . formatted my work into a pdf" and thus "did put it together," *id.*, ¶¶ 20–21. If Argentieri's sworn statements are correct, Holmberg could not have "receive[d]" a pdf copy of Lawsuit Overview document "via email" as Boland claimed in his February 2 email. The identity of the person who sent the document to Holmberg—such that he "receiv[ed] it via email"—remains a mystery. Ceglia should be compelled to provide a supplemental declaration explaining those contradictions. Alternatively, the Court may wish to examine Argentieri and Boland about their contradictory statements regarding the document's authorship.

## CONCLUSION

Defendants' Fifth Motion to Compel should be granted. The Court should also award to Defendants all other relief to which they may be entitled.

Dated:   New York, New York
         March 19, 2012

                                                    Respectfully submitted,

                                                    /s/ Orin Snyder
Thomas H. Dupree, Jr.                               Orin Snyder
GIBSON, DUNN & CRUTCHER LLP                         Alexander H. Southwell
1050 Connecticut Avenue, NW                         Matthew J. Benjamin
Washington, DC 20036                                Amanda M. Aycock
(202) 955-8500                                      GIBSON, DUNN & CRUTCHER LLP
                                                    200 Park Avenue, 47th Floor
                                                    New York, NY 10166-0193
Terrance P. Flynn                                   (212) 351-4000
HARRIS BEACH PLLC
726 Exchange Street
Suite 1000
Buffalo, NY 14210
(716) 200-5120

*Attorneys for Defendants Mark Zuckerberg and Facebook, Inc.*

10