UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PAUL D. CEGLIA,

                Plaintiff,

      v.

MARK ELLIOT ZUCKERBERG and
FACEBOOK, INC.,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No. 1:10-cv-00569-RJA


**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**


Thomas H. Dupree, Jr.
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
(202) 955-8500

Terrance P. Flynn
HARRIS BEACH PLLC
726 Exchange Street
Suite 1000
Buffalo, NY 14210
(716) 200-5120

Orin Snyder
Alexander H. Southwell
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193
(212) 351-4000

March 26, 2012

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 3

LEGAL STANDARDS ........................................................................................ 7

ARGUMENT ...................................................................................................... 8

    I.     ALL OF CEGLIA'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS ............................................................................................ 8

           A.     Breach Of Contract Claims (Claims 6 And 7) .......................... 9

           B.     Actual And Constructive Fraud Claims (Claims 3 And 4) ...... 11

           C.     Claim For Breach Of Fiduciary Duty (Claim 2) ..................... 12

           D.     Declaratory Relief Based On Putative Partnership (Claims 1 And 5) ...................................................................... 13

    II.    CEGLIA'S NEW CLAIMS ARE TIME-BARRED BECAUSE THEY DO NOT RELATE BACK TO HIS ORIGINAL COMPLAINT .............................. 14

    III.    CEGLIA'S CLAIMS ARE BARRED BY LACHES ......................................... 17

           A.     Ceglia Was Aware For Years Of The Facts Underlying His Claims, Yet He Inexcusably Delayed In Filing This Lawsuit ................ 20

           B.     Allowing This Lawsuit To Proceed Would Cause Immense Prejudice To Defendants And Facebook's Employees, Investors, And Users ...................................................................... 22

CONCLUSION ................................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*ABB Indus. Sys., Inc. v. Prime Tech., Inc.*,
120 F.3d 351 (2d Cir. 1997) ................................................................. 9

*Allens Creek/Corbetts Glen Pres. Grp., Inc. v. Caldera*,
88 F. Supp. 2d 77 (W.D.N.Y. 2000) .............................................. 18, 20

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ........................................................................ 7

*Asset Value Fund Ltd. P'ship v. Care Grp., Inc.*,
179 F.R.D. 117 (S.D.N.Y. 1998) ....................................................... 15

*Bailey v. Chernoff*,
846 N.Y.S.2d 462 (App. Div. 2007) ................................................... 18

*Balta v. Ayco Co.*,
626 F. Supp. 2d 347 (W.D.N.Y. 2009) ............................................... 11

*Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
369 F.3d 212 (2d Cir. 2004) ................................................................ 7

*Ceres Partners v. GEL Assocs.*,
918 F.2d 349 (2d Cir. 1990) ................................................................ 8

*Chesapeake Operating, Inc. v. Carl E. Gungoll Exploration, Inc.*,
116 P.3d 213 (Okla. App. 2005) ......................................................... 21

*Conopco, Inc. v. Campbell Soup Co.*,
95 F.3d 187 (2d Cir. 1996) ................................................................. 24

*Davis v. Cornerstone Tel. Co.*,
878 N.Y.S.2d 800 (App. Div. 2009) ......................................... 9, 10, 11

*Ely-Cruikshank Co. v. Bank of Montreal*,
615 N.E.2d 985 (N.Y. 1993) ................................................................ 9

*Enzo Biochem, Inc. v. Johnson & Johnson*,
1990 WL 136038 (S.D.N.Y. Sept. 13, 1990) ..................................... 15

*Eppendorf-Netheler-Hinz GmbH v. Enterton Co.*,
89 F. Supp. 2d 483 (S.D.N.Y. 2000) .................................................. 25

*Eskenazi v. Schapiro*,
    812 N.Y.S.2d 474 (App. Div. 2006)............................................................... 10, 14

*Feldman v. Teitelbaum*,
    554 N.Y.S.2d 265 (App. Div. 1990)..................................................................... 10

*Gold v. Deutsche Aktiengesellschaft*,
    365 F.3d 144 (2d Cir. 2004)................................................................................ 20

*Haas v. Leo Feist, Inc.*,
    234 F. 105 (S.D.N.Y. 1916)................................................................................ 24

*Harley-Davidson, Inc. v. O'Connell*,
    13 F. Supp. 2d 271 (N.D.N.Y. 1998)................................................................... 23

*Holland v. City of New York*,
    2011 WL 6306727 (S.D.N.Y. Dec. 16, 2011) ........................................................ 7

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
    907 N.E.2d 268 (N.Y. 2009)................................................................... 11, 12, 13

*Ikelionwu v. United States*,
    150 F.3d 233 (2d Cir. 1998)................................................................................ 18

*Ingham ex rel. Cobalt Asset Mgmt., L.P. v. Thompson*,
    931 N.Y.S.2d 306 (App. Div. 2011) .................................................................... 12

*Jager v. Mitschele*,
    2010 WL 4722292 (E.D.N.Y. Nov. 12, 2010)........................................................ 8

*Kaufman v. Cohen*,
    760 N.Y.S.2d 157 (App. Div. 2003)..................................................................... 13

*Kenmore Mercy Hosp. v. Daines*,
    2011 WL 4368564 (W.D.N.Y. Sept. 19, 2011) ..................................................... 13

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011)............................................................................... 3, 7

*Lazides v. Kouzounas*,
    776 N.Y.S.2d 824 (App. Div. 2004)..................................................................... 13

*Levin v. Kitsis*,
    920 N.Y.S.2d 131 (App. Div. 2011)..................................................................... 11

*LinkCo, Inc. v. Akikusa*,
    615 F. Supp. 2d 130 (S.D.N.Y. 2009)........................................................ 8, 19, 22

*In re Linker*,
    803 N.Y.S.2d 534 (App. Div. 2005) .................................................................. 25

*Male v. Tops Friendly Mkts.*,
    2008 WL 1836948 (W.D.N.Y. Apr. 22, 2008) ...................................................... 16

*Mashihi v. 166-25 Hillside Partners*,
    859 N.Y.S.2d 202 (App. Div. 2008) .................................................................. 14

*McCormick v. Favreau*,
    919 N.Y.S.2d 572 (App. Div. 2011) ........................................................ 9, 11, 12

*Morris v. Monit Mgmt., Ltd.*,
    635 N.Y.S.2d 845 (App. Div. 1995) .................................................................. 18

*Oliner v. McBride's Indus., Inc.*,
    106 F.R.D. 9 (S.D.N.Y. 1985) .......................................................................... 17

*Orr v. Kinderhill Corp.*,
    991 F.2d 31 (2d Cir. 1993) ............................................................................... 11

*Paolucci v. Mauro*,
    903 N.Y.S.2d 584 (App. Div. 2010) .................................................................. 12

*Saratoga County Chamber of Commerce v. Pataki*,
    798 N.E.2d 1047 (N.Y. 2003) ..................................................................... 18, 23

*Schulz v. New York*,
    615 N.E.2d 953 (N.Y. 1993) ...................................................................... 18, 24

*Skrodelis v. Norbergs*,
    707 N.Y.S.2d 197 (App. Div. 2000) .................................................................. 18

*Slayton v. Am. Express Co.*,
    460 F.3d 215 (2d Cir. 2006) ............................................................................. 15

*Solnick v. Whalen*,
    401 N.E.2d 190 (N.Y. 1980) ...................................................................... 13, 14

*Solow Building Co. v. Nine West Group*,
    2001 WL 736794 (S.D.N.Y. June 29, 2001) ................................................ 19, 23

*Sriraman v. Patel*,
    761 F. Supp. 2d 7 (E.D.N.Y. 2011) .................................................................. 13

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008) ........................................................................... 7, 8

*Staines Assocs. v. Adler*,
    698 N.Y.S.2d 639 (App. Div. 1999) ..................................................................... 14

*Stambler v. Diebold, Inc.*,
    1988 WL 95479 (E.D.N.Y. Sept. 2, 1988) ........................................................... 23

*Stone v. Williams*,
    873 F.2d 620 (2d Cir. 1989) ................................................................................ 18

*Tho Dinh Tran v. Alphonse Hotel Corp.*,
    281 F.3d 23 (2d Cir. 2002) .................................................................................. 15

*Town of Huntington v. County of Suffolk*,
    910 N.Y.S.2d 454 (App. Div. 2010) ..................................................................... 18

*Welwart v. Dataware Elecs. Corp.*,
    717 N.Y.S.2d 220 (App. Div. 2000) ..................................................................... 10

*Willets Point Indus. & Realty Ass'n v. City of New York*,
    2009 WL 4282017 (E.D.N.Y. Nov. 25, 2009) ............................................... 19, 23

*Yip v. Bd. of Trs. of State Univ. of N.Y.*,
    2004 WL 2202594 (W.D.N.Y. Sept. 29, 2004) ....................................................... 7

*Zane v. Minion*,
    882 N.Y.S.2d 255 (App. Div. 2009) ..................................................................... 14

## Statutes And Rules

Fed. R. Civ. P. 12(c) ....................................................................................................... 7

Fed. R. Civ. P. 15(c)(1) ............................................................................................. 14, 15

N.Y. C.P.L.R. § 202 ........................................................................................................ 8

N.Y. C.P.L.R. § 213(1) ..................................................................................... 1, 11, 14

N.Y. C.P.L.R. § 213(2) .............................................................................................. 1, 9

N.Y. C.P.L.R. § 213(8) ..................................................................................... 1, 11, 12

## Other Authorities

Ariel Alexovich, *In Your Face: "Casual Stalking" Consumes Colleges*,
    Chic. Trib., May 25, 2004 ..................................................................................... 6

Brian Braiker, *Networking: So Happy Together*,
    Newsweek, May 10, 2004 ....................................................................................... 6

Rebecca Buckman, *Too Much Information?*,
  Wall St. J., Dec. 8, 2005 ................................................................................. 6

Facebook, Inc., Registration Statement
  (Am. No. 2 to Form S-1) (Mar. 7, 2012) ................................................... 6, 12, 21

Molly Hirschbeck, *Counting Friends on Facebook*,
  Buffalo News, Aug. 17, 2005 .......................................................................... 7

Steve Orr, *Facebook the Latest Connection at College*,
  Rochester Democrat & Chronicle, Jan. 9, 2005 ....................................... 7

Brad Stone, *Is Facebook Growing Up Too Fast?*,
  N.Y. Times, Mar. 28, 2009 ............................................................................ 6

Bob Van Voris, *Facebook Would-Be Owner Says He Owes His Claim To Arrest*,
  Bloomberg.com, Aug. 2, 2010 ..................................................................... 21

## INTRODUCTION

This is an untimely, opportunistic, and fraudulent lawsuit.  Plaintiff Paul Ceglia claims

that, in 2010, he "discovered" a purported contract from 2003 that entitles him to ownership of

50% of the equity that Mark Zuckerberg received when Facebook, Inc. was incorporated.

Defendants' concurrently-filed Motion to Dismiss demonstrates that this entire lawsuit is a lie:

The purported contract is a forgery; the so-called "emails" that Ceglia quotes in his Amended

Complaint are fabrications; and Ceglia is a convicted felon and well-known scam artist.  This

motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) demonstrates

that, even taking Ceglia's preposterous allegations as true, his Amended Complaint still should

be rejected on its face because Ceglia's claims are barred by the statute of limitations and laches.

Ceglia alleges that the purported contract on which his suit is based (the Work for Hire

Document) was signed in 2003 and that he was deprived of his share of Facebook in 2004.  Yet

Ceglia waited until <u>2010</u> to file this lawsuit — a <u>six-year delay</u> during which he remained silent.

Meanwhile, Facebook grew into one of the world's best-known companies.  Ceglia has now

come out of the woodwork, insisting that he should be awarded a huge share of a multibillion-

dollar company.  The law does not permit plaintiffs to sit on their rights, remaining silent as

years pass, only to raise stale claims that could and should have been made long before.  The

Court should grant judgment on the pleadings for Defendants for multiple independent reasons.

First, New York's statute of limitations bars all of Ceglia's claims.  *See* N.Y. C.P.L.R.

§ 213(1), (2), (8).  The limitations period for each of Ceglia's claims is, at most, six years.

Ceglia filed this lawsuit on June 30, 2010.  <u>But all of his causes of action accrued prior to June</u>

<u>30, 2004</u>.  Every one of Ceglia's claims boils down to the same basic assertion:  that he was

entitled to own half of "The Face Book" project Zuckerberg created, and that he was deprived of

that interest when Facebook, Inc. was formed in July 2004 and he received no stake in it.  What Ceglia fails to mention is that on April 13, 2004, <u>months before</u> Facebook, Inc. came into existence, Zuckerberg formed a limited liability company, Thefacebook LLC, to run the Facebook business.  Zuckerberg listed himself and two Harvard classmates — but not Ceglia — as the owners of Thefacebook LLC in its Articles of Organization, and thus <u>publicly and unequivocally excluded Ceglia from ownership of the company in April 2004</u>.  In short, the Amended Complaint and the undisputed public record establish that, on Ceglia's own theory of the case, his claims accrued prior to June 30, 2004.  The statute of limitations flatly bars this suit.

Second, the <u>new</u> claims in Ceglia's Amended Complaint — asserting fraud, breach of fiduciary duty, and seeking declaratory relief based on a purported partnership Ceglia now says (for the first time) that he and Zuckerberg formed — are barred by the statute of limitations for an additional reason.  Ceglia filed his Amended Complaint on April 11, 2011.  None of Ceglia's claims accrued within six years of <u>that</u> filing, and thus his new claims are untimely unless they relate back to his original Complaint.  But these new claims do not relate back because they depend on new and different facts from those alleged in the original Complaint.

Third, Ceglia's claims are barred by laches — a doctrine that prevents plaintiffs like Ceglia from asserting claims after an unjustifiable and prejudicial delay.  This is a paradigmatic case for laches:  Ceglia has <u>no</u> valid excuse for his <u>six-year delay</u> in bringing this suit.  His Amended Complaint is utterly silent on this point, and nothing could justify his enormous delay or diminish the prejudice it has caused to Zuckerberg and Facebook.  This Court should not permit Ceglia to sleep on his purported rights for <u>six years</u> and then seek to wrest an enormous stake in one of the world's most prominent companies from the man who created and devoted his

professional life to building it, upsetting the settled expectations of Zuckerberg, thousands of Facebook employees, and hundreds of millions of Facebook users around the world.

For all of these reasons, the Court should reject Ceglia's Amended Complaint under Rule 12(c).  Courts routinely dismiss suits similar to this one at the pleading stage.  It would establish a dangerous precedent to allow a plaintiff to remain silent for more than six years, only to emerge abruptly to seek a staggering monetary award and a substantial stake in a company that grew into a multibillion-dollar worldwide enterprise during the years that the plaintiff failed to assert his purported rights.  Authorizing general discovery in such cases would create enormous incentives for opportunistic plaintiffs to manufacture trumped-up claims in the hope of extracting a quick payoff from a company seeking to avoid any uncertainty over its ownership.  The Court should immediately terminate this lawsuit and bring Ceglia's charade to an end.

## BACKGROUND

Although for purposes of this motion the well-pleaded allegations in the Amended Complaint must be presumed true, *see L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011), Defendants' concurrently-filed Motion to Dismiss demonstrates that Ceglia's purported contract is an amateurish forgery, and this entire lawsuit is a lie and a fraud.

### 1.    Ceglia Files His Original, Bare-Bones Complaint.

On June 30, 2010, Ceglia filed his original Complaint, consisting of three pages and twelve paragraphs, alleging simple breach-of-contract claims against Zuckerberg and Facebook. Compl. (Doc. No. 1-4).  Ceglia claimed that, more than seven years earlier, on April 28, 2003, he and Zuckerberg entered into the Work for Hire Document attached to Ceglia's Complaint, and that this purported contract entitled Ceglia to ownership of 84% of Facebook.  *Id.* ¶¶ 4–8.

The Work for Hire Document states that Zuckerberg would perform freelance computer programming services for a company named StreetFax and would develop a website titled "The Face Book" or "The Page Book."  Compl., Ex. B §§ 2–3.  It purports to grant the "Purchaser," Ceglia, a 50% interest "in the software, programming language and business interests derived from the expansion of that service to a larger audience." *Id.* § 2.  In exchange, Zuckerberg would be paid $2,000 — $1,000 for his work on the StreetFax project, and $1,000 for his work on "The Face Book." *Id.* § 3.  The Work for Hire Document designates May 31, 2003 as the completion date for the StreetFax work and January 1, 2004 as the completion date for "The Face Book" project, and purports to grant Ceglia "an additional 1% interest" in the latter project "for each day the website is delayed from that date." *Id.*  The original Complaint alleged that Ceglia paid Zuckerberg $1,000 as consideration on November 24, 2003.  Compl. ¶ 9.  It also alleged that Thefacebook.com was not operational until February 4, 2004, and that Ceglia therefore "acquired an additional 34% interest" in the project "for a total of eighty four percent (84%)." *Id.* ¶¶ 7–8.  Ceglia alleged that Zuckerberg failed to provide him that stake. *Id.* ¶¶ 10–11.

> **2.  Ceglia Asserts Entirely New Allegations And Legal Theories In His Amended Complaint.**

On April 11, 2011, Ceglia filed an Amended Complaint, alleging new facts and claims that fundamentally transformed his theory of the case.  The Amended Complaint conjured up a host of new allegations based in large part on purported "emails" between Ceglia and Zuckerberg that were not even mentioned in the original Complaint. *See* Am. Compl. (Doc. No. 39) ¶¶ 31–55.  Ceglia alleged for the first time that he and Zuckerberg had, via email, engaged in months of creative collaboration and that Ceglia had contributed innovative business and marketing ideas to Facebook. *See id.*  According to the Amended Complaint and these purported emails, Ceglia and Zuckerberg had a highly charged, emotional relationship — and ultimately had a falling out in

mid-2004.  For example, after Zuckerberg allegedly asserted in an April 2004 email that he was thinking of abandoning "The Face Book" project and that he and Ceglia could "call it even on the rest of the money you owe me," Ceglia allegedly responded:  "You've got some nerve talking about me owing you with the CRIMINAL stunts you've pulled . . . .  Do you have any idea the damage you've done???  Grow up, take a f***ing ethics class, choke yourself with that silver spoon of yours."  *Id.* ¶¶ 51–52; *see also id.* ¶ 53 (alleging that Zuckerberg attempted "to sabotage the StreetFax.com website on multiple occasions").

The legal theories in the Amended Complaint were also brand new.  Ceglia revamped his contract claims, alleging different rights and a different breach:  Instead of claiming that he was entitled to own 84% of Facebook, Inc., Compl. ¶ 8 — and that Zuckerberg breached the Work for Hire Document beginning the day it was signed in 2003, *id.* ¶ 11 — Ceglia now claimed that the Work for Hire Document entitled him to receive 50% of the shares in Facebook, Inc. that Zuckerberg received when the company was incorporated in July 2004, Am. Compl. ¶ 97.

In addition to his contract claims, Ceglia added an array of new causes of action.  He asserted (for the first time) that he and Zuckerberg formed a general partnership.  Am. Compl. ¶¶ 30, 60.  Based on that purported partnership — as well as Zuckerberg's alleged misrepresentations and misappropriations of the partnership's assets and its business opportunity (also alleged for the first time), *id.* ¶¶ 51–57 — Ceglia asserted newly-minted claims for declaratory relief, breach of fiduciary duty, and actual and constructive fraud.  *Id.* ¶¶ 59–93.

### 3.    Facebook Has For Years Been One Of The Most Prominent, Well-Known Companies In The World.

Ceglia alleges that Zuckerberg sent his last purported "email" to Ceglia on July 22, 2004, just before Facebook, Inc. was formed.  *See* Am. Compl. ¶¶ 55–57.  Ceglia does not allege that he had any further contact with Zuckerberg, or any involvement whatsoever with Facebook,

between that date and June 30, 2010, when Ceglia filed his original Complaint.  During those six

years, Facebook experienced dramatic growth and was the subject of extensive media coverage.

Zuckerberg launched Thefacebook.com on February 4, 2004.  Am. Compl. ¶¶ 47–48.  On

April 13, 2004, he organized Thefacebook LLC in Florida.  *See* Alexander H. Southwell Decl.,

Ex. Q.  Even though Ceglia purportedly owned 50% of the business, Thefacebook LLC's

publicly-filed Articles of Organization identified its members — that is, its owners, *see* Fla. Stat.

§§ 608.402(21), 608.4261 — as Mark Zuckerberg and two of his Harvard classmates and

Facebook co-founders:  Eduardo Saverin and Dustin Moskovitz.  *See id.* at 2.  Ceglia was <u>not</u>

listed as an owner, and his name appears nowhere in the document.

Facebook has since developed into the world's most popular social networking website.

It had nearly 500 million active users by June 2010, and has more than 800 million active users

today.  *See* Facebook, Inc., Registration Statement 46–47 (Am. No. 2 to Form S-1) (Mar. 7,

2012) ("Facebook Registration Statement"), *available at* http://www.sec.gov/Archives/edgar/

data/1326801/000119312512101422/d287954ds1a.htm.  The company employs more than 3,200

people, and its users spend more than 10.5 billion minutes per day on the site.  *Id.* at 85, 100.

Facebook is one of the most widely recognized companies in the United States and the

world.  It has received widespread national media attention since its launch in February 2004.

*See, e.g.*, Brian Braiker, *Networking: So Happy Together*, Newsweek, May 10, 2004 ("100,000

college students [are] logged on to Thefacebook.com"); Ariel Alexovich, *In Your Face: "Casual

Stalking" Consumes Colleges*, Chic. Trib., May 25, 2004 ("The site was so successful that

Zuckerberg created versions for the other Ivy League schools before taking it nationwide.");

Rebecca Buckman, *Too Much Information?*, Wall St. J., Dec. 8, 2005 (Facebook is "the ninth-

most popular Web property in the U.S. . . . by page views."); Brad Stone, *Is Facebook Growing

*Up Too Fast?*, N.Y. Times, Mar. 28, 2009 (describing Facebook's "staggering growth rate—

doubling in size in just eight months"). Local media have also covered Facebook. *See, e.g.*,

Steve Orr, *Facebook the Latest Connection at College*, Rochester Democrat & Chronicle, Jan. 9,

2005; Molly Hirschbeck, *Counting Friends on Facebook*, Buffalo News, Aug. 17, 2005.

## LEGAL STANDARDS

A motion for judgment on the pleadings is timely when, as here, it is filed "[a]fter the

pleadings are closed." Fed. R. Civ. P. 12(c). "In deciding a Rule 12(c) motion," the court

"employ[s] the same . . . standard applicable to dismissals pursuant to [Rule] 12(b)(6)." *L-7

Designs*, 647 F.3d at 429. Under Rule 12(b)(6), "only a complaint that states a plausible claim

for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

Determining whether a claim for relief is plausible is "a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id*. Because the Federal

Rules of Civil Procedure do not "unlock the doors of discovery for a plaintiff armed with nothing

more than conclusions," a complaint must set forth "factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949–50.

In deciding a motion to dismiss or for judgment on the pleadings, the Court may consider

the pleadings and documents attached to it, and matters of which it can take judicial notice. *See

L-7 Designs*, 647 F.3d at 422; *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d

Cir. 2008). That includes matters of public record, *Blue Tree Hotels Inv. (Can.), Ltd. v.

Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004); *Holland v. City

of New York*, No. 10-2525, 2011 WL 6306727, at *3 (S.D.N.Y. Dec. 16, 2011), and "items

appearing in the record of the case," *Yip v. Bd. of Trs. of State Univ. of N.Y.*, No. 03-959, 2004

WL 2202594, at *3 (W.D.N.Y. Sept. 29, 2004) (internal quotation marks omitted).

Although the statute of limitations and laches are affirmative defenses, courts do not hesitate to dismiss claims where, as here, the "face of the complaint" and facts subject to judicial notice establish that the claims are barred. *Staehr*, 547 F.3d at 425; *see also, e.g.*, *Ceres Partners v. GEL Assocs.*, 918 F.2d 349, 352 (2d Cir. 1990) (affirming dismissal of fraud claims because plaintiff acknowledged that it discovered information that started the limitations clock outside the limitations period); *LinkCo, Inc. v. Akikusa*, 615 F. Supp. 2d 130, 142 (S.D.N.Y. 2009) (holding that "the defense of laches may be resolved on a motion to dismiss where it is clear on the face of the Complaint that the plaintiff can prove no set of facts to avoid the insuperable bar," and dismissing fraud claims on laches grounds) (internal quotation marks omitted).

## ARGUMENT

I.     **ALL OF CEGLIA'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.**

Ceglia, a New York resident, Am. Compl. ¶¶ 5, 21, was required to bring his claims within the time New York law allows, whether those claims accrued in New York or elsewhere. *See* N.Y. C.P.L.R. § 202; *Jager v. Mitschele*, No. 06-1938, 2010 WL 4722292, at *2 (E.D.N.Y. Nov. 12, 2010). Under New York law, all of Ceglia's claims are subject to a limitations period of <u>at most</u> six years. As Ceglia's own allegations and public records show, however, each of his claims accrued <u>prior to</u> June 30, 2004 — more than six years before he filed his original Complaint on June 30, 2010. The Court should grant judgment on the pleadings for Defendants.

All of Ceglia's claims turn on the allegation that Zuckerberg incorporated Facebook, Inc. in July 2004 and excluded Ceglia from the company — which Ceglia says constituted a breach of Zuckerberg's alleged contractual and fiduciary duties, as well as fraud. But Ceglia overlooks a critical fact. Zuckerberg transformed "The Face Book" project into a new commercial entity months earlier, in <u>April</u> 2004, when he and others organized Thefacebook LLC. *See* Southwell

Decl., Ex. Q.  That entity was the precursor to Facebook, Inc.  Indeed, Thefacebook LLC's

public filings show that Facebook, Inc. acquired all of Thefacebook LLC's interests and became

its sole owner.  *See id.*, Ex. R at 3, 5.

Ceglia received no stake in Thefacebook LLC when it was formed in April 2004.

Thefacebook LLC's publicly-filed Articles of Organization list Zuckerberg, Eduardo Saverin,

and Dustin Moskovitz as its owners.  *See* Southwell Decl., Ex. Q at 2.  Ceglia's name is nowhere

to be found.  In other words, months before Facebook, Inc. even existed, Ceglia had been

excluded from "The Face Book" business and deprived of any purported ownership interest he

had.  Thus, under Ceglia's own theory, he had already suffered his alleged injury — being

excluded from a business entity created to operate "The Face Book" project and own its assets —

in April 2004.  All of Ceglia's claims are variations on this theory, and are therefore untimely.

### A.    Breach Of Contract Claims (Claims 6 And 7)

Under New York law, actions for breach of contract "must be commenced within six

years."  N.Y. C.P.L.R. § 213(2); *see McCormick v. Favreau*, 919 N.Y.S.2d 572, 576 (App. Div.

2011).  That six-year period begins to run when the contract was breached.  *Ely-Cruikshank Co.

v. Bank of Montreal*, 615 N.E.2d 985, 986–87 (N.Y. 1993).  It is not delayed until the plaintiff

suffers damage, *id.* at 986, or until "the breach was discovered, or should have been discovered,"

*ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 120 F.3d 351, 360 (2d Cir. 1997).

Courts regularly dismiss breach-of-contract claims as time-barred under New York law

when a plaintiff alleges that he is entitled to own a portion of a company, but files suit more than

six years after he was denied that ownership.  For example, in *Davis v. Cornerstone Telephone

Co.*, 878 N.Y.S.2d 800 (App. Div. 2009), the plaintiff alleged that he had contributed $100,000

in exchange for partial ownership of the telecommunications company that the defendants were

forming.  *Id.* at 801.  The Appellate Division affirmed the dismissal of the plaintiff's contract

claim because he "did not assert [that claim] until more than six years after the money was paid and defendants breached their obligations by failing to grant him part ownership or otherwise compensate him." *Id.* at 802.  Similarly, in *Welwart v. Dataware Electronics Corp.*, 717 N.Y.S.2d 220 (App. Div. 2000), the court affirmed the dismissal of the plaintiff's claims for breach of contract and fraud because he brought suit more than six years after being denied his alleged stake in the defendants' company.  *Id.* at 220-21.  The court held that "the limitations period is measured from the date of the initial alleged breach . . . , regardless of when the damages began to accrue." *Id.* at 221; *see also, e.g., Eskenazi v. Schapiro*, 812 N.Y.S.2d 474, 477 (App. Div. 2006) (motion to dismiss should have been granted because plaintiff filed his claim for breach of a joint-venture agreement more than six years after other members of joint venture withdrew and "joint venture ceased to exist"); *Feldman v. Teitelbaum*, 554 N.Y.S.2d 265, 266 (App. Div. 1990) (motion to dismiss should have been granted because plaintiff's claim for "a part of the appellant's ownership interest in the defendant corporation" was time-barred).

These decisions establish that Ceglia's breach-of-contract claims are untimely.  Even assuming that the bogus contract attached to the Amended Complaint were valid and that Ceglia's theory of breach were correct, the supposed contract was breached <u>before</u> June 30, 2004, outside the six-year limitations period.  Ceglia's contract claims assert that Zuckerberg deprived Ceglia of his ownership interest in Facebook:  He alleges that the Work for Hire Document entitled him to "own a half interest (50%) in the software, programming language and business interests derived from the expansion of ['The Face Book'] service to a larger audience," and that Zuckerberg breached the contract when he helped incorporate Facebook, Inc. in July 2004 but "failed to provide" Ceglia half of Zuckerberg's stake in the company.  Am. Compl. ¶¶ 23, 97, 102.  However, Ceglia's contract claims accrued long before Facebook, Inc. was

incorporated, when he was publicly excluded from ownership of Thefacebook LLC in April 2004.  On Ceglia's own theory, that act breached — indeed, publicly repudiated — any agreement to give Ceglia a stake in Facebook.  Just as the contract claim in *Davis* was time-barred because the plaintiff filed suit more than six years after the defendants "breached their obligations by failing to grant him part ownership," 878 N.Y.S.2d at 802, Ceglia's contract claims are untimely because he waited more than six years after April 2004 to sue.

### B.     Actual And Constructive Fraud Claims (Claims 3 And 4)

The same is true of Ceglia's claims based on actual and constructive fraud.  Both claims had to be brought within six years of the date each claim accrued.  *See* N.Y. C.P.L.R. § 213(1), (8); *McCormick*, 919 N.Y.S.2d at 575 (actual fraud); *Orr v. Kinderhill Corp.*, 991 F.2d 31, 35 (2d Cir. 1993) (constructive fraud); *Balta v. Ayco Co.*, 626 F. Supp. 2d 347, 357 (W.D.N.Y. 2009).  A claim accrues when the plaintiff could allege each element of the claim.  *See IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268, 273 (N.Y. 2009).

Like his contract claims, Ceglia's actual- and constructive-fraud claims accrued before June 30, 2004.  Ceglia himself alleges that all but one of the elements of these claims were established by June 30, 2004:  He asserts that between April and June 2004, Zuckerberg (1) made knowing misrepresentations and omissions about his plans to abandon Facebook, which (2) were intended to and (3) did induce his reliance.  Am. Compl. ¶¶ 73–75, 81–83; *see Levin v. Kitsis*, 920 N.Y.S.2d 131, 135 (App. Div. 2011).[1]  As to the final element, injury, Ceglia claims he was harmed when Zuckerberg formed Facebook, Inc. in July 2004 without giving

---

[1]   The elements of constructive fraud are identical to those of actual fraud except that, instead of showing scienter, the plaintiff must allege a fiduciary or confidential relationship.  *Levin*, 920 N.Y.S.2d at 135.  Ceglia alleges scienter for both claims, Am. Compl. ¶¶ 73, 81, but he also incorporates allegations that a fiduciary relationship existed, *id.* ¶¶ 60, 72.

Ceglia his share of the consideration Zuckerberg allegedly received in exchange for transferring partnership assets to the new corporation.  Am. Compl. ¶¶ 77, 85.  If Ceglia suffered harm from the alleged deception, however, it occurred in April 2004, when Zuckerberg excluded Ceglia from Thefacebook LLC.  Although Facebook's size and value subsequently increased, Ceglia could seek damages — and the clock started — the moment he was excluded from the business.

Although a discovery rule applies to <u>actual</u>-fraud claims (but not <u>constructive</u>-fraud claims, *see Ingham ex rel. Cobalt Asset Mgmt., L.P. v. Thompson*, 931 N.Y.S.2d 306, 308 (App. Div. 2011)), allowing them to be brought two years after the plaintiff should have discovered the fraud, N.Y. C.P.L.R. § 213(8), that rule has no bearing here.  Ceglia cannot credibly claim that he should not have discovered the fraud he alleges less than two years before filing suit in 2010.  Facebook's meteoric rise between 2004 and 2008, from zero to 100 million users (*see* Facebook Registration Statement at 46), gave him ample notice that Zuckerberg had not abandoned the project.  *See McCormick*, 919 N.Y.S.2d at 575–76 (affirming dismissal of fraud claims as time-barred because, nine years before filing suit, the plaintiffs received a copy of the agreement they alleged was fraudulent and thus "possessed sufficient information to prompt an inquiry that would have led to the discovery of the alleged fraud") (internal quotation marks omitted).

## C.     Claim For Breach Of Fiduciary Duty (Claim 2)

Ceglia's fiduciary-duty claim, based on the same allegations as his fraud claims, meets an identical fate.  Am. Compl. ¶¶ 67–69.  Claims for breach of fiduciary duty are subject to a limitations period of, at most, six years.  *See McCormick*, 919 N.Y.S.2d at 575; *Paolucci v. Mauro*, 903 N.Y.S.2d 584, 586–87 (App. Div. 2010).  The clock starts when the plaintiff can allege both a breach and damages.  *See IDT Corp.*, 907 N.E.2d at 272–73.  Applying that rule in *IDT Corp.*, the New York Court of Appeals held that the plaintiff's fiduciary-duty claim should

have been dismissed because "the only reasonable inference to be drawn from [the plaintiff's] allegations" was that it had suffered damages outside the limitations period. *Id.* at 273.

As with Ceglia's other claims, if Zuckerberg breached a fiduciary duty to Ceglia, he did so — and Ceglia suffered harm — when he formed Thefacebook LLC in April 2004. Although Ceglia alleges that Zuckerberg breached his duty by misappropriating the partnership's business opportunity and contributing its assets to the newly formed Facebook, Inc. in July 2004, Am. Compl. ¶¶ 67–70, those later acts are irrelevant. Once Zuckerberg allegedly ousted Ceglia from the Facebook business by organizing Thefacebook LLC without including him, Ceglia had a complete claim, *see Kaufman v. Cohen*, 760 N.Y.S.2d 157, 165–66 (App. Div. 2003), and the limitations period began to run.

### D.    Declaratory Relief Based On Putative Partnership (Claims 1 And 5)

Ceglia's demands for declaratory relief, based on the partnership he claims he formed with Zuckerberg, fail for the same reason. The limitations period for declaratory-judgment claims depends on the "substance" of the underlying allegations. *Solnick v. Whalen*, 401 N.E.2d 190, 193–94 (N.Y. 1980); *see also Kenmore Mercy Hosp. v. Daines*, No. 09-162, 2011 WL 4368564, at *3 (W.D.N.Y. Sept. 19, 2011). Under any plausible characterization, Ceglia's claims are subject to a six-year time-bar and were not timely filed.

If Ceglia's allegations are in substance claims that Zuckerberg breached his fiduciary duty as Ceglia's partner, they fail for the same reasons discussed above. If Ceglia's claims instead boil down to a request for an accounting of partnership property, they are still subject to a six-year limitations period, which began when the partnership dissolved. *See Lazides v. Kouzounas*, 776 N.Y.S.2d 824, 824 (App. Div. 2004); *Sriraman v. Patel*, 761 F. Supp. 2d 7, 21 (E.D.N.Y. 2011). To be sure, the Amended Complaint does not allege that the parties formally declared a dissolution. But taking Ceglia's incredible claims as true, that was unnecessary, as

13

Zuckerberg's exclusion of Ceglia from Thefacebook LLC in April 2004 assuredly "manifested an unequivocal election to dissolve the partnership." *Staines Assocs. v. Adler*, 698 N.Y.S.2d 639, 640 (App. Div. 1999); *Eskenazi*, 812 N.Y.S.2d at 477 (claim for accounting of joint venture was time-barred because all other members of joint venture withdrew from it more than six years earlier); *see also Mashihi v. 166-25 Hillside Partners*, 859 N.Y.S.2d 202, 202–03 (App. Div. 2008) (affirming dismissal of claim for accounting and holding that dissolution was unnecessary because partners by "their actions, repudiated the partnership . . . thus dissolving it" more than six years before the complaint was filed).  Finally, if Ceglia's declaratory-judgment claims are more akin to a claim seeking a constructive trust, a six-year period likewise applies, running from the date the defendant wrongfully acquired or retained the disputed property.  *See Zane v. Minion*, 882 N.Y.S.2d 255, 257 (App. Div. 2009).  On that theory, too, if creating Facebook, Inc. to take over the assets and exploit the opportunities of "The Face Book" project deprived Ceglia of his alleged interest, so did creating Thefacebook LLC to do the same things months earlier.[2]

## II. CEGLIA'S NEW CLAIMS ARE TIME-BARRED BECAUSE THEY DO NOT RELATE BACK TO HIS ORIGINAL COMPLAINT.

The new claims that Ceglia has added in his Amended Complaint are also untimely for an independent reason.  The only claims in Ceglia's original Complaint were his contract claims.  All of Ceglia's other theories were raised for the first time on <u>April 11, 2011</u>.  Nothing in Ceglia's Amended Complaint remotely suggests that any of his claims accrued less than six years before <u>that</u> date.  His new claims are thus time-barred unless they "relate[] back" to the date of his original Complaint filed in June 2010.  Fed. R. Civ. P. 15(c)(1).  They do not.

---

[2]  If Ceglia's declaratory-relief claims do not assert any conventional claim to which a specific limitations period applies, they still are subject to a six-year limitations period under New York's catch-all statute of limitations.  N.Y. C.P.L.R. § 213(1); *see also Solnick*, 401 N.E.2d at 194.

An amended complaint relates back to the date of a prior pleading if it "asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).  In other words, the "basic claim must have arisen out of the conduct set forth in the original pleading." *Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 36 (2d Cir. 2002) (internal quotation marks omitted), *overruled on other grounds by Slayton v. Am. Express Co.*, 460 F.3d 215 (2d Cir. 2006).

What matters most is "whether the original complaint gave the defendant fair notice of the newly alleged claims." *Tho Dinh Tran*, 281 F.3d at 36 (internal quotation marks omitted). As the Second Circuit has held, that notice is absent — and an amended pleading does not relate back — if the "amendment adds a new claim based on an act that was not alleged in any form in the original complaint." *Id.*  The original complaint in *Tho Dinh Tran* asserted a claim under the Fair Labor Standards Act, alleging that the defendants had paid the plaintiff an insufficient wage. *See id.* at 27, 36.  The amended complaint added a civil RICO claim, alleging that the defendants had bribed officials in the plaintiff's labor union to induce them not to enforce the wage provisions of their collective bargaining agreement.  *See id.* at 28, 36.  The Second Circuit held that the amended complaint did not relate back.  *Id.* at 36.  "Rather than merely adding a new legal theory based on the same facts as those presented in the original complaint," the court explained, "the plaintiff's amendment introduced a significant new factual allegation that fundamentally changed the nature of the allegations, both factual and legal, that the plaintiff was asserting against the defendants." *Id.*; *see also, e.g., Asset Value Fund Ltd. P'ship v. Care Grp., Inc.*, 179 F.R.D. 117, 121 n.3 (S.D.N.Y. 1998) (new fraud claims did not relate back to claims of breach of contract and breach of fiduciary duty); *Enzo Biochem, Inc. v. Johnson & Johnson*, No. 87-6125, 1990 WL 136038, at *7 (S.D.N.Y. Sept. 13, 1990) (similar).

The same is true here.  Ceglia's original Complaint gave Defendants no notice whatsoever of the new allegations he now tries to inject into the lawsuit.  Whereas his original Complaint asserted only contractual claims in the sparsest possible terms, Compl. ¶¶ 4–12, Ceglia's Amended Complaint alleges a plethora of new facts and theories not even hinted at in his earlier pleading.  Indeed, it goes "beyond just supplementing [his] prior factual claims," but in effect "provide[s] the factual basis for each and every one of [his] allegations for the very first time."  *Male v. Tops Friendly Mkts.*, No. 07-6573, 2008 WL 1836948, at *7 (W.D.N.Y. Apr. 22, 2008) (holding that claims asserted in amended complaint did not relate back because the plaintiff's original complaint contained no factual allegations supporting her claims).

The Amended Complaint chronicles a litany of alleged interactions Ceglia now asserts were part of a deliberate scheme to deceive him.  Ceglia now claims that he and Zuckerberg corresponded by "email" about "The Face Book" project for more than a year after signing the Work for Hire Document — discussing, among other things, the development of the website, competing projects, and disputes over funding and strategy.  Am. Compl. ¶¶ 31–55.  Ceglia further alleges, for the first time, that Zuckerberg deceived him in these communications, pretending that the project was unsuccessful and that Zuckerberg planned to abandon it, when in fact he was pursuing it with other business partners.  *Id.* ¶¶ 51–57.  Ceglia also now claims, for the first time, that Zuckerberg misappropriated assets and a business opportunity that belonged to their purported partnership, transferring the assets to Facebook, Inc. (in exchange for stock and other consideration) and keeping the opportunity for himself.  *Id.* ¶ 57.

Based on these new facts, mentioned nowhere in Ceglia's original Complaint, Ceglia now alleges a range of new theories.  Relying on his new allegations that Zuckerberg misled him for months through a string of "email" correspondence, he now asserts that Zuckerberg committed

16

actual and constructive fraud.  Am. Compl. ¶¶ 72–86.  His original Complaint, in contrast, did not suggest that he had been misled by Zuckerberg, or even that they communicated at all after the alleged contract was signed in 2003.  Because Ceglia's original Complaint gave Defendants no notice of his new fraud claims or their factual basis, those new claims do not relate back.

Similarly, Ceglia's new claims alleging violations of his rights (and Zuckerberg's fiduciary duties) under the putative partnership agreement bear no relation to his original allegations, which concerned only a simple, work-for-hire contract between two individuals. These new allegations would introduce an entirely new entity and new alleged misconduct into the litigation. *See Oliner v. McBride's Indus., Inc.*, 106 F.R.D. 9, 14 (S.D.N.Y. 1985) (holding new claim that would "introduce to the litigation a new company . . . nowhere mentioned in the prior complaint," and that alleged different conduct from original complaint, did not relate back). These claims are based on the same newly alleged misrepresentations and concealment as the fraud claims, Am. Compl. ¶¶ 67–69, as well as newly alleged misappropriations of partnership assets and opportunities, *id.* ¶¶ 30, 59–65, 87–93.  Ceglia's original Complaint thus came nowhere near giving Defendants fair notice of the claims Ceglia now seeks to raise.

Simply put, even assuming the contract claims in Ceglia's original Complaint were timely (and they are not), he cannot use that pleading as a back door to bring in every new fact and theory he now remembers or invents.  His new claims, at a minimum, must be rejected.

## III.   CEGLIA'S CLAIMS ARE BARRED BY LACHES.

The Court also should reject Ceglia's claims on the pleadings under the doctrine of laches.  Laches "is an equitable defense that 'bars a plaintiff's equitable claim where he is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant.'"  *Allens*

*Creek/Corbetts Glen Pres. Grp., Inc. v. Caldera*, 88 F. Supp. 2d 77, 82 (W.D.N.Y. 2000)

(quoting *Ikelionwu v. United States*, 150 F.3d 233, 237 (2d Cir. 1998)).

> [T]he underlying value of the laches doctrine, as with statutes of limitations, is that of repose.  Even assuming that [the plaintiff's] claims are meritorious, the availability of the laches defense represents a conclusion that the societal interest in a correct decision can be outweighed by the disruption its tardy filing would cause.  Thus, courts, parties and witnesses "ought to be relieved of the burden of trying stale claims when a plaintiff has slept on his rights."

*Id.* at 86 (quoting *Stone v. Williams*, 873 F.2d 620, 626 (2d Cir. 1989), *vacated on other grounds*, 891 F.2d 401 (2d Cir. 1989)).

While laches and limitations periods serve the same vital interests, they are independent barriers to stale claims.  Laches can bar a claim "<u>even though the limitations period was met</u>." *Saratoga County Chamber of Commerce v. Pataki*, 798 N.E.2d 1047, 1055 (N.Y. 2003) (emphasis added).  That is true both in actions seeking equitable or declaratory relief, *id.*, and in suits seeking damages.  *See, e.g.*, *Town of Huntington v. County of Suffolk*, 910 N.Y.S.2d 454, 461 (App. Div. 2010); *Morris v. Monit Mgmt., Ltd.*, 635 N.Y.S.2d 845, 847 (App. Div. 1995).

"A party asserting the defense of laches must establish that: (1) plaintiffs knew of defendants' misconduct; (2) plaintiffs inexcusably delayed in taking action; and (3) defendants were prejudiced by the delay." *Allens Creek*, 88 F. Supp. 2d at 82.[3]  The delay need not be lengthy.  "Because the effect of delay on the adverse party may be crucial, delays of <u>even under a year</u> have been held sufficient to establish laches." *Schulz v. New York*, 615 N.E.2d 953, 957 (N.Y. 1993) (emphasis added); *see also Allens Creek*, 88 F. Supp. 2d at 81 (eight-month delay); *Bailey v. Chernoff*, 846 N.Y.S.2d 462, 464–65 (App. Div. 2007) (approximately one year).

---

[3] Although some courts have framed the elements of laches in slightly different terms, in substance all require the same showing of an unreasonable, prejudicial delay. *See, e.g.*, *Skrodelis v. Norbergs*, 707 N.Y.S.2d 197, 198 (App. Div. 2000).

Although in some cases laches cannot be resolved on the pleadings where the reasonableness and prejudicial effect of a plaintiff's delay depend on facts outside the pleadings, courts <u>do</u> grant judgment on the pleadings "where it is clear on the face of the Complaint that the plaintiff <u>can prove no set of facts to avoid the insuperable bar</u>." *LinkCo*, 615 F. Supp. 2d at 142 (internal quotation marks omitted, emphasis added). That is, if the complaint itself (or facts subject to judicial notice) forecloses any plausible explanation for the delay, and if the complaint and public records show that the delay will prejudice the defendant, courts have held that the plaintiff's claims are barred. In *LinkCo*, for example, the plaintiff claimed that the defendants had committed fraud in an earlier action before the district court that ended in 2003. 615 F. Supp. 2d at 132. The district court dismissed the complaint on laches grounds because the plaintiff had acquired all the information it needed to assert its fraud claims by 2005, but inexplicably "decided instead to wait another three years" before it brought suit in 2008. *Id.* at 142. The court explained that it was clear from the plaintiff's complaint that its delay was "inexcusable" and would be "greatly prejudicial" to the defendants. *Id.* Similarly, in *Solow Building Co. v. Nine West Group*, No. 00-7685, 2001 WL 736794 (S.D.N.Y. June 29, 2001), the district court dismissed the plaintiff's trademark claims on laches grounds because the plaintiff's allegations showed that it knew of the defendants' use of its trademark for years, yet took no action. *Id.* at *3–6. The court held that the delay was prejudicial because the defendants had, in the meantime, "expand[ed] their business activities." *Id.* at *6; *see also, e.g.*, *Willets Point Indus. & Realty Ass'n v. City of New York*, No. 08-1453, 2009 WL 4282017, at *11–12 (E.D.N.Y. Nov. 25, 2009) (dismissing request for injunctive relief on laches grounds).

The same result is required here. Ceglia's own allegations and facts subject to judicial notice establish that he had the critical information within his grasp for years, yet he inexplicably

delayed in bringing his suit, to the detriment of Defendants and others.  Ceglia has not offered —

and cannot offer — any legitimate justification for this highly prejudicial delay.

> **A.      Ceglia Was Aware For Years Of The Facts Underlying His Claims,**
> **Yet He Inexcusably Delayed In Filing This Lawsuit.**

Ceglia's allegations leave no doubt that he has known for years of the facts underlying

his suit.  He has been aware since 2003 of the alleged agreement on which his claims are based.

*Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) (party is "conclusively

presumed" to know the contents of its own contract).  He alleges that he drafted the Work for

Hire Document himself and then traveled more than 400 miles to have Zuckerberg review and

sign it.  Am. Compl. ¶¶ 21–22.  He also alleges that, after they signed the Work for Hire

Document, he and Zuckerberg engaged in an intense, months-long period of collaboration on the

"The Face Book" project that included the exchange of heated, often emotional emails.  *Id.*

¶¶ 31–55.  And Ceglia has long known that Zuckerberg has not honored his alleged promise to

give Ceglia his share of the business.  Indeed, Ceglia previously claimed (in his original, verified

Complaint) that Zuckerberg breached his contractual duty to give Ceglia an ownership interest

from the date the Work for Hire Document was allegedly signed in 2003.  Compl. ¶ 11.

Ceglia's pleadings do not explain why he waited so long to pursue his rights.  Nor can he

offer any plausible or reasonable excuse to save his stale claims.  There is no suggestion, for

example, that any "ongoing settlement negotiations" or genuine "personal disability" stood in his

way.  *Allens Creek*, 88 F. Supp. 2d at 86.  Ceglia also cannot claim "justified ignorance" (*id.*)

based on alleged concealment by Zuckerberg.  Ceglia's own allegations show that he did not

trust Zuckerberg, and that he purportedly accused Zuckerberg of stealing computer code and

sabotaging the StreetFax project.  Am. Compl. ¶¶ 52–53.  That gave Ceglia ample reason to

investigate further when Zuckerberg supposedly told him between April and June 2004 that he

had given up on Facebook.  Doing so would not have been difficult:  Ceglia could have learned

that the Facebook website was still in operation through a simple search — not to mention the

widespread media coverage of Facebook and its expansion to universities across the county.

Even if Ceglia could explain away his ostrich-like approach in 2004, nothing in the

Amended Complaint — nor any new facts he could plausibly allege — could excuse his utter

failure to pursue his rights in the ensuing six years.  Fewer than six months after Ceglia's last

alleged contact with Zuckerberg, Facebook had grown to one million users — a phenomenon

quite unlikely to escape notice by a supposedly experienced Internet businessman like Ceglia.

Am. Compl. ¶¶ 13–15.  In the five years that followed, Facebook's active membership expanded

exponentially, reaching 360 million users by the end of December 2009 (Facebook Registration

Statement at 46), and its rapid expansion was widely reported in the media.  It is entirely

implausible to believe that Ceglia was unaware during those years that Facebook was thriving.

Seeing any of the thousands of news articles that mentioned Facebook would have alerted him

that Zuckerberg had not abandoned the project and had not honored his alleged obligation to give

Ceglia half of his interest in the business, and should have prompted Ceglia to pursue his rights.[4]

The only explanation Ceglia has provided so far — that he simply "forgot" about the

contract supposedly giving him a ground-floor stake in a multibillion-dollar business — is

insufficient as a matter of law to excuse his six-year delay.[5]  *See Chesapeake Operating, Inc. v.*

---

[4]  Westlaw's "All News" database contains 22,207 items with "Facebook" in the headline
published between July 22, 2004 and June 30, 2010 — including 684 newspaper articles in New
York alone — and another 219,817 news items that otherwise mention "Facebook" by name.

[5]  *See* Bob Van Voris, *Facebook Would-Be Owner Says He Owes His Claim To Arrest*,
Bloomberg.com, Aug. 2, 2010, http://www.bloomberg.com/news/2010-08-02/facebook-would-
be-owner-says-he-owes-claim-to-arrest-andrew-cuomo-lawsuit.html (reporting Ceglia's

[Footnote continued on next page]

*Carl E. Gungoll Exploration, Inc.*, 116 P.3d 213, 216 (Okla. App. 2005) (holding that laches

barred claim to enforce contract, as plaintiff's excuse that it "forgot" about the contract was

insufficient to explain its delay of five and a half years in asserting its claims).  It is also factually

implausible in light of Ceglia's other allegations.  The alleged agreement surely had not slipped

Ceglia's mind, for example, in the months after it was executed.  To the contrary, according to

Ceglia's own account, he corresponded regularly — and heatedly — with Zuckerberg about the

project for more than a year after the contract was signed.  Am. Compl. ¶¶ 31–55.  And had

Ceglia truly forgotten about his investment in the years that followed, seeing just one of the

thousands of news reports on Facebook's extraordinary success would have jogged his memory.

    In short, Ceglia does not and cannot dispute that he has known for years the key facts

giving rise to his claims.  And no explanation he could offer — consistent with the allegations in

his Amended Complaint, or with common sense — could excuse his inordinate and unreasonable

delay in pursuing his rights.  Like the claimants in *LinkCo* — who learned all they needed to

know to bring claims of fraud, yet inexplicably sat on their rights for years, 615 F. Supp. 2d at

142 — Ceglia had all the alleged facts at his fingertips long before he filed his original

Complaint in June 2010.  As in *LinkCo*, Ceglia's delay is "inexcusable" as a matter of law.  *Id.*

**B.    Allowing This Lawsuit To Proceed Would Prejudice Defendants And Facebook's Employees, Investors, And Users.**

    Permitting Ceglia to pursue his stale claims would work immediate and substantial

prejudice to Defendants, as well as Facebook's many employees, investors, and users.  It would

also harm the public interest generally.

---

[Footnote continued from previous page]
explanation that he "forgot" about the contract and only rediscovered it while looking through
his papers after being arrested for fraud).

A defendant's burden in proving prejudice is not demanding.  Courts have repeatedly held that, where, as here, "there is no excuse for delay . . . defendants need show little prejudice" to prevail.  *Willets Point Indus. & Realty Ass'n*, 2009 WL 4282017, at *12; *see, e.g.*, *Harley-Davidson, Inc. v. O'Connell*, 13 F. Supp. 2d 271, 283–84 (N.D.N.Y. 1998).  As shown above, Ceglia does not and cannot offer any excuse for his six years of silence.

But even if Defendants had to satisfy a more rigorous standard, it would be easily met in this case.  **First**, permitting Ceglia to pursue his untimely claims would prejudice Zuckerberg and Facebook.  The New York Court of Appeals has "recognized that harm to economic interests can be enough to bar an action on laches grounds, even if the delay does not affect a defendant's ability to defend against a suit."  *Saratoga County*, 798 N.E.2d at 1056; *Solow Bldg. Co.*, 2001 WL 736794, at *6 (finding prejudice when defendants "expand[ed] their business activities" while plaintiff delayed); *Stambler v. Diebold, Inc.*, 1988 WL 95479, at *4 (E.D.N.Y. Sept. 2, 1988) (finding prejudice based on defendant's investments during plaintiff's delay).

Here, in the more than six years that Ceglia slept on his rights, Facebook grew from a mere concept to a multibillion-dollar company with users throughout the world.  Zuckerberg has devoted his professional life to building Facebook into the company that it is today.  Ceglia's attempt to wrest away much of Zuckerberg's share in the business after more than six years of utter (and inexplicable) silence would work extreme and unfair prejudice to Zuckerberg.

The harm would further extend to Facebook, a company that has attracted thousands of employees and billions of dollars in investments based on Zuckerberg's expertise and vision. The settled, investment-backed expectations of Facebook's numerous employees and stakeholders could be massively disrupted and destabilized were a substantial share of the company's ownership abruptly transferred to Ceglia.  In *Schulz*, a case involving a constitutional

challenge to state-issued bonds, the New York Court of Appeals emphasized "the great prejudice certain to be inflicted" on the defendant "when financial transactions of such magnitude and destabilizing impact are at stake and may be upset."  615 N.E.2d at 958.  The court explained that in such a case "[t]ime must be of the essence," and it held that the plaintiff — who had delayed less than a year — had waited too long, and his claims were barred by laches.  *Id*.

Here, given the substantial investments of time and money in Facebook by Zuckerberg and others over the past six years, it is far too late in the day for Ceglia to emerge from the woodwork and claim that an enormous share should be turned over to him.  As Judge Hand wrote long ago when serving as a district court judge, the law does not permit a plaintiff "to stand inactive while the [defendant] spends large sums of money [on the business], and to intervene only when his speculation has proved a success.  Delay under such circumstances allows the owner to speculate without risk with the other's money; he cannot possibly lose, and he may win."  *Haas v. Leo Feist, Inc.*, 234 F. 105, 108 (S.D.N.Y. 1916).

**Second**, allowing this lawsuit to proceed would prejudice the hundreds of millions of Facebook users throughout the world.  The Second Circuit has emphasized that "the public good is of paramount importance when considering the equitable defense of laches" and that determining whether laches is warranted requires "an appraisal of the public interest."  *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 193 (2d Cir. 1996) (internal quotation marks omitted).  Here, Ceglia seeks a substantial stake in the world's most prominent social networking website — a site that is part of the daily fabric of life for hundreds of millions of people and businesses.  It should go without saying that handing an enormous share of Facebook to Ceglia — who has contributed nothing of value to the company — is not in the public interest.  To the contrary, the

public good is best served by eliminating incentives for opportunistic plaintiffs to call into question the ownership of large companies based on alleged agreements from the distant past.

**Third**, Ceglia's delay has prejudiced Defendants' ability to contest this lawsuit.  *See Eppendorf-Netheler-Hinz GmbH v. Enterton Co.*, 89 F. Supp. 2d 483, 487 (S.D.N.Y. 2000) (recognizing prejudice from unavailable witnesses, "fading memories [and] stale evidence").  In 2003 and 2004, when the Work for Hire Document was allegedly signed and Ceglia's and Zuckerberg's alleged "email" correspondence occurred, Zuckerberg was a 20-year-old college student using a Harvard-issued email address.  In the past six years, Zuckerberg has moved many times and used many different hard drives, mailing addresses, and email accounts. Ceglia's delay has thus made it far more difficult for Defendants to recover the evidence necessary to defend this case.  *See In re Linker*, 803 N.Y.S.2d 534, 538 (App. Div. 2005) (finding prejudice where critical records were no longer available due to plaintiff's delay).  Moreover, the lengthy six-year delay necessarily means that some witnesses' memories have faded.  Indeed, as Ceglia's public pronouncements and shifting allegations show, his own recollection of events has become increasingly unreliable.  And other key witnesses may no longer be available at all.

Put simply, allowing Ceglia to assert his claims today would be exceedingly unjust to everyone involved, whose investment-backed expectations could be cast into doubt years after the fact, and whose ability to refute Ceglia's spurious allegations would be unfairly impaired by his unexplained and indefensible delay.  Equity demands that this suit be stopped in its tracks.

## CONCLUSION

This Court should grant judgment on the pleadings for Defendants and dismiss Ceglia's

complaint with prejudice.

Dated:        New York, New York
              March 26, 2012


                                              Respectfully submitted,

                                              /s/ Orin Snyder
Thomas H. Dupree, Jr.                         Orin Snyder
GIBSON, DUNN & CRUTCHER LLP                   Alexander H. Southwell
1050 Connecticut Avenue, NW                   Matthew J. Benjamin
Washington, DC 20036                          Amanda M. Aycock
(202) 955-8500                                GIBSON, DUNN & CRUTCHER LLP
                                              200 Park Avenue, 47th Floor
                                              New York, NY 10166-0193
Terrance P. Flynn                             (212) 351-4000
HARRIS BEACH PLLC
726 Exchange Street
Suite 1000
Buffalo, NY 14210
(716) 200-5120


*Attorneys for Defendants Mark Zuckerberg and Facebook, Inc.*