# EXHIBIT O



**US DATA BASICS, INC.**
3075 TRUAX RD.
WELLSVILLE, NY 14895

50-278/223
0001292069

1815

DATE 08/04/03

PAY TO THE ORDER OF Mark Zuckerberg | $5,000.00

Five thousand and 00/100 DOLLARS

STEUBEN TRUST COMPANY
Wellsville Office
475 N Highland Ave.
P.O. Box 664
Wellsville, NY 14895-0664

MEMO

⑈:0 2230 2786⑈ 1815 ⑈'0000500000'

Date:08/21/2003 Account:1292069 Amount:$5,000.00 Serial:1815 Transit\Routing:22302786

FLEET (3/21/03 )P CNTR3 011)

# EXHIBIT P

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

------------------------------------- X

PAUL D. CEGLIA, an individual,                 :

            Plaintiff,                 :

    -against-                 :     CIVIL ACTION NO. 10-569(RJA)

MARK ELLIOTT ZUCKERBERG, an           :     **RESPONSES TO THE**
individual, and FACEBOOK, INC., formerly          **INTERROGATORIES OF**
known as TheFaceBook, Inc., a Delaware     :     **VALERY N. AGINSKY, PH.D.**
corporation,

          Defendants.                 :

                              :

------------------------------------- X

I, Valery N. Aginsky, Ph.D., state as follows:

**RESPONSES TO THE INTERROGATORIES**

**INTERROGATORY NO. 1:**

*Identify the date on which YOU were first contacted by PLAINTIFF regarding YOUR potential retention as an expert in this matter and the date on which YOU were retained by PLAINTIFF as an expert in this matter.*

**Answer:**

I was first contacted by PLAINTIFF on November 24, 2010 and I was retained as an expert in this matter on January 13, 2011.

**INTERROGATORY NO. 2:**

*State whether it is true that as of October 24, 2011, you were "unable to respond" to PLAINTIFF with regard to this matter. If so, describe the circumstances under which you were unable to respond.*

1

**Answer:**

It is true.  I had notified PLAINTIFF that I would resume providing professional services with regard to this matter only after my invoice, dated August 31, 2011 (the outstanding balance for the time I spent working on this case from January 13, 2011 to August 13, 2011), is paid.  As of October 24, 2011, I had not received the payment on the invoice.

**INTERROGATORY NO. 3:**

*Identify each QUESTIONED DOCUMENT YOU EXAMINED.  For each QUESTIONED DOCUMENT, identify the date or dates of all occasions when YOU EXAMINED the QUESTIONED DOCUMENT.  For each occasion on which YOU EXAMINED each QUESTIONED DOCUMENT, describe separately for each occasion and each QUESTIONED DOCUMENT:*

*(A) the person or persons who provided YOU with each QUESTIONED DOCUMENT in connection with this matter;*

**Answer:**

Mr. Paul Argentieri.

*(B) the approximate time on each date that you received each QUESTIONED DOCUMENT;*

**Answer:**

Approximately 9 a.m. on January 13, 2011.

*(C) the manner in which YOU received the purported original of each QUESTIONED DOCUMENT (e.g., Federal Express, hand delivery);*

2

**Answer:**

Hand delivery.

*(D) the location where YOU EXAMINED each QUESTIONED DOCUMENT in connection with this matter, including the specific address and description of the location;*

**Answer:**

The examination was conducted at my laboratory (AGINSKY FORENSIC DOCUMENT DATING LABORATORY, INC.) located at 6280 Heathfield Drive, East Lansing, Michigan 48823.

*(E) the manner in which each QUESTIONED DOCUMENT was packaged or stored at the time of YOUR receipt and EXAMINATION of that document;*

**Answer:**

The document (a two-page "Work For Hire" Contract between Paul Ceglia, StreetFax LLC and Mark Zuckerberg dated April 28, 2003) was handed to me by Mr. Argentieri at approximately 9 a.m. on January 13, 2011.

*(F) the manner in which each QUESTIONED DOCUMENT was packaged or stored after YOUR EXAMINATION;*

**Answer:**

After my examination, I handed the document back to Mr. Argentieri.

*(G) the manner in which each QUESTIONED DOCUMENT was transferred after YOUR EXAMINATION;*

**Answer:**

After my examination, I handed the document back to Mr. Argentieri.

*(H) the person to whom YOU transferred each QUESTIONED DOCUMENT after*

*YOUR EXAMINATION; and*

**Answer:**

Mr. Argentieri.

*(I) the date and time on which YOU transferred possession of each QUESTIONED*

*DOCUMENT.*

**Answer:**

Approximately 3 p.m. on January 13, 2011.

**INTERROGATORY NO. 4:**

*For each EXAMINATION of each QUESTIONED DOCUMENT YOU conducted:*

*(A) Identify all scans, photographs, and/or other images YOU took of any*

*QUESTIONED DOCUMENT or any portion thereof;*

**Answer:**

I have scanned the fronts and backs of both pages of the document, as well as a

portion of page 1 bearing a handwritten notation and two initials and a portion of page 2

bearing two signatures and dates.  Then I took thirteen (13) images of portions of the

document using a video spectral comparator.  Also, I took seven (7) images of portions of

the document using a digital camera, twenty four (24) microphotographs of portions of

the document using a digital microscope, and eleven (11) microphotographs of portions

of the document using another digital microscope.

*(B) Describe the circumstances and manner in which YOU took each scan,*

*photograph, and/or other image of a QUESTIONED DOCUMENT or any portion*

*thereof, including the date and time it was taken and the equipment used;*

4

**Answer:**

The document was scanned using a Canon CanoScan LiDE200 scanner (with an Adobe Photoshop Elements 6 software) during time period of 9:55 a.m. - 10:14 a.m. on January 13, 2011.

The thirteen (13) images of portions of the document were taken during a time period of 11:12 a.m. - 11:38 a.m. on January 13, 2011 using a Foster & Freeman VSC-4c video spectral comparator.

The seven (7) images of portions of the document were taken during a time period of 11:41 a.m. - 11:46 a.m. on January 13, 2011 using a Canon digital camera.

The twenty four (24) microphotographs of portions of the document were taken during a time period of 11:55 a.m. - 12:29 p.m. on January 13, 2011 using a Zarbeco MiScope-2MP digital microscope.

The eleven (11) microphotographs of portions of the document were taken during a time period of 1:00 p.m. - 1:51 p.m. on January 13, 2011 using a Dino-Lite digital microscope.

The circumstances and manner in which I took each scan and photograph were a) typical for a non-destructive examination of documents that I have been conducting routinely for about 28 years and b) in accordance with the recommendations outlined in the American Society for Testing and Materials (ASTM) International Standard Guide E1422-05.[1]

*(C) Describe whether YOU exposed the QUESTIONED DOCUMENT to ultra-*

---

[1] ASTM Standard Guide E1422-05, "Standard Guide for Test Methods for Forensic Writing Ink Comparison." Published January 2006. Originally approved in 1991. Last previous edition approved in 2001 as E 1422-01.

*violet, infrared, or other light sources, and, if so, describe the type and model of*

*equipment used, the strength of source used, and length of exposure to each source;*

**Answer:**

I examined the optical responses of the paper, toner and ink under incident

shortwave (254 nm) and longwave (365 nm) UV illumination using a Chromato-Vue

Cabinet CC-10 with a UVGL-58 254/365nm UV lamp (115V, 0.16 amps).  The total

exposure of the document to the UV light (254 nm and 365 nm) was about one minute.

Also, I examined the infrared (IR) absorption and IR luminescence (IRL)

characteristics of the paper, toner and ink using the VSC-4c with a flood light filament

lamp (12V, 10W) and a quartz halogen filament lamp (a 12V/100W high intensity spot

lamp with integral reflector).  Besides, the fluorescence of the paper was examined using

both incident and transmitted longwave (365 nm) UV light (4W and 8W low pressure

mercury Vapor Discharge Tubes).  The total exposure of the document to the UV, visible

and infrared light when using the VSC-4c was about 27 minutes.

*(D) Describe whether YOU applied any chemical to the QUESTIONED*

*DOCUMENT and, if so, describe the application, including what YOU applied, how, and*

*for how long; and*

**Answer:**

I have not applied any chemical to the questioned document.

*(E) Describe whether YOU applied any heat to the QUESTIONED DOCUMENT*

*and, if so, describe the application, including what YOU applied, how, and for how long.*

**Answer:**

Except for heat generated by the lamps when the document was being examined

using the UVGL-58 254/365nm UV lamp and the VSC-4c, I have not applied any heat to the questioned document.

**INTERROGATORY NO. 5:**

*State whether the image attached hereto as Exhibit A accurately represents the condition of the purported original of the purported "Work for Hire" Contract provided by PLAINTIFF throughout YOUR EXAMINATION(S) of that QUESTIONED DOCUMENT. If the condition varied throughout YOUR EXAMINATION(S), describe completely how the condition varied.*

**Answer:**

The image (your Exhibit A) accurately represents the condition of the document (the two-page "Work For Hire" Contract between Paul Ceglia, StreetFax LLC and Mark Zuckerberg dated April 28, 2003) that I examined on January 13, 2011. The condition of the document did not vary through my examination of the document on January 13, 2011.

**INTERROGATORY NO. 6:**

*State whether the ink in each location on the CONTRACT that YOU EXAMINED, including the interlineation, initials, signatures, and dates, appeared black when YOU observed it during YOUR EXAMINATION(S) of that QUESTIONED DOCUMENT. If the appearance of the ink varied throughout YOUR EXAMINATION(S), describe completely how the appearance varied.*

**Answer:**

The ballpoint ink used to produce the interlineation, initials, signatures, and dates, appeared black when I observed it during my examination of the document on January 13, 2011. The appearance of the ink did not vary through my examination of the

7

document.

**INTERROGATORY NO. 7:**

*State whether the image attached hereto as Exhibit B reflects the condition of the purported "Work for Hire" Contract at any point during YOUR EXAMINATION(S) in this matter, and if so, when.*

**Answer:**

The image (your Exhibit B) does not reflect the condition of the document (the two-page "Work For Hire" Contract between Paul Ceglia, StreetFax LLC and Mark Zuckerberg dated April 28, 2003) that I examined on January 13, 2011.

**INTERROGATORY NO. 8:**

*State whether YOU ever observed yellowed, browned, or faded ink on any portion of the purported original of the "Work for Hire" Contract or any QUESTIONED DOCUMENT provided by PLAINTIFF.*

**Answer:**

I did not observe yellowed, browned, or faded ink on any portion of the document (the two-page "Work For Hire" Contract between Paul Ceglia, StreetFax LLC and Mark Zuckerberg dated April 28, 2003) that I examined on January 13, 2011.  Except for this document, no other documents have been provided to me by PLAINTIFF.

**INTERROGATORY NO. 9:**

*Confirm that YOU have produced directly to counsel for Defendants all electronic versions or purported versions of any CONTRACT, including any electronic copies, images, or scans of any complete CONTRACT or any part thereof.*

**Answer:**

Except for the above thirteen (13) images of portions of the document that were taken using the Foster & Freeman VSC-4c video spectral comparator, I have produced directly to counsel for Defendants all scans and images of the document (the two-page "Work For Hire" Contract between Paul Ceglia, StreetFax LLC and Mark Zuckerberg dated April 28, 2003) that I had made.

**INTERROGATORY NO. 10:**

*State whether YOU were provided or obtained any scans, photographs, other images, and/or other data or results from any other expert in this matter. If so, state when and from whom.*

**Answer:**

On July 25, 2011, I was emailed five (5) images (pdf copies) of portions of the document that had been taken by Mr. Gerry LaPorte using a Foster & Freeman video spectral comparator. Apart from these five images, I have not been provided or obtained any scans, photographs, other images, and/or other data or results from any other expert in this matter.

I declare under the penalty of perjury that the foregoing is true and correct. Executed in East Lansing, Michigan on December 2, 2011.

_____
Valery N. Aginsky, Ph.D.

9

# EXHIBIT Q

L040000 28443

P.01

# Florida Department of State

### Division of Corporations
### Public Access System

## Electronic Filing Cover Sheet

**Note: Please print this page and use it as a cover sheet.** Type the fax audit number (shown below) on the top and bottom of all pages of the document.

## (((H04000077355 3)))

**Note:** DO NOT hit the REFRESH/RELOAD button on your browser from this page. Doing so will generate another cover sheet.

```
To:
        Division of Corporations
        Fax Number      : (850)205-0383

From:
        Account Name    : BUSINESS FILINGS
        Account Number  : 105256001620
        Phone           : (608)827-5300
        Fax Number      : (608)827-5501
```

2004 APR 13  A 4: 5
SECRETARY OF STATE
TALLAHASSEE, FLORIDA

FILED

## LIMITED LIABILITY COMPANY

### thefacebook LLC

| Certificate of Status | 0 |
|---|---|
| Certified Copy | 1 |
| Page Count | 03 |
| Estimated Charge | $155.00 |

Name
availability

Document
Examiner

[x] Electronic Filing Main Menu          [x]          [x] Public Access Help

DCC

Document Argument     DCC

W. P. Verifyer        DCC

APR-13-2004   09:09                                                        P.02

**FAX AUDIT # H04000077355 3**

## ARTICLES OF ORGANIZATION
## OF
### thefacebook LLC

**ARTICLE I**          **NAME**

The name of the limited liability company shall be: **thefacebook LLC**

**ARTICLE II**          **PRINCIPAL OFFICE**

The principal place of business and mailing address of this Limited Liability Company
shall be: 13621 Deering Bay Dr., Apt. 402, Coral Gables, Florida  33158.

**ARTICLE III**          **INITIAL REGISTERED AGENT & STREET ADDRESS**

The name and address of the initial registered agent is: Business Filings Incorporated,
660 East Jefferson Street, Tallahassee, Florida  32301.  Located in the County of Leon

**ARTICLE IV**          **DURATION**

The duration for the limited liability company shall be: 12/31/2044.

**ARTICLE V**          **MANAGERS/MEMBERS**

The management of the limited liability company is reserved for the Members and the
names and addresses of the members of the Limited Liability Company are:

Mark Zuckerberg, 2 Russell Place, Dobbs Ferry, Massachusetts  10522
Eduardo Saverin, 13621 Deering Bay Dr., Apt. 402, Coral Gables, Florida  33158
Dustin Moskovitz, 6135 S.W. 21st Ave. Rd., Ocala, Florida  34474

Business Filings Incorporated, Organizer
Mark Schiff, AVP
Authorized Representative
Prepared by Mark Schiff, Business Filings Incorporated
8025 Excelsior Dr., Suite 200, Madison, WI  53717
(608) 827-5300

**FAX AUDIT # H04000077355 3**

**FAX AUDIT # H04000077355 3**

CERTIFICATE OF DESIGNATION OF REGISTERED
AGENT/REGISTERED OFFICE

PURSUANT TO THE PROVISIONS OF SECTION 608.415, FLORIDA STATUTES,
THE UNDERSIGNED COMPANY, ORGANIZED UNDER THE LAWS OF THE
STATE OF FLORIDA, SUBMITS THE FOLLOWING STATEMENT IN
DESIGNATING THE REGISTERED OFFICE/REGISTERED AGENT, IN THE
STATE OF FLORIDA.

The name of the limited liability company is: **thefacebook LLC**

The name and address of the registered agent and office is Business Filings Incorporated,
660 East Jefferson Street, Tallahassee, Florida 32301.  Located in the County of Leon.

Having been named as registered agent and to accept service of process for the above
stated company at the place designated in this certificate, I hereby accept the appointment
as registered agent and agree to act in this capacity.  I further agree to comply with the
provisions of all statutes relating to the proper and complete performance of my duties,
and I am familiar with and accept the obligations of my position as registered agent.

Signature: _____                    Date: April 12, 2004
           Mark Schiff, AVP
           Business Filings Incorporated

**FAX AUDIT # H04000077355 3**

# EXHIBIT R

L040000 28443

---

(Requestor's Name)

(Address)

(Address)

(City/State/Zip/Phone #)

☐ PICK-UP    ☐ WAIT    ☐ MAIL

(Business Entity Name)

(Document Number)

Certified Copies _____    Certificates of Status _____

Special Instructions to Filing Officer:



Office Use Only



100053485101

FILED
05 MAY -2 PM 5: 18
SECRETARY OF STATE
TALLAHASSEE, FLORIDA



RECEIVED
05 MAY -2 PM 4: 14
DEPARTMENT OF STATE
DIVISION OF CORPORATIONS
TALLAHASSEE, FLORIDA



**CORPORATION SERVICE COMPANY**

ACCOUNT NO.  :  072100000032

REFERENCE  :  348502    7124655

AUTHORIZATION  :  *Patricia Pinto*

COST LIMIT  :  $ 25.00

FILED 05 MAY -2 PM 5:18 SECRETARY OF STATE TALLAHASSEE. FLORIDA

------------------------------------------------------------

ORDER DATE :  May 2, 2005

ORDER TIME :  3:42 PM

ORDER NO.  :  348502-005

CUSTOMER NO:   7124655

CUSTOMER:   Jennifer Mar
            Orrick, Herrington &
            1020 Marsh Road

            Menlo Park, CA  94025

------------------------------------------------------------

### DOMESTIC AMENDMENT FILING


        NAME:    THEFACEBOOK LLC


    EFFECTIVE DATE:


XX___   ARTICLES OF AMENDMENT
_____   RESTATED ARTICLES OF INCORPORATION


PLEASE RETURN THE FOLLOWING AS PROOF OF FILING:

_____   CERTIFIED COPY
XX_____   PLAIN STAMPED COPY
_____   CERTIFICATE OF GOOD STANDING


CONTACT PERSON:  Amanda Haddan -- EXT# 2955
                 EXAMINER'S INITIALS:  _____

# AMENDED AND RESTATED ARTICLES OF ORGANIZATION
## OF
### thefacebook LLC

The undersigned, Mark Zuckerberg, hereby certifies that:

1. He is the duly authorized representative of thefacebook LLC.

2. The Articles of Organization of this limited liability company were originally filed with the Secretary of State of Florida on April 13, 2004.

3. These Amended and Restated Articles of Organization were duly executed and are being filed in accordance with Section 608.411 of the Florida Limited Liability Company Act.

4. The Articles of Organization of this limited liability company shall be amended and restated to read in full as follows:


**ARTICLE I**               **NAME**

The name of the limited liability company shall be:  **thefacebook LLC**

**ARTICLE II**               **PRINCIPAL OFFICE**

The principal place of business and mailing address of this Limited Liability Company shall be: 13621 Deering Bay Dr., Apt. 402, Coral Gables, Florida 33158.

**ARTICLE III**               **REGISTERED AGENT & STREET ADDRESS**

The name and address of the registered agent is:   Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301-2607.

**ARTICLE IV**               **DURATION**

The duration for the limited liability company shall be:  12/31/2044.

**ARTICLE V**               **MANAGERS/MEMBERS**

The management of the limited liability company is reserved for the Members and the name and address of the sole member of the Limited Liability Company is:

TheFacebook, Inc, 471 Emerson St., Palo Alto, CA  94036


_____
Mark Zuckerberg, Authorized Representative

DOCSSV1:403879.5

## CERTIFICATE OF DESIGNATION OF REGISTERED
## AGENT/REGISTERED OFFICE

PURSUANT TO THE PROVISIONS OF SECTION 608.415, FLORIDA STATUTES, THE UNDERSIGNED COMPANY, ORGANIZED UNDER THE LAWS OF THE STATE OF FLORIDA, SUBMITS THE FOLLOWING STATEMENT IN DESIGNATING THE REGISTERED OFFICE/REGISTERED AGENT, IN THE STATE OF FLORIDA.

The name of the limited liability company is:   **thefacebook LLC**

The name and address of the registered agent and office is: Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301-2607.

Having been named as registered agent and to accept service of process for the above stated company at the place designated in this certificate, I hereby accept the appointment as registered agent and agree to act in this capacity. I further agree to comply with the provisions of all statutes relating to the proper and complete performance of my duties, and I am familiar with and accept the obligations of my position as registered agent.

Signature: *Deborah D. Skipper*          Date: April 27, 2005

**Deborah D. Skipper**
**Asst. V. Pres.**

DOCSSV1:403879.5

# ACTION BY WRITTEN CONSENT OF THE

## SOLE MEMBER AND SOLE MANAGER OF

### thefacebook, LLC

#### Effective April 27, 2005

The undersigned, being the sole Member and Manager of thefacebook LLC (the "Company"), does hereby undertake the actions set forth below by written consent without a meeting, effective for all purposes as of the date first written above.

1.   **Ratification of the Chief Executive Officer.**

**RESOLVED:** That Mark Zuckerberg is hereby appointed and is ratified Chief Executive Officer of the Company to serve at the pleasure of the Manager.

**RESOLVED FURTHER:** That all prior acts by Mark Zuckerberg taken in connection with his duties as an officer of the Company are hereby ratified and approved.

**RESOLVED FURTHER:** That Mark Zuckerberg is authorized to sign and deliver any agreement in the name of the Company and to otherwise obligate the Company in any respect relating to matters of the business of the Company, and to delegate such authority in his discretion.

2.   **Amendment and Restatement of the Articles of Organization.**

**WHEREAS:** TheFacebook, Inc. acquired all of the outstanding interests of the Company on October 31, 2004.

**WHEREAS:** The following actions are being taken to reflect such an acquisition of interest by TheFacebook, Inc.

**RESOLVED:** That the Amended and Restated Articles of Organization of the Company in the form attached hereto as Exhibit A (the "Restated Articles"), is hereby adopted and approved.

**RESOLVED FURTHER:** That Mark Zuckerberg is authorized and directed to take all steps necessary to file the Restated Articles with the Secretary of State of Florida.

**RESOLVED FURTHER:** That, notwithstanding approval of the Restated Articles by the Member of the Company, the Manager may, at any time prior to the filing of the Restated Articles with the Secretary of State, abandon the filing of the Restated Articles without further action by the Member of the Company.

3.     **Omnibus Resolution.**

**RESOLVED:**   That each of the officers of the Company is authorized and empowered to take such other actions and sign such other documents as may be necessary or advisable to carry out the intent and accomplish the purposes of the foregoing resolutions.

*[Signature Page Follows]*

-2-

This action by Unanimous Written Consent of the sole Member and Manager of thefacebook LLC is effective as of the date first set forth above.

                                    **SOLE MEMBER AND SOLE MANAGER**

                                    **THEFACEBOOK, INC.**


                                    _____
                                    Mark Zuckerberg
                                    Chief Executive Officer

# EXHIBIT A

**Restated Articles**

# EXHIBIT S

## Nathan Shaman

| | |
|---|---|
| **From:** | Paul Argentieri <paul.argentieri@gmail.com> |
| **Sent:** | Friday, August 26, 2011 12:55 PM |
| **To:** | Nathan Shaman |
| **Subject:** | ███████████████ |
| **Attachments:** | Zuckerberg Contract page1.tif; Zuckerberg Contract page2.tif |

---------- Forwarded message ----------
From: **Paul Ceglia** <paulceglia@gmail.com>
Date: Sun, Jun 27, 2010 at 2:45 PM
Subject: ████████████████
To: Paul Argentieri <paul.argentieri@gmail.com>



--

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to paul.argentieri@gmail.com. Thank you.

# EXHIBIT T

Login to OnePass | Settings | Help    SEARCH

## THOMSON REUTERS NEWS & INSIGHT

THOMSON REUTERS

Featuring content from WESTLAW

# LEGAL

HOME     NEWS     INSIGHT     LEGAL MATERIALS

Alison Frankel's **ON THE CASE**

## Now appearing for Facebook claimant Paul Ceglia: Milberg

3/5/2012          COMMENTS (0)

You have to have either a death wish or serious faith in a former wood pellet salesman from upstate New York to jump into Paul Ceglia's Facebook ownership case at this point.

As we've reported, exhaustively, Ceglia's claim to own half of Mark Zuckerberg's stake in the soon-to-be-public social media behemoth rests on a contested 2003 contract Zuckerberg signed when he worked on some software code for Ceglia as a Harvard undergraduate. Faced with the ruthless defense mounted by Facebook's lawyers at **Gibson, Dunn & Crutcher**, at least four firms - including **DLA Piper** -- have w thdrawn from Ceglia's team. Ceglia himself has been hit with a $5,000 sanct on for discovery failures and is on the hook for tens of thousands of dollars in Gibson, Dunn fees. Gibson, Dunn, moreover, has made it pretty clear that it's scrutinizing Ceglia's lawyers for representing the val dity of a contract Facebook considers an outright fraud.

None of that has dissuaded **Sanford Dumain**, the chairman of **Milberg**. "We took a good hard look at all of the information available, including ev dence in Mr. Ceglia's favor, and we believe he deserves to have his day in court," Dumain said in a statement. "We look forward to examining records from computers that Mr. Zuckerberg used when he was a freshman at Harvard and other records that will help answer questions about the ownership of Facebook. We hope that the court will rule that the time has come for that process to begin."

Through a Milberg spokesman, I sent Dumain questions about Gibson, Dunn's assertion that Ceglia's 2003 contract is a forgery and that the firm has located the original, which makes no mention of Facebook, in an email Ceglia allegedly sent from his parents' computer to **Sidley Austin**. Dumain declined to answer specific quest ons but said in an email response, "We look forward to a vigorous discovery process that will enable us to examine all of the relevant information available."

Dumain will be working with **Dean Boland** of **Boland Legal**, who came aboard for Ceglia in November. Boland has told us that the recent sanction order against Ceglia, which came out of exped ted discovery against Ceglia, clears up issues from before he got into the litigat on. He said that once Ceglia is permitted to obtain discovery from Zuckerberg, the case will look very different. Boland has also questioned why Facebook and Gibson Dunn have not moved to dismiss the case, which was supposed to be the goal of expedited discovery.

Dumain's statement raises the same question. "Defense counsel previously told the court and media that Facebook would move to dismiss this case, so we are pleased that the judge has scheduled a conference to address the deadlines for the commencement and completion of discovery," Dumain's statement said. "It should be up to a jury to weigh the contradictory claims, including evidence that supports Mr. Ceglia's case, such as his e-mail correspondence with Mr. Zuckerberg and experts' testimony about the authenticity of the contract."

Boland told me Monday that Milberg thoroughly vetted the evidence before signing on with Ceglia. "They saw the lack of any experts on Facebook's s de who contradict our experts who have found the contract to be authentic," he said. "As soon as Milberg determined that, they said they were going to join us and bring all their resources to bear."

**Orin Snyder** of Gibson, Dunn declined to comment.

(Reporting by Alison Frankel)

Follow Alison on Twitter: @AlisonFrankel

Follow us on Twitter: @ReutersLegal

**Register or log in** to comment.

© 2011 THOMSON REUTERS

---

Alison Frankel's
## ON THE CASE

**New Oracle shareholder derivative suit is hall of mirrors**
read more »

**Gupta's defense doesn't depend on alternative Goldman tipster**
read more »

**Can takeover target force thwarted acquirer to pay costs?**
read more »

CONTACT US   PRIVACY POLICY   TERMS OF USE   COPYRIGHT   SITE MAP

# EXHIBIT U

**From:** Dean Boland [mailto:dean@bolandlegal.com]
**Sent:** Friday, February 17, 2012 1:29 PM
**To:** Southwell, Alexander; Paul Argentieri
**Subject:** Consent to court order/subpoena to obtain email account information

Alex:

Mr. Ceglia will consent to a subpoena/court order enabling Defendants to have their electronic discovery firm acquire data related to the webmail accounts for which he just recently provided executed consent forms.

Mr. Ceglia had no recollection of these email accounts until they appeared in the most recent production from your electronic discovery firm, hence, his prior declarations are not invalid and we reject your use of the argumentative claim that he "concealed" these email accounts.  Concealment implies he was aware of and had recalled having such accounts and chose not to disclose them when ordered.  Those are not the facts and you are now on notice to withdraw any such claims of concealment as you have no good faith basis to make such a claim.

Mr. Ceglia has, at the least since my entrance into this case, and will continue to, comply with all court orders.

You have failed to respond to my request as to whether you want from him a declaration that is based on other than his personal knowledge regarding the Jason Holmberg issue.  I presume you have given up on pursuing a declaration from him based entirely on hearsay unless I hear otherwise.

As you know, Judge Arcara directed Judge Foschio to initiate regular discovery.  We have timely submitted to you a preservation letter and proposed ESI discovery plan to comply with the Judge's order.  We will comply with the timelines in that order whether Defendants cooperate or not.  The side issues of these lingering non-compliance claims are to be treated as secondary to the standing order of the court regarding those dates of compliance.  While Defendants may want to linger in this netherworld of expanding non-compliance claims, we are preparing to engage in full discovery starting early April and setting a trial date in a reasonable time thereafter.  It's best if we all keep our eye on the ball here realizing we are going to trial, probably within the year.


Dean.


--
Dean Boland
Owner/Member
Boland Legal, LLC
18123 Sloane Avenue
Lakewood, Ohio 44107
216.236.8080 ph
866.455.1267 fax
dean@bolandlegal.com

Please note, I typically only review my emails once daily.  If there is something urgent in any email, please do not hesitate to contact my office at 216-236-8080.

# EXHIBIT V

**From:** Dean Boland [mailto:dean@bolandlegal.com]
**Sent:** Friday, February 17, 2012 10:19 PM
**To:** Southwell, Alexander; Paul Argentieri
**Subject:** Recent letter regarding claimed non-compliance

Alex:

I am working on a response to your complaints about our privilege designations.  I will modify those privilege claims as appropriate following my review of those items and the applicable case law.  I will have this response to you next week.  Following your receipt of that information, I suggest a phone call to resolve any lingering matters more efficiently than the back and forth emails.

I am available most of next week to schedule that call.  Please provide two good dates and times after Wednesday to discuss.  This communication is obviously part of my duty to continue to meet and confer to resolve our issues which we are doing in good faith at this point.

I appreciate the urgency of your demands to get responses to you as it reflects your sincere interest in complying with the court's order about the 16(b) conference and getting prepared for trial.  Now that a trial in this matter is a certainty, it has finally created an environment where we can both pull in the same direction, i.e. reasonable discovery and then a trial.  I don't know what your experience is, but I find it's always good to actually try cases on a regular basis to keep those skills sharp, get out of the office slogging away with paper and such.  Anyhow, please review the proposed ESI protocol and preservation letter and give me a date and time next week you would be available for a call about that.

Have a great weekend.  Talk to you soon.


Dean.

--
Dean Boland
Owner/Member
Boland Legal, LLC
18123 Sloane Avenue
Lakewood, Ohio 44107
216.236.8080 ph
866.455.1267 fax
dean@bolandlegal.com

Please note, I typically only review my emails once daily.  If there is something urgent in any email, please do not hesitate to contact my office at 216-236-8080.

# EXHIBIT W

**From:** Dean Boland [mailto:dean@bolandlegal.com]
**Sent:** Monday, January 09, 2012 9:56 PM
**To:** Southwell, Alexander
**Cc:** Paul Argentieri
**Subject:** RE: Subpoenas to my client's parents


Alex:

I don't represent them.  Paul Ceglia can object to a variety of things.

Where is the motion to dismiss?  We can't wait much longer without moving the court for regular discovery which the court clearly indicated it was favorable to.

I want to give you guys a fair shot to file it given you've undoubtedly promised your clients you would file it and win it.

I think we and the court are trying to help you and Orin out of this little corner you've painted yourself into with the year of fraud dismissal proclamations.

But, we all need to bring this case in for trial soon.  Time is running out.

Let me know if you need anything from us to help you work with your client about the realities here.  I have no reason to think you're not a smart lawyer.  You know how this is going to end at trial.

Dean.

Dean Boland
Owner/Member
Boland Legal, LLC
dean@bolandlegal.com
216.236.8080

On Jan 9, 2012 9:24 PM, "Southwell, Alexander" <ASouthwell@gibsondunn.com> wrote:

Mr. Boland:


Your January 2, 2012 email indicated that with regard to service of the subpoena to Carmine Ceglia, "we are not going to contest that at this time."  Since the only attorney who could contest service of a subpoena on a third-party is one representing that third-party, we reasonably believed you were informing us that you were representing Carmine Ceglia for purposes of the subpoena.  If you are not, we will work directly with Carmine Ceglia although the lack of counsel assisting in the endeavor may delay full compliance with the Court's expedited discovery orders.


Thanks

Alex

**From:** Dean Boland [mailto:dean@bolandlegal.com]
**Sent:** Monday, January 02, 2012 3:09 PM
**To:** Southwell, Alexander; Paul Argentieri
**Subject:** Subpoenas to my client's parents

Alex:

My client's parents had a subpoena from you taped to the door of their residence in New York about a week ago.  However, I have been informed that my client's parents have been out of the country for about a month.  It is further my understanding that they are not due to return until next week.

I don't believe taping to their door is valid service, but we are not going to contest that at this time.  I am just informing you that I fully expect my client's parents will certainly promptly comply with the subpoena upon their return to the country.

Dean.

--
Dean Boland

Owner/Member

Boland Legal, LLC
18123 Sloane Avenue
Lakewood, Ohio 44107
216.236.8080 ph
866.455.1267 fax
dean@bolandlegal.com

Please note, I typically only review my emails once daily.  If there is something urgent in any email, please do not hesitate to contact my office at 216-236-8080.

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.