UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

PAUL D. CEGLIA,

                Plaintiff,

    v.

MARK ELLIOT ZUCKERBERG, and
FACEBOOK, INC.,

                Defendants.

**DECISION
and
ORDER**

10-CV-00569A(F)

---

APPEARANCES:         PAUL A. ARGENTIERI, ESQ.
                                Attorney for Plaintiff
                                188 Main Street
                                Hornell, New York 14843

                                BOLAND LEGAL LLC
                                Attorneys for Plaintiff
                                DEAN M. BOLAND, of Counsel
                                18123 Sloane Avenue
                                Lakewood, Ohio 44107

                                GIBSON, DUNN & CRUTCHER, LLP
                                Attorneys for Defendants
                                ALEXANDER H. SOUTHWELL, and
                                THOMAS H. DUPREE, of Counsel
                                200 Park Avenue, 47th Floor
                                New York, New York 10166-0193

                                HARRIS BEACH LLP
                                Attorneys for Defendants
                                TERRANCE P. FLYNN, of Counsel
                                Larkin at Exchange
                                726 Exchange Street, Suite 1000
                                Buffalo, New York 14210

## **JURISDICTION**

    This case was referred to the undersigned by Honorable Richard J. Arcara on

May 27, 2011 for pretrial matters. The action is presently before the court on

Defendants' Fifth Motion to Compel (Doc. No. 294), filed February 21, 2012.

## **BACKGROUND and FACTS**[1]

The parties to this action dispute the authenticity of a contract ("the contract")[2] allegedly executed between Plaintiff Paul D. Ceglia ("Plaintiff") and Defendant Mark Elliot Zuckerberg ("Zuckerberg"), on April 28, 2003, pursuant to which Plaintiff and Zuckerberg, then a student at Harvard University ("Harvard"), established a partnership for the development and commercialization of two separate internet business ventures, including StreetFax.com ("StreetFax"), an on-line database developed by Plaintiff, and "The Face Book," the social-networking website created and maintained by Zuckerberg, and now known as Defendant Facebook, Inc. ("Facebook"). The putative contract provides that Plaintiff would hire Zuckerberg to perform web programming for StreetFax, and Plaintiff would help fund the development of Facebook in exchange for a one-half interest in Facebook.

On February 21, 2012, Defendants filed Defendants' Fifth Motion to Compel (Doc. No. 294) ("Defendants' motion"), supported by a memorandum of law (Doc. No. 295) ("Defendants' Memorandum"), and the Declaration of Alexander H. Southwell, Esq. (Doc. No. 296) ("Southwell Declaration") with attached exhibits ("Defendants' Exh(s). __"). In their motion, Defendants seek an order directing, *inter alia*, Plaintiff to produce for *in camera* inspection 11 documents as to which Plaintiff asserts either the

---

[1] The Facts are taken from the pleadings and motion papers filed in this action.

[2] A copy of the contract is attached as Exhibit A to the Amended Complaint (Doc. No. 39).

attorney-client privilege or work product doctrine, as well as an order finding none of the documents are privileged and directing their production.  On March 12, 2012, Plaintiff filed his Response in Opposition to Defendants' Fifth Motion to Compel (Doc. No. 310) ("Plaintiff's Response"), in which Plaintiff agreed to produce one of the documents previously withheld, but attaching as Exhibit H "Privilege Designations" in which Plaintiff asserts that the other 10 documents, including Privilege Log[3] Items Nos. 334, 348, 360, 373, 379, 400, 401, 402, 403, and 405, are shielded from disclosure pursuant to the attorney-client privilege, asserts the work product doctrine with regard to Privilege Log items Nos. 360 and 379, and also consented to *in camera* review of the 10 documents.  Plaintiff also filed on March 12, 2012, the Declaration of Paul Argentieri, Esq. (Doc. No. 311) ("Argentieri Declaration"), and the Declaration of Edward Flaitz (Doc. No. 312) ("Flaitz Declaration").  On March 19, 2012, Defendants filed a Reply Memorandum in further support of their motion to compel (Doc. No. 313) ("Defendants' Reply"), the Declaration of Matthew J. Benjamin (Doc. No. 314) ("Benjamin Declaration"), and the Declaration of Bryan J. Rose (Doc. No. 315) ("Rose Declaration").  On March 26, 2012, Plaintiff submitted the 10 withheld documents to the undersigned for *in camera* review.

## DISCUSSION

Plaintiff asserts the attorney-client privilege as to all 10 documents submitted for *in camera* review.[4]  Plaintiff also maintains an email, dated March 6, 2011, was

---

[3] A copy of the relevant entries of Plaintiff's Privilege Log is attached as Exh A to the Southwell Delcaration.

[4] As this is a diversity action, insofar as Plaintiff invokes the attorney-client privilege, the court is required to apply New York law pursuant to Fed.R.Evid. 501.  Because New York and federal caselaw

inadvertently disclosed to Defendants, and requests Defendants return or destroy all copies of the email. Defendants contend that Plaintiff's assertions of attorney-client privilege with regard to the 10 withheld privilege log items should be rejected and all ten documents produced. With regard to the March 6, 2011 email, Defendants argue Plaintiff has failed to meet his burden under Fed.R.Evid. 502(b), governing whether an inadvertent disclosure waives an otherwise validly asserted privilege.

**1.     Privilege**

It is basic that privileged documents are exempt from disclosure. *United States v. Construction Products Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) (citing *United States v. Morton Salt Co.*, 338 U.S. 632, 639 (1950)). The burden is on the party asserting the privilege to establish the essential elements of the privilege. *Id.* (citing *United States v. Adlman*, 68 F.3d 1495, 1499 (2d Cir. 1995); and *In re von Bulow*, 811 F.2d 136, 144 (2d Cir.), *cert. denied*, 481 U.S. 1015 (1987)). A party invoking the attorney-client privilege must demonstrate three elements, including (1) a communication between a client and counsel, (2) intended to be and kept confidential, and (3) made for the purpose of obtaining or providing legal advice or services. *Construction Products Research, Inc.*, 73 F.3d at 473 (citing *Fisher v. United States*, 425 U.S. 391, 403 (1976), *Adlman*, 68 F.3d at 1499, and *United States v. Abrahams*, 905 F.2d 1276, 1283 (9th Cir. 1990)). The burden of establishing each element of the

---

construing New York's statutory formulation of the attorney-client privilege, N.Y.C.P.L.R. 4503, are essentially similar, *see In re Pfohl Bros. Landfill Litig.*, 175 F.R.D. 12, 21 (W.D.N.Y. 1997), the court applies federal caselaw in this circuit, as well as New York caselaw.

privilege, including the absence of any waiver, is upon the party asserting the privilege. *United States v. Int'l. Bhd. of Teamsters,* 119 F.3d 210, 214 (2d Cir. 1997) (citing *United States v. Schwimmer*, 892 F.2d 237, 234 (2d Cir. 1989)); *see also In re Keeper of the Records (XYZ Corp.),* 348 F.3d 16, 22 (1st Cir. 2003) ("the party who invokes the privilege bears the burden of establishing that . . . it has not been waived"). Because the attorney client privilege limits the admissibility of relevant evidence in judicial and other proceedings, it is strictly construed. *Id.* (citing *In re Horowitz*, 482 F.2d 72, 81 (2d Cir.) (citing 8 Wigmore, EVIDENCE §§ 2192 at 70, 554 (1961)), *cert. denied*, 414 U.S. 867 (1973)).

When information that is otherwise protected by the attorney-client privilege is disclosed to third parties, the element of confidentiality is destroyed, and the privilege is waived. *In re Horowitz*, 482 at 81 ("We deem it clear that subsequent disclosure to a third party by the party of a communication with his attorney eliminates whatever privilege the communication may have originally possessed, whether because disclosure is viewed as an indication that confidentiality is no longer intended or as a waiver of the privilege." (citing McCormick, Evidence § 93, at 197 (Cleary ed., 1972), and cases there cited)). Further, communications between a client and attorney intended for publication or communication to third-parties are not intended to be confidential when made to obtain legal assistance and, thus, are not within the attorney-client privilege. *Robbins & Meyers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 83-84 (W.D.N.Y. 2011) (citing cases); 5 MCCORMICK ON EVIDENCE § 91 at 408 (Kenneth S. Broun, 6th ed. 2006) ("Whenever the matters communicated to the attorney are intended by the client to be made public or revealed to third persons, . . . the element of

confidentiality is wanting."). Even the dissemination of confidential and privileged information to persons within an organization "not shown to have a need to know such information" waives the attorney client privilege. *Id.* at 93-94 (citing cases).

Here, *in camera* review of each of the 10 documents establishes that the attorney-client privilege protects from disclosure Privilege Log Item 334 in part, and Privilege Log Items 373, 400, 401, 402, 403 and 405 in their entirety, but does not protect Privilege Log Items 348, 360, and 379.

**Privilege Log Item 334 ("Item 334").**  Defendants maintain Plaintiff has failed to establish that Item 334, described in Plaintiff's privilege log as an email from Argentieri to Ceglia "discussing, among other things, a hushmail account," Privilege Log Item 334, "does not appear to involve the provision of legal advice." Defendants' Memorandum at 10. Plaintiff asserts Item 334 is protected by the attorney-client privilege because it is a communication between Plaintiff and his attorney, was not disclosed to any third party, and involves the provision of legal advice by discussing case strategy concerning the filing of an amended complaint, securing communications regarding the action, and the retention of counsel.  Plaintiff's Memorandum at 6.  In opposition, Defendants argue Plaintiff has failed to submit any evidence establishing Item 334 was sent for the purpose of obtaining legal advice.  Defendants' Reply at 4.

*In camera* review establishes Item 334 is a series of eight emails dated December 1 to December 4, 2010, and exchanged between Plaintiff and his counsel, Paul A. Argentieri.  With the exception of some discussion of Plaintiff's concerns about legal representation and the filing of an amended complaint, the remainder of the emails neither contain nor seek legal advice, but discuss the District Judge assigned to

the case, personal finances, and the condition of the accommodations in which Plaintiff was then staying in Costa Rica. Accordingly, Item 334 is to be produced, redacted as to the discussion regarding whether Plaintiff should seek new counsel and file an amended complaint.[5]

**Privilege Log Item 348 ("Item 348")**. In the Privilege Log, Item 348 is described as "February 15, 2007 email from jkole@atg.state.il.us to paulceglia@msn.com and CC'ed to awornhoff@sidley.com with subject 'FW: Paul D. Ceglia'." Defendants maintain that Item 348 is an email from one "Jim Kole" who, as of February 15, 2007, was an Assistant Attorney General at the office of the Illinois Attorney General, working in the Consumer Fraud Bureau and, as such, was not then a private attorney providing Plaintiff with legal advice. Defendants' Memorandum at 9. Plaintiff concedes that Item 348 is an email sent by James Kole, Esq. ("Kole"), who when formerly in private practice with Sidley Austin, a large Chicago law firm, was Plaintiff's attorney, and that Amanda C. Wornhoff ("Wornhoff"), who was copied on the email, remains on staff at Sidley Austin. Plaintiff's Response at 8. Defendants argue that Plaintiff does not claim that Item 348 contains any legal advice from Kole. Defendants' Reply at 4.

Upon *in camera* review, Item 348 is an email sent on February 15, 2007 from Kole to Plaintiff, with copies to Wornhoff, and inquiring as to where corporate records of StreetFax should be sent, and copies of two earlier emails exchanged on February 15, 2007, between Kole and Wornhoff, a plain reading of which reveals both Kole and Wornhoff were unable to locate any contact information for Plaintiff, other than an email

---

[5] A copy of redacted Item 334 shall be promptly submitted to the court.

address.  Plaintiff fails to explain how these emails constitute legal advice or services from an attorney.  Because the substance of these emails were not intended by Plaintiff, Kole, or Wornhoff to serve as confidential communication to or from legal counsel to obtain or provide legal advice or services, Item 348 is outside the attorney-client privilege and should be produced.

**Privilege Log Items 360 and 379 ("Item 360" and "Item 379").**  Item 360 is an email dated March 17, 2011, from Plaintiff to one Jason Holmberg ("Holmberg"), whom Plaintiff asserted is Plaintiff's attorney's agent, the subject of which email is "file for DLA" with two files attached.  Privilege Log Item 360.  Item 379 is an April 19, 2011 email from Argentieri to Plaintiff with the subject "Fwd: Follow-up" and containing emails with Kcross@lippes.com, Amarks@kasowitz.com, Jerry.Trippitelli@dlapiper.com, and jason.holmberg@papellets.com with attachments.  Privilege Log Item 379.

Defendants maintain Holmberg, as the president and owner of PA Pellets (LLC), a manufacturer of wood pellets, is not an attorney, a point underscored by the fact that Argentieri formerly provided Defendants with another email from Holmberg to Plaintiff, specifically, an email dated March 6, 2011 from Holmberg to Plaintiff with the attached "Lawsuit Overview.pdf" document which Holmberg, in the text of the March 6, 2011 email, claims to have "put together."  Defendants' Memorandum at 9 and 12; Southwell Declaration ¶ 20.  As such, even if the communications contained in Items 360 and 379 were confidential communications between Plaintiff and his attorney, by disclosing the communications to Holmberg, Plaintiff waived any attorney-client privilege with regard to the documents.  Defendants' Memorandum at 9.  Plaintiff asserts in opposition that his counsel, Argentieri, retained Holmberg as a consultant and agent with regard to the

instant litigation.  Plaintiff's Memorandum at 6-7.  According to Argentieri, he hired Holmberg in February 2011 as a consultant and "to perform executive secretarial duties," Argentieri Declaration ¶ 17, that although Argentieri handwrote most of the content of the Lawsuit Overview, because Argentieri cannot type, he faxed the handwritten pages to Holmberg who typed, edited, proofread and formatted the Lawsuit Overview into pdf format.  *Id.* ¶¶ 18-20. Defendants argue that in the absence of any consulting agreement between Argentieri and Holmberg, Argentieri's statements regarding Holmberg's role as a consultant is a "self-serving assertion, absurd on its face given Holmberg's apparent lack of legal training . . . ." Defendants' Reply at 4.  Defendants further maintain that Argentieri's description of Holmberg's role as an agent is limited to the assistance Holmberg purportedly rendered in connection with the Lawsuit Overview, and not to the two files attached to Holmberg's March 17, 2011 email or the emails comprising Item 379.  *Id.* at 5.  Nor is there any indication Holmberg prepared Item 360 or Item 379 at Argentieri's request.  *Id.*

The attorney-client privilege may protect "communications made to agents of an attorney . . . hired to assist in the rendition of legal services."  *Schwimmer*, 892 F.2d at 243 (citing *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961)).  As such, "'the attorney-client privilege can attach to reports of third parties made at the request of the attorney or the client where the purpose of the report was to put in usable form information obtained from the client.'" *Occidental Chemical Corporation v. OHM Remediation Services Corp.*, 175 F.R.D. 431, 436 (W.D.N.Y. 1997) (quoting *Federal Trade Commission v. TRW, Inc.*, 628 F.2d 207, 212 (D.C.Cir. 1980)).  Here, insofar as Holmberg may have been retained by Argentieri to type the Lawsuit Overview and

9

convert it into pdf format, not only has the Lawsuit Overview already been determined not to be confidential or protected by the attorney-client privilege, November 3, 2011 Order (Doc. No. 208), ¶ 14, but the record is completely devoid of any explanation as to why Holmberg's services were retained in connection with the two documents attached to the March 17, 2011 email submitted as Item 360, or why the information contained in the emails comprising Item 379 were also circulated to Holmberg, much less that Holmberg had any "need to know" the information contained therein.  *Robbins & Meyers, Inc.*, 274 F.R.D. at 93-94 (disclosure of information to persons within plaintiff's corporate organization whose need-to-know of the asserted privileged communications was not established waived privilege).

     Insofar as Plaintiff asserts Items 360 and 379 are also protected by the work product doctrine, just as disclosure to third-party Holmberg whose services were not retained in connection with Items 360 and 379, and who has not been shown to have a need to know the information contained therein, waived the attorney-client privilege, the disclosure to Holmberg also waived any protection under the work product doctrine. *S.E.C. v. Gupta*, __ F.Supp.2d __, 2012 WL 990779, at *1 (S.D.N.Y. Mar. 26, 2012) ("Work product protection [ ] may be waived if the work product is voluntarily disclosed.").  Furthermore, the work product doctrine was not asserted in the original privilege log, but first appears in Plaintiff's papers filed in opposition to Defendants' motion and, thus was waived.  *See Brown v. Department of Correctional Services*, 2011 WL 2182775, at * 15 (W.D.N.Y. June 2, 2011) (failure to timely assert privilege waives the privilege).

     Accordingly, even if Items 360 and 379 were ever protected by the attorney-

client privilege and work product doctrine, the protection has been waived by the disclosure of the information to a third party, Holmberg, without establishing Holmberg had any need to know the information or had been retained to render professional services with regard to the documents.  Further, the work product doctrine was not timely asserted and, as such, has also been waived as to Items 360 and 379, which are therefore subject to production.

**Privilege Log Items 373, 400, 401, 402, 403 and 405 (**respectively, **"Item 373", "Item 400", "Item 401", "Item 402", "Item 403", and "Item 405").**   Items 373, 400, 401, 402, 403 and 405 are emails sent by or to David Grable, Esq. ("Dave Grable"), an attorney at Quinn Emanuel, another law firm located in Chicago, Illinois.  Defendants maintain that in the absence of any evidence that Quinn Emanuel ever provided Plaintiff with any legal services in connection with this action, these six items are not privileged, and that Plaintiff's burden of establishing that Quinn Emanuel did represent Plaintiff is not met by Plaintiff's attorneys' "'mere conclusory or ipse dixit assertions' in unsworn papers authored by attorneys."  Defendants' Memorandum at 10 (quoting *Allied Irish Banks, P.L.C. v. Bank of America, N.A.*, 252 F.R.D. 163, 168 (S.D.N.Y. 2008)).  Plaintiff maintains that although the documents contain discussions about confidential facts relating to this case, case strategy and legal advice, because the communications within these six items occurred while Plaintiff was considering whether to retain Quinn Emanuel as counsel in this action, they are protected by the attorney-client privilege.  Plaintiff's Response at 5-6.  Defendants object that no evidence establishes that when these communications were made, Plaintiff was considering whether to formally retain Dave Grable and Quinn Emanuel.  Defendants' Reply at 3.

Although Dave Grable and Quinn Emanuel have never appeared as counsel of record in this action, communications between Plaintiff and Dave Grable made while Plaintiff was considering whether to retain Dave Grable and Quinn Emanuel are privileged provided Plaintiff reasonably understood such communications to be confidential. *United State v. Dennis*, 843 F.2d 652, 656-57 (2d Cir. 1988) (statements made while potential client considered employing counsel were privileged, even though employment was never accepted, where potential client intended communications with attorney to be confidential); *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie, S.C.A.*, 258 F.R.D. 95, 100 (S.D.N.Y. 2009) (holding although plaintiff never officially retained attorney, plaintiff's attorney-client privilege encompassed any confidences and secrets divulged to attorney by plaintiff to the extent plaintiff understood attorney was approached in professional capacity with the intent to secure legal advice for plaintiff). Although the identity of the client or fee arrangements typically are not protected by the attorney-client privilege, *Vingrelli v. United States Drug Enforcement Agency*, 992 F.2d 449, 453 (2d Cir. 1993), communications revealing the client's motive in seeking representation, litigation strategy, or the specific nature of any services provided such as researching a particular area of law, are within the attorney-client privilege. *Newmarket Partners, LLC*, 258 F.R.D. at 101 (citing cases).

Item 373 is a December 2, 2010 email from James W. Grable, Esq. ("Jim Grable") at Connors & Vilardo, LLP ("Connors & Vilardo"), to Dave Grable at Quinn Emanuel, and one Eric M. Soehnlein ("Soehnlein") at Connors & Vilardo, copied to Plaintiff, with a subject of "FW: Zuck signature." Privilege Log Item 373. Connors & Vilardo was counsel of record for Plaintiff from July 16, 2010 until April 14, 2011, when

Item 373 was created, and Quinn Emanuel has never appeared as counsel of record in this matter. Nevertheless, *in camera* review of Item 373 reveals a discussion of litigation strategy between Jim Grable, Soehnlein, David Grable and Plaintiff, but no third parties. As such, Item 373 is within the attorney-client privilege and need not be produced.

Item 400 is a December 2, 2010 email from Jim Grable to Plaintiff and Dave Grable, copied to Soehnlein, with the subject "RE: Zuck signature." Privilege Log Item 400. *In camera* review establishes that an exact copy of all of the information contained in Item 400 is attached to the December 2, 2010 email submitted as Item 373. As such, Item 400 reveals a discussion of litigation strategy between Jim Grable, Soehnlein, David Grable and Plaintiff, but no third parties, and is within the attorney-client privilege and need not be produced.

Item 401 is a December 8, 2010 email from Plaintiff to Dave Grable with the subject "Re: Zuck Signature." Privilege Log Item 401. The court's *in camera* review of Item 401 reveals that attached to the December 8, 2010 email from Plaintiff to Dave Grable are 14 other email messages dated between December 2, and December 7, 2010, and exchanged between Plaintiff, Dave Grable, Jim Grable, and Argentieri, but no third parties. Discussed in the emails is litigation strategy for this case. Item 401 is thus protected by the attorney-client privilege and need not be produced.

Item 402 is a December 8, 2010 email from Dave Grable to Plaintiff, with the subject "RE: Zuck Signature." Privilege Log Item 402. *In camera* review of Item 402 establishes it is essentially a copy of Item 402, attached to the December 8, 2010 email from Dave Grable to Plaintiff acknowledging receipt of the information contained in Item

401. Nothing indicates this information has been disclosed to any third parties. Accordingly, Item 402 is protected by the attorney-client privilege and need not be produced.

Item 403 is a December 17, 2010 email from Plaintiff to Dave Grable with the subject "Re: Zuck signature." Privilege Log Item 403. *In camera* review of Item 403 establishes that attached to the December 17, 2010 email are 17 other emails dated from December 2 and December 17, 2010, exchanged between Plaintiff, Dave Grable, Jim Grable, Argentieri , and Terrence M. Connors of Connors & Vilardo, some of which are among the 14 emails included in Item 401. Discussed in these emails is litigation strategy, including retaining handwriting and computer forensics experts. Nothing within Item 403 indicates that any of the information contained therein has been disseminated to any third party. As such, Item 403 is subject to the attorney-client privilege, and need not be produced.

Item 405 is a December 2, 2010 email from Jim Grable to Argentieri, copied to Plaintiff and Dave Grable, with subject "Zuck Signature." Privilege Log Item 405. Careful review of Item 405 reveals it is one of the 14 emails attached to Item 401. Item 401 at 12. Because Item 405 has not been disclosed to any third parties, for the same reasons that Item 401 is protected by the attorney-client privilege, Item 405 is also protected and need not be produced.

Accordingly, Defendants' motion is GRANTED in part and DENIED in part. Plaintiff is to serve Defendants with copies of Item 334, redacted in accordance with this court's discussion, as well as Items 348, 360, and 379, but Items 373, 400, 401, 402, 403, and 405 need not be produced.

**2.     Inadvertent Disclosure**

Plaintiff asserts for the first time in responding to Defendants' motion that he has asked Defendants to return or destroy copies of the March 6, 2011 email from Holmberg to Plaintiff and Argentieri ("March 6, 2011 email")[6] that accompanied the attached Lawsuit Overview.pdf file and requested Plaintiff and Argentieri advise Holmberg of any desired changes.  Plaintiff's Response at 7, n. 1.  Plaintiff explains that the inadvertent disclosure of the March 6, 2011 email occurred when Edward Flaitz ("Flaitz"), an information technology expert Argentieri hired to recover from Argentieri's law office computer, a document titled "Lawsuit Overview.pdf" and produce the document to Stroz Friedberg LLC ("Stroz Friedberg"), a digital forensic consulting firm whose services Defendants have retained in connection with this action, on December 16, 2011.  Argentieri Declaration ¶ 2; Flaitz Declaration ¶¶ 3-5.  Both Argentieri and Flaitz state that the Lawsuit Overview.pdf file was an attachment to the March 6, 2011 email, which was inadvertently forwarded to Defendants along with the file.  Argentieri Declaration ¶ 3; Flaitz Declaration ¶¶ 6-7.  Flaitz maintains that despite Argentieri's instruction to copy only the attachment, i.e., the Lawsuit Overview file, Flaitz inadvertently also copies the March 6, 2011 email with the Lawsuit Overview.pdf file, burning, or copying, both to a CD which Flaitz then gave to Argentieri's secretary who forwarded the CD, containing both the Lawsuit Overview.pdf file and the March 6, 2011 email.  Flaitz Declaration ¶¶ 6-8.

Defendants dispute Plaintiff's description of the inadvertent disclosure, asserting

---

[6] Southwell Declaration Exh. H.

that Bryan J. Rose ("Rose"), of Stroz Friedberg, actually received the Lawsuit Overview.pdf file, along with the March 6, 2011 email, on December 16, 2011, by email from Argentieri's Gmail account ("December 16, 2011 email"),[7] rather than on a CD. Rose Declaration ¶ 3. The December 16, 2011 email contains a message stating: "Bryan [forward from origianl [sic] email to Paul Argentieri containing image of contract] Forwarded by Ed Flaitz (12/15/11 at 5:09 pm)".  Rose Declaration ¶ 4; December 16, 2011 email.  Rose states that he interpreted the December 16, 2011 email as establishing Flaitz had forwarded the March 6, 2011 email, with the Lawsuit Overview.pdf attachment, from Argentieri's Gmail account to Rose, and that because Rose received the email on December 16, 2011, rather than on December 15, 2011, Rose considered the reference to "12/15/11" to be a typographical error.  Rose Declaration ¶ 5.  On January 4, 2011, Stroz Friedberg produced the December 16, 2011 email from Argentieri's Gmail account in its native-file format simultaneously to all parties to this action. *Id.* ¶ 6.  Rose maintains he never received any CD containing the March 6, 2011 email from Flaitz, Argentieri's secretary, or anyone else. *Id.* ¶ 7.

Defendants maintain that it was not until they received the March 6, 2011 email on December 16, 2011, that Defendants were aware that Holmberg had prepared the Lawsuit Overview and, as such, was a custodian of the Lawsuit Overview whose identity should have been made earlier in accordance with the undersigned's direction that Plaintiff identify all persons in possession of the Lawsuit Overview.  Defendants' Memorandum at 14.  According to Plaintiff, because the March 6, 2011 email was

---

[7] A copy of the December 16, 2011 emails is attached as Exh. A to the Rose Declaration.

inadvertently disclosed, Plaintiff has not waived any privilege regarding the email. Plaintiff's Response at 7, n. 1. Plaintiff further maintains that "Plaintiff has subsequently requested on March 12, 2012 that Defendants retrieve and destroy all copies of the errantly provided, privileged material." *Id.* Defendants argue Plaintiff's belated request fails to meet Plaintiff's burden under Fed.R.Evid. 502(b). Defendants' Reply at 5-8.

Whether an inadvertent disclosure waives a privilege is governed by Fed.R.Evid. 502(b) which provides the privilege will not be waived if (1) the disclosure is inadvertent; (2) the privilege holder took reasonable steps to prevent disclosure; and (3) the privilege holder took reasonable steps to rectify the error. Fed.R.Evid. 502(b)(1)-(3). "The burden is on the party claiming a communication is privileged to demonstrate it 'took reasonable steps to prevent' any inadvertent disclosure, tried to remedy such disclosure immediately, and that the opposing party will not be unduly prejudiced by a protective order." *Chapel Park Villa, Ltd. v. The Travelers Ins. Co., Inc.*, 2006 WL 2827867 at * 5 (W.D.N.Y. Sept. 29, 2006) (citing *AFA Protective Sys., Inc. v. City of New York*, 788 N.Y.S. 2d 128, 129-30 (2d Cir. 2004)). In the instant case, Plaintiff has failed to meet this burden.

With regard to the first element, Argentieri, by failing to personally supervise Flaitz's retrieval of the LawsuitOverview.pdf filed from the computer in Argentieri's law office in Hornell, while Argentieri was in California, also failed to take reasonable steps to prevent the inadvertent disclosure of the March 6, 2011 email. Although Argentieri cannot be admonished for retaining the services of Flaitz to retrieve from Argentieri's Hornell law office, while Argentieri was in California, information responsive to Defendants' discovery requests, Argentieri could have had Flaitz first forward any

17

Case 1:10-cv-00569-RJA -LGF   Document 357   Filed 04/19/12   Page 18 of 20

documents to Argentieri in California where Argentieri could have reviewed the documents to ensure there was no extraneous, privileged materials attached. If Argentieri's physical presence in Hornell was necessary to properly and thoroughly oversee the production of evidence, Argentieri, as lead counsel in this high-profile case, should have made himself present to do so, and Argentieri has not proffered any explanation at to why his presence was not possible. Nor has Plaintiff produced an affidavit from Argentieri's secretary establishing any CD containing the March 6, 2011 email was ever sent to Stroz Friedberg as Plaintiff claims. *See* Flaitz Declaration ¶¶ 7-8 (averring Flaitz burned the March 6, 2011 email and the Lawsuit Overview.pdf filed onto a CD which he gave to Argentieri's secretary and "[u]pon information and belief, Mr. Argentieri's secretary forwarded it to the Defendants.").

Second, with regard to the reasonableness of Plaintiff's steps to rectify the inadvertent disclosure, the delay in seeking to remedy an inadvertent disclosure of privileged material is measured from the date the holder of the privilege discovers the such disclosure. *Valentin v. Bank of New York Mellon Corp.*, 2011 WL 2437644, at * 2 (S.D.N.Y. May 31, 2011); *U.S. Fidelity & Guaranty Co. v. Braspetro Oil Services Co.*, 2000 WL 744369, at * 6 (S.D.N.Y. June 8, 2000) (citing cases). Nor will a party's failure to realize a document is privileged until after it has been disclosed not bar finding a waiver of the privilege that could have been, but was not, asserted. *Jacob v. Duane Reade, Inc.*, 2012 WL 651536, at *5 (S.D.N.Y. Feb. 28, 2012) (Defendants' failure to perceive that email contained "secret and confidential information" from in-house counsel that would support a privilege argument until two months after its disclosure did not delay the running of time in which to attempt to remedy disclosure). Generally, a

request for the return or destruction of inadvertently produced privileged materials within days after learning of the disclosure is required to sustain this second element. *See U.S. Fidelity & Guaranty Co.*, 2000 WL 744369, at * 6 (request for return of documents made on first business day following notification of inadvertent production constituted prompt action rectifying disclosure); *Aramony v. United Way of America*, 969 F.Supp. 226, 237 (S.D.N.Y. 1997) (response within one day of learning of production was timely); and *Georgia-Pacific Corp. v. GAF Roofing Mfg. Co.*, 1995 WL 117871, at *2 (S.D.N.Y. Mar. 20, 1995) (response within two business days of learning of inadvertent disclosure did not constitute waiver).

Here, according to Defendants, after the March 6, 2011 email was forwarded to Stroz Friedberg on December 16, 2011, Boland had knowledge of the disclosure by January 4, 2012 when Stroz Friedberg produced the email in its native-file format to all parties to this action, yet took no steps to rectify the error until March 12, 2012, more than two months later. Nor does Plaintiff proffer any explanation for the delay. On this record, Plaintiff is unable to establish he took reasonable steps to remedy the inadvertent disclosure of the March 6, 2011 email by waiting more than two months before seeking the return or destruction of the information.

Finally, Plaintiff has utterly failed to offer any explanation demonstrating that protecting belated protection of the March 6, 2011 email will not be unduly prejudicial to Defendants. Accordingly, Plaintiff has also failed to establish the third element of his burden.

As such, Plaintiff has, by its disclosure of the March 6, 2011 email, waived any privilege that may have attached to it, and Plaintiff's request that Defendants be

directed to return or destroy all copies of the March 6, 2011 email is DENIED.

## CONCLUSION

Based on the foregoing, Defendants' motion to compel (Doc. No. 296) is GRANTED in part and DENIED in part. Plaintiff shall serve Defendants with copies of Item 334, redacted in accordance with this court's discussion, and Items 348, 360, and 379, **within 10 days** of this Decision and Order. Items 373, 400, 401, 402, 403, and 405 need not be produced.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: April 19, 2012
　　　　Buffalo, New York