**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

PAUL D. CEGLIA,

                            Plaintiff,

v.

MARK ELLIOT ZUCKERBERG and
FACEBOOK, INC.,

                            Defendants.

**PLAINTIFF'S OBJECTION TO THE MAGISTRATE JUDGE'S APRIL 19, 2012, ORDER**

1:10-cv-00569-RJA

# TABLE OF CONTENTS

                                                                                                                           **Page**

**I.**    BACKGROUND ................................................................................................................1

        A.    Plaintiff's Claims ..................................................................................................1

        B.    Defendants' Forgery Defense ................................................................................2

        C.    Judge Foschio Ruled That Certain of the Documents Are Not Privileged ..............3

        D.    Judge Foschio Denied Plaintiff's Motion for Clarification Regarding Whether Plaintiff Was Permitted to Redact Emails Included in Privilege Log Item 379 for which Mr. Holmberg Was Neither the Sender nor the Recipient ..............................................................................................................5

**II.**    STANDARD OF REVIEW ...............................................................................................6

**III.**    ARGUMENT .....................................................................................................................7

        A.    Mr. Holmberg Was Mr. Argentieri's Agent When the Communications Were Sent Such that the Attorney-Client Privileged Was Not Waived ...................8

        B.    Judge Foschio Improperly Applied a "Need to Know" Standard to Mr. Holmberg ............................................................................................................11

        C.    Mr. Holmberg's Assistance with the Lawsuit Overview Document Does Not Preclude or Waive the Assertion of Privilege as to Other Documents and Communications He Received ........................................................................13

**IV.**    CONCLUSION ................................................................................................................14

# **TABLE OF AUTHORITIES**

**CASES**

*Allied Irish Banks, P.L.C. v. Bank of America, N.A.*, 252 F.R.D. 163 (S.D.N.Y. 2008) .............. 12

*Dolin, Thomas & Solomon LLP v. United States Dept. of Labor,* 719 F. Supp. 2d 245 (W.D.N.Y. 2010) ..................................................................................................................................... 12

*In re Pfohl Bros. Landfill Litig.*, 175 F.R.D. 13 (W.D.N.Y. 1997).................................................. 8

*Lavigna v. State Farm Mut. Auto. Ins. Co.*, 736 F. Supp. 2d 504 (N.D.N.Y 2010)........................ 6

*Occidental Chemical Corporation v. OHM Remediation Services Corp.*, 175 F.R.D. 431 (W.D.N.Y. 1997) ........................................................................................................................7, 8

*Robbins & Meyers, Inc.*, 274 F.R.D. 63 (W.D.N.Y. 2011)....................................................... 7, 11

*Scholtisek v. Eldre Corporation,* 441 F. Supp. 2d 459 (W.D.N.Y. 2006) ................................... 12

*U.S. v. Jicarilla Apache Nation*, 131 S. Ct. 2313 (2011)............................................................. 11

*U.S. v. Mejia* 655 F.3d 126 (2d Cir. 2011).................................................................................... 8

*U.S. v. Schwimmer*, 892 F.2d 237 (2d Cir. 1989) ..................................................................... 7, 8

*U.S. v. Kovel,* 296 F.2d 918 (2d Cir. 1961)................................................................................ 8, 9

**RULES**

Fed. R. Civ. P. 72.......................................................................................................................... 6

Fed. R. Evid. 502 ........................................................................................................................ 14

N.Y. C.P.L.R. § 4503................................................................................................................ 9, 13

Pursuant to 28 U.S.C. Section 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a), Plaintiff Paul D. Ceglia objects to Magistrate Judge Leslie G. Foschio's April 19, 2012, Order (the "Discovery Order") [ECF No. 357], granting in part Defendants' Fifth Motion to Compel [ECF Nos. 294-95]. The Discovery Order directs, in pertinent part, that Plaintiff produce two documents, previously withheld on the basis of attorney-client privilege (Privilege Log Items 360 and 379), on the ground that the documents were accessed by Jason Holmberg, a non-attorney. Discovery Order at 8-11, 20. But, Mr. Holmberg was an agent of Paul Argentieri, one of Plaintiff's attorneys, and the attorney-client privilege thus extends to his communications.

Under Magistrate Judge Foschio's ruling, administrative support staff's access to documents would waive privilege, such that attorneys could no longer be assisted by secretaries, filing clerks, or other administrative personnel. Accordingly, and for the reasons described below, Plaintiff respectfully requests that the Court vacate the Discovery Order.[1]

## I.   BACKGROUND

### A.   Plaintiff's Claims

Plaintiff asserts claims against Defendants Mark Elliot Zuckerberg and Facebook, Inc. ("Facebook") for declaratory relief, breach of fiduciary duty, constructive fraud, fraud, breach of contract, and breach of the implied covenant of good faith and fair dealing. *Id*. Plaintiff alleges that on April 28, 2003, he entered into a contract with Zuckerberg (the "Ceglia-Zuckerberg Contract") pursuant to which Plaintiff contributed funds towards the development of Facebook in exchange for an interest in the company, as described below. Amended Complaint at ¶¶ 22-29 [ECF No. 39].

---

[1] Plaintiff incorporates by reference all of argument and authority included in Plaintiff's Opposition to Defendants' Fifth Motion to Compel [ECF No. 345].

In 2003, Plaintiff was developing a website with the domain name StreetFax.com, which sought to provide insurance adjusters photographic information about traffic intersections. *Id*. at ¶ 13. Plaintiff placed an advertisement on Craigslist seeking a programmer to develop the search engine feature for StreetFax.com. *Id*. at ¶ 15. Zuckerberg responded to the advertisement, and discussed with Plaintiff performing that work while also receiving funding for the development of Facebook, which Zuckerberg was then cultivating. *Id*. at ¶ 17.

Plaintiff and Zuckerberg ultimately entered into the Ceglia-Zuckerberg Contract, which provided that: (1) Plaintiff would pay Zuckerberg $1,000 to perform work "directly for the Streetfax Database and the programming language"; and (2) Plaintiff would pay Zuckerberg an additional $1,000 "for the continued development of the software, program and for the purchase and design of a suitable website for the project [Zuckerberg] has already initiated that is designed to offer the students of Harvard university access to a website similar to a live functioning yearbook with the working title of 'The Face Book.'" *Id*. at ¶¶ 23-28. The Ceglia-Zuckerberg Contract further provided that in exchange for funding the development of Facebook, Plaintiff "will own a half interest (50%) in the software, programming language and business interests derived from the expansion of that service to a larger audience." *Id*. at ¶ 23.

**B.     Defendants' Forgery Defense**

Defendants contend that the Ceglia-Zuckerberg Contract is a fraud. *See* Motion to Dismiss [ECF Nos. 318-19]. They concede that Zuckerberg entered into a contract with Plaintiff, but they argue that it related only to StreetFax and bore no mention of Facebook. Specifically, Zuckerberg submitted a declaration describing that "[i]n or about April 2003, I entered into a written contract with StreetFax, pursuant to which I agreed to provide limited website services solely in connection with the development of StreetFax's website. . . . The

2

written contract I signed concerned only the development of StreetFax's website. It did not mention or concern Thefacebook.com or any related social networking service or website." *See* Declaration of Mark Elliot Zuckerberg in Support of Defendants' Motion for Expedited Discovery ¶¶ 7, 9 [ECF No. 46].

On June 2, 2011, Defendants filed a Motion for Expedited Discovery [ECF Nos. 44-53], arguing that "one-sided" expedited discovery of Plaintiff was necessary to determine if his claims are fraudulent. *Id*. On July 1, 2011, the Court issued an Order [ECF No. 83] awarding Defendants expedited discovery of Plaintiff.

In connection with that discovery, Plaintiff provided Defendants a privilege log claiming attorney-client privilege as to certain documents. *See* Privilege Log [ECF No. 296-1].

### C. Judge Foschio Ruled That Certain of the Documents Are Not Privileged

On February 21, 2012, Defendants moved to compel (the "Fifth Motion to Compel") [ECF No. 295], challenging Plaintiff's privilege designations as to eleven documents. Plaintiff agreed to produce one of the documents, and after an *in camera* review of the remaining ten, the Court ordered that Plaintiff produce four of the challenged documents. This objection relates to two of those documents, which the Court ruled were not privileged because they were sent to a non-attorney, Jason Holmberg [ECF No. 357]. Specifically, the documents include: 1) Privilege Log Item 360, an email dated March 17, 2011, from Plaintiff to Mr. Holmberg, with the subject "file for DLA" and which attaches two files, and 2) Privilege Log Item 379, an April 19, 2011, email from Mr. Argentieri to Plaintiff with the subject "Fwd: Follow-up," which included in the body a composite of numerous emails, not in date order, that an attorney Plaintiff previously approached for representation forwarded to the attorneys then representing Plaintiff.

Plaintiff opposed that motion, arguing, *inter alia*, that "Mr. Holmberg was retained as a consultant to Mr. Ceglia's attorney, Paul Argentieri, and he has served as Mr. Argentieri's consultant and agent on matters pertaining to this litigation." Fifth Motion to Compel Opp. at 6-7 [ECF No. 310]. In support of the opposition, Mr. Argentieri submitted a declaration stating that he hired Mr. Holmberg to perform executive secretarial duties as Mr. Argentieri cannot type and lacks the necessary computer skills to format documents or convert them into .pdf form. Declaration of Paul Argentieri at ¶¶ 17-20 [ECF No. 311]. After the Court's preliminary order on the Fifth Motion to Compel (requiring that the documents be provided for *in camera* review) Mr. Holmberg also submitted a declaration stating in part that "Paul Argentieri retained my services as a consultant in February 2011 to assist him in prosecuting Paul Ceglia's lawsuit." Declaration of Jason Holmberg at ¶ 2 [ECF No. 341].

In their reply brief [ECF No. 313], Defendants complained that "Argentieri did not submit a consulting agreement in support of this self-serving assertion [that Mr. Holmberg was retained as a consultant], absurd on its face given Holmberg's apparent lack of legal training" and that Mr. Argentieri's declaration describes Mr. Holmberg's role only with regard to the Lawsuit Overview document.[2] Fifth Motion to Compel Reply at 4 [ECF No. 313]. But Mr. Argentieri and Mr. Holmberg each provided a declaration addressing the consulting arrangement -- ample evidence of Mr. Holmberg's role -- both of which made clear that Mr. Holmberg was

---

[2] The Lawsuit Overview document is a case summary that the Court previously determined was not privileged and which Plaintiff has since produced. [ECF 208]. In the Fifth Motion to Compel [ECF No. 295], Defendants disputed whether Mr. Holmberg or Mr. Argentieri authored the document, who had possession of the document, and whether all copies of that document had been produced. As such, Mr. Argentieri and Mr. Holmberg submitted declarations addressing these topics, but also describing Mr. Holmberg's role generally.

retained to perform administrative duties that did not require "legal training." Moreover, while the declarations address the Lawsuit Overview document (because Defendants had raised questions as to its authorship), they do not state that Mr. Holmberg's role was restricted to work on that single document.

On March 22, 2012, the Court ordered that Plaintiff submit the documents at issue for *in camera* review [ECF No. 317], and ultimately, on April 19, 2012, ordered that Plaintiff produce Privilege Log Items 360 and 379 on the grounds that the record did not explain why Holmberg's services were retained in connection with those documents or that Holmberg had any "need to know" the information contained therein. Discovery Order at 9-11 [ECF No. 357].

### D. Judge Foschio Denied Plaintiff's Motion for Clarification Regarding Whether Plaintiff Was Permitted to Redact Emails Included in Privilege Log Item 379 for which Mr. Holmberg Was Neither the Sender nor the Recipient

On April 23, 2012, Plaintiff filed a Motion for Clarification [ECF No. 358], noting that Privilege Log Item 379 was a composite of numerous emails, not in date order, that was forwarded by an attorney previously approached by Plaintiff for representation as a means of transferring his electronic correspondence regarding the case to Plaintiff's counsel at the time. A significant number of the emails contained in Privilege Log Item 379 did not include Mr. Holmberg as a sender or recipient. The motion sought clarification regarding whether Plaintiff could redact those emails contained in Privilege Log Item 379 that did not include Mr. Holmberg.

Defendants did not oppose Plaintiff's motion for clarification, but on April 26, 2012, Judge Foschio issued an Order treating the motion for clarification as a motion for reconsideration, and denying Plaintiff's request. *See* Decision and Order [ECF No. 361] ("Clarification Order"). In so ruling, the Court questioned "why Holmberg's services were

5

necessary, *e.g.,* why Argentieri's legal secretary could not have performed this seemingly unsophisticated task, or why Holmberg had any 'need to know' the information contained in the emails comprising Item 379, so as to maintain the attorney-client privilege . . ." Clarification Order at 1.

The Court again acknowledged Mr. Argentieri's "assertion that he hired Holmberg 'to perform executive secretarial duties'" but questioned "why his secretary was unable to type, edit and proof read the Lawsuit Overview," as well as "what training or skills of Holmberg Argentieri perceived as so special that persuaded Argentieri to retain Holmberg's services in connection with the instant litigation." Clarification Order at 4.

The Court denied Plaintiff's motion, finding that "the context of the emails strongly implies" that, even where he was not a sender or recipient of the emails, Mr. Holmberg was "privy to the information contained therein, given that the emails pertain to Plaintiff's attempts to retain legal counsel," which was "a task with which Mr. Holmberg assisted." *Id.* at 4-5.

## II. STANDARD OF REVIEW

Rule 72(a) provides that "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).³ "Under a clearly erroneous standard, a district court can reverse a magistrate judge's order only if the court 'is left with the definite and firm conviction that a mistake has been committed.'" *Lavigna v. State Farm Mut. Auto. Ins. Co.*, 736 F. Supp. 2d 504, 509-10 (N.D.N.Y 2010) (quoting *Gualandi v. Adams*, 385 F.3d 236, 240 (2d Cir. 2004)). "Under a contrary to law standard, a district court can reverse a magistrate judge's order only if the order fails to apply the relevant law." *Id*.

As discussed below, Magistrate Judge Foschio's Discovery Order was both clearly erroneous and contrary to law.

## III.   ARGUMENT

In the Discovery Order, Magistrate Judge Foschio acknowledged that "[t]he attorney-client privilege may protect 'communications made to agents of an attorney . . . hired to assist in the rendition of legal services' [and] 'can attach to reports of third parties made at the request of the attorney or the client where the purpose of the report was to put in usable form information obtained from the client.'"  Discovery Order at 9 (quoting *U.S. v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989) and *Occidental Chemical Corporation v. OHM Remediation Services Corp.*, 175 F.R.D. 431, 436 (W.D.N.Y. 1997)).  But Judge Foschio erroneously concluded, in relevant part, that:

> insofar as Holmberg may have been retained by Argentieri to type the Lawsuit Overview and convert it into pdf format, not only has the Lawsuit Overview already been determined not to be confidential or protected by the attorney-client privilege . . .  but the record is completely devoid of any explanation as to why Holmberg's services were retained in connection with the two documents attached to the March 17, 2011 email submitted as Item 360, or why the information contained in the emails comprising Item 379 were also circulated to Holmberg, much less that Holmberg had any 'need to know' the information contained therein.

Discovery Order at 9-10 (holding that "disclosure of information to persons within plaintiff's corporate organization whose need-to-know of the asserted privileged communications was not established waived privilege") (citing *Robbins & Meyers, Inc.*, 274 F.R.D. 63, 93-94 (W.D.N.Y. 2011) (Foschio, J.)).

This holding is contrary to the applicable law and the factual record, and for the reasons explained below, should be vacated.  In addition, the Court should direct Defendants to return the

---

[3] Rule 72(a) applies to a magistrate judge's order regarding discovery.  Fed. R. Civ. P. 72(a).

privileged documents and preclude Defendants from using in the litigation any of the information contained therein.[4]

### A. Mr. Holmberg Was Mr. Argentieri's Agent When the Communications Were Sent Such that the Attorney-Client Privileged Was Not Waived

The Second Circuit has long recognized that the attorney-client privilege[5] may extend to communications with a lawyer's agent: "[F]ew lawyers could now practice without the assistance of secretaries, file clerks, telephone operators, messengers, clerks not yet admitted to the bar, and aides of other sorts." *United States v. Kovel,* 296 F.2d 918, 921 (2d Cir. 1961); *see also U.S. v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989) ("The privilege also is held to cover communications made to certain agents of an attorney . . . hired to assist in the rendition of legal services."); *Occidental Chemical Corp. v. OHM Remediation Servs. Corp.*, 175 F.R.D. 431, 436 (W.D.N.Y. 1997) ("[T]he attorney-client privilege can attach to reports of third parties made at the request of the attorney or the client where the purpose of the report was to put in useable form information obtained from the client."); *see also In re Pfohl Bros. Landfill Litig.*, 175 F.R.D. 13, 23-24 (W.D.N.Y. 1997) (Foschio, J.) ("[T]he presence of a third party will not waive the attorney-client privilege where such third party's presence is necessary to facilitate

---

[4] On April 27, 2012, Plaintiff filed a motion for a partial stay of the Discovery Order pending a ruling on the instant objection, which Plaintiff represented it would file on or before April 30, 2012. [ECF No. 362.]. The requested stay would have allowed Plaintiff to wait to produce Privilege Log Items 360 and 379 -- which Plaintiff maintained and continues to maintain are privileged -- until an order by this Court on the applicability of the attorney-client privilege. On April 30, 2012, the Court denied that motion. [ECF No. 365]. Accordingly, Plaintiff is required to produce the documents before final resolution of the matter.

[5] "The attorney-client privilege protects communications (1) between a client and his or her attorney or agent, (2) that are intended to be, and in fact were, kept confidential, (3) and which were for the purpose of obtaining or providing legal advice." *See U.S. v. Mejia* 655 F.3d 126, 132 (2d Cir. 2011).

8

communication between the client and the attorney.").[6] A party cannot be compelled to disclose a "confidential communication made between the attorney *or his or her employee* and the client in the course of professional employment . . . ." N.Y. C.P.L.R. § 4503(a)(1) (emphasis added).

In *Kovel*, the Second Circuit equated the retention of an accountant to the retention of a translator of a foreign language -- noting that communications would be protected in either circumstance. 296 F.2d at 920. However, the privilege also extends to communications with an attorney's ministerial employees. *Id.* at 922 (noting that the privilege is not "confined to 'menial or ministerial' employees"). A solo practitioner's (in this case, Mr. Argentieri's) retention of an assistant to perform administrative and computer-related tasks and liaise via email with potential additional representation is no different -- "if the lawyer has directed the client, either in the specific case or generally, to tell his story in the first instance to an accountant [or here, agent] engaged by the lawyer, who is then to interpret it so that the lawyer may better give legal advice, communications by the client reasonably related to that purpose ought [to] fall within the privilege. . . ." *Id.* at 923.

The record shows that Mr. Holmberg was retained by Mr. Argentieri to perform administrative functions related to this litigation because neither Mr. Argentieri nor his secretary had the typing or technical skills to do so. Nevertheless, the Discovery Order stated that the

---

[6] A potential client's communications with attorneys, prior to their retention, are protected. *See Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 100 (S.D.N.Y. 2009) ("An attorney-client relationship can arise prior to formal engagement."); *United States v. Dennis,* 843 F. 2d 652, 656 (2d Cir. 1988) ("[P]rivilege may attach to a prospective client's 'initial statements' to an attorney who is not ultimately hired."); *see also Fierro v. Gallucci*, No. 06-5189, 2007 WL 4287707, at *6 (E.D.N.Y. Dec. 4, 2007) ("[W]hether or not employment occurs, preliminary discussions between an attorney and a prospective client are subject to the attorney client privilege.") (citing cases); *Diversified Group, Inc. v. Daugerdas,* 304 F. Supp. 2d 507, 513 (S.D.N.Y. 2003) (holding that the privilege attaches when an attorney is "approach[ed] in a professional capacity with the intent to secure legal advice").

9

"record is completely devoid of any explanation as to why Holmberg's services were retained in connection with the two documents attached to the March 17, 2011 email submitted as Item 360, or why the information contained in the emails comprising Item 379 were also circulated to Holmberg . . . ." Discovery Order at 10. This finding was clearly erroneous and contrary to law.

The record demonstrates that Mr. Holmberg was "hired to perform executive secretarial duties," Argentieri Decl. ¶ 3 [ECF No. 311], and was "retained . . . to assist [Mr. Argentieri] in prosecuting Paul Ceglia's lawsuit," Holmberg Decl. ¶ 2 [ECF No. 341]. Indeed, Judge Foschio found that Mr. Holmberg "assisted" with "Plaintiff's attempts to retain legal counsel with litigation experience similar to the instant action." Clarification Order at 4-5.

Indeed, the Clarification Order acknowledged Mr. Holmberg served in such an agency position to Mr. Argentieri, as supported by the record:

> [T]he emails pertain to Plaintiff's attempts to retain legal counsel with litigation experience similar to the instant action, *a task with which Holmberg assisted not only in preparing the Lawsuit Overview, but by arranging and attending meetings with several attorneys whose services Plaintiff contemplated retaining* . . . .

Clarification Order at 4-5. This makes clear that Mr. Holmberg acted as an agent to Mr. Argentieri for the purpose of providing and/or obtaining legal advice -- thus rendering the documents at issue privileged (or, stated differently, negating any argument that Mr. Holmberg's receipt of the documents was a waiver of privilege). Yet, contrary to these findings, Magistrate Judge Foschio erroneously ruled that Privilege Log Items 360 and 379 are not privileged.

It is unorthodox, and unsupported by the law, to require that a party describe the context of its attorney's relationships with employees in this manner. The notion that an attorney would have to explain why his or her secretary, paralegal, or assistant was hired -- and why that agent needed access to any given document -- in order to support the application of attorney-client privilege would create an insurmountable burden and quell the very openness of communication

the attorney-client privilege is intended to protect. *See U.S. v. Jicarilla Apache Nation*, 131 S. Ct. 2313, 2320 (2011) ("The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. Its aim is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.") (internal quotations and citations omitted). Here, the Discovery Order goes even further and questions why Mr. Argentieri's other staff lacked the necessary skills to perform the tasks for which Mr. Holmberg was retained.

This ruling was clearly erroneous.

### B. Judge Foschio Improperly Applied a "Need to Know" Standard to Mr. Holmberg

Judge Foschio also erred in ruling that Privilege Log Items 360 and 379 were not privileged because Plaintiff failed to establish "that Holmberg had any 'need to know' the information contained" therein, citing in support *Robbins & Meyers*, 274 F.R.D. at 93-94. *See* Discovery Order at 10-11. The "need to know" standard only applies when evaluating whether an organization has waived privilege by providing documents to *its* agents or employees (e.g., whether a company maintained the confidentiality of a document by only allowing access to those with a need to know). It does not apply where a lawyer allows his agent or employee access to a document.

Indeed, in *Robbins*, Judge Foschio addressed waiver of privilege regarding documents provided to the plaintiff corporation's "*employees* . . . whose status as policy-makers or persons within a corporation with need-to-know of the asserted privileged communications Plaintiff has failed to establish as is its burden." *Robbins & Meyers*, 274 F.R.D. at 93-94 (emphasis added). There, the Court cited cases that addressed the narrow issue of communications provided to persons within the corporation -- not communications provided to staff hired or retained by a law

11

firm. *See Scholtisek v. Eldre Corporation,* 441 F. Supp. 2d 459, 464–65 (W.D.N.Y. 2006) ("[W]hether the dissemination of privileged communications to *corporate employees* vitiates the privilege is decided by applying a 'need to know' standard") (emphasis added); *see also Dolin, Thomas & Solomon LLP v. United States Dept. of Labor,* 719 F. Supp. 2d 245, 253–54 (W.D.N.Y. 2010) ("In order to demonstrate entitlement to the privilege, *the agency* must show . . . that confidentiality of the communications was expected and maintained. 'If facts have been made known to persons other than those who need to know them, there is nothing on which to base a conclusion that they are confidential. . . .'") (citations omitted) (emphasis added); *Allied Irish Banks, P.L.C. v. Bank of America, N.A.,* 252 F.R.D. 163, 169 (S.D.N.Y. 2008) ("[A] *corporation* asserting the attorney-client privilege has the burden of showing 'that it preserved the confidentiality of the communication by limiting dissemination *only to employees with a need to know*.'") (emphasis added).

Mr. Holmberg was hired by Mr. Argentieri. *See supra* § I.C. He is not the agent of a corporate or organizational litigant. The question of whether he had a "need to know" the information therefore does not apply, and the Court's finding was clearly erroneous and contrary to law. Surely, even Defendants would not be in favor of a privilege standard under which all communications made to law firm administrative personnel are not privileged. However, even if the "need to know" standard applied here, Mr. Holmberg's role as Mr. Argentieri's assistant with the requisite computer skills to handle typing and document formatting demonstrates his "need to know" the information he received, just as an interpreter would need to hear the substance of an otherwise-protected conversation in order to translate it.

### C. Mr. Holmberg's Assistance with the Lawsuit Overview Document Does Not Preclude or Waive the Assertion of Privilege as to Other Documents and Communications He Received

In ruling that Privilege Log Items 360 and 379 are not privileged, Magistrate Judge Foschio ruled that while "Holmberg may have been retained by Argentieri to type the Lawsuit Overview and convert it into pdf format . . . the Lawsuit Overview [has] already been determined not to be confidential or protected. . . ." Discovery Order at 10. The Discovery Order does not explain how or why the confidentiality of the Lawsuit Overview document is relevant to assessing whether Privilege Log Items 360 and 379 are privileged.

The Court had previously determined that the Lawsuit Overview document was not privileged [ECF No. 208], and it has since been produced. However, in the Fifth Motion to Compel [ECF No. 295], Defendants questioned who authored the Lawsuit Overview document; who had possession of the Lawsuit Overview document; and whether all copies of that document had been produced. As such, Plaintiff sought to address these questions by submitting the declarations of Mr. Argentieri and Mr. Holmberg as discussed herein. But these declarations also described Mr. Holmberg's role generally.

As noted above, *see supra* § I.C., Mr. Holmberg's role was to provide Mr. Argentieri administrative support in connection with the prosecution of Mr. Ceglia's lawsuit. More importantly, the applicability of the attorney-client privilege to the Lawsuit Overview document is irrelevant to determining whether sharing other, unrelated documents with Mr. Holmberg waived privilege, and Plaintiff is unaware of any authority to support such a finding. Privilege must be assessed on a document-by-document basis based on whether the "communication" was made between an "attorney *or his or her employee* and the client in the course of professional employment." N.Y. C.P.L.R. § 4503(a)(1) (emphasis added); *see also Mejia*, 655 F.3d at 132

("The attorney-client privilege protects communications (1) between a client and his or her attorney or agent, (2) that are intended to be, and in fact were, kept confidential, (3) and which were for the purpose of obtaining or providing legal advice."). Even where intentional waiver has occurred, the Court must look to the undisclosed documents before requiring that they be produced, and determine that "the disclosed and undisclosed communications . . . concern the same subject matter; and they ought in fairness to be considered together. " *See* Fed. R. Evid. 502(a). Other, unrelated documents are not subject to the waiver. *See id.* In any regard, the Court previously held that the attorney-client privilege did not apply to the Lawsuit Overview document [ECF No. 208], and thus there could be no "waiver" as to its subject matter.

## IV.   CONCLUSION

For the foregoing reasons, the Court should (1) vacate the Discovery Order as clearly erroneous and contrary to law and uphold Plaintiff's privilege designations as to communications accessed, sent, or received by Mr. Holmberg; and (2) order Defendants to return the privileged documents to Plaintiff with a directive that Defendants are prohibited from using in the litigation any of the information contained therein. Even if the Court should affirm the Discovery Order, the Court should nevertheless vacate the Clarification Order and allow Plaintiff to redact those emails contained in Privilege Log Item 379 that Mr. Holmberg never sent or received.

**Local Rule 72 Certification**

I hereby certify that this Objection does not raise new arguments.

Dated: April 30, 2012                                          Respectfully submitted,

                                                                s/ Sanford P. Dumain
                                                            Sanford P. Dumain
                                                            Jennifer L. Young
                                                            Melissa Ryan Clark
                                                            Milberg LLP
                                                            One Pennsylvania Plaza, 48th Floor

New York, NY 10119
212-594-5300 phone
212-868-1229 fax
sdumain@milberg.com
jyoung@milberg.com
mclark@milberg.com

Dean Boland
Boland Legal, LLC
1475 Warren Road
Unit 770724
18123 Sloane Avenue
Lakewood, Ohio 44107
216-236-8080 phone
866-455-1267 fax
dean@bolandlegal.com

Robert B. Calihan
Calihan Law PLLC
16 West Main Street
Suite 761
Rochester, NY 14614
585-232-8291 phone
866-533-4206 fax
rcalihan@calihanlaw.com

Paul A. Argentieri
188 Main Street
Hornell, NY 14843
607-324-3232 phone
607-324-6188
paul.argentieri@gmail.com

Peter K Skivington
Jones & Skivington
31 Main Street
PO Box 129
Geneseo, NY  14454
585-243-0313 phone
585-243-3625 fax
peter@jsklaw.com

15

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

PAUL D. CEGLIA,

                              **CERTIFICATE OF SERVICE**

           Plaintiff,

v.                                        1:10-cv-00569-RJA

MARK ELLIOT ZUCKERBERG and
FACEBOOK, INC.,

           Defendants.

     I hereby certify, under penalty of perjury pursuant to 28 U.S.C. Section 1746, that on the 30th day of April, 2012, I caused PLAINTIFF'S OBJECTION TO THE MAGISTRATE JUDGE'S APRIL 19, 2012, ORDER to be filed with the Clerk of the District Court for the Western District of New York using its Case Management/Electronic Case Filing System which would then electronically notify all counsel of record in this case.

Dated: April 30, 2012

                                                                s/ Sanford P. Dumain