UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
PAUL D. CEGLIA, :
:
            Plaintiff, :   Civil Action No. 1:10-cv-00569-RJA
:
  v. :
:   **DECLARATION OF**
MARK ELLIOT ZUCKERBERG and :   **ALEXANDER H. SOUTHWELL**
FACEBOOK, INC., :
:
            Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

    I, ALEXANDER H. SOUTHWELL, hereby declare under penalty of perjury that the following is true and correct:

    1.    I am an attorney licensed to practice law in the State of New York and admitted to practice before this Court. I am a partner in the law firm of Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), counsel of record for Mark Elliot Zuckerberg and Facebook, Inc. ("Facebook") in the above-captioned matter. I make this declaration, based on personal knowledge, in further support of Defendants' Motion to Dismiss (Doc. No. 318) and to provide the Court with the supplemental expert report of Gus R. Lesnevich, forensic document examiner and handwriting expert, pursuant to the Court's expedited discovery orders. *See* July 1, 2011 Order (Doc. No. 83) at 3; August 18, 2011 Order (Doc. No. 117) ¶ 9.

    2.    Specifically, Defendants submit Mr. Lesnevich's supplemental expert report pursuant to their continuing obligation to "provide to the Court and Plaintiff all reports documenting the findings" of the court-ordered examination. Doc. No. 83 at 3.

    3.    I refer the Court to Mr. Lesnevich's initial expert report (Doc. No. 329) for a complete description of his experience and qualifications, his conclusions, and the factual bases for those conclusions. A true and correct copy of the redacted supplemental expert report of Gus

R. Lesnevich is attached hereto as Exhibit A.  Defendants have redacted from the publicly-filed version of Mr. Lesnevich's supplemental expert report documents, materials, and information designated as confidential pursuant to the parties' Joint Stipulated Protective Order (Doc. No. 86).

4. Mr. Lesnevich examined the hard-copy documents produced by Ceglia on July 15, 2011.  When it became apparent that there were discrepancies in the handwriting on the versions of the Work for Hire Document that Ceglia had produced, Mr. Lesnevich conducted further examination of those images.  Specifically, Mr. Lesnevich compared the handwriting on the: (1) image of the Work for Hire Document in TIFF file format sent by Ceglia to Paul Argentieri on June 27, 2010; (2) image of the Work for Hire Document attached to Ceglia's Complaint, filed June 30, 2010; (3) image of the Work for Hire Document taken by Ceglia's expert Valery Aginsky during his January 13, 2011 examination of the Work for Hire Document; and (4) image of the Work for Hire Document taken by Defendants' expert Peter V. Tytell during Defendants' July 14, 2011 examination of the Work for Hire Document present by Paul Argentieri (collectively, the "Questioned Documents").  Ceglia has proffered each of those images as an image of the same physical document.  In this course of this analysis, Mr. Lesnevich observed several handwriting anomalies on both pages 1 and 2 of the Work for Hire document.

5. In his initial expert report, Mr. Lesnevich described his findings of at least 20 significant dissimilarities between the handwritten interlineations on page 1 of the Questioned Documents and concluded, to the highest degree of certainty possible, beyond any reasonable doubt, that Ceglia has proffered at least two different physical documents as the Work for Hire Document.  *See* Doc. No. 329 at 30.

6.     On June 4, 2011, Ceglia filed, among other reports, the expert reports of James A. Blanco and Larry F. Stewart (Doc. Nos. 415, 416), both of which mischaracterized the conclusions Mr. Lesnevich reached in his initial expert report.  In particular, Messrs. Blanco and Stewart mistakenly argued that Mr. Lesnevich had concluded that the first page of the Work for Hire Document presented for inspection in 2011 was a forgery appended to a genuine second page.

7.     Continuing his court-ordered examination and in response to the reports of Ceglia's experts, Mr. Lesnevich conducted two different modes of analysis, both of which are described in the attached supplemental report.

8.     First, in order to correct Plaintiff's experts' mischaracterization of his conclusions and to provide all findings of his court-ordered examination, Mr. Lesnevich determined whether the images of the handwritten signatures and dates of signature on page 2 of the Questioned Documents are, in fact, of the same physical document.  This is the same type of analysis that Mr. Lesnevich described in his initial expert report, now on the handwritten features that appear on <u>page 2</u> of the Questioned Documents rather than <u>page 1</u> (the page containing all references to the purported "The Face Book").

   A.    As described further in the attached supplemental report, Mr. Lesnevich identified at least 12 significant dissimilarities among and between the handwritten signatures and dates on page 2 of the Questioned Documents—findings that confirm his earlier conclusion that the Questioned Documents are images of at least two different physical documents (both pages 1 and 2).

9.      Second, in his supplemental expert report, Mr. Lesnevich describes his ongoing analysis and examination of handwriting on both page 1 and 2 of the Work for Hire document, specifically, the initials on page 1 and the signatures and dates of signature on page 2. To perform this type of analysis, Mr. Lesnevich compared the questioned handwritten entries to 43 known signatures, 12 known sets of initials, and multiple other known handwritten exemplars of Mark Zuckerberg and 11 known signatures of Paul Ceglia. This is a different type of analysis than that described in Mr. Lesnevich's initial expert report, and responds to the reports of Ceglia's experts.

      A.    As described further in the attached supplemental report, Mr. Lesnevich concluded that the questioned "Mark Zuckerberg" signature and date of signature on the Work for Hire Document, as well as the questioned "MZ" initials, were not written by Mark Zuckerberg.

      B.    Those conclusions were based, in part, on the numerous instances of hesitation and re-touching in the questioned Zuckerberg signature and date of signature on the Work for Hire document; significant differences in line quality and letter formation and design between the questioned and known handwritten entries; and numerous differences in ending strokes, slant/slope qualities, and vertical-alignment between the questioned "MZ" initials on the Work for Hire document and several known handwritten exemplars that Mr. Lesnevich observed.

      C.    Mr. Lesnevich also concluded that the questioned "Paul Ceglia" signature and date of signature on the Work for Hire document are tracings—that is, near-identical reproductions that were not naturally drawn.

4

5

    D.    That conclusion is based, in part, on the instances of re-touching in the questioned Ceglia signature and date of signature on the Work for Hire document, as well as numerous differences in pen pressure, line quality, and ending strokes between the questioned and known handwritten entries that Mr. Lesnevich observed.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 8th day of August, 2012 at New York, New York.

                                                    Alexander H. Southwell