UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

PAUL D. CEGLIA,

                       Plaintiff,

v.

MARK ELLIOT ZUCKERBERG, Individually, and
FACEBOOK, INC.

                       Defendants.

Civil Action No. : 1:10-cv-00569-RJA

**MEMORANDUM IN RESPONSE TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

---

## MEMORANDUM

Defendants have sought a protective order in response to interrogatories and requests for production of documents submitted to Defendants' by Plaintiff. Doc. No. 475. This court has previously outlined the precise area of discovery to which Plaintiff's interrogatories and requests for production of documents should be directed. Doc. No. 322. All of Plaintiff's interrogatories and requests for production of documents are directed at that area of discovery.

## BACKGROUND

Defendants filed a motion to dismiss alleging Plaintiff's complaint was filed outside the statute of limitations for contract disputes in New York. Doc. No. 321. Defendants argue that statute sets a six year limit from the date of breach within which an action to enforce a contract must be filed. Id. at 8. In the complaint, a breach date of July 2004 is alleged, well within the statute of limitations. Doc. No.

1

1. In Defendants motion to dismiss, now a summary judgment motion, they allege a breach date of April 2004, outside the six year statute of limitations. Doc. No. 321 at 9.

> The court granted discovery on a precise issue the court defined as follows:
>
> **(1) assuming, arguendo, the Work for Hire contract dated April 28, 2003 is authentic, what intellectual property rights and other ownership interests were created by the contract's language providing that Plaintiff, in exchange for helping fund Zuckerberg's development of FaceBook, would give Plaintiff "a half interest (50%) in the software, programming language and business interests derived from the expansion of that service to a larger audience...."** Doc. No. 366.

The questions posed to Defendants in the interrogatories are tightly tied to the court's identification of the issue to which Plaintiff is entitled discovery. Many of the questions used portions of the court's above language verbatim. The questions seek Defendants' definition of the rights and interests conveyed to Plaintiff under the contract. Without this definition, it is impossible for Defendants to fix a breach date if they will not define Plaintiff's rights or interests they are claiming a breach date for.

The questions also seek information about when, if ever, Defendant Zuckerberg transferred more than 50% of the company's intellectual property, programming language, etc. to any other person or entity. Assuming the contract is authentic, Plaintiff was given 50% interest in those items. Therefore, Zuckerberg would have breached the agreement at the moment he transferred more than 50% of the total interest in the "software, programming language and business interests

derived from the expansion of that service" Id., to any other person or entity. Did that happen in April 2004?, no, as the Saverin filing by Defendants makes clear. To succeed in demonstrating a breach event outside the statute of limitations, Defendants must clarify when Zuckerberg transferred more than 50% of the interest in those items which would mean he transferred part of Plaintiff's interest, an obvious breach event.

Further, Defendants' motion contains a "relation back" argument. They seek to contract the enforceable breach timeframe to start at April 2005 and end on the date of the filing of the amended complaint, April 2011. Therefore, events surrounding the incorporation of Facebook in July 2004 are relevant inquiries to this question. Are Defendants' alleging that the documentation filed with the July 2004 incorporation did not publicly claim ownership in persons, but excluding Plaintiff? Only a review of that documentation or answers to the interrogatories about the division of ownership just before and just after that incorporation answer that question. Moreover, assume that Defendant Zuckerberg never represented to anyone, including Facebook, Inc., that he owned 100% of the "software, programming language and business interests derived from the expansion of that service" to Facebook, Inc. If that is the case, only knowable from answers to Plaintiff's interrogatories and review of the documents requested, there may not yet be a breach of the agreement at all. It may just be that Zuckerberg has misled Facebook, Inc. that he owned 100% of the "software, programming language and business interests derived from the expansion of that service" and then transferred

3

that interest to him.

## QUESTIONS POSED TO DEFENDANT ZUCKERBERG

INTERROGATORY NO. 1

Assuming the Facebook Contract between Defendant Zuckerberg (Zuckerberg) and Plaintiff (the parties) is authentic, please define the terms "software", "programming language" and "business interests" as they appear in the contract.

This question is necessary to understand what Defendant Zuckerberg is claiming are Plaintiff's "intellectual property rights and other ownership interests" created by the contract.

INTERROGATORY NO. 3

Assuming the Facebook Contract between the parties is authentic, what are the ownership interests of all persons whom you claim owned any portion of the software, programming language and business interests defined in #1 above after execution of the Facebook Contract on April 28, 2003?

This question is necessary to know what percentage ownership anyone else had in the "software, programming language and business interests" as listed in the contract.  Arguably, the moment that Defendant Zuckerberg's interest fell below 50%, e.g. via transfer to another early stage investor after Plaintiff or via transfer to Facebook, Inc., he was unable to transfer "a half interest (50%) in the software, programming language and business interests" to Plaintiff.  Therefore, the moment Defendant Zuckerberg's interest fell below 50%, he arguably breached his

agreement with Plaintiff, selling or giving away sufficient percentage ownership such that he would be unable to fulfill his obligations under the FB Contract.

INTERROGATORY NO. 4

Assuming the Facebook Contract between the parties is authentic, list all persons with an ownership interest in the software, programming language and business interests as defined in #1 above at the time of the incorporation of thefacebook, Inc. (Facebook) in July 2004 and their respective percentage of ownership of each of the three items (i.e. software, programming language, business interests).

This question is necessary to know what percentage ownership anyone else had in the "software, programming language and business interests" as listed in the contract. Arguably, the moment that Defendant Zuckerberg's interest fell below 50%, e.g. via transfer to another early stage investor after Plaintiff or via transfer to Facebook, Inc., he was unable to transfer "a half interest (50%) in the software, programming language and business interests" to Plaintiff. Therefore, the moment Defendant Zuckerberg's interest fell below 50%, he arguably breached his agreement with Plaintiff, selling or giving away sufficient percentage ownership such that he would be unable to fulfill his obligations under the FB Contract.

INTERROGATORY NO. 5

Assuming the Facebook Contract between the parties is authentic, list the percentages of each person's ownership interest in the software, programming language and business interests as defined in #1 that was transferred into Facebook

on or after July 2004.

This question is necessary to know what percentage ownership anyone else had in the "software, programming language and business interests" as listed in the contract.  Arguably, the moment that Defendant Zuckerberg's interest fell below 50%, e.g. via transfer to another early stage investor after Plaintiff or via transfer to Facebook, Inc., he was unable to transfer "a half interest (50%) in the software, programming language and business interests" to Plaintiff.  Therefore, the moment Defendant Zuckerberg's interest fell below 50%, he arguably breached his agreement with Plaintiff, selling or giving away sufficient percentage ownership such that he would be unable to fulfill his obligations under the FB Contract.

This question also queries whether Defendant Zuckerberg ever transferred Plaintiff's 50% interest in the "software, programming language and business interests…" to Facebook, Inc. at all.

INTERROGATORY NO. 6

Assuming the Facebook Contract between the parties is authentic, list the consideration paid by Facebook to all persons whom you claim owned an interest in the software, programming language and business interests as defined in #1 in exchange for the transfer of that percentage ownership into Facebook on or after July 2004.

This question relates to whether Defendant Zuckerberg transferred all, or just some portion of his claimed interest in the "intellectual property" which 50% was committed to Plaintiff in the agreement into Facebook, Inc.  The consideration

6

paid to him by Facebook, Inc. for whatever intellectual property he transferred to Facebook, Inc. relates to a proper calculation of how much of that interest was transferred.

INTERROGATORY NO. 10

Assuming the Facebook Contract between the parties is authentic, did the contract authorize you to use all, some or none of the StreetFax software for purposes other than StreetFax?

This question relates to whether some, all or none of the StreetFax source code created by Defendant Zuckerberg was part of the intellectual property and other ownership rights created by the contract.

INTERROGATORY NO. 11

Assuming the Facebook Contract between the parties is authentic, what were Plaintiff's intellectual property rights in the StreetFax software created by the contract?

This question relates to whether some, all or none of the StreetFax source code created by Defendant Zuckerberg was part of the intellectual property and other ownership rights created by the contract.

INTERROGATORY NO. 12

Assuming the Facebook Contract between the parties is authentic, what were your intellectual property rights in the StreetFax software created by the contract?

This question relates to whether some, all or none of the StreetFax source code created by Defendant Zuckerberg was part of the intellectual property and

other ownership rights created by the contract.

INTERROGATORY NO. 13

Did you use any portion of the StreetFax software for any purpose related to Facebook or any other non-StreetFax purpose and if so on what date did that use begin describe that use of the StreetFax software on what date did use of that StreetFax software terminate?

This question relates to whether Defendant Zuckerberg engaged in a singular breach or multiple acts which can be construed as breaches of the agreement and whether he or Defendant Facebook is engaging in a continuous breach of the agreement.

INTERROGATORY NO. 14

Assuming the Facebook Contract between the parties is authentic, did you inform Facebook upon its incorporation that you did not own 100% of the software, programming language and business interests of the business?

Assuming the FB Contract is authentic, this question determines whether Defendant Zuckerberg transferred to other persons some, all or none of his interest in the "software, programming language and business interests" committed to Plaintiff before transferring that interest to Defendant Facebook, Inc. in exchange for stock in Defendant Facebook in July 2004.

INTERROGATORY NO. 15

If your answer to the previous question is "no", what percentage ownership in the software, programming language, and business interests did you tell Facebook

you owned upon its incorporation?

This question relates to the response to question 14 above.

INTERROGATORY NO. 16

List and describe all documents, including the year executed and all parties signing those documents reflecting the transfer into Facebook of any software, programming language and business interests as defined in #1 above.

When and how much of an interest in these items was transferred into Defendant Facebook relates to whether Defendant Zuckerberg breached the parties' agreement or perhaps not depending on whether he transferred less than 50% of the total interest in the "software, programming language and business interests" to others.

INTERROGATORY NO. 17

Provide the date when your ownership interest in Facebook fell below 50%.

Arguably, the moment that Defendant Zuckerberg's interest fell below 50%, e.g. via transfer to another early stage investor after Plaintiff or via transfer to Facebook, Inc., he was unable to transfer "a half interest (50%) in the software, programming language and business interests" to Plaintiff.  Therefore, the moment Defendant Zuckerberg's interest fell below 50%, he arguably breached his agreement with Plaintiff, selling or giving away sufficient percentage ownership such that he would be unable to fulfill his obligations under the FB Contract.

This question also queries whether Defendant Zuckerberg ever transferred Plaintiff's 50% interest in the "software, programming language and business

interests…" to Facebook, Inc. at all.

INTERROGATORY NO. 18

Assuming the Facebook Contract between the parties is authentic, what percentage ownership in the software, programming language and business interests of the business did Plaintiff own at the time of the incorporation of Facebook in Delaware?

If at the time of the incorporation of Defendant Facebook, Plaintiff's ownership of the intellectual property of the business was still 50%, then Defendant Zuckerberg had not yet breached the parties' agreement.

INTERROGATORY NO. 19

Assuming the Facebook Contract between the parties is authentic, was Plaintiff's interest in the software, programming language and business interests of the business transferred into Facebook and if so, what was the date of that transfer?

Defendants' attempted initially to argue that the transfer of intellectual property into the Florida, LLC in April of 2004 publicly repudiated and negated Plaintiff's ownership rights. This question seeks the same answer regarding the incorporation of Defendant Facebook in July 2004.

INTERROGATORY NO. 20

Assuming the Facebook Contract between the parties is authentic and Plaintiff's interest in the software, programming language and business interests of the business was transferred into Facebook when was the fact of that transfer first

publicly disclosed?

Same as the explanation for Question 20 above.

INTERROGATORY NO. 21

Assuming the Facebook Contract between the parties is authentic, list and describe all acts and their dates of occurrence that you claim constitute your breach of the contract.

Defendants' motion to dismiss alleges a breach date outside of the statute of limitations. However, as the court pointed out, that breach event was the transfer of intellectual property into the Florida, LLC, which, it turns out, Defendants acknowledged in the Saverin case, never happened. Therefore, Defendants motion for summary judgment alleging a breach of the statute of limitations is unmoored to any breach event with a date certain. This question seeks declaration by Defendants of when they are claiming the breach by Defendant Zuckerberg occurred since it most certainly could not have occurred in April 2004, the date in their motion.

INTERROGATORY NO. 23

List all dates when you or Defendant Facebook breached the Facebook Contract with Plaintiff and the act(s) which you claim breached the agreement; and whether that act(s) was ever repeated at any later point in time; and when that act(s) was communicated to Plaintiff, if ever; and when that act(s) was publicly disclosed, if ever.

This aligns with the reasoning behind question #22 and inquires about

whether Defendants are alleging an ongoing breach or a singular breach event in support of their motion for summary judgment for violation of the statute of limitations.

## QUESTIONS POSED TO DEFENDANT FACEBOOK

The interrogatories posed to Defendant Facebook are posed for the identical reasons behind those posed to Defendant Zuckerberg seeking information about the other side of the various transfer events noted above.  Obviously, when and if intellectual property rights or other ownership interests were transferred by Defendant Zuckerberg to Defendant Facebook documents and communications occurred that would inform the court about whether a breach event occurred and, if so, when it occurred.

The requests for production of documents all seek documentation that describes the property Defendant Zuckerberg did or did not transfer into Defendant Facebook at the time of its incorporation and what consideration (e.g. stock) was paid to Defendant Zuckerberg in exchange for that property.  Here again, if the documentation indicates that Defendant Zuckerberg did not claim to own 100% of the intellectual property then it is arguable he did not breach the agreement by the transfer of only his interest in the intellectual property into Facebook, Inc. However, if those documents reflect assertions by Defendant Zuckerberg that he did own 100% of the intellectual property, the presumed authenticity of the FB Contract, contradicts that claim and is an arguable breach at that moment. Those documents may or may not have been executed simultaneously with the

incorporation of Facebook in July 2004.  The date on those documents and their details are arguably the breach date of the agreement depending on their content.

## **CONCLUSION**

For the foregoing reasons, Mr. Ceglia respectfully requests this court deny Defendants request for a protective order and for sanctions.  Plaintiff's request are not abusive, they are merely questions and lists of documents requested.

    Respectfully submitted,

    /s/ Paul A. Argentieri

Paul A. Argentieri
188 Main Street
Hornell, NY 14843
607-324-3232 phone
607-324-6188
paul.argentieri@gmail.com