UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PAUL D. CEGLIA,

                          Plaintiff,

v.

MARK ELLIOT ZUCKERBERG, Individually, and
FACEBOOK, INC.

                          Defendants.

Civil Action No. : 1:10-cv-00569-RJA

**MOTION TO STRIKE NEW EXPERT REPORTS AND FOR ORDER PROHIBITING THE FILING OF NEW EXPERT REPORTS IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR FRAUD ON THE COURT**

Respectfully submitted,

/s/ Paul Artentieri

Paul A. Argentieri
188 Main Street
Hornell, NY 14843
607-324-3232 phone
607-324-6188
paul.argentieri@gmail.com

**MEMORANDUM**

Plaintiff respectfully requests this court:

1. Strike Defendants' submission of a new expert report authored by Defendants' expert Gus Lesnevich, Doc. No. 472-1; and
2. Issue an order prohibiting Defendants from violating this court's existing orders and attempting to submit any new expert reports

Under this court's expedited discovery order, Doc. No. 83, Defendants were given until September 9, 2011 to "provide to the Court and Plaintiff all reports documenting the findings of [their] examination [of the hard copy document and Plaintiff's electronic assets]." Doc. No. 83 at 3.

Defendants sought and obtained several extensions to that deadline. However, as of February 15, 2012, Defendants had not yet complied with that order. See, Doc. No. 293. As a result, this court entered a Civil Rule 16(b) discovery order and set a hearing on that order for March 28, 2012. Id. Defendants sought and received a one week extension of that hearing date, having it reset to April 4, 2012. Doc. No. 303. On March 26, 2012, one week before the scheduled 16(b) hearing date, Defendants finally filed their long promised expert reports along with a request to delay discovery. Doc. No. 319, 323. Defendants request to delay regular discovery was granted. Doc. No. 348. At the April 4, 2012 hearing, the court found Plaintiff was in compliance with the expedited discovery order, Doc. No. 83, ordering Defendants to comply with the final portion of that order - production of the Harvard email record of Defendant Zuckerberg. Doc. No. 348.

At the April 4, 2012 hearing, the court initially indicated it intended to allow Plaintiff to depose Defendants' experts and after those depositions, submit his experts' reports. Hearing Transcript, 4-4-12 at 183. Defendants objected to this procedure indicating it was "unfair" and

1

an "ambush." Hearing Transcript, 4-4-12 at 184. Following that exchange, the court relented and issued the current discovery order. Doc. No. 348. That order governed a limited period of expert discovery. Id. That order provided Plaintiff a 60 day deadline within which to submit his expert reports. Id. Only after Plaintiff's submission of his experts' reports was either party entitled to depose experts. That order did not provide for the submission of new expert reports by Defendants nor did it permit a surrebuttal of Plaintiff's expert reports. Id.

Before the deadline for Plaintiff's submission of his expert reports, he sought a one week extension to submit his expert reports. Doc. No. 391. Defendants' opposed that motion. Doc. No. 407. The request for an extension was denied. Doc. No. 408. The court made clear that even a week delay in bringing over a year of one sided discovery to a close would not be permitted.

Before his scheduled deposition, Plaintiff informed Defendants of his decision to not depose Gus Lesnevich. On August 9, 2012, in violation of the court's carefully crafted discovery schedule, Defendants filed new expert reports authored by Mr. Lesnevich beyond the court's previous deadlines. Doc No. 472-1. These reports are not supplemental. "Supplementation under the rules means correcting inaccuracies, or filling the interstices of a disclosure." *Keener v. U.S.*, 181 F.R.D. 639 (D. Mont. 1998).

This new report instead presents an entirely new theory based on "signature tracing" or "trace forgery." Defendants' desire to replace a failing fraud defense with a new one at this stage of the litigation is insufficient justification for their violation of this court's discovery orders. Courts have consistently found that "[p]arties are not allowed to supplement expert reports whenever they believe such supplemental reports would be desirable or necessary to their case."

2

*Minebea Co., Ltd. v. Papst*, 231 F.R.D. 3 (D.D.C. 2005).  "The supplementation rule does not permit a party to supplement whenever it wants to, but rather when the party discovers that the information it has disclosed is incomplete or incorrect." *Coles v. Perry*, 217 F.R.D. 1 (D.D.C. 2003).

     Defendants motive is transparent.  While having months to examine and re-examine the evidence during what this court acknowledged was "one sided discovery" they chose not to seek analysis of the signatures or initials on the FB contract.  Meanwhile, two of Plaintiff's experts did analyze those signatures and James Blanco concluded, undisputed by the Defendants, that the signature on page two of the FB Contract was authored by Defendant Zuckerberg.  "As the result of my forensic handwriting analysis, I determined that the 'Mark Zuckerberg' signature appearing on page two of the original Facebook Contract was indeed written by Mark Zuckerberg."  Doc. No. 415 at 39.  He also concluded that the initials "MZ" on page one of the FB contract were authored by Defendant Zuckerberg.  Id. at 46.  These facts place Defendant Zuckerberg in contact with both pages of the two page FB contract solidifying its authenticity from the pen of Defendant Zuckerberg itself.  To allow an additional report in at this late hour, after depositions, costing over $100,000 have been conducted, is unfair, unbalanced and prejudices Plaintiff.

     "To countenance a dramatic, pointed variation of an expert's disclosure under the guise of Rule 26(e) (1) supplementation would be unwise. It would invite the seasoned expert to lie in wait so as to express the genuine opinions only after plaintiff disclosed its opinions." *Keener v. U.S.*, 181 F.R.D. 639 (D. Mont. 1998).  Likewise, the remedy of permitting Plaintiff to re-depose witnesses providing new reports ignores the financial burden and time already expended in

compliance with the court's order following the April 4, 2012 hearing.  Such a remedy clearly provides an advantage to Defendants to drag such matters out at the helm of an endless supply of money.

The new expert report from Lesnevich and those Defendants are presumably lining up as of this writing, are focused entirely on work that could have been done before March 26, 2012.

 "Although this belated filing was styled a supplement to the earlier disclosure, it actually included information, reasoning, and opinions required to be contained in the initial disclosure. Supplementation under the rules means correcting inaccuracies, or filling the interstices of a disclosure. Here the difference between the two documents was dramatic. The second provided opinions that went to the heart of the case, while the first was tantamount to a non–opinion. " *Keener*.

As Defendants' key theory, the "page one substitution," crumbled following receipt of Plaintiff's experts' reports on June 4, 2012, their experts swung into action.  Defense expert Tytell admitted to conducting a range of tests and analysis following receipt of Plaintiff's experts' reports.

> "Q. How did you come to do that analysis?  Was that on your own you decided to embark on that?
> 
> A. Well, it grew out of my reading of Mr. Stewart's declaration and Mr. Blanco's declaration. They had a number of comments concerning some kind of an analysis that Mr. Lesnevich had done."  Tytell Depo. at 61.

4

This is not the first time the Defendants needed to resuscitate a theory or an expert witness' conclusions. In August of 2011, after finding no reportable scientific evidence of fraud, Defendants were forced to approach the court for additional ink samples with which they could concoct an alleged scientific test to challenge the authenticity of the FB Contract. The court correctly identified the true motive behind their request.

> "[COURT]  But the fact that they feel the need for additional samples, somebody might infer that they are having difficulty reaching the conclusion that the Defendants would like them to reach."  Hearing Transcript, 8-17-11 at 151.

Plaintiff suspected Defendants wanted to continue their gamesmanship and open up a new front in the case, a new theory, via these new expert reports they attempt to obscure with semantics as "supplemental findings." The sequence of their purported intended disclosure is revealing.

Mr. Lesnevich's deposition was scheduled for August 8, 2012. Following answers to questions from other experts' depositions and Mr.Lesnevich's expert witness mandatory "day rate" of $6,400.00, Plaintiff determined deposing Mr. Lesnevich wasn't economically feasible, unnecessary and contacted Defendants 48 hours before the deposition was to occur in New York. In response to that notification, Defendants counsel surprisingly admitted they intended to ambush Plaintiff's counsel at the beginning of Lesnevich's deposition with a new expert report Defendants euphemistically called "supplemental findings." This so-called supplement is more than twice the length in pages than Lesnevich's original report. Defendants' counsel intended to produce these seventy two (72) pages of supposed supplemental findings the day of the deposition, the very morning of the deposition, not in some meaningful increment before

5

deposition to give Plaintiff's experts a fair opportunity to prepare questions relative to this new report.  This was clearly a tactical ambush that Plaintiff avoided by deciding not to depose Lesnevich.  Defendants were intent on not showing their hand before Plaintiff took Lesnevich's expert deposition.

Plaintiff's deposition of Tytell, occurring days before Lesnevich's scheduled deposition, was the first time anyone from the defense disclosed their new theory of a "trace forgery" regarding Defendant Zuckerberg's signature on page two of the FB Contract.  Tytell Depo. at 55.  And, this theory grew out of evaluation of Plaintiff's expert reports submitted to Defendants on June 4, 2012.  "Well, it grew out of my reading of Mr. Stewart's declaration and Mr. Blanco's declaration."  Tytell Depo. at 61.  It was also the first time Defendants acknowledged they had abandoned their now discredited "page one substitution" theory that had sustained them for months during expedited discovery and was in fact the basis of their request for expedited discovery. During Tytell's deposition, we were likewise ambushed with Tytell's work, after June 4, 2012, that he had not converted to a report and had no intention to convert to a report as of his deposition.  Tytell Depo. at 72.

Mr. Tytell's supposed new work, detailed only verbally in his deposition, contradicts is entire first report, Doc. 330.

"The two-page Work for Hire document is not consistent with the normal preparation of a two-page document. Rather the use of multiple type styles and the pattern of ink usage indicate preparation of the two pages at different times."  Doc. No. 330.  This is the "page one substitution" theory.  It enabled Defendants to assert that page two of the FB Contract, obviously

6

containing Defendant Zuckerberg's authentic signature, was real, but page one was a forgery inserted into the document at a later date.

Mr. Tytell via his deposition testimony and Mr. Lesnevich via his new report, are abandoning that theory after reviewing Plaintiff's experts' reports. Both now conveniently believe both pages are a forgery.

"Supplementation was sought because the initial deposition of the expert did not go well, and the insurer gave no explanation for its delay until ten days after the deadline for submitting reports in seeking supplementation. Moreover, the supplementation would essentially create a new report and would prejudice other parties." *Reliance Ins. Co. v. Louisiana Land and Exploration Co.*, 110 F.3d 253 (5th Cir. 1997).

Plaintiff then confirmed that the overwhelming success during depositions of exposing the "page one substitution" theory as unfounded caused Defendants to manipulate Tytell in this way. Plaintiff suspected, prophetically as it turned out, that Lesnevich as well would be used by Defendants to attempt to introduce new theories in response to the fatal blows Defendants' "page one substitution" theory had sustained.

As the court once pointed out "a good lawyer never concedes a point" but surely the court would not agree that the intentional obfuscation Defendants are now engaged in is behavior to be commended. We believe these bad faith actions should be sanctioned.

<u>SUPPLEMENTING EXPERT REPORTS UNDER RULE 26 DOES NOT INCLUDE DEFENDANTS' FILING</u>

Although this belated filing was styled a supplement to the earlier disclosure, it actually included information, reasoning, and opinions required to be contained in the initial disclosure. Supplementation under the rules means correcting inaccuracies, or filling the interstices of a

disclosure. Here the difference between the two documents was dramatic. The second provided opinions that went to the heart of the case, while the first was tantamount to a non–opinion.

### DEFENDANT'S COUNSEL SNYDER PREVIOUSLY ACKNOWLEDGED THE UNFAIRNESS OF THE APPROACH THEY NOW SEEK WITH THIS FILING

While Defendants filing of Doc. No. 472-1 obviously implies their view of the inherent propriety of such late coming submissions, its counsel, Orin Snyder, has previously decried these tactics, if engaged in by Plaintiff, as unfair.

At the April 4, 2012 hearing, Defense Counsel Snyder, complained of the "unfair" advantage that would accrue to Plaintiff if Plaintiff was allowed to depose Defendants experts and only after those depositions, submit Plaintiff's experts' reports.

> **[Defense Counsel Snyder]  I've never heard of expert discovery proceed in the fashion where one party gets one side's expert reports and takes depositions, and then has the opportunity to put in their own reports, <u>unless we then after they submit their reports, you know, can have supplemental reports</u>. But we're just going to be in an inefficient mode there.**  Hearing Transcript, 4-4-12 at 186.  Emphasis added.

Snyder clearly indicates that a remedy to the court's then stated intention to permit Plaintiff to depose Defendants' experts <u>before</u> Plaintiff's experts' reports are submitted, was permission for Defendants to submit supplemental reports.  Id.  Logically, by virtue of the fact that the court ordered that depositions could only occur <u>after</u> submission of Plaintiff's experts' reports, necessarily means that the option of submitting supplemental expert reports was rejected.

> [Defense Counsel Snyder] I think he's characterized it that way to gain an unfair tactical advantage, so that <u>he doesn't have to show his hand before he takes our expert depositions</u>.  Id. at 185.  Emphasis added.

> **[Defense Counsel Snyder]  [W]e think it's appropriate for them to <u>give us their expert reports presumedly before those depositions</u> so that we have -- that's the normal procedure that you exchange expert reports before depositions <u>so that our**

8

**experts have an opportunity to read and be prepared to respond to.** **Otherwise, they're going to be asked 400 questions at a deposition about technical tests and other things that our experts won't have a chance to study or respond to.** Id. at 184. Emphasis added.

Defense counsel Snyder balked at the unfairness of Plaintiff having an advantage that Defendants now seize without even respecting the court sufficiently to seek leave to file new reports not contemplated by the current order governing expert discovery.

The court can rest assured that, if Defendants are permitted to submit new expert reports such as the one filed in Doc. No. 472-1, a tidal wave of new reports will be submitted before or in conjunction with their reply to Plaintiff's response to their motion to dismiss. Plaintiff respectfully requests this court safeguard the fairness of these proceedings and prohibit the Defendants, a billionaire individual and billionaire corporation, from gaining the advantage they railed against in the April 4, 2012 hearing.

## THE LAW PROHIBITS THE UNFAIR STRATEGY DEFENDANTS ARE EMPLOYING WITH THE SUBMISSION OF NEW EXPERT REPORTS

If a party has retained or employed an individual who is expected to testify as an expert witness pursuant to Federal Rule of Evidence 702, Federal Rule of Civil Procedure 26 mandates that a pretrial disclosure be made in the form of a written report2 signed and prepared by the witness.[1] The requirements of Rule 26(a) are mandatory and self-executing.[2]

Rule 26(a)

---

[1] See Fed. R. Civ. P. 26(a)(2)(B).

[2] Nguyen v. IBP, Inc., 162 F.R.D. 675, 681 (D. Kan. 1995) ("[i]f the expert is unable or unwilling to make the disclosures he should be excluded as a possibility for retention as an expert witness in the case").

9

Rule 26(a)(2)(B) requires all expert witnesses "retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony" to provide an appropriate written report. Id. Rule 26(a)(2) requires that the report be served on "other parties" and not just the adversary. Unless the trial court orders otherwise, the expert report must be provided ninety days before trial or, for experts whose testimony is intended solely to contradict or rebut other experts, within thirty days after the disclosure of the material to be rebutted.[3]  Rule 26 mandates full disclosure of expert witness testimony with the aim of reducing surprise and lowering litigation costs.[4]  Furthermore, since Rule 26 reports must disclose all the topics and opinions to which an expert expects to testify,[5] depositions—if taken—are expected to be more focused and efficient.[6]

The consequences of violating Rule 26 are severe:

> **[Any] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, <u>or on a motion</u> any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions.**[7]
> Emphasis added.

---

[3] Fed. R. Civ. P. 26(a)(2)(C).

[4] See Fed. R. Civ. P. 26(b)(4)(A) Advisory Committee's Note (1993); Fielden v. CSX Transp., Inc., 482 F.3d 866, 871 (6th Cir. 2007).

[5] See Fed. R. Civ. P. 26(a)(2)(B) (stating that a report must contain "a complete statement of all opinions to be expressed and the basis and reasons therefore").

[6] See Fed. R. Civ. P. 26(b)(4)(A) Advisory Committee's Note (1993) ("[s]ince depositions of experts required to prepare a written report may be taken only after the report has been served, the length of the deposition of such experts should be reduced, and in many cases the report may eliminate the need for a deposition").

[7] See Canterna v. United States, 2008 U.S. App. LEXIS 16653, at *10-11 (3d Cir. March 7, 2008) (quoting Fed. R. Civ. P. 37(c)(1)).  Emphasis added.

Violating the court's order by submitting new expert reports without seeking leave to, seems designed to motivate this very motion by Plaintiff hoping this court will accommodate the Defendants' wishes by inviting Plaintiff to spend even more money to re-depose Defendants' experts on as many new reports as they wish to submit. Such a remedy will cause the very delay that this court has consistently sought to avoid.

LESNEVICH'S NEW EXPERT REPORT

A careful review of Lesnevich's new report exposes that the conclusions it contains are based upon work that could easily have been done by Defendants' experts in the nine months they had for one-sided expedited discovery. Lesnevich is not correcting errors or typographical mistakes in his report. This new report is a direct rebuttal to Plaintiff's undisputed and devastating expert reports that Defendants now realize lays bare their failed promise to this court that "I respectfully disagree that the experts who submitted declarations on behalf of the plaintiff endorse or attest to under oath the authenticity of either the emails or the contract." Hearing Transcript, 6-30-11 at 31.

Lesnevich's report is a rebuttal expert report in its purest form. Tytell acknowledged not even examining the issues contained in Lesnevich's new report until after review of Plaintiff's experts' reports some time in June of 2012. Tytell Depo. at 49. As such, it was required to be submitted to Plaintiff within 30 days of Plaintiff's submission of his reports on June 4, 2012.[8]

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court strike Mr. Lesnevich's new report and issue an order prohibiting Defendants from submitting any new reports whether

---

[8] Covington v. Memphis Publ. Co., 2007 U.S. Dist. LEXIS 95842, at *9 (W.D. Tenn. Oct. 16, 2007).

11

they misleadingly title them "supplemental" or not. There will be ample time for Defendants to seek leave to supplement their reports following the court's decision on Defendants' motion to dismiss for fraud on the court.

Respectfully submitted,

/s/ Paul Artentieri

Paul A. Argentieri
188 Main Street
Hornell, NY 14843
607-324-3232 phone
607-324-6188
paul.argentieri@gmail.com