UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PAUL D. CEGLIA,

        Plaintiff,

   v.

MARK ELLIOT ZUCKERBERG and
FACEBOOK, INC.,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Civil Action No. 1:10-cv-00569-RJA

# DEFENDANTS' REDACTED MEMORANDUM OF LAW IN SUPPORT OF THEIR EIGHTH MOTION TO COMPEL AND FOR OTHER RELIEF

Thomas H. Dupree, Jr.
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
(202) 955-8500

Orin Snyder
Alexander H. Southwell
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193
(212) 351-4000

Terrance P. Flynn
HARRIS BEACH PLLC
726 Exchange Street
Suite 1000
Buffalo, NY 14210
(716) 200-5120

September 5, 2012

**PRELIMINARY STATEMENT**

Defendants and the Court now know that the April 13 Kasowitz Letter—concealed by Plaintiff Paul Ceglia for months—provides damning further confirmation of Ceglia's fraud. Indeed, that letter reveals that the Kasowitz firm           REDACTED


Defendants are unaware whether the Kasowitz firm or any other of Ceglia's nine former law firms ultimately           REDACTED

The April 13 Kasowitz Letter also shows that Ceglia continues to conceal critical documents. Specifically, that Letter reveals the existence of at least three other communications, all of which are "relevant to the genuineness of the dispute[d] contract," responsive to the Court's expedited discovery orders, and should have been produced to Defendants months ago. Doc. No. 478 at 4.           REDACTED


Ceglia has refused to produce all three communications, in violation of this Court's expedited discovery orders.

1

Furthermore, Ceglia continues to abuse the Protective Order entered by this Court. In an attempt to ensure that the corroborative evidence of his fraud contained in the April 13 Kasowitz Letter would not be publicly disclosed, Ceglia designated the letter "Confidential" pursuant to the parties' Joint Stipulated Protective Order. That designation is improper and Ceglia has made no attempt to justify it.

Accordingly, Defendants respectfully request an order (1) compelling Ceglia to produce

REDACTED

to Defendants, along with all attachments and/or embedded images, and any other related non-privileged materials that are also responsive to the Court's orders, and (2) overruling Ceglia's improper designation of the April 13 Kasowitz Letter as confidential. Alternatively, the Court should inspect *in camera* those communications and attachments and/or embedded images over which Ceglia claims privilege, and require Ceglia to bear his burden of justifying his privilege claims by competent evidence. Finally, this Court should award Defendants their attorneys' fees and costs, and all other relief to which they may be entitled.

**STATEMENT OF FACTS**

This is the <u>eighth</u> motion to compel necessitated by Ceglia's refusal to comply with this Court's discovery orders. *See* Doc. Nos. 95, 129, 155, 245, 295, 382, 461. This Court granted each of Defendants' seven previous motions to compel. *See* Doc. Nos. 107, 117, 152, 208, 272, 317, 357, 457, 478.

Defendants uncovered the existence of the April 13 Kasowitz Letter—REDACTED

—only after this Court rejected Ceglia's attempt to conceal it. Decision and

Order ("D&O") (Doc. No. 478) at 2.  First, the Court granted Defendants' Fifth Motion to Compel, ordering Ceglia to produce a lengthy compilation of emails referred to as Item 379 that he had sought to withhold by asserting baseless privilege claims.  *See* Doc. Nos. 294, 317.  Item 379 contains an April 13, 2011 e-mail, which referred to and attached the April 13 Kasowitz Letter.  *See* Doc. Nos. 317, 357, 361, 383-1 at 14.  When Ceglia ultimately produced Item 379, it became clear to Defendants that he had failed to produce the April 13 Kasowitz Letter, which is responsive to this Court's expedited discovery orders and demonstrated Ceglia's own attorneys' awareness of his fraud.

Thus, Defendants were forced to file their Sixth Motion to Compel, seeking an order directing Ceglia to produce the April 13 Kasowitz Letter specifically.  *See* Doc. No. 382.  The Court granted that motion as well, ordering Ceglia to produce the non-privileged April 13 Kasowitz Letter by July 9, 2012.  Doc. No. 457 at 43.  Rather than comply with this Court's clear directives and produce the April 13 Kasowitz Letter, Ceglia continued to refuse to do so. Instead, he simply produced—yet again—Item No. 379, without the April 13 Kasowitz Letter attached.  *See* Doc. No. 461 at 3.  Thus, Defendants were forced—yet again—to move to compel production of the April 13 Kasowitz Letter, even though this Court had already ordered it be produced.  *See* Doc. No. 461.

On August 15, 2012, the Court granted Defendants' Seventh Motion to Compel, ordering that Ceglia produce, within three days of the order, the April 13 Kasowitz Letter and its attachments.[1]  Doc. No. 478 at 8.  Having reviewed the contents of the April 13 Kasowitz

---

[1] Ceglia has filed Rule 72 Objections to this Court's Decision and Order granting Defendants' Motion to Compel (Doc. No. 478).  *See* Doc. No. 506.  In those Objections, Ceglia nowhere mentions his independent obligation to produce documents in response to the Court's August 18, 2011 Order (Doc. No. 117).  Nor does he mention his preparation of numerous privilege logs in connection with that production and others, none of which logs contained the April 13 Kasowitz Letter.  *See* Doc. No. 156-2.  Rather, Ceglia chooses to focus his bizarre and baseless attack on this Court's purported "misunderstanding of the facts," "the obvious confusion in the

3

Letter—as a result of Ceglia's unsolicited submission of that document *in camera*, in explicit contravention of the Court's order, *see* Doc. No. 464—the Court concluded that "the Kasowitz letter is relevant to the genuineness of the disputed[d] contract, the issue before the court on Defendants' pending motions to dismiss," and therefore should have been produced to Defendants or claimed as privileged. *Id.* at 4. Additionally, the Court granted Defendants' request for sanctions, imposing a $1,000 civil contempt fine each on Ceglia and on Boland, and awarding Defendants attorneys' fees incurred in connection with compelling Ceglia's compliance.[2]  Doc. No. 478 at 8.

On August 17, 2012, Ceglia finally produced the April 13 Kasowitz Letter—more than seven weeks after this Court specifically ordered him to do so, and more than one year after the Court's initial expedited discovery orders to which the April 13 Kasowitz Letter is responsive. *See* Doc. Nos. 83, 117. Ceglia designated the letter "Confidential" pursuant to the parties' Joint Stipulated Protective Order—an improper designation that Defendants ask this Court to overrule.

REDACTED

---

language" of its orders, and Defendants' purported "blatantly, intentionally false description of the Kasowitz letter." Doc. No. 506 at 3, 25, 27.

[2] Defendants' Fee Application is currently pending before the Court. *See* Doc. No. 503.

4

Upon reviewing the April 13 Kasowitz Letter, Defendants learned that Ceglia remained non-compliant with the Court's expedited discovery orders in at least two ways. First, Ceglia had not produced any of the attachments to the April 13 Kasowitz Letter. Those attachments are themselves responsive to the Court's expedited discovery orders, *see* Doc. No. 117 ¶ 2, and were explicitly sought by Defendants in their Sixth Motion to Compel, which this Court granted in its entirety. *See* Doc. Nos. 382 at 11, 457 at 11. The Court had also ordered Ceglia to file, as an exhibit to his opposition to Defendants' Seventh Motion to Compel, "a copy of Privilege Log Item 379 and all attachments . . . including [the Kasowitz letter] . . . and all attachment[s] to such letter, i.e., the 'certain documents that are referenced in the letter.'" But Ceglia had neither filed the attachments nor produced them to Defendants.

On August 22, 2012, Defendants brought this violation of the Court's orders to Ceglia's attention. *See* Southwell Decl., Ex. A. Ceglia belatedly produced the attachments to the April 13 Kasowitz Letter the next day. *See* Southwell Decl., Ex. B. Those attachments corroborate the evidence of Ceglia's fraud that Defendants presented to this Court in their Motion to Dismiss. *See* Doc. No. 319.

The attachments to the April 13 Kasowitz Letter include the authentic StreetFax Contract between Ceglia and Mr. Zuckerberg, which concerns only StreetFax and says absolutely nothing about Facebook. As the Court is well aware, Ceglia sent the StreetFax Contract to his lawyer Jim Kole at Sidley Austin, in two March 3, 2004 emails that Ceglia described to the Court as attorney-client privileged communications. *See* Doc. No. 319 at 28-32, 34-35; Doc. No. 241, Ex. B, at 1 (describing the emails as communications "from Paul Ceglia to his attorney Jim Kole, Esq."); *see also* Southwell Decl. (Doc. No. 241) ¶ 13.

5

The attachments to the April 13 Kasowitz Letter also include annotated printouts of the authentic emails that Mr. Zuckerberg exchanged with Ceglia and other representatives of StreetFax. As Defendants explained in their Motion to Dismiss for Fraud, *see* Doc. No. 319 at 36-38, those authentic emails further confirm that the StreetFax Contract is genuine and Ceglia's Work for Hire Document is a forgery. Indeed, as the Kasowitz attorneys realized before they terminated their representation of Ceglia, the authentic emails between Zuckerberg and StreetFax reflect an agreement to pay the amount specified by the StreetFax Contract ($18,000) and not the Work for Hire Document ($2,000). *See* Southwell Decl., Ex. B (annotated emails attached to April 13 Kasowitz Letter); Doc. No. 319 at 37 (quoting August 15, 2003 and August 16, 2003 emails between Ceglia and Zuckerberg). The handwritten notations on the printouts are asterisks that highlight these specific emails.

Defendants' review of the April 13 Kasowitz Letter exposed a second deficiency in Ceglia's production that remains unremediated. The April 13 Kasowitz Letter reveals the existence of three non-privileged communications involving the Kasowitz firm that are responsive to the Court's expedited discovery orders and should have been produced months ago:                           REDACTED

6

Defendants brought this violation of the Court's expedited discovery orders to Ceglia's attention in their same August 22nd email.  *See* Southwell Decl., Ex. A.  Ceglia has refused to produce any of the three withheld communications.  *See* Southwell Decl., Ex. B.

## ARGUMENT

**I.     This Court Should Order Ceglia To Produce The Three Withheld Communications.**

   **A.     The Three Withheld Communications Are Responsive To This Court's Expedited Discovery Orders.**

Like the April 13 Kasowitz Letter, which Ceglia concealed for months, all three withheld communications are "relevant to the genuineness of the dispute[d] contract," *see* Doc. No. 478 at 4, and responsive to the Court's expedited discovery orders.

The Court's August 18, 2011 Order directed Ceglia to identify and produce "all electronic copies or images of the purported contract," "all electronic versions or purported versions of any contract," and "all electronic versions of any emails or purported emails" among the relevant parties. *See* Doc. No. 117 ¶¶ 2-3.  It is evident from the context surrounding the April 13 Kasowitz Letter, as well as the content of the Letter itself, that the three withheld communications                                    REDACTED
and are otherwise "relevant to the genuineness of the dispute[d] contract." Doc. No. 478 at 4.

As Defendants explained in their Sixth Motion to Compel, Item 379 contains numerous emails that                         REDACTED
                              On March 8, 2011,              REDACTED
                                          Jason Holmberg, a third-party non-lawyer.
*See* Southwell Decl. Ex. A (Doc. No. 383-1) at 4-5.              REDACTED


                                        *See id.* at 22.       REDACTED

7

REDACTED on March 30, at 4:16 p.m., Marks received an email from Brian Halpin of Capsicum Group with the subject REDACTED The body of the email message says REDACTED

*Id.* at 12-13. This is the REDACTED, which Ceglia still has not produced in its native-form with all attachments included.

Later that same day, March 30, REDACTED writing in an email to co-counsel Terrence Connors at Connors & Vilardo, LLP: REDACTED

*Id.* at 19-20 (emphasis added). REDACTED

On April 11, DLA Piper and Lippes Mathias replaced Terry Connors, noticed their appearances in this case, and filed the First Amended Complaint. REDACTED <u>on April 12</u>, REDACTED

8

REDACTED

| | |
|---|---|
| The next day, on April 13, | REDACTED |
| —the April 13 Kasowitz Letter— | REDACTED |

| | |
|---|---|
| Furthermore, the emails in Item 379 establish | REDACTED |

And of course, all of these communications are, in the Court's words, "relevant to the genuineness of the dispute[d] contract," and thus should have be produced to Defendants or logged on the grounds of privilege. *See* Doc. No. 478 at 4.

Because all three withheld communications are "relevant to the genuineness of the dispute[d] contract" and responsive to this Court's orders, Defendants respectfully request that the Court order Ceglia to produce them immediately, with all attachments and/or embedded images.

9

**B.     The Three Withheld Communications Are Not Privileged.**

In response to Defendants' August 22nd email notifying Ceglia of his continuing violation of the Court's orders, his attorney Dean Boland asserted that all three communications are privileged. *See* Southwell Decl., Ex. B. But this Court has already determined that Ceglia waived the protection of the attorney-client privilege and work product doctrine over the subject matter of Kasowitz's withdrawal and the matters discussed in Item 379 in two ways: by failing to include these attachments to emails contained in Item 379 in a proper privilege log and by disclosing that information to Holmberg, a third-party non-lawyer. *See* Doc. No. 357 at 10-11; Doc. No. 361 at 4-5.

Ceglia failed to include the April 13 Kasowitz Letter, or any of the discoverable communications that it references, on any privilege log submitted in this case. As this Court held, his failure to do so vitiates any privilege that may have attached to those communications. *See* Doc. No. 457 at 10-11 (holding that "[h]ere, Plaintiff does not dispute that the Kasowitz Letter contains relevant information or that, but for the asserted privilege, would be discoverable. Nor does Plaintiff deny failing to list the Kasowitz Letter in his privilege log" in response to Defendants' discovery requests"). This is because a party is obligated to promptly provide the adverse party with notice of a claimed privilege by providing a privilege log describing the withheld information. *See* Fed. R. Civ. P. 26(b)(5)(A). Failure to do so results in a waiver of the privilege in the withheld information. *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 2010 WL 2595332, at *5 (W.D.N.Y. June 24, 2010).

Even if Ceglia had properly included in his privilege log the communications to which he is now, belatedly, claiming privilege, because he disclosed the information contained in Item 379 to Holmberg, a third-party, Ceglia has waived privilege over all information to which Holmberg was "privy," even when he was not a "direct []or indirect recipient of any specific email." Doc. No. 361 at 4; *see also Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 95-96 (W.D.N.Y. 2011) (citing cases for proposition that subject-matter waiver occurs where holder of the privilege discloses a significant part of the matter of the communication).

Ceglia challenged this finding of subject-matter waiver by filing Rule 72 Objections to this Court's April 19 Decision and Order granting Defendants' Fifth Motion to Compel (Doc. No. 357). *See* Doc. No. 367. District Judge Arcara affirmed this Court's April 19 Decision and Order "in its entirety." Doc. No. 480 at 5.

Ceglia has now produced several emails on the topic of the Kasowitz firm's withdrawal, as well as the April 13 Kasowitz Letter itself. As this Court has repeatedly found, there has been a general subject-matter waiver on the subject of the Kasowitz firm's withdrawal. *See* Doc. Nos. 361 at 4-5, 480 at 4-5.

Thus, all three withheld communications are non-privileged and must be produced to Defendants immediately.

## II. This Court Should Overrule Ceglia's Improper Designation Of The April 13 Kasowitz Letter As Confidential.

This Court has on several occasions overruled Ceglia's abusive confidentiality designations. *See, e.g.*, Doc. Nos. 107, 117, 208. Ceglia's latest attempt to hide behind the parties' Protective Order is similarly inappropriate. This Court should overrule his improper designation of the April 13 Kasowitz Letter as confidential.

11

Consistent with the procedures set forth in the Protective Order, *see* Doc. No. 86, ¶ 5, Defendants objected to Ceglia's confidentiality designation and asked that Ceglia withdraw it. *See* Southwell Decl., Ex. A. Ceglia responded by asserting that that his designation is "proper." *See* Southwell Decl., Ex. B. He made absolutely no attempt to explain or justify the designation, as is his obligation under federal law.

The Protective Order provides that "[t]he designating party may designate documents, materials, or information as 'CONFIDENTIAL — SUBJECT TO PROTECTIVE ORDER' if the party believes in good faith that the documents, materials, or information contain confidential information that is not publicly available (such as proprietary or confidential business, technical, sales, marketing, financial, commercial, private, or sensitive information, or information that is otherwise reasonably designable as confidential)." Doc. No. 86, ¶ 3. The parties' intent, reflected in the plain text of the Protective Order, was to protect information as to which there is a legitimate, good-faith basis for confidential treatment, such as sensitive financial information, corporate trade secrets, or sensitive personal information like bank account records or social security data. The Protective Order was obviously not intended to shield from disclosure documentary evidence of Ceglia's fraud, however devastating that evidence might be to him. Indeed, the Protective Order was entered solely to guide the parties' exchange of information during the Court-authorized expedited discovery, which Defendants had sought on the explicit basis that Ceglia was committing a massive fraud. *See* Doc. Nos. 45, 86.

Furthermore, Ceglia has made no attempt to justify his designation of the April 13 Kasowitz Letter as confidential. Ceglia, as the designating party, bears the burden of justifying his designation. *See Koch v. Greenberg*, 2012 U.S. Dist. LEXIS 58608, at *5 (S.D.N.Y. Apr. 13, 2012) (citations omitted). As this Court explained in its August 12, 2011 Order overruling most

of Ceglia's initial confidentiality designations: "Good cause for including a document within the scope of a protective order entered pursuant to Rule 26(c) exists when a party shows that disclosure will result in a clearly defined specific and serious injury." Doc. No. 107 at 4 (citing *In re September 11 Litigation*, 262 F.R.D. 274, 277 (S.D.N.Y. 2009) (internal quotation marks and citation omitted)). Needless to say, the desire to avoid "adverse publicity" or to conceal evidence of one's criminal misconduct is not "sufficient to justify judicial protection from disclosure." *Koch*, 2012 U.S. Dist. LEXIS 58608, at *6 (citation omitted); *see also In re Pasquale J. Vatsala Vescio*, 220 B.R. 195, 201 (Bankr. D. Vt. 1998) (providing access to documents that allegedly demonstrated fraud committed on sister federal court, and refusing "to permit any order of ours to shield a party from accountability to the Court of which we are a unit").

Ceglia has not made any attempt to meet his burden. He has not identified <u>any</u> injury that will result from disclosure of the April 13 Kasowitz Letter, let alone a "clearly defined specific and serious injury." Again, Ceglia's desire to avoid public accountability for his misconduct does not justify his misuse of this Court's authority.

This Court should overrule Ceglia's designation of the April 13 Kasowitz Letter as improper and unwarranted.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request an order compelling Ceglia to produce REDACTED to Defendants, along with all attachments and/or embedded images, and any other related non-privileged materials that are also responsive to the Court's orders. Alternatively, the Court should inspect *in camera* those communications and attachments and/or

embedded images over which Ceglia claims privilege, and require Ceglia to bear his burden of justifying his privilege claims by competent evidence.  The Court should also overrule Ceglia's improper designation of the April 13 Kasowitz Letter as confidential.  Finally, this Court should award Defendants their attorneys' fees and costs, and all other relief to which they may be entitled.

Dated:  New York, New York
        September 5, 2012

Respectfully submitted,

/s/ Orin Snyder

Thomas H. Dupree, Jr.
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
(202) 955-8500

Orin Snyder
Alexander H. Southwell
Matthew J. Benjamin
Amanda M. Aycock
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193
(212) 351-4000

Terrance P. Flynn
HARRIS BEACH PLLC
726 Exchange Street
Suite 1000
Buffalo, NY 14210
(716) 200-5120

*Attorneys for Defendants Mark Zuckerberg and Facebook, Inc.*