UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PAUL D. CEGLIA,                                    :
                                                   :
                    Plaintiff,                     :
                                                   :        Civil Action No. 1:10-cv-00569-RJA
        v.                                         :
                                                   :        **DECLARATION OF**
MARK ELLIOT ZUCKERBERG and                         :        **ALEXANDER H. SOUTHWELL**
FACEBOOK, INC.,                                    :
                                                   :
                    Defendants.                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

        I, ALEXANDER H. SOUTHWELL, hereby declare under penalty of perjury that the

following is true and correct:

        1.      I am an attorney licensed to practice law in the State of New York and admitted to

practice before this Court.  I am a partner in the New York office of the law firm of Gibson,

Dunn & Crutcher LLP ("Gibson Dunn"), counsel of record for Mark Elliot Zuckerberg and

Facebook, Inc. ("Facebook") in the above-captioned matter.  I make this Declaration in Support

of Defendants' Application for Recovery of Expenses ("the Application") for payment of fees

and costs incurred as a result of Ceglia's failure to provide adequate notice of cancellation of the

depositions of Defendants' experts.  I have personal knowledge of the information set forth

herein based upon my direct involvement in the matters at issue and upon my review of the

documents referenced below.

        2.      Attached hereto as Exhibit A is a true and correct copy of an email dated June 19,

2012 from Dean Boland to me, Paul Argentieri, Neil Broom, Jim Blanco, Larry Stewart, and

Jerry Grant, with the subject "Broom deposition and other witnesses" in which Boland proposes

coordinating schedules in order to allow each parties' experts to attend the deposition of the

opposing parties' experts in the same field.  In addition, Boland represents that he would not need more than two hours with each of Defendants' forensic document examiners.

3.      Attached hereto as Exhibit B is a true and correct copy of an email dated June 19, 2012 from Dean Boland to me, Orin Snyder, Paul Argentieri, with the subject "Phone call" in which Boland proposes a conference call with Defendants' counsel to coordinate schedules for conducting expert depositions.

4.      On June 21, 2012, Plaintiff noticed the depositions of ten Defendants' experts—Eric Friedberg, Bryan Rose, Michael McGowan, Jason Novak, Gerald LaPorte, Peter Tytell, Albert Lyter, Gerald McMenamin, Gus Lesnevich, and Frank Romano—for the last week of July and the first week of August.

5.      That same day and shortly after Ceglia noticed Defendants' experts' depositions, I had a meet-and-confer telephone call with Ceglia's counsel Dean Boland.  On that call, Boland and I discussed alternative deposition dates for both parties' experts.  Boland represented that he would require a full seven hours each to depose Mr. LaPorte and Mr. Lesnevich, but that the remainder of Defendants' experts could be scheduled as half-day depositions with two depositions per day.  In addition, on this call, Boland and I agreed that the deposing party would pay the deposed expert's appearance fees for the deposition on the day of the deposition, and would also, within a reasonable time, reimburse each expert for reasonable travel and lodging expenses that were incurred.  Boland and I also agreed that the parties would not pay the deposed expert's travel time.

6.      Attached hereto as Exhibit C is a true and correct copy of a letter dated June 22, 2012 from me to Dean Boland confirming the parties' agreement from the June 21, 2012 meet-

and-confer telephone call regarding payment of fees and expenses incurred by each expert in attending his deposition.

7.      Defendants have paid all fees and expenses associated with the deposition of Ceglia's experts.  However, the fees and expenses associated with the deposition of Dr. Lyter have still not been paid.

8.      Attached hereto as Exhibit D is a true and correct copy of a letter from me to Dean Boland dated June 25, 2012 proposing a schedule for ten Defendants' experts.

9.      Attached hereto as Exhibit E is a true and correct copy of an email dated July 15, 2012 from Dean Boland to Paul Argentieri and me with the subject "Depositions of the Stroz Witnesses" in which Boland confirms that he intends to depose Mr. Novak on July 18 and Mr. Friedberg on July 19.

10.     Attached hereto as Exhibit F is a true and correct copy of an email exchange dated July 16, 2012 between Dean Boland, Paul Argentieri, and me with the subject "Stroz depositions" in which Boland confirms what he orally told me during a break in the deposition of Walter Rantanen: that he no longer intended to depose Mr. Friedberg and Mr. Novak.  This cancellation of Mr. Friedberg's and Mr. Novak's depositions was provided less than 48 hours before the first deposition of a Stroz Friedberg expert was scheduled to begin.

11.     Attached hereto as Exhibit G is a true and correct copy of an email exchange dated July 12, 2012 between Dean Boland, Matthew Benjamin, Amanda Aycock, Paul Argentieri, and me with the subject "Rantanen Deposition on for Monday" in which Boland confirms that he intends to depose Mr. Tytell and Dr. Lyter on July 25.

12.     On July 16, 2012, during a break in the deposition of Walter Rantanen, Boland notified me of conflicts that required him to reschedule the depositions of Mr. Tytell, Dr. Lyter,

and Mr. Lesnevich.  Boland and I then agreed that Boland would depose Mr. Tytell and Dr.

Lyter on August 2 and Mr. Lesnevich on August 8.

13.     On July 19, 2012, during a break in the deposition of Mr. McGowan, Boland

confirmed that he intended to depose Mr. Tytell and Dr. Lyter on August 2 and Mr. Lesnevich on

August 8, 2012.  In addition, Boland confirmed that he intended to depose Professor

McMenamin on August 3.

14.     Attached hereto as Exhibit H is a true and correct copy of an email dated August

1, 2012 from Dean Boland to Paul Argentieri and me with the subject "Deposition Cancellation"

in which Boland, citing a lack of availability of flights from Philadelphia to New York before

3:20 p.m. on August 2, cancels the depositions of Mr. Tytell and Dr. Lyter.  In addition to

cancelling Mr. Tytell's and Dr. Lyter's depositions, Boland confirms that he will depose

Professor McMenamin on August 3.  This email cancelling Mr. Tytell's and Dr. Lyter's

depositions was sent around 11:58 pm. on the night before the depositions were scheduled to

begin.

15.     Under my direction, on August 2, 2012, my colleague Amanda Aycock

determined that there were multiple available flights leaving Philadelphia on the morning of

August 2 and arriving in New York before 9:00 a.m.  In addition, Ms. Aycock also determined

that there were multiple available trains leaving Philadelphia on the morning of August 2 and

arriving in New York before 9:00 a.m.

16.     Attached hereto as Exhibit I is a true and correct copy of an email exchange dated

August 2, 2012 between Dean Boland, Matthew Benjamin, Orin Snyder, Paul Argentieri, and me

with the subject "RE: Deposition Scheduling" in which Boland first reconfirms that he intends to

take the deposition of Professor McMenamin on August 3.  Later in the exchange, Boland

cancels the deposition of Professor McMenamin and reschedules the deposition of Mr. Tytell for August 3 and Dr. Lyter for August 10.  This email cancelling Professor McMenamin's deposition was sent around 8:30 p.m. on the night before the deposition was scheduled to begin.

17.      Attached hereto as Exhibit J is a true and correct copy of an email dated August 6, 2012 from Dean Boland to Paul Argentieri and me with the subject "Cancellation of Lesnevich Deposition" in which Boland states that he no longer wishes to depose Mr. Lesnevich.  This email cancelling Mr. Lesnevich's deposition was sent less than 48 hours before the deposition was scheduled to begin.

18.      Attached hereto as Exhibit K is a true and correct copy of an email dated June 27, 2012 from Dean Boland to Paul Argentieri and me with the subject "Deposition dates" in which Boland confirms that he will take the deposition of Professor Romano on August 14.

19.      Attached hereto as Exhibit L is a true and correct copy of an email dated August 13, 2012 from Dean Boland to Paul Argentieri and me with the subject "Cancellation of Deposition" in which Boland states that he will not depose Professor Romano.  I received the email while Ceglia's expert John Paul Osborn was being deposed and promptly informed Ceglia's counsel Paul Argentieri, who was in attendance, that Defendants would be seeking reimbursement for costs and fees associated with the untimely cancellation of Professor Romano's deposition and the depositions of others of Defendants' experts.  This email cancelling Professor Romano's deposition was sent around 2:30 p.m. on the afternoon before the deposition was scheduled to begin.

20.      Attached hereto as Exhibit M is a true and correct copy of a letter dated August 22, 2012 from me to Dean Boland requesting that Ceglia reimburse Defendants for costs and fees incurred as a result of preparing for depositions which Ceglia untimely cancelled.

21.     Attached hereto as Exhibit N is a true and correct copy of an email dated August 3, 2012 from Amanda Aycock to Dean Boland, copying Matthew Benjamin and me in which Defendants' request reimbursement for the untimely cancellation of Mr. Tytell's deposition.

22.     Attached hereto as Exhibit O is a true and correct copy of an email exchange dated August 6, 2012 between Dean Boland, Paul Argentieri, and me in which I confirm receipt of Boland's email cancelling Mr. Lesnevich's deposition and notify Ceglia's counsel of Defendants' intention to seek reimbursement for costs and fees incurred as a result of the untimely cancellation of the deposition.

23.     Attached hereto as Exhibit P is a true and correct copy of an email dated August 23, 2012 from Dean Boland to Paul Argentieri and me with the subject "Expert Deposition costs/expenses" in which Boland demands invoice-level detail for the reimbursements sought by Defendants.

24.     Attached hereto as Exhibit Q is a true and correct copy of an email dated August 31, 2012 from me to Dean Boland, copying Paul Argentieri, Matthew Benjamin, and Amanda Aycock in which I provide a summary of costs and fees incurred as a result of Ceglia's untimely cancellation of Defendants' experts' depositions, itemization for the attorneys' and witness fees resulting from preparation time expended in anticipation of the depositions Ceglia untimely cancelled, and invoices for the experts from whom Defendants have received final invoices.

25.     Attached hereto as Exhibit R is a true and correct copy of an email dated September 6, 2012 from Dean Boland to Paul Argentieri and me in which Boland claims a willingness to discuss Defendants' request for reimbursement, but requires that Defendants make certain concessions about the parties' agreement concerning expert costs.

26.     Below is a chart summarizing the costs incurred as a result of the untimely

cancellation of depositions.  These costs have been split into four categories:  travel and lodging,

expert appearance fees, costs incurred as a result of the time expended by each expert in

preparation for his cancelled deposition, and costs incurred as a result of the time expended by

Defendants' counsel in preparing each expert for his cancelled deposition.  Travel and lodging

expenses were calculated based on invoices submitted by each expert.  The expert appearance

fees represent the fees each party agreed to pay the experts the party planned on deposing.  The

costs incurred as a result of the time expended by each expert were calculated based on each

expert's hourly rate and the expert's invoiced time entries.

|  | Travel and Lodging | Appearance Fee | Witness Prep Time | Attorney Prep Time | TOTALS |
|---|---|---|---|---|---|
| Friedberg, E. | n/a | $3,412.50 | $6,093.75 | $6,500.00 | **$16,006.25** |
| Lesnevich, G. | $2,228.97 | $6,400.00 | $4,000.00 | $2,560.00 | **$15,188.97** |
| Lyter, A. | $1,286.00 | $1,500.00 | $4,200.00 | $3,500.00 | **$10,486.00** |
| McMenamin, G. | $3,665.00 | $5,000.00 | $8,188.00 | $11,085.00 | **$27,938.00** |
| Novak, J. | $649.51 | $1,662.50 | $6,925.00 | $5,770.00 | **$15,007.01** |
| Romano, F. | $1,599.52 | $875.00 | $2,500.00 | $7,340.00 | **$12,314.52** |
| Tytell, P. | n/a | $1,700.00 | n/a | n/a | **$1,700.00** |
| TOTALS | $9,429.00 | $20,550.00 | $31,906.75 | $36,755.00 | **$98,640.75** |

27.     Attached hereto as Exhibit S is a true and correct copy of the narrative

descriptions of legal services rendered by Gibson Dunn attorneys, reflecting time expended by

them in connection with preparing Defendants' experts in anticipation for their depositions,

which were untimely cancelled by Ceglia.  On some days, attorneys rendered services that were

related to both the preparation work as well as other work relating to the matter.  To the extent

that a particular time entry pertained to both the preparation work and other work, the attached

compilation reflects only time entries pertaining to the time expended in preparing Defendants'

experts.  These entries reflect conservative allocations of time, ensuring that the total time

claimed for the time expended in preparing Defendants' experts is less than the actual time

incurred on such work.  This allocation is based on the time entries themselves and upon my personal experience with the case.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 6th day of September, 2012 at New York, New York.

_____
Alexander H. Southwell