UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────────

PAUL D. CEGLIA,

**DECISION**
                                    Plaintiff,          **and**
                v.                                      **ORDER**

MARK ELLIOT ZUCKERBERG, and          **10-CV-00569A(F)**
FACEBOOK, INC.,

                                    Defendants.

───────────────────────────────────

APPEARANCES:        PAUL A. ARGENTIERI, ESQ.
                    Attorney for Plaintiff
                    188 Main Street
                    Hornell, New York 14843

                    BOLAND LEGAL, LLC
                    Attorney for Plaintiff
                    DEAN M. BOLAND, of Counsel
                    18123 Sloane Avenue
                    Lakewood, Ohio 44107

                    GIBSON, DUNN & CRUTCHER, LLP
                    Attorneys for Defendants
                    ORIN S. SNYDER,
                    ALEXANDER H. SOUTHWELL, and
                    THOMAS H. DUPRESS, JR., of Counsel
                    200 Park Avenue, 47th Floor
                    New York, New York 10166-0193

## JURISDICTION

This action was referred to the undersigned by Honorable Richard J. Arcara on

May 27, 2011 for pretrial matters.  The action is presently before the court on Plaintiff's

motion to strike Defendants' expert witness report (Doc. No. 499), filed August 22,

2012.

## BACKGROUND and FACTS[1]

In this action, Plaintiff Paul D. Ceglia ("Plaintiff"), alleges that a "Work for Hire" contract ("the purported contract"), purportedly executed on April 28, 2003 by Plaintiff and Defendant Mark Elliott Zuckerberg ("Zuckerberg"), established a partnership for the development and commercialization of two separate internet business ventures including "The Face Book," the social-networking website now known as Defendant Facebook, Inc. ("Facebook"), and StreetFax ("StreetFax"), a project which Plaintiff was developing and hoped to market for profit.  The purported contract provides, as relevant here, Plaintiff would assist in funding Facebook's development in exchange for "a half interest (50%) in the software, programming language and business interests derived from the expansion of that service to a large audience."  First Amended Complaint (Doc. No. 39) ("Amended Complaint") ¶ 1.  Plaintiff asserts seven claims for relief alleging breach of fiduciary duty, actual and constructive fraud, and breach of contract. Defendants contend the purported contract is a forgery, and that the real contract executed on April 28, 2003, is a two-page document titled "StreetFax" ("the StreetFax document"), containing the entire agreement reached by Plaintiff and Zuckerberg on April 28, 2003, which provided that Zuckerberg, in exchange for monetary payment from Plaintiff, would perform programming work for Plaintiff's StreetFax project.  A copy of the StreetFax document was located as an attachment to an email within the memory of one of Plaintiff's computers during a forensic examination performed by Defendants' digital forensics and electronic evidence experts Stroz Friedberg, LLC

---

[1] The Facts are taken from the pleadings and motion papers filed in this action.

("Stroz Friedberg"), in July 2011 in connection with this action.[2]

On March 26, 2012, Defendants filed two dispositive motions, including a motion to dismiss (Doc. No. 318) ("Motion to Dismiss"), and for judgment on the pleadings (Doc. No. 320) ("Motion for Judgment") (together, "Defendants' Dispositive Motions"), and also moved to stay discovery pending resolution of the Dispositive Motions (Doc. No. 322) ("Motion to Stay").  In a Minute and Order entered on April 4, 2012 (Doc. No. 348) ("April 4, 2012 Order"), the undersigned granted the Motion to Stay in part, gave Plaintiff 60 days in which to file expert reports opposing Defendants' Motion to Dismiss, after which both Plaintiff and Defendants had two months in which to depose the experts, following which Plaintiff was given two months in which to file his opposition to Defendants' Dispositive Motions, and Defendants thereafter had 30 days in which to file any reply.  On August 3, 2012, all parties joined in a motion (Doc. No. 468) requesting a ten-day extension of the deadline set by the April 4, 2012 Order.  By Text Order dated August 6, 2012 (Doc. No. 471) ("August 6, 2012 Order"), the joint motion was granted, and the deadline to conclude expert depositions was extended from August 4, 2012 to August 14, 2012, with the other deadlines also extended by 10 days.

The Motion to Dismiss is predicated on Defendants' argument that the purported contract is a forgery, such that Plaintiff, by filing and litigating the instant action, has perpetrated a fraud on the court, and that Plaintiff has engaged in litigation misconduct including, *inter alia*, the willful destruction of critical and relevant evidence.  Defendants' Motion to Dismiss relies in large part on the reports of Defendants' experts including, as

---

[2] Plaintiff maintains the StreetFax document is fraudulent, and that Defendants' digital forensic experts planted such document on Plaintiff's computer.

relevant to the instant motion, a report prepared by forensic document examiner and handwriting expert Gus R. Lesnevich ("Lesnevich"), dated March 25, 2012.  Expert Report of Gus R. Lesnevich, Forensic Document Examiner ("Initial Report"), filed March 26, 2012, as Exh. E (Doc. No. 329), to Defendants' Motion to Dismiss.  In his Initial Report, Lesnevich concluded that during the course of this litigation, Plaintiff has proffered at least two different versions of the purported contract, including one that was attached to the original complaint, and a different one produced to Plaintiff's expert for examination in January 2011, and then to Defendants' experts for examination in July 2011.  This conclusion was reached after Lesnevich analyzed four separate electronic images of the purported contract, including (1) an image in TIF file format[3] sent by Plaintiff to his attorney, Paul A. Argentieri, Esq. ("Argentieri"), on June 27, 2010 ("Q-1"); (2) an image attached to the original complaint filed June 30, 2010 ("Q-2"); (3) an image taken by Plaintiff's expert, Valerie Aginsky ("Aginsky"), during Aginsky's January 13, 2011 examination of the purported contract ("Q-3"); and (4) an image taken by Defendants' forensic document examiner expert Peter V. Tytell ("Tytell"), during Defendants' July 14, 2011 examination of the purported contract presented by Argentieri ("Q-4").[4]  In his Initial Report prepared based on his analysis of the four images, Lesnevich identified 20 dissimilarities among the four images, all found on page 1 of the purported contract.  The types of dissimilarities Lesnevich observed

---

[3] "TIF" is an acronym for "tagged image file" and refers to a file format for storing images such as photographs, resolution-dependent graphics or scanned images of documents.  *See* TIF vs. PDF Formats, *available at*: http://www.ehow.com/about_6464437_tif-vs_-pdf-formats.

[4] The record does not indicate which of the two asserted versions of the purported contract is attached as an exhibit to the Amended Complaint.

include dissimilarities as to (1) slant/slope of individual letters and numbers, Initial

Report at 3-10; (2) letter formation or design of the letters, *id.* at 11-14; (3) letter

spacing or placement on the document, *id.* at 15-20; (4) beginning/ending strokes, *id.* at

21-22;  (5) height-relationship, *id.* at 23-26; and (6) alignment of the handwritten

interlineations with certain typeface letters, *id.* at 27-29.  Both Q-1 and Q-2 contained

the same dissimilarities on page 1 as Q-3 and Q-4, leading Lesnevich to conclude two

different versions of the purported contract had been proffered, with Q-1 and Q-2 being

different images of the version attached as an exhibit to the original complaint ("first

version"), and Q-3 and Q-4 being different images of the version proffered for

examination by Plaintiff's expert Aginsky and Defendants' experts ("second version").

 For example, one of the "slant/slope dissimilarities" Lesnevich observed was that

in "the word 'May' in the questioned handwritten interlineations . . . the legs of the letter

"M" run parallel to each other on Exhibits Q-1 and Q-2.  However, on Exhibits Q-3 and

Q-4, the legs of the letter "M" do not run parallel to each other."  Initial Report at 3-4 and

Fig. 2 at 6. With regard to letter spacing or placement on the document, Lesnevich

"examined the number '2003' in the questioned handwritten interlineations and found

that the space between the numeral '2' and the numeral '0' on Exhibits Q-1 and Q-2 is

significantly smaller than the space between the numeral '2' and the numeral '0' on

Exhibits Q-3 and Q-4."  Initial Report at 15 and Fig. 12 at 18.

 In accordance with the April 4, 2012 Order, on June 4, 2012, Plaintiff filed his

expert reports with exhibits, including Plaintiff's expert witness reports (Doc. No. 415)

("Doc. No. 415").  On June 19, 2012, Plaintiff moved to strike Doc. No. 415 and all

related exhibits, requesting permission to refile Doc. No. 415 with redacted exhibits, and

the motion was granted by a text order entered June 20, 2012 (Doc. No. 450). By order entered June 26, 2012, Plaintiff re-filed Doc. No. 415, redacted, as the Declaration of Forensic Document Examiner James A. Blanco in Support of Plaintiff's Forthcoming Response to Defendants' Motion to Dismiss for Fraud (Doc. No. 459) ("Blanco Report"), attached to which are the reports of Plaintiff's other experts.

After preparing his Initial Report, Lesnevich continued to examine the four images based on which Lesnevich prepared a Supplemental Report ("Supplemental Report") (Doc. No. 472-1). In the Supplemental Report, Lesnevich particularly focused on the second pages of the four copies of the purported contract, on which 12 dissimilarities were noticed. Consistent with the dissimilarities found among the four copies of page 1, Q-1 and Q-2 contained the same dissimilarities on page 2 as Q-3 and Q-4, corroborating Lesnevich's conclusion in the Initial Report that Plaintiff has proffered at least two different versions of the purported contract during this litigation. The types of dissimilarities Lesnevich observed include dissimilarities as to (1) beginning/ending strokes, Supplemental Report at 6-14; (2) letter formation or design of the letters, *id.* at 15-30; and (3) letter spacing or placement on the document, *id.* at 31-33. Lesnevich also examined the handwritten signatures, signature dates, and initials on Exhibit Q-3, being one of the two copies of the second version of the purported contract and, more specifically, the image taken by Plaintiff's expert, Aginsky during Aginsky's January 13, 2011, physical examination of the purported contract, and compared such handwritings to known handwriting exemplars of Zuckerberg. Lesnevich "observed significant evidence of changes in direction, hesitation, unnatural writing movement, poor line quality, angular writing movements, differences in letter

formation and design, and beginning stroke dissimilarities in the questioned Zuckerberg signature and date of signature on Exhibit Q-3." Supplemental Report at 34. Lesnevich concluded "that the questioned Zuckerberg signature and date of signature on Exhibit Q-3 were slowly drawn and not naturally written." *Id.* In particular, Lesnevich found with regard to Zuckerberg's signature (1) line quality dissimilarities, Supplemental Report at 34-38; (2) letter formation or design of letters, *id.* at 39-32; (3) hesitation, *id.* at 44-48; and (4) retouching dissimilarities, *id.* at 49-50. As to Zuckerberg's initials, Lesnevich found (1) tapered and blunt ending strokes, Supplemental Report at 51-52; (2) slant/slope dissimilarities, *id.* at 53-56; and (3) vertical-alignment dissimilarities, *id.* at 57-60. Lesnevich also compared Ceglia's signature and date of signature on Exhibit Q-3 to known Ceglia handwriting exemplars, and concluded "the questioned Ceglia signature and date of signature one Exhibit Q-3 were slowly drawn and not naturally written." Supplemental Report at 61. In particular, Lesnevich found dissimilarities as to (1) pen pressure and line quality, *id.* at 61-67; (2) tapered and blunt ending strokes, *id.* at 68-70; and (3) re-touching, *id.* at 71-72.

Similar to the Initial Report, Lesnevich concluded that Plaintiff "has proffered at least two different physical documents as the Work for Hire document," Supplemental Report at 73, and with respect to Exhibit Q-3, the questioned Zuckerberg signature, initials, and date of signature on the purported contract "are unnaturally written tracings that were not written by Mark Zuckerberg," *id.* at 73-74, and the questioned Ceglia signature and signature date on the purported contract "are unnaturally written tracings" that "could have been modeled off of another source," including Exhibits Q-1 and Q-2. In short, Lesnevich determined Zuckerberg's purported signature and date on page 2

and initials on page 1 were "trace forgeries."

While Lesnevich continued to examine the four images of the purported contract, expert depositions were noticed and conducted by the parties, with Defendants noticing and conducting depositions of all eight of Plaintiff's experts, but Plaintiff, despite noticing eleven depositions of Defendants' experts, only deposed five, and canceled the other six depositions. Lesnevich was one of the six Defendants' experts whose depositions had been noticed and then canceled by Plaintiff. Specifically, after scheduling Lesnevich's deposition for August 8, 2012, Plaintiff's attorney, Dean Boland, Esq. ("Boland"), informed Defendants' attorney, Alexander H. Southwell, Esq. ("Southwell"), by email on August 6, 2012, that Plaintiff had decided not to depose Lesnevich, and wanted to advise Defendants of such decision before Lesnevich spent time traveling to New York for the deposition. In response, Southwell informed Boland that the deposition cancellation notice was sent too late, and that Lesnevich was already en route to New York for the deposition at which Lesnevich had anticipated providing Plaintiff with Lesnevich's Supplemental Report. On August 9, 2012, Defendants filed the Supplemental Report, five days before the scheduled close of expert depositions based on the April 4, 2012 Order, as extended by the August 6, 2012 Order. Plaintiff made no attempt to reschedule Lesnovich's deposition, nor did Plaintiff request more time to consider Lesnevich's findings contained in the Supplemental Report; rather, on August 21, 2012, Plaintiff filed his response in opposition to Defendants' Motion to Dismiss (Doc. No. 481).

On August 22, 2012, Plaintiff filed the Motion to Strike New Expert Reports (Doc. No. 499) ("Plaintiff's motion"), supported by Motion to Strike New Expert Reports and

8

for Order Prohibiting the Filing of New Expert Reports in Support of Defendants' Motion

to Dismiss for Fraud on the Court (Doc. No. 500) ("Plaintiff's Memorandum").   On

September 21, 2012, Defendants filed Defendants' Memorandum of Law in Opposition

to Plaintiff's Motion to Strike New Expert Reports and for Order Prohibiting the Filing of

New Expert Reports in Support of Defendants' Motion to Dismiss for Fraud on the Court

(Doc. No. 548) ("Defendants' Response"), and the Declaration of Amanda M. Aycock,

Esq. (Doc. No. 549) ("Aycock Declaration").   On September 28, 2012, Plaintiff filed the

Reply to Defendants' Response Regarding Motion to Strike New Expert Report (Doc.

No. 563) ("Plaintiff's Reply").   Oral argument was deemed unnecessary.

      Based on the following, Plaintiff's motion is DENIED.


## DISCUSSION

**1.   Motion to Strike Expert Witness Report**

      Plaintiff moves to strike Lesnevich's Supplemental Report and for a court order

barring Defendants from submitting any additional expert reports.   Plaintiff's

Memorandum at 1.   According to Plaintiff, Defendants' filing of Lesnevich's

Supplemental Report after Plaintiff had filed his expert reports as part of the papers

filed in response to Defendants' Motion to Dismiss, establishes the Supplemental

Report is a rebuttal to the Blanco Report, the filing of which is not permitted by any

court order issued in this action.   *Id.* at 2.   Plaintiff particularly argues that Defendants'

theory that the purported contract is a fraud is based on the "page one substitution"

theory asserted by Lesnevich in his Initial Report, but that Lesnevich, in the

Supplemental Report, abandons the page one substitution theory in favor of an entirely

9

new theory based on "signature tracing" or "trace forgery."[5]  *Id.* at 2-7.  In opposition,

Defendants maintain the Supplemental Report was filed in furtherance of Defendants'

obligations under Fed.R.Civ.P. Rules 26 and 37.  Defendants' Response at 6-8.

According to Defendants, exclusion of the Supplemental Report is a drastic remedy that

is not supported under the circumstances.  *Id.* at 7-8.  In further support of his motion,

Plaintiff argues Defendants are estopped from asserting the trace forgery theory by a

judicial admission made by Defendants' attorney Orin S. Snyder, Esq. ("Snyder") at a

court hearing on June 30, 2011.  Plaintiff's Reply at 1-2.  Plaintiff further maintains the

filing of the Supplemental Report violates Fed.R.Civ.P. 26 ("Rule 26") because the

newly asserted trace forgery theory is untimely.  *Id.* at 2-10.

Preliminarily, the parties agree that because general discovery has been stayed,

the discovery at issue is governed by Fed.R.Civ.P. 37 ("Rule 37"), *i.e.*, court-ordered

discovery pursuant to the April 4, 2012 Order, as amended by the August 6, 2012

Order, rather than Rule 26(a)(1) which delineates what information must be disclosed to

an opposing party without awaiting a discovery request.  Nevertheless, although the

April 4, 2012 Order stayed general discovery under Rule 26(a)(1), the same order

directs expert discovery limited to the issues before the court on Defendants' dispositive

---

[5] More specifically, according to the page one substitution theory, Zuckerberg was physically in contact with the second page of the purported contract, as evidenced by fact that Zuckerberg's signature on page two is authentic, but the first page of the purported contract is a forgery, and the use of multiple type styles or fonts and the pattern of ink usage indicate the two pages were prepared at different times with the second page being authentic, but the first page being a forgery that was substituted for the original first page.  Plaintiff's Memorandum at 3-7.  In contrast, the trace forgery theory provides that both the first and second pages of the purported contract are forgeries, with Zuckerberg's signature and initials on such contract being forged by tracing similar writings from the StreetFax document recovered by Defendants' digital forensics experts from one of Plaintiff's computers, *id.*, which Defendants maintain is the authentic contract executed between the parties on April 28, 2003, and which is devoid of any mention of Facebook or its creation.

motions, and expert discovery is governed by Rule 26(a)(2) which provides "a party

must disclose to the other parties the identity of any witness it may use at trial to

present evidence under Federal Rule of Evidence 702, 703 or 705 [pertaining to opinion

of expert witness]."  Fed.R.Civ.P. 26(a)(2)(A).  Such disclosure "must be accompanied

by a written report – prepared and signed by the witness – if the  witness is one

retained or specially employed to provide expert testimony in the case . . . ."

Fed.R.Civ.P. 26(a)(2)(B).  The expert witness's report must contain, *inter alia*, "a

complete statement of all opinions the witness will express and the basis and reasons

for them. . . ."  Fed.R.Civ.P. 26(a)(2)(B)(i).  Furthermore, an expert witness has a duty

to supplement the expert report under both Rule 26(a)(2)(E) ("in a timely manner if the

party learns that in some material respect the disclosure or response is incomplete or

incorrect, and if additional or corrective information has not otherwise been made

known to the other parties during the discovery process or in writing."), and Rule

26(e)(2) ("For an expert whose report must be disclosed under Rule 26(a)(2)(B), the

party's duty to supplement extends both to information included in the report and to

information given during the expert's deposition.").

Under Rule 37(c)(1), evidence may be precluded for failure to disclose, to

supplement an earlier response, or to admit.  *McNerney v. Archer Daniels Midland Co.*,

164 F.R.D. 584, 587 (W.D.N.Y. 1995) ("Federal Rule 37(c)(1) provides that a party who,

without substantial justification, fails to disclose information required by Rule 26, shall

not be permitted to use as evidence at trial information not disclosed.").  Rule 37(c)(1)

"is a form of a sanction, designed to encourage compliance with the disclosure

requirements of the Rules and the Court," *Schanzer v. United Technologies Corp.*, 120

F.Supp.2d 200, 206 (D.Conn. 2000), and "may not come into play unless there first has been a violation of a disclosure obligation imposed by Rule 26(a) or 26(e)(1)." 7 MOORE'S FEDERAL PRACTICE § 37.60[1] (2012).  As such, under Rule 37, where "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1).  In other words, although the Initial Report was prepared pursuant to a court order under Rule 37, the Supplemental Report may be precluded under Rule 37(c)(1) only if Defendants fail to provide such supplemental information as required under Rule 26(a) or (e), and such failure is not substantially justified or harmless.

### 2.    Factors

Precluding an expert's testimony or report under Rule 37 is a "drastic remedy" that should be used only where the "party's conduct represents flagrant bad faith and callous disregard of the federal rules." *Lent v. Signature Truck Systems, Inc.*, 2011 WL 4575312, at * 3 (W.D.N.Y. Sept. 30 2011) (citing *McNerney*, 164 F.R.D. at 587).  "In making this determination, courts consider several factors, including (1) the reason for the failure to timely disclose, (2) the importance of the testimony, (3) potential prejudice in allowing the testimony, and (4) the availability of a continuance to cure such prejudice." *Id.* (citing *Arnold v. Krause, Inc.*, 232 F.R.D. 58, 68 (W.D.N.Y. 2004)).  Here, the circumstances fail to establish that the filing of the Supplemental Report shows Defendants' acted with flagrant bad faith or callous disregard of the federal rules;

rather, the record demonstrates the Supplemental Report was timely filed, contains important information that is not prejudicial to Plaintiff, and that Plaintiff, upon receiving the Supplemental Report, could have either rescheduled Lesnevich's deposition to address the Supplemental Report's findings, or sought an extension of time from the court to do so.

As stated, Plaintiff argues the Supplemental Report should be precluded as untimely filed because it does not qualify under Rule 26(e) as supplementation insofar as it asserts a completely new theory. Plaintiff's Memorandum at 3-4. Specifically, Plaintiff maintains that in his Initial Report, Lesnevich set forth the "page one substitution" theory, *i.e.*, that although Zuckerberg's signature on page two of the purported contract was authentic, Zuckerberg's initials and handwritten references to Facebook are forgeries. *Id.* at 4. According to Plaintiff, in his Supplemental Report, Lesnevich abandons the page one substitution theory in favor of the "trace forgery" theory, *i.e.*, that all handwritings on both pages one and two of the purported contract attributed to Zuckerberg are, in fact, forgeries. *Id.* at 5-6. According to Plaintiff, in the Supplemental Report, Lesnevich abandons the page one substitution theory on which the Initial Report is based, and newly presents the trace forgery theory because the conclusions of Plaintiff's experts were skeptical of the original "page one substitution theory" and rendered it dubious. Plaintiff's Memorandum at 2-4. Plaintiff further maintains that the Supplemental Report denomination cannot negate the fact that such report, rather than containing supplemental findings, is an attempt to "ambush" Plaintiff with an entirely new theory after Plaintiff had already expended considerable time and money deposing Defendants' experts, such that Defendants' filing of the Supplemental

Report had unduly prejudiced Plaintiff. *Id.* at 4-7. As such, Plaintiff maintains the Supplemental Report does not qualify as a supplemental filing as contemplated by Fed.R.Civ.P. 26 and its filing on August 9, 2012 is untimely. *Id.* at 7-11.

In opposition, Defendants maintain the Supplemental Report was filed in furtherance of Defendants' obligations under Fed.R.Civ.P. Rules 26 and 37. Defendants' Response at 6-8. According to Defendants, exclusion of the Supplemental Report is a drastic remedy that is not supported under the circumstances. *Id.* at 7-8. Plaintiff's argument that the Supplemental Report does not qualify as a supplemental report, and thus is untimely, because it is inconsistent with the Initial Report insofar as Lesnevich, in the Supplemental Report, abandons the page one substitution theory on which the Initial Report is based, in favor of the newly asserted trace forgery theory is without merit.

Of particular significance is that a plain and thorough reading of the Initial Report establishes that not only was the so-called page one substitution theory of fraud never adopted by Lesnevich, but the Initial Report is completely devoid of any mention of such theory. *See* Initial Report, *passim*. Rather, the record establishes the page one substitution theory was first discussed by Plaintiff's expert, forensic scientist Larry F. Stewart ("Stewart"), who attempts to project the theory onto Lesnevich. *See* Declaration of Larry F. Stewart in Support of Plaintiff's Forthcoming Response to Defendants' Motion to Dismiss for Fraud (Doc. No. 416) ("Stewart Report"). Specifically, in his Synopsis of Results, Stewart states that although evidence supports that page one of the purported Facebook contract was originally executed, *i.e.*, initialed as regards certain handwritten emendations relating to Facebook, at the same time as

14

page 2, the first page of the StreetFax document was not the original first page of the purported Facebook contract.  Stewart Report ¶¶ 22-23.  *See also* Stewart Report ¶ 86 (". . . I found no basis to support a conclusion that page 1 of the Facebook Contract had been substituted for a now missing page."); ¶¶ 87-93 (discussing physical analysis and various testing established both page 1 and page 2 of the purported contract were created at the same time, using the same printer and toner).  Stewart also discusses statements made by Defendants' forensic document examiner and chemist Gerald M. LaPorte ("LaPorte"), and forensic document examiner and chemist Albert Lyter ("Lyter"), regarding the possibility that a different page 1 was originally stapled to page 2 of the purported contract, and later removed and replaced, Stewart Report ¶¶ 158-181. However, neither LaPorte nor Lyter specifically concludes that the purported contract is composed of a forged page one stapled to an authentic page two.  *See* Forensic Report of LaPorte (Doc. No. 326) ("LaPorte Report") at 3 ("There is no evidence to refute the possibility that another page, other than page 1 of the Work for Hire Document, was originally stapled to page 2 and removed at a later time."), and 20 (refuting statement by Blanco that he "determined that the staple holes on both pages [of the Work for Hire document] align demonstrating that these two pages [ ] have only been stapled one time wherein they were actually stapled together," by explaining that "purported alignment of staple holes on two pieces of paper does not 'demonstrate' that those pages have been stapled only one time.  It is quite possible to detach a multi-page document, attach a new page, and staple through the pre-existing staple hole so that it appears the entire document was only stapled once."); Forensic Report of Lyter (Doc. No. 328) ("Lyter Report") at 5 ("In my experience, a single set of staple holes does not

mean that a document was stapled only once or even necessarily together.  It is quite

possible to create a set of staple holes that appear to match on two pieces of paper

when in fact stapling the documents more than one time.").  Furthermore, insofar as

Plaintiff refers to Defendant's forensic document examiner expert Tytell, a plain reading

of Tytell's report (Doc. No. 330) ("Tytell Report"), demonstrates although Tytell

concluded the purported contract "is not consistent with the normal preparation of a

two-page document . . . [because] the use of multiple type styles and the pattern of ink

usage indicate preparation of the two pages at different times," Tytell Report at 12,

Tytell does not specifically opine that the original first page of the purported contract

was replaced with a different page that was a forgery.  Accordingly, the record is simply

devoid of any evidence establishing that any of Defendants' experts ever advocated the

page one substitution theory, posited by Plaintiff, as a basis for Defendants' fraud

assertion, such that the trace forgery theory found in Lesnevich's Supplemental Report

is not a newly asserted  theory.[6]

---

[6] The court notes that the page one substitution theory is not inconsistent with the trace forgery theory.  Specifically, Defendants' experts consistently opined that at least two copies of the purported contract were provided based on the findings indicating that Exhibits Q-1 and Q-2 are copies of the first version, which was attached to the original complaint, whereas Exhibits Q-3 and Q-4 are copies of the second version, which was examined by experts for both Plaintiff and Defendants, with the same dissimilarities between the first and second versions found regardless of whether Exhibit Q-1 or Q-2 is compared to Exhibit Q-3 or Q-4.  Such opinions suggest the possibility that the second page of either the first or second version of the purported contract is authentic, and the first page is a forgery, yet to obtain two pages printed on paper from a single ream, using the same printer and ink, after creating a new first page which Plaintiff then initialed and dated to appear as if it was originally produced on April 28, 2003, both signed and unsigned copies of the second page of one version of the authentic, possibly the Streetfax document, were then printed, with the forger placing the unsigned copy over the signed copy so as to obtain, using the same pen as the handwritten interlineations appearing on the first page, a traced signature of the copy from the authentic document.  This combination of replacing the first page, yet tracing the signature on the second page, is not inconsistent with either the page-one substitution theory or the trace signature theory.  As such, the court need not determine on this motion an accurate explanation of a possible motive regarding the apparent discrepancies between Q-1 and Q-2, being copies of the first version of the purported contract attached as an exhibit to the original complaint, and Q-3 and Q-4, being copies of the second version of the purported original contract that was provided to

Not only does the Supplemental Report fail to assert, contrary to Plaintiff's assertion, new theories not found in the Initial Report, but the conclusions of both of Lesnevich's reports are similar, applying several identical theories of why the authenticity of certain handwritten interlineations is questionable.  Specifically, in both the Initial Report and the Supplemental Report, Lesnevich finds dissimilarities as to (1) beginning/ending strokes, Initial Report at 21-25, Supplemental Report at 6-14; (2) letter formation or design of the letters, Initial Report at 11-14, Supplemental Report at 15-30; and (3) letter spacing or placement on the document, Initial Report at 15-20, Supplemental Report at 31-33.

Plaintiff also maintains the filing of the Supplemental Report is not truly supplemental and violates Rule 26(e) because the information contained in the Supplemental Report was available to Defendants more than a year prior to the preparation of the Supplemental Report, yet Defendants delayed more than one year before filing the Supplemental Report, the Supplemental Report adds a new theory that is not supported by the facts, and Defendants' change of theory makes new reports superfluous, and potentially will result in the submission of additional new expert reports, and undue delay.  Plaintiff's Reply at 2-6.  Plaintiff further asserts his own request for additional time to file expert reports (Doc. No. 391), was denied by the court on May 31, 2012 (Doc. No. 408) ("May 31, 2012 D&O") (denying as unnecessary Plaintiff's request for an extension of time to file expert reports, but dismissing without prejudice Plaintiff's alternative request for leave to amend or supplement such reports

experts for both Plaintiff and Defendants for physical analysis and examination after the action was commenced.

17

after submission of all material Defendants are ordered to provide Plaintiff), such that Defendants' filing of the Supplemental Report is unfair. *Id.* at 6-7.

A plain reading of the Supplemental Report, however, demonstrates it merely sets forth  information that was not available when the Initial Report was completed because Lesnevich had, at that time, only examined the first page of the purported contract. *See* Initial Report at 2 ("I was asked to analyze and compare each of the questioned handwritten interlineations on page 1 of the four images.") (underlining added), and 3 ("During my examination and comparison of the questioned documents, I found at least 20 observable dissimilarities between the questioned handwritten interlineations appearing on page 1 of Exhibits Q-1, Q-2, Q-3, and Q-4.") (underlining added).  Lesnevich's conclusion that "these dissimilarities in handwriting demonstrate, to the highest degree of certainty possible, that these images are not of the same physical two-page document," Initial Report at 3 (underlining in original), was thus reached based on Lesnevich's examination of the four separate images of only the first page of the purported contract.  That the Initial Report is devoid of any reference to the purported contract's second page, other than the fact that the purported contract is comprised of two pages, further reinforces that Lesnevich's conclusion in his Initial Report was based only of his examination of the first page.  Similarly, that Lesnevich's conclusions in the Supplemental Report are limited to his observations of the 12 differences observed while analyzing the four copies of page 2 are consistent with Lesnevich's conclusions in the Initial Report, specifically, that Plaintiff had proffered two different versions of the purported contract, is important, *viz*, whether forgery is afoot, to this court's determination of the issue before it on Defendants' Motion to Dismiss.  Nor

do the Supplemental Report's conclusions impermissibly bolster the conclusions contained in the Initial Report, but merely set forth additional findings consistent with the Initial Report's findings, albeit based on Lesnevich's analysis of the purported contract's second page.

There is also no basis on which to find the Supplemental Report unduly prejudicial.  Courts which have found undue prejudice based on a supplemental report have done so where the supplemental report contained new theories or included vast amounts of new information beyond what was previously provided.  *See Lent*, 2011 WL 4575312, at * 3 (citing cases).  Here, as discussed, Discussion, *supra*, at 16, the Supplemental Report does not set forth any new theory of forgery but merely extends the same theory advanced in the Initial Report with respect to the 20 inconsistencies found on page one of the various copies of the purported contract to the 12 inconsistencies Lesnevich observed and analyzed on the various copies of the second page of the purported contract.  Nor is there any merit to Plaintiff's assertion, Plaintiff's Memorandum at 4, that the Supplemental Report is twice as long as the Initial Report. A plain comparison of the Initial Report with the Supplemental Report establishes that although the Initial Report contains only 10 pages of text, the remaining 22 pages being exhibits, and the Supplemental Report contains 25 pages of text, with the remaining 49 being exhibits, the exhibits in the Supplemental Report are spaced with fewer per page, resulting in approximately double the number of pages as would have been required had such exhibits been spaced similar to the spacing of the exhibits in the Initial Report. The content of the Supplemental Report is, moreover, largely consistent with the content of the Initial Report, with the same forgery theories applied to Zuckerberg's

signature, signature date, and initials.  Further, neither 10 nor 25 pages of text, several of which contain only a single paragraph containing a couple of sentences, is so voluminous or overwhelming as to present any particular hardship to Plaintiff.  *Compare Henderson v. National R.R. Passenger Corp.*, 412 Fed.Appx. 74, 83 (10th Cir. 2011) (upholding district court's judgment to strike supplemental report which added "180 pages of information" to the original report's 16 pages).

Furthermore, Plaintiff could have avoided any prejudice resulting from the filing of the Supplemental Report on August 9, 2012, by rescheduling Lesnevich's deposition, or requesting additional time to review the Supplemental Report to determine if it was necessary to reschedule the deposition.  Nevertheless, Plaintiff, consistent with the court's earlier order denying Plaintiff's request for an extension of time in which to file expert report, but dismissing with prejudice Plaintiff's alternative request for leave to amend or supplement such reports after submission of all material Defendants are ordered to provide Plaintiff, May 31, 2012 D&O at 2, will grant Plaintiff **ten (10) days** to file further expert reports as necessary to rebut Lesnevich's Supplemental Report.  Thus, there is no merit to Plaintiff's contention that failure to strike the Supplemental Report is unfair to Plaintiff.

Accordingly, consideration of the factors in light of the record establishes no basis for striking the Supplemental Report, or for directing Defendants not to file further supplemental reports where it is determined such supplementation is necessary to provide a complete report.

**Judicial Estoppel**

Nor are Defendants estopped, as Plaintiff asserts, Plaintiff's Reply at 1-2, by

judicial admission regarding whether Zuckerberg's signature on the purported contract's

second page is authentic because the court has never adopted such assertion.  In

further support of his motion, Plaintiff argues Defendants are estopped from asserting

the trace forgery theory by a judicial admission made by Defendants' attorney Orin S.

Snyder, Esq. ("Snyder") at a court hearing on June 30, 2011.  Plaintiff's Reply at 1-2.

In support of this argument, Plaintiff references the following exchange that

transpired at an oral argument before the undersigned on June 30, 2011, regarding

cross-motions filed by the parties for discovery:

> The Court:     But [Defendant Zuckerberg] did sign some agreement.
> Mr. Snyder:   Correct.  So the question is not whether the signature - -
> The Court:     So the question is whether it's [Defendant Zuckerberg's] signature
>                      on this agreement.
> Mr. Snyder:   That's not a disputed issue in this case.

Plaintiff's Reply at 2 (quoting June 30, 2011 Hearing Transcript at 56).

Plaintiff maintains that Snyder's statement that whether it is Zuckerberg's actual

signature that appears on the second page of the purported contract is "not a disputed

issue in this case" has waived any dispute as to whether, in fact, the signature of the

second page is Zuckerberg's, and thus Defendants are judicially estopped from relying

on the trace forgery theory set forth in the Supplemental Report, in which the

authenticity of Zuckerberg's signature is questioned.  *Id.*  There are several problems

with this argument.

As a general matter, "'statements made by an attorney concerning a matter

within his employment may be admissible against the party retaining the attorney.'"

*Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) (quoting *United States v.*

*McKeon*, 738 F.2d 26, 30 (2d Cir. 1984)).  Under the doctrine of judicial estoppel,

"'where a party assumes a certain position in a legal proceeding, and succeeds in

maintaining that position, he may not thereafter, simply because his interests have

changed, assume a contrary position, especially if it be to the prejudice of the party who

has acquiesced in the position formerly taken by him.'"  *New Hampshire v. Maine*, 532

U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S 680, 689 (1895)).  "This rule,

known as judicial estoppel, 'generally prevents a party from prevailing in one phase of a

case on an argument and then relying on a contradictory argument to prevail in another

phase.'"  *Id.* (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n. 8 (2000)).  The purpose

of the judicial estoppel doctrine "is 'to protect the integrity of the judicial process.'"  *Id.*

(quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982)).  Further, "[a]

court can appropriately treat statements in briefs as binding judicial admissions of fact."

*Purgess*, 33 F.3d at 144 (citing *Leslie v. Knight Soda Fountain*, 55 F.2d 224, 225 (2d

Cir. 1932)).

　　　Where, however, as here, the district court has not adopted the prior position

asserted, judicial estoppel does not apply.  *Stichting Ter Behartiging Van de Belangen*

*Van Oudaandeelhouders In Het Kapitaal Van Saybolt International B.V. v. Schreiber*,

407 F.3d 34, 35 (2d Cir. 2005).  Significantly, in the instant case, the district court never

adopted Mr. Snyder's comments at the June 30, 2011 oral argument as Defendants'

position on the issue of whether Zuckerberg's signature appearing on the second page

of the purported contract is authentic.  Nor is there any indication in the record

establishing that Defendants benefitted from such comments by Snyder, *New*

*Hampshire*, *supra*, at 749, and Plaintiff fails to point to any action in this case to establish such judicial adoption.  As such, Defendants are not judicially estopped from asserting the trace forgery theory set forth in the Supplemental Report.

Second, Plaintiff raises this argument for the first time in his reply in further support of Plaintiff's motion.  It is settled, however, that arguments raised for the first time in replying in further support of a motion are generally deemed waived.  *See Connecticut Bar Association v. United States of America*, 620 F.3d 81, 91 n. 13 (2d Cir. 2010) (citing *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998)); *see also Ruiz v. Commissioner of Department of Transportation of City of New York*, 858 F.2d 898, 902 (2d Cir. 1988) (holding it was within district court's discretion to reject argument first raised in reply to opposition to motion where such argument was "so belatedly advanced and so vaguely supported.").

Finally, even if the court were, in the exercise of its discretion, to consider this belated argument, the Initial Report, if accepted, casts serious doubt as to whether all four images of the purported contract Lesnevich analyzed and compared in preparing his Initial and Supplemental Reports were from the same document.  Specifically, Lesnevich concluded in both the Initial and Supplemental Report that Plaintiff had provided at least two different versions of the purported contract for expert inspection. *See* Initial Report at 30 ("I conclude to the highest degree of certainty possible, beyond any reasonable doubt, that the Questioned Documents are images of at least two different physical documents. * * * Ceglia has proffered at least two different physical documents as the Work for Hire document.  In particular, Ceglia produced a Work for Hire document to Plaintiff's experts in January 2011, and to Defendants' experts in July

23

2011 that was different than the document he attached to his [original] Complaint.")
(bracketed material added); Supplemental Report at 23 ("Ceglia has proffered at least
two different physical documents as the Work for Hire document.").  Assuming,
*arguendo*, both of these findings are correct, they raise the very issue before the court
on Defendants' Motion to Dismiss, *i.e.*, whether the signature which Snyder indicated,
on June 30, 2011, is Zuckerberg's or is simply a tracing, a form of forgery, *see United
States v. Delia*, 944 F.2d 1010, 1014 (2d Cir. 1991) (recognizing tracing an original
signature constitutes forgery), of Zuckerberg's signature made from another contract,
such as the StreetFax contract which Defendants maintain is the authentic contract
relevant to this case.

## CONCLUSION

Based on the foregoing, Plaintiff's motion to strike (Doc. No. 499) is DENIED;
Plaintiff is ORDERED to file any rebuttal expert reports **within ten (10) days**.
SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      October 31, 2012
            Buffalo, New York

24