UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

PAUL D. CEGLIA,

|                          |                  |
|--------------------------|------------------|
|              Plaintiff,  | **DECISION**     |
|         v.               | **and**          |
|                          | **ORDER**        |

MARK ELLIOT ZUCKERBERG, and          **10-CV-00569A(F)**
FACEBOOK, INC.,

                          Defendants.

_____

APPEARANCES:        PAUL A. ARGENTIERI, ESQ.
                    Attorney for Plaintiff
                    188 Main Street
                    Hornell, New York 14843

                    BOLAND LEGAL LLC
                    Attorneys for Plaintiff
                    DEAN M. BOLAND, of Counsel
                    18123 Sloane Avenue
                    Lakewood, Ohio 44107

                    GIBSON, DUNN & CRUTCHER, LLP
                    Attorneys for Defendants
                    ALEXANDER H. SOUTHWELL, and
                    THOMAS H. DUPREE, of Counsel
                    200 Park Avenue, 47th Floor
                    New York, New York 10166-0193

                    HARRIS BEACH LLP
                    Attorneys for Defendants
                    TERRANCE P. FLYNN, of Counsel
                    Larkin at Exchange
                    726 Exchange Street, Suite 1000
                    Buffalo, New York 14210

## <u>JURISDICTION</u>

This case was referred to the undersigned by Honorable Richard J. Arcara on

May 27, 2011 for pretrial matters.  The action is presently before the court on

Defendants' Eighth and Ninth Motions to Compel (Docs. Nos. 511 and 521),

respectively filed September 5 and 7, 2012.

## BACKGROUND and FACTS[1]

The original complaint in this action was filed on June 30, 2010, in New York

Supreme Court, Allegany County.  On July 9, 2010, Defendants removed the action to

this court asserting subject matter jurisdiction based on diversity.  The parties to this

action dispute the authenticity of a "Work for Hire" contract ("the purported contract")[2]

allegedly executed between Plaintiff Paul D. Ceglia ("Plaintiff") and Defendant Mark

Elliot Zuckerberg ("Zuckerberg"), on April 28, 2003, pursuant to which Plaintiff and

Zuckerberg, then a student at Harvard University ("Harvard"), established a partnership

for the development and commercialization of two separate internet business ventures,

including "The Face Book," the social-networking website now known as Defendant

Facebook, Inc. ("Facebook"), and StreetFax ("StreetFax"), an on-line database project

which Plaintiff was developing and hoped to market for profit.  The purported contract

provides that Plaintiff would hire Zuckerberg to perform web programming for

StreetFax, and Plaintiff would help fund the development of Facebook in exchange for a

one-half interest in Facebook.  In an Amended Complaint filed April 11, 2011 (Doc. No.

39), Plaintiff asserts seven claims for relief alleging breach of fiduciary duty, actual and

constructive fraud, and breach of contract.  Defendants contend the purported contract

---

[1] The Facts are taken from the pleadings and motion papers filed in this action.

[2] A copy of the purported contract is attached as Exhibit A to the Amended Complaint (Doc. No. 39).

is a forgery, and that the real contract executed on April 28, 2003, is a two-page document titled "StreetFax" ("the StreetFax document"), containing the agreement reached by Plaintiff and Zuckerberg on April 28, 2003, providing that Zuckerberg, in exchange for monetary payment from Plaintiff, would perform programming work for Plaintiff's StreetFax project, but makes no mention of Facebook.

On June 2, 2011, Defendants moved (Doc. No. 44) ("Defendants' discovery motion") to stay general discovery, but to permit Defendants to conduct expedited discovery limited to that necessary to determine the issue of the purported contract's authenticity.  On June 17, 2011, Plaintiff filed a cross-motion (Doc. No. 56) ("Plaintiff's discovery motion") for mutual expedited discovery, albeit limited to the purported contract's authenticity.  By Order filed July 1, 2011 (Doc. No. 83) ("July 1, 2011 Expedited Discovery Order"), Defendants' discovery motion was granted and Plaintiff's discovery motion was granted in part and denied in part.  As relevant to the instant motions, the July 1, 2011 Expedited Discovery Order directed Plaintiff to produce on or before July 15, 2011, "all copies of the purported contract in hard-copy form, created on or before June 30, 2010."  July 1, 2011 Expedited Discovery Order at 1.  A Hard-Copy Document Inspection Protocol filed July 1, 2011 (Doc. No. 84) ("Hard-Copy Document Inspection Protocol"), governs how Plaintiff's production and Defendants' examination of the hard-copy documents will be conducted.  According to the Electronic Asset Inspection Protocol, so-ordered by the undersigned on July 1, 2011 (Doc. No. 85) ("Electronic Asset Inspection Protocol"), Defendants' digital forensics and electronic evidence experts, Stroz Freidberg, LLC ("Stroz Friedberg"), were to be permitted to search and examine Plaintiff's electronic assets, and to

> examine the materials located by such searches in order to identify only documents, data, fragments, and artifacts that reasonably appear to be related to authenticity of the purported contract attached to the Amended Complaint and the purported emails described in the Amended Complaint.

Electronic Asset Inspection Protocol ¶ 3.

A Joint Stipulated Protective Order (Doc. No. 86) ("Protective Order"), filed July 13,

2011, provides that a party to this action

> may designate documents, materials, or information as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" if the party believes in good faith that the documents, materials, or information contain confidential information that is not publicly available (such as proprietary or confidential business, technical, sales, marketing, financial, commercial, private, or sensitive information, or information that is otherwise reasonably designable as confidential).

Protective Order ¶ 3.

Although a copy of the purported contract is attached as an exhibit to the

Amended Complaint, a copy of a document titled "Street Fax" ("the StreetFax

document") was located as an attachment to an email within the memory of one of

Plaintiff's computers during a forensic examination performed by Stroz Friedberg, in

July 2011 during their search of Plaintiff's electronic assets.

By Order filed August 18, 2011 (Doc. No. 117) ("August 18, 2011 Order"), the

undersigned directed Plaintiff to, *inter alia*, identify "all electronic versions of any emails

or purported emails by and among Defendant Zuckerberg, Plaintiff and/or other persons

associated with StreetFax ("Emails"). . . ."  August 18, 2011 Order ¶ 2(C).  If any such

emails were no longer in Plaintiff's "possession, custody, or control," Plaintiff was to

"provide a detailed account of the non-existence, loss, or destruction of each such item,

including the approximate date on which each item was lost, destroyed, or otherwise

disposed of." *Id.* ¶ 2.  Each email file identified by Plaintiff was to "be produced in their

native format." *Id.* ¶ 3.  Plaintiff's experts were to "produce directly to Defendants all electronic copies of any Contract in their possession, custody, or control," *id.* ¶ 3(A) and Plaintiff, similarly, was to "produce directly to Defendants all electronic copies or images of any Contract in the possession, custody, or control of Plaintiff's attorneys or other agents." *Id.* ¶ 3(B).

On March 26, 2012, Defendants filed two dispositive motions, including a motion to dismiss the action as a fraud perpetrated on the court (Doc. No. 318) ("Motion to Dismiss"), and for judgment on the pleadings (Doc. No. 320) ("Motion for Judgment") (together, "Defendants' Dispositive Motions"), and also moved to stay general discovery pending resolution of the Dispositive Motions (Doc. No. 322) ("Motion to Stay").  In a Minute and Order entered on April 4, 2012 (Doc. No. 348) ("April 4, 2012 Order"), the undersigned granted the Motion to Stay in part, but granted Plaintiff expert discovery limited to that necessary to prepare Plaintiff's responses in opposition to Defendants' Dispositive Motions.

Statements within the Declaration of Paul Argentieri, Esq. (Doc. No. 484) ("Argentieri Declaration"), filed August 21, 2012, in opposition to Defendants' Motion to Dismiss indicate the creation of at least four hard-copies of the purported contract which have not been produced for Defendants' inspection, including (1) a copy Plaintiff made in June 2010 when Plaintiff "took the original Facebook Contract that was examined in July 11 by Defendants [*sic*] experts, and copied it on a grocery store copier near his home in Wellsville, New York," Argentieri Declaration ¶ 14 (first copy); (2) which Plaintiff then scanned to convert into an electronic file to attach to the email sent to Argentieri who, in preparation of the original complaint for filing, printed the attached

electronic file and attached the printed copy of the purported contract as an exhibit to

the complaint, *id.* ¶¶ 3-7 and 15 (second copy); and (3) of which Argentieri, using

Argentieri's office copier machine, then made "multiple copies" for service on both

Defendants to this action, *id.* ¶¶ 8-11 (at least third and fourth copies).  In a letter to

Plaintiff's attorney Dean Boland ("Boland") dated September 4, 2012, Defendants'

attorney Alexander H. Southwell ("Southwell"), requested Plaintiff produce by 5:00 P.M.

on September 5, 2012, the hard-copies of the purported contract as described in the

Argentieri Declaration, or Defendants would file a motion to compel their production.

On September 5, 2012, Defendants filed Defendants' Eighth Motion to Compel

(Doc. No. 511) ("Eighth Motion to Compel"), supported by Defendants' Memorandum of

Law in Support of Their Eighth Motion to Compel and for Other Relief (Doc. No. 512)

("Defendants' Memorandum- Eighth Motion to Compel"), and the Declaration of

Alexander H. Southwell, Esq. (Doc. No. 513) ("Southwell Declaration - Eighth Motion to

Compel") with attached exhibits A through C ("Defendants' Eighth Motion to Compel

Exh(s). __").

In an email to Southwell dated September 6, 2012, Boland denied that the

Argentieri Declaration established the existence of additional, undisclosed hard-copies

of the purported contract made prior to the commencement of this action.  Boland

further advised that Plaintiff was aware of his ongoing duty to supplement discovery,

and that there are no documents within the custody or possession of Plaintiff or his

counsel that have not yet been produced.  On September 7, 2012, seeking to compel

production of the additional hard-copies of the purported contract, Defendants filed

Defendants' Ninth Motion to Compel (Doc. No. 521) ("Ninth Motion to Compel"),

supported by Defendants' Memorandum of Law in Support of Their Ninth Motion to

Compel and for Other Relief (Doc. No. 522) ("Defendants' Memorandum - Ninth Motion

to Compel"), and the Declaration of Alexander H. Southwell (Doc. No. 523) ("Southwell

Declaration - Ninth Motion to Compel"), with exhibits A and B ("Defendants' Ninth

Motion to Compel Exh(s). __").

On September 10, 2012, Defendants filed a motion seeking to extend the time in

which to file their reply in further support of their Motion to Dismiss (Doc. No. 525)

("Defendants' Motion to Extend Time to Reply").  Included in the papers Plaintiff filed on

September 12, 2012 in opposition to Defendants' Motion to Extend Time to Reply were

the Declaration of Paul Ceglia (Doc. No. 535) ("Ceglia Declaration Opposing Motion to

Extend Time"), and the Declaration of Paul Argentieri, Esq. (Doc. No. 536) ("Argentieri

Declaration Opposing Motion to Extend Time").

On September 14, 2012, Plaintiff filed responses to both the Eighth and Ninth

Motions to Compel.  Specifically, Plaintiff filed the Memorandum in Opposition to

Defendants' Eighth Motion to Compel (Doc. No. 540) ("Plaintiff's Response - Eighth

Motion to Compel"), with an attached exhibit ("Plaintiff's Eighth Motion to Compel

Exhibit"), and the Declaration of Jason Holmberg (Doc. No. 541) ("Holmberg

Declaration").  Plaintiff also filed his Response in Opposition to Ninth Motion to Compel

(Doc. No. 543) ("Plaintiff's Response - Ninth Motion to Compel"), with attached exhibits

A and B ("Plaintiff's Ninth Motion to Compel Exh(s). __").

On September 20, 2012, Defendants filed their Reply Memorandum in Support

of Their Eighth Motion to Compel (Doc. No. 544) ("Defendants' Reply - Eighth Motion to

Compel"), and the Supplemental Declaration of Alexander H. Southwell, Esq. (Doc. No.

545) ("Supplemental Southwell Declaration - Eighth Motion to Compel"), with attached

exhibits A and B ("Defendants' Eighth Motion to Compel Reply Exh(s). __").  On

September 28, 2012, Defendants filed Defendants' Reply Memorandum of Law in

Support of Their Ninth Motion to Compel (Doc. No. 562) ("Defendants' Reply - Ninth

Motion to Compel").

Oral argument was deemed unnecessary.


## DISCUSSION

1.    **Eighth Motion to Compel**

Defendants' Eighth Motion to Compel pertains to a document Defendants have

pursued since at least February 2012, and three other documents referenced therein.

Specifically, in a Decision and Order filed April 19, 2012 (Doc. No. 357) ("April 19, 2012

D&O"), addressing Defendants' Fifth Motion to Compel (Doc. No. 294), filed February

21, 2012, the undersigned ordered Plaintiff to produce several items Plaintiff had

withheld from discovery and listed on a privilege log, including Privilege Log Item 379

("Item 379"), an email from Plaintiff's counsel Paul Argentieri, Esq. ("Argentieri"), to

Plaintiff, consisting of a compilation of emails with attachments, one of the attachments

being a letter referred to as the "Kasowitz letter" or the "April 13 Kasowitz Letter,"[3] from

the New York law firm of Kasowitz, Benson, Torres & Friedman LLP ("Kasowitz") to

---

[3] It was not until the April 13 Kasowitz Letter was produced that the existence of an earlier letter from the Kasowitz law firm, dated April 12, 2011, and which is the subject of Defendants' Eighth Motion to Compel, was made known to Defendants and the court.  As such, although in its previous orders the court referred to the second Kasowitz letter simply as the "Kasowitz letter," in the interest of clarity and to avoid confusion, the court will henceforth refer to the "Kasowitz letter" as the "April 13 Kasowitz Letter," and the earlier letter as the "April 12 Kasowitz Letter."

DLA Piper LLP ("DLA Piper") and Lippes Mathias Wexler Friedman LLP ("Lippes Mathias"), two law firms that formerly represented Plaintiff in this action, in which Kasowitz advises DLA Piper and Lippes Mathias it is withdrawing from Plaintiff's case based on a determination that the purported contract at issue is a fraud. Plaintiff was required to produce the April 13 Kasowitz Letter because although Stroz Friedberg's analysis of Plaintiff's electronic assets had revealed an electronically stored file containing information consisting of a compilation of emails to which the April 13 Kasowitz Letter was attached, the letter's existence was never disclosed in a privilege log despite its obvious relevance to the issue of whether the contract at the heart of this litigation is genuine, and based on a finding that any attorney client privilege that could have shielded its disclosure was waived by Plaintiff's sharing of the information contained in the April 13 Kasowitz Letter with one Jason Holmberg ("Holmberg"), who had no need to be informed of its contents.  April 19, 2012 D&O at 8-11.

By motion filed April 23, 2012 (Doc. No. 358), Plaintiff sought clarification of the April 19, 2012 D&O, specifically, whether Plaintiff was required to produce those emails included in Item 379 which did not include Holmberg as a recipient.  In a Decision and Order filed April 26, 2012 (Doc. No. 361) ("April 26, 2012 D&O"), Plaintiff's motion for clarification of the April 19, 2012 D&O was construed as a motion for reconsideration and was denied.  On April 27, 2012, Plaintiff filed a motion (Doc. No. 362) ("Plaintiff's Motion to Stay"), seeking to stay the April 19, 2012 D&O, including, *inter alia*, production of the April 13 Kasowitz Letter, pending the District Judge's decision on objections to the April 19, 2012 D&O Plaintiff intended to file.  On April 30, 2012, Plaintiff's Motion to Stay was denied (Doc. No. 365).  Plaintiff's objections to the April

19, 2012 D&O and the April 26, 2012 D&O were filed April 30, 2012 (Doc. No. 367) ("Plaintiff's Objections").

On May 24, 2012, Defendants filed their Sixth Motion to Compel (Doc. No. 381), seeking an order compelling Plaintiff to immediately produce the April 13 Kasowitz Letter and all attachments.  By Decision and Order filed June 28, 2012 (Doc. No. 457) ("June 28, 2012 D&O"), Plaintiff was again directed to produce the April 13 Kasowitz Letter to Defendants. June 28, 2012 D&O at 8-11.  On July 11, 2012, Defendants, having yet to receive the April 13 Kasowitz Letter from Plaintiff, filed their Seventh Motion to Compel (Doc. No. 462), requesting yet another court order compelling Plaintiff to produce the April 13 Kasowitz Letter.  By Decision and Order filed August 15, 2012 (Doc. No. 478) ("August 15, 2012 D&O"), the undersigned again ordered Plaintiff to produce the April 13 Kasowitz Letter, and also imposed a civil contempt sanction on Plaintiff for failing to comply with this court's earlier orders directing production of the April 13 Kasowitz Letter.  August 15, 2012 D&O at 4-8.

In a separate Decision and Order filed August 15, 2012 (Doc. No. 480), District Judge Arcara denied Plaintiff's Objections to the April 19, 2012 D&O, affirming the April 19, 2012 D&O in its entirety.  On August 17, 2012, Plaintiff finally produced the April 13 Kasowitz Letter to Defendants, designating such letter as "Confidential" pursuant to the July 13, 2011 Protective Order.  Upon receiving the April 13 Kasowitz Letter, Defendants learned of three other documents referred in the April 13 Kasowitz Letter as the March 30 Capsicum Communication, the April 12 Kasowitz Letter, and the April 12 Vacco Letter ("the three communications").  In the Eighth Motion to Compel, Defendants seek to compel Plaintiff to produce the three communications which

Defendants assert are also responsive to the court's expedited discovery order, and to compel Plaintiff to remove from the April 13 Kasowitz Letter the assertedly improper confidential designation pursuant to the Protective Order.  By Text Order issued October 10, 2012 (Doc. No. 568) ("October 10, 2012 Order"), Plaintiff was ordered to produce the three communications to the undersigned for *in camera* inspection, and Plaintiff complied on October 12, 2012.

### A.    The Three Communications

In support of the Eighth Motion to Compel, Defendants argue the three communications are responsive to the expedited discovery orders because they are electronic versions of emails between the parties, Defendants' Memorandum - Eighth Motion to Compel at 7-8, contain copies of the purported contract or the StreetFax document, *id.* at 8-9, and are not privileged, *id.* at 10-11.

In opposition, Plaintiff argues that general discovery in this action remains stayed and the three communications are not responsive to any court order, Plaintiff's Response - Eighth Motion to Compel, at 1-3, the Defendants should have found them during their forensics computer experts' search of Plaintiff's electronic assets, *id.* at 3; that Plaintiff has not waived the attorney-client privilege as to the three communications, *id.* at 4; and that there has been no general subject matter waiver on the subject of the Kasowitz law firm's decision to withdraw from the action. *Id.* at 4-7.  In further support of their Eighth Motion to Compel, Defendants maintain the three withheld communications are responsive to this court's expedited discovery orders, Defendants' Reply - Eighth Motion to Compel at 1-3, Plaintiff has waived any privilege with regard to the

communications by failing to list the documents on a privilege log, *id.* at 3-5, and by disclosing the three communications to Holmberg, a third-party, non-lawyer who had no need to know the information contained within the documents, *id.* at 5-9, any attorney-client privilege that may have attached to the three communications was lost.

Fed.R.Civ.P. 26(b)(1) sets forth the scope and limitations of generally permissible discovery.  In particular,

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. . . .

Fed.R.Civ.P. 26(b)(1).

In this case, however, the parties have agreed to limit the initial phase of discovery to that necessary to determine the authenticity of the purported contract.  In connection with such limitation, the parties have executed several agreements which have been so-ordered by the court, which has also entered several orders restricting the scope of the initial phase of expedited discovery.  A plain review of the three communications, provided on October 12, 2012, to the undersigned for *in camera* inspection establishes the March 30 Capsicum Communication must be produced, but the April 12 Kasowitz Letter and the April 12 Vacco Letter need not be produced.

Specifically, the March 30 Capsicum Communication is a compilation of emails and communications between Plaintiff, Zuckerberg, and others associated with StreetFax and refer almost exclusively to the StreetFax project for which Plaintiff retained Zuckerberg's programming services.  As such, the March 30 Capsicum Communication was required to be produced pursuant to the August 18, 2011 Order.

*See* August 18, 2011 Order ¶¶ 2(C) (requiring production of "all electronic versions of any emails or purported emails by and among Defendant Zuckerberg, Plaintiff and/or other persons associated with StreetFax"); and 3 (requiring Plaintiff to produce, *inter alia*, "all files" identified in accordance with Plaintiff's obligations under ¶ 2(C)).  Further, attached to the March 30 Capsicum Communication is a copy of the StreetFax document which is a contract between Plaintiff and Zuckerberg for the StreetFax project, the production of which was required by the August 18, 2011 Order.  August 18, 2011 Order ¶ 3 (directing Plaintiff and Plaintiff's experts to "produce directly to Defendants all electronic copies or images of any Contract" in the possession of Plaintiff, his attorneys, experts, or other agents).

     There are, nevertheless, certain portions of the March 30 Capsicum Communication that need be redacted prior to its production.  Specifically, an email message from Zuckerberg to Plaintiff dated "wed aug 13th" contains a street address in a village located in Westchester County, New York, which may be for the home of Zuckerberg's parents, to which Zuckerberg requests Plaintiff to send payment for Plaintiff's work on the StreetFax project.  This personal information must be redacted. Also to be redacted is Zuckerberg's social security number which Zuckerberg, in a February 16, 2004 email, provided to one Karin Petersen ("Petersen"), in response to Petersen who requested the number so she could complete Zuckerberg's 1099 form in connection with paying Zuckerberg for his work on the StreetFax project.  Finally, the court observes that within the emails contained in the March 30 Capsicum Communication is technical programming information pertinent to the StreetFax project that Plaintiff may reasonably consider proprietary.  As such, Plaintiff will be permitted to

13

redact that information that is proprietary in nature with regard to StreetFax.  Plaintiff

thus must produce the March 30 Capsicum Communication, redacted in accordance

with this Decision and Order, **within ten (10) days** of this Decision and Order.

The April 12 Kasowitz Letter and the April 12 Vacco Letter, however, need not be

produced because they are not within the four corners of the court's orders establishing

the parameters of the limited discovery.  Specifically, although a plain reading of both

the April 12 Kasowitz Letter and the April 12 Vacco Letter establish their contents are

relevant to the purported contract's authenticity, and are referenced in documents

Plaintiff has already produced or been ordered to produce, nothing in the record

indicates either letter was an attachment to Privilege Log Item 379, the April 13, 2012

Kasowitz Letter, or the March 30 Capsicum Communication.  Nor does either letter

qualify as an email communication between Plaintiff, Zuckerberg, or anyone else

associated with the StreetFax project; rather, both documents were circulated solely

among Plaintiff's various attorneys.  Finally, because general discovery has been

stayed, Plaintiff has yet to be required to produce a privilege log listing all documents

and communications Plaintiff believes are protected from disclosure by any privilege.

That Stroz Friedberg did not identify either letter as possibly relevant material to be

produced subject to Plaintiff's timely assertion of a privilege is consistent with the fact

that the letters are written by attorneys, to other attorneys, with copies to still other

attorneys, but not to any non-attorneys.  Finally, as Plaintiff argues, Plaintiff's Response

- Eighth Motion to Compel at 4-7, this court has never ruled that Plaintiff has waived the

right to assert the attorney-client privilege as to all communications and documents

pertaining to the reason why Plaintiff's prior counsel withdrew from representing Plaintiff

in this matter.

As such, the April 12 Kasowitz Letter and the April 12 Vacco Letter need not be produced.


### B.    Confidential Designation

Defendants request the undersigned overrule as improper Plaintiff's designation of the April 13 Kasowitz Letter as confidential.  Defendants' Memorandum - Eighth Motion to Compel at 11-13.  In opposition, Plaintiff maintains the continued designation of the April 13 Kasowitz Letter as "confidential" is proper under the Joint Stipulated Protective Order based on Plaintiff's good faith belief that such letter "contains confidential information that is not publicly available 'such as proprietary or confidential business, technical, sales, marketing, financial, commercial, private, or sensitive information, or information that is otherwise reasonably designable as confidential.'" Plaintiff's Response - Eighth Motion to Compel at 7 (quoting Protective Order ¶ 3).  In particular, Plaintiff maintains the April 13 Kasowitz Letter's designation as confidential is reasonable because the information contained therein is not publicly available and contains sensitive information.  *Id.* at 8.  Defendants  assert in further support of their Eighth Motion to Compel that Plaintiff has improperly designated the April 13 Kasowitz Letter as confidential.  Defendants' Reply - Eighth Motion to Compel at 9-10.

Resolution of this issue turns on the court's construction of the Protective Order, a plain reading of which establishes that it was intended to protect proprietary information pertaining to Plaintiff's StreetFax project, as well as to personal financial information such as bank account information and social security numbers.  No such

information is contained within the April 13 Kasowitz Letter, and Plaintiff cannot rely on

the Protective Order to preclude the disclosure of information that is highly relevant to

the central issue before the court, *i.e.*, the authenticity of the purported contract.  As

such, Plaintiff has improperly designated the April 13 Kasowitz Letter as confidential,

and such designation is a nullity and must be removed.

Defendants' Eighth Motion to Compel thus is GRANTED in part and DENIED in

part.


### 2.    Ninth Motion to Compel

Defendants' Ninth Motion to Compel seeks an order directing Plaintiff to produce

for Defendants' inspection several hard-copies of the purported contract that were

created on or before June 30, 2010, the date this action was commenced in New York

Supreme Court, Allegany County.  Defendants' Memorandum - Ninth Motion to Compel

at 1.  In support of their motion, Defendants reference the July 1, 2011 Expedited

Discovery Order requiring Plaintiff to produce for Defendants' inspection "'all copies of

the purported contract in hard-copy form, created on or before June 30, 2010.'"  *Id.*

(quoting July 1, 2011 Expedited Discovery Order at 1).  As stated, Background and

Facts, *supra*, at 5-6, statements within the Argentieri Declaration filed August 21, 2012,

in opposition to Defendants' Motion to Dismiss indicate the creation of at least four

hard-copies of the purported contract which have not been produced for Defendants'

inspection.  Defendants' Memorandum - Ninth Motion to Compel at 2.  According to

Defendants, despite admitting to making all four of these hard-copies of the purported

contract, the disclosure of which is directed by both the July 1, 2012 Expedited

Discovery Order and the Hard-Copy Document Inspection Protocol, none have been produced to Defendants for inspection.  *Id.* at 2-3.

In opposition, Plaintiff maintains that Boland had advised Southwell by email on September 6, 2012, that neither Plaintiff nor his counsel were in possession or custody of any documents that should have, yet have not been, produced.  Plaintiff's Response - Ninth Motion to Compel at 1 and Exh. A.  In support of his argument, Plaintiff references the Ceglia and Argentieri Declarations Opposing Motion to Extend Time, filed September 12, 2012, in which each denies the existence of any additional copies of the purported contract made prior to June 30, 2010 that have not been produced, explaining that the additional copies made in connection with the filing of the original complaint on June 30, 2010 were discarded as "waste paper" or "trash."  Ceglia Declaration Opposing Motion to Extend Time ¶ 2-5, 7; Argentieri Declaration Opposing Motion to Extend Time ¶¶ 14-15. Plaintiff maintains he never contemplated the authenticity of the purported contract would be questioned or that the court would order every copy of the purported contract to be produced.  Ceglia Declaration Opposing Motion to Extend Time ¶ 6.  In an email to Southwell dated September 13, 2012, Boland inquired whether the explanations that the additional copies of the purported contract to which Argentieri referred in responding in opposition to Defendants' Motion to Dismiss were discarded as waste paper or trash soon after their creation, as stated by Ceglia and Argentieri in their respective Declarations Opposing Motion to Extend Time were sufficient to satisfy Defendants' Ninth Motion to Compel or, if not, requested Defendants to indicate how such explanations were deficient.  Plaintiff's Response - Ninth Motion to Compel, Exh. B.  According to Plaintiff, Defendants never responded to

17

Boland's September 13, 2012 email.  Plaintiff's Response - Ninth Motion to Compel at 2.  Plaintiff further maintains that because it is not possible for Defendants to demand the production of documents that do not exist, and given that Defendants were advised of the destruction of the additional copies before Plaintiff's response in opposition to Defendants' Ninth Motion to Compel was filed, Defendants' continued litigation of such motion is "wholly unnecessary" and constitutes an abusive litigation practice entitling Plaintiff to an award of costs and attorneys' fees incurred in opposing the motion.  *Id.*

In further support of the motion, Defendants characterize the explanations given by Ceglia and Argentieri regarding the destruction of the additional hard-copies of the purported contract as "cryptic" and "evasive" for lack of detail as to the identity of the person responsible for destroying which specific documents and on what date the destruction occurred.  Defendants' Reply - Ninth Motion to Compel at 1-2.  According to Defendants, Plaintiff's assertions of full compliance with the July 1, 2011 Expedited Discovery Order and Hard-Copy Document Inspection Protocol must be considered in light of the fact that Plaintiff has withheld other documents and electronic assets that were only produced pursuant to court orders granting Defendants' earlier motions to compel. *Id.* at 1-2 and n. 1.  As such, Defendants request an order directing Plaintiff to confirm, in writing and under oath, that all hard-copies of the purported contract created by Plaintiff or his agent prior to June 30, 2010 either have been produced to Defendants or have been destroyed.  *Id.* at 2.

A plain reading of the emails and declarations submitted by the parties with regard to Defendants' Ninth Motion to Compel establishes that, as Defendants' assert, at least four additional copies of the purported contract were created by Ceglia and

Argentieri while preparing the original contract that was filed on June 30, 2010 in New York Supreme Court, Allegany County.  *See* Background and Facts, *supra*, at 5-6. Plaintiff does not dispute the creation of such copies but, rather, maintains the copies were destroyed shortly after their creation by discarding the copies as waste paper or trash.  It is, however, Plaintiff's assertion that such copies were discarded because Plaintiff never contemplated the authenticity of the purported contract, ostensibly granting Plaintiff 50% ownership in a multi-billion dollar company, would be challenged that blinks credulity.  Significantly, spoliation of evidence is an accepted ground for sanctioning the party responsible for the destruction.  *See*, *e.g.*, *Byrnie v. Town of Cromwell, Board of Education*, 243 F.3d 93, 107 (2d Cir. 2001) (the spoliation or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation can support imposition of sanctions).  Nevertheless, dismissal of an action is a harsh sanction to be employed only under the most egregious of circumstances where less drastic alternatives would not suffice.  *See Bobal v. Rensselaer Polytechnic Institute*, 916 F.2d 759, 764 (2d Cir. 1990) (although outright dismissal of an action for noncompliance with discovery is within a district court's discretion, dismissal "is a harsh remedy to be used only in extreme situations").  Indeed, Defendants do not request such sanction, and the destruction of the copies has not deprived Defendants of their ability to assert any plausible defense to the Amended Complaint, as is evident from the filing of Defendants' Dispositive Motions which remain pending before the court.[4]

---

[4] The court expresses no opinion as to whether Defendants contemplate that forensic examination of such copies would establish the copies and the original purported contract were printed on

Accordingly, Defendants' Ninth Motion to Compel is GRANTED.  Plaintiff is ORDERED to file **within ten (10) days** an affidavit confirming, in writing and under oath, that all hard-copies of the purported contract created by Plaintiff or his agent prior to June 30, 2010 either have been produced to Defendants or have been destroyed.

### 3.      Attorney's Fees

Defendants request an award of costs, including attorney's fees, incurred in bringing both their Eighth and Ninth Motions to Compel.  Defendants' Memorandum - Eighth Motion to Compel at 14; Defendants' Memorandum - Ninth Motion to Compel at 3.  As relevant, Fed.R.Civ.P. 37 ("Rule 37"), provides that if a motion to compel compliance with a discovery order is granted, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed.R.Civ.P. 37(a)(5)(A).  Payment of costs and attorney's fees, however, must not be ordered if one of three exceptions applies, including (1) the motion to compel was filed before the movant attempted in good faith to obtain the discovery without court action, (2) the nondisclosure was "substantially justified," or (3) "other circumstances make an award of expenses unjust."  Fed.R.Civ.P. 37(a)(5)(A)(i), (ii), and (iii).  In the instant case, only a partial award of attorney's fees is justified.

In particular, with regard to Defendants' Eighth Motion to Compel, Defendants

---

the same paper with the same toner ink, which would indicate the copies were created contemporaneously with the original purported contract.

sought disclosure of the three communications, of which the court has, for reasons discussed above, Discussion, *supra*, at 11-15, determined only one must be produced, Plaintiff being justified in withholding the April 12 Kasowitz Letter and the April 12 Vacco Letter.  Accordingly, Defendants may recover only those attorney's fees incurred in connection with that portion of Defendants' Eighth Motion to Compel requesting production of the March 30 Capsicum Communication.  As to Defendants' Ninth Motion to Compel, Plaintiff has steadfastly asserted the four additional copies of the purported contract created prior to the filing of the original complaint on June 30, 2010 were destroyed.  Should Plaintiff comply with the court's direction that he file an affidavit confirming, in writing and under oath, that the additional copies Defendants seek were destroyed, the circumstances would make an order requiring Plaintiff to pay Defendants' attorney's fees incurred in connection with the Ninth Motion to Compel unjust.

## CONCLUSION

Based on the foregoing, Defendants' Eighth Motion to Compel (Doc. No. 511) is GRANTED in part and DENIED in part; Defendants' Ninth Motion to Compel (Doc. No. 521), is GRANTED. The April 13 Kasowitz Letter shall not be designated as "Confidential" and Plaintiff shall provide Defendants with the March 30 Capsicum Communication, redacted in accordance with this court's discussion, **within ten 10 days** of this Decision and Order, but Plaintiff need not produce the April 12 Kasowitz Letter or the April 12 Vacco Letter.  Plaintiff is further ORDERED to file **within ten (10) days** of this Decision and Order an affidavit confirming, in writing and under oath, that

all hard-copies of the purported contract created by Plaintiff or his agent prior to June 30, 2010 either have been produced to Defendants or have been destroyed.

Defendants are directed to file affidavits of costs and attorneys' fees incurred, consistent with this Decision and Order, **within ten (10) days** of this Decision and Order; Plaintiffs' opposition, if any, shall be filed **within ten (10) days** thereafter.  Any showing that the award of costs should be allocated, pursuant to Fed.R.Civ.P. 37(b)(2)(C), between Plaintiff and his attorneys shall be included in the required affidavits to be filed by the Plaintiff.  Oral argument shall be at the discretion of the court.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: November 7, 2012
        Buffalo, New York