UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
PAUL D. CEGLIA, :
:
              Plaintiff, :   Civil Action No. 1:10-cv-00569-RJA
:
  v. :  **DECLARATION OF**
:  **ALEXANDER H. SOUTHWELL**
MARK ELLIOT ZUCKERBERG and :
FACEBOOK, INC., :
:
              Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

    I, ALEXANDER H. SOUTHWELL, hereby declare under penalty of perjury that the following is true and correct:

    1.    I am an attorney licensed to practice law in the State of New York and admitted to practice before this Court. I am a partner in the law firm of Gibson, Dunn & Crutcher LLP, counsel of record for Mark Elliot Zuckerberg and Facebook, Inc. in the above-captioned matter. I make this declaration, based on personal knowledge, in support of Defendants' Reply Memorandum of Law in Support of Defendants' Motion to Dismiss.

    2.    This declaration describes and authenticates documentary and other evidence in support of Defendants' Reply Memorandum of Law in Support of Defendants' Motion to Dismiss.

    3.    A true and correct copy of the criminal complaint filed against Paul Ceglia in *United States of America v. Ceglia*, No. 12-MJ-2842 (S.D.N.Y. October 25, 2012) is attached hereto as Exhibit A.

    4.    Plaintiff Paul Ceglia's Response to Defendants' Motion to Dismiss is rife with distortion, falsehoods, and pretext. Many of these numerous false assertions are addressed in

1

Defendants' Reply.  However, given the large number of distortions in Ceglia's brief and in the interest of efficiency, Defendants succinctly address those that are not are addressed in Defendants' Reply in the chart attached hereto as Exhibit B.

5. The Seagate hard drive, which Ceglia claims he did not "purchase, own, use or access" (Opp. 50), contains files related to this litigation, including "emails with mark and jeff 091803 incl email list.doc;" "mark emails 082903.doc;" and "emails with mark and jeff 102003.doc."  This is demonstrated by the first privilege log created by Ceglia during expedited discovery, which lists these files and others.  *See* Unredacted August 4, 2011 Southwell Declaration (filed in redacted form as Doc. No. 97), Ex. I, item numbers 33 through 39.  The "Source File Path" column indicates that item numbers 33 through 39 are from source media "FL02," which is Stroz Friedberg's identifier for the Seagate hard drive produced to Defendants in Sarasota, Florida on July 15, 2011.  *See* Doc. No. 88.  For the convenience of the Court, a true and correct copy of the relevant portions of this privilege log is attached hereto as Exhibit C.[1]

6. During the recent detention hearing in *United States of America v. Ceglia*, No. 12-MJ-2842, Ceglia referred to the Seagate hard drive as "my personal computer."  *See* October 31, 2012 Hearing Transcript, a true and correct copy of which is attached hereto as Exhibit D, at 25:4-5.

---

[1] Note that Ceglia originally designated these files containing purported copy-pasted emails as "Confidential" pursuant to the protective order in this case.  Doc. No. 86.  Defendants challenged these and other designations (Doc. No. 95), and Ceglia submitted briefing in support of these designations (Doc. No. 106).  The Court initially sustained Ceglia's confidentiality designations related to these item numbers, noting that he "could have held a good faith belief" that they contained information covered by the protective order.  *See* Doc. No. 107 at 6.  Ceglia then publicly filed these documents as an exhibit to a motion in November 2011, thereby waiving his confidentiality over them and demonstrating that he did not have a good-faith belief in their confidentiality.  *See* Doc. No. 224-1.

2

7. During the course of expedited discovery, Stroz Friedberg discovered three emails sent from Ceglia's business associate Robert Frykberg to Ceglia at the ceglia@adelphia.net email address in 2006. A true and correct copy of the portion of the production log referencing those emails is attached hereto as Exhibit E.

8. At my direction, Kroll Associates, Inc. ("Kroll"), an intelligence and investigation firm engaged by Defendants, conducted a search of public records to investigate the phone number listed in the March 3, 2004 email Ceglia sent to Jim Kole, Esq. attaching the StreetFax Contract. Kroll determined that this (727) phone number was not a traditional landline number, but was owned by a Voice over Internet Protocol, or VoIP, provider. VoIP numbers are portable phone numbers and can be used anywhere with an Internet connection.

9. There are numerous scholarly articles that establish that the underlying methodological principles of Gerald LaPorte's phenoxyethanol (PE) test are well-established, scientifically valid, and have been used by ink chemists for at least a decade. Those articles are cited in LaPorte's Report (Doc. No. 326) and in Defendants' Reply, and Defendants can provide them to the Court upon request.

10. A true and correct copy of the Court's decision in *Cott Beverages Inc. v. Americann Co-Pack Inc. et al*, No. 100402774 (Utah 4th Dist. October 19, 2012), is attached hereto as Exhibit F. In that decision, the Utah court denied a motion in limine to exclude Gerald LaPorte's testimony under *Daubert* and ruled that LaPorte's methodology satisfies *Daubert*. The court found that LaPorte is "extremely qualified and is arguably one of the foremost experts in the specific area of GC/MS"; that GC/MS analysis is "generally accepted by the relevant scientific community"; that the reliability of "the dynamic approach to ink-dating by GC/MS

analysis" is "demonstrated through extensive peer reviewed research and literature"; and that LaPorte's testimony was "not only helpful, but necessary" to the trier of fact. Ex. F at 7-12.

11. A true and correct copy of an excerpt of the deposition testimony of Plaintiff's expert Jim Blanco in the case *Edens v. Kennedy*, No. 2:01-0933, 2003 WL 25430114 (S.D.W.Va. July 22, 2003), is attached hereto as Exhibit G.

12. Three professional forensic societies—the American Board of Forensic Document Examiners ("ABFDE"), the Southwest Association of Forensic Document Examiners ("SWAFDE"), and the American Academy of Forensic Sciences ("AAFS")—have launched investigations into alleged ethical violations by Blanco. While investigations were pending in the ABFDE and the SWAFDE, Blanco "resigned" from both professional societies. The thorough AAFS investigation resulted in the Ethics Committee, chaired by a former judge and composed of preeminent document examiners, finding unanimously that Blanco violated multiple sections of the AAFS's Code of Ethics.

    a. Judge Haskell Pitluck, the Chair of the Ethics Committee of the AAFS, describes these events in his January 8, 2010 declaration submitted in support of Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction in the case of *James A. Blanco v. American Academy of Forensic Sciences*, No. CV 09 2780 SI (N.D. Cal.). A true and correct copy of this declaration is attached hereto as Exhibit H.

    b. Attached hereto as Exhibit I is a true and correct copy of Blanco's May 12, 2008 letter of resignation from the ABFDE, as it was attached to the Haskell Declaration, supra.

  c. Attached hereto as Exhibit J is a true and correct copy of an October 12, 2007 letter from forensic document examiner David S. Moore to Judge Pitluck regarding SWAFDE's investigation and Blanco's subsequent resignation from SWAFDE, as it was attached to the Haskell Declaration, *supra*.

  d. In the November 2010 newsletter of the AAFS, the President Joseph P. Bono issued a message describing the circumstances of Blanco's expulsion, his lawsuit, and the ultimate settlement. A true and correct copy of this newsletter is attached hereto as Exhibit K. Mr. Bono describes the AAFS findings against Blanco, including that he submitted "an erroneous and misleading report to be used in the judicial process, thereby diminishing confidence in forensic scientists and their disciplines," and that he "knowingly misrepresent[ed] the data used to arrive at the conclusions in his report." Ex. K at 1. Mr. Bono also makes clear that, while AAFS vacated Blanco's expulsion and allowed him to resign as part of the settlement of his suit against them, no Ethics Committee findings were overturned or vacated. *Id*. at 3.

13. A true and correct copy of the April 5, 2012 letter from Defendants to Plaintiff's counsel Dean Boland, accompanying the production of emails from Zuckerberg's Harvard account, is attached hereto as Exhibit L.

14. True and correct copies of emails dated July 30, 2003 and November 19, 2003, which were extracted from Zuckerberg's Harvard account and produced to Plaintiff on April 5, 2012, are attached hereto as Exhibit M.

15. A true and correct copy of excerpts of the transcript of Defendants' July 11, 2012 deposition of Larry Stewart is attached hereto as Exhibit N.

16. A true and correct copy of excerpts of the transcript of Defendants' July 16, 2012 deposition of Walter Rantanen is attached hereto as Exhibit O.

17. A true and correct copy of excerpts of the transcript of Defendants' July 25, 2012 deposition of James Blanco is attached hereto as Exhibit P.

18. A true and correct copy of excerpts of the transcript of Defendants' June 29, 2012 deposition of Jerry Grant is attached hereto as Exhibit Q.

19. A true and correct copy of the April 13, 2011 Kasowitz Letter from Kasowitz Benson attorney Aaron Marks, Esq. to Ceglia's then-attorneys at DLA Piper LLP and Lippes Mathias Wexler Friedman LLP (copying current attorney Paul Argentieri, Esq.) is attached hereto as Exhibit R.

20. Pursuant to the Court's August 18, 2011 Order (Doc. No. 117), Defendants were permitted to take four samples from the purported "PC" initials on page one of the Work for Hire Document. *See also* Doc. No. 112 ¶ 8. Defendants' experts Dr. Lyter and Mr. LaPorte took all four of the samples available to Defendants in August 2011.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 9th day of November, 2012 at New York, New York.

_____
Alexander H. Southwell