UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  |  |  |
|---|---|---|
| PAUL D. CEGLIA, | x : : | |
| Plaintiff, | : : | |
| v. | : : | Civil Action No. 1:10-cv-00569-RJA |
| MARK ELLIOT ZUCKERBERG and FACEBOOK, INC., | : : : | |
| Defendants. | : : x | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO CEGLIA'S OBJECTIONS TO JUDGE FOSCHIO'S NOVEMBER 29, 2012 ORDER**

Thomas H. Dupree, Jr.
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
(202) 955-8500

Orin Snyder
Alexander H. Southwell
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193
(212) 351-4000

Terrance P. Flynn
HARRIS BEACH PLLC
726 Exchange Street
Suite 1000
Buffalo, NY 14210
(716) 200-5120

January 4, 2013

## PRELIMINARY STATEMENT

During the court-ordered period to conduct expert depositions, Plaintiff Paul Ceglia noticed and confirmed ten depositions of Defendants' experts.  Ultimately, Ceglia unjustifiably cancelled seven of those depositions—<u>three with less than 48 hours' notice and four with less than 24 hours' notice</u>.  On November 29, 2012, Judge Foschio ordered Ceglia to reimburse Defendants for their reasonable costs and fees caused by Ceglia's untimely cancellations.  Doc. No. 615 (the "November 29 Order").

Now facing federal prosecution for his fraudulent lawsuit, *see United States of America v. Ceglia*, 12-CR-876, Indictment (S.D.N.Y. November 26, 2012), Ceglia is frantically trying to save himself and avoid repaying a fraction of the damage his sham lawsuit has caused Defendants, this Court, and the public.  But Ceglia's Objections to the November 29 Order (Doc. No. 633) do not offer any basis for finding that Judge Foschio's ruling was clearly erroneous or contrary to law under Rule 72(a).  Indeed, Ceglia's brief in support of these Objections is <u>virtually identical</u> to the one he filed in opposition to Defendants' Application for Recovery of Expenses, and presents precisely the same arguments that Judge Foschio already carefully considered and rejected in his meticulous eighteen-page Order.  *Compare* Doc. No. 551 *with* Doc. No. 633.

Nondispositive orders of a magistrate judge are reviewed under a "highly deferential" abuse of discretion standard.  *Arnold v. Krause, Inc.*, 233 F.R.D. 126, 129 (W.D.N.Y. 2005) (Arcara, J.).  Judge Foschio applied well-settled law supporting an award of fees and costs for last-minute deposition cancellations.  November 29 Order at 10-11.  His ruling does not remotely approach an abuse of discretion and should be affirmed in its entirety.  Ceglia's Objections are desperate and baseless and should be rejected by this Court.

**FACTS**

In July 2011, based on Defendants' substantial prima facie showing of fraud, Judge Foschio ordered targeted expedited discovery to allow Defendants to further develop evidence that the Work for Hire document and purported emails referred to in Ceglia's Amended Complaint were forgeries that Ceglia was using to perpetrate a massive fraud on this Court.  Doc. No. 83.  That expedited discovery confirmed Ceglia's fraud.  As set forth in Defendants' Motion to Dismiss and supporting expert reports, it is now overwhelmingly clear that Ceglia—perhaps working in concert with others—fabricated the Work for Hire document and created fake "emails" in order to perpetrate his fraudulent lawsuit on Defendants and this Court.  *See* Doc. Nos. 319-335.  Indeed, federal prosecutors determined that the evidence of fraud was so clear-cut in this case that they presented evidence to a grand jury that voted to indict Ceglia on two felony counts—powerful independent corroboration of Ceglia's criminal scheme.  This evidence includes the authentic StreetFax contract between Ceglia and Zuckerberg, which says nothing about Facebook and was discovered on Ceglia's own computers.   It was uncovered at the end of March 2011 by Ceglia's own attorneys at the law firm of Kasowitz Benson Torres & Friedman LLP, who then promptly withdrew from the case and informed Ceglia's other attorneys that Ceglia's lawsuit was a fraud.  *See* Doc. No. 589-18.  Defendants' computer experts at Stroz Friedberg LLP then discovered the authentic StreetFax contract after Defendants obtained Ceglia's computers during expedited discovery.  *See* Doc. No. 325 at 11-22.

Ceglia has perpetrated his fraudulent lawsuit with utter disrespect for this Court and Defendants.  He has engaged in a pattern of bad-faith litigation misconduct, including: the willful destruction or disposal of USB electronic storage devices known to contain relevant evidence, *see* Doc. Nos. 319 at 57-59, 588 at 32-33; attempts to wipe his computer's hard drive, *see* Doc.

Nos. 319 at 59-61, 588 at 33-34; the intentional deletion of relevant files and emails, *see* Doc.

Nos. 319 at 61-62, 588 at 34; the obstructionist stonewalling of discovery necessitating nine

motions to compel, all of which have been granted in full or in part, *see* Doc. Nos. 95, 128, 155,

245, 295, 382, 461, 512, 522; his many false declarations filed in support of his fraudulent

claims, *see*, *e.g.*, Doc. Nos. 88, 225, 482; his frivolous assertions of privilege and confidentiality

made in an effort to conceal critical evidence, most of which have since been overruled, *see*, *e.g.*,

Doc. Nos. 107, 357; his filing of numerous frivolous motions[1]; his trickery of witnesses, *see* Doc.

No. 218 ¶ 9; and his egregious mischaracterizations of witness testimony, *see*, *e.g.*, Doc. No.

386, an instance of which Judge Foschio described as "a gross misrepresentation which would be

detected by even the marginally literate," Doc. No. 457 at 15.

     Judge Foschio's November 29 Order is not the first time that Ceglia or his attorneys have

merited sanctions for litigation misconduct.  In sanctioning Ceglia for his conduct that

necessitated Defendants' second motion to compel, Doc. No. 129, Judge Foschio determined that

Ceglia had demonstrated a "plain lack of respect for the court's order which cannot be

countenanced," Doc. No. 283 at 22.  Judge Foschio imposed upon Ceglia a $5,000 civil contempt

fine and awarded Defendants attorneys' fees in connection with Ceglia's noncompliance,

amounting to $92,627.79.  Doc. Nos. 283 at 30, 292 at 39, 370 at 14.  The Court sanctioned both

Ceglia and his attorney in connection with Defendants' seventh motion to compel, Doc. No. 461,

imposing a $1,000 civil contempt fine on Ceglia for failing to produce the responsive documents,

and a $1,000 civil contempt fine on his attorney Dean Boland for "interfering with the court's

---

[1]    Some of these frivolous motions have been an effort to bury Defendants in paper on the eve of holidays, *see, e.g.*, Doc. No. 228.  For filing six such frivolous motions, the Court has ordered Ceglia to show cause why he should not be sanctioned, *see* Doc. No. 457 at 43, an issue which is now fully submitted and pending before Judge Foschio.

discovery orders."  Doc. No. 478 at 8.  The Court also awarded Defendants attorneys' fees

incurred in connection with compelling Ceglia's compliance.[2]  *Id.*

In conjunction with their Motion to Dismiss, Defendants filed two other motions.  The

first, Defendants' dispositive Motion for Judgment on the Pleadings, demonstrates that even if

Ceglia's fraudulent allegations are presumed to be true, his claims must be dismissed as barred

by the statute of limitations and laches.  *See* Doc. No. 321.  The second motion, Defendants'

Motion to Stay discovery until this Court decided the two pending dispositive motions, sought to

prevent Ceglia from further abusing the judicial process and harassing Defendants until this

Court has determined whether this lawsuit may proceed.  *See* Doc. No. 323.  On April 4, 2012,

Judge Foschio issued an order staying "general discovery" but permitting a "limited period of

expert discovery" before Ceglia was required to respond to Defendants' dispositive motions.

Doc. No. 348.  Pursuant to this order, the parties had a two-month period in which to depose the

opposing party's experts after Ceglia submitted expert reports on June 4, 2012.  *Id.*[3]

On June 19, 2012, Ceglia's counsel Dean Boland informed Defendants that he intended

to depose ten of Defendants' experts.  Boland proposed coordinating the schedule so that the

parties' experts in similar fields could attend each other's depositions, and requested a call with

Defendants' counsel to "arrange depositions in the morning and afternoon on single days."

September 7, 2012 Southwell Declaration (Doc. No. 519), Exs. A, B.  On June 21, prior to that

call to coordinate each expert's deposition, Ceglia noticed the depositions of ten Defendants'

experts—Eric Friedberg, Bryan Rose, Michael McGowan, Jason Novak, Gerald LaPorte, Peter

Tytell, Dr. Albert Lyter, Gerald McMenamin, Gus Lesnevich, and Frank Romano—for the last

week of July and the first week of August 2012.  *See* Doc. No. 519 ¶¶ 4-5.

---

[2]     Defendants' fee application is currently pending before Judge Foschio.  *See* Doc. No. 503.

[3]     This period of expert depositions was later extended by ten days on consent of the parties.  *See* Doc. No. 471.

During the June 21 meet-and-confer call, Defendants' counsel and Boland discussed the

scheduling of depositions and agreed that the deposing party would pay the deposed expert's fees

for the deposition and reimburse, within a reasonable time, reasonable travel and lodging

expenses actually incurred.  *See id.* ¶ 5.  Defendants' counsel confirmed this understanding in a

letter sent to Boland the next day, on June 22.  *See* Doc. No. 519, Ex. C.[4]  Three days later, on

June 25, Defendants' counsel proposed a schedule for ten Defendants' experts, based on their

individual schedules and "taking into account [Boland's] concern with travel."  Doc. No. 519,

Ex. D.

As further discussed below, Boland confirmed all of the proposed dates, but then

proceeded to cancel <u>seven</u> of these depositions with less than 48 hours' notice prior to the start of

the deposition.  He rescheduled only two of the cancelled depositions.  A summary of the

scheduling and subsequent cancelling of each affected Defendants' expert follows.

1.      <u>Jason Novak and Eric Friedberg</u>.  On June 25, the parties set the deposition of the

members of the Defendants' team of computer forensics experts from the digital forensics firm

Stroz Friedberg LLC, including Mr. Novak and Mr. Friedberg, for July 18 and 19.  *See* Doc. No.

519, Ex. D.  On July 15, Boland confirmed those dates.  *See* Doc. No. 519, Ex. E.  On July 16,

Boland without warning cancelled Mr. Novak's and Mr. Friedberg's depositions—less than 48

hours before the first Stroz Friedberg deposition was scheduled to begin.  *See* Doc. No. 519, Ex.

F.  The fees Defendants requested in association with Mr. Novak's cancelled deposition were

witness and attorney fees expended in preparing Mr. Novak, his appearance fee, and his travel

and lodging expenses, since he had already travelled to New York from Chicago, Illinois for the

late-cancelled deposition.  *See* Doc. No. 519 ¶ 26, Ex. S.  Ceglia did not seek to reschedule Mr.

---

[4]      Defendants have paid all such fees associated with the depositions of Plaintiff's experts.  *See* Doc. No. 519 ¶ 7.

Novak's deposition.  Judge Foschio granted Defendants' request with regard to Mr. Novak in full.

The fees Defendants requested in association with Mr. Friedberg's cancelled deposition were witness and attorney fees expended in his preparation for the deposition and his appearance fee.  Because Mr. Friedberg lives in New York City, he did not incur travel expenses associated with his late-cancelled deposition.  *See* Doc. No. 519, ¶ 26, Ex. S.  Ceglia did not seek to reschedule Mr. Friedberg's deposition.  Judge Foschio granted Defendants' request with regard to Mr. Friedberg in full.

2.     <u>Peter Tytell</u>.  On July 12, Boland confirmed the date Defendants had proposed for the deposition of their document examination expert Mr. Tytell: July 25.  *See* Doc. No. 519, Ex. G.  On July 16, Boland notified Defendants' counsel of purported conflicts that required him to reschedule the deposition of Mr. Tytell.  *See* Doc. No. 519 ¶ 12.  The parties then set a new date for the deposition of Mr. Tytell: August 2.  On July 19, Boland confirmed that date.  *See* Doc. No. 519 ¶ 13.  On August 1 at 11:58 p.m., Boland cancelled Mr. Tytell's deposition—less than 12 hours before it was scheduled to begin (at 10:00 a.m. on August 2).  *See* Doc. No. 519, Ex. H.[5]  The next day, Mr. Tytell's deposition was rescheduled for August 3.  *See* Doc. No. 519, Ex. I.  Because Mr. Tytell's deposition was so quickly rescheduled and because Mr. Tytell lives in New York City, Defendants only sought Mr. Tytell's cancellation fee in connection with the late

---

[5]     In his untimely cancellation notice sent around midnight the night before the deposition, Boland attributed the postponement to weather-related cancellation of his flights, and stated that there were "[n]o flights from [Philadelphia] to [New York] available until 3.20 pm tomorrow on any airline.  Tomorrow's depositions cannot go forward."  *Id.*  However, there were, in fact, multiple flights and trains with availability leaving early in the morning out of Philadelphia, arriving in New York well before the scheduled 10:00 a.m. start time.  *See* Doc. Nos. 518 at 3 n.2, 519 ¶ 15.  Moreover, Defendants notified Boland that Defendants would be amenable to a late start to accommodate Boland's travel difficulties.  These overtures were refused and the depositions were postponed.  As Judge Foschio noted, Boland's asserted excuse that he was unable to get to New York City in time for the scheduled depositions "is undermined by Plaintiff's failure to explain why travel on a different flight or by train the following morning could not have been reasonably accomplished given that Defendants had offered to delay the start time of the depositions."  November 29 Order at 12-13.

cancellation of his deposition.[6]  *See* Doc. No. 519, ¶ 26.  Judge Foschio granted Defendants'

request with regard to Mr. Tytell in full.

       3.     Dr. Albert Lyter.  On July 12, Boland confirmed the date Defendants had

proposed for their document examination expert and ink chemist Dr. Lyter: July 25.  *See* Doc.

No. 519, Ex. G.  On July 16, Boland notified Defendants' counsel of purported conflicts that

required him to reschedule the deposition of Dr. Lyter.  *See* Doc. No. 519 ¶ 12.  The parties then

set a new date for the deposition of Dr. Lyter: August 2.  *See id.*  On July 19, Boland confirmed

that date.  *See* Doc. No. 519 ¶ 13.  On August 1 at 11:58 p.m., Boland cancelled Dr. Lyter's

deposition—less than 24 hours before it was scheduled to begin (at 2:00 p.m. on August 2).  *See*

Doc. No. 519, Ex. H.  The next day, Boland rescheduled Dr. Lyter's deposition for August 10.

*See* Doc. No. 519, Ex. I.  Because of this postponement of over a week, Dr. Lyter and

Defendants' counsel spent significant additional time on the day prior to his rescheduled

deposition date refreshing, reviewing, and conferring in preparation.  *See* Doc. No. 519, Ex. S.

Defendants therefore requested the additional witness and attorney fees incurred in connection

with preparing for Dr. Lyter's rescheduled deposition.  *See id.*, ¶ 26.  Despite the parties'

agreement to cover appearance fees and traveling expenses for each deposed witness, Boland has

still not paid those costs associated with Dr. Lyter's deposition.  *See* Doc. No. 519 ¶ 7.  Because

Dr. Lyter had to travel from his home in Raleigh, North Carolina to New York City for his

deposition, he incurred travel and lodging expenses for the deposition that was cancelled.  *See*

Doc. No. 519 ¶ 26.  Judge Foschio granted Defendants' request with regard to Dr. Lyter in full.

       4.     Gerald McMenamin.  On June 25, the parties set the deposition of Professor

McMenamin, Defendants' expert in forensic linguistics, for August 3.  *See* Doc. No. 519, Ex. D.

On July 19, Boland confirmed that date.  *See* Doc. No. 519 ¶ 13.  Boland then reconfirmed

---

[6]    Ceglia had already paid Mr. Tytell's appearance fee.

Professor McMenamin's deposition for August 3 on August 1 and again on August 2.  *See* Doc.

No. 519, Exs. H, I.  But, at 8:27 p.m. later that same day, Boland informed Defendants' counsel

that he was cancelling Professor McMenamin's deposition—about 13.5 hours before it was

scheduled to begin.  *See* Doc. No. 519, Ex. I.  The fees Defendants requested in association with

Professor McMenamin's late-cancelled deposition were witness and attorney fees expended in

preparing Professor McMenamin, his appearance fee, and his travel and lodging expenses, since

he had already travelled to New York from California for the deposition.  *See* Doc. No. 519 ¶ 26,

Ex. S.  Ceglia did not seek to reschedule Professor McMenamin's deposition.  In connection with

Professor McMenamin's cancelled deposition, Judge Foschio granted in full witness and attorney

fees and his appearance fee, but reduced the award for travel and lodging expenses in substantial

accordance with Ceglia's requested reductions.

     5.    <u>Gus Lesnevich</u>.  On June 25, the parties set the deposition of Mr. Lesnevich,

Defendants' document examiner and handwriting specialist, for August 2.  *See* Doc. No. 519, Ex.

D.  On July 16, Boland notified Defendants' counsel of purported conflicts that required him to

reschedule the deposition of Mr. Lesnevich.  *See* Doc. No. 519 ¶ 12.  The parties then set a new

date for the deposition of Mr. Lesnevich: August 8.  *See id.*  On July 19, Boland confirmed that

date.  *See* Doc. No. 519 ¶ 13.  But, at 2:43 p.m. on August 6, Boland informed Defendant's

counsel that he was cancelling Mr. Lesnevich's deposition—less than 48 hours before it was

scheduled to begin.  *See* Doc. No. 519, Ex. J.  The fees Defendants requested in association with

Mr. Lesnevich's late-cancelled deposition were witness and attorney fees expended in preparing

Mr. Lesnevich, his appearance fee, and his travel and lodging expenses, since he had already

travelled to New York from Pennsylvania for the deposition.  *See* Doc. No. 519 ¶ 26, Ex. S.

Ceglia did not seek to reschedule Mr. Lesnevich's deposition.  In connection with Mr.

Lesnevich's cancelled deposition, Judge Foschio granted in full witness and attorney fees and his appearance fee, but reduced the award for travel and lodging expenses in substantial accordance with Ceglia's requested reductions.

6.      Frank Romano.  On June 27, Boland confirmed that Ceglia would depose Defendants' typography and print expert, Professor Romano, on August 14.  *See* Doc. No. 519, Ex. K.  At 2:29 p.m. on August 13, Boland informed Defendants' counsel that he was cancelling Professor Romano's deposition—less than 20 hours before it was scheduled to begin.  *See* Doc. No. 519, Ex. L.  The fees Defendants requested in association with Professor Romano's late-cancelled deposition were witness and attorney fees expended in preparing Professor Romano, his appearance fee, and his travel and lodging expenses, since he had already travelled to New York for the deposition.  *See* Doc. No. 519 ¶ 26, Ex. S.  Ceglia did not seek to reschedule Professor Romano's deposition.  In connection with Professor Romano's cancelled deposition, Judge Foschio granted in full witness and attorney fees and his appearance fee, but reduced the award for travel and lodging expenses in substantial accordance with Ceglia's requested reductions.

Following each of these untimely cancellations, Defendants' counsel notified Plaintiff's counsel that Defendants intended to seek the reasonable fees and costs incurred as a result of Ceglia's untimely cancellations of these depositions.  *See, e.g.*, Doc. No. 519, ¶ 19, Exs. M-R. After the period of expert depositions, Defendants provided Ceglia with a summary of costs incurred, itemization of attorneys' and witnesses' fees, and invoices where available, *see* Doc. No. 519 ¶ 24, but Ceglia did not reimburse those costs and fees.  *See* Doc. No. 519 ¶ 25.  On September 7, 2012, Defendants filed their Application for Recovery of Costs.  Doc. No. 518.

## JUDGE FOSCHIO'S NOVEMBER 29, 2012 ORDER

In light of these facts and the applicable case law, Judge Foschio granted Defendants' application for recovery of fees and expenses occasioned by Ceglia's untimely cancellations, making select deductions in accordance with some of Ceglia's reduction requests.  Doc. No. 615. The November 29 Order began by setting out in detail the facts and circumstances of the cancelled depositions.  *See* November 29 Order at 2-10.  Judge Foschio then carefully analyzed the applicable case law, which establishes that federal courts regularly award "the costs of cancelled depositions, including travel and lodging expenses, as well as expenses for the time expended by the experts and attorneys preparing for the canceled depositions." *Id.* at 10 (citing cases).  Indeed, Judge Foschio cited numerous cases in which district courts within the Second Circuit, and the Second Circuit itself, affirmed a magistrate judge's award of costs and fees for untimely cancelled depositions where the depositions were cancelled with insufficient notice, ranging from less than 24 hours to four days.  *See* November 29 Order at 11 (citing cases).

Judge Foschio ordered Ceglia to pay the attorney and expert preparation fees and the appearance fee of each expert for the cancelled depositions, which totaled $89,211.75. November 29 Order at 18.  Judge Foschio also ordered Ceglia to pay travel and lodging expenses incurred in connection with Ceglia's untimely cancelled depositions, which totaled $6,929—an amount that Judge Foschio reduced where he found Ceglia's requests for such reductions reasonable. *Id.* at 18.  Judge Foschio thus ordered Ceglia to reimburse Defendants $96,140.88 as a result of his untimely deposition cancellations.[7]

---

[7]    As previously noted, this is not the first time Ceglia has been sanctioned for his discovery misconduct, and there are further sanctions that remain pending before the Court.  *See supra* at 3-4, at 3 n.1, and at 4 n.2.

## STANDARD OF REVIEW

This Court reviews Judge Foschio's November 29 Order under the familiar "'clearly erroneous or contrary to law'" standard. *Ceglia v. Zuckerberg*, 2012 WL 3527935, at *1 (W.D.N.Y. Aug. 15, 2012) (citing 28 U.S.C. § 626(b)(1)(A)) (Arcara, J.); *see also Arnold v. Krause, Inc.*, 233 F.R.D. 126, 129 (W.D.N.Y. 2005) (Arcara, J.) (same). A magistrate judge's order is "clearly erroneous" where "the [district court] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Ceglia*, 2012 WL 3527935, at *1 (internal quotation marks omitted); *see also Easley v. Cromartie*, 532 U.S. 234, 243 (2001) (same); *Arnold*, 233 F.R.D. at 129 (same); *Rubin v. Valicenti Advisory Servs., Inc.*, 471 F. Supp. 2d 329, 333 (W.D.N.Y. 2007) ("Under the 'clearly erroneous' standard of review of Rule 72(a), the magistrate judge's findings should not be rejected merely because the court would have decided the matter differently."). "A decision is 'contrary to law' if it 'fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Ceglia*, 2012 WL 3527935, at *1 (citing *Thompson v. Keane*, 1996 WL 229887, at *1 (S.D.N.Y. May 6, 1996)); *see also Tracy v. NVR, Inc.*, 791 F.Supp.2d 340, 343 (W.D.N.Y. 2011) (same). "Pursuant to this 'highly deferential' standard of review, 'magistrates are afforded broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused.'" *Arnold*, 233 F.R.D. at 129 (quoting *Flaherty v. Filardi*, 388 F. Supp. 2d 274, 283 (S.D.N.Y. 2005)). Ceglia's objections do not come close to satisfying those exacting standards.

## ARGUMENT

Ceglia does not even attempt to argue that the factual and legal findings in Judge Foschio's November 29 Order were "clearly erroneous or contrary to law," or cite any case law suggesting as much. He does not because he can not. Judge Foschio's Order directing Ceglia to

reimburse expenses incurred by Defendants as a result of Ceglia's untimely and unjustifiable

cancellation of <u>seven of the ten depositions he noticed</u> is well-supported by the law.

Federal courts in the Second Circuit routinely award reasonable expenses pursuant to

Federal Rule of Civil Procedure 30(g) where the cancelling party fails to provide timely notice of

cancellation to the opposing party.  The Rule is grounded in the understanding that untimely

cancellation of a noticed deposition needlessly multiplies the costs of preparation on the

opposing party.  *See, e.g.*, *Edmonds v. Seavey*, 2009 WL 1285526, at *3 (S.D.N.Y. May 5, 2009)

(awarding both costs and attorney's fees where opposing counsel cancelled a deposition the night

before, noting "[a] party that cancels on the eve of a deposition multiplies the costs of

preparation even if the adversary does not incur the expenses of travel."), *aff'd*, 379 Fed. Appx.

62 (2d Cir. 2010).  Indeed, as Judge Foschio observed, *see* November 29 Order at 10-11, courts

in the Second Circuit have repeatedly found cancellations with less than 48 hours' notice to be

untimely, justifying an award of costs of the cancelled depositions, including travel and lodging

expenses and attorney and expert time expended preparing for the cancelled depositions.  *See,*

*e.g.*, *Carlson v. Geneva City School Dist.*, 2011 WL 3957524, at *1, 4 (W.D.N.Y. Sept. 7, 2011)

(denying defendants' objection to magistrate judge's award of costs and fees for cancelling

deposition four days prior); *Star Direct Telecom v. Global Crossing Bandwidth*, 2010 WL

3420730 (W.D.N.Y. Aug. 23, 2010) (denying plaintiff's objections to magistrate judge's award

of costs, including attorneys' fees, and expenses incurred in connection with deposition cancelled

less than 48 hours before its scheduled commencement); *Edmonds*, 2009 WL 1285526 (granting

defendants' motion for costs, including attorneys' fees, incurred in connection with cancellation

of deposition with less than 24 hours' notice), *aff'd*, 2009 WL 2150971 (S.D.N.Y. July 20, 2009)

(denying plaintiff's objections to  magistrate judge's award of costs of untimely cancelled

deposition), *aff'd*, 379 Fed. Appx. 62 (2d Cir. 2010); *Root Bros. Farms v. Mak*, 2007 WL

2789481, at *8 (S.D.N.Y. Sept. 25, 2007) (awarding expenses and attorney's fees under Rule

30(g) against party who cancelled deposition two days prior).  As Judge Foschio noted, the case

law supports reimbursing the appearance fee the experts would have received had the cancelled

depositions taken place.  *See* November 29 Order at 11, 13 (citing *Roger Dubuis North America,*

*Inc. v. Thomas*, 2006 WL 3199141, at *3-4 (M.D.Pa. Nov. 3, 2006)).

 Judge Foschio acted in accordance with this line of settled, straightforward case law in

granting in part Defendants' Application.  Specifically, he found that Ceglia's noticing and

reconfirming of multiple expert depositions required the expenditure of substantial resources by

Defendants, including expert and attorney preparation time and expert travel costs.  Judge

Foschio's finding that Ceglia's cancellations of <u>seven</u> expert depositions—all with less than 48

hours' notice and several with less than 24 hours'—were untimely and warranted an award of the

expenses incurred was clearly within his sound discretion.

 Instead of challenging Judge Foschio's application of the case law outlined above, Ceglia

claims only that Judge Foschio "erred" based on a haphazard laundry list of self-serving

complaints.

 ***First***, Ceglia asserts that Rule 30(g) only permits recovery of expenses in two situations:

(1) where a party is "left sitting in the deposition room wondering when opposing counsel and

the witness were going to appear," or (2) where the opposing party cancels depositions in a bad-

faith "attempt to gain leverage."  *See* Objections at 5, 10-11.  Ceglia is wrong.  Judge Foschio

expressly rejected Ceglia's first assertion, noting that appearance at a cancelled deposition is not

the only concern that warrants recovery: "Plaintiff's cancellation of the depositions with short

notice did not allow the experts and Defendants' attorneys to avoid spending time preparing the

13

experts for the depositions, the very circumstances under which courts have allowed the recovery of expert witness and attorney fees, regardless of Rule 30(g)(1)." November 29 Order at 12 (citing cases); *see also* Doc. No. 559 at 2 n.2 (collecting cases). Indeed, it "invites abuse" to interpret Rule 30(g) to mean that sanctions are not appropriate as long as a party receives notice of cancellation at any time before actually departing for the deposition, because, regardless of such notice, late cancellations "multipl[y] the costs of preparation." *Edmonds*, 2009 WL 1285526, at *3.

Ceglia's "attempt to gain leverage" assertion is similarly unavailing, and his cited "support" in the case law is misleading. Ceglia argues that the court in *Edmonds* held that cancellations are only improper where the cancelling party is attempting to "gain leverage." Opp. at 13. But the court's finding of bad faith was incidental, and as other cases within the Second Circuit make clear, bad faith is not required under Rule 30(g).[8] *See, e.g., Carlson*, 2011 WL 3957524, at *4 n.6 (declining to consider defendants' argument that they did not act in bad faith in upholding magistrate judge's award of costs and fees for cancelling deposition four days prior); *Star Direct Telecom*, 2010 WL 3420730, at *2-3 (not requiring a finding that plaintiff acted in bad faith in upholding magistrate judge's award of costs and fees for cancelling deposition less than 48 hours before scheduled commencement). Judge Foschio correctly found that Ceglia's untimely and unjustifiable cancellations forced Defendants and their experts to unnecessarily expend significant resources. Ceglia cites no authority that so much as suggests Judge Foschio misapplied the case law.

**Second**, Ceglia accuses Defendants of "adding phantom terms to the parties' agreement," by seeking costs and expenses that were not explicitly contemplated. Objections at 6. But this is

---

[8]    Of course, even if Ceglia's argument that a finding of bad faith is required were correct, his last-minute cancellations <u>were</u> a bad-faith "attempt to gain leverage," in keeping with his entire litigation strategy: to force Defendants to waste resources defending a fraudulent lawsuit in the hope they will offer him a payout.

a non-sequitur.  The parties' agreement, made before Ceglia cancelled 7 of the 10 depositions he

noticed, pertained to reimbursement for depositions that actually occurred.  It does not purport to

govern reimbursement for depositions that are cancelled without reasonable notice—an issue

controlled by Rule 30(g) and the extensive case law.  Ceglia cites no rule or law suggesting that

Judge Foschio improperly analyzed Defendants' Application under the Federal Rules and the law

of this Circuit.

*Third*, Ceglia argues that the Order's requirement that Ceglia pay cancelled experts their

appearance fees is "unreasonable" because it results in a "windfall" for the experts because they

could have returned home to "put[] in a full day's work on the previously scheduled day of

[their] deposition."  Objections at 7.  Judge Foschio carefully considered and rejected this

argument, finding that Ceglia "ignores the reality of the situation, *i.e.*, the experts, in arranging

their own schedules to accommodate the scheduled depositions, were required to pass on other

business opportunities that may have arisen during the time each expert was to be deposed, as

well as during the time the experts spent travelling to New York City to prepare for and

participate in their scheduled depositions."  November 29 Order at 13-14.  Ceglia offers no

factual basis to suggest that Defendants' experts actually received a windfall or that Judge

Foschio's well-reasoned premise—that Ceglia's cancellations worked to the experts' economic

detriment—was incorrect.  Other courts have rejected this "windfall" argument as well.  *See*,

*e.g.*, *Carlson*, 2011 WL 3957524, at *4 n.6 (finding unmeritorious defendants' argument that

plaintiff would receive a "windfall" in upholding magistrate judge's award of costs and fees for

cancelling deposition four days prior).

*Fourth*, Ceglia complains about Judge Foschio's purportedly unreasonable determination

that Ceglia's counsel Dean Boland's "vaguely asserted illness" (November 29 Order at 13) and

cancelled flights were not sufficient to excuse his untimely cancellations of the depositions of

Peter Tytell, Al Lyter, and Gerald McMenamin.  Objections at 4, 12-13.  The one case that

Ceglia cites in support of this argument, *Tomlinson v. St. Paul Reinsurance Mgmt. Corp.*, No. 96

Civ. 4760, 1997 WL 167051 (S.D.N.Y. Apr. 9, 1997) does not implicate Rule 30(g) at all and is

therefore entirely irrelevant to the issues raised in Defendants' instant application.  Ceglia has

not identified any factual basis to suggest that Judge Foschio's objective consideration of the

facts presented by the parties—and his determination that Boland's purported illness was an

unconvincing excuse—was clearly erroneous or contrary to law.  Ceglia has offered the Court no

plausible reason why Boland could not get a good night's sleep in a hotel in Philadelphia, take a

morning train to New York, and get a late start on the depositions, as Defendants suggested they

were amenable to doing in order to accommodate Boland's travel difficulties.  *See* Doc. Nos. 518

at 3 n.2, 519 ¶ 15; *see also* November 29 Order at 12-13 (". . . Plaintiff's assertion that . . .

Boland was unable to secure travel on an alternate flight that would allow him to arrive in New

York City in time for the scheduled depositions . . . is undermined by Plaintiff's failure to

explain why travel on a different flight or by train the following morning could not have been

reasonably accomplished given that Defendants had offered to delay the start time of the

depositions.").

    *Fifth*, Defendants note that Judge Foschio carefully considered Ceglia's requests for

reductions in costs and fees, and adjusted the portions of the award of travel and lodging

expenses accordingly.

16

## CONCLUSION

Defendants respectfully request that this Court affirm Judge Foschio's November 29 Order requiring Ceglia to reimburse Defendants for the attorney fees, expert fees, appearance fees, and travel and lodging expenses that Defendants incurred due to Ceglia's untimely and unjustifiable cancellation of Defendants' expert witnesses' deposition.  The Order correctly applies the Federal Rules and the law of this circuit.  Ceglia's Objections offer no legal basis and cites no case law for his assertion that the Order was clearly erroneous or contrary to law. Defendants further respectfully request that the Court order that reimbursement be made within ten days.

Dated:      New York, New York
           January 4, 2013

Respectfully submitted,

/s/ Orin Snyder
Orin Snyder

Thomas H. Dupree, Jr.           Alexander H. Southwell
Erik R. Zimmerman                Matthew J. Benjamin
GIBSON, DUNN & CRUTCHER LLP    Amanda M. Aycock
1050 Connecticut Avenue, NW       GIBSON, DUNN & CRUTCHER LLP
Washington, DC 20036              200 Park Avenue, 47th Floor
(202) 955-8500                   New York, NY 10166-0193
                                (212) 351-4000

Terrance P. Flynn
HARRIS BEACH PLLC
726 Exchange Street
Suite 1000
Buffalo, NY 14210
(716) 200-5120

*Attorneys for Defendants Mark Zuckerberg and Facebook, Inc.*

17