1                    UNITED STATES DISTRICT COURT

2                    WESTERN DISTRICT OF NEW YORK

3

4
     - - - - - - - - - - - - - -X
5    PAUL D. CEGLIA,           )    10-CV-569(RJA)
                  Plaintiff    )
6    vs.                       )
                               )      Buffalo, New York
7    MARK ELLIOT ZUCKERBERG and )     December 13, 2011
     FACEBOOK, INC.,           )      12:11 p.m.
8                 Defendants.  )
     - - - - - - - - - - - - - -X
9

10

11
                       TRANSCRIPT OF PROCEEDINGS
12            BEFORE THE HONORABLE LESLIE G. FOSCHIO
                    UNITED STATES MAGISTRATE JUDGE
13

14

15

16   AUDIO RECORDER:    Sandra D. Wilson

17

18
     TRANSCRIBER:        Christi A. Macri, FAPR, RMR, CRR, CRI
19                       Kenneth B. Keating Federal Building
                         100 State Street
20                       Rochester, New York 14614-0222

21

22

23

24
     (Proceedings recorded by electronic sound recording,
25   transcript produced by computer).

1                   A P P E A R A N C E S

2                        *    *    *

3

4              BOLAND LEGAL, LLC
               BY: DEAN M. BOLAND, ESQ.
5              18123 Sloane Avenue
               Lakewood, Ohio 44107
6              Appearing on behalf of the Plaintiff

7

               GIBSON DUNN & CRUTCHER, LLP
8              BY: ORIN S. SNYDER, ESQ.
                   AMANDA AYCOCK, ESQ.
9                  ALEXANDER H. SOUTHWELL, ESQ.
                   MATTHEW BENJAMIN, ESQ.
10             200 Park Avenue
               47th Floor
11             New York, New York 10166-0193
                          - and -
12             HARRIS BEACH, LLP
               BY: TERRANCE P. FLYNN, ESQ.
13             726 Exchange Street
               Suite 1000
14             Buffalo, New York 14210
               Appearing on behalf of the Defendants

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2                          *    *    *

 3              CLERK: Ceglia vs. Zuckerberg and

 4   Facebook.

 5              Appearing for the Plaintiff is Dean

 6   Boland.

 7              And appearing for the Defendant is Orin

 8   Snyder, Amanda Aycock, and Terrance Flynn.

 9              We're here on oral argument on various motions.

10              MAGISTRATE JUDGE FOSCHIO:   Good afternoon.  Nice

11   to see --

12              MR. BOLAND:  Good afternoon, Your Honor.

13              MAGISTRATE JUDGE FOSCHIO:  Welcome to our new

14   courtroom --

15              MR. SNYDER:  Good afternoon, Your Honor.

16              MR. BOLAND:  Thank you.

17              MAGISTRATE JUDGE FOSCHIO:   Our new courthouse.

18   Hope it meets with your approvals.  We're very proud of it and

19   rightly so, I think.  Well, I know.

20              We have a number of motions that I think we've all

21   come to know and love.  And I think I'd like to take the first

22   motion by the plaintiff to strike the memorandum of law, which

23   was recently filed.  That would be number 267, directed to

24   number 266.

25              And then I would like to move to the defendants'
```

1   motions, fourth motion to compel and the motion to strike

2   this -- I would refer to it as the Gianadda matter.

3            Yes, the orders didn't contemplate the defendants'

4   supplemental brief concerning today's hearing, but I don't

5   know how prejudicial it was to the plaintiff to have the

6   benefit of the defendants' view of what was on the table.

7            Certainly it was beneficial to the Court, and

8   unless you feel there's some -- some misstatements in the

9   document or some other form of prejudice that I didn't

10  perceive, it would seem to me that it was a good gesture,

11  thoughtful, helpful and they thought of it first.  If the

12  plaintiff had done likewise, I think I would have the same

13  reaction as I had to the defendants' filing.

14           So can you give me a reason why I should just throw

15  it in the wastebasket electronically?

16           **MR. BOLAND:**  Shall I go to the podium, Your Honor?

17           **MAGISTRATE JUDGE FOSCHIO:**   You either stay where

18  you are or use the podium, whichever you prefer, which is the

19  way we've operated in the past and now that we've got all

20  these wonderful accoutrements, electronic and other pieces of

21  courtroom furniture, we want to make sure you have a chance to

22  use everything that you feel comfortable using.

23           **MR. BOLAND:**  Thank you, Your Honor.

24           I stated in the motion you're referring to to

25  strike the basic reasons why we felt it was improper what they

1  had filed.  It was in our view --

2          **MAGISTRATE JUDGE FOSCHIO:**  It wasn't authorized.

3  And you're right, it wasn't.

4          **MR. BOLAND:**  Not only not authorized, but it was

5  actually an attempt -- not attempt.  A successful

6  accomplishment of their ability to have what effectively the

7  rules don't allow, which is the last word on our motions.

8          You know, it's motion, response, reply and they

9  said, "no, no, we're not going to follow that.  We want the

10 reply and the last word."

11         And I think --

12         **MAGISTRATE JUDGE FOSCHIO:**  Well, I'm asking you

13 now.  Is there anything in the document that's in error?

14         **MR. BOLAND:**  No, Your Honor.  And substantively

15 it's the same regurgitation of everything.

16         **MAGISTRATE JUDGE FOSCHIO:**  So you're concerned

17 about a possible psychological advantage, is that it?

18         **MR. BOLAND:**  No, Your Honor, I'm just looking at

19 it, frankly, this is only the second time I've been before you

20 in oral argument.

21         I filed some motions, we've had phone conferences

22 and if the Court is not put off by these assistant kind of

23 briefs, like you're saying, then that's fine, I don't have an

24 issue with the availability for the plaintiff at some point to

25 maybe offer a brief that's not technically authorized to do

1 | the same purpose.  That's all.

2 |         **MAGISTRATE JUDGE FOSCHIO:**  Given the numerosity of

3 | the motions and their -- in some regards not all, but to some

4 | extent complexity, what's the first rule that you learn in

5 | your first semester in law school?

6 |         Make it easy for the judge to decide in your favor.

7 | And anything that counsel can offer along that line is welcome

8 | as far as I'm concerned, subject to presupposing on the Court.

9 |         And I see nothing in the document that has that

10 | flavor to it.  It seemed to me to be, as you now acknowledge,

11 | a fairly straightforward summarization of what's on the table.

12 |         And, again, if you -- and you're apparently not

13 | going to press the point any farther, so we can move on,

14 | there's nothing in there that is any way prejudicial to the

15 | plaintiff's case other than the fact that they made the

16 | gesture.  And I can assure you that simply making the gesture,

17 | that and a buck and a half will get them a cup of coffee at

18 | Starbucks perhaps.

19 |         **MR. BOLAND:**  Very well, Your Honor.

20 |         **MAGISTRATE JUDGE FOSCHIO:**  Thank you.  All right.

21 | So the motion to strike is denied as -- for the reasons

22 | stated.

23 |         And we turn to the defendants' -- I'm not sure what

24 | order you want to go in on this one?  Do you want to do the

25 | Gianadda matter first or do you want to do the fourth motion

1  to compel?

2          **MR. SNYDER:**  Yes, Your Honor.  Perhaps I can start

3  with the Grant matter because that will only take a moment.

4          **MAGISTRATE JUDGE FOSCHIO:**   The 41 floppies.

5          **MR. SNYDER:**  Yes, this is our fourth motion to

6  compel, docket number 243, and we set forth in detail the

7  background, which is that the plaintiff has filed numerous

8  false declarations failing to identify a variety of electronic

9  data, including the USB storage devices.

10          **MAGISTRATE JUDGE FOSCHIO:**   Just focus on

11  recapitulating your --

12          **MR. SNYDER:**   Sure.

13          **MAGISTRATE JUDGE FOSCHIO:**   -- point about the

14  so-called Grant --

15          **MR. SNYDER:**   Right.

16          **MAGISTRATE JUDGE FOSCHIO:**   -- the floppies that are

17  in --

18          **MR. SNYDER:**   Yes.

19          **MAGISTRATE JUDGE FOSCHIO:**   -- Mr. Grant's

20  possession that were not identified previously as arguably

21  the --

22          **MR. SNYDER:**  Yes.

23          **MAGISTRATE JUDGE FOSCHIO:**   -- as you argue the

24  plaintiff was obliged to and that -- that you argue that the

25  plaintiff was obliged to identify it previously.

1      **MR. SNYDER:**  Yes, Your Honor.  Both the July 1st

2   order and the August 18th order directed the plaintiff to

3   identify by name and location all electronic versions of any

4   e-mails, purported e-mails related to this matter.

5          The plaintiff --

6          **MAGISTRATE JUDGE FOSCHIO:**  The key word being

7   "all"?

8          **MR. SNYDER:**  Yes, Your Honor.

9          **MAGISTRATE JUDGE FOSCHIO:**  Thank you.

10         **MR. SNYDER:**  On November 17th, the plaintiff for

11   the first time disclosed the existence of a computer forensic

12   expert named Jerry Grant, and electronic versions of the

13   purported e-mails in Grant's possession.

14         That was the first time we had heard of a

15   Jerry Grant.  He had not disclosed that.

16         **MAGISTRATE JUDGE FOSCHIO:**  When was that again?

17         **MR. SNYDER:**  November 17th.

18         **MAGISTRATE JUDGE FOSCHIO:**  Right.

19         **MR. SNYDER:**  Notably, Mr. Ceglia in his August 29th

20   declaration, which is number 176, concealed the existence of

21   Grant.  And this was, of course, a declaration designed to

22   cure his previous non-disclosures and omissions in his prior

23   declarations.

24         This was a plain violation of the Court's orders.

25   We brought this violation to Mr. Boland's immediate attention,

1 and he told us, quote --

2          **MAGISTRATE JUDGE FOSCHIO:**  To figure it out for

3 yourself.

4          **MR. SNYDER:**  -- "I'm not doing your job.  Get one

5 of the thousand lawyers at your disposal to sit and think."

6          **MAGISTRATE JUDGE FOSCHIO:**  Do you have a thousand

7 lawyers at your disposal?

8          **MR. SNYDER:**  No, Your Honor.

9          **MAGISTRATE JUDGE FOSCHIO:**  I didn't think so.  I

10 knew it was a big firm, but I didn't realize it was that big.

11          **MR. SNYDER:**  I don't.

12          **MAGISTRATE JUDGE FOSCHIO:**  Make a note of it,

13 Mr. Boland.

14          **MR. BOLAND:**  Yes, Your Honor, I'll note that.

15          **MAGISTRATE JUDGE FOSCHIO:**  Yeah.

16          **MR. SNYDER:**  In his response, which is docket 265,

17 the plaintiff now appears to agree that the Grant items are

18 covered by the order and agrees that they have not been

19 produced.

20          The justification is convoluted, not really worth

21 getting into.  I'm happy to, bottom line is, Mr. --

22          **MAGISTRATE JUDGE FOSCHIO:**  What do you take to be

23 the reason why you have to make the motion?

24          **MR. SNYDER:**   Well, because he hasn't produced them

25 or -- or -- or promised to produce them or --

1          **MAGISTRATE JUDGE FOSCHIO:**  He still wants you to do

2    it for yourself.

3          **MR. SNYDER:**  We've asked him -- even though that's

4    not our job, we actually did ask him for information, that is,

5    to give us the hash, H-A-S-H, values of the 41 floppy disks in

6    Grant's possession so that Stroz Friedberg could endeavor --

7          **MAGISTRATE JUDGE FOSCHIO:**  Is that the only basis

8    on which they could -- did you acknowledge that they're in

9    Stroz Friedberg's possession?

10          **MR. SNYDER:**  We have no idea.

11          **MAGISTRATE JUDGE FOSCHIO:**  Oh, you really have no

12    idea?

13          **MR. SNYDER:**  We have no idea.  If we knew, we

14    wouldn't --

15          **MAGISTRATE JUDGE FOSCHIO:**  And the only tool that

16    you need to figure that out with one of your many hundreds of

17    lawyers or experts is -- are the hash values for the --

18          **MR. SNYDER:**  Yeah, that was the information that

19    our experts told us was necessary --

20          **MAGISTRATE JUDGE FOSCHIO:**  And you provided that

21    information to Mr. Boland?

22          **MR. SNYDER:**  Yes.  And he refused, telling us that

23    he would not do our job or Stroz Friedberg's job and -- and he

24    also --

25          **MAGISTRATE JUDGE FOSCHIO:**  And in no way indicating

1  that that was burdensome for him to provide to you the hash

2  values?

3         **MR. SNYDER:**  No.  And simply sticking it to us and

4  refusing to comply.

5         **MAGISTRATE JUDGE FOSCHIO:**  And why, in your

6  opinion, is it not burdensome for him to provide such

7  technical information?

8         **MR. SNYDER:**  Presumably, if the 41 floppy disks are

9  in the possession of the expert, the expert, according to

10  Stroz Friedberg, can get those hash values readily.  It's

11  not -- it's not an undue burden.

12         In any event --

13         **MAGISTRATE JUDGE FOSCHIO:**  Say that again.

14         **MR. SNYDER:**  It's not an undue burden for -- for

15  his expert, Mr. Grant --

16         **MAGISTRATE JUDGE FOSCHIO:**  Mr. Grant.

17         **MR. SNYDER:**  -- to provide us with those hash

18  values --

19         **MAGISTRATE JUDGE FOSCHIO:**  Because?

20         **MR. SNYDER:**  Apparently it's not difficult to

21  obtain hash values from -- from the -- from the floppies.

22         But all of this would be obviated, unnecessary, if

23  he just complied in the first place.

24         And the second excuse he gives is that these are

25  just copies, which, of course, is the height of hypocrisy for

1  this plaintiff and this new lawyer to attempt to excuse his

2  failure to produce copies of the electronic evidence called

3  for the by the Court's orders, while at the same time seeking

4  a TRO on Thanksgiving eve and sanctions against defense

5  counsel for requesting the destruction of copies pursuant to a

6  Court order in another case.

7          His final excuse is that he personally, I guess

8  Mr. Boland, personally never dealt with Mr. Grant or the

9  plaintiff never dealt with Mr. Grant and thus reasonably

10  forgot about the disks.

11          This creates additional credibility problems for

12  the plaintiff because initially the plaintiff asserted under

13  oath, for whatever that is worth in these proceedings, that he

14  gave the disks to Grant, that's document -- docket number 225

15  at paragraph 12.

16          Now, in reply the absent Mr. Argentieri, who

17  conveniently is not here to answer a number of important

18  troubling questions, says that he gave the disks to Mr. Grant

19  and that plaintiff wasn't involved.

20          So now we have a lawyer and client in disagreement

21  under oath --

22          **MAGISTRATE JUDGE FOSCHIO:**  Well, be that as it may,

23  the plaintiff is in charge of all of his agents and is imbued

24  with the knowledge that they have based on acting within the

25  scope of their agency, i.e., legal representation.

1      **MR. SNYDER:**  Yes, Your Honor.  And this is, of

2  course, our fourth motion to compel.

3      **MAGISTRATE JUDGE FOSCHIO:**  Yeah, just hold for one

4  second.  The Court's relying again occasionally on technical

5  questions with Mr. Pat Healy, who is the -- the information

6  manager for the court.  He is, I can assure you, very

7  knowledgeable.

8      You're sure that your -- Stroz Friedberg people

9  have used the technical terms "hash marks" to --

10      **MR. SNYDER:**  Let me just to --

11      **MAGISTRATE JUDGE FOSCHIO:**  -- the identifiers?

12      **MR. SNYDER:**  Hash values, but I --

13      **MAGISTRATE JUDGE FOSCHIO:**  Hash values.

14      **MR. SNYDER:**  Yes, but I can -- Mr. Southwell just

15  elaborated.  What Stroz Friedberg needs, we need the --

16  obviously, the floppy disks, but as a substitute to determine

17  whether we actually have them among the thousand floppies that

18  were produced -- is that the right number?

19      Any identifying information about the 41 Grant

20  floppy disks, could be the labels, could be serial numbers,

21  anything that would enable us to match the 41 to the thousand

22  or so that we have, not that that's our job, but we would be

23  happy to do that, but Mr. Boland --

24      **MAGISTRATE JUDGE FOSCHIO:**  Well, that's exactly

25  what Mr. Healy just whispered to me.  That's why -- if we're

1    going to go down this path, I don't want to have to have

2    further discussion about it.

3              **MR. SNYDER:**  Sure.  But that's what Mr. Boland has

4    steadfastly refused to provide to us --

5              **MAGISTRATE JUDGE FOSCHIO:**  Perforce, these floppies

6    are actually -- they are physically in the custody of -- of

7    Stroz Friedberg at this time, but they don't know it, is that

8    the bottom line here?

9              Or is it that their contents has been transferred

10   to some hard drive of some sort in -- in -- in digital form

11   and that -- and they can't find it on the drive?

12             I'm really a little unclear about floppies vs.  --

13             **MR. SNYDER:**  Can I ask Mr. Southwell just to

14   address this one point?

15             **MAGISTRATE JUDGE FOSCHIO:**  Please.

16             **MR. SOUTHWELL:**  Your Honor, Stroz Friedberg has

17   forensic copies of many of the media that were produced

18   pursuant to the Court's orders.

19             So they actually have copies of the disks that were

20   produced by plaintiff.

21             **MAGISTRATE JUDGE FOSCHIO:**  It's not on a floppy

22   disk?

23             **MR. SOUTHWELL:** We don't know what Mr. Grant has --

24             **MAGISTRATE JUDGE FOSCHIO:**  No, no.  I'm talking

25   about what's in Stroz Friedberg's possession.

1          **MR. SOUTHWELL:** Yes, they have it in the form of

2  floppy disks.

3          **MAGISTRATE JUDGE FOSCHIO:**  They're floppy disks?

4  There are numerous disks that they use to make copies of other

5  material that was provided by the plaintiff?

6          **MR. SOUTHWELL:** They have it in digital

7  form.  I believe it's on floppy disks.  Some of it also may be

8  in hard copy.  But they have kept very clear records of the

9  items that they acquired so they know, for example, that they

10  have a copy of floppy disk --

11          **MAGISTRATE JUDGE FOSCHIO:**  I guess I'm not clear,

12  I'm not making myself clear.

13          Do we think or have reason to believe that the 41

14  floppy disks that are -- that were in Mr. Grant's possession,

15  that were provided by the plaintiff for his analysis and

16  possession were copied as another duplicate set of the same --

17  of the 41 underlying floppy disks and were then physically

18  transferred to Stroz Friedberg?  Is that what I should

19  understand?

20          Or were they downloaded to a drive and, thus,

21  having anything other than hash marks or something else to go

22  into the drive and find the location of the data is what's

23  required ?

24          Because when you say "serial numbers," it strikes

25  me that you're talking about a floppy with a serial number on

1    it, which implies that they've got the floppy and, therefore,

2    just have to go through all of them that they have and find

3    the -- the serial numbers that are related to Mr. Grant.

4            **MR. SNYDER:**  Your Honor, we just don't know, that's

5    the problem.  We don't know whether the 41 floppy disks in Mr.

6    Grant's possession today were produced to us by the plaintiff

7    in any form at any time because we didn't know about Mr.

8    Grant, we weren't told about Mr. Grant until November 17th.

9            If the plaintiff would either produce those 41

10   floppy disks or give us sufficient identifying information

11   about them so we can determine whether, in fact, we have them

12   or not, then we would be in a position to know whether he's in

13   compliance.

14           **MAGISTRATE JUDGE FOSCHIO:**  And the three forms of

15   identification are hash values, serial numbers and labels?

16           Is there anything else?

17           **MR. SNYDER:**  Or any other identifying information

18   that would distinguish the physical items or identify them in

19   any way.

20           **MAGISTRATE JUDGE FOSCHIO:**  All right.

21           **MR. SNYDER:**  We just don't know.

22           **MAGISTRATE JUDGE FOSCHIO:**  All right, thank you.

23           All right, let's turn to Mr. Boland.

24           Why did it take a motion to resolve this simple

25   dispute, Mr. Boland?

1           **MR. BOLAND:**  Well, because --

2           **MAGISTRATE JUDGE FOSCHIO:**  I mean, is there

3   anything about the Court's order that's ambiguous in some

4   way --

5           **MR. BOLAND:**   Not at all.

6           **MAGISTRATE JUDGE FOSCHIO:**  -- that -- thank you.

7           **MR. BOLAND:**  On this point it's not.

8           **MAGISTRATE JUDGE FOSCHIO:**  Why -- why -- why

9   couldn't you fix this problem without us allocating time this

10  afternoon to do so?

11          **MR. BOLAND:**  Well, Your Honor, as you can imagine

12  on both sides of this case we all have tasks that we're

13  responsible to perform.  And adding any tasks on to one side

14  or the other that's not our responsibility is probably not

15  warranted.

16          Let me start with this benchmark.  The August 18th

17  order at page 4 says, "plaintiff shall not be required to

18  produce again any computers or electronic media produced to

19  date."  So I'm starting with that benchmark.

20          And if we look back, Mr. Snyder said on June --

21          **MAGISTRATE JUDGE FOSCHIO:**  Except that he was

22  obliged to identify certain things.

23          **MR. BOLAND:**  Yes.

24          **MAGISTRATE JUDGE FOSCHIO:**  Producing is one thing.

25  Identification is -- is the key problem here, isn't it?

1          Mr. Snyder, isn't that the threshold problem?

2          **MR. SNYDER:**  Yes, of course.

3          **MAGISTRATE JUDGE FOSCHIO:**  They weren't identified?

4          **MR. BOLAND:**  And it's resolved by -- Mr. Snyder

5    acknowledged that this was resolved prior to this date.

6          **MAGISTRATE JUDGE FOSCHIO:**  What was resolved?

7          **MR. BOLAND:**  The issue of the identification and

8    knowing what they had.  If I can refer you to the record to

9    establish it --

10          **MAGISTRATE JUDGE FOSCHIO:**  Well, they certainly

11    weren't identified by Mr. Ceglia as required.  They were --

12    they were identified as a result of other discovery requests

13    that eventually were satisfied.

14          **MR. BOLAND:**  Actually, Your Honor, they were

15    produced and identified and Mr. Snyder acknowledged receiving

16    these specific disks --

17          **MAGISTRATE JUDGE FOSCHIO:**  Really?

18          **MR. BOLAND:**  -- I have the references to the record

19    I can give you right know.

20          **MAGISTRATE JUDGE FOSCHIO:**  Is that in the papers?

21    Did I miss that?

22          **MR. BOLAND:**  It's in the transcript.  Mr. Snyder

23    says on August --

24          **MAGISTRATE JUDGE FOSCHIO:**  No, no.  Is it in your

25    papers?  Did I miss it?

1            **MR. BOLAND:**  It's not in the papers because after

2  those were filed I continued my investigation into the

3  transcripts, not the pleadings, and it's there that it's

4  revealed that Mr. Snyder admits, for example, on August --

5            **MAGISTRATE JUDGE FOSCHIO:**  Excuse me, transcript of

6  an argument before the Court?

7            **MR. BOLAND:**  Correct.

8            **MAGISTRATE JUDGE FOSCHIO:**  And the docket

9  reference -- the date is what?

10            **MR. BOLAND:**  August 17th, 2011, at page 62.

11            **MAGISTRATE JUDGE FOSCHIO:**  Okay.

12            **MR. BOLAND:**  And it's a brief sentence.  Mr. Snyder

13  says, "yes" in an answer -- to a question of yours, "and that

14  goes to the issue that all he's produced, meaning Ceglia, to

15  us are floppy disks that contain Word document files."

16            And in a prior reference in that case --

17            **MAGISTRATE JUDGE FOSCHIO:**  Well, just a second.  I

18  mean, but those floppies were in Mr. -- Mr. Grant's

19  possession.

20            **MR. BOLAND:**  No, Your Honor.  Mr. Grant in his

21  declaration states he received the 41 floppies.  He made a

22  forensic copy of them.

23            And then in the papers we filed you see that the

24  path of those disks are they go back to Mr. Argentieri, which

25  our papers reveal.

1          Mr. Scherer, from the Lippes law firm, takes the

2   physical floppy disk from Mr. Argentieri --

3          **MAGISTRATE JUDGE FOSCHIO:**   Mm-hmm.

4          **MR. BOLAND:**   -- he gives them to PLA, and Stroz

5   Friedberg had total access to those floppy disks and they have

6   the forensic copies of them.

7          And Mr. Snyder even says again on August 17th --

8          **MAGISTRATE JUDGE FOSCHIO:**  But where in that

9   process would it come to pass that the plaintiff would have

10  identified the 41 floppies as having been in Mr. Grant's

11  possession before they had been transmitted to the defendants.

12         **MR. BOLAND:**  The plaintiff -- Mr. Ceglia, first of

13  all, was not notified, nor was I notified until we dug through

14  this that Mr. Grant had made a copy and kept a copy.  No one

15  called Mr. Ceglia on the phone and says "you might need to

16  know this for the future."

17         **MAGISTRATE JUDGE FOSCHIO:**  How did Grant get in the

18  picture so that he might eventually end up with these

19  floppies?

20         How did he come to be a consultant to the

21  plaintiff?

22         **MR. BOLAND:**  In our papers -- I'm not sure if

23  Mr. Argentieri or my client contacted Mr. Grant, but he's

24  known in this area as a computer forensics expert and --

25         **MAGISTRATE JUDGE FOSCHIO:**  It's not what he's known

1  in the area as.

2          The question is was he known to the plaintiff at a

3  point in time when the plaintiff was obliged to disclose the

4  locations and the nature of the floppies and other stored

5  material that were required to be disclosed to the defendants?

6          **MR. BOLAND:**  It's a two part question.  He was

7  known to the plaintiff certainly.

8          The question is was the plaintiff aware, did anyone

9  call Mr. Ceglia and say Mr. Grant has made -- has retained

10  copies of these floppy disks?

11          Mr. Ceglia was not aware of that at the time he

12  made his declaration.

13          **MAGISTRATE JUDGE FOSCHIO:**  Because of a failure by

14  perhaps Mr. Argentieri or one of the other lawyers who were

15  assisting him at that time?

16          **MR. BOLAND:**  It may have been a failure to ask

17  Mr. Grant, hey, did you keep copies of these?  Do you have

18  duplicates?  What are you doing with them?  Or did you just

19  evaluate them and -- and move on?  No one asked that question

20  of Mr. Grant.

21          So Mr. Ceglia's not giving a false declaration.  He

22  didn't have knowledge that those copies were retained.

23          But what's more to the point, this motion's not

24  necessary because in that August 17th hearing, Mr. Snyder says

25  "what he gave us, Your Honor, are floppy disks that contain

1   cut and paste jobs that he wants everyone to believe were once

2   actual e-mails."

3           So they are not confused which disks have the

4   e-mails because Mr. Snyder is admitting receiving disks that

5   have cut and paste jobs of e-mails.  Someone at Stroz

6   Friedberg must have told him we've got the disks and they have

7   these cut and paste e-mails.

8           Again, it goes to why am I doing their job?  Stroz

9   Friedberg obviously identified which disks had it.  They told

10  Mr. Snyder.  On August 17th the transcript at page 42, he told

11  you.

12          There's no mystery here.  The fact that Stroz

13  Friedberg now today can't figure out which one of those

14  floppies they previously told Mr. Snyder about, I don't see as

15  the plaintiff's job to help them figure that out.

16          In addition --

17          **MAGISTRATE JUDGE FOSCHIO:**  Well, it's just -- I'm

18  not trying to be difficult at all --

19          **MR. BOLAND:**  Sure.

20          **MAGISTRATE JUDGE FOSCHIO:**  -- it just strikes me as

21  still begging the question of who had the burden of

22  investigating the sources and the obligation to fully disclose

23  them and detail them in the required disclosure that was also

24  ordered by the Court at that point in time.

25          It seems to me that if Mr. Grant was in the -- part

1  of the plaintiff's team, somebody on the plaintiff's team

2  should have known that and somebody should have questioned him

3  as to whether he has any material that's subject to the

4  Court's order.

5        **MR. BOLAND:**  I grant you, Your Honor, at that time

6  that that order was issued, Mr. Grant was known by, at least

7  Mr. Argentieri, to have been provided those disks.

8        Whether Mr. Argentieri or Mr. Ceglia knew that he

9  retained a copy of them, I can't speak on that.  But had they

10  known that, they had a burden, of course, to come forward and

11  say, hey, Judge, this individual has a copy.

12        But I -- there's no evidence that Mr. Ceglia knew

13  that and was trying to conceal that.  It's helpful evidence.

14        **MAGISTRATE JUDGE FOSCHIO:**  I'm not focusing -- I'm

15  not interested in concealment or --

16        **MR. BOLAND:**  Well, that was the word Mr. Snyder

17  used.

18        **MAGISTRATE JUDGE FOSCHIO:**  -- well, that's

19  Mr. Snyder's word.  It's not mine.

20        He had --

21        **MR. BOLAND:**  Precisely.

22        **MAGISTRATE JUDGE FOSCHIO:**  -- an obligation to

23  disclose.  He had an obligation to investigate, and he and/or

24  his lawyers failed to do it.  That's all I'm trying to point

25  out to you.

1          And that seems to me to be the real cutting edge of

2  the reason for this whole rigamarole over 41 additional floppy

3  disks.

4          **MR. BOLAND:**  The way I read it, Your Honor, the

5  thrust of their motion is we can't figure out which, if we

6  have those 41 floppy disks.  Can you help us figure that out?

7          And that's false.  They actually know which ones

8  they are because they said on August 17th --

9          **MAGISTRATE JUDGE FOSCHIO:**  Well, I don't think it

10  follows that because we don't have -- do we know that --

11  when Mr. -- what is the basis of your belief that when

12  Mr. Snyder is using his now very well-known cut-and-paste

13  aphorism here to make his points, that he is referring to

14  these 41 disks?

15          **MR. BOLAND:**  Because he refers to them not as cut

16  and paste.  He says "floppy disks that contain cut and paste

17  jobs that he, Ceglia, wants everyone to believe were once

18  actual e-mails."

19          There are no other floppy disks in this case

20  purported to contain e-mails.  Those are the ones and he's

21  been calling them "cut and paste" from the beginning

22  repeatedly.

23          And on August 17th he says "we got them.  They

24  produced them to us and they're junk," Your Honor.  And now

25  they're saying we don't know if we got them.  Well, you do

1  know.

2           The motion was completely useless.

3           **MAGISTRATE JUDGE FOSCHIO:**  And that is why there

4  was no identification of Mr. Grant having had possession of

5  the 41 floppies and -- and that is why there was a decision

6  consciously by Mr. Lake who prepared the declaration to

7  exclude that information?

8           **MR. BOLAND:**  No, Your Honor.

9           **MAGISTRATE JUDGE FOSCHIO:**  No.

10          **MR. BOLAND:**  There was no intentional failure to

11 disclose Mr. Grant.  He wasn't known to Mr. Ceglia at that

12 time to have kept a copy.  That's the point.

13          He was known to Mr. Ceglia.  He wasn't known to

14 keep a copy.

15          **MAGISTRATE JUDGE FOSCHIO:**  He was known to

16 Mr. Argentieri, and Mr. Argentieri --

17          **MR. BOLAND:**   Of course.

18          **MAGISTRATE JUDGE FOSCHIO:**  -- could have called

19 him, realizing that the Court's order was very specific and

20 unambiguous so...

21          **MR. BOLAND:**  And that -- that's not the thrust of

22 their motion.  It's we don't know where the disks are, can you

23 help us?  And they know where the disks are.  That's our

24 position.

25          **MAGISTRATE JUDGE FOSCHIO:**  Well, why would they

1  waste time and money preparing a motion that was, you know,

2  basically moot?

3      **MR. BOLAND:**  Because they don't read the

4  transcripts.  They're not detail oriented.  If they would have

5  read the transcript, they would have seen Mr. Snyder admitted

6  receiving them.

7      **MAGISTRATE JUDGE FOSCHIO:**  If you were first, first

8  thing you would do is make sure your experts really couldn't

9  figure it out before you spent the client's time and money

10  on --

11      **MR. BOLAND:**  That brings up one other point, Your

12  Honor.  The hash value issue is not the only way to find these

13  disks.

14      These are all able to be mounted on a single drive.

15  They could send out a search request.  They know the details

16  of the e-mails because we've given them to them previously.

17  All Stroz Friedberg has to do is sit at a computer, throw in

18  the necessary search terms, they would locate across all the

19  data.

20      **MAGISTRATE JUDGE FOSCHIO:**  What necessary search

21  terms are those?

22      **MR. BOLAND:**  They can search every word of the

23  e-mails we've provided them and find the precise media that

24  that stuff came from.  It's like searching on Google, same

25  thing.

1          **MAGISTRATE JUDGE FOSCHIO:**  That presupposes that

2     they know the words that are in these 41 e-mails.

3          **MR. BOLAND:**  They do because we've given them to

4     them in previous pleadings and papers.  They have them.  We've

5     actually -- we attached them as an exhibit, the entirety of

6     these e-mails were in an exhibit to a prior motion.

7          So they can go through and search all those words

8     and find them, sure.  Were provided in prior papers and Stroz

9     Friedberg knows how to do search term, you know, inquiries to

10    this media and they could have found it in a very short period

11    of time, no motion needed.

12          They chose not to.

13          **MAGISTRATE JUDGE FOSCHIO:**  You didn't mention this

14    concept to Mr. Southwell or Mr. Snyder?

15          **MR. BOLAND:**  Yes.

16          **MAGISTRATE JUDGE FOSCHIO:**  You just told -- you

17    did?  I thought it was just get some of your lawyers to think

18    about it.

19          **MR. BOLAND:**  I said to them Stroz Friedberg has

20    everything.  They can search and find it.  It's very easy.

21          **MAGISTRATE JUDGE FOSCHIO:**   That's what you meant?

22    That's what you meant?

23          **MR. BOLAND:**  Yes.

24          **MAGISTRATE JUDGE FOSCHIO:**  Oh, okay.  And it was --

25          **MR. BOLAND:**  Again --

1          **MAGISTRATE JUDGE FOSCHIO:**  -- it was their fault

2    for not realizing that technically Stroz Friedberg should have

3    or were fully capable of doing it?

4          **MR. BOLAND:**  Yes.

5          **MAGISTRATE JUDGE FOSCHIO:**  I see.

6          **MR. BOLAND:**  And Mr. Snyder admits that they've

7    done it in the past.  Stroz Friedberg already identified it

8    for them.

9          **MAGISTRATE JUDGE FOSCHIO:**  I understand.  Thank

10   you.  Well, there you go.

11         **MR. SNYDER:**  Just briefly, Your Honor --

12         **MAGISTRATE JUDGE FOSCHIO:**  So you're not going to

13   bill your client for this motion?

14         **MR. SNYDER:**  Your Honor, you know, we are as

15   frustrated as maybe the Court is --

16         **MAGISTRATE JUDGE FOSCHIO:**  No, I'm just trying to

17   be fair here and figure out what went wrong here and why I'm

18   being favored with --

19         **MR. SNYDER:**  What went wrong is --

20         **MAGISTRATE JUDGE FOSCHIO:**  -- all these extra

21   motions.  I know you like them, you wanted to come in and see

22   the new courthouse for sure, and you always like seeing me,

23   but this is one issue that could -- I could have just as well

24   passed on.

25         **MR. SNYDER:**  We had hoped, Your Honor, just to put

1  this in context, with all deadly seriousness, we had hoped to

2  move to dismiss this case in September when the plaintiff was

3  obligated by the end of August to be in compliance.

4          We're here six months later because this plaintiff

5  has obstructed the expedited discovery process.

6          **MAGISTRATE JUDGE FOSCHIO:**  No, just focus in --

7          **MR. SNYDER:**  So -- so --

8          **MAGISTRATE JUDGE FOSCHIO:**   -- on this one little

9  simple concept --

10         **MR. SNYDER:**  So -- so --

11         **MAGISTRATE JUDGE FOSCHIO:**  -- which is --

12         **MR. SNYDER:**  Okay.

13         **MAGISTRATE JUDGE FOSCHIO:**  -- could Stroz Friedberg

14  have picked up on what he's --

15         **MR. SNYDER:**  Absolutely --

16         **MAGISTRATE JUDGE FOSCHIO:**  -- said to you, go

17  search for it and without making the motion?

18         **MR. SNYDER:**  Absolutely not, for a very simple

19  reason.

20         **MAGISTRATE JUDGE FOSCHIO:**  Which is?

21         **MR. SNYDER:**  Mr. Grant did not even say in his

22  submissions to the Court that the disks contained copies of

23  supposed e-mails.

24         He doesn't say what the disks contain at all.  So

25  we were in the dark.  We knew that Mr. Ceglia did not disclose

1    the existence of Grant.

2             We had no idea what the 41 floppy disks contained

3    or didn't contain.  And Mr. Boland gave us a stiff arm

4    asking --

5             **MAGISTRATE JUDGE FOSCHIO:**  Okay, okay, all right.

6             **MR. SNYDER:**  -- when we asked him for any help or

7    assistance.  So what we simply need is sufficient identifying

8    information about the 41 floppy disks so we can conduct an

9    investigation to determine whether we have them or not.

10            We have no idea what is on those disks.

11            **MAGISTRATE JUDGE FOSCHIO:**  I understand.  But I

12   hesitate to even ask --

13            **MR. SNYDER:**  Yes.

14            **MAGISTRATE JUDGE FOSCHIO:**  -- if it wasn't e-mails,

15   what did you think it might be?

16            **MR. SNYDER:**  We had no idea, Your Honor.  We had no

17   idea.  We knew that it was -- it was of concern to us that he

18   concealed his existence in repeated sworn statements to the

19   Court about what electronic assets existed.

20            We only learned of it kind of inadvertently when he

21   mentioned Grant in some other motion, not -- not -- not a

22   disclosure of -- of -- of an expert with electronic assets.

23            And so we simply need all of the evidence to

24   complete the record and we don't know what's on those 41

25   floppy disks at all.

1          **MAGISTRATE JUDGE FOSCHIO:**  All right, all right,

2  all right.

3          **MR. SNYDER:**  So what we would request, Your Honor,

4  is simply an order --

5          **MAGISTRATE JUDGE FOSCHIO:**  I understand.

6          **MR. SNYDER:**  -- directing identification,

7  production and certification of all electronic assets and

8  documents in Mr. Grant's possession responsive to the orders.

9          And if we already have them, we can then trace them

10  to the assets we have and the matter will be closed.

11          **MAGISTRATE JUDGE FOSCHIO:**  Thank you.  Quick

12  rebuttal?  Sur-rebuttal?

13          **MR. BOLAND:**  Your Honor, I can actually help them

14  trace it.  The August 1st privilege log that Stroz Friedberg

15  produced, if your assistant can just flip my screen up on

16  everyone's screen, items 26 through 32 have already been

17  identified --

18          **MAGISTRATE JUDGE FOSCHIO:**  Sure.

19          **MR. BOLAND:**  -- as floppy disks with the e-mails in

20  Word document format.  They're already on there.

21          **MR. SNYDER:**  That's not sufficient, Your Honor.

22          **MAGISTRATE JUDGE FOSCHIO:**  Just a second.  I want

23  to try out all this technology.

24          **MR. BOLAND:**  Do you see 26?  I'll try to zoom it up

25  if you can't.  26 through 32, this is the Stroz Friedberg

1  privilege log.  Each line starts with D-O-C, which defines a

2  Word -- Microsoft Word document.

3          And then the continuation says file containing what

4  appears -- I'm sorry, it starts at 27 actually.  File

5  containing what appears to be correspondence between

6  Zuckerberg and Ceglia and there's a bunch of dates.

7          And then if you see to the end here, Your Honor,

8  the designation in that last column F-L-O-3.  I'm guessing

9  that's floppy disk by Stroz Friedberg.

10          So there you see a bunch of floppies containing a

11  bunch of e-mails, which are the e-mails we've produced already

12  in papers coming from Word documents in the possession of the

13  expert.

14          **MR. SNYDER:**  Your Honor --

15          **MR. BOLAND:**  So --

16          **MAGISTRATE JUDGE FOSCHIO:**  Why would we believe

17  that 41 floppies are necessarily a fortiori, if you will,

18  within the scope of that particular entry?

19          **MR. BOLAND:**  Well, Your Honor, because we provided

20  in our papers absolute proof that all the floppies from

21  Mr. Grant, the original floppies, made it to PLA, which was

22  the provider.

23          And then only two of them, as Mr. Grant said in his

24  declaration, even had what he thought was relevant e-mails.

25  And so all of them were provided to Stroz Friedberg.

1          How they rearranged them, I have no way of knowing.

2          **MAGISTRATE JUDGE FOSCHIO:**  They should have known

3    that.

4          **MR. BOLAND:**  Who should have known what?

5          **MAGISTRATE JUDGE FOSCHIO:**  The defendants.  They

6    should have known that.

7          **MR. BOLAND:**  They actually acknowledged that they

8    got this.  It's not that they should have known it, they

9    acknowledged receiving it.

10          **MR. SNYDER:**  Just to correct the false record

11    just presented, first of all, that's five items on a privilege

12    log.

13          Second, I believe the reference to F-L is a

14    reference to Florida, not floppy disks.

15          And this is a hide the ball kind of approach.  What

16    is clear and becoming more apparent in these proceedings is

17    that this plaintiff and this lawyer for some reason don't want

18    to comply with the order as it relates to Mr. Grant.

19          We simply want compliance with the order, which

20    is --

21          **MAGISTRATE JUDGE FOSCHIO:**  I think they want to

22    comply.  They just don't want to have attorney's fees awarded

23    against them.  That's really what we're talking about at this

24    point in the conversation here, aren't we?

25          Aren't we, Mr. Boland?

1          **MR. BOLAND:**  Your Honor, Mr. Ceglia --

2          **MAGISTRATE JUDGE FOSCHIO:**  I mean, you really have

3   no objection to granting the order?

4          **MR. BOLAND:**  Mr. Ceglia is going to comply with

5   every order that he's required to comply with.  And if this

6   has been overlooked by a mass of documents and no one informed

7   him, he will simply submit another declaration saying now I

8   know Jerry Grant has copies.  That's fine.

9          **MAGISTRATE JUDGE FOSCHIO:**  Well, I'm sure that the

10  defendant would see it otherwise.  I -- you've convinced me

11  that it's an honest error.  That there was no intent to

12  mislead and, arguably, your failure to provide it more timely

13  was substantially justified.  And you got to learn to take yes

14  for an answer on some of these issues --

15         **MR. BOLAND:**  Yes, Your Honor, they can have copies,

16  again, of the 41 --

17         **MAGISTRATE JUDGE FOSCHIO:**  Fine.

18         **MR. BOLAND:**  -- of the images of the 41.

19         **MAGISTRATE JUDGE FOSCHIO:**  All right.  Motion

20  granted, no fees.

21         Mr. Southwell, you will prepare your usual skillful

22  order along with -- along with Ms. Aycock's able assistance,

23  no doubt.

24         And Mr. Flynn's got to get his fingerprints on it

25  and he can do so as well.

1          **MR. FLYNN:** Thank you, Your Honor.

2          **MAGISTRATE JUDGE FOSCHIO:**  All right.  Next?

3          **MR. SNYDER:**  Yes, Your Honor, the motion to strike

4   the Gianadda declaration and for sanctions.  The declaration

5   filed by Mr. Boland and fining Mr. Boland for his deceit --

6          **MAGISTRATE JUDGE FOSCHIO:**  Let me try to move along

7   here.  Why isn't it fair to say that based on Mr. Gianadda's

8   declarations, competing declarations, if you will, that he

9   changed his mind as to what he recalled and that's it?

10          I mean, why do we need to strike anything?

11          **MR. SNYDER:**  It's not -- because with all due

12  respect, Your Honor, that's not what happened.

13          **MAGISTRATE JUDGE FOSCHIO:**  I know you're being

14  respectful.  So you don't have to start that way.

15          **MR. SNYDER:**  It's not what the record shows.  The

16  record shows that Mr. Boland deceived --

17          **MAGISTRATE JUDGE FOSCHIO:**  I want to tee this up so

18  we can try to get through it.  As far as misconduct by

19  Mr. Boland is concerned, there are two disciplinary

20  authorities that you can bring the matter to.

21          One is the -- cause he by virtue of being admitted

22  in this court is subject, I think, under our local rules to

23  the New York State Code of Professional Responsibility, which

24  in turn is enforced by the Appellate Division, Fourth

25  Department, which has a disciplinary arm.

1           Mr. Flynn is well familiar with it.

2           So if you think Mr. Boland's in violation of any of

3  the relevant disciplinary rules, as a lawyer you have an

4  obligation to bring it to their attention.

5           Similarly, he is also subject to disciplinary rules

6  in the, I suspect, some state court that has jurisdiction in

7  Cleveland.

8           I'm not particularly interested in -- in -- in, at

9  least in this matter, filing complaints on behalf of the Court

10 to any other judicial body with regard to enforcing the Code

11 of Professional Responsibility.  I'll leave it to you if you

12 feel that strongly about it.

13          I'm intrigued by the idea that because of whatever

14 Mr. Boland said or didn't say, more to the point, Mr.

15 Gianadda, apparently a competent, intelligent, mature person,

16 signed one document under oath; and then signed another

17 document under oath, which was at some variance with the first

18 document.

19          Why does that require me to take action with regard

20 to striking anything on my records?

21          **MR. SNYDER:**  If you give me a moment I'll explain.

22          **MAGISTRATE JUDGE FOSCHIO:**  I'm going to give you a

23 moment, but I just want to help you by telling you what is on

24 my -- what my approach to this is.

25          **MR. SNYDER:**  Thank you.  I'll state at the outset

1 that, and then I'll go -- I'll go to first principles, there

2 was no change of mind or variance with the first document.

3                 But I will get to that in a moment.

4                 The reason this Court has inherent power, as all

5 district courts do to sanction --

6                 **MAGISTRATE JUDGE FOSCHIO:**  I know all about that.

7                 **MR. SNYDER:**  Right.  So -- so striking a

8 declaration procured by --

9                 **MAGISTRATE JUDGE FOSCHIO:**  Sanctioning -- excuse

10 me, excuse me, sanctioning is one thing.  Striking a document

11 that's been duly filed with the Court is something else.

12                 **MR. SNYDER:**  Well, let me start with --

13                 **MAGISTRATE JUDGE FOSCHIO:**  Two totally different

14 concepts in my mind.

15                 **MR. SNYDER:**  We seek two distinct -- we seek two

16 distinct types of relief.  One, striking the declaration.

17 And, two, sanctions.

18                 So let me address the striking of the declaration

19 first.  This Court, as Your Honor acknowledges, has inherent

20 power to sanction errant litigants and in particular courts

21 have imposed a sanction of excluding or striking evidence,

22 declarations in particular, when that evidence was improperly

23 obtained through deceit, fraud or misleading conduct by an

24 attorney.

25                 Here, that's exactly what happened.  What happened

1  was Mr. Boland's scheme actually proceeded in four stages: A

2  deceptive phone call, a misleading draft, corruptly and

3  deceitfully procuring the signature on that draft, misleading

4  the Court about what that draft said, and then making false

5  accusations based on no evidence against the witness and

6  declarant, attacking his integrity and impartiality with no

7  basis whatsoever.

8           So the first part was to manufacture evidence to

9  support his baseless notion that the document, the original

10  work-for-hire document, was altered by the defendants.

11          Mr. Boland called Mr. Gianadda in the evening when

12  he was with family --

13          **MAGISTRATE JUDGE FOSCHIO:**  I am clear with the

14  scenario.

15          **MR. SNYDER:**  Right.  He groomed him.  He never told

16  him that he was going to be filing it in court, which was a --

17  a -- a glaring and disturbing omission.

18          Mislead him, lied to him and said it was only going

19  to be used as the first step in a dialogue, implying that

20  Mr. Boland then would call Mr. Southwell or correspond with

21  Mr. Southwell --

22          **MAGISTRATE JUDGE FOSCHIO:**  I'm trying to help you

23  here, counsel.

24          **MR. SNYDER:**  Yes.

25          **MAGISTRATE JUDGE FOSCHIO:**  What we have now, what

1  you believe with Mr. Southwell's able assistance to Mr.

2  Gianadda, what Mr. Gianadda now tells us is the more accurate

3  version of what he wanted to say and would have said had he

4  been given a better opportunity and better counseling about it

5  in the first instance.

6            **MR. SNYDER:**  But, no, Your Honor, because Mr. --

7            **MAGISTRATE JUDGE FOSCHIO:**  So what's the harm in

8  having two Gianadda declarations on record here?

9            **MR. SNYDER:**  The harm is that the first one was

10 procured by deceit and by subterfuge.

11           **MAGISTRATE JUDGE FOSCHIO:**  That has to do with my

12 point about whether or not that, in fact, happened, which I

13 would have to make a finding based on a written record.

14           And also it -- it involves a determination that

15 there was a violation of the Code of Professional

16 Responsibility.

17           **MR. SNYDER:**  I don't think Your Honor needs to

18 reach the second conclusion so long as the Court finds, as I

19 think this record provides ample basis for finding, that the

20 declarant and witness here was duped into believing --

21           **MAGISTRATE JUDGE FOSCHIO:**  You can bet that if I

22 were to make that finding and somebody were to contact the

23 disciplinary authorities, that my finding would be probably

24 Exhibit A in their file, wouldn't it?

25           **MR. SNYDER:**  Well, well, I think there's no

1    question here, even Mr. Boland's sworn statements to the Court

2    confirm that this declarant was duped into believing that he

3    was participating in an innocuous --

4                **MAGISTRATE JUDGE FOSCHIO:**  That's a strong word.

5                **MR. SNYDER:**  Well, he was duped into believing that

6    he was -- that he was not -- that he was participating in a

7    more innocuous process than was Mr. Boland's intent because

8    intent --

9                **MAGISTRATE JUDGE FOSCHIO:**  Did -- did Mr. Boland --

10   did Mr. Boland -- maybe I missed this.  Did Mr. Boland ever

11   say that it would not be filed?

12               **MR. SNYDER:**  He told him it was going to be used as

13   the first step in a discussion about --

14               **MAGISTRATE JUDGE FOSCHIO:**  Did he ever say that it

15   was not going to be filed in court?

16               **MR. SNYDER:**  I think that was the fair implication

17   of what he said --

18               **MAGISTRATE JUDGE FOSCHIO:**  Really?

19               **MR. SNYDER:**  -- when he told the witness that it

20   was going to be used --

21               **MAGISTRATE JUDGE FOSCHIO:**  To get Mr. Southwell's

22   attention, something to that effect.

23               **MR. SNYDER:**  Right.  Omitting the critical fact

24   that he was going to file it the very next morning.

25               But worse than that, the declaration was used in

1  support of a false and misleading assertion to the Court in

2  accompanying papers, and he put it on his blog the next day

3  for the world to see, saying that the -- the -- the document

4  changed color somehow during the course of the testing.

5           When Mr. Gianadda told the Court in his second and

6  third declarations with complete clarity --

7           **MAGISTRATE JUDGE FOSCHIO:**  But that was in --

8           **MR. SNYDER:**  -- that that's not what he said.

9           **MAGISTRATE JUDGE FOSCHIO:**  -- but that was in the

10  document that Mr. Gianadda signed.

11           **MR. SNYDER:**  Mr. Gianadda never said that the

12  document changed color, ever, during the course of the

13  testing.

14           **MAGISTRATE JUDGE FOSCHIO:**  Well, he may not have,

15  but that was what Mr. Boland says that he thought Mr. Gianadda

16  told him over the phone and he put it in the document, didn't

17  he?

18           **MR. SNYDER:**  But Mr. Gianadda has sworn to this

19  Court now twice that he told Mr. Boland clearly that the

20  document did not change color --

21           **MAGISTRATE JUDGE FOSCHIO:**  I know.

22           **MR. SNYDER:**  -- so someone is lying.

23           **MAGISTRATE JUDGE FOSCHIO:**  I know.  But those words

24  were in the document that Mr. Gianadda read, presumably,

25  before he signed it and then signed it.

1          **MR. SNYDER:**  No, all he said in his first

2    declaration was the documents appeared white as opposed to

3    blue, green, yellow, purple or orange.

4          Mr. Gianadda also told Mr. Boland clearly, as he

5    tells the Court, that the document did not change color at all

6    throughout the defendants' inspection and Mr. Boland omitted

7    that from the declaration.

8          **MAGISTRATE JUDGE FOSCHIO:**  That's my point.  If Mr.

9    Gianadda felt that that was a material deviation of what he

10   said, then why did he sign the document?

11         **MR. SNYDER:**  He didn't understand that this was a

12   final sworn statement to be filed in court.

13         **MAGISTRATE JUDGE FOSCHIO:**  He signed it under oath.

14         **MR. SNYDER:**  But -- yes, Your Honor.

15         **MAGISTRATE JUDGE FOSCHIO:**  He didn't know it was

16   going to be filed in court, but he also signed it under oath?

17         **MR. SNYDER:**  He also didn't -- if he was told this

18   is going to be filed in court in support of an argument that

19   the document changed color during the course of the testing,

20   Mr. Gianadda would have said are you crazy?  I just told you

21   it didn't change color.

22         **MAGISTRATE JUDGE FOSCHIO:**   But -- but whatever he

23   wrote -- whatever was written on the first document, he could

24   see.

25         **MR. SNYDER:**  And it was accurate.

1          **MAGISTRATE JUDGE FOSCHIO:**  It was?

2          **MR. SNYDER:**  But it was -- it was --

3          **MAGISTRATE JUDGE FOSCHIO:**  It was incomplete?

4          **MR. SNYDER:**  -- it was -- it was -- the use to

5    which it was put by Mr. Boland and his client was nefarious

6    and dishonest and, therefore, the entire declaration procured

7    by -- by deceit, used for an improper purpose should be

8    stricken because this Court certainly has the inherent power

9    to police that kind of -- that kind of game playing.

10         And to make matters worse, to make matters worse,

11   Mr. Boland admits that Mr. Gianadda -- you can picture the

12   scene at the dinner table or in the living room with his

13   kids -- repeated several times that he didn't want to sign it

14   until he spoke with Mr. Southwell.

15         **MAGISTRATE JUDGE FOSCHIO:**  Then why didn't he do

16   that?

17         **MR. SNYDER:**  Because he's a lay person, at home, at

18   night, being pressured by a very aggressive attorney who is

19   using deceptive and improper pressure tactics, including by

20   telling him wink wink, don't worry, this is an innocuous

21   document, it's going to be used as a discussion piece.

22         **MAGISTRATE JUDGE FOSCHIO:**  Was it before or after

23   Mr. Southwell contacted Mr. Gianadda that Mr. Gianadda took

24   umbrage at the absence of the statement that he claims in his

25   second document, his second declaration, to have actually told

1  Mr. Boland about the scenario?

2         **MR. SNYDER:**  When Mr. Gianadda heard two facts he

3  was outraged and felt not only taken advantage of, but

4  deceived.

5         When he heard that it was filed in court, he was --

6  he was very, very upset.

7         And when he heard that it was filed for the purpose

8  of suggesting that the document changed color during the

9  course of the testing, he was even more outraged because he

10 expressly told Mr. Boland that that was not the truth.

11        **MAGISTRATE JUDGE FOSCHIO:**  Look, I don't want to --

12 I don't want to -- I'm not in any way saying anything or

13 intending to say anything that in any way condones sharp

14 practice by attorneys or outright violations of the -- of the

15 rules of professional responsibility.

16        All I am pointing out is that Mr. Gianadda, albeit

17 feeling a sense of pressure, did not feel a need to contact

18 Mr. Southwell about the matter until Mr. Southwell saw the

19 declaration and contacted him.

20        **MR. SNYDER:**  For good purpose because Mr. Boland

21 duped him and deceived him by saying --

22        **MAGISTRATE JUDGE FOSCHIO:**  Well, he didn't dupe him

23 about sending a copy to Mr. Southwell.

24        **MR. SNYDER:**  No, he did, because he said if you

25 sign this document and --

1          **MAGISTRATE JUDGE FOSCHIO:**  I thought --

2          **MR. SNYDER:**  -- yes, if you sign this document and

3   e-mail it to me and Mr. Southwell, it will be, quote, a

4   convenient way to start a dialogue between two lawyers who

5   would then communicate and then he would no longer be in the

6   middle.

7          Mr. Gianadda --

8          **MAGISTRATE JUDGE FOSCHIO:**  Exactly my point, and I

9   don't want to quibble with you about this.

10         **MR. SNYDER:**  Mm-hmm.

11         **MAGISTRATE JUDGE FOSCHIO:**  I want to move on.

12         **MR. SNYDER:**  Yes.

13         **MAGISTRATE JUDGE FOSCHIO:**   That was done and it

14  was not until after Mr. Southwell called him, presumably

15  expressing upset with the document, that it occurred to

16  Mr. Gianadda that the document was deficient.

17         **MR. SNYDER:**  Not that it was deficient.  That it

18  was -- that -- that it was being used for an improper purpose,

19  and that he was -- and that he was being -- that he had been

20  duped.

21         And then -- and what happened was the -- the deceit

22  here and the reason this Court should strike the declaration,

23  the deceit here is very, very simple.  The deceit is

24  Mr. Boland mislead a non-lawyer in the evening, calling him at

25  home, into believing that he was e-mailing the signed

1  declaration as a preliminary step.

2          His ruse was to tell the witness that he needed a

3  declaration only as a way to speed things along, to facilitate

4  a dialogue between counsel.

5          And based on his representation that he didn't

6  speak to Mr. Southwell by phone, rather than telling him

7  truthfully, I'm going to take this and I'm going to put it on

8  my blog.  And you know what I'm going to write on my blog?

9  This is document 229, Exhibit A, neutral third-party confirms

10  Facebook damaging of Ceglia's contract.

11          **MAGISTRATE JUDGE FOSCHIO:**  I know, I read it.

12          **MR. SNYDER:**  That's an outrage because it is false.

13  That's not what he said this to lawyer.  He said the contrary.

14          **MAGISTRATE JUDGE FOSCHIO:**  Those are Mr. Boland's

15  characterizations of it.

16          **MR. SNYDER:**  But it's false.  It's a false

17  characterization because the witness told him the document did

18  not change color.  So that is a lie.

19          And what he told this Court -- what he told this

20  Court was that this Gianadda declaration proves that the

21  document changed color during the course of the examination

22  when the witness clearly told him, but he omitted it from the

23  declaration, that that was not the case.

24          And then once his scheme to manipulate this witness

25  blew up, he then resorted to mud slinging and character

1 | assassination.

2 |          So what he did is he said that this -- this

3 | videographer was -- was in our back pocket, he was pressured.

4 |          So Mr. Gianadda submitted another declaration

5 | saying he felt no pressure from anyone and what we have here

6 | is we have Mr. Flynn and Mr. Southwell interacting with this

7 | witness, who the witness says did not pressure him on the one

8 | side.

9 |          And you have Mr. Boland on the other side who is

10 | submitting statements to this Court where he has no

11 | explanation, no explanation for why he lied to the client.

12 | Because the lie -- I mean to the witness.

13 |          The lie, the deceit was, this is a preliminary

14 | step.  The deceit, the untruthful statement that procured the

15 | signature on the declaration was, this is a convenient way to

16 | start a dialogue.  That was a lie.

17 |          What he should have said was, "I'm going to file

18 | this at 9:00 a.m." --

19 |          11:00 a.m.?

20 |          **MR. SOUTHWELL:**  11:30 a.m.

21 |          **MR. SNYDER:**   -- "11:30 a.m. tomorrow morning, I'm

22 | going to put it on the blog -- my blog and I'm going to tell

23 | the world that you confirmed that Facebook has destroyed and

24 | tampered with evidence."

25 |          It is difficult in my judgment to imagine -- well,

1   let me not overstate it.  This is a paradigmatic case of a

2   declaration being procured by improper conduct giving this

3   Court raw discretion to exercise its inherent power.

4          If the Court doesn't want to sanction Mr. Boland,

5   certainly as a reasonable and proportionate response to the

6   bad faith and improper conduct here, the imposition of the

7   lesser sanction of striking the declaration is appropriate,

8   proportionate and reasonable.

9          And to not do so and to simply allow this to sit in

10  the record alongside the corrected -- the corrected

11  declarations would be to sanction, permit using the word in

12  that way, to sanction this -- this trickery.

13         If he had been silent or if he had simply said I

14  need a declaration would have been sharp practice.  Certainly

15  not something I would do with a witness, get a signature, not

16  telling the witness that it was going to go -- be filed in a

17  federal court.

18         But the affirmative lie that it was going to be a

19  convenient way to start a dialogue should be met with the

20  harshest response for this Court because Mr. Boland when he

21  said that had no intention of starting a dialogue.  He had

22  every intention of filing it the next morning with his papers

23  saying that --

24         **MAGISTRATE JUDGE FOSCHIO:**  Okay.

25         **MR. SNYDER:**  -- we discolored the document and

1 posting on his blog what he -- what he did for the obvious

2 purpose --

3        **MAGISTRATE JUDGE FOSCHIO:** Okay.

4        **MR. SNYDER:** -- of doing what this plaintiff and

5 his prior lawyers have done from day one, which was to use

6 fraudulent documents to try to coerce a settlement, you know,

7 in this attempted hold up that this case is.

8        So we think, Your Honor, that striking this

9 affidavit -- this declaration is the least that this Court

10 should do in the face of really indefensible conduct.

11        **MAGISTRATE JUDGE FOSCHIO:** Mr. Boland, based on

12 everything that's transpired here, do you want to withdraw

13 212?

14        Do you want to withdraw the Gianadda declaration,

15 that issue?

16        **MR. BOLAND:** No, Your Honor. In the interest of

17 respecting the Court's willingness to move on, which I think

18 is reasonable to do, I responded to all this, these baseless

19 allegations of lies, et cetera both in my declaration and in

20 my papers.

21        I would just ask this, Your Honor: They're asking

22 for Mr. Gianadda's original declaration to be stricken and the

23 altered declaration that they provided to -- to take its

24 place.

25        My concern about that alteration they made is not

1    actually the facts related to this case because Mr. Gianadda

2    reiterates in the altered declaration the same salient facts,

3    which is "the document was white when I first saw it."

4           What I -- what I think we would like to reserve the

5    right to object to use at trial is the rest of that document

6    where Mr. Gianadda goes into, assisted by lawyers for the

7    other side sort of *ad hominem*, "Mr. Boland wasn't forthright,

8    I felt like he mislead me," all that argument that is not

9    really pertinent to why he's involved in the case.

10          So we would actually ask that that document be

11   stricken entirely.  But if the Court's not inclined to strike

12   Mr. Gianadda's --

13          **MAGISTRATE JUDGE FOSCHIO:**  Which -- which?  The

14   second --

15          **MR. BOLAND:**  The second declaration.

16          **MAGISTRATE JUDGE FOSCHIO:**  Well, you didn't make a

17   motion to that effect.

18          **MR. BOLAND:**  No, but they're asking for a

19   replacement.  One stricken and one to replace.  We're saying

20   don't let them replace it.

21          **MAGISTRATE JUDGE FOSCHIO:**  They're not asking.

22   They've already filed it.  It's already filed.

23          **MR. BOLAND:**  We would just like to reserve our

24   right to object to its use at trial in front of a jury because

25   of that extra material, which is not relevant to the case and

1  just as --

2          **MAGISTRATE JUDGE FOSCHIO:**  Can I just ask a couple

3  of questions, if you care to answer?

4          **MR. BOLAND:**  Yes.

5          **MAGISTRATE JUDGE FOSCHIO:**  Why didn't you tell

6  Mr. Gianadda that you intended to file it with the Court?

7          **MR. BOLAND:**  As I said in my papers, Your Honor, I

8  didn't tell him that because I didn't intend to file it.

9          **MAGISTRATE JUDGE FOSCHIO:**  Really?

10         **MR. BOLAND:**  My intent was at that time to obtain

11 that declaration, as I said in my papers, and wait for their

12 response to our motion regarding spoliation of the document.

13         Were they going to acknowledge that, yes,

14 unfortunately, we have determined --

15         **MAGISTRATE JUDGE FOSCHIO:**  What prompted you to

16 file it then?

17         **MR. BOLAND:**  Here's what prompted me, as I said in

18 my papers --

19         **MAGISTRATE JUDGE FOSCHIO:**  Or put it on your blog

20 for that matter?

21         **MR. BOLAND:**  Anything that's a filed document that

22 might be relevant to letting the public know what's going on

23 in the case.  That's it .

24         The reason it did get filed, as I said in my

25 papers, is I had a conversation with Mr. Argentieri and with

1  my client and I recounted to them my concern that from my

2  first phone conversation with Mr. Gianadda, he was resolute,

3  he asked -- answered questions very promptly and said

4  "absolutely, the document was white when I saw it.  I was 3

5  feet away."

6          And then the second call the following day he said,

7  "you know, after you called me Mr. Southwell called me and now

8  I'm concerned about getting in the middle of this " --

9          **MAGISTRATE JUDGE FOSCHIO:**  Declarant remorse.

10          **MR. BOLAND:**  Exactly, that's right.  And then he

11  began to say things, as I recounted, that he started to feel

12  from whatever they were telling him and whatever they were

13  saying to him when they were leaning over him in Mr. Flynn's

14  office that, "I think I need their permission.  Can we clear

15  this with Mr. Southwell?" He was conveying that idea to me.

16          I immediately became concerned and I should have,

17  if there was a place in Vegas to lay a bet on it, I should

18  have laid a bet, that they were going to interact with him, as

19  they admitted they did, and his declaration is going to

20  change.  So before that happened --

21          **MAGISTRATE JUDGE FOSCHIO:**  But you did file it with

22  the Court before their motion, didn't you?

23          **MR. BOLAND:**  Say again.

24          **MAGISTRATE JUDGE FOSCHIO:**  Didn't you file it

25  before the -- before they made their motion to strike?

1          **MR. BOLAND:**  I did.  I filed it immediately then,

2    which I had not intended to do.

3          **MAGISTRATE JUDGE FOSCHIO:**  Why?

4          **MR. BOLAND:**  Because I was convinced that based on

5    what he was telling me, he was being pressured by those

6    lawyers to change his story, and he did.  It's exactly what I

7    thought was going to happen.

8          **MAGISTRATE JUDGE FOSCHIO:**  So you already had the

9    declaration.  What other value was there in filing it with the

10   Court?

11         **MR. BOLAND:**  Oh, incredible value because we have a

12   motion pending that is asking for sanctions against them for

13   yellowing this document.

14         And Mr. Gianadda confirms --

15         **MAGISTRATE JUDGE FOSCHIO:**  Well, you could have

16   filed it at any time in support of the motion.  You didn't

17   have to file it with the Court.

18         **MR. BOLAND:**  Well, the motion -- our motion was

19   already filed.

20         **MAGISTRATE JUDGE FOSCHIO:**  I'm trying to understand

21   what the legal or tactical significance or benefit is of

22   filing that document at that particular point in time.

23         **MR. BOLAND:**  I can explain, Your Honor.

24         **MAGISTRATE JUDGE FOSCHIO:**  Good.

25         **MR. BOLAND:**  First, I knew that a changed document

1   was on the horizon based on the pressure this witness was

2   expressing to me, tone of voice --

3            **MAGISTRATE JUDGE FOSCHIO:**  You had the document in

4   your file.

5            **MR. BOLAND:**  I did.

6            **MAGISTRATE JUDGE FOSCHIO:**  Always a good thing.

7            **MR. BOLAND:**  He's a neutral witness.  He was paid

8   for by both sides.

9            **MAGISTRATE JUDGE FOSCHIO:**  It's called impeachment

10  by inconsistent prior statement, I believe.

11           **MR. BOLAND:**  He has no bias, and he provided

12  testimony which was favorable to my client and unfavorable to

13  them, which was the sin he committed that they had to correct.

14           **MAGISTRATE JUDGE FOSCHIO:**  Well --

15           **MR. BOLAND:**  That's why it was valuable.  We

16  attached it to a motion where it was entirely relevant.

17           Now you don't have a biased witness saying the

18  document was white when we gave it to him.  You have a neutral

19  witness.

20           **MAGISTRATE JUDGE FOSCHIO:**  Yeah, but you could

21  certainly cross-examine him based on a prior inconsistent

22  statement.  You didn't need to file it with the Court.

23           **MR. BOLAND:**  Well, here's why we needed to file

24  it --

25           **MAGISTRATE JUDGE FOSCHIO:**  Nothing in the rules of

1   evidence that required a prior inconsistent statement be filed

2   with the Court, right?

3           **MR. BOLAND:**  That's correct, Your Honor.  But

4   strategy-wise they're trying to get this case dismissed.

5           **MAGISTRATE JUDGE FOSCHIO:**  I know that.

6           **MR. BOLAND:**  Arguing that Mr. Ceglia yellowed the

7   document.

8           **MAGISTRATE JUDGE FOSCHIO:**  So you thought you

9   could --

10          **MR. BOLAND:**  I got to move now.

11          **MAGISTRATE JUDGE FOSCHIO:**  You thought you could --

12  you thought you could persuade them not to do that by filing

13  the document?

14          **MR. BOLAND:**  I couldn't persuade them at all, Your

15  Honor.

16          What I'm hoping to do is present --

17          **MAGISTRATE JUDGE FOSCHIO:**  That's exactly my point.

18          **MR. BOLAND:**  -- is to present evidence to the Court

19  that makes it impossible, which it does now for that

20  dismissal.

21          **MAGISTRATE JUDGE FOSCHIO:**  All right.  Say that

22  again.  What makes it impossible?  What?

23          **MR. BOLAND:**  I was hoping to present evidence to

24  the Court, a conglomeration of evidence to the Court that

25  makes it factually unsupportable for them to file this motion

1   to try and dismiss this case claiming Ceglia yellowed this

2   document before they got it.  That's what the point of that

3   was.

4           They're going-- that's what they're -- they've been

5   broadcasting --

6           **MAGISTRATE JUDGE FOSCHIO:**  But you have motions

7   that we haven't resolved yet on that score.

8           **MR. BOLAND:**   Right.

9           **MAGISTRATE JUDGE FOSCHIO:**  So I'm not sure what you

10  meant by -- I don't get the connection between the Gianadda --

11  filing of that Gianadda declaration and your inability to

12  argue that -- that yellowing issue.

13          **MR. BOLAND:**  Oh, no, I'm not claiming there's an

14  inability to argue.

15          **MAGISTRATE JUDGE FOSCHIO:**  Oh, I misunderstood you.

16          **MR. BOLAND:**  Not at all.

17          **MAGISTRATE JUDGE FOSCHIO:** Okay, fine.

18          **MR. BOLAND:**  Yes.

19          **MAGISTRATE JUDGE FOSCHIO:**  All right.  I'm not

20  persuaded to grant the motion, Mr. Snyder.  I've got two

21  affidavits or two declarations.  I don't condone, I don't

22  encourage the lack of candor between Mr. Boland and

23  Mr. Gianadda, but I -- I just don't see any just -- I don't

24  see enough justification, I guess is the real word, to strike

25  it. Two affidavits and they speak for themselves.

1              The motion is denied.

2              All right.  Now, what else do we -- what's the next

3    issue we have to resolve here?  Any other defendants' motion,

4    Mr. Snyder?

5              **MR. SNYDER:**  That's it, Your Honor.

6              **MAGISTRATE JUDGE FOSCHIO:**  Okay.  Well, let's move

7    to the plaintiff's.  What do you want to take first,

8    Mr. Boland?

9              **MR. BOLAND:**  Your Honor, I think the motion for

10   sanctions against the defendants for their damage to the

11   Facebook, the Ceglia/Zuckerberg contract first would be

12   appropriate.  It's the most serious situation that they're

13   facing.

14             **MAGISTRATE JUDGE FOSCHIO:**  Okay.  Pardon me?  213,

15   yeah.  Well, let me express a question to help you.

16             **MR. BOLAND:**  Very well.

17             **MAGISTRATE JUDGE FOSCHIO:**  Are we not premature

18   with all this?

19             **MR. BOLAND:**  No, Your Honor, we're not.

20             **MAGISTRATE JUDGE FOSCHIO:**  Well, you obviously get

21   my drift.  Tell me why we're not premature.

22             **MR. BOLAND:**  Because from this point forward --

23             **MAGISTRATE JUDGE FOSCHIO:**  And for anybody that

24   wonders why we shouldn't wait for the motion and then deal

25   with it at that time?

1          **MR. BOLAND:**   Because, Your Honor, throughout this

2     case so far with the one-sided discovery, Mr. Ceglia has

3     unfairly been receiving a pummelling for alleged frauds absent

4     any evidence.

5          One of them has been this precise issue, and I

6     think that --

7          **MAGISTRATE JUDGE FOSCHIO:**  Well, I can't imagine

8     that his personal sensitivity over being pummeled in this case

9     is a grounds under the Federal Rules of Civil Procedure to

10    warrant a court ruling on a preemptive issue of -- well, go

11    ahead.

12         **MR. BOLAND:**   It goes to fairness, Your Honor.

13         **MAGISTRATE JUDGE FOSCHIO:**  I mean, look, I guess

14    maybe there's even a baser question.  I'm trying to facilitate

15    discussion here.

16         Where is the spoliation?

17         **MR. BOLAND:**   The spoliation is we now have a

18    document as a result of the defendants' experts' either gross

19    negligence or intentional acts that is brown -- yellow to

20    brown on the face --

21         **MAGISTRATE JUDGE FOSCHIO:**  Discolored.  Discolored.

22    Discolored?

23         **MR. BOLAND:**   It is discolored.  And as the images

24    indicate, it's discolored a particular hue, it's a

25    yellow-brown.  It's not discolored red or blue.  It's actually

1    yellow.

2            **MAGISTRATE JUDGE FOSCHIO:**  Well, you're -- you're

3    sort of nudging up to the question that I'm trying to get at,

4    and that is is the document illegible?

5            **MR. BOLAND:**    Actually, it's not that it's

6    illegible.  It's that they have now created a feature of the

7    document --

8            **MAGISTRATE JUDGE FOSCHIO:**  So where is the

9    spoliation?

10           **MR. BOLAND:**    The spoliation comes about that this

11   is the critical document in this case and they've damaged it

12   first --

13           **MAGISTRATE JUDGE FOSCHIO:**   Where is the

14   spoliation?

15           **MR. BOLAND:**    The spoliation comes about from them

16   not being entitled to damage the evidence.

17           **MAGISTRATE JUDGE FOSCHIO:**  Is it not intact?

18           **MR. BOLAND:**    It is not intact.

19           **MAGISTRATE JUDGE FOSCHIO:**  It's not intact?

20           **MR. BOLAND:**    No.

21           **MAGISTRATE JUDGE FOSCHIO:**  You mean there's missing

22   text that has been destroyed somehow?

23           **MR. BOLAND:**    There's a missing color from the

24   front of both pages that was there originally.  It's gone.

25           **MAGISTRATE JUDGE FOSCHIO:**  How -- how -- how does

1  the -- the -- the discoloration make the document either less

2  probative, if you will, if I can use the technical term, from

3  the plaintiff's point of view?

4     **MR. BOLAND:**  I can tell you, Your Honor,

5  because --

6     **MAGISTRATE JUDGE FOSCHIO:**  Yes, I wish you would

7  because it's not discussed in the papers, is it?

8     **MR. BOLAND:**  The sanctions --

9     **MAGISTRATE JUDGE FOSCHIO:**  Excuse me.  Is it?

10     **MR. BOLAND:**  The sanctions --

11     **MAGISTRATE JUDGE FOSCHIO:**  Excuse me.  It's not

12  discussed in the papers, is it?  This point that we're --

13     **MR. BOLAND:**  It is, Your Honor.

14     **MAGISTRATE JUDGE FOSCHIO:**  It is discussed?

15     **MR. BOLAND:**  Near the end.

16     **MAGISTRATE JUDGE FOSCHIO:**  Oh, at the end.  Hmm.

17     **MR. BOLAND:**  I comment about why this is

18  spoliation for which they should suffer some sanction, and

19  that is because now they have an argument to this Court that

20  they can make and to a jury that they can make that without

21  even saying anything, just handing the document to the jury or

22  even to this Court for review would cause the Court to say,

23  "wow, this looks like somebody is trying to manipulate this

24  document.  It doesn't look like documents the Court has

25  regularly signed with -- that are brown on one side or yellow

1 and white on the other side."

2          **MAGISTRATE JUDGE FOSCHIO:**  They can make a lot

3 of arguments.

4          **MR. BOLAND:**   It's not the argument, Your Honor.

5 It's the document itself gives off the impression that it has

6 been doctored for some purpose and that's what they're arguing

7 has happened.

8          And our position is they shouldn't be entitled to

9 argue that --

10          **MAGISTRATE JUDGE FOSCHIO:**  Is that spoliation or is

11 that something else?

12          **MR. BOLAND:**   Absolutely.  They've damaged the

13 document to give themselves an argument they otherwise

14 wouldn't have, yes, that's absolutely spoliation.

15          They've taken the color off the front of it, which

16 they're not entitled to do, that was there when they got it

17 and now they're going to turn around and say that --

18          **MAGISTRATE JUDGE FOSCHIO:**  Do you have any cases

19 that say something like that?

20          **MR. BOLAND:**   That say something like what, Your

21 Honor?

22          **MAGISTRATE JUDGE FOSCHIO:**  That -- that -- that

23 altering the color of a document is spoliation of the

24 document.

25          **MR. BOLAND:**   Well, I would say in the reverse,

1  Your Honor, I think it's their burden to show how they're

2  entitled to alter a document and it's not considered -- the

3  key document in this case, and it's not considered spoliation

4  in this way.

5          **MAGISTRATE JUDGE FOSCHIO:**  Isn't it -- isn't it --

6  isn't this discoloration an evidentiary issue arguably now

7  that it's in the case that goes to the authenticity of the

8  document?

9          And isn't that the ultimate question for the jury?

10         **MR. BOLAND:**  You're zooming right in on it, Your

11 Honor.  It's now an authenticity issue that they have inserted

12 into the document that they're going to argue my client put

13 into the document.  There's the unfairness.

14         How are they entitled to alter --

15         **MAGISTRATE JUDGE FOSCHIO:**  Well, can't you argue

16 that to the jury?

17         **MR. BOLAND:**  Your Honor, the facts are --

18         **MAGISTRATE JUDGE FOSCHIO:**  Won't you argue it to

19 the jury if the case goes to trial?

20         **MR. BOLAND:**  If the Court -- if the Court won't

21 direct the jury that it was damaged in their possession, I'll

22 be forced to.

23         And now look where I'm at.  I'm not in the position

24 I was when we gave them the document.  I'm now behind -- I'm

25 unfairly pushed back a little bit on authenticity because they

1  can argue look at the yellow.  He did it.  When we know from

2  their evidence they did it.

3         **MAGISTRATE JUDGE FOSCHIO:**  Isn't the authenticity

4  of the document ultimately for the jury?

5         **MR. BOLAND:**  Absolutely.

6         **MAGISTRATE JUDGE FOSCHIO:**  Isn't the authenticity

7  of the document ultimately for the jury?

8         **MR. BOLAND:**  It is, Your Honor, but not based on

9  yellowing.  They can't be allowed to say the yellowing is

10 something to take into an account about authenticity when they

11 put it there.  That's the -- that is the fraud that's -- not

12 fraud.

13        That's the unfairness that's going on here.

14        **MAGISTRATE JUDGE FOSCHIO:**  But isn't it obvious

15 from the papers that there's going to be two sides to this

16 story?

17        **MR. BOLAND:**  Respectfully, Your Honor, their own

18 images show otherwise.  There's not two sides.

19        If you look at the exhibit that Mr. Tytell and Mr.

20 Lesnevich submitted and I excerpted it in my papers, Mr.

21 Tytell, their expert, took a picture of the document early on,

22 it looks roughly white.

23        24 hours later their expert took a picture, it now

24 looks yellow.  There's no debate here.  Those are their

25 experts telling this Court we damaged this document.

1              So to say it's kind of a toss up, nobody really

2     knows how it really happened, is for them to ignore the

3     evidence.  It's their evidence that tells us, along with the

4     videotape, along with Mr. Argentieri, along with the silence

5     of every one of their representatives that was in that room

6     who are not coming forward to say the document was all brown

7     and yellow like it looks now when we first got it.  None of

8     them are saying that.

9              **MAGISTRATE JUDGE FOSCHIO:**  Well, you're prepared

10    to -- you are prepared to prove just that point.  That's what

11    your papers show and it doesn't seem to me that you're

12    prejudiced in any way from doing so.

13             They will put their proof in on the issue.  The

14    trial judge, whoever it is, will decide -- will give an

15    instruction at the parties' request as to the role of the jury

16    and how they're to evaluate such evidence, which will be

17    primarily based on expert opinion, no doubt.

18             And the jury will consider it among other factors

19    in whether or not the document is authentic.

20             **MR. BOLAND:**  That's true, Your Honor,  but I

21    think --

22             **MAGISTRATE JUDGE FOSCHIO:**  And to ask the Court on

23    a motion like this, which is essentially like an *in limine*

24    motion to decide a critical issue in the case and take those

25    issues away from the trier of the fact or to -- or to dispose

1 of them without a motion to which the issue relates, i.e., a

2 motion to dismiss based on fraud or whatever, is to me quite

3 extravagant.

4       **MR. BOLAND:**  The evidence here --

5       **MAGISTRATE JUDGE FOSCHIO:**  Don't you think?

6       **MR. BOLAND:**  -- makes it not extravagant at all

7 because it's all one-sided.  It's very easy for the Court to

8 look at their own experts' images and say, "you guys yellowed

9 the document, I'm not going to permit you to say to a jury or

10 to the Court in a motion to dismiss the yellowing is a factor

11 you should consider to dismiss this case against my client.

12 He did it."

13       That's just unfair.  They put the yellowing in

14 there and now they can argue --

15       **MAGISTRATE JUDGE FOSCHIO:**  They're going to have to

16 show that your client was responsible for the yellowing in

17 order for your argument to make sense, correct?

18       **MR. BOLAND:**  For their argument to make sense,

19 yes.

20       **MAGISTRATE JUDGE FOSCHIO:**  For your argument to

21 make sense that you're prejudiced, that you were pushed back

22 because if the Court -- if I refuse to find that this is

23 spoliation, now you have to do something with this.

24       But you don't have to do anything with it until

25 they attempt to attribute the yellowing to Mr. Ceglia.

1              **MR. BOLAND:**   And that's our point.

2              **MAGISTRATE JUDGE FOSCHIO:**  I'm not sure they

3  have -- they have successfully established that.  That's one

4  thing I'm curious to see, exactly how did Mr. Ceglia

5  accomplish this feat.

6              **MR. BOLAND:**   Maybe this can be alleviated this

7  way, Your Honor.  I have a motion prepared, which I'm not

8  intending to file at any point --

9              **MAGISTRATE JUDGE FOSCHIO:**  No, no, stick with this

10  -- stick with this issue.

11              **MR. BOLAND:**  It relates to this, yes.

12              If the Court would be willing to give us a 60 day

13  window after they submit their expert reports so we can

14  perhaps do discovery, et cetera --

15              **MAGISTRATE JUDGE FOSCHIO:**  Excuse me.  Don't you

16  agree that they have not established that Mr. Ceglia is

17  responsible for the -- for any discoloration?

18              **MR. BOLAND:**  I agree to that, and I agree we've

19  established they did it --

20              **MAGISTRATE JUDGE FOSCHIO:**  Well --

21              **MR. BOLAND:**  -- both of those.

22              **MAGISTRATE JUDGE FOSCHIO:**   -- if it turns out that

23  they can't attribute the discoloration to Mr. Ceglia, how does

24  the issue even get provoked in front of the jury?

25              **MR. BOLAND:**   Here's how it gets provoked.  If

1   I hand -- if we hand jurors a copy of this document now and

2   say nothing and the Court orders both parties "you can't say

3   anything about its yellowed nature," they're going to look at

4   it and flip it over and immediately assume something's wrong

5   with this, this doesn't look authentic because I've never

6   signed a document that's yellow on one side.

7          And they put the yellow there, there should be an

8   instruction to the jury.

9          **MAGISTRATE JUDGE FOSCHIO:**  Actually, actually I

10  think most people would assume it works to your favor because

11  a juror looking at the document would think, well, it's --

12  it's -- it's not fresh white paper out of the -- out of a -- a

13  box.  It's been around for eight years, you know, it's bound

14  to have been discolored.

15         **MR. BOLAND:**   I agree with that except for this,

16  Your Honor, the point is it's only yellow on one side.  So now

17  it doesn't look like it's been laying on the front lawn like a

18  newspaper.  It's on one side only.  Something doesn't look

19  right.

20         And the jurors are immediately going to say, "hmm,

21  I don't know about this plaintiff's case because the document

22  looks funny already."

23         And they caused it to look that way and they're

24  going to get the benefit even if they're not allowed to argue

25  it.

1          **MAGISTRATE JUDGE FOSCHIO:**  Well, you could ask for

2    a curative instruction.

3          **MR. BOLAND:**   That's what I'm asking for in our

4    motion.

5          **MAGISTRATE JUDGE FOSCHIO:**  Well, that's exactly --

6    but we're not here for trial.  I'm not authorized to make

7    *in limine* motions -- or to consider *in limine* motions.

8          **MR. BOLAND:**  But I'm also --

9          **MAGISTRATE JUDGE FOSCHIO:**  Or to -- or to direct

10   the district judge what his cautionary instruction should

11   sound like.

12         **MR. BOLAND:**  But I'm also asking because the Court

13   will entertain, if they file it, a motion to dismiss on

14   fraud --

15         **MAGISTRATE JUDGE FOSCHIO:**  Look, I'm here to decide

16   whether or not there's been spoliation, and when do we talk

17   about whether or not -- assume for the sake of discussion that

18   discoloration in law is a form of spoliation -- and I'm not

19   convinced that it is -- I'm thinking it more goes to the -- to

20   the weight of the evidence and that any potential or

21   misunderstanding by the jury can be resolved with a curative

22   instruction by -- a joint curative instruction, but certainly

23   one by you, that absent their proof that this is part of the

24   fraud, which the question whether they've got the proof is to

25   be determined, that -- that it can in any way, shape or form

1   be viewed as a form of spoliation.

2          The document is all there.  It's intact.  The

3   signatures are there.  The text is complete.  No pages have

4   been torn in half or text has not been rendered illegible.  I

5   just -- I'm wondering whether we're talking about a horse, you

6   know, a -- a different breed of cat here, so to speak.

7          **MR. BOLAND:**  Well, I don't want to --

8          **MAGISTRATE JUDGE FOSCHIO:**  But tell me -- but tell

9   me about the negligence.  I understand about the *DeGeorge*

10  case, I understand about -- we have to be careful here, assume

11  for the sake of discussion that this is some sort of a

12  spoliation issue.

13         Where -- where is there any evidence of any intent

14  or -- or -- or negligence by the defendant in -- in conducting

15  the test?  I mean, the UV equipment is standard.  It's

16  advertised.  Your own experts advertise it's non destructive.

17         I just fail to see where there's anything in here

18  that suggests that they did anything wrong.

19         **MR. BOLAND:**  Here's -- here's where it is, Your

20  Honor.  They --

21         **MAGISTRATE JUDGE FOSCHIO:**  We'll talk about the

22  fingerprint issue a little bit later.  But I'm just talking

23  about it has to be the UV, if anything, correct?  Yes?

24         **MR. BOLAND:**  Yes, it's the UV light.  Because as --

25  exactly.  Here's where the gross negligence or intentionality

1  comes in --

2          **MAGISTRATE JUDGE FOSCHIO:**  No, no.  We know that

3  that's not the test under the *DeGeorge* case.  It's negligence,

4  that's what the Second Circuit reversed Judge Arterton on.

5          **MR. BOLAND:**  Correct, Your Honor.  And if you

6  found intentional, that's better than negligence, so it's

7  gross negligence.

8          **MAGISTRATE JUDGE FOSCHIO:**  Yeah, but it's one of

9  the two, you know.

10          **MR. BOLAND:**  And the negligence -- okay, the

11  negligence -- okay.  We'll use that term --

12          **MAGISTRATE JUDGE FOSCHIO:**  You have no evidence

13  that it was intentionally done, do you?

14          **MR. BOLAND:**  Only circumstantial, Your Honor, and

15  that is --

16          **MAGISTRATE JUDGE FOSCHIO:**  What's that?

17          **MR. BOLAND:**  I'll tell you.  We had qualified

18  experts, allegedly, who our experts observed as they said in

19  their declarations.  Exposure of this document to UV light in

20  normal testing doesn't damage it.

21          Our experts say the same thing as their experts.

22  Typical UV light from these machines, no problem.  Just like a

23  typical walk from here to the parking garage in the sunlight,

24  not going to hurt you.

25          If you lay out on a summer day for eight hours in

1  the sunlight, now you might have a problem.  It's the

2  overexposure which they don't address.

3          **MAGISTRATE JUDGE FOSCHIO:**  Define "overexposure"

4  in the context of examining a challenged document.

5          **MR. BOLAND:**  Enough to make it yellow on one side I

6  think qualifies.  That's it.  And the hours of overexposure

7  which the videotape reveals, and we detailed just some of it

8  in our exhibit to our papers, and our experts observed them

9  overexposing the document.

10          And here's the key, Your Honor: None of their

11  experts said we didn't overexpose it.  All they said was

12  normal exposure will never hurt a document.

13          Well, we agree with that just like a normal walk in

14  the sun's not going to give you sunburn.  That's -- they're

15  running from the issue.  Not one of their experts came forward

16  with his credibility on the line and said the hours and hours

17  over four days that we did repeated tests, more than have ever

18  been done on a document like this, according to both our

19  experts, that wasn't enough overexposure to UV light to damage

20  the document.

21          That's simply false because the document tells you

22  they overexposed it.  That's negligence.  They should have

23  gone in there, all huddled around, run the tests a couple of

24  times so that they're all satisfied and go on.

25          Instead, they had expert after expert come in each

1  day and do all the tests over again and over again and over

2  again.  And that's what it is --

3      **MAGISTRATE JUDGE FOSCHIO:**  Was the plaintiff

4  represented during the testing process?

5      **MR. BOLAND:**  The plaintiff was represented and was

6  excluded from getting anywhere near testing.

7      **MAGISTRATE JUDGE FOSCHIO:**   Well, they weren't in

8  the room?

9      **MR. BOLAND:**  They were in the room and sometimes

10  not in the room, but they were shooed away, as Mr. Argentieri

11  indicated, by lawyers saying, "Get away from our experts.  You

12  can't even know what our machines are set for."

13      **MAGISTRATE JUDGE FOSCHIO:**  Well, who was -- who was

14  present during all of the hours of UV exposure that we're

15  talking about on behalf of the plaintiff?

16      **MR. BOLAND:**  My recollection is Mr. Argentieri was

17  there for the entirety of the four days.

18      **MAGISTRATE JUDGE FOSCHIO:**  Mm-hmm.

19      **MR. BOLAND:**  And then our experts, Mr. Stewart and

20  Mr. Blanco, I don't recall precisely how many days they were

21  there, but I don't believe they were there all four days, the

22  two of them.

23      **MAGISTRATE JUDGE FOSCHIO:**  So they were aware that

24  the document was being subjected to UV testing?

25      **MR. BOLAND:**  Correct.  And in their opinion they

1    were saying, as their declarations indicate, they were talking

2    to plaintiff's counsel saying, "What are they doing?  They're

3    going way overboard on this document."

4            But any attempt Mr. Argentieri made to go over and

5    inquire, "What are you doing, et cetera," lawyers like

6    Ms. Aycock said, "Get out of here, don't come near the

7    document, you're not welcome," and backed them off the room.

8            **MAGISTRATE JUDGE FOSCHIO:**  Did they object to

9    the -- did they express an objection to the over -- potential

10   for overexposure?

11           **MR. BOLAND:**  No one expressed or called the Court

12   or expressed any objection.

13           **MAGISTRATE JUDGE FOSCHIO:**  Well, was there any

14   objection expressed to the experts or Ms. Aycock or who --

15   whatever lawyer was representing the defendant?

16           **MR. BOLAND:**  Mr. Argentieri approached experts and

17   lawyers on a couple of occasions in that room and was told,

18   "You can't even look over their shoulder.  Get away from us."

19           So he didn't have any opportunity to communicate

20   with any of them because they cut him off from that.  They

21   wouldn't even tell them what they were doing.

22           **MAGISTRATE JUDGE FOSCHIO:**  He couldn't shout out

23   and say, you know, "You're destroying the document with

24   excessive UV radiation, don't you know it?  You're spoliating

25   the document."

1          **MR. BOLAND:**  He didn't shout that out, Your Honor,

2    and it was discovered by the time they got to Chicago that it

3    had been damaged.

4          **MAGISTRATE JUDGE FOSCHIO:**  When we negotiated with

5    Mr. Lake for the protocols for testing, I don't recall this

6    issue being broached by Mr. Lake.

7          **MR. BOLAND:**  But prior to the experts testing --

8          **MAGISTRATE JUDGE FOSCHIO:**  It's not in the

9    protocol, as I recall.

10         **MR. BOLAND:**  It isn't, Your Honor.  It's very -- it

11   wouldn't be reasonable for an attorney to expect that Facebook

12   would hire experts that would treat this like college kids at

13   a party.

14         **MAGISTRATE JUDGE FOSCHIO:**  That didn't -- know what

15   they were doing.  They didn't know what they were doing.

16         **MR. BOLAND:**  They were throwing the document on top

17   of computers, they were sticking their fingers on it, which

18   we'll talk about later.

19         **MAGISTRATE JUDGE FOSCHIO:**  Well, not too much later

20   I hope.

21         **MR. BOLAND:**  And now they're overexposing it.

22   They're overexposing it.  So that's really the issue.  They

23   don't dodge overexposure.  They're essentially acknowledging

24   it.

25         **MAGISTRATE JUDGE FOSCHIO:**  You don't concede at all

1   that the plaintiff could be perceived as having acquiesced in

2   the testing procedure?

3               **MR. BOLAND:**  To the testing procedure, yes.  To

4   overexposing the document, never.

5               **MAGISTRATE JUDGE FOSCHIO:**  Including the --

6   including the UV testing.

7               **MR. BOLAND:**  He consented to the UV testing, but

8   not excessive UV testing which they obviously did.  I mean, he

9   would never consent to that.  There's no way he said, "Go

10  ahead, light that thing up for eight hours a day under UV

11  light, I don't care," no.

12              **MAGISTRATE JUDGE FOSCHIO:**  There was no point in

13  time during the scenario that if there was serious concern

14  about potential spoliation, as you -- as you assert, that the

15  Court could not have been contacted, there could have been a

16  demand to cease and desist on the excessive UV testing?

17              **MR. BOLAND:**  There could have been, Your Honor.

18              **MAGISTRATE JUDGE FOSCHIO:**  But there wasn't?

19              **MR. BOLAND:**  There wasn't.  And here's an important

20  timing issue with that.  It was 24 hours later, based on their

21  experts' documents, the document was already ruined.

22              So Mr. Argentieri had a day of watching it be

23  analyzed, he had never done this before, he had never been

24  involved in document analysis --

25              **MAGISTRATE JUDGE FOSCHIO:**  Whose problem is that?

1          **MR. BOLAND:**  I guess he didn't pick clients who

2     have contract cases like this.  I don't know.  I don't know --

3     I don't know why he has the problem of never being involved in

4     these.

5          **MAGISTRATE JUDGE FOSCHIO:**  I mean, certainly the

6     defendant can't be faulted in some way for having

7     Mr. Argentieri, who didn't understand the potential

8     implications of excessive UV testing on a billion dollar

9     document, for being the only representative of the plaintiff.

10         **MR. BOLAND:**  Your Honor, he credited their experts

11    with some ability to do their job correctly.  That's not

12    unreasonable for him to say, "I assume they know what they're

13    doing," instead of looking over their shoulder.

14         **MAGISTRATE JUDGE FOSCHIO:**  How about your experts?

15    Your experts simply expressed something to Mr. Argentieri, but

16    not to Mr. -- what was his name?  Tynell?

17         **MR. BOLAND:**   Tytell.

18         **MAGISTRATE JUDGE FOSCHIO:**  Tytell.

19         **MR. BOLAND:**   Yes.  They weren't permitted to.

20    They were told to sit mute in the corner and don't interact.

21    So they're not lawyers, they don't know what the Court's order

22    is.  They just sat there on their hands, made comments to

23    plaintiff's counsel and observed.  And they were aghast at

24    what these so-called experts were doing to this document.

25              And we know why:  They damaged it.

1           **MAGISTRATE JUDGE FOSCHIO:**  That was back in July?

2           **MR. BOLAND:**  Was back in July, 14th through the

3   19th.  There was a couple days off there.

4           **MAGISTRATE JUDGE FOSCHIO:**  When was your motion

5   made?

6           **MR. BOLAND:**  Regarding the spoliation?  I don't

7   recall the date.  Probably six -- oh, actually, I do recall

8   the date.  November 1st it was filed.

9           **MAGISTRATE JUDGE FOSCHIO:**  Took you several months

10  to figure out you had a problem?

11          **MR. BOLAND:**  Well, I can't speak for the other

12  lawyers.  As soon as I saw the videotape, which showed the

13  document white and I knew it was now yellow, it was pretty

14  obvious who had done it at that point.

15          I moved quickly as soon as I discovered that

16  information.

17          **MAGISTRATE JUDGE FOSCHIO:**  That's it on spoliation?

18          **MR. BOLAND:**  In addition to what's in my papers,

19  Your Honor, yes.

20          **MAGISTRATE JUDGE FOSCHIO:**  But that's really the

21  sum and substance of it, isn't it?

22          **MR. BOLAND:**  That's correct, Your Honor.  I think

23  there's damage to that document that they're going to take

24  advantage of in this trial when we get in front of a jury and

25  I think that's unfair.

1          **MAGISTRATE JUDGE FOSCHIO:**  The UV equipment is

2    standard?

3          **MR. BOLAND:**  The equipment they used I think is --

4    our experts would agree is the standard equipment used.

5          **MAGISTRATE JUDGE FOSCHIO:**  Do you know of any

6    operating manuals that warn against excessive UV exposure in

7    testing a subject document?

8          **MR. BOLAND:**  Actually, yes, we submitted exhibits

9    to our experts' declarations, which detailed articles that

10   tested excessive UV and what it does -- the damage it does to

11   documents.  So their experts were aware.

12         **MAGISTRATE JUDGE FOSCHIO:**  But I'm talking about

13   using this particular piece of equipment that experts use

14   routinely in this line of work.

15         **MR. BOLAND:**  I'm not aware of an operating manual

16   that warns against it, but the general field of document

17   examination, they all know excessive UV exposure does this

18   kind of damage.

19         **MAGISTRATE JUDGE FOSCHIO:**  Using a standard

20   industry accepted testing instrument such as the one that was

21   used in this case?

22         **MR. BOLAND:**  Absolutely, using the sunlight, using

23   a light you buy from Walmart, any UV exposure that's excessive

24   is going to cause this to happen.  Doesn't matter --

25         **MAGISTRATE JUDGE FOSCHIO:**  Well, sunlight is

1  sunlight, I have no idea what the UV device is in the testing

2  equipment that's at issue here.

3      **MR. BOLAND:**  And neither do we actually know how

4  high intensity bulb they used or what its settings were.  They

5  wouldn't allow us to know that.

6      **MAGISTRATE JUDGE FOSCHIO:**  Well, how about your

7  experts?  Don't they know?

8      **MR. BOLAND:**  Well, the bulb that can be inside that

9  device, the UV light source, can be multiple different ones

10  you can stick in there and you can use a computer to set its

11  intensity.  And we weren't allowed access to any of those

12  settings.  They wouldn't tell our experts or anyone what they

13  were doing.  So we don't know that.

14      **MAGISTRATE JUDGE FOSCHIO:**  Have you completed your

15  testing of the document?

16      **MR. BOLAND:**  As far as the stuff that would require

17  a UV machine, yes, I believe we've concluded our testing.

18  There might be some further ink testing that's still going on,

19  but I don't think we need to put it in those machines anymore

20  and I don't know if it would really help at this point because

21  of the damage.

22      But I can confirm that with our experts.

23      **MAGISTRATE JUDGE FOSCHIO:**  You're not sure?  I

24  mean --

25      **MR. BOLAND:**  I don't know of any, yeah.

1            **MAGISTRATE JUDGE FOSCHIO:**   -- to your knowledge the

2   document is still being tested by the plaintiff's experts?

3            **MR. BOLAND:**   In what way?   No, it's just --

4            **MAGISTRATE JUDGE FOSCHIO:**   In any way.

5            **MR. BOLAND:**   -- it's just being held.   It's not

6   being tested.

7            **MAGISTRATE JUDGE FOSCHIO:**   Okay.

8            **MR. BOLAND:**   It's just being held.

9            **MAGISTRATE JUDGE FOSCHIO:**   Well, did your experts

10  say that their ability to test the document to determine its

11  authenticity was impaired because of the discoloration

12  problem?

13           **MR. BOLAND:**   One of our experts says that it would

14  impair some ink testing.   The other one thinks that maybe we

15  could still -- it's still -- one of our experts says that the

16  condition of the document that was brought on by the

17  defendants' conduct now prohibits some ink testing.

18           The other expert says he thinks, and this is how

19  these experts are in this world, he might be able to still

20  complete accurately to a *Daubert* standard some of the ink

21  testing.   We don't know yet.

22           We're kind of waiting for these motions to work

23  their way out and then we're going to decide what to do from

24  there because, frankly, at this point we might have to just at

25  least inform the Court and the defendants what testing we

1    intend to do because of the results being messed up from this

2    treatment of the document that they gave.

3           And, Your Honor, it's not only the yellowing, but

4    you saw the video clips we submitted.  It's the casual way

5    these experts handled that document.  Showed no respect for

6    the gravity of what it means to this case, which leads us to

7    negligence and gross negligence.

8           Nowhere in any of their manuals does it say set

9    this on top of a computer, stick it on the table and put your

10   hands on it.  They just had no respect for it, so that's what

11   led us to think they can't be bad experts that are this bad,

12   this must be intentional or at least gross negligence to

13   behave this way with what the Court has correctly said is a

14   billion dollar document.

15           **MAGISTRATE JUDGE FOSCHIO:**  And then some.

16           **MR. BOLAND:**  Yes, and then some.

17           **MAGISTRATE JUDGE FOSCHIO:**  All right.

18           **MR. BOLAND:**  Thank you.

19           **MAGISTRATE JUDGE FOSCHIO:**  Thank you.

20           **MR. SNYDER:**  Your Honor --

21           **MAGISTRATE JUDGE FOSCHIO:**  Is this spoliation?

22           **MR. SNYDER:**  Your Honor, I was -- I was -- I was --

23   I was taught by my mentors to not get angry in court and --

24           **MAGISTRATE JUDGE FOSCHIO:**  You had good mentors.

25   You were taught well.

1          **MR. SNYDER:**  In this instance -- yes, so I'm going

2    to -- I'm going to restrain my -- my -- my feelings and simply

3    tell the Court that what you just heard is outrageous, and I

4    will demonstrate that what Mr. Boland told you is knowingly

5    outrageous.

6          Let me tell you, Your Honor --

7          **MAGISTRATE JUDGE FOSCHIO:**  First of all, is it

8    spoliation?

9          **MR. SNYDER:**  What this plaintiff did to the

10   document before it was produced for inspection, before it was

11   produced for inspection, before our experts ever touched it,

12   or subjected it to ultraviolet rays, before they ever

13   conducted any tests on it, what this plaintiff and/or persons

14   acting in concert with him did to this original document,

15   before we ever saw it was spoliation.

16          Because what was done to the document before we

17   ever saw it or tested it was the ink was faded by the

18   plaintiff and/or others acting in concert with him --

19          **MAGISTRATE JUDGE FOSCHIO:**  Would you just walk me

20   through -- I didn't -- I didn't want to jump ahead or --

21          **MR. SNYDER:**  Let me --

22          **MAGISTRATE JUDGE FOSCHIO:**  -- or interfere with

23   Mr. Boland's presentation.  The complaint was filed -- the

24   date again in June or July --

25          **MR. SNYDER:**  The complaint was filed in July of --

1    June of 2010.

2              **MAGISTRATE JUDGE FOSCHIO:**  Right.

3              **MR. SNYDER:**  And the sequence of events is in

4    January 2011 --

5              **MAGISTRATE JUDGE FOSCHIO:**  Did that --

6              **MR. SNYDER:**  -- the plaintiff's own expert, Valery

7    Aginsky, described the ink on page 1 --

8              **MAGISTRATE JUDGE FOSCHIO:**  No, no, just -- just

9    back up.  The complaint was filed with the document.

10             **MR. SNYDER:**  Yes.

11             **MAGISTRATE JUDGE FOSCHIO:**  There came a point in

12   time when the document was subjected to a high resolution or

13   high-density photograph.

14             **MR. SNYDER:**  That was true -- yes, can I give Your

15   Honor this chronology?  It will take one --

16             **MAGISTRATE JUDGE FOSCHIO:**  I'm just trying to

17   understand, yes.

18             **MR. SNYDER:**  If you'll bear with me I'll give it to

19   you on a silver platter.

20             **MAGISTRATE JUDGE FOSCHIO:**  Good, good.  It's

21   important, I think, for Mr. Boland --

22             **MR. SNYDER:**  Yes.

23             **MAGISTRATE JUDGE FOSCHIO:**  -- for some reason I

24   think when I talked about the clash of opinion as to who

25   spoliated when --

1          **MAGISTRATE JUDGE FOSCHIO:**  There's no clash of --

2    let me just say, Your Honor, first -- can I just start from

3    the outset before we get to the merits?

4          **MAGISTRATE JUDGE FOSCHIO:**  Go ahead.  All right.

5          **MR. SNYDER:**  It's very important I think to frame

6    this.

7          **MAGISTRATE JUDGE FOSCHIO:**  Go ahead.

8          **MR. SNYDER:**  The very purpose of the expedited

9    discovery orders entered by this Court and upheld by the

10   district judge is to enable defendants to uncover evidence of

11   plaintiff's fraud and to present that evidence to the Court.

12         Mr. Boland casually says, I think, in disrespect of

13   this process, that this is "one-sided discovery  absent any

14   evidence."

15         If that were true, Your Honor, and Judge Arcara

16   would have acted lawlessly in issuing the order that was

17   issued because that order was issued on July 1st and, again,

18   on -- the second order was issued in -- in August?

19         **MS. AYCOCK:**  August 18th.

20         **MR. SNYDER:**   August 18th based on substantial

21   evidence of fraud.

22         **MAGISTRATE JUDGE FOSCHIO:**  Well --

23         **MR. SNYDER:**  And so -- so the notion that we are in

24   a "one-sided discovery process, absent any evidence" is

25   contemptuous of the process.

1              Moreover --

2              **MAGISTRATE JUDGE FOSCHIO:**  It is one-sided.

3              **MR. SNYDER:**  Rightly so based on the record before

4  this Court, based on substantial authority --

5              **MAGISTRATE JUDGE FOSCHIO:**  Which isn't necessarily

6  evidence.

7              **MR. SNYDER:**  Well, based on the -- based on the

8  record before this Court, there was ample basis for issuing

9  the order, as Your Honor and Judge Arcara both held.

10             What plaintiff is now asking this Court to do --

11             **MAGISTRATE JUDGE FOSCHIO:**  Just tell me about how

12 the document, the original document --

13             **MR. SNYDER:**  Yes.

14             **MAGISTRATE JUDGE FOSCHIO:**  -- came to be

15 examined --

16             **MR. SNYDER:**  Yes.

17             **MAGISTRATE JUDGE FOSCHIO:**  -- by any expert --

18             **MR. SNYDER:**  Yes, in January 2011 --

19             **MAGISTRATE JUDGE FOSCHIO:**  -- and --

20             **MR. SNYDER:**  -- the document was sent by the

21 plaintiff to two of his experts.

22             **MAGISTRATE JUDGE FOSCHIO:**  Why?

23             **MR. SNYDER:**  For them to examine it.

24             **MAGISTRATE JUDGE FOSCHIO:**  Why?

25             **MR. SNYDER:**  I don't -- I was not privy to those

1    conversations.

2              **MAGISTRATE JUDGE FOSCHIO:**  How do you know that he

3    did that?

4              **MR. SNYDER:**  Because both experts have sworn to the

5    Court that that is so.

6              Mr. Aginsky --

7              **MAGISTRATE JUDGE FOSCHIO:**  Do we have that in

8    previous filings?

9              **MR. SNYDER:**  Yes, number 66, Mr. Aginsky describes

10   the ink that he -- that on the first page is black ballpoint

11   ink and we know that based on his testimony to this Court.

12   That image of a black ballpoint ink on page 1 was taken in

13   January of 2011.  Dark ink paper that did not appear to be

14   discolored, we have those images.

15             That's what we fought so hard to get, and Mr. Lake

16   and Mr. Ceglia fought us that they didn't want to give us.

17   They didn't want to give it to us, Your Honor, because they

18   knew that the document, which they also didn't want to give us

19   the original copy of to examine, had been tampered with.

20             The reason they fought so hard against those

21   images, the experts' images that Your Honor ordered must be

22   produced to us, is because they knew that those images would

23   be images taken in January 2011 of a pristine document with

24   dark ballpoint ink.

25             **MAGISTRATE JUDGE FOSCHIO:**  And they knew it had

1  been cooked --

2          **MR. SNYDER:**  And they knew that the document --

3          **MAGISTRATE JUDGE FOSCHIO:**  -- or baked?

4          **MR. SNYDER:**  -- that they would have to produce to

5  us in -- the original document had already been cooked.

6          And why had it been cooked?  Because the ink, the

7  ballpoint ink on page 1 was too wet.  So they tried -- they

8  discolored -- they baked it, whether they put it out in the

9  sun or -- our experts will address that when we move to

10  dismiss.

11          They attempted to age the ink.  That was spoliation

12  because they attempted to reduce the probative value,

13  eliminate the probative value of the ink that their experts

14  have sworn to this Court was bold and dark and distinct in

15  January 2011 before we saw hide or hair of the document.

16          So, but what happened Your Honor --

17          **MAGISTRATE JUDGE FOSCHIO:**  Did it -- did it -- did

18  Aginsky explain why he felt it necessary to take a photograph

19  of the document?

20          **MR. SNYDER:**  That's standard operating procedure

21  for experts, Your Honor.

22          **MAGISTRATE JUDGE FOSCHIO:**  Sorry I asked.

23          **MR. SNYDER:**  A document expert, what they love to

24  do with their cameras and --

25          **MAGISTRATE JUDGE FOSCHIO:**  Shame on me.

1          **MR. SNYDER:**  It is standard operating procedure.

2 When an expert receives original evidence, they take an image

3 of it.

4          **MAGISTRATE JUDGE FOSCHIO:**  Did Mr. Aginsky in any

5 way disclose why the plaintiff sought out his assistance in

6 this way at that time?

7          **MR. SNYDER:**  No, Your Honor, but we know for a fact

8 that he had it and a man named -- what's Osborn's first name?

9          **MS. AYCOCK:**  John Paul.

10          **MR. SNYDER:**  John Paul Osborn, a second expert,

11 also got the original document in January of 2011 and took a

12 picture or scan of it.

13          The reason the plaintiff fought so hard in this

14 court, in the old courthouse to hide those original scans from

15 us is they knew that when we compared the original scans to

16 the original -- to the document as it existed in the summer of

17 2011, that they also didn't want to give us for inspection,

18 they knew there would be a glaring, glaring discrepancy.

19          And the reason there is a glaring discrepancy is

20 because the plaintiff and people acting in concert with him

21 and/or, I don't know at this time, subjected the original

22 document to a tampering process for the purpose of -- of -- of

23 taking the ink out of the handwritten portion of the document

24 so it couldn't be date tested.

25          However, Your Honor, we will tell -- we will

1   disclose to this Court when we move to dismiss, as I told Your

2   Honor last time, at an appropriate time when he is in

3   compliance of the orders, that they didn't do a good enough

4   job tampering with the document.

5         **MAGISTRATE JUDGE FOSCHIO:**  Why is that?

6         **MR. SNYDER:**  Because there was sufficient ink left

7   on the faded ink on page 1, which is substantially faded, but

8   there was sufficient ink left, they didn't cook it enough,

9   they didn't try it out enough to determine authoritatively,

10   which we will provide the Court the evidence of when we move

11   to dismiss when he is in compliance pursuant to this Court's

12   procedures, shows that those handwritten interlineations on

13   page 1 of the fraudulent contract are less than two years old.

14         The ink is fewer than two years old, meaning to say

15   it is physically impossible based on forensic, irrefutable,

16   scientific evidence that we will present to the Court when we

17   move to dismiss, that Mark Zuckerberg signed the version of

18   the contract that's attached --

19         **MAGISTRATE JUDGE FOSCHIO:**  That's the first time --

20   that's the first time you've divulged to us the results of

21   your experts testing.

22         **MR. SNYDER:**  I said that last time actually.

23         **MAGISTRATE JUDGE FOSCHIO:**  Did you?

24         **MR. SNYDER:**  Yes, Your Honor.

25         **MAGISTRATE JUDGE FOSCHIO:**  Okay, I missed it.  I'm

1  sorry, I missed it --

2         **MR. SNYDER:**  So what happens then is between

3  January 2011 and July 14th, 2011 --

4         **MAGISTRATE JUDGE FOSCHIO:**  Can I get a word

5  edgewise here for a second?

6         **MR. SNYDER:**  Yes.

7         **MAGISTRATE JUDGE FOSCHIO:**  When -- when your

8  experts -- who was that that first exposed -- when you first

9  saw the document --

10         **MR. SNYDER:**  Let me get to that, Your Honor.

11         **MAGISTRATE JUDGE FOSCHIO:**  You must have been

12  shocked --

13         **MR. SNYDER:**  Let me explain what happened between

14  January 2011 and July 14th, 2011, the work-for-hire document

15  was in the sole possession of plaintiff and Mr. Argentieri and

16  we have the records to show that it was taken in and out of

17  the safe deposit box at various times between January 2011 and

18  July 14th, 2011.

19         Now, I'm going to -- I'm going to go slowly.  At

20  9:11 a.m. on July 14th in Mr. Flynn's office at Harris Beach,

21  just blocks from here, Mr. Argentieri entered the room,

22  removed the document from a U.S. Postal Service envelope, he

23  placed the document on the table in the presence of Mr.

24  Southwell, Mr. Flynn --

25         **MAGISTRATE JUDGE FOSCHIO:**  Use the microphone.

1              **MR. SNYDER:**  Who else was there?  (Inaudible.

2              **MAGISTRATE JUDGE FOSCHIO:**  We need you to use the

3    microphone.

4              **MR. SNYDER:**  Mr. Flynn's colleague, Mr. Southwell,

5    Mr. Benjamin and Ms. Aycock.  And in the presence of our

6    experts.

7              At that moment before we subjected to any testing,

8    it was immediately apparent and then forever preserved in high

9    resolution scans at that moment made by our experts, which we

10   will submit when we move to dismiss, before our experts

11   subjected it to any testing, to any light treatment that the

12   document looked nothing like it had looked when it was sent to

13   his experts in January of 2011.

14             The ink was faded.  The paper was discolored.

15   These scans are conclusive.  It's not a battle of experts.

16   Plaintiff is -- cannot explain the obvious difference in the

17   quality of the ink between January of 2011 and July 14th,

18   2011.

19             I can show them to Your Honor.  They are shocking.

20   So shocking that moments later they called me on the phone and

21   said, "You are not going to believe this," and our experts

22   said, and we'll say to Your Honor in sworn statements, and

23   these are -- these are men who were hired by the United States

24   Secret Service, the United States Government, the United

25   States Justice Department for the most important cases, they

 1  had never seen a document that had been tampered with like

 2  this.

 3          These scans and the alarming transformation that

 4  the document underwent in the hands of the plaintiff and

 5  Mr. Argentieri are corroborated by firsthand witness

 6  testimony --

 7          **MAGISTRATE JUDGE FOSCHIO:**  But you just heard from

 8  Mr. Boland that -- that as a result of your discoloration of

 9  the document that he's behind the eight ball relative to

10  persuading the jury as to its authenticity.

11          Why -- why in the heavens name would a plaintiff

12  inflict such a self-inflicted wound?

13          **MR. SNYDER:**  Well, not all criminals are smart.

14          **MAGISTRATE JUDGE FOSCHIO:**  I mean,  if it's --

15          **MR. SNYDER:**  Not all criminals are smart.  And the

16  cover up, we've learned, oftentimes is more blundering, more

17  self-defeating, and ultimately more damning than the crime

18  itself.

19          The crime here is the litigation fraud being

20  perpetrated on this Court.  The cover up is the destruction of

21  the USB devices and other misconduct in discovery, and the

22  attempt -- and you know why they did it?  Because I said in

23  open court we're going to have experts test the ink and that

24  was a big, big problem for them.

25          Because the ink is wet, because the document was

1   forged within the past two years.  They had to do something

2   with that original ink.

3           When we didn't pay them the quick settlement that

4   they wanted --

5           **MAGISTRATE JUDGE FOSCHIO:**  When did -- when did you

6   tell them -- when --

7           **MR. SNYDER:**  In open court -- in open court when we

8   first moved for expedited discovery.

9           **MAGISTRATE JUDGE FOSCHIO:**  But that was after the

10  cooking process --

11          **MR. SNYDER:**  No.

12          **MAGISTRATE JUDGE FOSCHIO:**  -- by your theory.

13          **MR. SNYDER:**  No, before.

14          **MAGISTRATE JUDGE FOSCHIO:**  Before?

15          **MR. SNYDER:**  Absolutely.

16          **MAGISTRATE JUDGE FOSCHIO:**  Because the in and out

17  from the safe deposit box occurred after the motion was made

18  for expedited discovery?

19          **MR. SNYDER:**  Your Honor, I don't know when they

20  baked the document.

21          **MAGISTRATE JUDGE FOSCHIO:**  Well, you know when it

22  came in and out of the safe deposit box.

23          **MR. SNYDER:**  Here's what I know.  Here's what I

24  know.  They filed the case and demanded a settlement.  They

25  then went to the press and thought that we would pay them --

1  we would pay them off for this shakedown.

2          When that didn't happen, I asked counsel

3  repeatedly, "Show me the original document."  If it's -- prior

4  counsel, Mr. -- Collins, is that his name?  Connors.  Mr.

5  Connors, Mr. -- every one of the seven prior lawyers I would

6  say, "if you have a real document, show it to me."

7          No one wanted to show me the original document.  No

8  one wanted to show me the original document.  And because

9  guess what?  Page 1 had dark bold ink that didn't -- that --

10  that -- that created -- that posed a problem.

11          When they decided to discolor it, I don't know.

12  Maybe we'll never know.  We know it was between -- we know for

13  a fact -- beyond any question, beyond a shadow of a doubt that

14  it was between January of 2011 and prior to our experts

15  getting their hands on it and we will present that evidence to

16  the Court at an appropriate time.

17          **MAGISTRATE JUDGE FOSCHIO:**  But prior to

18  January 2011, you had demanded a -- to observe the original?

19          **MR. SNYDER:**  From day one I said to Mr. Connors

20  when I came into this case, "you know what?  If you have a

21  real document, which you don't because this case is a fraud,

22  show it to me.  I don't believe it."

23          And then when we finally asked this Court to direct

24  them to turn it over, they didn't even want to show it to us.

25          And when they finally had to show it to us, what

1  they showed us was --

2           **MAGISTRATE JUDGE FOSCHIO:**  Did you tell Mr. Connors

3  at that time that you intended to subject it to an ink test?

4           **MR. SNYDER:**  I don't recall, Your Honor.  I don't

5  recall.  But it would have been obvious to a forger that if

6  they had to cough up the original and it was a amateur-ish

7  forgery, which it was, according to our experts, this is an

8  amateur-ish forgery.  This isn't a sophisticated forgery.

9  This isn't like a $20 bill that -- that, you know,

10  organized --

11          **MAGISTRATE JUDGE FOSCHIO:**  We assume Mr. Connors

12  relayed that information to his client.

13          **MR. SNYDER:**  Well, Mr. Connors withdrew from the

14  case, Your Honor.  I don't know.

15          **MAGISTRATE JUDGE FOSCHIO:**  Well, I know that, but

16  before he withdrew we assume that he would have alerted Mr. --

17  Mr. Ceglia that you intended to conduct an ink test?

18          **MR. SNYDER:**  Well, I don't recall if I told Mr.

19  Connors I was conducting an ink test, but he knew that -- he

20  knew as former federal prosecutors that we were going to

21  subject the original document to every forensic analysis

22  available.  And we did.

23          And Mr. Tytell, at document 238, swears to this

24  Court and you can look at his credentials, this is a man

25  who --

1          **MAGISTRATE JUDGE FOSCHIO:**  I've looked at them.

2          **MR. SNYDER:**  -- the ink that I saw on the

3   work-for-hire document on the morning of July 14th was neither

4   black nor of normal density.

5          **MAGISTRATE JUDGE FOSCHIO:**  And it was -- it was --

6          **MR. SNYDER:**  On the morning of July 14th it was

7   neither black nor of normal density.  I observed that the ink

8   on both pages was light, tan or faded brown.  Not at all the

9   sort of appearance that I would expect for black ballpoint ink

10  after eight years of normal storage.

11         Gus Lesnevich and Mr. LaPorte, in documents 239 and

12  240 --

13         **MAGISTRATE JUDGE FOSCHIO:**  Okay, yeah, it -- I know

14  what he said --

15         **MR. SNYDER:**  Okay.  Now, nobody present in the

16  Harris Beach offices --

17         **MAGISTRATE JUDGE FOSCHIO:**  He said it was brittle

18  too, didn't he?

19         **MR. SNYDER:**  Yes.

20         **MAGISTRATE JUDGE FOSCHIO:**  Yes.

21         **MR. SNYDER:**  Now, no one has submitted an affidavit

22  that contradicts this damning evidence, evidence that confirms

23  that Ceglia and those working with him tampered with this

24  evidence.

25         Now, Your Honor, to the issue here is not whether

1    the document was spoliated.

2            **MAGISTRATE JUDGE FOSCHIO:**  Yeah.

3        **MR. SNYDER:**  The question is when and by whom.

4            **MAGISTRATE JUDGE FOSCHIO:**  Yeah.

5        **MR. SNYDER:**  And -- and -- and the ultraviolet

6    testing, which our experts will address the amount of time it

7    was exposed and each kind of testing when we issue our reports

8    and move to dismiss, but it's irrelevant because the document,

9    the ink was already faded when it came out of Mr. Argentieri's

10   envelope.

11           Now, Mr. -- Mr. Boland --

12           **MAGISTRATE JUDGE FOSCHIO:**  Excuse me.  Did Mr.

13   Tytell or any of your other experts indicate either directly

14   or indirectly how they thought the document had come to be

15   discolored?

16       **MR. SNYDER:**  We're going to address that in our --

17   in our motions, but they have various -- there are -- there

18   are -- there are various theories which they think --

19           **MAGISTRATE JUDGE FOSCHIO:**  Did they express them at

20   that time?

21       **MR. SNYDER:**  To me and to counsel, certainly.

22           **MAGISTRATE JUDGE FOSCHIO:**  They did?

23       **MR. SNYDER:**  I was on the phone -- I was on the

24   phone within -- within minutes, ten minutes in New York.

25           "You're never gonna believe what happened?"

1            "What?"

2            "They cooked the document."

3            "Were they that dumb?"

4            "Yes, they were that dumb."

5            Now we know why they fought the scans and now we

6    know why they fought the document the way they fought the

7    document.  It wasn't normal.  It wasn't explicable why they

8    would have fought so hard to produce scans that they gave to

9    their experts in January if this is their billion dollar

10   document.  Show every copy to the world that exists, pile them

11   up, like on a miracle on 34th Street.

12           They come to the Court and they pile examples.

13   Every image of the contract they should pile up and show to

14   the world, but they didn't want the world to see those

15   January scans because that was before they baked the ink.

16           Now, what does Mr. Boland say in response?  Now,

17   it's very telling what he says in response.  What he says is

18   look -- first he pretends the fact that Mr. Southwell, Mr.

19   Benjamin, Ms. Aycock and Mr. Nonkes didn't submit declarations

20   saying that they were shocked and surprised that the

21   discoloration is somehow telling, even though all our experts

22   said obviously that's absurd.  All submit sworn statements to

23   that effect.

24           Next, faced with the irrefutable photographic

25   evidence, he's reduced to relying on a video, which he

1  mischaracterizes.  And we'll present this all to the Court

2  when we move to dismiss.

3           **MAGISTRATE JUDGE FOSCHIO:**  You don't have a copy of

4  that high resolution picture that Mr. --

5           **MR. SNYDER:**  Yes.

6           **MAGISTRATE JUDGE FOSCHIO:**  -- that Mr. Aginsky

7  took --

8           **MR. SNYDER:**  Yes.

9           **MAGISTRATE JUDGE FOSCHIO:**  And -- and --

10          **MR. SNYDER:**  I will hand it to the Court --

11          **MAGISTRATE JUDGE FOSCHIO:**  -- and did your -- did

12  Mr. Tytell took a photograph, a similar photograph of the

13  instrument as it came out of Argentieri's possession?

14          **MR. SNYDER:**  Yes.  If I could -- I have a scan of

15  page 1 by Aginsky on January 13th, 2011, and then a scan by

16  Peter Tytell on July 14th, 2011, at 9:18 a.m., minutes after

17  Mr. Argentieri removed it from his envelope and before the

18  defendants --

19          **MAGISTRATE JUDGE FOSCHIO:**  So what do you have in

20  your hand there that I can look at?  What exactly is this,

21  please, again?

22          **MR. SNYDER:**  Those are as I just described --

23          **MR. BOLAND:**  Your Honor, for the record, if he

24  could just identify what exhibit that is that was attached to

25  what motion?

1          **MR. SNYDER:**  Yes, I will.

2          **MR. BOLAND:**  That would be helpful.

3          **MR. SNYDER:**  I will, I will.  The faded one, the

4  one that was taken by Mr. Tytell on July 14th, 2011, is

5  document 238-2.

6          And -- and we have not yet filed the Aginsky

7  document because this is all --

8          **MAGISTRATE JUDGE FOSCHIO:**  And this document is

9  authenticated by Mr. Aginsky's earlier affidavit to the Court?

10         **MR. SNYDER:**  Yes, Your Honor.

11         **MAGISTRATE JUDGE FOSCHIO:**  Yeah.

12         **MR. SNYDER:**  I'm showing it to Mr. Boland.

13         **MAGISTRATE JUDGE FOSCHIO:**  Well, you know,

14  Mr. Boland, just to take a break here, might not be a bad

15  idea, but if you have the two instruments, do you have them?

16  Do you want to look at them?

17         **MR. BOLAND:**  I have them, Your Honor.

18         **MAGISTRATE JUDGE FOSCHIO:**  There does seem -- I

19  mean, you can perceive it's -- it's -- it's perceivable that

20  there's a shading of the July 14th image --

21         **MR. BOLAND:**  Oh, absolutely, Your Honor.

22         **MAGISTRATE JUDGE FOSCHIO:**  -- by comparison to the

23  January 13th.

24         **MR. BOLAND:**  What's missing is the problem.

25         **MAGISTRATE JUDGE FOSCHIO:**  Oh.

1          **MR. BOLAND:**  You don't know what devices, what

2 settings, software, manipulations.  I mean, you're comparing

3 what software, what settings.  You're comparing apples to

4 truck tires.  They're not -- you can't even compare the two

5 documents.

6          **MAGISTRATE JUDGE FOSCHIO:**  Or bowling pins.

7          **MR. BOLAND:**  Or bowling pins.

8          **MAGISTRATE JUDGE FOSCHIO:**  That's his simile.

9          **MR. BOLAND:**  Mm-hmm.

10          **MR. SNYDER:**  And now we know why Mr. Boland tricked

11 Mr. Gianadda, I understand Your Honor has already ruled on

12 that, to suggesting that the colors changed when he said no

13 such thing.

14          And so -- and as a last resort, Mr. Boland is

15 reduced to relying on Mr. Argentieri's sworn statements,

16 Mr. Argentieri, again, notably not here, not coincidental, I

17 don't think, that he observed the work-for-hire "as two pieces

18 of white paper."

19          Now, Mr. Argentieri's declaration, document 193, is

20 telling and significant for what it omits.  He says nothing

21 about the ink.  Of course, the paper is white, as opposed to

22 blue, green, yellow or orange.

23          Mr. Argentieri, even when he files a reply

24 affidavit, says nothing under oath about the Tytell scans.

25          **MAGISTRATE JUDGE FOSCHIO:**  Right.

1         **MR. SNYDER:**  Or the color of the ink.  And once

2   confronted with the Tytell scans, tellingly, plaintiff's

3   experts Jim Blanco and Larry Stewart are apparently no longer

4   comfortable speculating about the appearance of the document

5   based on a video because the video --

6         **MAGISTRATE JUDGE FOSCHIO:**  Yeah, I understand about

7   the video.

8         **MR. SNYDER:**  -- says nothing, tells us nothing.

9         **MAGISTRATE JUDGE FOSCHIO:**  Okay.

10        **MR. SNYDER:**  You can't make out on the video the

11  appearance of the ink, whether it's bold or faded.

12        **MAGISTRATE JUDGE FOSCHIO:**  Okay.

13        **MR. SNYDER:**  It tells us zero about the ink.

14        **MAGISTRATE JUDGE FOSCHIO:**  I would like to get

15  Mr. Boland on his feet here --

16        **MR. SNYDER:**  Yeah.

17        **MAGISTRATE JUDGE FOSCHIO:**  -- but before we do, we

18  might want to take a stretch break of some sort.  But before

19  we do that, you're familiar with his arguments about comparing

20  apples to bowling pins and so forth based on the potential for

21  software settings and the like that would account for the

22  appearance that there's a substantial different -- difference

23  in coloration or -- or appearance generally in the two

24  documents January vs. July.

25        **MR. SNYDER:**  I don't understand it, Your Honor,

1  because --

2          **MAGISTRATE JUDGE FOSCHIO:**  You don't understand it?

3          **MR. SNYDER:**  No, because every time we find

4  evidence that this plaintiff has committed a fraud on this

5  Court --

6          **MAGISTRATE JUDGE FOSCHIO:**  Okay.

7          **MR. SNYDER:**  -- he has an explanation, we find the

8  contract, the authentic *bona fida* contract and he says we

9  planted it.

10          **MAGISTRATE JUDGE FOSCHIO:**  No, no, you said -- for

11  purposes of taking a break --

12          **MR. SNYDER:**  Yeah.

13          **MAGISTRATE JUDGE FOSCHIO:**  -- I just needed to know

14  that you don't understand it.  We're going to take like a ten

15  minute comfort break.

16          **MR. SNYDER:**  Sure.

17          **MAGISTRATE JUDGE FOSCHIO:**  We've got wonderful

18  rooms, conference rooms, facilities, right, Sandra?  For

19  anybody who wants to use them or outside here also somewhere.

20          **MR. BOLAND:**  To the right, Your Honor.

21          **MAGISTRATE JUDGE FOSCHIO:**  Lavatory facilities and

22  the like.  And we'll take a ten minute comfort break.

23          I just want to break it up --

24          **MR. SNYDER:**  Yeah.

25          **MAGISTRATE JUDGE FOSCHIO:**  -- to move forward so we

1   can get to the Harvard e-mails and the other issues in the

2   case, but I -- because you don't understand what I thought I

3   understood, apparently maybe I misunderstood, the rationale

4   for why it's conceivable that there is the appearance of a

5   difference between the two documents.

6           And we'll let Mr. Boland explain that to you.

7           **MR. SNYDER:**  Before we break can I just say one

8   thing, Your Honor?

9           **MAGISTRATE JUDGE FOSCHIO:**  Sure.

10          **MR. SNYDER:**  We will -- we will on our motion to

11  dismiss, I'm confident, as I predicted before, I told Your

12  Honor I was confident we would test the ink and that we would

13  find that it was new.  We did.

14          I told Your Honor that I had some degree of

15  confidence, hopefully, we find the authentic original

16  contract.  And we did.

17          I have a high degree of confidence that we are --

18          **MAGISTRATE JUDGE FOSCHIO:**  Well, not according to

19  the plaintiff.

20          **MR. SNYDER:**  Right.  Well, right --

21          **MAGISTRATE JUDGE FOSCHIO:**  Somebody -- somebody

22  created that instrument.

23          **MR. SNYDER:**  Right, right.  We'll get to that

24  fantastical, that's not evidence, that's just -- that's just

25  craziness, but I'll get to that in a moment.

1          Evidence is -- is different than -- than -- than

2   fantastical imagination, but let me just say this --

3          **MAGISTRATE JUDGE FOSCHIO:**  But it is a piece of

4   paper --

5          **MR. SNYDER:**  What's that?

6          **MAGISTRATE JUDGE FOSCHIO:**   -- somebody created it.

7   It is a piece of paper.

8          **MR. SNYDER:**  Yeah, we'll get to that in a moment,

9   Your Honor, but my point on this -- this question of -- of the

10  tampering of the document by the plaintiff, the plaintiff is

11  asking this Court to prohibit defendants from presenting that

12  evidence to the Court is just another effort to vacate the

13  expedited discovery order by gutting the primary purpose,

14  which is a search for the truth and a presentation of that

15  evidence to this Court at an appropriate time.

16         And what makes that request to gut the expedited

17  discovery order by precluding us from presenting the very

18  evidence that it was designed to uncover, what makes that

19  request even more audacious is that the plaintiff for six

20  months has been obstructing our effort to get to this

21  evidence, including the critical evidence now that he wants us

22  to be prohibited from presenting to the Court.

23         Every piece of evidence that we found he fought us

24  tooth and nails trying to prevent us from getting.  And then

25  when we get it and it proves his fraud is deeper and broader

1 than -- than even we presented to the Court at the outset, he

2 asked this Court to prevent us, prohibit us from even

3 presenting it to the Court.

4         So we think it should -- the motion -- this motion

5 and the other unripe motions are -- are without any merit, but

6 should be denied, motions are without any merit.

7         And really to debate the merits of them is

8 premature.

9         **MAGISTRATE JUDGE FOSCHIO:**  Well, I just want to

10 make sure you have an opportunity to be heard on it, which you

11 will.  Mr. Boland's going to, after the break, explain why

12 there's a perfectly understandable technical reason for the --

13 what you think is evidence of cooking.

14         And we'll pick up in about ten minutes.  Let's take

15 a break.

16         **THE CLERK:** All rise.

17         (**WHEREUPON**, there was a pause in the proceeding.)

18         **THE CLERK:** All rise.  Please be seated.

19         Back on the record, Ceglia vs. Zuckerberg and

20 Facebook, continuation of oral argument.

21         **MAGISTRATE JUDGE FOSCHIO:**   Now, addressing

22 plaintiff's motion to prohibit the defendant from -- actually,

23 we're -- is it -- it's sanctioning of the defendant for

24 spoliation, Mr. --

25         **MR. BOLAND:**  Yes, Your Honor, and at the end of the

motions, the variety of sanctions --

**MAGISTRATE JUDGE FOSCHIO:**  And prohibiting?

**MR. BOLAND:**  Yes.

**MR. SNYDER:**   You're actually **--** the plaintiff is actually seeking a default judgment or other sanctions against defendants.  The plaintiff is actually seeking a default judgment or other sanctions (inaudible) --

**MAGISTRATE JUDGE FOSCHIO:**  That's right, the first proposed -- the request is prohibiting defendants from disputing the authenticity, which is tantamount to a default.

And then directing the jury to presume that it was likely that usable fingerprints, that would be the sanction for spoliation.

Prohibiting Facebook from mentioning to the jury regarding the fingerprints, yeah.

So, yes, it's a spoliation claim related to the underlying document as a result of improper testing and handling.

And we would like -- two questions.  First, either one of you can answer this, whether or not the January 13th, 2011 high resolution photograph taken by Mr. Aginsky, I believe, was of both sides of the page or just the side with text?

**MR. BOLAND:**  The images I have, Your Honor, from him are just the front of each page.

1          **MAGISTRATE JUDGE FOSCHIO:**  Just the front.

2          **MR. BOLAND:**  I'm not aware of him capturing the

3   back of each page, it may have happened, but I don't have

4   those as an exhibit.

5          **MAGISTRATE JUDGE FOSCHIO:**  Both pages, 1 and 2?

6          **MR. BOLAND:**  Correct, the front of each page is all

7   I have, to my recollection.

8          **MAGISTRATE JUDGE FOSCHIO:**  So --

9          **MR. SNYDER:**  Your Honor, there were two experts.

10  We just gave you one.  It's the same basic image, but they

11  also have an expert, Osborn --

12         **MAGISTRATE JUDGE FOSCHIO:**  Yes.

13         **MR. SNYDER:**  -- who scanned it, the original

14  document, and it looks the same as Aginsky.

15         **MAGISTRATE JUDGE FOSCHIO:**  Just the front page?

16         **MR. SNYDER:**  Yes, Your Honor.

17         **MAGISTRATE JUDGE FOSCHIO:**  Thank you.  Okay.  So

18  you were going to explain to Mr. -- Mr. Boland, so that

19  Mr. Snyder could understand, although I thought I understood,

20  why there could be a dissimilarity in appearance, which has

21  nothing to do with their contention that the document was

22  treated by some improper process applied by the plaintiff

23  during the six-month period before the testing in July.

24         **MR. SNYDER:**  Your Honor, to save time, I understand

25  his argument.

1          **MAGISTRATE JUDGE FOSCHIO:**  Oh.

2          **MR. SNYDER:**  And I understand the words.  It's just

3  nonsense -- it makes no sense and it's -- and it's wrong.

4          So I understand what his argument was.

5          **MAGISTRATE JUDGE FOSCHIO:**  Oh, okay.

6          **MR. SNYDER:**  But what -- and -- and -- and what I

7  meant by saying "I don't understand it" is I can't

8  comprehend -- I can't comprehend its logic for reasons that

9  I'm happy to explain now or -- or at a -- at a future time.

10          **MAGISTRATE JUDGE FOSCHIO:**  Let's just let him

11  reiterate what it is --

12          **MR. BOLAND:**  I can demonstrate it instead of

13  talking.

14          **MAGISTRATE JUDGE FOSCHIO:**  -- tee it up so we can

15  get going and move on.

16          **MR. BOLAND:**  Very well.  Can you have my iPad show

17  up on the screen?  It's just one of the exhibits from the

18  case, Your Honor.

19          **MAGISTRATE JUDGE FOSCHIO:**  Well, that's what we

20  have all this technology for.

21          **MR. BOLAND:** Of course.

22          **MR. SNYDER:**  Perhaps Mr. Boland can tell defense

23  counsel what he's doing or looking at.

24          **MR. BOLAND:**  Exhibit 238-2 that your expert Tytell

25  submitted, his scan taken July 14th, some -- at some point in

1  his testing.

2           And the example here, Your Honor, is scanning

3  devices and the software that operates them have a variety of

4  settings.  So I'm just going to give you an example.  If I

5  zoom in on this ink from Mr. Tytell's scan, it has a degree of

6  fading and then some dark ink off to the side.

7           But if you -- I captured this screen while we were

8  waiting -- or while we had our break, and I just put it into

9  this application Photo Shop, and I'll give you an example of

10  just one setting that you could change on a scanner or on

11  software.

12           Watch what happens to the ink when I change the

13  exposure of this document.  It fades out, meaning if one

14  expert had his exposure setting at one level and the other

15  expert had it at another level, the ink will look more or less

16  faded.

17           There's also things called "filters" that photo

18  editing software can put on there.  And here's an example.

19  Look what happens to the ink when it goes black and white:  It

20  nearly disappears.  And then when you go to this filter, the

21  ink is back again.

22           And then when you go to this filter in the corner,

23  the ink is faded again.  And this is just a few tools on a

24  watered down version of Photo Shop.

25           The point being --

1          **MAGISTRATE JUDGE FOSCHIO:**  We don't know what --

2          **MR. BOLAND:**  -- the scanning devices, you have to

3  have the same settings, the same devices and we have to have

4  proof that we have the native file format of those scans and

5  then compare them.  And if there's a difference, now they

6  might have an argument.

7          But what they're doing here is not comparable.

8          **MAGISTRATE JUDGE FOSCHIO:**  Speculative, you think?

9          **MR. BOLAND:**  Absolutely speculative.  And I'll

10  respond to his argument with even more proof that it's not

11  accurate.

12          **MAGISTRAT JUDGE FOSCHIO:**  And -- and the fact

13  that -- the fact that the background, which is the paper

14  media, is highlighted on this copy that I'm holding in my hand

15  revealing a margin that is white because that's the --

16          **MR. BOLAND:**  I see that, Your Honor.

17          **MAGISTRATE JUDGE FOSCHIO:**  -- the paper vs. the

18  document which is shaded, the shading is also a potential

19  result of different software settings and lighting and so

20  forth?

21          **MR. BOLAND:**  Absolutely.  Because any of these

22  filters, as you're seeing on the screen now, you can actually

23  change the apparent color of the background of the document.

24          So -- well, actually, it's disappearing there.  For

25  example now, this one has put in all kinds of colors on the

1 document, and you can pick red or blue or a light white color

2 and color it any way you want.

3          I'm not trying to imply any expert had some

4 nefarious plan.  It's just merely how they are comfortable

5 setting up their machines can result in a certain type of --

6          **MAGISTRATE JUDGE FOSCHIO:**  Aginsky had one machine

7 with one setting --

8          **MR. BOLAND:**  Correct.

9          **MAGISTRATE JUDGE FOSCHIO:**  -- arguably Tytell had

10 another machine with a different setting?

11          **MR. BOLAND:**  Right.  And the defendants didn't

12 bother to ask the expert for any of that material, and we

13 don't know what their experts' information was.

14          The defendants didn't bother to ask Mr. Aginsky

15 what all those features were, software and settings.

16          **MAGISTRATE JUDGE FOSCHIO:**  Mm-hmm.

17          **MR. BOLAND:**  And we don't know what Mr. Tytell's

18 software, scanning device and settings were either.  So you

19 can't compare.

20          **MAGISTRATE JUDGE FOSCHIO:**  Why is that?

21          **MR. BOLAND:**  They haven't provided that to us.

22          **MAGISTRATE JUDGE FOSCHIO:**  Have you asked for it?

23          **MR. BOLAND:**  Well, they're not -- we're not

24 entitled to until the Court says that Mr. Ceglia's completed

25 his side of the discovery.  We don't get their expert reports.

1            If I'm entitled to ask, I'll ask tomorrow.

2            **MAGISTRATE JUDGE FOSCHIO:**  Well, I'm just saying,

3    I'm trying to decide whether there's a basis for your

4    assertion that there was some spoliation by the defendant.

5            You have the burden, don't you?

6            **MR. BOLAND:**  Yes, Your Honor.  I wasn't aware I was

7    entitled to sort of this targeted discovery type questions.  I

8    will certainly ask them all those details.  I'd love to know.

9            **MAGISTRATE JUDGE FOSCHIO:**  Well, I don't know.  It

10   just strikes me that if there's a rational explanation for

11   this variance, that somebody should have pounced on it and --

12   before making these assertions that spoliation, which is a

13   serious accusation, has occurred.

14           **MR. BOLAND:**  You're right, Your Honor.  They're the

15   ones actually making the ink based spoliation that we're

16   talking about now.  So they've raised this issue.

17           We're not -- we haven't raised the ink has faded

18   issue.  They're claiming that it was faded when they got it.

19   So it's really their burden, they've raised that, not us.

20           **MAGISTRATE JUDGE FOSCHIO:**  Yes, but you -- you are

21   asserting that they spoliated your -- the document after -- as

22   a result of testing.

23           **MR. BOLAND:**  Yes, by yellowing the document.

24           **MAGISTRATE JUDGE FOSCHIO:**  By yellowing the

25   document?

1          **MR. BOLAND:**  Yes.

2          **MAGISTRATE JUDGE FOSCHIO:**  Which -- which

3  presupposes that the document was not already yellowed.

4          **MR. BOLAND:**  Correct.

5          **MAGISTRATE JUDGE FOSCHIO:**  That premise could only

6  be established, if at all, by showing that there was a

7  variation between the image that Tytell took in January -- in

8  July vs. the image that Aginsky took in -- in January.

9          You -- you are telling me that if -- if the

10  settings are different, you -- you just agreed that if the

11  settings were the same and the machine that was used was the

12  same, then they would have an argument.

13          **MR. BOLAND:**  That something happened to the

14  document.

15          **MAGISTRATE JUDGE FOSCHIO:**  Which means that you

16  wouldn't have an argument that spoliation occurred.

17          **MR. BOLAND:**  We would, Your Honor.  We still would

18  actually.

19          **MAGISTRATE JUDGE FOSCHIO:**  Okay.  I guess I want

20  you to tell me what that is.  I missed it probably or read it

21  and it just doesn't click in my mind now.

22          **MR. BOLAND:**  I can actually show --

23          **MAGISTRATE JUDGE FOSCHIO:**  Do you get my drift

24  here?  That -- that if you have the burden and it's -- and

25  that burden can only be established by showing that what

1    appears to be a difference as of July is actually fictitious

2    or factitious because it could be that it's accounted for by

3    these variations --

4              **MR. BOLAND:**  Yes.

5              **MAGISTRATE JUDGE FOSCHIO:**   -- and you haven't made

6    an effort to prove that there were variations, you lose

7    because you didn't meet your burden.  Your major premise is

8    not established.

9              **MR. BOLAND:**  Your Honor, our premise is -- if you

10   look at the exhibits that's up on the screen, this is our

11   263-2, that's our premise right there.

12             On the left you see their experts' image of the

13   Ceglia/Zuckerberg contract taken the first day of testing.

14   And on the right you see their experts' image of the same

15   document taken 24 hours later.

16             **MAGISTRATE JUDGE FOSCHIO:**  Maybe that's an

17   equipment and a change of software settings as well.

18             **MR. BOLAND:**  Right.  And if it is, the defendants

19   would have to say, "Your Honor, Mr. Boland's wrong.  Our

20   experts just screwed up and had all kinds of different

21   settings.  That accounts for the yellow."

22             However, our own experts --

23             **MAGISTRATE JUDGE FOSCHIO:**  You have the burden.

24             **MR. BOLAND:**   I understand that.  Our own experts

25   have imaged the document and that's exactly what it looks

1  like.  The yellow you see there is what our experts have

2  submitted as the condition.

3         **MAGISTRATE JUDGE FOSCHIO:**  Lesnevich is your

4  expert?

5         **MR. BOLAND:**  No, Lesnevich is theirs, but our

6  experts have also taken images of the document and submitted

7  them, connected with declarations.  The document looks

8  yellowed just like you see in their experts' image.

9         And this happened in a 24-hour period while it was

10  in their possession.

11         **MAGISTRATE JUDGE FOSCHIO:**  And -- and -- and did

12  your experts know what the machine and the settings were for,

13  the Tytell comparative?

14         **MR. BOLAND:**  We have no idea what Tytell's scans

15  and what Lesnevich's scans were.  We just know that --

16         **MAGISTRATE JUDGE FOSCHIO:**  Well, there -- well,

17  that's my point.

18         **MR. BOLAND:**  Okay.  They're asserting that's the

19  condition of the document, and we know it's now yellow.  So

20  unless they're going to say Tytell made a mistake and that's

21  not really the condition of the document, then we -- we've met

22  our burden.

23         **MAGISTRATE JUDGE FOSCHIO:**  Well, what about the

24  Lesnevich image?  Couldn't that be the result of a change?

25  Couldn't that be the result of a change in machine and

1  settings as well?

2         **MR. BOLAND:**  It well could be, but it's backed up

3  by our experts who also took scans.  I don't know what their

4  settings were, but they got the same image.  Everyone's

5  getting the same image after 24 hours.

6         That explains it, Your Honor.  Unless we have

7  apples to apples, their arguments really fall apart.

8         **MAGISTRATE JUDGE FOSCHIO:**  Okay.  Well, let's just

9  hear a quick response to that.

10         **MR. SNYDER:**  Your Honor, may I just say that --

11         **MAGISTRATE JUDGE FOSCHIO:**  Do you understand his

12  point now?

13         **MR. SNYDER:**  Yes, I understand it, it's nonsense.

14         **MAGISTRATE JUDGE FOSCHIO:**  It's still not logical

15  to you?

16         **MR. SNYDER:**  It's nonsense.  I'll address the

17  merits in a minute, but my fundamental objection to all of

18  this, Your Honor, is that this is Mr. Boland's effort to

19  hijack, disrupt, interfere with the process that this Court

20  has put in place for expedited discovery and then reporting to

21  the Court on the findings of that expedited discovery.

22         And what he's doing by engaging in this very

23  merits-based discussion about evidence before his client has

24  produced all the evidence to us -- six months of

25  non-compliance is --

1          **MAGISTRATE JUDGE FOSCHIO:**  I know --

2          **MR. SNYDER:**  -- premature -- and so I -- on my -- I

3  object to even -- I -- I -- I respectfully suggest that --

4  Your Honor, I'll address the merits just to complete the

5  record because Your Honor asked, but that this motion and the

6  other motions that go to probe -- prohibiting us from

7  producing evidence should be denied without discussion of the

8  merits at this point as premature, inconsistent and in

9  conflict with the expedited discovery orders, which require

10  defendants to present all the evidence of fraud following the

11  defendants' (sic) compliance with the discovery orders, which

12  he has not yet done.

13          And so --

14          **MAGISTRATE JUDGE FOSCHIO:**  Excuse me, Mr. Snyder,

15  if -- if discoloration is technically a form of spoliation,

16  I'm not convinced that it is, but for the sake of discussion

17  only, if it -- for the sake of discussion only is --

18          **MR. SNYDER:**  Yes.

19          **MAGISTRATE JUDGE FOSCHIO:**  -- say these -- this

20  demonstration by Mr. Boland does or does not *prima facie*

21  establish that something happened over a short period of time

22  while the document was in your experts' hands that resulted

23  in --

24          **MR. SNYDER:**  No, no, no, Your Honor --

25          **MAGISTRATE JUDGE FOSCHIO:**  -- that result in

1    discoloration, your hands that resulted in the discoloration?

2              **MR. SNYDER:**  No, Your Honor.  The evidence before

3    the Court shows that something happened to the document before

4    it was produced to us for which there is no rational

5    explanation.

6              His -- his speculation that settings somehow

7    accounted for the dramatic transformation of the document

8    between January and June is pure conjecture.

9              Aginsky says in his interrogatories that the ink in

10   the Tytell scan looks nothing like the ink that he saw.

11             And our experts, which will tell the Court when we

12   move to dismiss, tried to replicate the appearance of the

13   Aginsky scans with the original document by changing settings

14   and could not replicate it even by changing every setting on

15   the scanner camera known to man.

16             And so all of the information regarding scanners

17   and the image will be presented in our final reports to the

18   Court at the close of expedited discovery, and I respectfully

19   submit that that is the time and place on a complete record,

20   which we do not now have because we're still getting evidence

21   from this plaintiff to present all these issues --

22             **MAGISTRATE JUDGE FOSCHIO:**  So you would -- you

23   would deny without prejudice to renew?

24             **MR. SNYDER:**  I would deny without prejudice for him

25   to make any argument that he wants to make in opposition to

1  any motion we might make in the future.

2          If he wants to argue -- if he continues to argue

3  that somehow --

4          **MAGISTRATE JUDGE FOSCHIO:**  You have an answer to

5  this question about the -- about Mr. Boland's representation

6  that the document was photographed on two different occasions

7  by the plaintiff's expert --

8          **MR. SNYDER:**  Yes, we will establish -- we will --

9          **MAGISTRATE JUDGE FOSCHIO:**  -- and the appearance

10  that's created by his demonstration here just moments ago is

11  that there is a discoloration?

12          **MR. SNYDER:**  We will establish to the Court's

13  complete satisfaction that the document underwent its physical

14  transformation before the defendants had access to it and

15  tested it and not after, yes.  I have full confidence that

16  when we submit our reports --

17          **MAGISTRATE JUDGE FOSCHIO:**  And when you do that,

18  the specifics of his demonstration will fall away?

19          **MR. SNYDER:**  Of course, Your Honor.

20          **MAGISTRATE JUDGE FOSCHIO:**  Well, I don't know.

21          **MR. SNYDER:**  Yes, but -- but -- but -- but what I

22  respectfully suggest is that -- that Mr. Boland is -- is

23  acting out of order and inconsistent with the order to force a

24  discussion on all these issues because what he in effect is

25  getting now is the discovery that he's been seeking from day

1  one.

2          And that is improper because it is his client who

3  has spoliated evidence and refused to turn over, for example,

4  his MSN Microsoft e-mail account, which he still is

5  obstructing Microsoft to give us.

6          So this is in the nature of him getting discovery.

7  It's clever on Mr. Boland's part.  I think these motions

8  should be summarily denied as premature, inconsistent with the

9  order.

10          And if he wants to make all these fantastical

11  arguments under oath pursuant to Rule 11 in response to our

12  motions to dismiss, we welcome it with open arms.

13          **MAGISTRATE JUDGE FOSCHIO:**  Thank you.  All right,

14  is that -- does that complete our discussion of the spoliation

15  argument relative to the discoloration problem with the

16  document?

17          **MR. BOLAND:**  Yes, Your Honor, I believe it does.

18  And in the interest of maybe short-circuiting for the benefit

19  of everyone, the rest of the arguments, I think I -- if the

20  Court -- if the defendants were willing to give Mr. Ceglia --

21  here's his main concern, I think, that these motions underlie

22  all of them, is that they file a motion to dismiss two days

23  from now, and the Court says, "Well, Mr. Boland, you have your

24  14 days to respond and then they get to reply and that's the

25  end of it."

1            And in that motion to dismiss are a host of expert,

2  technical, legal computer issues that the normal briefing

3  period really puts us at a disadvantage because there may be

4  situations, for example, where we want to ask their experts

5  questions.  "How did you arrive at this?  What test did you

6  use?"

7            If the defendants are willing to agree that they

8  submit our expert reports when the Court has determined

9  Mr. Ceglia's done and we get a 60 day period before they can

10  file their motion to dismiss so that we can investigate the

11  genuine nature of this, the testing they did, et cetera and

12  then have a -- an appropriate and fair opportunity to confront

13  what would be a pretty significant motion --

14            **MAGISTRATE JUDGE FOSCHIO:**  How about -- how about

15  60 day or 90 day period after it's filed?

16            **MR. BOLAND:**  That's fine, too, if we had a long --

17            **MAGISTRATE JUDGE FOSCHIO:**  Analogous to summary

18  judgment practice?

19            **MR. BOLAND:**  I think that's fine, Your Honor, a 60

20  or 90 day window in which we would approach the Court if we

21  have good cause to do so to request the opportunity to engage

22  in either interrogatories, requesting evidence from their

23  experts --

24            **MAGISTRATE JUDGE FOSCHIO:**  Depositions.

25            **MR. BOLAND:**  -- depositions.  Questioning

1  everything that they've done to arrive at their conclusions,

2  as I think we're entitled to do.

3          If that were the case, I think we could suspend the

4  ruling on these current pending motions and just deal with

5  that issue and go from there because this is all going to come

6  back up again in the motion to dismiss.

7          We just don't want to be compressed, and that's

8  one of the reasons I filed these to say we want it done now.

9          **MAGISTRATE JUDGE FOSCHIO:**  But spoliation claims

10  ride on a different set of rails.

11          **MR. BOLAND:**  It is.

12          **MAGISTRATE JUDGE FOSCHIO:**  Well, would you agree to

13  withdraw those motions as well?

14          **MR. BOLAND:**  The -- the only ones I'm referring

15  to -- no, Your Honor, not the spoliation regarding the

16  fingerprinting and the yellowing.  I can't withdraw those.

17          **MAGISTRATE JUDGE FOSCHIO:**  Well, don't you have a

18  spoliation argument as to the Harvard e-mails?  No.

19          **MR. BOLAND:**  We do as well, Your Honor.

20          **MAGISTRATE JUDGE FOSCHIO:**  So we still have to

21  talk about that.

22          **MR. BOLAND:**  We can talk briefly.  Most of it's in

23  my papers, I don't have a long drawn out argument for that.

24          **MAGISTRATE JUDGE FOSCHIO:**  Okay.

25          **MR. BOLAND:**  But the reality is we see coming, as

1   the Court has mentioned, over Lake Erie a big motion with a

2   lot of complexity.  And if we got some agreement from the

3   defendants to get us 60 or 90 day window or the Court just

4   imposed it whether they want it or not, I think that we can

5   table most of these motions and just deal with whatever their

6   dismissal motion is, confront all these issues of settings and

7   all that stuff in that response and give us a comfortable time

8   to perhaps get discovery.

9           **MR. SNYDER:**   Your Honor --

10          **MR. BOLAND:**   That's all.

11          **MR. SNYDER:**   We would -- may I be heard?  We would

12  vigorously object to that.  Your Honor, it's clear what's

13  going on here.  From the start this has been an attempted hold

14  up using fraudulent documents to try to coerce a settlement

15  hoping that we'll just write him a check to go away and that's

16  been the goal since day one, the very first communication in

17  this case with first counsel.

18          Thanks to Your Honor's prior orders, the fraud has

19  been exposed.  The original contract, the authentic *bona fide*

20  contract has been found.  It says nothing about Facebook, and

21  his contract has been exposed as a manufactured document that

22  we will prove conclusively was tampered with by this plaintiff

23  and perhaps others acting in concert with him; and his prior

24  lawyers and experts abandoned him in droves, fleeing from this

25  case and the potential liability for bringing it; and now his

1   sixth lawyer on the case is trying this hail Mary saying --

2   filing all sorts of outrageous, audacious motions asking for

3   spoliation sanctions and default judgments causing us to come

4   yet another time to this Court on motions that never should

5   have been filed, all to keep alive this shakedown effort.

6           That is his purpose.  He's delayed six months

7   producing the discovery.  He should be rewarded with a 60 or

8   90 day grace period to respond to motions of which he knows

9   the contents?  He knows -- if this is an authentic contract,

10  he knows what's coming.

11          The ink, if there's any -- the ink is wet.  It's

12  fewer than two years old.

13          **MAGISTRATE JUDGE FOSCHIO:**  Okay, okay.

14          **MR. SNYDER:**  He knows what all the issues are and

15  so what he's doing here is keeping the case alive for as long

16  as he can.

17          And let me say, Your Honor, that was the purpose of

18  this six month delay tactic, keep the case alive long enough

19  to exert maximum pressure on Facebook in the public arena and

20  otherwise to get them to write him a check under the guise of

21  all these frivolous motions, going to Ireland, spoliating

22  evidence and now it's six or seven months later and he figures

23  if he keeps the whole case alive, 60 days, 90 days, we're

24  gonna write him a big fat check, which is never gonna happen.

25          But the courts are not a joke and the courts are

1  not used -- are not an appropriate mechanism for a shakedown.

2  And this case has gone on far too long.

3          When we move to dismiss, this defendant (sic)

4  should not be rewarded for his conduct and given a grace

5  period.  If he needs some extra time, a week, a couple of

6  weeks, but to give him three months to respond to a motion

7  where we have overwhelming evidence of fraud is outrageous.

8          To give him discovery, reciprocal discovery when

9  we --

10          **MAGISTRATE JUDGE FOSCHIO:**  He hasn't had any.

11          **MR. SNYDER:**  And is entitled to none the way he

12  comes to this court.  He's entitled to no discovery.

13          And when we move to dismiss, we will lay that out.

14  And I have every confidence that the Second Circuit not only

15  would approve that, but would applaud the notion that a party

16  committing a massive litigation fraud and then conducting

17  egregious discovery violations --

18          **MAGISTRATE JUDGE FOSCHIO:**  According to his experts

19  they found no indication of fraud.  For example, the detailed

20  analysis by -- which expert was it of the e-mails that were on

21  the floppies?

22          **MR. BOLAND:**  Mr. Grant.

23          **MAGISTRATE JUDGE FOSCHIO:**  Mr. Grant.

24          **MR. SNYDER:**  No, no, Your Honor, that's not

25  accurate.  Mr. Grant did not review the e-mails.  He -- he has

1   a blanket assertion that he found no evidence of fraud, but he

2   doesn't address the e-mails.

3           He addresses unspecified characteristics perhaps of

4   the floppy disks themselves, but he doesn't address the actual

5   so-called "e-mails."

6           His experts don't --

7           **MAGISTRATE JUDGE FOSCHIO:**  What about his experts

8   that have examined the document and found the impressions were

9   the same, the stapling was the same --

10          **MR. SNYDER:**  The experts have not addressed --

11          **MAGISTRATE JUDGE FOSCHIO:**  -- the paper was the

12   same, the paper is consistent --

13          **MR. SNYDER:**  Your Honor, we will -- Your Honor,

14   here's what's unfair.  I could address all those points now,

15   but pursuant to this Court's order I was prepared to do that

16   in -- in -- in -- in September.

17          **MAGISTRATE JUDGE FOSCHIO:**  Okay.

18          **MR. SNYDER:**  And Facebook has been subjected --

19          **MAGISTRATE JUDGE FOSCHIO:**  Okay.

20          **MR. SNYDER:**  -- to the burden and oppression of

21   this litigation now --

22          **MAGISTRATE JUDGE FOSCHIO:**  Okay, let's move --

23          **MR. SNYDER:**  -- but let me just say to Your Honor

24   the purpose of this delay tactic is not coincidental.  The

25   reason he and his parade of lawyers have an interest in

1  keeping this case alive as long as possible, which is why they

2  have delayed compliance and why they're looking to now throw a

3  longer three month hail Mary is because their gambit is the

4  longer this case hangs over Facebook's head, given Facebook's

5  stature and status --

6           **MAGISTRATE JUDGE FOSCHIO:**  Business plans.

7           **MR. SNYDER:**  -- whatever, the longer it hangs over

8  our heads, the more likely they're going to line their pockets

9  based on an outright, outrageous fraud.

10          That's never gonna happen in -- but that is --

11  they're never gonna get a dime, but --

12          **MAGISTRATE JUDGE FOSCHIO:**  You've already made that

13  clear so --

14          **MR. SNYDER:**  -- but they -- but they believe, and

15  that's why they believe otherwise, which is why they've

16  delayed at every turn, which is why we've been pressing --

17          **MAGISTRATE JUDGE FOSCHIO:**  I know, all right,

18  let's move on then, let's move on --

19          **MR. SNYDER:**  We're prepared to move on, but, Your

20  Honor, this plaintiff continues to be in defiance of this

21  Court's order almost seven months later.

22          For example, he recently obstructed our effort to

23  get his Microsoft e-mails.  He provided an ink --

24          **MAGISTRATE JUDGE FOSCHIO:**  That's not before me,

25  right?

1          **MR. SNYDER:**  No, but hopefully -- hopefully we're

2   trying to resolve everything.  Hope springs eternal.

3          **MAGISTRATE JUDGE FOSCHIO:**  Good, good.  Keep doing

4   that.

5          **MR. SNYDER:**  But -- but -- but he's still not in

6   compliance.  When he's in compliance, he will file -- he

7   will -- he will submit a declaration of compliance, we will

8   give him the Harvard e-mails and we'll move to dismiss.

9          **MAGISTRATE JUDGE FOSCHIO:**  Okay.

10          **MR. SNYDER:**  But -- but -- but we -- but if the

11  Court is entertaining --

12          **MAGISTRATE JUDGE FOSCHIO:**  I --

13          **MR. SNYDER:**  -- a -- a -- a extraordinary, unusual

14  grace period for him to contemplate things --

15          **MAGISTRATE JUDGE FOSCHIO:**  I was just looking for a

16  short-circuit here so that we didn't have to spend more time

17  reviewing the motions.  I'm, you know, going to make an effort

18  to make some rulings here as soon as I have everybody's input,

19  I guess that's the way to put it.

20          **MR. SNYDER:**  I just don't want the Court to think

21  that the extension of time here is made for some good faith

22  purpose.  It's made for the same purpose that this lawsuit was

23  filed on day one, which is to shakedown my client.

24          **MAGISTRATE JUDGE FOSCHIO:**  Thank you.  What motion

25  do you want to move on to?

1          **MR. BOLAND:**  I can fairly assume that the 60 or 90

2   day offer to the defendants have been rejected?

3          **MAGISTRATE JUDGE FOSCHIO:**   I'm not taking a

4   position on it.

5          **MR. BOLAND:**  Very well.

6          **MAGISTRATE JUDGE FOSCHIO:**  You can at the

7   appropriate time ask for the appropriate relief --

8          **MR. BOLAND:**  Very well.

9          **MAGISTRATE JUDGE FOSCHIO:**  -- whether it's

10  discovery or just a regular scheduling order to start

11  opposing.

12          So what motion do we want to take up next?

13          **MR. BOLAND:**  The motion for expedited -- to end

14  expedited discovery, Your Honor.

15          **MAGISTRATE JUDGE FOSCHIO:**  Well, what about all the

16  other prohibitional motions and spoliation issues?  The

17  Harvard e-mails?  The smoking gun StreetFax contract?

18          **MR. SNYDER:**  (Inaudible.)

19          **MR. BOLAND:**  I'll go ahead and go with whatever one

20  the Court prefers next.

21          **MAGISTRATE JUDGE FOSCHIO:**  Whatever you want,

22  whatever -- whichever motion --

23          **MR. BOLAND:**  So that's why I was suggesting the end

24  of expedited discovery.  This -- I reviewed, Your Honor, a

25  bunch of the transcripts -- all the transcripts in this case

1  more than once and it's clear from those transcripts --

2  **MAGISTRATE JUDGE FOSCHIO:**  Wouldn't that --

3  wouldn't this issue come at the end of the other issues, the

4  spoliation issues, the prohibitional issues?  Wouldn't you

5  want to cover that first while we're talking about that?

6  **MR. BOLAND:**  Well, here's why I think not.  Because

7  if the Court --

8  **MAGISTRATE JUDGE FOSCHIO:**  Okay.

9  **MR. BOLAND:**  -- were to rule expedited discovery

10 has run its course, the promises the defendants made, which

11 underlie the judge's decision, and I think it's fair to

12 characterize the Court's decision as reluctant, but felt good

13 cause was shown at that time, if the Court decides, you know

14 what?  That good cause has evaporated, then all these issues

15 about them being prohibited from referencing evidence in a

16 motion to dismiss on fraud on the Court I think evaporate

17 because that motion now would be not appropriate.

18 We have to finish discovery before they can even

19 file it, and then we can resolve those at a later time.  In

20 fact, we can attack those when they raise those.

21 **MAGISTRATE JUDGE FOSCHIO:**  I don't think they're

22 done with expedited discovery.  That's the whole point of

23 Mr. Snyder's statement.

24 **MR. BOLAND:**  I agree, I agree that they don't feel

25 that they're done.  And what I'm submitting to the Court is I

1  think time has run out.

2         **MAGISTRATE JUDGE FOSCHIO:**  I mean, for example,

3  I've been waiting with baited breath for Mr. Ceglia to

4  complete the disclosure of the -- of the disk drives and so

5  forth, and --

6         **MR. BOLAND:**  That was done, Your Honor.

7         **MAGISTRATE JUDGE FOSCHIO:**  -- and the other e-mails

8  and so forth so that you can be given the mirror copy of the

9  so-called Harvard e-mails between Mr. Zuckerberg and

10  Mr. Ceglia, which we authorize and we want you to have.

11         And I don't know that that's been done.  I've been

12  waiting for that because at that point, in my view, the

13  expedited discovery cycle will have run its course, except for

14  your motions --

15         **MR. BOLAND:**  Yes, Your Honor, and --

16         **MAGISTRATE JUDGE FOSCHIO:**  -- which in an arguable

17  way go beyond that because they are what they are.  They

18  really don't deal with discovery per se.

19         **MR. BOLAND:**  And what the plaintiff's position is,

20  is that today -- actually before today, but definitely at the

21  time we filed this motion to end expedited discovery, the --

22         **MAGISTRATE JUDGE FOSCHIO:**  Well, have -- have you

23  received the Harvard e-mails on the disks that Mr. Snyder's

24  been carrying in his --

25         **MR. BOLAND:**  No.

1          **MAGISTRATE JUDGE FOSCHIO:**  -- in his coat pocket

2   all these months?

3          **MR. BOLAND:**  No, but the declaration you refer to

4   was provided on time to the defendants pursuant to the Court's

5   order.

6          **MAGISTRATE JUDGE FOSCHIO:**  Including the issues

7   denominated in footnote number 1 of one of the defendants'

8   documents, which --

9          **MR. BOLAND:**  The MSN --

10          **MAGISTRATE JUDGE FOSCHIO:**  -- which elaborated all

11   of the -- the deficiencies in the plaintiff's --

12          **MR. BOLAND:**  The searching?

13          **MAGISTRATE JUDGE FOSCHIO:**  -- providing of, I

14   think, e-mail account information and --

15          **MR. BOLAND:**  Yes.

16          **MAGISTRATE JUDGE FOSCHIO:**  -- and others?  That's

17   all done?

18          **MR. BOLAND:**  The MSN issue, he did it all in a

19   timely basis and MSN Microsoft kicked back the form to Mr.

20   Southwell saying --

21          **MAGISTRATE JUDGE FOSCHIO:**  Well, that's an

22   example --

23          **MR. BOLAND:**  -- something was wrong.  And he

24   couldn't explain and --

25          **MAGISTRATE JUDGE FOSCHIO:**  Right.

1       **MR. BOLAND:**  -- Mr. Southwell couldn't explain, I

2  think he did make an effort to figure out what they thought

3  was wrong with it --

4       **MAGISTRATE JUDGE FOSCHIO:**  Okay.

5       **MR. BOLAND:**  -- so my client filled it out again

6  and submitted it yesterday.

7       **MAGISTRATE JUDGE FOSCHIO:**  He came back from

8  Ireland and he searched for the hard drives and he's provided

9  adequate explanation?  Oh, sorry.

10       He came back from Ireland, he's undergone a --

11  undertaken a thorough search --

12       **MR. BOLAND:**  Yes.

13       **MAGISTRATE JUDGE FOSCHIO:**  -- of all the potential

14  locations for these drives, including the Seagate drive, which

15  was not a flash drive, and he's now accounted for that in

16  strict accordance with the order, which is what we directed

17  him to do, once again, the last time we were together?

18       **MR. BOLAND:**  Yes.  He didn't use agents.  He

19  searched himself.

20       **MAGISTRATE JUDGE FOSCHIO:**  Excellent.  Well,

21  then -- and then Mr. -- the defendants have turned over

22  this -- this copy of the e-mails from the Harvard servers?

23       **MR. BOLAND:**  No.

24       **MAGISTRATE JUDGE FOSCHIO:**  No?  And you've not

25  asked them to do that?

1      **MR. BOLAND:**  No, because they are claiming that

2  there is additional information as they footnoted in their

3  latest filing that they haven't yet received from Capsicum and

4  some other expert or individual, Mr. Argentieri, some such

5  thing.

6      **MAGISTRATE JUDGE FOSCHIO:**  But that's, according to

7  you, that's not a major -- that's not a major obstacle to

8  completing the expedited discovery cycle.

9      **MR. BOLAND:**  No, correct.

10      **MR. SNYDER:**  There's six areas where the plaintiff

11  remains deficient, one of which was the motion -- subject of

12  our motion to compel today the Jerry Grant 41 floppy disks.

13      The second is a -- I mean, I can get into the --

14  there are -- there are six -- there are six discrete areas,

15  which are not before the Court because we're hoping --

16      **MAGISTRATE JUDGE FOSCHIO:**  To avoid it --

17      **MR. SNYDER:**  -- to avoid that.

18      **MAGISTRATE JUDGE FOSCHIO:**  -- the motion.

19      **MR. SNYDER:**  Except the one we did bring before the

20  Court, Grant.  So other than Grant, there are one, two, three,

21  four, five other outstanding issues, which we're working

22  through and when we get the evidence in those other

23  categories, I can outline them or detail them, we will happily

24  provide plaintiff in accordance with the judge -- Your Honor's

25  order with the Harvard e-mails and promptly thereafter move to

1  dismiss this lawsuit with our expert affidavits in support

2  and --

3          **MAGISTRATE JUDGE FOSCHIO:**  So in light of that, why

4  are you making this motion?

5          **MR. BOLAND:**  Well, first off, Your Honor, the

6  motion was made several weeks ago and now obviously it's for a

7  hearing today.

8          **MAGISTRATE JUDGE FOSCHIO:**  Right.

9          **MR. BOLAND:**  And it's -- it's our position that the

10  entirety of the -- the basis for expedited discovery was a

11  claim by Mr. Snyder, which the Court quizzed him on --

12          **MAGISTRATE JUDGE FOSCHIO:**  Mm-hmm.

13          **MR. BOLAND:**  -- that all experts would agree the

14  contract between Zuckerberg and Ceglia is a fraud, and that

15  all the experts would agree the e-mail exchanges that my

16  client offered are frauds.

17          I think -- and the Court even used the phrase

18  "dueling experts, Mr. Snyder, how do we not get to a jury

19  trial?"

20          And we -- I think it's a fair inference for the

21  Court to make no matter what their experts say now about this

22  document, the best they can do is dueling experts.

23          And no matter what their experts say about the

24  e-mails, "Well, Your Honor, we found some evidence that the

25  other expert overlooked or he minimized," et cetera, this is

1   the stuff of garden variety jury trials.  It's dueling experts

2   yet again.

3            They're never going to make it past the Court's own

4   questioning at the outset of "how do you get to a dismissal on

5   fraud with dueling experts?"

6            Now, Mr. Snyder promised you there wouldn't be

7   dueling experts.  And then secondly he promised you even if

8   this contract is so well-done by my client that we can't

9   detect the fraud on the e-mails alone, if we prove they're

10  fraudulent, we should get a dismissal, and there was a

11  colloquy between you and him about that.

12           And our position is it doesn't matter what happens

13  from today forward.  They can't get there to a dismissal on

14  fraud.

15           Moreover, those are the bases for expedited

16  discovery, and I think we can all agree they've evaporated.

17  There is no universal agreement on fraud on the contract and

18  fraud on the e-mails.

19           In fact, up to today the only evidence you have is

20  that the contract is actually authentic and the e-mails were

21  actually generated and saved back in 2003.  So you have

22  actually the reverse of what they promised.

23           And the one-sided discovery, there's a time factor

24  here.  The longer it goes on, there's a potential for

25  witnesses to forget information, for evidence to go missing

1   that I don't even know is out there yet until I've questioned

2   some of their witnesses.  There's Facebook itself and its

3   business plans, as you hinted, which are rapidly changing.

4            There will be an issue in the future because of the

5   e-mails we have.  Facebook's source code is connected to the

6   source code Zuckerberg designed for StreetFax.  So we are

7   going to have a massive battle coming when we ask in discovery

8   for a copy of Facebook's source code to which we're entitled

9   because if we compare those, and there's a lot of copying from

10  the stuff Zuckerberg did for StreetFax into what was in early

11  or current versions of Facebook's source code, that's another

12  huge element of proof of the contract and the agreement

13  between these two individuals.

14            **MAGISTRATE JUDGE FOSCHIO:**  Well, you won't be

15  amending to add a copyright violation?  No?

16            **MR. BOLAND:**  Perhaps, Your Honor.

17            **MAGISTRATE JUDGE FOSCHIO:**  Or, you know, or work --

18  a true work-for-hire claim.

19            **MR. BOLAND:**  Absolutely.  But my point is time does

20  matter.  If it takes two weeks, four weeks, six weeks, we want

21  it to end --

22            **MAGISTRATE JUDGE FOSCHIO:**  Okay.

23            **MR. BOLAND:**  -- now.

24            **MAGISTRATE JUDGE FOSCHIO:**  Well, I need to get -- I

25  need to dispose of these motions.  So pick up a -- that motion

1   is denied.

2              **MR. BOLAND:**  Very well.

3              **MAGISTRATE JUDGE FOSCHIO:**  Let's move on.  Add that

4   to your list, Mr. Southwell.

5              All right, smoking gun, StreetFax, this is the --

6              **MR. BOLAND:**  It's the use of the digital image and

7   e-mail.

8              **MAGISTRATE JUDGE FOSCHIO:**  Yes, the e-mail issue

9   you -- and this one you want to -- what is your request?  To

10  render -- preclude the use of this information in any

11  dispositive motion?  Is that it?

12             **MR. BOLAND:**  Yes, Your Honor, by rule that I stated

13  in the --

14             **MAGISTRATE JUDGE FOSCHIO:**  Mm-hmm.

15             **MR. BOLAND:**  -- papers that I filed in the --

16             **MAGISTRATE JUDGE FOSCHIO:**  And the theory is simply

17  that there's no authentic -- there's no authentication of

18  the -- of the contract, which was attached to the e-mail

19  ostensibly from Ceglia to Cole and --

20             **MR. BOLAND:**  And there's no authentication of the

21  e-mail itself, either one.

22             **MAGISTRATE JUDGE FOSCHIO:**  Either one?

23             **MR. BOLAND:**  Correct.

24             **MAGISTRATE JUDGE FOSCHIO:**  And -- and also the fact

25  that they argued attorney-client privilege is not inconsistent

1  with making the argument that there's no basis to believe that

2  this document is even valid?

3        **MR. BOLAND:**  Correct, Your Honor.

4        **MAGISTRATE JUDGE FOSCHIO:**  Even -- even -- it's

5  even -- what's the word I'm looking for?  Authentic.

6        **MR. BOLAND:**  Authentic.  If it's not admissible

7  evidence, they shouldn't be able to rely on it in their papers

8  that they filed.

9        **MAGISTRATE JUDGE FOSCHIO:**  Yet there it is.

10       **MR. BOLAND:**  Pardon me?

11       **MAGISTRATE JUDGE FOSCHIO:**  There it is.  There is

12  the document, and it's ostensibly from an e-mail account

13  associated either with the plaintiff or we now learn from your

14  papers the plaintiff's father, maybe even his mother.

15       And it ends up in Mr. Cole's computer storage or

16  reference, if you will --

17       **MR. BOLAND:**  Yes.

18       **MAGISTRATE JUDGE FOSCHIO:**  -- in his account -- in

19  his database, for want of an easier term.

20       **MR. BOLAND:**  That doesn't authenticate it though.

21  It just shows you where it's located.

22       **MAGISTRATE JUDGE FOSCHIO:**  Well, the fact that your

23  client concedes that he had a -- an attorney-client or some

24  business relationship with Mr. Cole --

25       **MR. BOLAND:**  True.

1          **MAGISTRATE JUDGE FOSCHIO:**  -- is a fact.

2          **MR. BOLAND:**  Yes.

3          **MAGISTRATE JUDGE FOSCHIO:**  Yes.

4          **MR. BOLAND:**  But that doesn't authenticate an

5  e-mail.

6          **MAGISTRATE JUDGE FOSCHIO:**  And it is true that Mr.

7  Cole has something to do with the StreetFax project.

8          **MR. BOLAND:**  He did.  He provided advice, legal

9  advice, at the very least during that time.

10          **MAGISTRATE JUDGE FOSCHIO:**  And that the document

11  that you're challenging references the StreetFax project.

12          **MR. BOLAND:**  It does, Your Honor.  None of which

13  satisfy authentication.

14          **MAGISTRATE JUDGE FOSCHIO:**  Is that right?

15          **MR. BOLAND:**  Because both the sender -- alleged

16  sender and alleged recipient of that document don't have any

17  recollection of authoring it.  And there's no one stepping --

18          **MAGISTRATE JUDGE FOSCHIO:**  You don't think that

19  those -- just those three items I mentioned are evidence

20  sufficient to support a finding that the matter in question is

21  what its proponent claims?

22          **MR. BOLAND:**  No, I don't -- I don't believe that at

23  all, Your Honor.

24          **MAGISTRATE JUDGE FOSCHIO:**  Why not?

25          **MR. BOLAND:**  Because -- because both the sender and

1  the recipient contradict it.

2          **MAGISTRATE JUDGE FOSCHIO:**  What is it evidence --

3  what are those three factors evidence of?

4          **MR. BOLAND:**  They're -- they're evidence of

5  nothing, Your Honor --

6          **MAGISTRATE JUDGE FOSCHIO:**  Of nothing?

7          **MR. BOLAND:**  **--** because the sender and the

8  recipient are both saying "we don't have any recollection of

9  sending that."

10         **MAGISTRATE JUDGE FOSCHIO:**  The e-mail fairy got

11 into the act and decided to conjure up this document and send

12 it off to Mr. Cole and oh, by the way, of all the millions of

13 people that they could have indicated as the source, decided

14 to pick the Ceglias.

15         **MR. BOLAND:**  Well, I don't think it would be an

16 e-mail fairy, I don't think it's --

17         **MAGISTRATE JUDGE FOSCHIO:**  Well, what -- how would

18 you account for such an electronic happenstance?

19         **MR. BOLAND:**  Well, it just so happens that this is

20 an e-mail sent with a document that is obviously forged.  It's

21 not the actual contract between these two parties.

22         **MAGISTRATE JUDGE FOSCHIO:**  That begs the

23 question --

24         **MR. BOLAND:**  And the person who benefits the

25 most --

1        **MAGISTRATE JUDGE FOSCHIO:**  That begs the question.

2        **MR. BOLAND:**  And the person who benefits most from

3   the existence of this e-mail and this document is

4   Mr. Zuckerberg, who will not deny reports that he --

5        **MAGISTRATE JUDGE FOSCHIO:**  He would be the

6   proponent under the Federal Rules of Evidence.

7        **MR. BOLAND:**  But here's -- here's the kicker, Your

8   Honor: He's an individual who doesn't deny hacking e-mail

9   accounts and forging documents as he's testified.

10        **MAGISTRATE JUDGE FOSCHIO:**  Well, I think you're

11   doing what I had to hammer into my students in evidence this

12   past semester, which is always a difficult task, and that is

13   the difference between admissibility and weight.

14        **MR. BOLAND:**  And it's our position --

15        **MAGISTRATE JUDGE FOSCHIO:**  You don't think these

16   facts are circumstantial evidence of authenticity?

17        **MR. BOLAND:**  I think they're circumstantial.  I

18   just don't think they're sufficient to make it in this.

19        **MAGISTRATE JUDGE FOSCHIO:**  Thus, an issue of

20   weight, not admissibility under Rule 901.

21        All right, the motion as to this -- this smoke -- I

22   don't know what else to call it, Mr. Southwell, the smoking

23   gun issue, this would be document number 22 -- what is it?

24        **MR. SNYDER:**  229, Your Honor.

25        **MAGISTRATE JUDGE FOSCHIO:**  228, 229 is denied for

1    the reasons stated, both in the defendants' papers and based

2    on oral argument.

3            Let's move on to another issue.

4            **MR. BOLAND:**  Your Honor, the Harvard e-mails --

5            **MAGISTRATE JUDGE FOSCHIO:**  The Harvard e-mails, oh,

6    yes.  This has to do with Mr. Rose's inability to allegedly

7    explain the apparent difference between the 17 e-mails that he

8    found some variation in that were -- one was processed in

9    October of 2010, and then there was another processing or

10   extraction of these e-mails in -- in April of 2011.

11           You argue that there was -- there were deletions

12   and, therefore, it was spoliated in the hands of the

13   defendants' expert, correct?

14           **MR. BOLAND:**  Or at the hands of the defendant

15   himself.  I couldn't know.

16           **MAGISTRATE JUDGE FOSCHIO:**  Really?

17           **MR. BOLAND:**  Or at Harvard's -- who knows where it

18   was spoliated.

19           **MAGISTRATE JUDGE FOSCHIO:**  Well, if it happened at

20   Harvard, how can that be attributed to the defendants?

21           **MR. BOLAND:**  Well, it couldn't be.

22           **MAGISTRATE JUDGE FOSCHIO:**  Do you have any evidence

23   whatsoever, any that Mr. Zuckerberg picked up the phone and

24   called the head of the Harvard IT Department and said, "I want

25   you to change these e-mails that are sitting in your server

1  that were created way back in 2003-2004"?

2         **MR. BOLAND:**  I have no evidence whatsoever that he

3  made a call to them.

4         **MAGISTRATE JUDGE FOSCHIO:**  I thought not.

5         **MR. BOLAND:**  He's the only person that has access

6  to the account, and our -- the point of this motion is --

7  is -- and I won't belabor it --

8         **MAGISTRATE JUDGE FOSCHIO:**  And you know that

9  Harvard's system for preserving their e-mails in those servers

10 permits a person in Mr. Zuckerberg's position during the

11 relevant timeframe to go into the account and alter them?

12        **MR. BOLAND:**  It's his e-mail account.  Certainly he

13 could delete e-mails from his own account or --

14        **MAGISTRATE JUDGE FOSCHIO:**  You didn't answer my

15 question.

16        **MR. BOLAND:**  -- or alter them.

17        **MAGISTRATE JUDGE FOSCHIO:**  He's no longer a

18 student.  Been out of there for however many years...eight

19 years now since he was there?

20        Do you know whether or not Harvard's system permits

21 such tampering?

22        **MR. BOLAND:**  You're presupposing he doesn't have

23 the account.  I don't have any evidence that he doesn't.

24        **MAGISTRATE JUDGE FOSCHIO:**  You're the one that made

25 the motion.  You have the burden.

1       **MR. BOLAND:**  I understand that, Your Honor.

2  That's -- this is his e-mail account that he used in the

3  relevant time period of this case, 2003-2004, and there's no

4  evidence he discontinued using it.

5       **MAGISTRATE JUDGE FOSCHIO:**  Okay, let's try it this

6  way.  What -- what is it that happened in October of 2010 with

7  regard to the e-mails?

8       **MR. BOLAND:**  I don't know what happened, but

9  Mr. Zuckerberg's the only one involved in this case who had

10  access to those e-mails.

11       **MAGISTRATE JUDGE FOSCHIO:**  Well, what is it that

12  the expert ended up with?

13       **MR. BOLAND:**  Pardon me?

14       **MAGISTRATE JUDGE FOSCHIO:**  What did the expert end

15  up with?

16       **MR. BOLAND:**  The expert ended up with a conclusion

17  that different e-mails are actually the same, which is false.

18       **MAGISTRATE JUDGE FOSCHIO:**  That implies that the

19  expert got ahold of something from Harvard in October of 2010?

20       **MR. BOLAND:**  Well, he got ahold of the e-mail

21  record of Zuckerberg, yes.

22       **MAGISTRATE JUDGE FOSCHIO:**  And how did he do that?

23       **MR. BOLAND:**  He details it in his declaration.  I

24  think that he either -- they gave it to him or he was allowed

25  to attach to their server and grab it.  I don't remember

1   which.

2           **MAGISTRATE JUDGE FOSCHIO:** Okay. So he downloaded

3   how many e-mails?

4           **MR. BOLAND:** I don't know. He grabbed the whole

5   record and then searched through it, according to his

6   declaration, and found about 175 e-mails.

7           **MAGISTRATE JUDGE FOSCHIO:** Pertinent to the

8   subject?

9           **MR. BOLAND:** Right. And then he was able to say,

10  according to him, no e-mails that came up as a result of some

11  search terms he used.

12          **MAGISTRATE JUDGE FOSCHIO:** And your motion for

13  sanctions based on spoliation is that when he did it again,

14  and I'm not clear about this, in April of 2011, he discovered

15  discrepancies?

16          **MR. BOLAND:** Correct.

17          **MAGISTRATE JUDGE FOSCHIO:** How did he access the

18  Harvard servers in April of 2011?

19          **MR. BOLAND:** His declaration details one of the two

20  times he went there and attached to their servers, my

21  understanding. And the other time, I don't know which one it

22  was, they actually handed him a copy of the e-mail record.

23          But the declarations would clear that up.

24          **MAGISTRATE JUDGE FOSCHIO:** Always happens, can't

25  find it when I want to. I'm looking for Mr. -- what's his

1    name's -- declaration.

2            **MR. SNYDER:** Your Honor, the declaration of Brian

3    Rose is document number 47; and then he has filed a

4    supplemental declaration, which is document 73.

5            **THE CLERK:** 47 and 73?

6            **MR. SNYDER:** Mm-hmm.

7            **MAGISTRATE JUDGE FOSCHIO:** I have it, but I can't

8    find it.  Okay.

9            **MR. SNYDER:** Shall I hand them up to Your Honor?

10           **MAGISTRATE JUDGE FOSCHIO:** Yes, that will be

11   helpful.  I now have one of them, thank you.

12           **THE CLERK:** Which one?

13           **MAGISTRATE JUDGE FOSCHIO:** I have the number 73

14   declaration, and I don't have the supplemental.  Oh, that is

15   the supplemental.  Okay.

16           **MR. BOLAND:** So in 47 --

17           **MAGISTRATE JUDGE FOSCHIO:** What I want to

18   understand, and apparently I was not able to understand it

19   from this declaration, is:  What is it that he got in April of

20   2011 that allowed him to make a comparison with what he got in

21   October of 2010?

22           That's what I'm not clear about.

23           **MR. BOLAND:** In paragraph 4 --

24           **MAGISTRATE JUDGE FOSCHIO:** One at a time.

25           **MR. BOLAND:** -- he says he got the entire contents

1    of Mr. Zuckerberg's Harvard e-mail account as it resided on

2    Harvard's server.

3            **MAGISTRATE JUDGE FOSCHIO:**  Well, that's not in this

4    document, so I do need another document that shows that,

5    please.  Thank you.

6            All right.

7            **MR. SNYDER:**  It's paragraphs 4 and 5 of document

8    47, Your Honor.

9            **MAGISTRATE JUDGE FOSCHIO:**  Well, it doesn't tell me

10   the answer to my question, which is:  How did he get it?  What

11   did he ask for?  Is that the same material that he got in

12   October?

13           No.  It must be something else because there's --

14   the plaintiff is attempting to point to a variation.

15           **MR. SNYDER:**  Yes, Your Honor.  May I explain?

16           **MAGISTRATE JUDGE FOSCHIO:**  He asked Harvard to

17   provide something in April?  I'm trying to account for the --

18           **MR. SNYDER:**  I can explain.

19           **MAGISTRATE JUDGE FOSCHIO:**  -- discrepancy that is

20   claimed to be explained by the concept of de-duplication.

21           **MR. SNYDER:**  Yes, Your Honor, I'll explain.

22           **MAGISTRATE JUDGE FOSCHIO:**  We think is a misnomer.

23           **MR. SNYDER:**  I'll explain it, Your Honor.

24           In October of 2010 Harvard University, on its own

25   accord, captured, made an image of Mr. Zuckerberg's Harvard

1   e-mail account as it resided on Harvard's server in October

2   2010.

3            **MAGISTRATE JUDGE FOSCHIO:**  Harvard made a copy in

4   October of 2010.

5            **MR. SNYDER:**  2010.

6            **MAGISTRATE JUDGE FOSCHIO:**  At whose request?

7            **MR. SNYDER:**  On its own accord.

8            **MAGISTRATE JUDGE FOSCHIO:**  Why?

9            **MR. SNYDER:**  There may have been a document

10  preservation request related to (Inaudible) --

11           **MAGISTRATE JUDGE FOSCHIO:**  When -- when did you

12  serve the -- Mrs. Simpson received a letter from the plaintiff

13  at some point about a document hold?

14           **MR. BOLAND:**  Yes, Your Honor, within the first

15  few -- first month or two of the litigation, I don't have it

16  off the top of my head, but it was early on.

17           **MAGISTRATE JUDGE FOSCHIO:**  Yeah, it's one of the

18  exhibits.

19           **MR. BOLAND:**  It is an exhibit.

20           **MR. SNYDER:**  Your Honor, we don't know why they did

21  it.  They never explained.  We think it may have been because

22  the plaintiff s called them.

23           But for whatever reason, Harvard on its -- not in

24  response to our request, imaged the server in October 2010.

25           In addition --

1          **MAGISTRATE JUDGE FOSCHIO:**  What does that mean,

2  "imaged the server"?

3          **MR. SNYDER:**  Made a copy of all e-mails in Mark

4  Zuckerberg's Harvard account as of October 2010.

5          **MAGISTRATE JUDGE FOSCHIO:**  And that would have been

6  over a what?  Two-year period while he was enrolled there?

7          **MR. SNYDER:**  Whatever -- whatever -- whatever --

8  whatever time period he was --

9          **MAGISTRATE JUDGE FOSCHIO:**  Well, he left at the end

10  of his second year, right?

11          **MR. BOLAND:**  It's not indicated by Mr. Rose how far

12  back that e-mail record goes.  He simply says "Harvard gave me

13  what they captured on that date."

14          **MR. SNYDER:**  Mr. Rose, again, will explain all this

15  when he --

16          **MAGISTRATE JUDGE FOSCHIO:**  How did Mr. Rose happen

17  to become in contact with Harvard in order to get it?

18          **MR. SNYDER:**  In -- in -- in April of 2011 --

19          **MAGISTRATE JUDGE FOSCHIO:**  No.  Didn't he receive

20  something in October?

21          **MR. SNYDER:**  No.

22          **MAGISTRATE JUDGE FOSCHIO:**  No?

23          **MR. SNYDER:**  In April of 2011, at the direction of

24  our firm, Stroz Friedberg preserved the contents of

25  Mr. Zuckerberg's Harvard e-mail account by using --

1            **MAGISTRATE JUDGE FOSCHIO:**  It wasn't until April,

2     did you say?

3            **MR. SNYDER:**  Correct.  This preservation work

4     involved, as he recounts, making a complete and accurate copy

5     of the entire contents of Mr. Zuckerberg's Harvard e-mail

6     account as it resided on Harvard's server at the time of

7     collection in April of 2011.

8            **MAGISTRATE JUDGE FOSCHIO:**  Well, you --

9            **MR. SNYDER:**  In addition --

10           **MAGISTRATE JUDGE FOSCHIO:**  -- you didn't know about

11    the --

12           **MR. SNYDER:**  -- in addition, Harvard, at around

13    that time provided Stroz Friedberg with a copy of the e-mail

14    account as they captured it themselves in October 2010.

15           So he was given that --

16           **MAGISTRATE JUDGE FOSCHIO:**  Stroz Friedberg was able

17    to go into the Harvard server in October and --

18           **MR. SNYDER:**  No, Your Honor.

19           **MAGISTRATE JUDGE FOSCHIO:**  No?  I'm not catching --

20           **MR. SNYDER:**  No.

21           **MAGISTRATE JUDGE FOSCHIO:**  I'm not getting it.

22           **MR. SNYDER:**  In October 2010 Harvard on its own --

23           **MAGISTRATE JUDGE FOSCHIO:**  Harvard on its own makes

24    a mirror image of the account?

25           **MR. SNYDER:**  Correct.

1                    **MAGISTRATE JUDGE FOSCHIO:**  And holds it in-house

2    for reasons that aren't clear?

3                    **MR. SNYDER:**  Correct, correct.

4                    **MAGISTRATE JUDGE FOSCHIO:**  In-house.

5                    **MR. SNYDER:**  Mm-hmm.

6                    **MAGISTRATE JUDGE FOSCHIO:**  To themselves?  They

7    don't disseminate it to anybody as far as we know?

8                    **MR. SNYDER:**  As far as we know.

9                    **MAGISTRATE JUDGE FOSCHIO:**  Okay.

10                   **MR. SNYDER:**  In -- in April Stroz Friedberg, after

11   the amended complaint was filed, using Mr. Zuckerberg's access

12   credentials accessed the Harvard account and made a complete

13   and accurate copy of the entire contents of his e-mail as it

14   resided on Harvard's server at the time of the collection.

15                   **MAGISTRATE JUDGE FOSCHIO:**  So they made a -- their

16   own copy?

17                   **MR. SNYDER:**  Correct.

18                   **MAGISTRATE JUDGE FOSCHIO:**  When you say Zuckerberg

19   had access credentials, does that -- should I infer from that

20   that Mr. Zuckerberg did have access, contrary to what I

21   thought might be the case, to his e-mail account?

22                   **MR. SNYDER:**  They have to access the account, yes.

23                   **MAGISTRATE JUDGE FOSCHIO:**   Even though you're not

24   a student there any longer?

25                   **MR. SNYDER:**  Correct.

1          **MAGISTRATE JUDGE FOSCHIO:**  Really?

2          **MR. SNYDER:**  So -- so -- so in the --

3          **MAGISTRATE JUDGE FOSCHIO:**  That's true of anybody

4   that has --

5          **MR. SNYDER:**  I don't know, Your Honor.

6          **MR. BOLAND:**  Many colleges are now allowing

7   graduates or people that are there for a couple years, I have

8   nephews who left Ohio State, they still can use that e-mail

9   and Ohio State uses it to grab them back for alumni purposes,

10  to gain money from them, to donate.  They have a way to

11  contact the students so they like to let them keep those

12  e-mails.

13         **MR. SNYDER:**  The point is --

14         **MAGISTRATE JUDGE FOSCHIO:**  Well, they can have an

15  e-mail address without allowing access to their servers.

16         **MR. SNYDER:**  The narrow point here, Your Honor, is

17  that this plaintiff, seven months after he's supposed to be in

18  compliance with the order, is asking to prevent us from --

19         **MAGISTRATE JUDGE FOSCHIO:**  I know what they're

20  trying to do.

21         **MR. SNYDER:**  Right.  So -- so -- so if I could just

22  address the nonsense about the discrepancy --

23         **MAGISTRATE JUDGE FOSCHIO:**  What I'm getting at

24  is --

25         **MR. SNYDER:**  There is no discrepancy.

1             **MAGISTRATE JUDGE FOSCHIO:**  Excuse me.  There is a

2  Harvard account -- there is a Harvard copy in October.

3             **MR. SNYDER:**  Yes.

4             **MAGISTRATE JUDGE FOSCHIO:**  Then there is a Stroz

5  Friedberg copy, which apparently is made by just typing some

6  code to the Harvard server and send me a copy.

7             They now --

8             **MR. SNYDER:**  Yes.

9             **MAGISTRATE JUDGE FOSCHIO:**  They have one copy as of

10  April.

11             **MR. SNYDER:**  Yes, Your Honor.

12             **MAGISTRATE JUDGE FOSCHIO:**  How does it come to pass

13  that they're able to make a comparison with the October 2010

14  Harvard copy?

15             **MR. SNYDER:**  Because Harvard gave -- Harvard gave

16  Stroz Friedberg the October copy.

17             **MAGISTRATE JUDGE FOSCHIO:**  As well?

18             **MR. SNYDER:**  Yes.  As its -- as it -- as Mark

19  Zuckerberg had already (Inaudible) -- to request as it is

20  his -- his e-mail account.

21             And it's that comparison which Mr. Boland

22  mischaracterizes and I think Mr. Lake made the same

23  mischaracterization and to this Court before -- more than five

24  months ago --

25             **MAGISTRATE JUDGE FOSCHIO:**  My understanding is that

1  when you have allegedly complete copies of original --

2  original database, such as e-mails, there shouldn't be any

3  discrepancy.

4          **MR. SNYDER:**  Mr. Rose, who is one of the foremost

5  forensic computer experts in the world, describes in detail

6  what the nature of this so-called discrepancy is.

7          It's explicable, common and understood in the

8  computer forensic community to be a natural occurrence.  And

9  if I -- I'm happy to explain it.

10          What -- what -- what is -- what I want to

11  underscore is that this is the -- this is the second time this

12  Court has already considered and rejected this very argument.

13          And it's based --

14          **MAGISTRATE JUDGE FOSCHIO:**  Well, I want to get it

15  right, Mr. Snyder.

16          **MR. SNYDER:**  -- and it's based on a false

17  characterization of Mr. Rose's declaration.  So I will explain

18  it to Your Honor happily.

19          So in his -- in plaintiff's cross-motion for

20  expedited discovery filed in June, the plaintiff argued that

21  Brian Rose had admitted that an unspecified number of e-mails

22  were deleted from Zuckerberg's Harvard account.

23          As Mr. Rose explained in document number 73, more

24  than five months ago, there are no missing or deleted e-mails.

25          Stroz Friedberg initially identified 17 e-mails

1   that have nothing to do with Ceglia and nothing to do with

2   StreetFax that he -- that did not de-duplicate -- that he did

3   not de-duplicate out -- that didn't de-duplicate out when the

4   October 2010 and April 2011 accounts were completed.

5          And none of these e-mails, these 17 e-mails, have

6   anything to do with the plaintiff or StreetFax.

7          He then manually confirmed that all 17 e-mails are,

8   in fact, present in the April 2011 account, and the initial

9   apparent discrepancy was attributable not to missing or

10  deleted e-mails, as Mr. Boland knows because he must have --

11  should have read Mr. Rose's prior declaration, but rather was

12  attributable to non-substantive formatting issues in the

13  e-mail.

14         And he describes this --

15         **MAGISTRATE JUDGE FOSCHIO:**  Well, then why did he

16  say in paragraph 7 of document number 47 that the results of

17  these searches did not include the purported e-mails, thus,

18  the purported e-mails are not contained in the Harvard e-mail

19  data?

20         **MR. SNYDER:**  (Inaudible.)

21         **MAGISTRATE JUDGE FOSCHIO:**  Is that the same problem

22  or is that something else?

23         **MR. SNYDER:**  Well, Mr. Southwell can explain that.

24         **MR. SOUTHWELL:** Your Honor, that reference

25  refers to the purported e-mails in the amended

1   complaint, which are, in fact, not in the Harvard

2   account. That's what that reference is to.

3           **MR. SNYDER:**  Correct.

4           **MAGISTRATE JUDGE FOSCHIO:**  Oh.

5           **MR. SNYDER:**  So, in other words, the make believe

6   e-mails are not in the Harvard account.  And so now what

7   plaintiff is asserting in his document 258 is that two

8   e-mails, with even the most minor formatting discrepancies

9   such as extra white space in the subject line, are

10  meaningfully different and that, thus, Mr. Rose's declaration

11  constitutes "an obvious fraud" on the Court.

12          And so this preposterous and insulting argument

13  misconstrues the nature of e-mail comparison and -- and --

14  and -- and -- and distorts what Mr. Rose has told this -- this

15  Court because Mr. Boland is saying that only e-mails with

16  identical hash values are the same for purposes of e-mail

17  comparison.

18          But fact de-duplication for e-mails generally is

19  not done to a hash value comparison, not done through a hash

20  value comparison.  E-mail is de-duped through a comparison of

21  fields: Sender, recipient, date, time, subject, number of

22  attachments, text and the like.

23          And in all of those critical relevant attributes,

24  the e-mails are the same.

25          **MAGISTRATE JUDGE FOSCHIO:**  Even in formatting?

1              **MR. SNYDER:**  For those two e-mails.

2              **MAGISTRATE JUDGE FOSCHIO:**  Even between the

3  formatting in October vs. April?

4              **MR. SNYDER:**  Well, no --

5              **MAGISTRATE JUDGE FOSCHIO:**  Formatting.

6              **MR. SNYDER:**  The reason you look at fields as

7  opposed to minor formatting discrepancies because a variety of

8  different formats in which e-mail data can be stored.

9        It's possible the differences in storage format

10  where the conversion process can create -- that differences in

11  storage format or the conversion process can create minor

12  format discrepancies between two copies of the same e-mail,

13  which is why you look to the critical attributes to basically

14  find fingerprints on the e-mail, such as same sender, same

15  recipient, same date, same time, same subject, same

16  attachments, same text.  Twins.  The e-mails are twins.

17              **MAGISTRATE JUDGE FOSCHIO:**  And they're all there?

18              **MR. SNYDER:**  So on that basis --

19              **MAGISTRATE JUDGE FOSCHIO:**  And they're all there?

20              **MR. SNYDER:**  Yes.  On that basis he makes this

21  motion.  First of all, it's premature.  It should be denied on

22  that basis.

23        But I would say on this one, the Court should deny

24  it on the merits because it is based on no evidence

25  whatsoever.  Zero evidence.

1           And was filed for improper purpose both to put on

2   the blog and to increase the amount of perceived pressure on

3   us and it is as meritless today as it was when Mr. Lake made

4   the same argument and this Court rejected it last -- during

5   the summer.

6           **MAGISTRATE JUDGE FOSCHIO:**  Thank you.

7           **MR. BOLAND:**  Your Honor, I can --

8           **MAGISTRATE JUDGE FOSCHIO:**  So my -- my consultant,

9   we had a conversation about this yesterday when we reviewed

10  the papers.  He now says whereas -- Mr. Healy, whereas there

11  really shouldn't be any formatting issues or differences, but

12  now that we know, which we didn't understand yesterday, that

13  it's because there were two different extractors -- Harvard --

14  in fact, that was going to be one of my main questions to

15  Mr. Boland is, you know, why don't we just go back and ask

16  Harvard to redo whatever they had and -- and in so doing we'll

17  get the mystery out of anything that's been deleted.

18          Well, now I don't think we need to because, as

19  Mr. Healy says, because the extractions were done by two

20  different parties, there exists a possibility that there will

21  be differences in the formatting of the messages, which is

22  what threw us off.

23          But now that we've got the missing piece to the

24  puzzle, which, unfortunately, is not revealed in the papers,

25  the Court understands the defendants' opposition and I'm

1 | assuming Mr. Boland does, too.

2 |     **MR. BOLAND:**  Yes, Your Honor.  I was waiting for a

3 | break in Mr. Snyder's monologue.

4 |     **MAGISTRATE JUDGE FOSCHIO:**  Yes.

5 |     **MR. BOLAND:**  I think on behalf of my client for the

6 | time being I'll withdraw the motion, given our discussion

7 | we've had and raise it later after some discovery where it

8 | might be more relevant and --

9 |     **MAGISTRATE JUDGE FOSCHIO:**  Thank you.

10 |     **MR. BOLAND:**  -- and there will be more of a basis

11 | for it.

12 |     **MAGISTRATE JUDGE FOSCHIO:**  That motion would be --

13 | that would be -- which motion is it?

14 |     **MR. BOLAND:**  Number wise, I'll have to look, Your

15 | Honor.

16 |     **THE CLERK:** 98 or -- 198?

17 |     **MAGISTRATE JUDGE FOSCHIO:**  Is it 198?

18 |     **THE CLERK:** 198, gentlemen?

19 |     **MAGISTRATE JUDGE FOSCHIO:**  We need a score keeper

20 | here.

21 |     **THE CLERK:** 198.

22 |     **MAGISTRATE JUDGE FOSCHIO:**  Okay, motion withdrawn

23 | without prejudice, thank you.

24 |     **MR. BOLAND:**  Yes, Your Honor.

25 |     **MAGISTRATE JUDGE FOSCHIO:**  Let's move on to another

1    one.  That's the Harvard e-mail issue.  Okay, good.  That was

2    a big one, actually.  What's left?

3              **MR. BOLAND:**  The fingerprint related motion.

4              **MAGISTRATE JUDGE FOSCHIO:**  The fingerprint issue.

5    188 -- hmm?  No, I haven't reserved -- I haven't made a

6    decision on the spoliation of the contract issue.  We will now

7    that we've gotten into these other issues, which has been

8    helpful.

9              All right, this is -- what's left then?

10             **MR. BOLAND:**  Just the spoliation regarding the

11   fingerprints --

12             **MAGISTRATE JUDGE FOSCHIO:**  The fingerprints.

13             **MR. BOLAND:**  -- touching of the document.

14             **MAGISTRATE JUDGE FOSCHIO:**  How are fingerprints in

15   any way, shape or form relevant to the authenticity of the

16   contract?

17             **MR. BOLAND:**  Two ways, Your Honor.  One is --

18             **MAGISTRATE JUDGE FOSCHIO:**  And why is this the

19   first time that we're hearing about fingerprinting?  And why

20   wasn't that included in the testing protocol back in July?

21             **MR. BOLAND:**  Well, it's included in all the

22   standards that their expert submitted and our experts adhere

23   to as well, that you always wear gloves handling documents.

24             **MAGISTRATE JUDGE FOSCHIO:**  What's the point?  Is it

25   that oh, gee, if we could find Mr. Zuckerberg's fingerprint on

1  page 1 as well as page 2, that would indicate that he must

2  have -- he must have initialed the interlineation regarding

3  transferring 50% of Facebook to the plaintiff?

4            **MR. BOLAND:**  The defendants have made a --

5            **MAGISTRATE JUDGE FOSCHIO:**  Is that -- is that the

6  bottom line here?

7            **MR. BOLAND:**  That's half the bottom line.  The

8  other half is the defendants have argued that there's a page 1

9  substitution going on here.

10           So if fingerprinting testing were to commence today

11 and none of Mr. Zuckerberg's fingerprints show up on page 1,

12 but one or more show up on page 2, they now have an argument,

13 "See, ladies and gentlemen of the jury, page 1's a fake."

14           But the problem is we might -- we can now not

15 recover any of Zuckerberg's fingerprints that are underneath

16 where their experts were touching.

17           **MAGISTRATE JUDGE FOSCHIO:**  Have you attempted to?

18           **MR. BOLAND:**  We haven't done it yet, and here's

19 why: We're going to approach the defendants to get their

20 approval because it is a type of testing that is, according to

21 the ASTM standards, it's the last test you do because you have

22 to apply a chemical to the paper to reveal these fingerprints,

23 and we don't want to -- we want the defendants to say we're

24 done testing and get everyone's assurance before we do that

25 test.

1      **MAGISTRATE JUDGE FOSCHIO:**  Well, then your motion
2  is premature, if not speculative, because for all we know
3  you'll do that, then lo' and behold, Mr. Zuckerberg's
4  fingerprints will be on page 1.
5      **MR. BOLAND:**  They could well -- they could well be
6  or he could not have touched it or whatever.
7      **MAGISTRATE JUDGE FOSCHIO:**  And you could have a
8  home run.
9      **MR. BOLAND:**  Well, I don't know if we have a home
10  run necessarily, but we -- our issue is if that testing --
11      **MAGISTRATE JUDGE FOSCHIO:**  Strengthen your case.
12      **MR. BOLAND:**  -- that testing shows none of his
13  fingerprints on page 1, we got a problem here because they --
14  they have contaminated it to prevent those fingerprints
15  perhaps from showing up.
16      And we'll never know.  There's no way for an expert
17  to say, you know, his fingerprint's there, but their experts
18  is on top of it.
19      **MAGISTRATE JUDGE FOSCHIO:**  Are we in the realm of
20  sheer speculation, counsel?
21      **MR. BOLAND:**  Regarding what, Your Honor?
22      **MAGISTRATE JUDGE FOSCHIO:**  Well, whether there's
23  any -- first of all, whether any spoliation occurred that's --
24  that for which the defendants should be sanctioned, number
25  one.

1           But more to the point, spoliation presumes a

2   finding of prejudice, of destruction of evidence that is

3   prejudicial to the opposing party.  That is to say the

4   requesting party, you.

5           And for you to say that -- that, first of all, that

6   they should have been more careful about the possibility of

7   needing fingerprints is to me, unfortunately, heavily negated

8   by the fact that it didn't come up with Mr. Lake when we

9   carefully negotiated the protocols.

10          I don't know that the record indicates that anybody

11  in the plaintiff's team objected to the -- to the -- seriously

12  to the failing to use rubber gloves and so forth and so on

13  because of the need to take -- at least my impression, and you

14  correct me if I'm wrong, is that the first time the defendants

15  knew and I knew that there was a serious need by the plaintiff

16  to take fingerprints off these documents was when your motion

17  came in.

18          Is that fair?

19          **MR. BOLAND:**  Yes, Your Honor, that's fair.  I think

20  the issue here is going to be the fingerprint testing, which

21  the Court is correct, we haven't completed yet.

22          **MAGISTRATE JUDGE FOSCHIO:**  Well, you can try it,

23  but as far as your motion is concerned I -- you want to

24  withdraw it?

25          **MR. BOLAND:**  Yeah, we'll withdraw that one.  And

1   when we do the testing, we'll go ahead with it.

2                **MAGISTRATE JUDGE FOSCHIO:**  Thank you.

3                **MR. SNYDER:**  Can I just --

4                **MAGISTRATE JUDGE FOSCHIO:**  Motion withdrawn without

5   prejudice.

6                **MR. SNYDER:**  That's fine.  I would just -- I would

7   just ask Your Honor --

8                **MAGISTRATE JUDGE FOSCHIO:**  Thank you, Mr. Snyder.

9                **MR. SNYDER:**  Thank you, Judge, but, Judge, you

10  know, he blithely files a motion --

11               **MAGISTRATE JUDGE FOSCHIO:**  He didn't get it.

12               **MR. BOLAND:**  No.

13               **MR. SNYDER:**  I did.  But, Your Honor, on this

14  point --

15               **MAGISTRATE JUDGE FOSCHIO:**  He is so intense, he

16  didn't even get that one.

17               **MR. SNYDER:**  Well, I'm intense, Your Honor, because

18  I don't -- I don't view a sanctions motion --

19               **MAGISTRATE JUDGE FOSCHIO:**  Frivolous, as you should

20  not --

21               **MR. SNYDER:**  -- as casual.

22               **MAGISTRATE JUDGE FOSCHIO:**  -- because you can't get

23  admitted *pro hac vice* if you've been sanctioned, right?  You

24  don't want to be sanctioned.

25               **MR. SNYDER:**  I don't view it as casual --

1          **MAGISTRATE JUDGE FOSCHIO:**  I won't sanction you.

2    I'll sanction -- I don't know, I'll sanction Benjamin.  No,

3    I'm only kidding.

4          **MR. SNYDER:**  I don't take as casual or even

5    light-hearted Mr. Boland's filing of what really are

6    outrageous motions for sanctions and they show that he'll

7    make no argument -- he'll make any argument no matter how

8    brazen.

9          **MAGISTRATE JUDGE FOSCHIO:**  They will be just as

10   outrageous if they get renewed as they are now and --

11         **MR. SNYDER:**  And dishonest --

12         **MAGISTRATE JUDGE FOSCHIO:**  -- you'll have a

13   chance --

14         **MR. SNYDER:**  -- and there will be --  and there

15   will be --

16         **MAGISTRATE JUDGE FOSCHIO:**  -- and hopefully I'll be

17   in the same good health and sitting on the bench and I'll take

18   care of business when and if I need to.

19         **MR. SNYDER:**  But what I want to -- I want to make a

20   point, Your Honor, and, you know, we will seek to hold, you

21   know, Mr. Boland and prior counsel responsible --

22         **MAGISTRATE JUDGE FOSCHIO:**  I'll be happy to deny it

23   without prejudice.  Does that makes you feel better?

24         **MR. SNYDER:**  But I just want to address one

25   comment.  Your Honor said there's a serious need by plaintiff

1    to take fingerprints off the document.

2              There is no such serious need.

3              **MAGISTRATE JUDGE FOSCHIO:**  No, I said -- I said

4    it's the first time I heard there was a serious need.

5              **MR. SNYDER:**  Right, but there isn't a serious need.

6    The reason he's raised this point and, of course, just for

7    Your Honor to be aware, his own expert touched the document

8    approximately eight times in a single day.  His own expert

9    touched the document with his own hands eight different times

10   on a single day.

11             And his own -- and Mr. Argentieri also touched the

12   document with his bare hands.  So this is not a good faith

13   motion filed actually to take -- because they want to take

14   fingerprints off a document.

15             The reason they filed this is because Mark

16   Zuckerberg's fingerprints were never on and could never be on

17   page 1 of this document because it was manufactured by this

18   plaintiff fewer than two years ago.  So that's why they filed

19   this motion for the --

20             **MAGISTRATE JUDGE FOSCHIO:**  But that's their point.

21             **MR. SNYDER:**  -- for the improper purpose --

22             **MAGISTRATE JUDGE FOSCHIO:**  Your experts' inks

23   analysis is wrong.  The fingerprint speaks for itself and, you

24   know, write a check for $25 billion, it's very simple.

25             **MR. SNYDER:**  Right.  But my point is --

1          **MAGISTRATE JUDGE FOSCHIO:**  Or write him into the

2    IPO, whatever.

3          **MR. SNYDER:**  I just want to preserve -- I just want

4    to preserve for the record our point and make it clear that

5    this was filed not only with no basis and without foundation

6    in violation of Rule 11, but for the improper purpose, the

7    improper purpose of -- of making accusations in the record to

8    deal with the fact that as a physical -- it's a physical

9    impossibility that my client's fingerprints ever could have

10   been on page 1.

11          And, of course --

12          **MAGISTRATE JUDGE FOSCHIO:**  Well, that begs the

13   question.  I mean, I accept you as learned and able counsel

14   representing to the Court that these experts have already

15   found another smoking gun in the form of the ink analysis.

16          **MR. SNYDER:**  Yes.

17          **MAGISTRATE JUDGE FOSCHIO:**  So be it.  But I don't

18   know that as a fact and it's not on the -- it's not --

19          **MR. SNYDER:**  Not yet, Your Honor.

20          **MAGISTRATE JUDGE FOSCHIO:**  -- not yet formally part

21   of the record.

22          **MR. SNYDER:**  Thank you.

23          **MAGISTRATE JUDGE FOSCHIO:**  And -- but I asked him a

24   fair question, and he gave me a decent answer, which is if the

25   fingerprints were there, it would tend to rebut the argument

1   that the first page was substituted.

2          **MR. SNYDER:**  But, Your Honor, you think it's a

3   coincidence that when Ms. Aycock, Mr. Southwell, Mr. Benjamin,

4   Mr. Lake, Mr. Flynn and this Court spent hours developing the

5   protocol under which the document would be tested, with their

6   team of experts, do you think it's a coincidence that they

7   didn't ask for fingerprint testing?  It's not.

8          **MAGISTRATE JUDGE FOSCHIO:**  Look, he's withdrawn

9   without prejudice.  You acquiesced.

10          **MR. SNYDER:**  Right.

11          **MAGISTRATE JUDGE FOSCHIO:**  If I had to rule, I

12   would have denied it and --

13          **MR. SNYDER:**  Thank you.

14          **MAGISTRATE JUDGE FOSCHIO:**  He knows what his burden

15   is.  He's not a -- he's a pretty sharp fellow.

16          Now, I'm going to just reiterate that we have one

17   more motion, which is the spoliation of the contract.  That's

18   the yellowing issue, so to speak.

19          **MR. BOLAND:**  Yes, Your Honor.

20          **MAGISTRATE JUDGE FOSCHIO:**  Oh, is there a motion

21   about prohibiting reliance on e-mail exchanges?

22          **MR. SNYDER:**  Yes, Your Honor, he also has filed,

23   amazingly enough, document 229, which seeks to prohibit

24   defendants from disputing the authenticity of the alleged

25   e-mails described in the first amended complaint, which, of

1  course, was one of the primary purposes of the expedited

2  discovery order, for us to take discovery to that issue.

3          **MAGISTRATE JUDGE FOSCHIO:**  Oh, prohibiting

4  defendants from reliance on arguments that e-mail exchanges

5  between Ceglia and Zuckerberg are frauds.

6          Oh, yes, that's the -- the -- that's the Grant

7  analysis of the e-mails on the floppy disks as having no

8  indicia of fraud, right.

9          Okay.  Well, the argument on the other side, of

10  course, is that he -- the defendant has said several times in

11  the course of this afternoon's proceedings is that -- Mr.

12  Grant has never actually examined the e-mails, and unless you

13  look at the e-mails you can't really be sure whether or not

14  they're fabricated.

15          I think that's the gist of your argument, isn't it,

16  Mr. Snyder?

17          **MR. SNYDER:**  Yes.  In other words, the Grant

18  declaration, which is document 226, doesn't establish the

19  authenticity of the fake e-mails.

20          In fact, he doesn't even say that the two floppy

21  disks he analyzed have anything to do with the purported

22  e-mails.  Rather, he says he conducted some tests on the disks

23  themselves, which he says in conclusory fashion, none of which

24  confirm plaintiff's fraud.

25          And in connection with our motion to dismiss, we're

1 | going to submit dispositive forensic evidence confirming that

2 | the electronic documents containing the alleged e-mails, which

3 | I've called the cut-and-paste jobs, actually contain

4 | significant metadata anomalies indicative of backdating and

5 | fraud --

6 | **MAGISTRATE JUDGE FOSCHIO:**  Unless Mr. Grant looked

7 | at them, he wouldn't know the answer to -- he wouldn't know

8 | whether you were right or wrong.

9 | **MR. SNYDER:**  Correct.  And -- and so --

10 | **MAGISTRATE JUDGE FOSCHIO:**  Why didn't he look at

11 | them?

12 | **MR. BOLAND:**   Look at what specifically, Your

13 | Honor?

14 | **MAGISTRATE JUDGE FOSCHIO:**  Look at the e-mails that

15 | we're talking about.

16 | **MR. BOLAND:**  He looked at every single one of the

17 | e-mail files and all the metadata associated with those files

18 | to determine if, for example, the dates associated with when

19 | those files were created were out of synch --

20 | **MAGISTRATE JUDGE FOSCHIO:**  He did have access to

21 | the metadata?

22 | **MR. BOLAND:**  Everything.  He looked at everything.

23 | He didn't -- I don't understand -- when you're saying "he

24 | didn't look at the e-mails," I'm not -- I'm not clear on your

25 | question.

1           He looked at all the --

2           **MAGISTRATE JUDGE FOSCHIO:**  Well, I thought he

3   looked at floppy disk copies of the e-mails, but not the

4   originals?

5           **MR. BOLAND:**  He -- he -- he made the images --

6           **MAGISTRATE JUDGE FOSCHIO:**  Maybe I don't understand

7   the defendants' position here well enough.

8           **MR. SNYDER:**  Yes, Your Honor.  The --

9           **MAGISTRATE JUDGE FOSCHIO:**  Let's just tee this up.

10  What exactly are you saying in opposition here?

11          **MR. SNYDER:**  What I'm saying is, his declaration --

12  first of all, I'm saying this is wildly premature and should

13  be denied on that basis alone since -- since we -- we don't

14  even have all the evidence yet to present to the Court on this

15  issue.

16          But his declaration in paragraph 10 says he

17  performed initial view of the diskettes and analyzed disks and

18  talks about, first of all, there are no e-mail files.  There

19  are only floppy disks containing documents, Word documents.

20          But he says that he examined disks, and date and

21  location of files on disks.  And what I would -- so -- and

22  it's very opaque and it doesn't say that he reviewed metadata

23  because he doesn't address metadata anomalies that are

24  obvious.  It would be obvious to any forensic analyst looking

25  at these files that are indicative of backdating and forgery.

1          It's -- it's -- it's in paragraph 11 --

2          **MAGISTRATE JUDGE FOSCHIO:**  Paragraph 11 of his --

3          **MR. SNYDER:**  Yeah, it's very vague, conclusory

4   and --

5          **MAGISTRATE JUDGE FOSCHIO:**  Do you have any experts

6   that proffer to the opposite or --

7          **MR. SNYDER:**  Well, we are going to -- this is,

8   again, for the purpose of Mr. Boland's exercise here.

9          **MAGISTRATE JUDGE FOSCHIO:**  Yeah, I know.

10         **MR. SNYDER:**  So I respectfully submit, Your Honor,

11  this plaintiff comes to this Court --

12         **MAGISTRATE JUDGE FOSCHIO:**  Your attack on the

13  motion is limited to an attack on -- on Grant's analysis?

14         **MR. SNYDER:**  Well, no.  My attack on the motion is

15  that this is an end run around the expedited discovery order

16  issued by this Court that the fraudulent nature of the

17  purported e-mails in the amended complaint --

18         **MAGISTRATE JUDGE FOSCHIO:**  I understand that.  I'm

19  just trying to tee it up.  You're saying, "Look, Judge, he may

20  have an argument as far as it goes based on what Mr. Grant

21  says.  But we will have an argument in opposition thereto,

22  therefore, which we should not be required to disclose at this

23  time --

24         **MR. SNYDER:**  Correct.

25         **MAGISTRATE JUDGE FOSCHIO:**  **--** and it is premature

1   for you to rule in this way on a critical issue of expert

2   opinion regarding these allegedly fabricated e-mails," which

3   are -- are -- are pretty -- what shall we say?  Colorful and

4   interesting to say the least --

5          **MR. SNYDER:**  Right.

6          **MAGISTRATE JUDGE FOSCHIO:**  -- because if they're

7   true, they -- if they're true, they most certainly resonate

8   with the plaintiff's theory that there was a contract.

9          **MR. SNYDER:**  Right.  Mr. Zuckerberg obviously --

10         **MAGISTRATE JUDGE FOSCHIO:**  If not a copyright

11   violation.

12         **MR. SNYDER:**  Right.  Well, Mr. Zuckerberg obviously

13   has sworn to this Court that he never authored any of those

14   fake e-mails.

15          Those e-mails, according to an expert we submitted,

16   were not written by Mr. Zuckerberg in his voice, in his -- the

17   way that he writes --

18         **MAGISTRATE JUDGE FOSCHIO:**  But it's not --

19         **MR. SNYDER:**  -- and we will demonstrate

20   forensically that when we file our motion to dismiss --

21         **MAGISTRATE JUDGE FOSCHIO:**  I have to take your word

22   for it for purposes of this motion though?

23         **MR. SNYDER:**  No, for purposes of this motion I

24   think Your Honor can summarily deny this as a premature and

25   improper procedurally motion to bar us from presenting the

1   very evidence to the Court that the expedited discovery order

2   directs us to -- to produce.

3          **MAGISTRATE JUDGE FOSCHIO:**  These e-mails really --

4   well, Mr. Healy actually points out to me that one could agree

5   with everything -- well, not everything Mr. Grant says per se,

6   but still not necessarily conclude that the document that he

7   was analyzing was not fabricated.

8          **MR. BOLAND:**  Correct.  I mean, there's an

9   opportunity for an expert to question whatever Mr. Grant says.

10         **MAGISTRATE JUDGE FOSCHIO:**  No, no.  Mr. Grant --

11  Mr. Grant is arguably correct.  But that begs the question of

12  whether, despite the correctness of the -- of the indicators

13  that he found that were consistent with a timely document

14  being created, it doesn't tell us who actually created the

15  document.

16         It could still be a fabrication.

17         **MR. BOLAND:**   Of course.

18         **MAGISTRATE JUDGE FOSCHIO:**  That's -- well, thus,

19  your -- I think, unless I'm missing something, not only is

20  your motion premature, but it lacks a sufficient colorable

21  basis to apply a sanction based on spoliation.

22         **MR. BOLAND:**  No, this -- this motion --

23         **MAGISTRATE JUDGE FOSCHIO:**  Excuse me, not

24  spoliation.  It -- it -- it -- it -- it -- it does not support

25  a prohibition on their use of this -- of this -- of the -- of

1  whatever they're going to use to show that these e-mails were,

2  notwithstanding Mr. Grant's analysis, fabricated.

3      **MR. BOLAND:**  The short summary, Your Honor, is this

4  motion, along with the other ones --

5      **MAGISTRATE JUDGE FOSCHIO:**  Is that basically --

6  excuse me, is that -- I just want to make sure I give

7  everybody a fair shake here.

8      Is that correct?  Have I stated the essence of the

9  defendants' position?

10      **MR. SNYDER:**  Yes, Your Honor, which I think

11  confirms that the purpose of all these motions which he so

12  happily -- no, I think the purpose was to get discovery.  And

13  on that point I just want to note something for the record.

14      Again, this is -- there's nothing garden variety

15  about this.  This is -- we will demonstrate to the Court when

16  we move to dismiss this is not a case of dueling experts where

17  reasonable minds can differ.

18      And I think that the purpose of these motions is to

19  try to create that aura about the case and then he'll withdraw

20  the motion and say, "I didn't really mean to file this motion,

21  I just wanted" -- it's unclear why he filed.  It's unclear

22  whether -- let me just say this: Despite the fact that he's

23  withdrawing motion after motion, the fact is this is not a

24  case of dueling experts and I don't want by my silence to

25  acquiesce to that characterization.

1          **MAGISTRATE JUDGE FOSCHIO:** Okay. Well, the --

2 unless you have something further to say about it, I -- I feel

3 obliged to, you know, to deny the motion without prejudice to

4 renewal.

5          **MR. BOLAND:** Very well, Your Honor. I just -- the

6 philosophical distinction here is this: I don't think it's

7 appropriate for the defendants in a motion to dismiss, which

8 is coming, to ask this Court to decide whether to dismiss this

9 case on fraud when the Court will be determining that between

10 dueling experts.

11          They started all of this by saying there would be

12 no -- there would be universal opinions on our side, and

13 they've now creeped towards, well, we're gonna have an expert,

14 but you're gonna have an expert and they're putting you in the

15 position of a jury at that point as opposed to just deciding a

16 motion that's universally proven.

17          **MAGISTRATE JUDGE FOSCHIO:** Well, no, I can assure

18 you they will not. Unless they elect a bench trial before me

19 or both of you do, that isn't going to happen.

20          I said unless the -- unless they elect to proceed

21 on a bench trial before myself, that is not going to happen.

22 I'm not going to get in the way of a jury.

23          I started out on that point and I intend to stick

24 with it.

25          So that motion is denied --

1        **MR. BOLAND:**  Very well.

2        **MAGISTRATE JUDGE FOSCHIO:**  -- without prejudice.

3    Add it to your list.

4        Now, I just want to take a very brief break before

5    I give you a ruling on the -- the spoliation of the contract,

6    and that's because my -- I had a couple of cases checked about

7    my concept of whether discoloration of a document constitutes

8    spoliation.

9        And I don't want to say anything on the record

10   until I just take five, ten minutes with my law clerk and I'll

11   be right back.  And then we will complete, I think, what we're

12   gonna -- and that will be the last ruling for the day then,

13   correct?

14       **MR. BOLAND:**  Yes, Your Honor.

15       **MAGISTRATE JUDGE FOSCHIO:**  Okay.  So we'll just

16   take a ten minute break.

17       **THE CLERK:**  All rise.

18       (**WHEREUPON**, there was a pause in the proceeding.)

19       **MAGISTRATE JUDGE FOSCHIO:**  I came in early because

20   I got my answer early.

21       **MR. SNYDER:**  It's so comfortable in the attorneys

22   lounge.

23       **MAGISTRATE JUDGE FOSCHIO:**  Isn't that nice?  Did

24   you get to the attorneys lounge downstairs?

25       **MR. SNYDER:**  Yeah, they have cocktails in there,

1  it's really nice.

2          **MAGISTRATE JUDGE FOSCHIO:**  Really?  Yeah, how come

3  we weren't invited?  Okay.

4          **THE CLERK:** Ready, Judge?  Back on the record.  Oral

5  argument, Ceglia vs. Zuckerberg and Facebook.

6          **MAGISTRATE JUDGE FOSCHIO:**  I consulted a couple of

7  cases with my law clerk's assistance, which tends in my

8  judgment to corroborate my instinct, which is that

9  discoloration of -- of documents allegedly spoliated in a case

10  does not constitute spoliation as long as the underlying

11  information that is contained in the document or the item,

12  whether it's a disk, computer diskette or a -- a -- an actual

13  document such as a contract, is discernible and can be read.

14          And -- or for that matter, analyzed by an expert.

15  The discoloration in itself is not a form of spoliation.

16          So that's one point.

17          And those cases are *Malinski*, M-A-L-I-N-S-K-I vs.

18  something called *Documented Vehicle/Drivers Systems, Inc.*, 66

19  F -- Fed. App'x 216, 2003 WL 21243907, First Circuit, Rhode

20  Island.

21          And the other is a magistrate judge, which, of

22  course, we have very -- find very persuasive, *U.S. vs. Morris*,

23  M-O-R-R-I-S, this is a little too loud for me -- just tweak it

24  back when you get a chance, not right now -- 2006 WL 2054585.

25  2054585.  Eastern District of Kentucky, July the 20th, 2006.

1          Similar reasoning, in particular footnote number 1.

2          For that reason and also the reasons put forth in

3     the defendants' papers and based on the very thorough and

4     helpful oral argument, the motion is also -- this particular

5     motion, the 213, Sandra?

6          **THE CLERK:** Yes, Judge.

7          **MAGISTRATE JUDGE FOSCHIO:**  Is denied.

8          **MR. BOLAND:**   Your Honor, may I make one comment

9     going forward?

10          **MAGISTRATE JUDGE FOSCHIO:**   I'm just trying to

11    think of whether this one is denied with prejudice or without.

12    Well, I would say because we've got these technical issues,

13    that I would probably say without prejudice, but -- yeah?

14          **MR. BOLAND:**   Your Honor, in light of the ruling

15    and the discussion, one other issue that occurred to me about

16    this for the future is that now that the document is in a

17    yellowed condition, it disables the plaintiff from defending a

18    claim that on the date it was received by the experts, it was

19    already somehow improperly discolored because the only images

20    that are left of how the document was the day they received it

21    are theirs and their treatment of it has now made it yellow

22    and we can't really rewind it back to whatever color we would

23    argue it really was that day compared to what they claim it

24    was.

25          So the further yellowing they did actually is

1 | harming us in that regard that we can't go back.

2 |        **MAGISTRATE JUDGE FOSCHIO:**  That's not true though.

3 | They took a mirror image of it when it came -- when it came

4 | out of the Argentieri's mail pouch.

5 |        **MR. BOLAND:**  They scanned it.

6 |        **MAGISTRATE JUDGE FOSCHIO:**  Scanned it?

7 |        **MR. SNYDER:**  We took a high resolution digital

8 | photograph image, which captured perfectly and accurately the

9 | physical condition of the document when the -- Mr. Argentieri

10 | removed it from his envelope.

11 |        **MAGISTRATE JUDGE FOSCHIO:**  Similar to -- what's the

12 | Russian man's name?  The fellow that made the high resolution

13 | photo in January?

14 |        **MR. SNYDER:**  Aginsky, yes, Your Honor.

15 |        **MAGISTRATE JUDGE FOSCHIO:**  Aginsky.

16 |        **MR. SNYDER:**  Aginsky.

17 |        **MR. BOLAND:**  Mm-hmm.

18 |        **MR. SNYDER:**  Yeah, same technology, yes, Your

19 | Honor.

20 |        **MAGISTRATE JUDGE FOSCHIO:**  So if you have that --

21 |        **MR. BOLAND:**  We have Aginsky's image.  And then

22 | they have the one the day they got it, and they're claiming

23 | there's a distinction between the two.

24 |        **MAGISTRATE JUDGE FOSCHIO:**  And why -- you're saying

25 | you don't have a copy of that, is that your problem?  No.

1          **MR. BOLAND:**  No, I have copies of both of those.

2  But now that the document has irretrievably been made

3  yellowed --

4          **MAGISTRATE JUDGE FOSCHIO:**  Well that -- I'm not

5  sure that's true.  Does the defendant concede that,

6  Mr. Snyder?

7          **MR. SNYDER:**  Concede?

8          **MAGISTRATE JUDGE FOSCHIO:**  That the document has

9  become yellowed in the possession of the -- while in the

10  possession of the defendant?

11          **MR. SNYDER:**  Absolutely not.  There's no evidence

12  of that, and if Mr. Boland attempts to present some down the

13  road, we'll respond to it.  He's, I think, trying to bait us

14  into giving him more discovery.

15          But plaintiff is the criminal who altered the

16  document.  We did not alter this document --

17          **MAGISTRATE JUDGE FOSCHIO:**  I -- I --

18          **MR. SNYDER:**  -- in any way.

19          **MAGISTRATE JUDGE FOSCHIO:**  Thank you.  That's what

20  I thought his position was.  He doesn't concede that it's

21  actually yellowed.

22          **MR. BOLAND:**  Very well.

23          **MAGISTRATE JUDGE FOSCHIO:**  There -- there -- I

24  don't quarrel with what you've showed on the screen, but they

25  believe that that's not necessarily a fact.

1          **MR. BOLAND:**  Very well.

2          **MAGISTRATE JUDGE FOSCHIO:**  I don't know how one can

3    explain what appeared to be on -- to me on the screen that it

4    was -- which seems to have a contrast along the lines of what

5    you attribute to it, but the defendants say otherwise and I'm

6    not going to make a ruling about that.

7          **MR. BOLAND:**  Well, and is it -- I kind of

8    interrupted you and I apologize.  Is it your ruling without

9    prejudice or with prejudice?

10          **MAGISTRATE JUDGE FOSCHIO:**  Without.

11          **MR. BOLAND:**   Very well.  And we'll raise it again.

12          **MAGISTRATE JUDGE FOSCHIO:**  All right.  Well, I want

13    to compliment both sides on excellent preparation, extremely

14    helpful papers, good -- very professionally done and your

15    perseverance this afternoon, four hours slugging it out

16    with -- with all of the questioning that I peppered you both

17    with, both sides.

18          And I just want to tell you that the Court

19    appreciates good lawyering regardless of the differences of

20    opinion and the zealousness with which these arguments have

21    been put forth.

22          So -- now, where do we go from here is what --

23    before we adjourn and for the holidays here?

24          **MR. SNYDER:**  Yes, Your Honor.  We -- we continue to

25    wait, as we have been waiting since August, for plaintiff to

1  be in compliance.

2           Once he is in compliance, we --

3           **MAGISTRATE JUDGE FOSCHIO:**  Please sit down.

4  Otherwise, you're going to break your neck here --

5           **MR. SNYDER:**  Yeah. Once he's in compliance --

6           **MAGISTRATE JUDGE FOSCHIO:**  -- bending over.

7           **MR. SNYDER:**  -- once he's in compliance, we will

8  conform and comply happily with the Court's July 1 order and

9  provide the plaintiff with the Harvard e-mails and --

10          **MAGISTRATE JUDGE FOSCHIO:**  When do you think that

11 might be as a practical matter?

12          **MR. SNYDER:**  Well, it's hard to know because it's

13 my belief that this plaintiff is currently obstructing our

14 effort to obtain access to his Microsoft e-mail account by

15 providing incomplete --

16          **MAGISTRATE JUDGE FOSCHIO:**  So I may see another

17 motion?

18          **MR. SNYDER:**  I hope not, but he -- he seemed to

19 not -- he seems to not be able to fill out the form that

20 Microsoft says is pretty --

21          **MAGISTRATE JUDGE FOSCHIO:**  Let's say hypothetically

22 the problem goes away --

23          **MR. SNYDER:**  Right.

24          **MAGISTRATE JUDGE FOSCHIO:**  -- or I get another

25 motion in here within the next week or ten days and I put my

1  usual scheduling order on and maybe don't need oral argument

2  on it and I issue a ruling, say, by the first part of January.

3            Then what?  Would it be *apropos* for the Court to

4  schedule a full Rule 16(b) conference to --

5            **MR. SNYDER:**  No, Your Honor.

6            **MAGISTRATE JUDGE FOSCHIO:**  -- to put a full

7  scheduling order on so --

8            **MR. SNYDER:**  No, we addressed --

9            **MAGISTRATE JUDGE FOSCHIO:**  -- excuse me, let me

10  finish.  So we can launch paper discovery and start scheduling

11  depositions in the usual format?

12            **MR. SNYDER:**  No.  Your Honor asked me that question

13  at the last hearing and my response was no, because the

14  expedited discovery order contemplates as the next step our

15  submitting to the Court expert reports and we will do that

16  together with a motion to dismiss.

17            And it's our position that under -- and under the

18  order it says defendant shall complete their examination and

19  provide to the Court and plaintiff reports document in the

20  findings of our examination 30 days from plaintiff's

21  compliance with the order.

22            So we will comply with the order.  That's paragraph

23  9 of the August 18th order, and file no later than 30 days

24  and -- and hopefully earlier than 30 days --

25            **MAGISTRATE JUDGE FOSCHIO:**  Does the order -- did my

1  order include a anticipated motion to dismiss on various

2  grounds?

3           **MR. SNYDER:**  It did not, Your Honor.

4           **MAGISTRATE JUDGE FOSCHIO:**  Did not.

5           **MR. SNYDER:**  But we will be moving to dismiss.  The

6  Rule 16 conference is presently stayed and -- I believe.

7           **MAGISTRATE JUDGE FOSCHIO:**  Did I formally do that?

8           **MR. BOLAND:**   Yes.

9           **MAGISTRATE JUDGE FOSCHIO:**  I did?

10          **MR. SNYDER:**  Yes, Your Honor.

11          **MAGISTRATE JUDGE FOSCHIO:**   Oh.

12          **MR. SNYDER:**  And we believe that based on the

13 substantial showing in all of these motions, together with the

14 showing we made before, that the next and appropriate step --

15          **MAGISTRATE JUDGE FOSCHIO:**  All right.

16          **MR. SNYDER:**  -- is to consider our motion to

17 dismiss, which will be --

18          **MAGISTRATE JUDGE FOSCHIO:**  But you see my point?

19 The order does not technically, as you put it, contemplate a

20 dismissal motion.

21          **MR. SNYDER:**  It doesn't preclude it, but this -- I

22 would respectfully submit that the stay of the Rule 16

23 conference recognizes that given the serious showing that

24 we've made of fraud at that early date --

25          **MAGISTRATE JUDGE FOSCHIO:**  Substantial.

1          **MR. SNYDER:**   -- substantial showing of fraud, even

2    at that early date --

3          **MAGISTRATE JUDGE FOSCHIO:**   Right.

4          **MR. SNYDER:**   -- before we found everything else

5    that we found --

6          **MAGISTRATE JUDGE FOSCHIO:**   Okay.

7          **MR. SNYDER:**   -- reflects the Court's awareness that

8    Rule 16 procedures would not be appropriate at that time.

9          I would respectfully submit that given the evidence

10   we found of fraud --

11         **MAGISTRATE JUDGE FOSCHIO:**   What's the harm in it?

12         **MR. SNYDER:**   I do not believe that a plaintiff, who

13   is committing a massive fraud on this Court and on my clients,

14   and then for six months spoliated evidence, tampered with

15   documents, should be permitted to conduct discovery.

16         I think this Court's inherent power is broad

17   enough --

18         **MAGISTRATE JUDGE FOSCHIO:**   Well, I know that's your

19   argument.  But you know there is another point of view, shall

20   we say?

21         **MR. SNYDER:**   I don't think a plaintiff who has

22   committed a fraud of this nature, based on the showing that we

23   will make 30 days following plaintiff's compliance with the

24   order, entitles him to any discovery because it mandates, in

25   our judgment, dismissal of this case.

1          Not only for the serious fraud that underlies this

2   case, but for the --

3          **MAGISTRATE JUDGE FOSCHIO:**  Well, I'll tell you

4   this: If you think that's the case, I would appreciate some,

5   you know, binding Second Circuit authority to that effect.

6          **MR. SNYDER:**  Sure.

7          **MAGISTRATE JUDGE FOSCHIO:**  I mean --

8          **MR. SNYDER:**  I think --

9          **MAGISTRATE JUDGE FOSCHIO:**  -- his contemplation

10  based on the colloquies we've just had here over the past four

11  hours is that the Court may well grant him some limited period

12  of time within which, for example, take experts, your experts'

13  depositions.

14         **MR. SNYDER:**  Well, Your Honor, we respectfully --

15         **MAGISTRATE JUDGE FOSCHIO:**  Just as would be the

16  case if there was a normal Rule 16(b) scheduling order in

17  place.

18         **MR. SNYDER:**  Well, I would respond in two ways.

19  One, Your Honor, that the -- the issuance of the expedited

20  discovery order in the first place, I think, recognizes that

21  this is an extraordinary case requiring extraordinary

22  procedures.

23         And, therefore, this Court has the inherent power

24  consistent with that to -- to manage the case in accordance

25  with those extraordinary circumstances .

1          So that when we file our motion to dismiss, we will

2  provide the Court at that time with authority and arguments

3  for why there should be no further proceedings beyond the

4  motion to dismiss.

5          And the motion to dismiss will not only be based on

6  the fraud that underlies this case, the manufactured

7  work-for-hire agreement and the manufactured e-mails, but also

8  for case-ending sanctions for spoliation and for the tampering

9  with the work-for-hire agreement between January and June of

10  2011, which we believe under Second Circuit authority gives

11  this Court ample basis to --

12          **MAGISTRATE JUDGE FOSCHIO:**  Of course.

13          **MR. SNYDER:**  -- to dismiss for that reason as well.

14          **MAGISTRATE JUDGE FOSCHIO:**  That -- that -- but the

15  spoliation is the baking of the -- the cooking of the

16  document.

17          **MR. SNYDER:**  And the destruction of the remote

18  access devices which this plaintiff --

19          **MAGISTRATE JUDGE FOSCHIO:**  Oh.

20          **MR. SNYDER:**  -- having come back from hiding in

21  Ireland and looked for --

22          **MAGISTRATE JUDGE FOSCHIO:**  Still can't find it.

23          **MR. SNYDER:**  -- the dog ate it, it's gone .

24          So that is, just to put a fine point on it,  that

25  is the destruction of --

1          **MAGISTRATE JUDGE FOSCHIO:**  Including the Seagate

2  drive?

3          **MR. SNYDER:**  Yes, Your Honor. That is the

4  destruction --

5          **MAGISTRATE JUDGE FOSCHIO:**  Must have been a big

6  dog.

7          **MR. SNYDER:**  It must have been, maybe the whale,

8  itself, Your Honor.

9          And, again --

10          **MAGISTRATE JUDGE FOSCHIO:**  That big?

11          **MR. SNYDER:**  -- again, this is the equivalent of --

12  of --

13          **MAGISTRATE JUDGE FOSCHIO:**  It did not materialize?

14          **MR. SNYDER:**  Didn't materialize.  And, of course,

15  this was the -- the remote storage device that contained files

16  called "Zuckerberg contract pages 1 and 2.tif."  Lost,

17  destroyed forever.

18          And so we think this raises questions of serious

19  evidence tampering and destruction, which in and of itself

20  before you get to the litigation fraud underlying this case

21  mandates dismissal of this case.

22          And on those circumstances, giving the plaintiff

23  discovery --

24          **MAGISTRATE JUDGE FOSCHIO:**  You don't want to depose

25  Mr. -- Mr. Ceglia about anything?

1           **MR. SNYDER:**  I have -- he has made enough

2    admissions in -- and as -- in his conduct and the forensic

3    analysis is sufficient.

4           You don't need a confession when you have -- when

5    you have the murder knife, the fingerprints on the murder

6    knife and a videotape and eyewitnesses.  You don't need a

7    confession.

8           I don't need Mr. Ceglia to confess to me to know

9    that he is a criminal who is committing a fraud on this Court.

10          **MAGISTRATE JUDGE FOSCHIO:**  Okay, I see.  I

11   understand.  But it wouldn't come as a shock if -- if --

12   and -- from your analysis of the -- of the applicable law, is

13   it -- is it -- it would be clearly erroneous for the

14   magistrate judge in this circumstance to permit limited

15   discovery of, say, by way of depositions of experts and so

16   forth?

17          **MR. SNYDER:**  I'm not suggesting that that would

18   necessarily be abuse of discretion.

19          What I am suggesting is that in my experience in

20   the federal courts throughout this country when confronted

21   with this kind of record, and I've -- I don't know if I've

22   ever seen a record this replete with misconduct and fraud, but

23   with a record of this kind it would be unusual, I think, to

24   reward the wrongdoer, the plaintiff here, with -- with -- with

25   discovery and --

1          **MAGISTRATE JUDGE FOSCHIO:** Well, it's not a matter

2  of rewarding.  It's a matter of fairness.

3          **MR. SNYDER:** Well, I think this plaintiff has been

4  given all of the due process and more six months -- six months

5  later --

6          **MAGISTRATE JUDGE FOSCHIO:** Hasn't had a front -- a

7  chance to really confront his slash -- his "accusers," if you

8  will.

9          **MR. SNYDER:** I think he has waived the right to

10  take a single deposition in this case based alone on his

11  misconduct since July 1st -- actually, I would say since

12  January 1st.

13          In other words, his misconduct during the course of

14  this litigation in and of itself, separate and apart from the

15  fraud that underlies the case, in my judgment, makes this an

16  easy case, almost a paradigmatic case for dismissal based on

17  the Court's inherent power, based on Rule 37 and substantial

18  Second Circuit case law.

19          And as to that substantial Second Circuit case law,

20  as to that, I believe that this Court would not only be well

21  within its discretion, but would be four square within settled

22  authority to dismiss the case for the fraud that has occurred

23  since the case has begun, and no question that the

24  Second Circuit would summarily affirm that because it is

25  difficult to imagine spoliation more material and prejudicial

1   than the two acts of spoliation that are most prominent in

2   this case.

3            One, the baking of the contract between January and

4   June of 2011 as to which his best defense is that maybe the

5   setting on the camera was different, which we'll be able to

6   blow out of the water.

7            And the second act of spoliation is the

8   disappearance of critical remote storage devices containing

9   the -- the dispositive document in the case.

10           And that has -- and --

11           **MAGISTRATE JUDGE FOSCHIO:**  You're not going to make

12   a separate motion directed to these -- these -- the

13   disappearance of the flash/hard drives?

14           **MR. SNYDER:**  That will be in support of our motion

15   to dismiss.

16           **MAGISTRATE JUDGE FOSCHIO:**  I see.  Not a separate

17   spoliation motion?

18           **MR. SNYDER:**  It will be a motion to dismiss based

19   on the --

20           **MAGISTRATE JUDGE FOSCHIO:**  Spoliation.

21           **MR. SNYDER:**  -- spoliation.  And the Court, we

22   believe, should not only dismiss the case, but should issue

23   monetary sanctions as well as -- as -- as a secondary --

24           **MAGISTRATE JUDGE FOSCHIO:**  Okay.

25           **MR. SNYDER:**  -- sanction.

1          **MAGISTRATE JUDGE FOSCHIO:**  Well, if you're going

2     to -- it's up to you, I'm not telling you how to handle

3     this --

4          **MR. SNYDER:**  Sure.

5          **MAGISTRATE JUDGE FOSCHIO:**  -- I just want to talk

6     about it in advance so we know, I know where we're going

7     because if I don't see a motion somewhere along the way here,

8     I will feel obliged to schedule a Rule 16 to get the case on

9     track.

10         **MR. SNYDER:**  But, Your Honor, the time delay here

11    should not be held against us.

12         **MAGISTRATE JUDGE FOSCHIO:**  I didn't say anything

13    about holding it against anybody.  I just said if I don't see

14    a motion somewhere along the way, I'll be obliged to put the

15    case on track --

16         **MR. SNYDER:**  Again --

17         **MAGISTRATE JUDGE FOSCHIO:**  -- for a regular 16(b)

18    conference.

19         **MR. SNYDER:**  Right.  We will file the motion.  We

20    had hoped to file the motion in September and we will file the

21    motion when the plaintiff --

22         **MAGISTRATE JUDGE FOSCHIO:**   In fact, that reminds

23    me.  Sandra, didn't Judge Arcara designate this case for ADR?

24         **THE CLERK:**  (Inaudible).

25         **MR. SNYDER:**  We addressed that the last conference,

1   Your Honor.

2           **MAGISTRATE JUDGE FOSCHIO:**  I can't remember what we

3   said, but I just want to remind everybody that it is --

4           **MR. SNYDER:**  We said that we're not interested in

5   any dispute resolution procedure.

6           **MAGISTRATE JUDGE FOSCHIO:**  I know, I know, but I

7   have to go by the book because as Mr. Flynn will tell you,

8   Judge Skretny is very, very jealous about the program --

9           **MR. SNYDER:**  Yes.

10          **MAGISTRATE JUDGE FOSCHIO:**  -- and requires the

11  magistrate judges to go by the book, which means that

12  technically, unless you make a motion to opt-out of ADR, to be

13  excused from it, to District Judge Arcara, not me, I will have

14  to at some point when I put a Rule 16 order in place designate

15  the case for ADR.

16          **MR. SNYDER:**  Well, I think -- I thought we had made

17  that motion last time.

18          **MAGISTRATE JUDGE FOSCHIO:**  Well, I don't know that

19  you have.

20          **MR. SNYDER:**  Well, in any event it's our

21  position --

22          **MAGISTRATE JUDGE FOSCHIO:**  I'm not trying to

23  discombobulate you or ruin your trip home or something.  I

24  just while you're all here want to take the opportunity

25  besides complimenting everybody on a good job, excellent job,

1  remind everybody about my concerns about keeping the case on

2  track and fairness considerations, the discovery issues and so

3  forth.

4           So I have said that.  That's all I need to say.

5           And as far as this preclusion of the plaintiff from

6  taking even expert discovery, you can either wait for him to

7  make the request in opposition to your motion, or you can

8  include it in your motion so that he has something to respond

9  to if that's going to continue to be your position.

10          **MR. SNYDER:**  Thank you, Judge.  Although, as I

11  said, I believe that -- that this Court will have substantial

12  basis to dismiss even before it has to address the litigation

13  fraud --

14          **MAGISTRATE JUDGE FOSCHIO:**  Yeah.

15          **MR. SNYDER:**  -- and it may be that when Your Honor

16  or when the Court reads --

17          **MAGISTRATE JUDGE FOSCHIO:**  Well --

18          **MR. SNYDER:**  -- the motion to dismiss --

19          **MAGISTRATE JUDGE FOSCHIO:**  I know.  But you have to

20  put yourself in the Court's shoes.  You have, as we said, it's

21  an unusual case, it's a very substantial case, to say the

22  least, so fairness considerations become to me even

23  heightened.

24          And -- and the fact is, there are experts out

25  there, whether you like it or not, that -- that tend to

1 line-up on the plaintiff's position.

2          **MR. SNYDER:**  I disagree as to the dispositive

3 forensic issues that will be presented.

4          **MAGISTRATE JUDGE FOSCHIO:**  Okay.

5          **MR. SNYDER:**  I believe that the experts are not

6 dueling experts.  They're experts who are speaking the

7 language that is actually going to be irrelevant to the

8 dispositive forensic issues --

9          **MAGISTRATE JUDGE FOSCHIO:**  Okay.

10          **MR. SNYDER:**  -- that we'll present to the Court.

11 That is to say they will have no experts who can refute the

12 evidence that we have --

13          **MAGISTRATE JUDGE FOSCHIO:**  My point is simply this:

14 That the plaintiff has proffered experts who have not caved.

15 I mean, they are --

16          **MR. SNYDER:**  Well, many have disappeared.

17          **MAGISTRATE JUDGE FOSCHIO:**  Really?

18          **MR. SNYDER:**  Yes, Your Honor.

19          **MAGISTRATE JUDGE FOSCHIO:**  Like who?

20          **MR. SNYDER:**  Aginsky and Osborn are two.

21          **MAGISTRATE JUDGE FOSCHIO:**  They disappeared?  Like

22 there's a --

23          **MR. SNYDER:**  They've abandoned the -- they've

24 abandoned this --

25          **MAGISTRATE JUDGE FOSCHIO:**  Like a missing person?

1          **MR. SNYDER:**  They've abandoned this plaintiff like

2   six or seven or eight lawyers have as well, as the evidence

3   mounts that this plaintiff is engaged in a fraud.

4          **MAGISTRATE JUDGE FOSCHIO:**  Oh, okay.  Well, you get

5   the gist of what I'm saying.

6          Thank you for bearing with me.  If there's nothing

7   further on behalf of the plaintiff, Mr. Boland?

8          **MR. BOLAND:**   Your Honor, I heard from a lot wiser

9   lawyers and judges than I when I was a young lawyer that

10  sometimes the best lawyering to do is say nothing.  I'll take

11  that advice.

12         **MAGISTRATE JUDGE FOSCHIO:**  Excellent.

13         And for the defendant, Mr. Snyder, anything

14  further?

15         **MR. SNYDER:**  No, Your Honor.

16         **MAGISTRATE JUDGE FOSCHIO:**  We are adjourned.  Have

17  a happy holiday to all.

18         **MR. SNYDER:**  You too, Your Honor.

19         (**WHEREUPON**, the proceedings adjourned at 4:06 p.m.)

20                         *    *    *

21

22

23

24

25

1                        CERTIFICATE OF TRANSCRIBER

2

3            In accordance with 28, U.S.C., 753(b), I certify that

4    this is a true and correct record of proceedings from the

5    official electronic sound recording of the proceedings in the

6    United States District Court for the Western District of New

7    York before the Honorable Leslie G. Foschio on December 11th,

8    2011.

9

10   S/ Christi A. Macri

11   Christi A. Macri, FAPR-RMR-CRR-CRI
     Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25